```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF VIRGINIA

 3                      RICHMOND DIVISION

 4

 5    ------------------------------------
                                         :
 6    GOLDEN BETHUNE-HILL, et al.        :
                                         :   Civil Action No.
 7    vs.                                :   3:14CV852
                                         :
 8    VIRGINIA STATE BOARD OF            :   February 24, 2015
      ELECTIONS, et al.                  :
 9    ------------------------------------

10

11         COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

12            BEFORE THE HONORABLE ROBERT E. PAYNE

13                UNITED STATES DISTRICT JUDGE

14

15    APPEARANCES:

16    Abha Khanna, Esquire
      Perkins Coie, LLP
17    1201 Third Avenue
      Suite 4800
18    Seattle, Washington  98101
      Counsel for the plaintiff
19
      Anthony F. Troy, Esquire
20    Eckert Seamans Cherin & Mellott, LLP
      707 East Main Street
21    Suite 1450
      Richmond, Virginia  23219
22    Counsel for the defendants

23

24              Peppy Peterson, RPR
                Official Court Reporter
25            United States District Court
```

```
 1    APPEARANCES:  (cont'g)

 2    Katherine L. McKnight, Esquire
      E. Mark Braden, Esquire
 3    Jennifer M. Walrath, Esquire
      Baker & Hostetler, LLP
 4    1050 Connecticut Avenue NW
      Suite 1100
 5    Washington, D.C.  20036
      Counsel for the intervenor defendants
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2

 3          THE COURT:  Hello.  This is Bethune-Hill against

 4   Virginia State Board of Elections, civil 3:14CV852.  If

 5   you will, start with the plaintiff and say who is here

 6   representing whom, and each time you speak, please give

 7   your name.

 8          MS. KHANNA:  This is Abha Khanna representing the

 9   plaintiffs.

10          MR. TROY:  Judge, this is Tony Troy on behalf of

11   all the defendants.

12          MS. McKNIGHT:  Your Honor, this is Kate McKnight,

13   and along with Mark Braden and Jennifer Walrath, we

14   represent the intervenor defendants.

15          THE COURT:  All right.  I've reviewed your

16   proposed joint initial pretrial scheduling and discovery

17   plan, and I have some questions about it for you.  First,

18   you've done your Rule 26 exchanges.  Now, what does the

19   case look like now that you've had those exchanges in

20   terms of the amount of discovery that you think you're

21   going to need to do, depositions, et cetera, plaintiff?

22          MS. KHANNA:  Yes, Your Honor.  This is Abha

23   Khanna.  I believe that looking at everybody's initial

24   disclosures pursuant to Rule 26(a)(1), I think we all have

25   a similar idea that the kinds of witnesses we're going to
```

1    want to depose, and I think an approximate number, I think

2    we've all designated several sitting delegates and other

3    members of the legislature and state who would have

4    information about the 2011 redistricting.

5           So it seems to me that -- I mean -- I think that

6    we're talking in the ballpark of at least ten depositions

7    per side, and perhaps more if need be.  There was a fair

8    number, fair bit of overlap among the various initial

9    disclosures, so it actually might fit into the amount

10   allowed for by the federal rules.  So I guess it hasn't

11   really changed plaintiffs' perspective of the size of the

12   case, and especially given that I believe the intervenors'

13   and defendants' initial disclosures were consistent with

14   plaintiffs' understanding.

15          THE COURT:  You say you think there are ten per

16   side?  Is that what you said that will be needed?

17          MS. KHANNA:  Yes, Your Honor.  In the proposed

18   plan that we gave, we suggested that the number of

19   depositions should be governed by Federal Rule of Civil

20   Procedure 30 which, I believe, allows for ten depositions

21   per side without leave of Court, and then, of course, with

22   good cause, to seek leave of Court if additional

23   depositions are required.

24          THE COURT:  What do the defendants and the

25   intervenors say about that?

1          MR. TROY:  Judge, this is Tony Troy.  I'll let

2     the intervenors go first and then respond, if I may, Your

3     Honor.

4          MR. BRADEN:  Your Honor, we expect the number of

5     witnesses that we would likely call at trial to be in the

6     range of six to eight.  We most certainly would be

7     comfortable with contemplating only ten depositions of the

8     other side if they're not planning on calling more

9     witnesses than that.

10          MR. TROY:  Judge, this is Tony Troy.  I think ten

11     per side as allowed by the rules is doable.  The hesitancy

12     that I have, there are 12 districts that are being

13     challenged, so we're looking at 12 different delegates.

14     That doesn't mean that each and every one of them, of

15     course, has to be deposed, and we're looking at two or

16     three expert witnesses in addition.  So I would hope that

17     everything could be done with the ten per side, Your

18     Honor.

19          THE COURT:  When you say per side, are you all

20     saying ten for the plaintiffs, ten for the defendants, and

21     ten for the intervenor defendants, or are you saying ten

22     for the plaintiffs' side and ten for the defendants' side?

23     That's what I was --

24          MR. BRADEN:  It would seem unlikely that the

25     defendants and defendant intervenors would not have this,

1    you know, basically be doing depositions of the same

2    plaintiff witnesses.

3           MS. KHANNA:  Your Honor, this is Abha Khanna for

4    the plaintiffs again, and I would agree with that, that we

5    would probably be talking ten per plaintiffs' side and

6    then ten for the side of both defendants and defendant

7    intervenors as a whole, and when I mentioned the word --

8    the number ten, I was really just referring to our -- what

9    we've outlined in the proposal which is we abide by

10   Federal Rule of Civil Procedure 30 and not that that be a

11   hard and fixed number but that we approximate to get

12   within that number, and then if need be, have the parties

13   cooperate to extend further depositions if required.

14          THE COURT:  Who was it that was speaking before

15   you?

16          MR. BRADEN:  Mark Braden speaking for the

17   plaintiff intervenors.  Assuming -- my view is that the

18   plaintiff intervenors -- defendant intervenors and the

19   defendants are unlikely to have different plaintiff

20   witnesses which they desire to depose.

21          THE COURT:  And you're talking about fact

22   witnesses.

23          MR. BRADEN:  That's correct, and their experts.

24          THE COURT:  You mean ten including experts?

25          MR. BRADEN:  Well, that's our issue.  We really

1      don't know how many -- we most certainly intend to depose

2      any witnesses that they intend on calling, and, of course,

3      we don't know how many those are.  So if they're going to

4      call each member who represents a district, that's 12, and

5      I'm assuming, given the nature of the case, that they are

6      going to have at least one expert witness if not more.

7              So we would want to depose any individuals that

8      they intend on calling, but we simply just don't know what

9      that number is now.

10             THE COURT:  Well, Mr. Troy, what is your view?

11             MR. TROY:  Well, Your Honor, again, Tony Troy.

12     The practical problem here, Judge, is though I represent,

13     quote, defendants, the defendants, as Your Honor knows,

14     are state election officials.  They really implement

15     whatever law is on the books.

16             The real issue here, and I haven't been able to

17     talk to the 12 delegates, for example, I don't know what

18     their views are.  Maybe some like their districts, maybe

19     some don't, and so that's the quandary.  The real

20     question, from a fact standpoint really, though I have

21     access to my clients, they have no facts.  They just

22     administer election laws.  The real facts are held by the

23     various members of the General Assembly, especially the 12

24     delegates whose districts are being challenged.

25             THE COURT:  Those are the intervenor defendants.

1      MR. TROY:  No, sir.  Well, Your Honor, I don't

2  know the answer to that, because Mr. Braden indicates he

3  represents the speaker and the House of Delegates as an

4  entity but not necessarily every member of the House of

5  Delegates is -- I thought that was his position.

6      MR. BRADEN:  And that is -- this is Mark Braden.

7  That is our position.  We simply do not know whether these

8  12 members -- it would be our view that absent them

9  waiving legislative privilege, it would be unlikely that

10  we could depose them.  So it's really a question, in our

11  mind, as to the scope of discovery, as to the scope of the

12  proposed or likely evidentiary presentation by the

13  plaintiff.

14      THE COURT:  Well, is it correct or not correct

15  that the individual delegates were consulted by the people

16  who drew -- responsible for drawing up the district and --

17      MR. BRADEN:  The answer --

18      THE COURT:  Excuse me.  And that those people

19  actually provided their views on whether the district was

20  appropriate or not?

21      MR. BRADEN:  Mark Braden.  I believe in most

22  cases, that factually is correct.  I do not know about all

23  of the districts, but I do believe for most, if not all,

24  the individual members, as part of the legislative

25  process, were consulted in the drawing of the plan, yes.

```
 1          THE COURT:  And there are 12 of those people;
 2   right?
 3          MR. BRADEN:  That are 12 of those, yes.
 4          THE COURT:  And they are not represented in this
 5   action even though they are current members of the House
 6   of Delegates?
 7          MR. BRADEN:  We represent the House of Delegates.
 8   We do not necessarily represent any individual member
 9   other than the speaker.
10          THE COURT:  How can you represent the House of
11   Delegates and not represent the 12 delegates therein whose
12   seats are being challenged?  I'm having trouble with that.
13          MR. BRADEN:  Well, the issue is, I believe, the
14   notion of whether or not we would actually represent their
15   interests and whether they would wish us to represent
16   them.  The reality, of course, in this case, is that there
17   is the elephant in the room and the donkey in the room
18   which is this is a very partisan matter, so the interest
19   of the individual members of the house who might be of a
20   different party than the majority who voted for it might
21   have a different interest than the actual House of
22   Delegates.
23          Clearly, the House of Delegates has an interest
24   in preserving the plan that it passed.  That does not
25   necessarily mean each individual member of the House
```

1   shares that individual interest.

2          THE COURT:  Well, have they been asked whether

3   they -- or do you know whether those 12 people want

4   representation or are going to appear by counsel at all?

5          MR. BRADEN:  I have not spoken to any of the

6   actual 12 members, although we have discussed that with

7   the speaker and do intend to contact them, but we are not

8   presently representing them.

9          THE COURT:  How many of the 12 are Democrats and

10  how many are Republicans and how many Independents?

11         MR. BRADEN:  Mark Braden.  I believe all of the

12  12 are members of the Democratic Party.  I believe that's

13  correct.

14         MR. TROY:  Your Honor, Tony Troy.  Some of them,

15  I can think of one or two examples, were not in office

16  when the 2011 plan was adopted.  One specific is due this

17  year, and the seat that was previously held, that person

18  is now in the state Senate.

19         THE COURT:  But they're all Democrats; is that

20  right?

21         MR. TROY:  Your Honor, Tony Troy.  I believe that

22  is correct.

23         THE COURT:  Well, is there any reason you all

24  can't talk to these people?

25         MR. TROY:  Your Honor, Tony Troy.  I just wanted

1  to be sure in approaching them that I was not approaching

2  someone already represented, and Mr. Braden indicated as

3  he stated, he does not represent the individual members.

4  I am going to be able to have more access to them at the

5  end of this week when the Assembly adjourns.

6          THE COURT:  Okay.  The question of privilege was

7  raised in your papers, your filing, and yet there's no

8  particular way of sorting out the privilege issue that's

9  specified.  What is the volume of the privilege claims, A,

10  by the plaintiffs?  Do the plaintiffs have any privilege

11  claims?

12          MS. KHANNA:  Your Honor, this is Abha Khanna for

13  the plaintiff.  Plaintiffs do not have any specific claim

14  of privilege other than the ordinary attorney-client

15  privilege and attorney work product privileges.  I believe

16  the issue of privilege that we discussed during our Rule

17  26(f) conference was mostly the legislative privilege

18  which I understand would be in the intervenor defendants'

19  hands to raise, and I'm not sure if we specifically

20  discussed it on our call, but I would understand that the

21  way it would be -- that it would arise is upon issuance of

22  discovery or deposition notices.

23          THE COURT:  When are you filing written

24  discovery?

25          MS. KHANNA:  We're in the process of drafting

1    discovery now, and we hope to issue that as soon as we

2    can.  We certainly don't want to unnecessarily delay any

3    part of the case.

4              THE COURT:  It's been a month almost since we

5    talked, three weeks.  You all haven't gotten your

6    discovery out yet?

7              MS. KHANNA:  Not yet, Your Honor.  I think we've

8    learned a lot from the initial disclosures from each of

9    the parties, and we will certainly be getting out our

10   first round of discovery very soon.

11             THE COURT:  What does "very soon" mean?

12             MS. KHANNA:  We would hope by the end of the week

13   if not early next week.

14             THE COURT:  What about the defendants and the

15   intervenor defendants, what written discovery are you

16   going to do?

17             MR. BRADEN:  Your Honor, this is Mark Braden for

18   the intervening defendants.  We're in the process of

19   making a decision on that.  Frankly, we have not reached a

20   conclusion.  I assume it will be modest in comparison to

21   the discovery, written discovery proposed by the

22   plaintiffs in this litigation.

23             THE COURT:  On what date do you propose to issue

24   yours?

25             MR. BRADEN:  Well, I have not proposed a date,

1    Your Honor, but we can most certainly meet the time frame

2    of beginning early next week.

3         THE COURT:  Mr. Troy, how much written paper

4    discovery, et cetera, are you proposing to do, written

5    discovery?

6         MR. TROY:  Your Honor, I haven't formulated -- I

7    anticipate minimal.  Most of it would be interviews and/or

8    depositions.

9         MS. KHANNA:  Your Honor, this is Abha Khanna for

10   the plaintiff again.  I would also just like to clarify

11   that plaintiffs, I think over a month ago, have issued

12   FOIA requests of the state which would include state

13   agencies as well as the state General Assembly.  So we're

14   trying to be efficient in our discovery to make sure we're

15   not being duplicative of any FOIA requests and can make

16   sure that we can start getting documents through that

17   means as well.

18        THE COURT:  Well, you had issued FOIA requests,

19   my recollection is, when we talked on the telephone some

20   three weeks ago.  When are the responses due?

21        MS. KHANNA:  I believe that my colleagues have

22   been in touch with -- I think actually counsel for the

23   defendant is also representing the state when it comes to

24   the FOIA requests as far as handling that, and I think

25   there's been some communications back and forth about

1    narrowing search terms and the costs for DVDs, but my
2    colleagues in D.C., I believe, are working consistently
3    and actively with the state to get those documents
4    produced as soon as possible.
5              THE COURT:  Slow down a little bit.  Those are
6    all somewhat amorphous statements with respect to dates.
7    So I guess my question is, on what date were the FOIA
8    requests issued?
9              MS. KHANNA:  I'd have to check, Your Honor.
10             THE COURT:  Is somebody in Washington handling
11   that?
12             MS. KHANNA:  Yes.
13             THE COURT:  Where are you?
14             MS. KHANNA:  I'm located in Seattle.  I do have a
15   colleague who is running point on the FOIA requests, and I
16   know that they've been in active communication with the
17   state to narrow it down to figure out a budget.  Honestly,
18   when it comes to the deadline or the actual date they're
19   going to be produced, I think that's in the hands of the
20   state right now.
21             THE COURT:  Mr. Troy, are you representing the
22   defendants on the FOIA issue?
23             MR. TROY:  Yes, Your Honor.  More specific, there
24   were four FOIA requests that were sent; one to the House
25   of Delegates, one to the state Senate, one to Legislative

 1   Services, and one to the solicitor general of the Office

 2   of Attorney General.  We are representing the latter only.

 3   I do know --

 4           THE COURT:  Wait a minute, Mr. Troy.  One was

 5   sent to the Senate, one was sent to Legislative Services,

 6   and one was sent to who else?

 7           MR. TROY:  The House of Delegates, the state

 8   Senate, Legislative Services, and the solicitor general.

 9           THE COURT:  And you are representing the

10   solicitor general only?

11           MR. TROY:  Correct, Your Honor.

12           THE COURT:  Who is representing the Senate, the

13   delegates, and Legislative Services?

14           MR. TROY:  Well, I don't think they have

15   representation.  I can report to the Court, based on my

16   knowledge, that both the Senate and Legislative Services

17   have already responded to the FOIA requests.  I do not

18   know the status yet of the House of Delegates.  On behalf

19   of the Solicitor General's Office, we have asked for

20   confirmation on search terms so that we can then estimate

21   the overall costs involved for production.

22           We're waiting for the plaintiffs to confirm the

23   search terms.  Once they do that, we will know the costs

24   of production.  They have to pay for that, and then they

25   get the information that they are seeking.

1           THE COURT:  Well, it seems to me that we're going

2      to need the person who knows about this on this telephone

3      call, so would you have one of your assistants get that

4      person in this call, please, Ms. -- I'm sorry, I've lost

5      your last name.

6           MS. KHANNA:  Khanna.  Yes.  I have to say, Your

7      Honor, I'm not aware we actually have any documents from

8      any of the agencies.

9           THE COURT:  Ms. Khanna, excuse me.  That's not

10     what I'm getting at.  I want somebody on the call who

11     knows this information.  You say you don't know it.  I

12     understand you don't, but I think we need to have somebody

13     on the call who does know it.  So ask one of your

14     secretaries or legal assistant or somebody, please, to

15     call, get the people in Washington and get them on this

16     call so we can -- this is fairly critical in terms of

17     timing for everybody, and it seems to me like we haven't

18     moved any further than when we talked three weeks ago.  So

19     can you get someone to do that?

20          MS. KHANNA:  I am trying to page somebody at this

21     very moment if he's available.

22          THE COURT:  Or maybe you can email them in this

23     wonderful world of technology.

24          MS. KHANNA:  Yes, Your Honor, I'll send him that

25     email right now.

1          THE COURT:  Mr. Troy, do you know the volume of

2    the amount with which the Senate responded?

3          MR. TROY:  Your Honor, I do not, and even as Your

4    Honor knows, I've always said I graduated from a yellow

5    legal pad to a white legal pad.  If they told me the

6    amount of gigabytes, I don't even know what a gigabyte is,

7    Judge.

8          MR. BRADEN:  Your Honor, this is Mark Braden.  I

9    believe my associate Katherine McKnight had the most

10   recent conversations.  We do represent the clerk of the

11   House who received a Freedom of Information request.  I

12   believe they received it prior to us intervening in this

13   case, but they have been working on it, and, Katherine, do

14   you have a reading on where they are in the process of

15   responding to that request?

16         MS. McKNIGHT:  I had understood -- this is Kate

17   McKnight, and I had understood that the clerk's office had

18   responded and had produced materials responsive to that

19   request.  I believe it was Marc Elias of Perkins Coie's

20   D.C. office who had sent the FOIA request, and I believe

21   they have already sent in a response.

22         THE COURT:  And the response is what volume; do

23   you know, Ms. McKnight?

24         MS. McKNIGHT:  Probably about 60 to 80 pages or

25   so of documents and a couple of CDs of floor testimony.

1        THE COURT:  All right.  And you are, Mr. Braden,

2   Ms. McKnight, you are representing the House of Delegates.

3   Do you know, either one of you, if anyone is representing

4   the Senate or Legislative Services division?

5        MR. BRADEN:  We do not represent the Senate.

6        THE COURT:  I know that.  I said do you know who

7   is.

8        MR. BRADEN:  I believe that the Attorney General

9   in Virginia has the responsibility to represent the Senate

10  unless the Senate hires separate counsel.  That's my

11  understanding of Virginia procedure in this area.

12       THE COURT:  But nobody has talked to those

13  people.  All right --

14       MR. TROY:  Your Honor, I'm not sure what Mr.

15  Braden said is correct, but I am of the understanding that

16  without seeking legal representation, responses have

17  already been made by the Senate and by Legislative

18  Services.

19       THE COURT:  Okay.

20       MR. TROY:  I received an email, I think -- I'm

21  losing time.  I think -- is today Tuesday?  Yes,

22  yesterday, from the head of Legislative Services advising

23  that the submission had been made responding to the FOIA

24  and that a copy of that was available to us to be picked

25  up and that it was on a thumb drive.

1          THE COURT:  Are there any objections -- do we

2     know if there are any objections, Ms. Khanna, to any of

3     the responses to FOIA?

4          MS. KHANNA:  I'm sorry, Your Honor.  I'm not

5     aware of any objections right now, and as I mentioned

6     before, I'm not aware of which documents have and have not

7     been produced, so I'm trying my best to get my colleague

8     on the line.

9          THE COURT:  All right.

10         MS. KHANNA:  I think somebody actually is calling

11    in right now.

12         THE COURT:  Is this a dial-in call?

13         MS. KHANNA:  It should be, yes.

14         THE COURT:  Okay.

15         MR. TROY:  Your Honor, this is Tony Troy.  I can

16    advise the Court that in our review and response under

17    FOIA, we are not going to be applying any FOIA exceptions

18    on the theory or grounds that under discovery they

19    probably could get anything that is exempt under FOIA, and

20    so we figured we're not going to argue about it now just

21    to have them get it later.  So we're trying to make it as

22    full as possible, Your Honor.

23         THE COURT:  All right.  Who is that?

24         MS. BRANCH:  Hi, this is Aria Branch from

25    Perkins.

```
 1              THE COURT:  B-r-a-n-d?

 2              MS. BRANCH:  Branch, like a tree branch.

 3              THE COURT:  All right, Ms. Branch, are you in

 4    charge of the documents in this case?

 5              MS. BRANCH:  Yes, I am managing them.

 6              THE COURT:  Here is the question:  Has the Senate

 7    of Virginia responded to the FOIA request?

 8              MS. BRANCH:  Yes.

 9              THE COURT:  Are there any objections to the FOIA

10    request that have to be resolved by this or any other

11    court?

12              MS. BRANCH:  I do not think so at this time.

13              THE COURT:  House of Delegates, has the House of

14    Delegates responded to the FOIA request?

15              MS. BRANCH:  Yes.

16              THE COURT:  Are there any objections that have to

17    be resolved by this or any other court to the response of

18    the FOIA request by --

19              MS. BRANCH:  Not at this time.

20              THE COURT:  Legislative Services.

21              MS. BRANCH:  Yes.

22              THE COURT:  Have they responded?

23              MS. BRANCH:  Yes, they have.

24              THE COURT:  And are there any issues or

25    objections or problems that have to be resolved by this or
```

1   any other court as to the response made by the House of

2   Delegates?

3            MS. BRANCH:  Do you mean Division of Legislative

4   Services?

5            THE COURT:  I'm sorry.  Thank you so much for

6   correcting me.

7            MS. BRANCH:  Not at this time.

8            THE COURT:  Mr. Troy tells me that the Solicitor

9   General has asked for search terms.  Where do you stand on

10  getting the search terms identified for Mr. Troy on behalf

11  of the Solicitor General?

12           MS. BRANCH:  I believe we sent an email to his

13  office, I think about a week and a half ago, providing

14  search terms.

15           THE COURT:  Mr. Troy?

16           MR. TROY:  Your Honor, I will have to check.  The

17  individual who is handling that on our end is in -- out of

18  the office in a court case currently being handled today,

19  and I will report to the Court tomorrow.  It was my

20  understanding that we were trying to finalize search

21  terms, and I would stand -- I'm willing to stand

22  corrected, but I think the bottom line is tomorrow we can

23  finalize search terms, and once they are finalized, we can

24  estimate the costs, and if the plaintiffs are willing to

25  pay the costs, we can run those in about two or three

1   days, I would think.

2          THE COURT:  Let's get that accomplished tomorrow

3   and get the agreement to pay or not to pay or define what

4   you want, please, Ms. Branch.  What is tomorrow?  Tomorrow

5   is Wednesday?  Get that accomplished by no later than

6   Friday, produce the documents on Monday.

7          MR. TROY:  I was going to say, Your Honor, that

8   sounds reasonable, but Your Honor would say, so what.  I'm

9   sorry.

10         THE COURT:  No, I wouldn't.  I would be grateful

11  for having done something reasonable.  Now, that being the

12  case, I'd like to have all written discovery posited, I

13  believe, by March 5th.  That means served.  And then

14  responses will be, according to your agreement,

15  March 20th.  And objections, according to your agreement,

16  by March 15th -- the objections are due on the 15th.  The

17  responses are due on the 20th.  The responses are the

18  providing of the documents that are not objected to.

19  That's according to paragraph C of your proposal.  That's

20  the schedule you set for yourselves.

21         You need to work out an agreement to settle that

22  and get it all straight.  If there's any objection to or

23  if there's any objection, you need to get the objections

24  straightened out and get those straightened out by March

25  the 23rd -- 24th.  Excuse me.

1          MR. TROY:  Your Honor, Tony Troy.  That's the

2     date for resolving any objections among ourselves?

3          THE COURT:  Among yourselves, and if you don't

4     have them resolved, then file motions to compel on

5     March 25th, and actually, you do it the way it's in my

6     pretrial order which is call and let's talk about it.

7          You all get it sorted out, identify what the

8     issues are, call in here and get a telephone conference,

9     and we'll go from there.

10          Now, privilege documents now.  You're going to

11     get the documents, and you're going to know about the

12     privilege, any claims of privilege on the 15th because

13     you're going to object by the 15th.  So you'll know about

14     the claims of privilege.  So you need to assert the claim

15     of privilege -- if there's a motion to compel on the claim

16     of privilege, you need to file that.  If you will file

17     that, please -- excuse me.  The 15th is a Sunday, so you

18     should have your objections in on the 16th.

19          The motions to compel on the basis of a privilege

20     with briefs, et cetera, would be due -- I'm sure you're

21     already working on the legislative privilege, are you not,

22     Mr. Braden?

23          MR. BRADEN:  Your Honor, Mark Braden.  Yeah, I

24     believe we still have some of those briefs in the word

25     processor.

1            THE COURT:  In addition to that, as I recall it,

2    in the *Page* case, they ended up resolving all the claims

3    of privilege.

4            MR. BRADEN:  Yes, we did, and, Your Honor, I hope

5    it will happen the same way this time.

6            THE COURT:  If there are any unresolved claims of

7    privilege, let's have those filed by March 23rd.  The

8    briefs on the motion to compel would be March 23rd.

9    Response, March 31st; reply, April 6th.  Okay?

10           Experts, plaintiffs, how many experts are you

11   going to have and who are they?  You're going to have to

12   file the reports by March 11th.  Surely you know now who

13   they are.

14           MS. KHANNA:  Yes, Your Honor.  Plaintiff

15   anticipates having only one expert, and he's going to be

16   Stephen Ansolabehere.  He's a Harvard professor.

17           THE COURT:  Can you spell that name?

18           MS. KHANNA:  Absolutely.  It is --

19           THE COURT:  Slowly.

20           MS. KHANNA:  Sure.  The last name is

21   A-n-s-o-l-a-b-e-h-e-r-e.  First name is Stephen,

22   S-t-e-p-h-e-n.

23           THE COURT:  And he is an expert on what, Ms.

24   Khanna?

25           MS. KHANNA:  He's an expert on redistricting and

1    voting -- racialized voting patterns.

2              THE COURT:  Has he ever been involved in any

3    Virginia cases before?

4              MS. KHANNA:  I don't believe he's been involved

5    in any Virginia cases, but he's certainly been involved in

6    redistricting cases.

7              THE COURT:  Defendants and intervenor defendants,

8    how many experts are you having and who are they?  You are

9    due to provide yours on April 10th.  Surely you know who

10   they are.

11             MR. BRADEN:  Your Honor, it's Mark Braden for the

12   defendant intervenors.  I think it's likely we will call

13   Dr. Tom Brunell.

14             THE COURT:  Tom who?

15             MR. BRADEN:  Thomas Brunell.

16             THE COURT:  How do you spell that?  B-u-r --

17             MR. BRADEN:  B-r-u-n-e-l-l.

18             THE COURT:  Brunell, okay.

19             MR. BRADEN:  And I believe he testified in the

20   *Wise* case, if my memory serves me correct, ten years ago

21   in Virginia.

22             THE COURT:  Anybody else?

23             MR. BRADEN:  And Dr. Tom Hofeller.

24             THE COURT:  How do you spell that name?

25             MR. BRADEN:  Give me one second here so I am

1  telling you right.  H-o-f-e-l-l-e-r.

2       THE COURT:  H-o-f-e-l-l-e-r?

3       MR. BRADEN:  Yes.

4       THE COURT:  Are both Toms Thomas?

5       MR. BRADEN:  They are both Thomas, yes.

6       THE COURT:  So now you know who each other's

7  experts are.  Now, here's the question:  You all have

8  talked to your experts.  You raised the question before

9  that there were 12 districts that needed to be dealt with.

10 Have your experts committed to give you what you need to

11 try this case by July 7th as to the 12 districts?  Ms.

12 Khanna?

13      MS. KHANNA:  Your Honor, if I understood the

14 question correctly, is our expert prepared to testify as

15 to each of the 12 districts or as to our case in total by

16 the July 7th trial date, and the answer to that is yes.

17      THE COURT:  And the report will have whatever

18 he's going to say in it on those topics on March 11th; is

19 that right?

20      MS. KHANNA:  Yes, Your Honor.  That report will

21 address his testimony in this case.

22      THE COURT:  All right.  Are the defendants

23 putting on any experts?  I know Mr. Braden spoke for the

24 intervenor defendants.  Are the defendants putting on any

25 experts?

1          MR. TROY:  Your Honor, we are discussing an
2    expert on compactness issues, but we have not made a final
3    decision at this time.
4          THE COURT:  Notify them who the compactness
5    expert is by -- can you do that by Monday?
6          MR. TROY:  Yes, Your Honor.
7          THE COURT:  And that is what date?  The 2nd of
8    March.
9          MR. TROY:  I don't have a calendar in front of
10   me, Judge.  I apologize.
11         THE COURT:  That's all right.  I think that's
12   right.  It is.  Okay, so you all --
13         MR. BRADEN:  Your Honor, it's Mark Braden for the
14   defendant intervenors.  Dr. Brunell is most certainly
15   locked in and is prepared to testify on these dates and
16   have his expert report done in the manner set forth in the
17   proposed order.
18         Dr. Hofeller, we've spoken with him, and we
19   anticipate he'll be able to do this, but he has -- he's
20   involved in one of the North Carolina -- actually a couple
21   of the North Carolina election cases, and he's presently
22   trying to juggle those to make sure that this will work.
23   If we do not use him as a witness, we will --  we've been
24   in contact with Dr. Jonathan Katz from Cal Tech, and he's
25   willing to do it if we cannot make Dr. Hofeller's schedule

 1   work.

 2          THE COURT:  Jonathan who?

 3          MR. BRADEN:  Katz, K-a-t-z.

 4          THE COURT:  And Jonathan is J-o-n-a-t-h-a-n?

 5          MR. BRADEN:  Yes.

 6          THE COURT:  But it's one or the other.

 7          MR. BRADEN:  That is correct.  We do not

 8   anticipate -- we only anticipate having two expert

 9   witnesses.

10          THE COURT:  Given the volume of discovery that

11   you know from the Freedom of Information requests, now

12   that you have your Rule 26 exchanges, you know what your

13   experts can accomplish and when they can accomplish it, is

14   there any barrier that you have identified to trying the

15   case on the set trial date?

16          MS. KHANNA:  Your Honor, this is Abha Khanna,

17   counsel for plaintiffs.  I don't believe anything that

18   we've discussed changes our readiness and ability to try

19   this case on July 7th.

20          THE COURT:  Defendants and intervenor defendants?

21          MR. TROY:  Your Honor, this is Tony Troy.  I

22   believe that we can and will meet the trial dates, July 7,

23   8, 9 trial dates.

24          THE COURT:  Before I enter this order, I want to

25   make sure that if you all complain that it was very

```
 1    difficult to do and that we were moving faster than we
 2    should move, and I want to make sure and report to my
 3    colleagues that the task we have set for you is an
 4    accomplishable task in perspective of your having more
 5    information about the case than you did when we originally
 6    set the date.
 7            That's why I'm asking the question, and I gather
 8    from all of you that it is a doable thing.  Am I correct
 9    about that?
10            MR. BRADEN:  Your Honor, for the defendant
11    intervenors, Mark Braden, the answer is yes.
12            THE COURT:  All right.  Mr. Troy, the answer
13    for -- I cut you off.  What is it?
14            MR. TROY:  Your Honor, I indicated yes, we can
15    and will meet the July 7, 8, 9 dates.
16            THE COURT:  All right.  I'm a little troubled by
17    the dispositive motion provision.  I can't understand how
18    there'll be a dispositive motion in this case.  Can
19    somebody help me with what we're talking about there so I
20    understand scheduling the dispositive motions?
21            MS. KHANNA:  Your Honor, this Abha Khanna again,
22    counsel for the plaintiff.  During our Rule 26(f)
23    conference, we did discuss -- I believe we all agreed that
24    we don't believe dispositive motions are likely based on
25    what we know of the case at this moment but that
```

1    consistent with the Court's usual scheduling order, and I

2    think that the conversation that took place with the Court

3    during the last conference call, we put in the deadline

4    just in case to make sure we have that backstop and that

5    the Court is provided time to resolve anything.

6         THE COURT:  Well, the problem that I see with

7    that is this:  The date you have chosen, May 28th, means a

8    reply in the ordinary course, counting the time allowed

9    for mailing which happens with electronic filing, of

10   course, puts the response at June 11th and a reply at

11   June 17th, and the trial date is three weeks later or two

12   and a half weeks later.

13        That doesn't allow much time for dealing with any

14   dispositive motions, and so in my review of what you all

15   have proposed and mindful that it's preferable to have

16   discovery concluded before dispositive motions were filed,

17   I would move the discovery cutoff forward as well as the

18   dispositive motion date, and so before I did that, I

19   certainly wanted to talk with you all about your

20   discovery.

21        Certainly you can get all the fact discovery done

22   before you have experts.  So you're going to be doing fact

23   discovery in February and March, and then your experts

24   will have that information when they're doing their

25   reports.  You'll have the expert discovery, I would think,

1  the very first -- you don't have but three, possibly four

2  experts.  You have those depositions taken by the first of

3  April -- the first of May or by the first week, full week

4  in May which ends on the 8th.  So why would you need to

5  have discovery out until the 22nd I suppose was the

6  question that I was trying to get out on the table.  So

7  help me with that, please, Ms. Khanna.

8          MS. KHANNA:  Absolutely, Your Honor.  I believe

9  when we all had our conversation on the Rule 26(f)

10  conference, we wanted to basically acknowledge that there

11  might be a significant amount of documents to go through

12  and a significant amount of witnesses to cull through.  So

13  we wanted to provide ourselves the time within the Court's

14  framework for the July 7th trial date that the Court set

15  to make sure we had enough time to get all of that taken

16  care of which would have included resolving any discovery

17  objections or anything that would arise in that time.

18          As I mentioned, I don't think any of the parties

19  anticipate at this moment, based on our call, filing a

20  dispositive motion, but we wanted to keep that deadline in

21  there, and we wanted it to be after the close of

22  discovery.  Speaking from plaintiffs' perspective, I think

23  our interest would be in having -- since we don't believe

24  that dispositive motions will be necessary at this time,

25  our interest would be in really getting ourselves enough

1  time and buffer to complete all discovery, resolve all

2  objections, make sure any follow-up discovery is also

3  pursued when it comes after a deposition or anything else

4  so that we can have that time built into the schedule.

5        THE COURT:  Which is why you chose the 22nd of

6  May knowing that the rules require that the discovery

7  cutoff means that all objections have to be brought

8  forward and resolved in time to allow completion of

9  discovery by the cutoff date; is that correct?

10        MS. KHANNA:  Yes, Your Honor.

11        THE COURT:  Counsel for the defendants, what do

12  you all say?

13        MR. BRADEN:  Mark Braden for the defendant

14  intervenors.  We share the view that dispositive motions

15  are very unlikely.  To be candid with the Court, the only

16  possibility we think of them likely would be in a

17  circumstance that the Supreme Court were to surprise us

18  with some jurisprudence that's pending right now that

19  might send this off in a different direction than we

20  anticipate.

21        THE COURT:  If that happens, we have to sort

22  through different -- we'll just have to sort through it.

23  I listened to the arguments on that case today to get

24  ready for this call.  I'm not quite sure exactly how that

25  case would help resolve this case, but I can understand

1    from the thrust of some of the questioning and some of the

2    arguments that it might depending upon -- I think it might

3    more than I thought it would when I was just reading the

4    briefs.

5            So if that happens, we're just going to have to

6    assess where we stand.  We can't plan against what might

7    happen there, and we'll wait and see.

8            MR. BRADEN:  Our interest in discovery really was

9    expressed, to a large degree, by the plaintiffs' counsel

10   where our only concern, frankly, on the discovery time

11   frame is the question of how many depositions in total

12   will be involved.  It will be a brisk schedule but one

13   that we can most certainly live with.

14           THE COURT:  Let's leave the discovery cutoff on

15   the 22nd.  We'll leave the dispositive motion cutoff when

16   it is and see.  I was really trying to save you all

17   expense and money in fact if you did have a dispositive

18   motion by changing the date, but since you don't really

19   think there's going to be any, I think we'll leave it the

20   way you've proposed it.  I understand your rationale.

21           All right, the motions *in limine*, if they're

22   filed on the 15th -- I mean on the 5th of June, they are

23   11 days -- 14 days later is June 19th, and six days after

24   that is the 25th.  It won't be ripe until the 25th in the

25   ordinary course of briefing, so I don't know what kind of

1    motions *in limine* we think we're going to have.  But let's

2    see if we can't move those dates up a little bit and

3    shorten the briefing time.

4          Why don't we do this on motions *in limine*:  File

5    motions *in limine* by the 29th of May and file reply briefs

6    by the 5th of June, response briefs by the 5th of June and

7    reply briefs by the 12th of June.  I doubt you're going to

8    really have any motions *in limine*.  All right?  5/29, 6/5,

9    and 6/12.  Is that what I said?

10          MS. KHANNA:  Yes, Your Honor.

11          THE COURT:  If something comes up and there's a

12    big issue and we need to adjust these schedules, that's,

13    in part, what we have to do by keeping in touch with each

14    other.  All right.  I'd like for you all then to revise

15    this schedule.  In addition -- do you have a disk or

16    some -- I don't know what the right technology is.  Who

17    prepared this, the plaintiff or the defendant?

18          MS. KHANNA:  Your Honor, this is Abha Khanna.

19    Plaintiffs' counsel prepared the document and received the

20    input of all the other parties.

21          THE COURT:  Do you have a way of getting to me

22    this basic document, to Mr. Parsons so that we can use it

23    as a predicate without retyping the whole thing?

24          MS. KHANNA:  Absolutely.  I can send the Word

25    document version to Mr. Parsons.

1          THE COURT:  That's fine.  Then the other thing is

2    I will provide in here that the initial Pretrial Schedule

3    A that is listed in here will -- that I'll list in here,

4    and it's Pretrial Schedule A that's in effect in all cases

5    assigned to me, will be in effect -- that and the

6    scheduling order will be in effect and controlling unless

7    superseded by explicit provisions of this order, and that

8    will be in here.  I'll modify it that way.

9          Are there going to be any additional parties

10   joined?  You said you were going to file it ten days from

11   the date of this filing.  I don't know whether you meant

12   tendering the proposed order or the date it was entered,

13   but do you know of any additional parties, either one of

14   you?

15         MS. KHANNA:  Your Honor, counsel for plaintiffs

16   are not aware of any additional parties that would be

17   joining.

18         THE COURT:  All right.

19         MR. BRADEN:  Intervenors are not either.

20         THE COURT:  I have this question for you,

21   defendants and intervenors:  In the Richmond

22   Times-Dispatch a couple of weeks ago, there was an

23   indication that there were a number of -- that members of

24   the House of Delegates whose seats were at issue here, the

25   districts that were at issue weren't happy with the notion

1   of a lawsuit.  Has anybody talked to any of those people?

2   You know what you read in the paper and you don't know

3   what that really means, but has anybody talked to them

4   about whether they want in on the action here or are

5   hiring lawyers?

6           MR. BRADEN:  Your Honor, from the defendant

7   intervenors, I've spoken with a number of members of the

8   House obviously in regards to this litigation.  I have not

9   seen the article in the Richmond Times-Dispatch, so I

10  can't comment upon those individuals, but no one that I

11  spoke to indicated any desire to join the litigation

12  separately.

13          THE COURT:  I don't think -- the article didn't

14  mention any of the people.  It just said affected

15  delegates I think is what it said, something like that.

16  You know how reliable that can be.

17          MR. BRADEN:  Yes, Your Honor.

18          THE COURT:  So my point was that nobody knows of

19  anybody who wants in, so we'll just proceed without them.

20  That's their business.  They know what they can do if they

21  want to.  All right.

22          MR. TROY:  Your Honor, this is Tony Troy.  To the

23  extent it helps, I know that members of the Black Caucus,

24  most, if not all, of the 12 districts in question were

25  apprised of the lawsuit.  I do not have enough information

1    to know their reactions or their intents.

2          THE COURT:  That's fine.  As long as I don't have

3    to deal with it, that's all right with me.  I don't need

4    to get into that thicket.  All right, you have a provision

5    in here about discovery summaries.  I don't think that's

6    going -- I don't think that's a productive use of your

7    time in this case, and it can end up being expensive, so

8    why don't we exclude that from the pretrial order.  When I

9    get to editing it, that's what we'll do, is take that out

10   unless you all particularly want it.

11         MS. KHANNA:  No, Your Honor.  We see no reason

12   for that.

13         MR. BRADEN:  No, Your Honor, from the

14   intervenors.

15         THE COURT:  All right.  Now, if you're going to

16   be -- let me tell you how we like to see the depositions.

17   I prefer and I think all the judges prefer not to have

18   depositions.  But that said, we recognize that there may

19   be.

20         If you are going to have them, what you do is you

21   tender a deposition with the cover page and just the parts

22   that are designated, not the whole deposition, just the

23   pages that are designated including the fairness

24   designations in order that they appear, in other words, so

25   that the fairness context appears.  And if there are any

1    remaining objections that you all have not resolved, then

2    you are to highlight in one color the testimony being

3    offered by the plaintiff and highlight in another color

4    the testimony being offered by the defendants to which

5    there is an objection, and annotate in the margin what the

6    objection is, Rule 403, Rule 803(6), whatever it is.  Then

7    we'll rule on the objections once we get that done.

8    That's what you do after you kind of winnow down through

9    the process you have outlined in paragraph 11.  Do you

10   understand what I'm saying?

11          MS. KHANNA:  Yes, Your Honor.  This is counsel

12   for plaintiff.

13          MR. BRADEN:  Yes, Your Honor.

14          THE COURT:  So all we want is the testimony

15   that's actually being offered.  Now, there's two ways to

16   do that.  If you've got a page and you only have one or

17   two lines on it.  You can either put something on and

18   cover it out and copy it or do what you want to do, or you

19   can bracket it on the right-hand margin and left-hand

20   margin so we know where it is.  Then we won't read

21   anything but the bracketed text.

22          Are you with me so far?  Ms. Branch, you're

23   probably going to end up doing this.  Do you follow me?

24          MS. BRANCH:  Yes, Your Honor.

25          THE COURT:  If you all have some better way to do

1    it, that's fine, but what we want is just to know what you

2    are offering, and of those things that you're offering, if

3    there are any unresolved objections, we want to know who

4    is making them.  Pick a color.  I usually use blue for the

5    plaintiff and yellow for the defendant, and then annotate

6    in red pen or something out to the margin the basis for

7    the objection by word or by rule number or both.  Does

8    that help out?

9             MS. KHANNA:  Yes, Your Honor.  That makes it very

10   clear.

11            THE COURT:  If you have any questions, you can

12   call.  I've done all the talking and raising the questions

13   so far.  Are there any questions or problems that you all

14   have to raise?

15            MS. KHANNA:  Nothing further from the plaintiffs,

16   Your Honor.  We appreciate your time.

17            MR. BRADEN:  Nothing from the intervenors, Your

18   Honor.

19            MR. TROY:  Nothing further from the defendants,

20   Your Honor.  This is Tony Troy.

21            THE COURT:  All right.  Do you all want a copy of

22   this transcript so that you can know exactly what went on

23   and who struck John and said what?

24            MR. TROY:  I think that would be helpful.

25            THE COURT:  Everybody want one?

1          MS. KHANNA:  Yes, Your Honor, I think that would

2    be helpful to counsel for the plaintiffs.

3          MR. BRADEN:  Yes, Your Honor.

4          THE COURT:  All right.  You all can have it, and

5    consider your order placed.  Ms. Peterson will take care

6    of it.  Thank you all very much.

7

8                    (End of proceedings.)

9

10

11          I certify that the foregoing is a correct

12    transcript from the record of proceedings in the

13    above-entitled matter.

14

15

16    _____/s/_____              _____

      P. E. Peterson, RPR              Date

17

18

19

20

21

22

23

24

25