IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*,<br><br>         Plaintiffs,<br><br>    v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS, *et al.*,<br><br>         Defendants,<br><br>    v.<br><br>VIRGINIA HOUSE OF DELEGATES, *et al.*,<br><br>         Intervenor-Defendants. | Civil Action No. 3:14-cv-00852-REP-GBL-BMK |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

As a party to this lawsuit, the House must produce all documents properly requested that are "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1)—unless it can carry the heavy burden of establishing a valid privilege.[1] It has not met that obligation. Instead, relying on sweeping and illogical assertions of the legislative privilege and the attorney-client privilege, the House has withheld dozens of admittedly relevant documents. This Court should reject the House's misguided privilege claims.

---

[1] For purposes of this motion, "the House" refers to Intervenor-Defendants the Virginia House of Delegates and Speaker of the House William J. Howell.

The House itself may not assert the legislative privilege on behalf of individual legislators, and that privilege would yield here even if the House could assert (and prove) it. The House's claims of attorney-client privilege fail for similar reasons. With few exceptions, the House seeks to withhold documents reflecting legal advice given to nonparties by those nonparties' lawyers. But the House has no standing to raise privileges held by third parties and cannot evade its discovery duties with such tactics. This Court should grant Plaintiffs' motion and order the House to produce virtually all of the documents listed on the House's privilege logs.

## II.      BACKGROUND

In this lawsuit, Plaintiffs challenge twelve Virginia House of Delegates districts as unlawful racial gerrymanders in violation of the Equal Protection Clause of the U.S. Constitution.  Plaintiffs did not name the House or any individual legislators as defendants. Soon after Plaintiffs filed their complaint, however, the House moved to intervene. *See* Dkt. 12. This Court granted that motion. *See* Dkt. 26. At a subsequent hearing, the House made clear that it does not represent and does not speak for any individual delegates except Speaker Howell:

> THE COURT: And [the individual delegates representing the 12 challenged districts] are not represented in this action even though they are current members of the House of Delegates?
>
> MR. BRADEN: We represent the House of Delegates. *We do not necessarily represent any individual member other than the speaker.*

Declaration of Ryan Spear ("Spear Decl."), Ex. A at 9 (transcript of Feb. 24, 2015 hearing) (emphasis added).

The parties are now in the midst of accelerated discovery. On March 5, 2015, Plaintiffs served the House with Plaintiffs' first requests for production of documents under Rules 26 and 34. *See id.*, Ex. B. Among other things, those requests sought:

1. "[A]ll communications [related to the 2011 redistricting process] between or among the Virginia House of Delegates, including but not limited to those members who represent or represented" the challenged districts, *id.*, Ex. B. at 8;

2. "[A]ll communications [related to the 2011 redistricting process] between, among, or with the Virginia House of Delegates and any other individual or entity, including, without limitation, political organizations, lobbyists, political operatives, consultants, constituents, voters, and government officials," *id.*; and

3. "[A]ll communications [related to the 2011 redistricting process] between the Virginia House of Delegates and any and all local, statewide, or national Republican groups, including without limitation the Republican National Committee, National Republican Congressional Committee, Republican State Leadership Committee, Republican Legislative Campaign Committee, current or former members of the local, state, or national Republican group, their staff members, agents, employees, consultants, advisors, experts, and personnel," *id.*, Ex. B at 10.

Plaintiffs also sought, more generally, "all documents related to the [2011 Virginia redistricting process], including without limitation all emails, letters, notes, press releases, and other documents." *Id.*

On March 26, 2015 and April 10, 2015, the House served privilege logs in response to Plaintiffs' discovery requests. *See id.*, Ex. C (Mar. 26, 2015 privilege log); *id.*, Ex. D (Apr. 10, 2015 supplemental privilege log). According to those privilege logs, the House is withholding emails and attachments to or from individual delegates regarding the 2011

70916-0026/LEGAL125605444.1

redistricting process on the ground that those emails are protected by the legislative privilege. The House has also withheld many additional documents under the attorney-client privilege, work-product doctrine, and/or common interest privilege.

Plaintiffs objected to the House's privilege claims and the parties met and conferred to discuss those objections. *See id.* ¶ 2. In an effort to minimize disputes about the legislative privilege, the parties agreed to send a joint letter to delegates whose emails the House has withheld on legislative privilege grounds. That letter informs the affected delegates that the House has custody of responsive emails to or from the delegates; that the House does not represent the delegates; and that it is the responsibility of the individual delegates—not the House—to waive or assert the legislative privilege. *See id.*, Ex. E.

The parties' joint letter was sent to 29 delegates. Twenty-three delegates responded via letter or email message. *See id.*, Ex. F (responses). Of those, four delegates have informed Plaintiffs' counsel and the House's counsel in writing that they have decided to waive the legislative privilege with respect to documents in the House's possession. The remainder have declined to expressly waive the privilege in the manner outlined in the parties' joint letter. Among the latter group, none has entered an appearance in this case, none has asserted that disclosure of their communications would burden them in any way, and none has attempted to establish the elements of the legislative privilege. *See id.*

Plaintiffs are entitled to all relevant documents in the House's possession unless a valid claim of privilege is established by the relevant privilege holder. As explained below, the House cannot assert or establish the legislative privilege over any of the communications

70916-0026/LEGAL125605444.1

at issue. Nor can it assert or establish a valid claim of attorney-client privilege with respect to those documents or other documents. This Court should, accordingly, grant Plaintiffs' motion to compel and order the House to produce the following items listed on the House's privilege logs:

- March 26 Privilege Log (Ex. C):  1-4, 6-25, 37-38, 49-50, 52, 56-58, 66-80.

- April 10 Supplemental Privilege Log (Ex. D):  81-206.[2]

## III.    ARGUMENT

### A.    Privileges Are The Exception, Not the Norm, and Must Be Proven

As explained below, it appears that many of the House's privilege claims are based on the notion that documents are presumed privilege until proven otherwise. In fact, the rule is just the opposite.

"Testimonial and evidentiary privileges exist against the backdrop of the general principle that all reasonable and reliable measures should be employed to ascertain the truth of a disputed matter." *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 660 (E.D. Va. 2014) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980); *Herbert v. Lando*, 441 U.S. 153, 175 (1979)). "Privileges are therefore strictly construed and accepted only where the public good associated with the exclusion of relevant evidence overrides the general principle in favor of admission." *Id.*

---

[2] After the House produced the March 26 privilege log, it agreed to produce the following items listed on that log: 5, 26-36, 39-48, 51, 53-55, and 59-65. Plaintiffs therefore do not challenge those items in this motion.

Because privileges are strictly construed, they are never presumed to apply. Instead, the holder of a privilege "has the burden of demonstrating its applicability." *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011); *see also ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 251 (E.D. Va. 2012) ("A party asserting a privilege has the burden of showing that it applies."); *Almonte v. City of Long Beach*, No. CV 04-4192(JS)(JO), 2005 WL 1796118, at *4 (E.D.N.Y. July 27, 2005) ("[E]very privileged person must, at a proper time, and in a proper manner, claim the benefit of his privilege. The judges are not bound, judicially, to notice a right of privilege, nor to grant it without a claim."). Furthermore, a "conclusory assertion of privilege is insufficient to establish a privilege's applicability to a particular document." *Page*, 15 F. Supp. 3d at 661. To justify withholding relevant communications on privilege grounds, the privilege holder must "'demonstrate specific facts showing that the communications were privileged.'" *Id.* (quoting *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 751 (E.D. Va. 2007)).

It follows from these well-established principles that if a party possesses relevant documents, and if the relevant privilege holder fails to both assert and establish a valid claim of privilege with respect to those documents, then the documents must be produced. That is precisely the case here.

**B.      This Court Should Reject the House's Claims of Legislative Privilege**

Under federal common law, state lawmakers may assert a legislative privilege against compelled disclosure of relevant documents in their possession. *See EEOC v. Wash. Suburban Sanitary Comm'n (*"WSSC"*)*, 631 F.3d 174, 181 (4th Cir. 2011). The privilege

derives from the doctrine of legislative immunity and protects lawmakers from the burdens of litigation. *See Favors v. Cuomo* ("*Favors I*"), 285 F.R.D. 187, 212 (E.D.N.Y. 2012).

Like all other privileges, the legislative privilege "exist[s] against the backdrop of the general principle that all reasonable and reliable measures should be employed to ascertain the truth of a disputed matter." *Page*, 15 F. Supp. 3d at 660. Thus, the privilege is "strictly construed," *id.*, and the privilege holder bears the burden of proving it, *see Perez v. Perry*, No. SA-11-CV-360-OLG, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014).

Here, the House's reliance on the legislative privilege to withhold admittedly relevant communications is flawed for several reasons.

### 1. The House May Not Assert the Legislative Privilege

As an initial matter, the House may not withhold delegates' emails on legislative privilege grounds because the House has no right to assert the legislative privilege.

The legislative privilege belongs exclusively to individual legislators. *See Favors I*, 285 F.R.D. at 211 ("It is well settled that the legislative privilege is a personal one and may be waived or asserted by each individual legislator.") (internal quotation marks and citation omitted). Thus, the privilege may be asserted by individual legislators alone. It may not be asserted by third parties, including the legislative bodies to which legislators belong.[3]

---

[3] *See, e.g.*, *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 295 F. Supp. 2d 585, 590 (D. Md. 2003) ("[T]he Council may not assert the [legislative] privilege on its members' behalf."); *see also Perez*, 2014 WL 106927, at *1 ("[N]either the Governor, nor the Secretary of State or the State of Texas has standing to assert the legislative privilege on behalf of any legislator or staff member."); *Hobart v. City of Stafford*, No. 09-3332, 2010 WL 3419660, at *3 (S.D. Tex. Aug. 30, 2010) (legislative privilege "cannot be invoked by the city or the legislative body"); *ACORN v. Cnty. of Nassau*, No. CV05-2301(JFB)(WDW),

Here, neither the House nor its lawyers claim to represent any of the delegates for whom the House purports to assert the legislative privilege. To the contrary, the House insists that it does *not* represent any of those delegates. *See* Spear Decl., Ex. E at 1 (joint letter to delegates) (Intervenor-Defendants "do not represent you or any individual delegate other than Speaker Howell in these proceedings"). It follows that the House may not assert the legislative privilege on behalf of those delegates. And because the House may not assert (let alone prove) the legislative privilege, Rule 34 requires the House to produce all materials it has withheld under that privilege. *See Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *1 (S.D. Tex. Apr. 3, 2014) (United States was not required to subpoena nonparty legislators to obtain legislators' documents in the possession of the State of Texas, a party to the lawsuit; rather, because "Texas is a party . . . , any documents in its possession are discoverable pursuant to Rule 34").

The House will likely argue that it may, at least, withhold communications to or from delegates who, in response to the joint letter, sent emails or letters purporting to assert the privilege. But merely *invoking* the legislative privilege is not enough to *establish* it.

---

2007 WL 2815810, at *4 (E.D.N.Y. Sept. 25, 2007) (board of trustees could not assert legislative privilege on behalf of individual board members); *Benford v. Am. Broad. Cos.*, 98 F.R.D. 42, 47 (D. Md. 1983) (congressional committee could not assert privilege on behalf of legislators). In some cases, legislative aides are treated as legislators' alter egos and are therefore permitted to assert the privilege on behalf of legislators. *See Gravel v. United States*, 408 U.S. 606, 621-22 (1972). Of course, the House is not akin to a legislator's personal aide. Indeed, its interests are directly opposed to some of the delegates for whom it asserts the privilege. *See* Spear Decl., Ex. A at 9 (counsel for the House explaining that "the interest of the individual members of the house who might be of a different party than the majority who voted for it might have a different interest than the actual House of Delegates").

Like other privileges, the legislative privilege is presumed *not* to apply until it is properly asserted and established. *See Page*, 15 F. Supp. 3d at 660. Here, none of the delegates who informally invoked the privilege has entered an appearance in this case or otherwise indicated an intent to formally press a privilege claim. That lack of action cannot be chalked up to lack of notice; the parties' joint letter clearly informs the delegates that "Plaintiffs intend to file a motion to compel production of these documents with the Court if Intervenors do not produce the documents," and that "even if you assert the legislative privilege in this case, the Court may order the Intervenors to produce your email communications to the Plaintiffs." Spear Decl., Ex. E. Thus, none of the delegates who informally invoked the privilege have met the baseline requirement of claiming the privilege "at a proper time, and in a proper manner." *Almonte*, 2005 WL 1796118, at *4.

Nor have those delegates come forward with "specific facts showing that [their] communications [are] privileged." *Page*, 15 F. Supp. 3d at 661 (internal quotation marks and citation omitted). At most, those delegates have asserted—with no support and, in most cases, *without even reviewing the communications at issue*—that their communications are privileged. That is not enough. Plaintiffs are therefore entitled to all communications to or from delegates, including those who informally asserted the privilege via email or letter, that are in the House's possession, custody, or control.[4]

---

[4] Even more clearly, Plaintiffs are entitled to communications to or from delegates who did not respond to the joint letter. *See Veasey*, 2014 WL 1340077, at *2 ("The privilege is also deemed to be waived as to the 17 legislators who did not respond to defense counsel's inquiry regarding the assertion of the privilege.").

70916-0026/LEGAL125605444.1

**2.       The House Has Waived Any Privilege It Could Have Asserted**

Even if the House could have asserted the legislative privilege on behalf of absent

delegates (which it patently cannot), it waived that prerogative when it voluntarily injected

itself into this case.

The Third Circuit's decision in *Powell v. Ridge* is instructive. There, plaintiffs sued

members of the state's executive branch. Later, several leaders of the Pennsylvania General

Assembly moved to intervene in the suit. *See* 247 F.3d 520, 522 (3d Cir. 2001). The

legislators then refused to respond to plaintiffs' discovery requests, citing legislative

privilege. The district court compelled the legislators to respond and they appealed.

The Third Circuit affirmed, emphasizing that the legislators' position "would enable

them to seek discovery, but not respond to it." *Id*. at 525. That was unfair because the

legislators were not "reluctant participants"; they "voluntarily installed themselves as

defendants." *Id*. Thus, they could not evade their discovery duties by invoking the privilege.

The same reasoning applies in this case. Like the legislators in *Powell*, Intervenor-

Defendants "voluntarily installed themselves as defendants," *id*., and upholding their

assertions of legislative privilege would allow them to enjoy the benefits of party status

without bearing its burdens.  That cannot be, and is not, the law.  This Court should

therefore hold that, even if the House could have asserted the legislative privilege, it waived

that right by injecting itself into this case.

70916-0026/LEGAL125605444.1

### 3.     Many Withheld Communications Are Not Privileged

Even if the House could assert the privilege, and even if the House had not waived its ability to assert the privilege by intervening in this litigation, the House must in any event produce some of the materials simply because they fall outside the scope of the privilege. Alternatively, the House should be ordered to provide additional information to support its privilege claims with respect to those materials.

#### a.     Communications Disclosed to Outsiders

"As with any privilege, the legislative privilege can be waived when the parties holding the privilege share their communications with an outsider." *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-C-5065, 2011 WL 4837508, at *10 (N.D. Ill. 2011). In this context, "outsiders" includes constituents, employees of state agencies, and other non-legislative actors. *See N.C. State Conf. of the NAACP v. McCrory*, Nos. 1:13cv658, 1:13cv660, 1:13cv861, Mem. Order at 20-23 & n.5 (M.D.N.C. Feb. 4, 2015) (Dkt. 231) (collecting cases); *Perez*, 2014 WL 106927, at *2.

As shown below, it appears that individual delegates purposely disclosed to outsiders several of the communications the House seeks to withhold:

#### March 26 Privilege Log (Ex. C)

| Entries | Non-Legislator(s) |
|---|---|
| 37-38, 49-50, 52 | Kirk Showalter, General Registrar, City of Richmond; Lawrence Haake, General Registrar, Chesterfield County |

70916-0026/LEGAL125605444.1

**April 10 Supplemental Privilege Log (Ex. D)**

| Entries | Non-Legislator(s) |
|---------|-------------------|
| 85-86 | Robin Crane, Constituent |
| 115-117 | Rick Hendrix, Vice Chairman, Prince William County Electoral Board |
| 125-126 | Richard Washburne, General Registrar, Albermarle County; Larry Davis, Albermarle County Attorney |

Even if those communications could have qualified for the legislative privilege, their disclosure to outsiders defeats any privilege claim. *See, e.g.*, *Perez*, 2014 WL 106927, at *2; *Favors I*, 285 F.R.D. at 213. They must be produced.

**b.    Communications Outside the Scope of the Privilege**

The state legislative privilege extends only to materials reflecting "integral steps in the legislative process." *WSSC*, 631 F.3d at 184 (internal quotation marks and citation omitted). That limitation has both a temporal and substantive dimension. Temporally, the privilege extends only to materials predating the relevant enactment. *See id.* (declining to quash subpoena for post-enactment materials); *Doe v. Nebraska*, 788 F. Supp. 2d 975, 985 (D. Neb. 2011) (legislative privilege "protects only documents which are pre-decisional").

Substantively, the privilege is limited to "those things generally done in a session of the House by one of its members in relation to the business before it . . . as a representative, in the exercise of the functions of that office." *United States v. Brewster*, 408 U.S. 501, 512-13 (1972) (internal quotation marks and citation omitted). For example, the privilege does not extend to "preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *Id.* at 512. "Although these are entirely legitimate

activities, they are political in nature rather than legislative," and hence not covered by the privilege. *Id.* In addition, even records regarding legislative activities are outside the privilege if they reflect only facts, not legislators' subjective thoughts and opinions.[5]

The House's logs run afoul of those well-established principles. For example, as shown below, many items on the House's logs are dated long *after* April 28, 2011, when the General Assembly approved the challenged districts.

### March 26 Privilege Log (Ex. C)

| Entries | Date |
|---------|----------|
| 6-7 | 10/17/11 |
| 12-22 | 11/25/13 |

### April 10 Supplemental Privilege Log (Ex. D)

| Entries | Date |
|---------|----------|
| 87-92 | 06/17/13 |
| 115 | 12/17/11 |
| 116 | 12/18/11 |
| 117 | 12/28/11 |
| 118-120 | 10/10/14 |

Those items should be produced. *See WSSC*, 631 F.3d at 184; *Doe*, 788 F. Supp. 2d at 985.

---

[5] *See In re Grand Jury,* 821 F.2d 946, 959 (3d Cir. 1987) (privilege extends only to "communications involving opinions, recommendations or advice about legislative decisions"); *Doe*, 788 F. Supp. 2d at 985 ("[F]actually based information used in the decision-making process or disseminated to legislators or committees, such as committee reports and minutes of meetings, are not entitled to protection under the deliberative process privilege."); *but see McCrory*, Nos. 1:13cv658, 1:13cv660, 1:13cv861, Mem. Order at 18 (declining to order creation of privilege log reflecting "the objective facts State legislators relied upon" because, under the facts of that case, that requirement would "unduly intrud[e] into legislative affairs and impos[e] significant burdens on the legislative process").

More troubling, the House fails to describe with specificity the nature of the materials it has withheld on legislative privilege grounds. *See* Fed. R. Civ. P. 26(b)(5) (privilege logs must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"). Instead, in most cases, it simply declares that those materials are "regarding redistricting" or uses similar, equally cryptic descriptions. Those broad, ambiguous terms do not establish that the communications reflect "integral steps in the legislative process." *WSSC*, 631 F.3d at 184 (internal quotation marks and citation omitted). Nor do they show that the materials involve the subjective opinions of legislators (which may be privileged) as opposed to factual materials on which the legislators relied (which are not privileged).

In *Favors I*, another redistricting case, the court was confronted with similarly unhelpful log entries. There, the court held that entries generally describing materials as relating to "redistricting issues" were "inadequate to allow either the plaintiffs or this Court to determine whether a given privilege applies." *See Favors I*, 285 F.R.D. at 223. Here, as in *Favors I*, descriptions of that sort are meaningless because "[t]his is a redistricting case. Presumably, all responsive documents will in some way relate to '"redistricting issues.'" *Id.*

This Court routinely requires parties to comply with the requirements of Rule 26(b)(5) in preparing their privilege logs. *See ePlus*, 280 F.R.D. at 252 (privilege log descriptions "must satisfy the claiming party's burden"); *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 272 (E.D. Va. 2004) (privilege log descriptions are insufficient if they

14

"lack the information necessary to determine whether a privilege applies"). The House has not met those requirements. Thus, this Court should order the House to produce all items described in generic terms such as "regarding redistricting" or "regarding preclearance." At the very least, the House should be required to supplement its privilege logs and provide additional information about those communications so that this Court may properly determine whether they qualify for the legislative privilege. *See Favors I*, 285 F.R.D. at 224 (so ordering); *Rambus*, 220 F.R.D. at 274 (so ordering).

### 4.      To the Extent the Privilege Applies, It Must Yield in This Case

Ultimately, it is immaterial whether the House may assert the legislative privilege (it may not), whether the House waived any privilege it might have been able to assert (it did), or whether all of the materials are subject to the privilege (they are not). Even if the House has properly asserted and established the privilege in every case, it must still produce the withheld materials because of the fundamental rights at stake in this lawsuit.

The legislative privilege is a qualified privilege. *See Favors I*, 285 F.R.D. at 213 ("Most decisions in redistricting cases involving claims of legislative privilege . . . have recognized a qualified legislative privilege[.]"). Thus, it must yield in the face of sufficiently important competing interests. *See Page*, 15 F. Supp. 3d at 665.

The competing interest in this case—that is, the vindication of Virginians' fundamental voting rights—far outstrips any arguable interest in maintaining the secrecy of the withheld materials. *See Fair & Balanced Map*, 2011 WL 4837508, at *6 ("Voting rights cases, although brought by private parties, seek to vindicate public rights. In this respect,

70916-0026/LEGAL125605444.1

they are akin to criminal prosecutions."). As a three-judge court in this district observed, the legislative privilege "does not . . . prohibit judicial inquiry into legislative motive where the challenged legislative action is alleged to have violated an overriding, free-standing public policy." *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992) (Murnaghan & Motz, JJ., concurring); *see also S. Carolina Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 & n.6 (4th Cir. 1989) (inquiry into legislative motive is appropriate where "the very nature of the constitutional question requires an inquiry into legislative purpose") (internal quotation marks and citation omitted).

Here, as in *Marylanders*, "the challenged legislative action is alleged to have violated an overriding, free-standing public policy reflected in the Equal Protection Clause of the federal Constitution," and the parties "have placed squarely into issue the legislative motive in enacting the redistricting legislation." *Page*, 15 F. Supp. 3d at 665. Furthermore, there is no dispute about the seriousness of Plaintiffs' claims, which call into question the integrity of Virginia's representative institutions. *See Rodriguez*, 280 F. Supp. 2d 89, 102 (S.D.N.Y. 2003) (plaintiffs' redistricting claims raised "serious charges about the fairness and impartiality of some of the central institutions of our state government"). Thus, this Court should join many other courts in holding that the fundamental right to free and fair elections trumps the legislative privilege in the redistricting context. *See Favors v. Cuomo* ("*Favors II*"), No. 11-cv-5632, Mem. & Order at 34 (E.D.N.Y. Feb. 8, 2013) (Dkt. 559) (privilege did not protect "documents reveal[ing] an awareness that the [redistricting plan] may dilute minority votes"); *E. End Ventures, LLC v. Inc. Vill. of Sag Harbor*, No. CV 09-

3967 (LDW) (AKT), 2011 WL 6337708, at *3-4 (E.D.N.Y. Dec. 19, 2011) ("The

[legislative] privilege, however, may be inapplicable where the legislative deliberations are

among the central issues in the case. . . . Because the subject matter on which Plaintiffs seek

testimony is one of the central issues in this case, the legislative privilege is inapplicable.");

*ACORN v. Cnty. of Nassau,* No. 05-CV-2301(JFB)(WDW), 2009 WL 2923435, at *4

(E.D.N.Y. Sept. 10, 2009) (privilege did not protect "any of the withheld documents

reveal[ing] that racial considerations played any role in the legislative deliberations");

*United States v. Irvin*, 127 F.R.D. 169, 173-74 (C.D. Cal. 1989) (county board that prepared

a redistricting plan could not claim a deliberative process privilege in an action under the

Voting Rights Act).[6]

C.     **This Court Should Also Reject Many of the House's Claims of Attorney-Client Privilege and Work-Product Protection**

The House's claims of attorney-client privilege and work-product protection fare no

better upon scrutiny.

*First*, it appears that the House has withheld communications between a testifying

expert and parties in the *Page* case on the grounds of attorney-client privilege and work-

---

[6] In determining whether the privilege should yield in redistricting cases, many courts have considered "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of government in the litigation; and (v) the possibility of future timidity by government employees." *Page*, 15 Supp. 3d at 666 (internal quotation marks and citation omitted). Here, as in *Page*, those factors strongly favor disclosure. The withheld materials are plainly relevant because the "decision-making process of the legislature is at the core of the Plaintiffs' claims." *Id.* The availability of other evidence is immaterial because the "real proof is what was in the contemporaneous record in the redistricting process." *Id.* at 667. And "there is no dispute over the seriousness of the Plaintiffs' claims" because the "right to vote and the rights conferred by the Equal Protection Clause are of cardinal importance." *Id.*

product protection. *See* Spear Decl., Ex. B (Mar. 26, 2015 privilege log) (log numbers 1-4, 56-58). But—at the risk of stating the obvious—the House may not assert the attorney-client privilege or work-product protection on behalf of *different* parties in a *different* case. *See, e.g.*, Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* at 5 (5th ed. Supp. 2012) ("Someone who is not a party to the privilege has no standing to raise it. A privilege claim must be raised by a privilege holder or the privilege holder's 'representative.'"); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) ("The privilege is that of the client, not that of third parties."). Moreover, if the parties to the *Page* case disclosed privileged documents to the House, then they waived any privilege they might have been able to assert regarding those documents.[7] Those documents must therefore be produced.

**Second**, and similarly, the House repeatedly asserts the attorney-client privilege and/or work-production protection with respect to communications in which the House does not receive legal advice; the House's counsel does not provide legal advice; and there is no indication that any materials were prepared by the House's counsel on the House's behalf in anticipation of litigation. For example, in one case, the House asserts the attorney-client privilege with respect to a memorandum "from legal counsel to the Virginia Republican Party providing legal advice" to unidentified "clients." Spear Decl., Ex. C (Mar. 26, 2015

---

[7] *See, e.g.*, *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter."); *Rambus*, 220 F.R.D. at 275 ("Once a party voluntarily discloses otherwise privileged documents to a third party, the disclosing party waives any privilege respecting the documents that were voluntarily disclosed.").

18

privilege log) (log number 25). But counsel for the House is not "legal counsel to the Virginia Republican Party," and nothing suggests that the House is one of the unnamed clients.

In several other cases, the House asserts the attorney-client privilege and/or the work-product protection to withhold communications by and between nonparties and counsel for nonparties. *See id.*, Ex. C (Mar. 26, 2015 privilege log) (log numbers 66-68, 71); *id.*, Ex. D (Apr. 10, 2015 supplemental privilege log) (log numbers 133-206) (collectively listing communications by and between counsel for the Attorney General, counsel for the Virginia House Republican Campaign Committee, counsel for the Republican National Committee, counsel for the "Republican Caucus of the House of Delegates," counsel for unidentified "Republican Members of the Virginia House of Delegates," counsel for unidentified "Republican Members of the Virginia Senate," and even counsel for the Governor of Virginia). Those claims fail for the simple reason that the House is not *receiving* any legal advice and its attorneys are not *providing* any legal advice in the purportedly privileged communications. And to the extent that the nonparties identified in the House's logs revealed their privileged communications to the House, they thereby waived any privilege in those communications. *See Rambus*, 220 F.R.D. at 275.[8]

---

[8] The House's half-hearted invocation of the common-interest privilege in a few scattered entries does not change the analysis. To establish the common-interest privilege, the House must show that it and one or more identifiable parties "consult[ed] or retain[ed] an attorney concerning a legal matter in which they share[d] a common interest." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004). The House's cursory descriptions fall far short of that showing. *Compare Brainware, Inc. v. Scan-Optics, Ltd.*, No. 3:11CV755, 2012 WL 2872812, at *3 (E.D. Va. July 12, 2012).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court order the

House to produce the following items on the House's privilege logs.

- March 26 Privilege Log (Ex. C):  1-4, 6-25, 37-38, 49-50, 52, 56-58, 66-80.

- April 10 Supplemental Privilege Log (Ex. D):  81-206.


DATED: April 13, 2015                                By: */s/ John K. Roche*
                                                      _____
                                                     John K. Roche (VSB# 68594)
                                                     Marc Erik Elias (admitted *pro hac vice*)
                                                     Bruce V. Spiva (admitted *pro hac vice*)
                                                     Elisabeth C. Frost (admitted *pro hac vice*)
                                                     **PERKINS COIE** LLP
                                                     700 Thirteenth Street, N.W., Suite 600
                                                     Washington, D.C.  20005-3960
                                                     Telephone: 202.434.1627
                                                     Facsimile: 202.654.9106
                                                     Kevin J. Hamilton (admitted *pro hac vice*)
                                                     Abha Khanna (admitted *pro hac vice*)
                                                     Ryan Spear (admitted *pro hac vice*)
                                                     William B. Stafford
                                                          (admitted *pro hac vice*)
                                                     **PERKINS COIE** LLP
                                                     1201 Third Avenue, Suite 4900
                                                     Seattle, WA  98101-3099
                                                     Telephone: 206.359.8000
                                                     Facsimile: 206.359.9000

                                                     *Attorneys for Plaintiffs*

70916-0026/LEGAL125605444.1

## LOCAL RULE 37(E) CERTIFICATION

Pursuant to Eastern District of Virginia Local Civil Rule 37(E), the undersigned counsel  states that a good faith effort has been made between counsel to resolve the discovery matters at issue.

70916-0026/LEGAL125605444.1

## CERTIFICATE OF SERVICE

On April 13, 2015, I caused to be served upon counsel of record, at the address stated

below, via ECF, a true and correct copy of the above document.

Jennifer Marie Walrath
Katherine Lea McKnight
Baker & Hostetler LLP (DC)
1050 Connecticut Ave NW
Suite 1100
Washington, DC 20036
202-861-1702
Fax: 202-861-1783
jwalrath@bakerlaw.com
kmcknight@bakerlaw.com

Effrem Mark Braden
Baker & Hostetler LLP (DC-NA)
Washington Square
Suite 1100
Washington, DC 20036
202-861-1504
Fax: 202-861-1783
mbraden@bakerlaw.com

Of counsel:

Dale Oldham, Esq.
1119 Susan St.
Columbia, SC 29210
803-772-7729
dloesq@aol.com

*Attorneys for Intervenor-Defendants*

Jeffrey P. Brundage
Daniel Ari Glass
Kathleen Angell Gallagher
Eckert Seamans Cherin & Mellott LLC
1717 Pennsylvania Ave NW, Suite
1200
Washington, D.C. 20006
202-659-6600
Fax:  202-659-6699
jbrundage@eckertseamans.com
dglass@eckertseamans.com
kgallagher@eckertseamans.com

Godfrey T. Pinn, Jr.
Harrell & Chambliss LLP
Eighth and Main Building
707 East Main Street
Suite 1000
Richmond, VA 23219
gpinn@hclawfirm.com

Anthony F. Troy
Eckert Seamans Cherin & Mellott LLC
707 East Main Street
Suite 1450
Richmond, Virginia  23219
804-788-7751
Fax:  804-698-2950
ttroy@eckertseamans.com

*Attorneys for Defendants*

70916-0026/LEGAL125605444.1

**I certify under penalty of perjury that the foregoing is true and correct.**

DATED this 13th day of April, 2015.

By */s/ John K. Roche*
John K. Roche (VSB No. 68594)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone:  (202) 434-1627
Fax:  (202) 654-9106
JRoche@perkinscoie.com

*Attorneys for Plaintiffs*

70916-0026/LEGAL125605444.1