IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)

GOLDEN BETHUNE-HILL, *et al.*,

             Plaintiffs,

     v.

VIRGINIA STATE BOARD OF
ELECTIONS, *et al.*,

          Defendants.

Civil Action No. 3:14-cv-00852-REP-GBL-BMK

## DEFENDANT-INTERVENORS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

Plaintiffs seek to inject needless confusion into the privilege law of this circuit and into this case. With limited exceptions, they do not dispute that the various privileges asserted here apply to the documents they seek. Instead, they claim that no one in this case may assert privilege and that, accordingly, the Court must simply throw up its hands and order disclosure of hundreds of pages of privileged materials, including materials the Court has already denied to Plaintiffs' counsel in the *Page* litigation. The Court should be loath to grant this astonishing request for many reasons. Among them is that a ruling in Plaintiffs' favor would lay the groundwork for parties to circumvent privilege in future litigation, including, but not limited to, redistricting cases. If there were any doubt that this goal of undermining privilege itself were among Plaintiffs' aims here, they advocate for this result outright, telling the Court that it should disregard the law of the Fourth Circuit and decline to apply legislative privilege wholesale. The Court should not—and cannot—do this.

1

Plaintiffs' other arguments are wrong on the facts and on the law, and many are foreclosed by binding precedent. Defendant-Intervenors respectfully request that the Court deny Plaintiffs' motion to compel in its entirety. In the alternative, if the Court agrees with Plaintiffs that no party to this case may assert any privileges at issue, Defendant-Intervenors request that the Court provide notice to concerned non-parties as to the proper method of protecting their privileged materials.

## BACKGROUND

The Virginia House of Delegates ("House") consists of one hundred members, who represent roughly 80,000 constituents each. This is a part-time job for most Delegates, who receive an annual salary of $17,640, as well as some compensation for expenses during legislative sessions.[1] Their salary has not increased since 1988.[2]

The House does not expect Delegates to conduct their legislative business on personal equipment, email accounts, or internet service and provides these things for Delegates. Ex. A, Virginia House Appropriate Use Policy. Delegates' official email addresses are posted on the Virginia General Assembly website and Delegates are advised to use "personal discretion in publicizing their personal email addresses." *Id.* at 4. Consistent with the trust accorded to elected officials, there are minimal restrictions on permissible uses for House systems and equipment, *id.* at 2, and House information-technology staff only access the system for technology purposes and to respond to public-records requests, *id.* at 1. Delegates are encouraged to use the House system

---

[1]  Virginia General Assembly, The Virginia House of Delegates, http://virginiageneralassembly.gov/virginiaLegislature.php?secid=20&activesec=2#!hb=1&mainContent Tabs=2

[2] Tyler Whitley, Virginia legislators' salaries lower than most, Richmond Times Dispatch (May 22, 2011), available at http://www.richmond.com/archive/article_9db94e07-9869-5410-b44d-84bf095986df.html

2

for "communications between legislators, staff, state agencies, constituents, and others concerned with state business, including the transfer of documents and usage of electronic mail." *Id.* at 2.

This case concerns 12 Virginia House districts in the state House redistricting plan enacted and implemented in 2011. Plaintiffs concede that this plan was adopted by the formal legislative act of passing a statute, but did not name any legislative body or member of a legislative body as a defendant. Compl. ¶¶ 26, 31–33. The House of Delegates and Speaker William Howell intervened as defendants. ECF Nos. 12, 27. Speaker Howell also is the leader of the House Republican Caucus. Speaker Howell is the only individual Delegate who is a party to this case. None of the other individual Delegates have intervened and, as such, do not receive any formal or automatic notice of activity in the proceeding. *Id.* On March 3, 2015, the Court set this case on an expedited track, establishing the discovery cutoff at May 22 and scheduling a bench trial in July. ECF No. 35.

Plaintiffs have sought the documents of individual, non-party Delegates directly from Defendant-Intervenors, including "[a]ll communications" between and among Delegates and between and among Delegates and third parties "including, without limitation, political organizations, lobbyists, political operatives, consultants, constituents, voters, and government officials." Mot. at 3. Defendant-Intervenors have not objected to responding to these requests and have turned over all non-privileged documents within their possession, custody, or control.

The documents come from four sources. The first source is the House's email system, described above. The second source is a file of documents that Baker Hostetler LLP, counsel to the House, obtained from Christopher Marston. Mr. Marston is an attorney who worked for the House during 2010 and 2011 and provided legal and strategic advice concerning redistricting. His documents are from that time period. Baker Hostetler has an ongoing attorney-client

3

relationship with Mr. Marston and represented him in *Page v. Virginia State Board of Elections*, No. 3:13-cv-678 (E.D. Va.), where Mr. Marston was served with a subpoena *duces tecum* by the plaintiffs in that case, who were and still are represented by Perkins Coie. Baker Hostetler also is representing Mr. Marston as a potential witness in this matter. The third source is a file of documents provided by John Morgan, who also was retained by the House to assist with the 2011 redistricting process, and the documents principally are from that time period. Mr. Morgan expects to testify in this matter, and Baker Hostetler is representing him in that capacity.  The fourth source is a file of documents provided by Delegate Chris Jones comprised of documents from the time period of the redistricting.  Delegate Jones also expects to testify in this matter, and Baker Hostetler is representing him in that capacity.

In an effort to timely resolve the issue of legislative privilege, particularly in light of the expedited schedule, Defendant-Intervenors and Plaintiffs agreed to send a joint letter to current and former Delegates whose documents were being withheld on the basis of legislative privilege. Mot. Ex. E. The notice was sent to the twenty-nine (29) Delegates whose communications have been deemed relevant and privileged and stated that the House is in possession of emails of the recipient Delegate that are responsive to the Plaintiffs' discovery requests. The notice acknowledged that legislative privilege "belongs to individual members of" the House "such that it is up to each individual delegate to assert or waiver his/her legislative privilege." The notice requested that Delegates indicate by a specified date "whether you intend to assert or waiver legislative privilege with respect to your email communications in this case." The notice then stated the parties' divergent views as to *how* legislative privilege may be asserted: the House viewed "an express waiver of legislative privilege" as essential and sufficient, and the Plaintiffs

asserted that notice to "the Court and the parties" such as "a motion in this case" is required to *claim* privilege; otherwise it is waived.[3]

All Delegates who responded did so in writing. Twenty-one (21) Delegates responded that they assert legislative privilege. Ex. B. Four (4) Delegates responded that they expressly waive their legislative privilege. Ex. C. Four (4) Delegates have not responded, and the House continues to withhold their documents on the basis of the well-established law of this Circuit that only the member of a legislative body—and not the body itself—may waive the legislator's privilege. *See also* Ex. D (chart summarizing responses). Defendant-Intervenors have produced the documents of all Delegates who expressly waived legislative privilege, including Speaker Howell, who intervened in this proceeding, and Delegate Jones, who was the principal sponsor of the challenged legislation and anticipates being a witness in this proceeding.

Defendant-Intervenors also have produced all responsive, non-privileged documents involving third-party agents, such as Messrs. Marston and Morgan, and as to their documents, have withheld only those documents subject to attorney client or work product privileges. A number of these documents were at issue in the *Page* proceeding. Those documents which the

_____

[3] In a further effort to promote efficiency and judicial economy, Defendant-Intervenors proposed that depositions should not be noticed as to Delegates who assert legislative privilege, given the waste of time and resources involved in scheduling and arriving at depositions only to have the witness raise privilege and (lawfully) decline to answer questions. The other parties rejected this proposal. Plaintiffs, however, have identified as potential witnesses all twelve current and former members of the House who represented the challenged districts, and a few members of the Virginia Senate. Without an agreement or Court order that those who assert privilege will not be called to testify at trial, Defendant-Intervenors feel compelled to depose each of these potential witnesses, which has resulted in the noticing of a myriad of depositions between now and the discovery cutoff. While this motion technically concerns only the issue of documentary evidence, Intervenor-Defendants believe the guidance of the Court would be useful in resolving the dispute concerning depositions. Additionally, if Plaintiffs or Defendants intend to call even a handful of these witnesses to testify at trial, then Defendant-Intervenors respectfully suggest that a three-day bench trial will not be a sufficient amount of time to fully and fairly try the case consistent with the recent guidance of the United States Supreme Court in *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257 (2015).

Court determined in that proceeding not to be privileged were produced to Plaintiffs, and all documents which the Court deemed privileged were withheld. *Page*, 3:13-cv-678, ECF Nos. 90, 92. All documents withheld on the basis of any privilege have been logged. *See* Mot. Exs. C, D.

## ARGUMENT

I.   **The Court Should Reject Plaintiffs' Effort To Obtain Documents Protected by Legislative Privilege Against the Will of Privilege Holders**

Courts have "broadly recognized the right 'of legislators to be free from arrest or civil process for what they do or say in legislative proceedings.'" *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (*WSSC*), (quoting and citing *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951)).[4] The Fourth Circuit has emphasized the "practical import" of legislative privilege, which "is difficult to overstate," *WSSC*, 631 F.3d at 181—a point that it has found worth repeating, *see McCray v. Maryland Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 485 (4th Cir. 2014). "A litigant does not have to name members or their staffs as parties to a suit in order to distract them from their legislative work. Discovery procedures can prove just as intrusive." 631 F.3d at 181 (quotation marks omitted).

Accordingly, if communications concern matters that are "legislative" rather than "administrative" "in nature," *see Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995), "the doctrine of legislative immunity has full force" to "prevent legislators from having to testify."

---

[4] Consistent with *Tenney*, Virginia state constitutional and statutory law provides "legislative immunity for actions taken while within 'the sphere of legitimate legislative activity.'" *Schiltz v. Commonwealth of Virginia*, 854 F.2d 43, 45 (4th Cir. 1988) (recognizing that *Tenney* extended the protection of the Speech or Debate Clause to state legislators); Va. Const. art. IV, § 9; Va. Code Ann. §§ 30-4, 30-6.

*Schlitz v. Com. of Va.*, 854 F.2d 43, 46 (4th Cir. 1988) *overruled on other grounds by Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995).[5] That is the case here.

### A. The House May Not Waive Privilege Asserted by Delegates

Plaintiffs argue (at 9) that, unless Delegates "enter[] an appearance" or otherwise "formally press a privilege claim," legislative privilege cannot apply. The Fourth Circuit, however, has held that legislative "privilege applies whether or not the legislators themselves have been sued." *WSSC*, 631 F.3d at 181 (citing and quoting *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir.1988)). That principle would have no force if Delegates were required to *become* parties before privilege could apply. Plaintiffs' proposed requirement would also eviscerate the central purpose of privilege in allowing legislators to avoid entanglement in "intrusive" "procedures" of discovery. *WSSC*, 631 F.3d at 181.[6] These assertions beg the question: If part-time Delegates on meager salaries are required to hire counsel and intervene in litigation or subpoena proceedings to preserve the privilege, then what good is it?

The House does not dispute that it "may not assert the legislative privilege on behalf of…delegates," Mot. at 8, and acknowledged as much in the joint letter, Mot. Ex. E. But of the

---

[5] In a line of cases including *Schlitz*, the Fourth Circuit once held that legislative privilege was a bar, not only against discovery, but also against a cause of action that would require such discovery to succeed. In *Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995), the Fourth Circuit reversed course as to that latter holding, determining that the cause of action may proceed regardless of the existence of privilege. In *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996), the Fourth Circuit reaffirmed that pre-*Berkley* case law remains "viable" as to the scope of the legislative privilege itself. *See also WSSC*, 631 F.3d at 183 (citing *Schltz* and other pre-*Berkley* precedent as good law).

[6] S*ee also United States v. Rayburn House Office Bldg., Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007) ("a key purpose of the privilege is to prevent intrusions in the legislative process and that the legislative process is disrupted by the disclosure of legislative material, regardless of the use to which the disclosed materials are put").

twenty-nine (29) Delegates put on notice of the privilege issue, twenty-one (21) *have* formally asserted privilege in writing, *see* Ex. B, and the issue here is whether the House may ignore that assertion and waive their privilege for them. It may not. *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 295 F. Supp. 2d 585, 590 (D. Md. 2003); *Alexander v. Holden*, 66 F.3d 62, 68 n.4 (4th Cir. 1995).[7] "[M]erely because" the House "is not able to control or claim the privilege does not mean the privilege does not exist or can be ignored." *In re Christus Health Se. Tex.*, 167 S.W.3d 596, 601 (Tex. App. 2005); *see also In re Sherrod*, No. 14-BK-08950, 2014 WL 2860317, at *2 (Bankr. N.D. Ill. June 20, 2014) (allowing attorney to raise privilege objection as to *non*-client's privilege because that individual "has not waived privilege" and "remains the holder of the privilege").

*Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077 (S.D. Tex. Apr. 3, 2014)—a case Plaintiffs cite—supports Defendant-Intervenors' position here. The Court in that case accepted the representation of the counsel for the Texas executive branch that "189 legislators have asserted the legislative privilege," in finding that privilege had been asserted. *Id.* at *2. No further effort by those individuals was required.

The other cases Plaintiffs cite on "assertion" of privilege all involve discovery sought directly from individual legislators and reject the efforts of legislative bodies to interject themselves between the movant and legislators as to those requests. *See Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 296 (D. Md. 1992) (assertion of privilege from deposition); *ACORN*, 2007 WL 2815810, at *1 (same); *A Helping Hand*, 295 F. Supp. 2d at 590

---

[7] *See also Almonte v. City of Long Beach*, 2005 WL 1796118, at *3 n. 2 (E.D.N.Y. July 27, 2005); *Hobart v. City of Stafford*, No. CIV.A 09-3332, 2010 WL 3419660, at *3 (S.D. Tex. Aug. 30, 2010); *ACORN v. Cnty. of Nassau*, No. CV05-2301(JFB)(WDW), 2007 WL 2815810, at *4 (E.D.N.Y. Sept. 25, 2007).

(same). In fact, one case involved the meddling of a *non*-party committee into litigation to assert the privilege of *parties*. *Benford v. Am. Broad. Companies, Inc.*, 98 F.R.D. 42, 47 (D. Md. 1983). That is not the case here, and Plaintiffs provide no other authority—or even reasoning— indicating why the Court should not accept the Delegates' written assertions of their privilege.[8] *See United States v. Hansen*, 955 F. Supp. 1225, 1226 (D. Mont. 1997) (finding that privilege had been "asserted" by nonparty where party to the case mentioned that nonparty "has refused to produce the documents unless ordered by a court to do so"). Furthermore, even as to those four Delegates who have not yet taken a position on the privilege issue, it would be contrary to the fiduciary duty that the House owes to its members for the House to turn over their documents absent express waiver of the privilege by a Delegate, as is required for waiver under the law of this Circuit, or a Court order compelling disclosure.

Having shown the Court no authority requiring Delegate intervention, Plaintiffs change the subject: "merely *invoking* the legislative privilege is not enough to *establish* it." Mot. at 8. True enough, but it is not at all clear why "invoking" the privilege is not enough to *assert* it, which is the threshold action that Plaintiffs allege has not occurred. *See Hobart v. City of Stafford*, No. CIV.A 09-3332, 2010 WL 3419660, at *2–3 (S.D. Tex. Aug. 30, 2010) (using the terms "invoke" and "assert" interchangeably as to this step). Assertion and proof are different, as demonstrated in *Veasey*, where privilege was successfully asserted but not established,[9] and in *A Helping Hand*, 295 F. Supp. 2d at 590, where the Court required legislators to assert privilege

---

[8] Even if this scenario could be framed as an assertion of privilege by the House, "it is not always the case" that third parties cannot claim privilege on behalf of the holder, and, at minimum, the House may "call to the court's attention the existence of the privilege." Privileged Matter—Assertion of Privilege, 8 Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.). *See* Section II, below.

[9] As discussed below at Section I.C, the balancing test applied in *Veasey* and other cases does not apply in this Circuit.

individually but went on to opine that, if "they should choose to assert it," the privilege "would most likely be valid" under the factual circumstances. Assertion is thus simply a matter of what the legislators "choose" and entails no further procedural hurdles.

### B. The House Did Not Waive Privilege for Delegates by Intervening

In a classic heads-I-win-tails-you-lose argument, Plaintiffs claim (at 10) that intervention in a lawsuit—far from preserving privilege—*waives* it. Even if that were true, the House has no more authority to waive privilege for those Delegates who have asserted it than to assert privilege for those parties who waived it. *Alexander*, 66 F.3d at 68 n.4. The House therefore did not, and could not have, waived the privilege of Delegates by intervening in this case. *Powell v. Ridge*, 247 F.3d 520, 525 (3d Cir. 2001), does not suggest otherwise, as it involved the waiver of the legislative privilege by four legislators as to their *personal* claims of privilege and not as to the claims of an entire body or other legislators.

### C. Legislative Privilege Does Not "Yield" in the Fourth Circuit and There Is No Basis for "Yielding" Under the Law of Other Circuits

If Plaintiffs' true purpose in abrogating legislative privilege were not already clear, they inform the Court outright (at 15) that their other arguments are "immaterial" because legislative privilege "yields" where "fundamental rights are at stake." Binding precedent has rejected the argument "that legislative immunity is not absolute" in civil litigation and holds that the privilege "has full force" where a suit "would require legislators to testify regarding conduct in their legislative capacity." *Schlitz*, 854 F.2d at 45. *See also Whitener v. McWatters*, 112 F.3d 740, 745 (4th Cir. 1997) (applying legislative immunity despite invocation of fundamental rights to free speech). Other courts have noticed the strong protection for legislative privilege afforded in this

Circuit. *See, e.g.*, *Harris v. Ariz. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1069 (D. Ariz. 2014) (citing *WSSC*, 631 F.3d at 180–81).

Plaintiffs' argument is foreclosed further by *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996), where the Fourth Circuit applied legislative privilege in a case brought by a city employee alleging that the city council's decision to terminate his position was motivated by flagrant anti-Semitism in violation of equal protection and other fundamental rights. Despite the assertion of constitutional rights and astonishing allegations of "verbal abuse, threats, and public embarrassment," the opinion was short and the analysis simple: "local legislators are entitled to absolute immunity when acting in a legislative capacity," and "testimonial privilege is the prevailing law in this circuit." *Id.* at 612–13. Accordingly, this Court in *Simpson v. City of Hampton, Va.*, 166 F.R.D. 16, 18 (E.D. Va. 1996), denied a motion to compel discovery of privileged materials in a redistricting case under sections 2 and 12(d) of the Voting Rights Act, despite a "direct[] impact" on the claims that the government "intentionally discriminated against minorities." The Court found that *Burtnick* controlled, and the privilege applied, even in the face of claims of intentional discrimination in the redistricting context. *See also Tenney*, 341 U.S. at 377 ("The claim of an unworthy purpose does not destroy the privilege").

Plaintiffs do not address this precedent and instead rely almost exclusively on cases outside of this Circuit in requesting (at 16) that this Court dispense with legislative privilege wholesale.[10] In light of *Schlitz* and *Burtnick*, this Court cannot do that. The two *district* court cases Plaintiffs cite from this Circuit, even if they were controlling, are inapposite. *Page v.*

---

[10] The sole Fourth Circuit decision they cite (at 16) merely states that legislative motive is a permissible inquiry in some cases, *S. Carolina Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1259 (4th Cir. 1989), and says nothing about legislative privilege, which is distinct, *Marylanders*, 144 F.R.D. at 298 n.12 (distinguishing "an inquiry into legislative motive" from "abrogation of legislative immunity").

*Virginia State Bd. of Elections*, 15 F. Supp. 3d 657, 665–68 (E.D. Va. 2014), held that the privilege would yield as to communications involving a consultant and indicated that the result would be different if the plaintiffs sought "deliberations between two legislators." *Id.* at 667. Two judges in *Marylanders*, 144 F.R.D. at 304–05, found that the privilege would not be applied to *non*-legislators and even then, only as to actions taken before the legislation reached the floor of the legislature. *See also Page*, 15 F. Supp. at 665, 668 (noting the same). These cases turn on the distinction between legislators and close staff, on the one hand, and those more removed from the legislative process, on the other—a distinction that follows from the Supreme Court's statement in *Tenney*, 341 U.S. at 378, that legislative privilege "deserves greater respect" as to legislators than to others. But Defendant-Intervenors have not withheld documents from consultants, and Plaintiffs here seek nothing less than *all* legislative deliberations of the Virginia Delegates and their staff.

Even if this were an issue of first impression in this Circuit, Plaintiffs' arguments contradict the Supreme Court's decision in *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 268 (1977), which stated that evidence can be obtained from legislators only in "extraordinary circumstances," and even then "such testimony will frequently be barred by privilege." The Court warned "that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government. Placing a decisionmaker on the stand is therefore usually to be avoided." *Id.* at 268 n.18 (quotation marks omitted). All redistricting cases cannot categorically be "extraordinary instances," given their ubiquity, and Plaintiffs have cited nothing else about this case satisfying this high standard.

Finally, Plaintiffs' broad claim for all documents of legislators would not survive even under Plaintiffs' out-of-circuit district-court cases, which do not in fact hold that "the fundamental right to free and fair elections trumps the legislative privilege" in redistricting cases, but rather apply a "judicial balancing test" that may result in upholding the privilege. *See Favors v. Cuomo*, 285 F.R.D. 187, 214 (E.D.N.Y. 2012) (surveying cases).[11] The test involves considerations of "potential chilling effect" on, and "future timidity" of, legislators, and courts are not so dismissive of these concerns as are Plaintiffs. In *Favors*, for example, even after finding that *five of five* factors weighed in favor of disclosure, the court still declined to compel disclosure at that time because "the threat of inhibiting legislative deliberations hangs in the air," and it determined to conduct a review of privileged documents *in camera* to "make the contextual investigation necessary" to conduct the balancing test. 258 F.R.D. at 220–21.

Likewise, this Court in *Page* (which, again, considered privilege only as to a consultant) warned that "any effort to disclose the communications of legislative aides and assistants who are otherwise eligible to claim the legislative privilege on behalf of their employers threatens to impede future deliberations by the legislature" and noted that "[o]ther courts have taken this threat quite seriously, and have sought to mitigate it." 15 F. Supp. at 667–68. *See also Rodriguez v. Pataki*, 280 F.Supp.2d 89 (S.D.N.Y. 2003).

Defendant-Intervenors have abided by this Court's ruling in *Page* and categorically produced documents involving consultants and other parties on the fringe of protection. *But see Doe v. McMillan*, 412 U.S. 306, 312 (1973) (applying legislative privilege to consultant);

---

[11] Notably, many cases where privilege is found to "yield" apply deliberative-process privilege rather than legislative privilege. *See, e.g.*, *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989) (finding that "deliberative process privilege is qualified" and "must yield").

*McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 485 (4th Cir. 2014) (same). The strong policies in favor of privilege as to legislators and their staff members outweigh other potential factors, and production would not be appropriate even if the Court were to apply a balancing test.[12]

### D.      The Privilege Applies To the Documents Withheld

Legislative privilege applies to documents involving legislators and others involved with "legislative functions." *McCray*, 741 F.3d at 484–85. Like enacting a budget, which the Fourth Circuit "has had no trouble concluding is a legislative act," *id.* (quotation marks omitted), passing a redistricting plan into law undoubtedly meets this test, *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 295 F. Supp. 2d 585, 590 (D. Md. 2003), because it involves "the process of adopting prospective, legislative type rules," *Alexander v. Holden*, 66 F.3d 62, 67 (4th Cir. 1995). Plaintiffs do not contend otherwise and their objections to the Defendant-Intervenors' privilege logs are narrow. None has merit.

**The Privilege Log Is Sufficiently Detailed.**  Plaintiffs claim (at 14) that "the House fails to describe with specificity the nature of the materials it has withheld." But a privilege log need not be "detailed" if "a court could reasonably conclude that all of the" relevant "elements" or "test[s]" are met. *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011). Because legislative privilege turns on whether the documents concern the process of adopting legislative-type rules, the logs need only be detailed enough to demonstrate that the communications concern redistricting. The privilege logs label documents accordingly and list the parties

---

[12] That is especially so given that the crux of Plaintiffs' proof of discrimination is the shape of the challenged districts, meaning that evidence of discrimination (if it exists) is otherwise available, and the information sought is of doubtful relevance.

14

involved and dates, as well as other metadata such as the "RE:" line. No further information is required because there are no further elements to the privilege. *A Helping Hand*, 295 F. Supp. 2d at 590. Notably, Plaintiffs had no trouble identifying documents that they believe are not qualified, indicating that they had the required information.

Plaintiffs claim (at 13–14) that more precise detail is required because the privilege applies only to "subjective thoughts and opinions" and not to "factual materials." Their cases for that rule, however, concern deliberative process privilege, which is distinct from legislative privilege and is "decidedly less robust." *Favors*, 285 F.R.D. at 210 n.22. *See In re Grand Jury*, 821 F.2d 946, 958 (3d Cir. 1987) ("The '*deliberative process privilege*' applies only to confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.") (emphasis added); *Doe v. Nebraska*, 788 F. Supp. 2d 975, 985 (D. Neb. 2011) (same). Courts in this Circuit apply legislative privilege, not deliberative process privilege, to legislative materials, *see, e.g.*, *Page*, 15 F. Supp. 3d at 660–61, and Plaintiffs did not assert in their opening brief that deliberative process privilege applies, *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (arguments raised for first time in reply are waived).

Even Plaintiffs' cases recognize that legislative privilege "applies broadly to evidence or testimony about all acts that occur in the regular course of the legislative process," including "activity taken in the course of legislative factfinding," *In re Grand Jury*, 821 F.2d at 953, and Defendant-Intervenors are not aware of authority limiting the privilege to subjective thoughts,

15

which would, in any event, yield to the authority in this Circuit.[13] Because that is not an element of the privilege, no further specificity was required. *Interbake Foods, LLC*, 637 F.3d at 502.

**Plaintiffs Are Not Entitled to Fact-Finding Documents.** Plaintiffs complain (at 11–12) that certain withheld communications were disclosed to "outsiders," but ignore the privilege-log descriptions indicating that the communications involved "gathering information as part of the redistricting process." *See, e.g.*, March 26 Log 37– 38, 49–50, 52. The "scope of legitimate legislative activity" is defined "broadly" "to include preliminary fact-finding…activities." *See, e.g.*, *Favors*, 285 F.R.D. at 209 (discussing *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 101 (S.D.N.Y.)). These documents fall within that definition and are privileged.

**The Temporal Limitation Plaintiffs Propose Does Not Apply.** Defendants' sole authority for their proposed bright-line bar on privilege for post-enactment materials (Mot. at 12) comes from *Doe v. Nebraska*, 788 F. Supp. 2d 975, 985 (D. Neb. 2011), which, again, concerned the limitations on deliberative process privilege and did not even purport to suggest that the limitation would apply to legislative privilege.

*WSSC*, 631 F.3d at 184, did not impose a bright-line cutoff at enactment and demonstrated that there is no such cutoff. The case concerned a motion to quash a subpoena and found that "documents regarding events after" enactment "appear to relate to administrative rather than legislative acts"—*not* because they occurred post-enactment—but rather because, "at this early stage" the requests appeared to concern personnel records, at least some of which would involve administration rather than legislation. The Court "had no reason at this juncture to

---

[13] Although the scope discussion in *In re Grand Jury* concerned privilege for members of congress, *see id* at 953 n.4, the same scope has been settled on as to state legislators in cases nationwide, *see, e.g.*, *Favors*, 285 F.R.D. at 209, and in this Circuit, *see, e.g.*, *McCray*, 741 F.3d at 484–85.

believe" the documents were categorically privileged and found no basis for rejecting the requests wholesale. *Id.* at 184. Far from imposing a bright-line rule, the opinion shows that post-enactment materials may be privileged depending on their contents.

II.     **The Court Should Reject Plaintiffs' Other Standing and Waiver Arguments**

Plaintiffs' arguments on attorney client privilege and work product doctrine are also misguided. Plaintiffs evidently do not contest the applicability of these doctrines as to *any* log entries they challenge.[14] Instead, they contend that they should be disclosed and privileges disregarded because no parties in this proceeding (they claim) can assert privilege.

**Advice to the House.** Most of the challenged log entries involve legal advice provided directly to the House, which can claim privilege here. March 26 log numbers 67, 68, 76 (*see* Mot. at 19) and others involve communications between House members and/or key agents and the Virginia Attorney General's office, which provides legal advice to Virginia government. April 10 log numbers 133–206 (Mot at 19) involve communications with various lawyers and members of the House and/or agents of the House concerning the core legislative function of passing a law—which the House is ultimately responsible to do. Given that it is impossible to provide legal counsel to the House without advising its Delegates or agents, it is hard to fathom a more direct example of advice being provided to the House.

Plaintiffs' cryptic arguments appear to presume that advice to legislators, staff, or consultants in their capacity as *Republicans* is distinct from advice in their capacity as Delegates.

---

[14] Some cryptic language on page 19 hints that Plaintiffs may believe some entries do not involve "any legal advice." Those entries—March 26 log numbers 66–68 and 71 and April 10 log numbers 133–206—state either that legal advice was involved or that they involve information prepared in anticipation of litigation. If Plaintiffs believed these assertions were not credible, then it was their burden to advance "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged," *Interbake Foods, LLC*, 637 F.3d at 502, which they have not done.

That, of course, would not explain why the House cannot claim privilege as to advice provided by the Attorney General's office (it can), and it ignores the realities of legal counsel in a world of partisan politics, which is typically provided by party lawyers to party clients. What matters is that the advice concerned the legislative acts of the House.

**Advice to the Republican Caucus.** Even if the Court disagrees that advice to the Republican Caucus was provided to the House itself, Speaker Howell is the leader of the Republican Caucus and has authority to claim privilege on its behalf in this matter. In addition, Baker Hostetler is counsel to the Republican Caucus (*see, e.g.*, entries 133, 134) and can claim privilege on its behalf. *Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976) ("it is universally accepted that the attorney-client privilege may be raised by the attorney").

**Advice to and from Messrs. Marston and Morgan**. Even if the Court disagrees that legal advice to and from Mr. Marston was provided to the House, Baker Hostetler represents Mr. Marston and can claim privilege on his behalf, who, in turn (if necessary), can claim privilege on behalf of any clients he represents. Baker Hostetler also can invoke privilege as to communications involving John Morgan, who was an agent of the House, to the extent that he (rather than the House) is deemed the client.

**Work Product from the *Page* Case.** Remarkably, Plaintiffs seek (at 17–18) to obtain draft expert reports of and communications between counsel and a testimonial expert, John Morgan, in the *Page* proceeding that clearly are protected from disclosure pursuant to Federal Rule of Civil Procedure 26(b)(4). Plaintiffs' counsel here also represents the plaintiffs in *Page*, and this motion evidently is an effort to obtain an unfair advantage in *Page*. Plaintiffs represent that work product protection only extends to the litigation for which the materials were prepared, Mot. at 18, but they neglect to address Fourth Circuit authority rejecting that view and finding

18

"no indication that [*Hickman v. Taylor*] intended to confine the protection of the work product to the litigation in which it was prepared or to make it freely discoverable in a subsequent law suit." *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 483 (4th Cir. 1973). The Court should reject this bold request to rewrite Circuit precedent. *See FEC v. Christian Coalition.*, 178 F.R.D. 456, 458 n.1 (E.D. Va. 1998).

Moreover, contrary to Plaintiffs' argument (at 18), there has been no waiver of privilege or any other protection against disclosure in *Page*. The documents were held by Mr. Morgan, and were created specifically for the *Page* case years after Mr. Morgan's work on the state redistricting plan challenged here. The documents have never been in the possession, custody, or control of the House or Speaker Howell.  Rather, they were in the possession of Mr. Morgan's counsel at Baker Hostetler, which also is counsel to the House, and therefore came within the scope of the requests, which sought documents held by counsel to the House. There is no waiver.

**Waiver.**  Plaintiffs make the cryptic suggestion (at 18, 19) that privilege may have been waived by disclosure of documents "to the House." This is nonsensical: Delegates and their staff or other agents had access to all the documents and were the creators or recipients of them. It is impossible for agents of the House, acting in their capacity in preparing legislation for the House, to waive privilege by disclosing information "to the House."

Even if the parties could be distinguished, the case would fall under the common-interest doctrine, which applies where two or more parties are "united by a common interest" related to the legal advice obtained. *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004). As to government entities, the doctrine applies as to legal advice by an "outside attorney" where the attorney is "collaborating with the" government entity in its "pursuit of the public interest." *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 280 (4th Cir. 2010). The

19

communications Plaintiffs challenge here concern advice from various attorneys to delegates "regarding preclearance," *e.g.*, April 10 Log Nos. 133–35, 138–150, or "regarding redistricting," *e.g.*, *id.* Nos. 153–155, and the House itself had a strong interest in passing a redistricting plan that would be cleared by the Department of Justice and survive a challenge in federal court. The House therefore received the benefit of the legal services, is a privilege holder, and was entitled to access to the documents and to claim privilege.

**Third-Party Rights.**  Even if the privileges at issue here belonged solely to third parties who have no representative in this matter to assert privilege, the proper response would not be to turn over these documents. "[I]t is not always the case" that third parties cannot claim privilege on behalf of the holder. Privileged Matter—Assertion of Privilege, 8 Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.). Custodians of documents are allowed to raise objections to the seizure of those documents held on behalf of others, including assertions of privilege. *Schwimmer v. United States*, 232 F.2d 855, 860–62 (8th Cir. 1956) (allowing custodian of documents to raise Fourth Amendment and attorney client privilege objections to subpoena on behalf of others); *F.T.C. v. Netscape Commc'ns Corp.*, 196 F.R.D. 559, 559 (N.D. Cal. 2000) (allowing custodian to raise statutory objections to disclosure of documents held for third parties). The House and Speaker Howell may do so here.

Alternatively, Defendant-Intervenors "call to the court's attention the existence of the privilege" in order to allow the Court to take steps to protect privilege. Privileged Matter—Assertion of Privilege, 8 Fed. Prac. & Proc. Civ. § 2016.1 (3d ed.). Upon this notice, the court may go "to the length of immediately upholding the privilege on [its] own motion." Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges § 6.5.3. "There is nothing in the record indicating the nonparties have consented to disclosure for purposes of this litigation," very little

20

reason to believe they would, and therefore no reason for the Court not to respect privilege here.

*In re Christus Health Se. Texas*, 167 S.W.3d 596, 601 (Tex. App. 2005).

 Finally, Defendant-Intervenors request that, if the Court rejects any privilege claims at issue in his motion (including legislative privilege) on standing grounds, it provide notice to interested parties, clarifying how to protect their privileges.

## CONCLUSION

 For the foregoing reasons, the Court should deny Plaintiff's motion.

Dated: April 21, 2015

        Respectfully Submitted,

        /s/ Katherine L. McKnight
        E. Mark Braden (*pro hac vice*)
        Jennifer M. Walrath (VSB No. 75548)
        Katherine L. McKnight (VSB No. 81482)
        BAKER HOSTETLER LLP
        1050 Connecticut Ave NW, Suite 1100
        Washington, DC 20036
        Tel: (202) 861-1500
        Fax: (202) 861-1783
        mbraden@bakerlaw.com
        jwalrath@bakerlaw.com
        kmcknight@bakerlaw.com

        *Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker William J. Howell*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of April, 2015, a copy of the foregoing was filed and

served on all counsel of record pursuant to the Court's electronic filing procedures using the

Court's CM/ECF system.

/s/ Katherine L. McKnight
Katherine L. McKnight
Baker Hostetler LLP (DC)
1050 Connecticut Ave NW
Suite 1100
Washington, DC 20036
Tel: 202-861-1702
Fax: 202-861-1783
kmcknight@bakerlaw.com