## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, | Civil Action No. 3:14-cv-00852-REP-GBL-BMK |
| Plaintiffs, | |
| v. | |
| VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, | |
| Defendants, | |
| v. | |
| VIRGINIA HOUSE OF DELEGATES, *et al.*, | |
| Intervenor-Defendants. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL

### I.     INTRODUCTION

Hoping to withhold hundreds of pages of relevant documents, the House asks this Court to ignore fundamental legal principles and the undisputed facts of this case. Plaintiffs respectfully submit that this Court should decline the invitation and grant their motion.

*Legislative Privilege.* The House continues to withhold delegates' communications about the 2011 redistricting process even though it now concedes that (1) only individual delegates may assert the privilege as to those communications, and (2) no delegate has come forward with specific facts showing that his or her communications are privileged.

1

The House offers two arguments in support of that remarkable position. First, it argues that the legislative privilege is presumed to apply and need not be established, only "asserted." Second, it argues that the privilege is absolute and unyielding. Both arguments are wrong. Like other privileges, the legislative privilege must be asserted *and* established—it is never presumed. In addition, the legislative privilege is a *narrow* privilege subject to well-defined limitations, and it is a *qualified* privilege that yields to weighty federal interests—including the indisputably important interests at stake here.

*Attorney-Client Privilege.* The House also continues to withhold documents under the attorney-client privilege, including (1) communications in which the House is not seeking or receiving legal advice and (2) communications to, from, and between third parties. The House calls Plaintiffs' challenges to those claims "cryptic" and "nonsensical" (Opp'n at 17, 19), but name-calling hardly solves the fundamental problem with the House's position: The House simply may not assert the privilege on behalf of others, and neither the House nor others may maintain the privilege if they disclose communications to outsiders.

If this dispute feels familiar to this Court, it is no wonder:  In *Page*, the same counsel that represents the House in this case tried to push the legislative privilege and the attorney-client privilege far beyond the scope of the law on behalf of Chris Marston. This Court rightly rejected those misguided efforts. *See Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 660 (E.D. Va. 2014) (rejecting Mr. Marston's claims of legislative privilege); *id.*, Mem. Order at 2 (Dkt. 90) (rejecting "many" of Mr. Marston's claims of attorney-client privilege "under settled principles"). It should do the same here.

2

## II.   ARGUMENT

**A.   The Legislative Privilege**

**1.   No Communications May Be Withheld Under the Legislative Privilege Because No Privilege Holder Has Established the Privilege**

Although the House tries mightily to obscure the point, it is of course well-settled that evidentiary privileges are never presumed to apply. Instead, a privilege applies only if the privilege holder carries "the burden of demonstrating its applicability." *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011). Moreover, a "conclusory assertion of privilege is insufficient to establish a privilege's applicability to a particular document"; the privilege holder must "demonstrate specific facts showing that the communications [are] privileged." *Page*, 15 F. Supp. 3d at 661 (internal quotation marks and citation omitted). These undisputed principles control this motion.

Here, the House candidly admits (Opp'n at 7) that it may not assert the legislative privilege on behalf of individual delegates. Because it cannot even assert the privilege, the House certainly cannot demonstrate specific facts establishing the privilege (and does not even pretend to do so). The only legally relevant questions are whether a valid privilege holder has both asserted and established the privilege with respect to each communication.

The answer to both questions is "no." As a result, the House must produce all communications withheld under the legislative privilege.[1]

---

[1] Because the House concedes that it may not assert the legislative privilege, there is no need to address the House's unsuccessful attempts to distinguish Plaintiffs' authority for that rule. *See* Opp'n at 8-9. Nor is there any need to address whether the House waived its right to assert the privilege by intervening in this case. *See* Mot. at 10; Opp'n at 10.

a.      **The Delegates Who Ignored This Case Have Waived the Privilege**

The parties agree on one point:  Each of the affected delegates has received ample notice of this dispute. The parties sent each delegate a letter informing them of Plaintiffs' discovery requests and the parties' positions. *See* Dkt. 49-1 at 326-27. The House also sent each delegate a copy of Plaintiffs' motion to compel. Nevertheless, several delegates have ignored the dispute entirely. At the peril of stating the obvious, those delegates have neither asserted nor established the privilege with respect to their communications. To the contrary, they have waived any privilege they could have asserted. *See Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014) ("The [legislative] privilege is also deemed to be waived as to the 17 legislators who did not respond to defense counsel's inquiry regarding the assertion of the privilege."); *Bd. of Supervisors of Fluvanna Cnty. v. Davenport & Co. LLC*, 285 Va. 580, 589 (2013) (county board members "explicit[ly] and unequivocal[ly]" waived legislative immunity by "declining to assert legislative immunity") (internal quotation marks and citation omitted).

Hoping to avoid that commonsense conclusion, the House argues that it may withhold the communications of all delegates—including those who stayed silent—because it owes its members a "fiduciary duty" to withhold all communications "absent express waiver of the privilege." Opp'n at 9. The House cites no authority for that novel legal duty. If the House had any duty to its members, it was a duty to notify them of this dispute so that they could protect their rights. The House discharged that duty. It must now discharge its duties to this Court and to the parties in this case under the rules of discovery.

The House also argues that it cannot be compelled to disclose the communications of the delegates who have remained silent because disclosure would amount to a "waiver" of the privilege for those delegates, and the law of this Circuit requires the "express waiver of the privilege by a Delegate." Opp'n at 9. That argument fails for at least two reasons.

First, the House's purported concern about waiving the privilege is a red herring. All agree that the House may not assert or waive the privilege on behalf of delegates. Thus, disclosure of documents by the House amounts to nothing more than that—disclosure by the House. Moreover, as explained above, the delegates who have remained silent have already waived the privilege on their own behalf. *See Veasey*, 2014 WL 1340077, at *2.

Second, while the House *asserts* that the Fourth Circuit requires an "express waiver" to vitiate the legislative privilege (Opp'n at 9), it cites no authority for that argument. Nor is that surprising. In the Fourth Circuit and elsewhere, privileges are "strictly construed and accepted only where the public good associated with the exclusion of relevant evidence overrides the general principle in favor of admission." *Page*, 15 F. Supp. 3d at 660. Thus, the House has the law exactly backwards: No privilege—including the legislative privilege—is presumed to apply absent an "express waiver of the privilege." Instead, a privilege is presumed *not* to apply unless and until the privilege holder identifies specific facts showing that specific communications are privileged. *See ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 251 (E.D. Va. 2012) ("A party asserting a privilege has the burden of showing that it applies."). The delegates who have ignored this proceeding have not met that requirement, nor have they shown any interest in doing so.

**b.      The Delegates Who Objected Have Not Established the Privilege**

As predicted in Plaintiffs' opening brief, the House argues that it may withhold the communications of delegates who have objected in writing to disclosure of their communications. *See* Opp'n at 7-10. The House is wrong.

In response to the parties' joint letter to delegates, several delegates wrote letters or email messages to the parties' counsel invoking or declining to waive the privilege. Without exception, those delegates' communications are terse and conclusory. *See, e.g.*, Dkt. 49-1 at 337 ("I am not waiving any privilege."). They do not identify facts in support of their privilege claims. Nor do they explain which communications they believe to be privileged. And even though the joint letter invited each of the delegates to "contact [the House's] counsel if you would like to see any of the emails sent to or from you deemed responsive so far," Dkt. 49-1 at 326, only a few asked to review their communications.

A "party asserting a privilege has the burden of showing that it applies," *ePlus*, 280 F.R.D. at 251, and a "conclusory assertion of privilege is insufficient to establish a privilege's applicability to a particular document," *Page*, 15 F. Supp. 3d at 661. Here, despite ample notice and opportunity, the objecting delegates have offered nothing but conclusory, blanket assertions of privilege. As a result, they have not established the privilege, and their communications must be produced. *See, e.g.*, *Perez v. Perry*, No. SA-11-CV-360-OLG, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("Any individual asserting the [legislative] privilege must, however, provide enough facts so that a court . . . can determine whether the information sought falls within the scope of the privilege."); *Byrnes*

6

*v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C. 1986) ("It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit[.]").

Notably, the House does not even try to argue that the delegates' responses are sufficient to *establish* the legislative privilege. Nevertheless, the House argues—without authority and contrary to settled law—that this Court should simply "accept the Delegates' written assertions of their privilege." Opp'n at 9. But the House identifies no convincing reason to treat delegates differently than all other privilege holders. For example, the House argues that "if communications concern matters that are legislative . . . in nature," then "the doctrine of legislative immunity has full force to prevent legislators from having to testify." Opp'n at 6 (internal quotation marks and citation omitted). That may be true, but it is also irrelevant. This is a dispute about legislative *privilege*, not legislative *immunity*, and Plaintiffs' motion does not seek to compel legislators to testify. It does not even seek to compel legislators to produce documents. It seeks only to compel the House to produce documents the House possesses.[2]

---

[2] Even though Plaintiffs' motion to compel has nothing to do with discovery from legislators—let alone *testimony* from legislators—the House suggests in a footnote that "the guidance of the Court would be useful in resolving the dispute concerning depositions." Opp'n at 5 n.3. There is no dispute concerning depositions. Plaintiffs and the House have noticed several depositions of delegates. No delegate has yet objected to those depositions, including those delegates who invoked the privilege with respect to documents in the House's possession. Nor is there any dispute on the horizon. While Plaintiffs declined to refrain from noticing all delegates who invoked the privilege in response to the parties' joint letter, Plaintiffs do not intend to force delegates to sit for depositions over their objections. Finally, the House's concerns about trial length are unfounded and premature. Not one delegate has been deposed yet, and it is far too soon to tell whether any of them will be called to testify at trial.

The House also complains that delegates should not have to "hire counsel and intervene in litigation . . . to preserve the privilege," especially given their "meager salaries." Opp'n at 7. But Plaintiffs did not argue that intervention is necessary. To the contrary, they acknowledged that delegates may assert and establish the privilege *either* by "enter[ing] an appearance in this case *or* otherwise indicat[ing] an intent to formally press a privilege claim." Mot. at 9 (emphasis added). Plaintiffs did not purport to establish any burdensome "procedural hurdles" for delegates. Opp'n at 10. Plaintiffs simply argued that delegates, like other privilege holders, must do more than make conclusory, blanket assertions of privilege.

In sum, the law is clear:  Privilege holders may not merely *assert* a privilege; they must offer specific facts showing that specific documents are privileged in order to *establish* the privilege. Here, nothing prevented any of the delegates, including those who declined to waive the privilege, from meeting that reasonable requirement. At the very least, they could have explained to the parties which of their communications they believed to be privileged (and why), and this Court could then have reviewed those explanations. Instead, the delegates identified no specific communications and provided no supporting facts. With all due respect, their communications must be produced.[3]

---

[3] Arguing otherwise, the House claims that the court in *Veasey* "accepted the representation of counsel for the Texas executive branch that 189 legislators have asserted the legislative privilege," and "[n]o further effort by those individuals was required." Opp'n at 8 (internal quotation marks and citation omitted). In fact, the parties in *Veasey* did not dispute whether the legislators properly asserted or established their privilege claims, so the *Veasey* court did not analyze those issues. Perhaps more importantly, the court held that the legislative privilege is a qualified privilege and (in a portion not cited by the House) ordered the State of Texas to produce "all of the documents in its possession, custody, or control that it has withheld on the basis of legislative privilege." 2014 WL 1340077, at *3.

8

### 2.     Many Withheld Communications Are Not Privileged

As explained in Plaintiffs' opening brief (at 11-15), many of the communications withheld by the House must be produced because they fall outside the narrow scope of the legislative privilege. The House disagrees, arguing that it may withhold all of the communications because they reflect "legitimate legislative activity." Opp'n at 16.

As an initial matter, the House should not be permitted to raise that argument. The House does not represent any individual delegate except Speaker Howell. That means the House has no way of knowing whether other delegates' communications reflect "legitimate legislative activity." Moreover, even if the House could make that determination on its own, *it has no right to assert the privilege on behalf of individual delegates*. Thus, the House's arguments as to why the communications are privileged are simply beside the point. Nevertheless, out of an abundance of caution, Plaintiffs address those arguments.

### a.     Communications Disclosed to Outsiders

As explained in Plaintiffs' opening brief (at 11-12), the House's privilege logs show that several of the communications the House has withheld involve both legislators and non-legislator outsiders (e.g., county registrars). "As with any privilege, the legislative privilege can be waived when the parties holding the privilege share their communications with an outsider." *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11-C-5065, 2011 WL 4837508, at *10 (N.D. Ill. Oct. 12, 2011). All communications that include non-legislator outsiders must therefore be produced.

In response, the House argues that the communications with outsiders "involved gathering information as part of the redistricting process," and that the "scope of legitimate legislative activity is defined broadly to include preliminary fact-finding." Opp'n at 16 (internal quotation marks and citation omitted). To the extent that the House believes that purely factual materials are privileged, it is wrong. *See In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987). In any event, the question is not whether those communications involved "legitimate legislative activity." The question is whether those communications involved outsiders. Because the answer to that question is "yes," any privilege in the communications has been waived. *See Perez*, 2014 WL 106927, at *2 ("To the extent that any individual asserting the privilege has had communications or correspondence with any outside party or entity, such communications or correspondence waives the privilege as to the content of those communications."); *N.C. State Conf. of the NAACP v. McCrory*, Nos. 1:13cv658, 1:13cv660, 1:13cv861, Mem. Order at 20-23 & n.5 (M.D.N.C. Feb. 4, 2015) (Dkt. 231) (same; collecting cases).

### b.    Communications Post-Dating the 2011 Redistricting Process

Plaintiffs' opening brief also explained (at 13-14) that many of the communications on the House's privilege log are dated long after the redistricting process at issue. Those items must be produced because the privilege does not extend to post-enactment materials. *See McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 486 (4th Cir. 2014) (neither legislative immunity nor legislative privilege bars inquiry into "discriminatory behavior prior to and after . . . legislative actions"); *U.S. EEOC v. Wash. Suburban Sanitary*

*Comm'n* ("*WSSC*"), 631 F.3d 174, 184 (4th Cir. 2011) (declining to quash subpoena for

post-enactment materials); *Doe v. Nebraska*, 788 F. Supp. 2d 975, 985 (D. Neb. 2011)

(privilege "protects only documents which are pre-decisional").[4]

      The House cites no cases to show that the privilege extends to post-enactment

communications—including communications dated *years* after the 2011 map was enacted.

Instead, it argues that *WSSC* "did not impose a bright-line cutoff at enactment." Opp'n at 16.

*WSSC* did, however, explain that the legislative privilege extends only to "integral steps in

the legislative process." *WSSC*, 631 F.3d at 184 (internal quotation marks and citation

omitted). Of course, post-enactment communications are not "integral steps" in the

legislative process. *See id.* (explaining that "[l]egislative acts, the ones for which the

immunity and privilege are granted, typically involve *the adoption of prospective,*

*legislative-type rules*") (emphasis added) (internal quotation marks, citation, and brackets

omitted). The House's argument therefore conflicts with commonsense—not to mention its

counsel's arguments in the *Page* case. *See* Mem. of Points and Auth. in Supp. of Mot. to

Quash 5, *Page v. Va. State Bd. of Elections*, No. 3:13-cv-00678-REP-LO-AKD (Dkt. 62)

(arguing that "[a]ctivities relating to *preparation, introduction, and enactment* of legislation

are quintessential 'legislative activity,'" and that the privilege therefore covers "*the*

*deliberative process that led to the creation or enactment of the plan*") (emphasis added).

---

[4] The House tries to distinguish *Doe* on the ground that it involved the deliberative process privilege rather than the legislative privilege. *See* Opp'n at 16. But the two labels are often used interchangeably and the standards applied are similar. *See, e.g.*, *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100 (S.D.N.Y. 2003) ("Whether the privilege that the legislator-defendants seek to assert is characterized as a legislative or a deliberative process privilege, it is, at best, one which is qualified."), *aff'd*, 293 F. Supp. 2d 302 (S.D.N.Y. 2003).

### c.    Inadequate Privilege Descriptions

Finally, Plaintiffs' opening brief (at 14-15) explained that the House has not sufficiently described many of the communications withheld on legislative privilege grounds. Instead, the House simply asserts that those communications are "regarding redistricting"—an inherently ambiguous description that does not enable this Court or the Plaintiffs to evaluate the House's privilege claims. *See* Fed. R. Civ. P. 26(b)(5) (privilege logs must "enable other parties to assess the claim"). The House admits that its descriptions are indecipherable but argues that they are nonetheless sufficient. *See* Opp'n at 14 (arguing that "the logs need only be detailed enough to demonstrate that the communications concern redistricting"). Only one case cited by the parties addresses that exact issue. It agrees with Plaintiffs. *See Favors v. Cuomo* ("*Favors I*"), 285 F.R.D. 187, 223 (E.D.N.Y. 2012) (entries describing withheld records as relating to "redistricting issues" were "inadequate to allow either the plaintiffs or this Court to determine whether a given privilege applies").

### 3.    To the Extent the Privilege Applies, It Is Qualified, and It Must Yield

Even if the privilege could be established as to each of the withheld communications, on the meager record before this Court, the nature of this case and the fundamental rights at stake would require the privilege to yield. As Judges Murnaghan and Motz have explained:

> Legislative redistricting is a *sui generis* process. While it is an exercise of legislative power, it is not a routine exercise of that power. The enactment of statutes ordinarily involves the implication of public policy by a duly constituted legislative body. Redistricting involves the establishment of the electoral structure by which the legislative body becomes duly constituted. Inevitably, it directly involves the self-interest of the legislators themselves.

*Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 304 (D. Md. 1992) (Murnaghan & Motz., JJ., concurring). As a result, "[m]ost decisions in redistricting cases involving claims of legislative privilege . . . have recognized a qualified legislative privilege"—that is, a privilege that yields to the important federal interests in enforcing voters' fundamental constitutional rights. *Favors I*, 285 F.R.D. at 213.

The House claims that the legislative privilege is not qualified in this Circuit. Instead, argues the House, "[b]inding precedent has rejected the argument 'that legislative *immunity* is not absolute' in civil litigation and holds that the privilege 'has full force' where a suit 'would require legislators to testify regarding conduct in their legislative capacity.'" Opp'n at 10 (quoting *Schlitz v. Virginia*, 854 F.2d 43, 45 (4th Cir. 1988)) (emphasis added).

The House's argument is misguided for several reasons. For starters, the House again confuses legislative *immunity* with legislative *privilege*. But this case has nothing to do with legislative immunity. No delegates have been named as defendants, and the only legislative body involved—the House—voluntarily injected itself into this case. Nor does Plaintiffs' motion to compel *documents* from the House "require legislators to testify regarding conduct in their legislative capacity." Opp'n at 10 (internal quotation marks and citation omitted). In fact, Plaintiffs' motion to compel does not burden legislators in any way. And if this Court grants Plaintiffs' motion, then Plaintiffs will have much less need to depose or subpoena legislators—a result consistent with the goals of legislative immunity and legislative privilege.

In addition to conflating immunity and privilege, the House misstates Fourth Circuit law. Far from embracing an absolute, unyielding privilege, courts in this Circuit have repeatedly rejected it. *See Marylanders*, 144 F.R.D. at 304 (Murnaghan & Motz., JJ., concurring) ("testimonial legislative immunity is not an absolute"); *Page*, 15 F. Supp. 3d at 665 ("[T]he argument that legislative privilege is an impenetrable shield that completely insulates any disclosure of documents is not tenable[.]") (internal quotation marks and citation omitted); *U.S. EEOC v. Wash. Suburban Sanitary Comm'n*, 666 F. Supp. 2d 526, 532 (D. Md. 2009) (the "legislative privilege is . . . not one of non-disclosure") (internal quotation marks and citation omitted), *aff'd*, 631 F.3d 174 (4th Cir. 2011). This is hardly surprising:  the Supreme Court held that the privilege is a qualified privilege 35 years ago. *See United States v. Gillock*, 445 U.S. 360, 373 (1980) ("where important federal interests are at stake," the privilege "yields"). Thus, contrary to the House's claim, "the proposition that a legislative privilege is not absolute, particularly where another compelling, competing interest is at stake, is not a novel one." *Perez*, 2014 WL 106927, at *2 (internal quotation marks and citation omitted).[5]

---

[5] To argue otherwise, the House relies principally on *Burtnick v. McLean*, 76 F.3d 611 (4th Cir. 1996) and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). In *Burtnick*, the Fourth Circuit held that the legislative privilege did not allow the plaintiff to compel *testimony* from a *legislator*. *See* 76 F.3d at 613. It most assuredly did not hold that the privilege bars *document requests* from *non-legislators* (like the House). *Arlington Heights* helps the House even less. It does not address document requests, let alone document requests to non-legislators. It does, however, contemplate cases in which *legislators* may be compelled to *testify* notwithstanding the legislative privilege. *See* 429 U.S. at 268 ("In some extraordinary instances [legislators] might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony *frequently*"—but not always—"will be barred by privilege.") (emphasis added).

The only remaining question is whether the privilege should yield here. It should. Here, as in *Page*, "the challenged legislative action is alleged to have violated an overriding, free-standing public policy . . . reflected in the Equal Protection Clause of the federal Constitution," and the parties "have placed squarely into issue the legislative motive in enacting the redistricting legislation." *Page*, 15 F. Supp. 3d at 665 (internal quotation marks and citation omitted). Thus, the legislative privilege does not bar Plaintiffs' valid discovery requests. *See Favors v. Cuomo* ("*Favors II*"), No. 11-cv-5632, Mem. & Order at 34 (E.D.N.Y. Feb. 8, 2013) (Dkt. 559) ("documents reveal[ing] an awareness that the [redistricting plan] may dilute minority votes" were discoverable); *Baldus v. Members of Wis. Gov't Accountability Bd.*, Nos. 11-CV-562, 11-CV-1011, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011) ("[G]iven the serious nature of the issues in this case and the government's role in crafting the challenged redistricting plans, [the] legislative privilege simply does not apply to the documents and other items the plaintiffs seek[.]").

**B.    The Attorney-Client Privilege**

As explained in Plaintiffs' opening brief (at 17-19), the House's claims of attorney-client privilege are confused and confusing. The House's Opposition deepens the mystery and does nothing to vindicate the House's privilege claims.

**1.    "Advice to the House"**

First, the House claims that "[m]ost of the challenged log entries involve legal advice provided directly to the House." Opp'n at 17. As examples, it identifies several "communications between *House members*" and attorneys for various entities. *Id.* (emphasis

15

added). But as explained above, *the House does not represent House members.* It represents

only itself and Speaker Howell, and it may not expand or contract the scope of its authority

to suit its different arguments. Thus, just as the House may not *waive* the attorney-client

privilege on behalf of individual delegates who sought and obtained legal advice about their

legislative duties (a point the House presumably would not dispute), it also may not *assert*

the attorney-client privilege on behalf of those delegates. *See, e.g.*, Edna Selan Epstein, *The*

*Attorney-Client Privilege and the Work-Product Doctrine* 5 (5th ed. Supp. 2012) ("Someone

who is not a party to the privilege has no standing to raise it.'").

Notably, the House also includes in the vast category of "Advice to the House"

communications between "the Virginia Republican Party" and its attorneys (Mar. 26, 2015

log number 25); communications between attorneys for the House Republican Campaign

Committee ("HRCC") and attorneys for the "Republican Caucus" (Apr. 10, 2015 log

numbers 133, 134); communications among HRCC attorneys and staffers (135, 172, 202);

communications between HRCC attorneys and the Republican National Committee (136);

communications between the HRCC and counsel for the *Page* defendants (173, 176);

communications between the HRCC and consultants for unidentified delegates (178, 179,

181, 185, 188, 190, 191, 194, 196); and even communications between the HRCC and

attorneys for "Republican Members of the Virginia Senate" (137, 141, 150, 162, 169, 171,

174, 198). The House does not argue that "the House" is synonymous with the Virginia

Republican Party, the HRCC, the Republican National Committee, or the Virginia Senate.

Nor could it. In the *Page* case, the House conceded (and this Court held) that the HRCC is

distinct from the House Republican Caucus and, therefore, from the House itself. *See Page*, 15 F. Supp. 3d at 660. It follows that the House cannot assert the privilege with respect to communications to, from, or including these distinct entities. Plus, even if those communications contain legal advice meant for the House, the House waived any privilege in that advice by sharing it freely with third parties. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

The House complains that Plaintiffs "ignore[] the realities of legal counsel in a world of partisan politics." Opp'n at 18. The House also contends that "[w]hat matters is that the advice concerned the legislative acts of the House." *Id*. But the "realities of legal counsel in a world of partisan politics" do not alter the law of attorney-client privilege.  Under that law, the House may assert the privilege *only* with respect to legal advice that was (a) sought or obtained by *the House*, and (b) not disclosed to *third parties*. And to the extent that the House believes that it may assert the privilege with respect to any legal advice "concern[ing] the legislative acts of the House," no matter who sought the advice, who provided the advice, and who was privy to the advice, the House is simply and dramatically wrong.[6]

---

[6] The House responds by arguing that Speaker Howell "is the leader of the Republican Caucus and has authority to claim privilege on its behalf." Opp'n at 18. The House also argues that its law firm "is counsel to the Republican Caucus . . . and can claim privilege on its behalf." *Id*. But nothing in the record suggests that the entire Republican Caucus has authorized Speaker Howell to wield the attorney-client privilege on its behalf, and the House cites no case vesting that authority in Speaker Howell. Similarly, nothing in the record shows that the House's counsel, in fact, has an attorney-client relationship with the "Republican Caucus." In any event, very few of the House's log entries actually refer to the "Republican Caucus."

**2.       "Advice to and from Messrs. Marston and Morgan"**

Perhaps realizing that it improperly asserted privilege over many documents, the House belatedly argues that its law firm (Baker Hostetler) also represents Chris Marston and John Morgan, and may therefore assert the privilege with respect to their communications. But even if there is an attorney-client relationship between Baker Hostetler and Messrs. Marston and Morgan—and nothing in the record shows there is—it shields only confidential legal communications between Baker Hostetler and Messrs. Marston and Morgan.[7]

**3.       "Work Product from the *Page* Case"**

The House accuses Plaintiffs of trying to obtain "an unfair advantage" in the *Page* case by seeking communications between defendant's expert in *Page* (Mr. Morgan), and defendants' counsel in *Page* (the Jones Day law firm). Opp'n at 18. Plaintiffs have done nothing unfair. Those communications may have been protected by Rule 26(b)(4) in *Page*. Here, however, they appear on the privilege log of the House, which was not a party in *Page*. The House has no obligation to log documents outside its custody or control, including documents held by Baker Hostetler on behalf of other clients. But the House did list them on its privilege log. It follows that the communications were in fact disclosed to the House. And by disclosing those communications to the House, the *Page* defendants waived the privilege in those communications.

---

[7] The House argues that some of the communications attributed to Mr. Marston were deemed privileged by this Court in *Page*. *See* Opp'n at 6. Because the House's privilege logs do not identify which communications were reviewed in *Page*, Plaintiffs cannot respond to that claim. The House also argues that Mr. Marston may "claim privilege on behalf of any clients he represents." Opp'n at 18. Maybe he has such authority, but the point is surely irrelevant here as Mr. Marston has not asserted the privilege on behalf of anyone.

18

Because it cannot defeat that logic, the House tries to change the facts. Even though those communications appear on the House's privilege log, argues the House, they "have never been in the possession, custody, or control of the House or Speaker Howell." Opp'n at 19. But facts are stubborn things. How could counsel for the House have created the privilege log descriptions for those communications without actually reviewing the communications? The answer, of course, is that counsel for the House *must* have reviewed the communications. That waived the privilege.

### 4.       "Waiver" and the Common-Interest Doctrine

The House claims that the common-interest doctrine solves all of its problems, including the problems of waiver. *See* Opp'n at 19. Although it is not entirely clear, the House seems to believe that all of the distinct entities listed on its privilege log (e.g., delegates and their agents; the House Republican Campaign Committee; the Republican National Committee; the Virginia Senate; the Virginia Attorney General; the Virginia Governor; etc.) are "united by a common interest," and therefore all communications among those entities fall within the scope of the privilege. Opp'n at 19 (internal quotation marks and citation omitted). This all-powerful-magic-wand approach to the problem is as novel as it is unsupported. To establish a common interest, the House must define "the nature and scope of the interest" that it "allegedly has in common" with those third parties, *Byrnes*, 111 F.R.D. at 72, and show that the parties "consult[ed] or retain[ed] an attorney concerning a legal matter in which they share[d] a common interest," *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004). The House has not even tried to meet that standard.

5.      **"Third-Party Rights"**

Finally, tacitly admitting that it has withheld documents it has no right to withhold, the House cites snippets from various treatises and a state court case from Texas to argue that this Court should uphold the privilege on behalf of third parties *sua sponte*. This Court should reject that last-ditch effort to frustrate Plaintiffs' valid discovery requests. *See Almonte v. City of Long Beach*, No. CV 04-4192(JS)(JO), 2005 WL 1796118, at *4 (E.D.N.Y. July 27, 2005) ("The judges are not bound, judicially, to notice a right of privilege, nor to grant it without a claim.").

DATED: April 27, 2015

By: */s/ John K. Roche*
John K. Roche (VSB# 68594)
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
**PERKINS COIE** LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford
     (admitted *pro hac vice*)
**PERKINS COIE** LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On April 27, 2015, I will electronically file the foregoing with the Clerk of Court using

the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jennifer Marie Walrath
Katherine Lea McKnight
Baker & Hostetler LLP (DC)
1050 Connecticut Ave NW
Suite 1100
Washington, DC 20036
202-861-1702
Fax: 202-861-1783
jwalrath@bakerlaw.com
kmcknight@bakerlaw.com

Effrem Mark Braden
Baker & Hostetler LLP (DC-NA)
Washington Square
Suite 1100
Washington, DC 20036
202-861-1504
Fax: 202-861-1783
mbraden@bakerlaw.com

Of counsel:

Dale Oldham, Esq.
1119 Susan St.
Columbia, SC 29210
803-772-7729
dloesq@aol.com

*Attorneys for Intervenor-Defendants*

Jeffrey P. Brundage
Daniel Ari Glass
Kathleen Angell Gallagher
Eckert Seamans Cherin & Mellott LLC
1717 Pennsylvania Ave NW, Suite 1200
Washington, D.C. 20006
202-659-6600
Fax:  202-659-6699
jbrundage@eckertseamans.com
dglass@eckertseamans.com
kgallagher@eckertseamans.com

Godfrey T. Pinn, Jr.
Harrell & Chambliss LLP
Eighth and Main Building
707 East Main Street
Suite 1000
Richmond, VA 23219
gpinn@hclawfirm.com

Anthony F. Troy
Eckert Seamans Cherin & Mellott LLC
707 East Main Street
Suite 1450
Richmond, Virginia  23219
804-788-7751
Fax:  804-698-2950
ttroy@eckertseamans.com

*Attorneys for Defendants*

By */s/ John K. Roche*
  John K. Roche (VSB No. 68594)
  Perkins Coie LLP
  700 13th St. N.W., Suite 600
  Washington, D.C. 20005-3960
  Phone:  (202) 434-1627
  Fax:  (202) 654-9106
  JRoche@perkinscoie.com

  *Attorneys for Plaintiffs*

21