```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                FOR THE EASTERN DISTRICT OF VIRGINIA

 3                         RICHMOND DIVISION

 4

 5   -----------------------------------
                                       :
 6   GOLDEN BETHUNE-HILL, et al.       :   Civil Action No.
                                       :   3:14CV852
 7   vs.                               :
                                       :
 8   VIRGINIA STATE BOARD OF           :   May 14, 2015
     ELECTIONS, et al.                 :
 9   -----------------------------------
                                       :
10

11

12          COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13          BEFORE THE HONORABLE ROBERT E. PAYNE

14              UNITED STATES DISTRICT JUDGE

15   APPEARANCES:

16   Bruce V. Spiva, Esquire
     Perkins Coie, LLP
17   700 13th Street NW
     Suite 600
18   Washington, D.C.  20005
     Counsel for the plaintiffs
19
     Tony F. Troy, Esquire
20   Eckert Seamans Cherin & Mellott, LLP
     707 East Main Street
21   Suite 1450
     Richmond, Virginia  23219
22

23

24              Peppy Peterson, RPR
                Official Court Reporter
25            United States District Court
```

```
 1   APPEARANCES:   (cont'g)

 2   Daniel A. Glass, Esquire
     Jeffrey P. Brundage, Esquire
 3   Eckert Seamans Cherin & Mellott, LLC
     1717 Pennsylvania Avenue, NW
 4   Suite 1200
     Washington, D.C.   20006
 5
     Godfrey T. Pinn, Jr., Esquire
 6   Harrell & Chambliss, LLP
     707 East Main Street
 7   Suite 1000
     Richmond, Virginia   23219
 8   Counsel for the Virginia State Board of Elections

 9   E. Mark Braden, Esquire
     Baker & Hostetler, LLP
10   Washington Square
     1050 Connecticut Avenue, NW
11   Washington, D.C.   20036
     Counsel for Virginia House of Delegates
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2

 3           THE COURT:  Hello.  Are you all there?

 4           UNIDENTIFIED SPEAKER:  Yes, sir, Your Honor.

 5           THE COURT:  All right, this is Bethune-Hill

 6    against the Virginia State Board of Elections and the

 7    Virginia House of Delegates, 3:14CV852.  If you'd identify

 8    yourself for the record and the party whom you represent,

 9    and if you'd give your name whenever you speak so the

10    court reporter can record it, I would appreciate it.  Go

11    ahead.  Plaintiff?

12           MR. SPIVA:  Your Honor, this is Bruce Spiva from

13    Perkins Coie for the plaintiffs.

14           MR. TROY:  Your Honor, Tony Troy along with Dan

15    Glass, Godfrey Pinn, and Jeff Brundage on behalf of the

16    defendants State Board of Elections and Department of

17    Elections.

18           MR. BRADEN:  Your Honor, it's Mark Braden at

19    Baker & Hostetler for defendant intervenors, the House of

20    Delegates.

21           THE COURT:  All right.  Why are we having this

22    call, folks?

23           MR. TROY:  Judge, this is Tony Troy.

24    Approximately a week ago, I had informed Mr. Braden that

25    we were not going to be adverse to the position of
```

1  intervening defendants, but we had determined not to

2  present as a testifying expert Dr. Katz.  He is going to

3  be a nontestifying expert.  Mr. Braden, notwithstanding,

4  issued two subpoenas, the latest on Dr. Katz to give

5  testimony in California.

6          We object on the grounds that as indicated, we

7  are not presenting Dr. Katz or testimony in front of the

8  Court, but we believe it clear that under the --

9          THE COURT:  Mr. Troy, I don't know what it is,

10  but you're coming across with a great deal of static, and

11  I'm having trouble hearing you, and the court reporter

12  can't make it out.  You are sort of losing a lot of words.

13  Are you on a squawk box somewhere?

14          MR. TROY:  Let me try it this way, Judge.  Hold

15  on.  Is this better?

16          THE COURT:  Yes.  So go back again and start

17  again.

18          MR. TROY:  I will.  Yes, sir.  I'm sorry.  I'm in

19  a car, Judge.  Your Honor, as indicated, approximately --

20  sometime last week, I informed Mr. Braden that we had

21  determined not to present as a testifying expert Dr. Katz.

22  We are holding him as a nontestifying expert which, of

23  course, under the rules, depositions of nontestifying

24  experts are not allowed.  We are not presenting Dr. Katz

25  as an expert at trial.

1          THE COURT:  Are you presenting any experts?

2          MR. TROY:  We are not, Judge.

3

4          (Brief interruption.)

5

6          THE COURT:  Hello.  Are you all there?

7          UNIDENTIFIED SPEAKER:  Yes, Your Honor.

8          THE COURT:  Okay.  Well, the Katzenjammer Kids

9   are here, too.  So -- I'm going on a new telephone

10  technique right now called hands-off.  See if we can keep

11  this from happening again.

12          Mr. Troy, you are not using Dr. Katz, you're not

13  calling anybody, and somebody wants to depose him.  Who

14  has moved to depose him?

15          MR. TROY:  Your Honor, Baker Hostetler,

16  representing the defendant intervenors, issued a subpoena

17  for Dr. Katz in California, and obviously we object to

18  California, but we object to trying to depose a

19  nontestifying expert that we are not going to be

20  presenting at trial.

21          Let me clarify one other matter, Judge, so that

22  everything is in context, and I'll be brief.  As Your

23  Honor knows, this case involves a challenge to 12 House of

24  Delegates districts.  The House of Delegates and the

25  speaker have intervened to defend those districts.

1    We represent two state agencies that simply

2  implement elections.  Our clients, our agencies, have no

3  substantive role in trying to draw or determine the

4  propriety of districts.  Consequently, we are ready, our

5  clients, to implement such election as required either by

6  law or court order, but we don't believe that it's

7  necessary for taxpayer money to be spent substantively

8  beyond that when Mr. Braden and his firm are fully capable

9  and well capable of defending the constitutionality of the

10 districts.

11   So we're going to have a limited role now in

12 representing solely our agencies and do not need -- aren't

13 going to present witnesses, and, consequently, that's

14 another reason why we are objecting to our expert being

15 called.

16   THE COURT:  You mean, Mr. Troy, you're not going

17 to defend the constitutionality of the extant map?

18   MR. TROY:  We believe that to be valid and

19 constitutional, but Mr. Braden, on behalf of the House of

20 Delegates, is fully capable and is fully defending the

21 districts.  I think he would agree that his fees are being

22 paid by Virginia taxpayers.  We respectfully, Your Honor,

23 don't believe that they have to pay our firm in addition.

24   THE COURT:  But I guess my question is, are you

25 going to be actively defending the current configuration,

1    the current map?

2         MR. TROY:  We will not be presenting expert

3    testimony or witnesses on that, Your Honor.

4         THE COURT:  Will you be presenting any brief on

5    the topic once other evidence is presented?

6         MR. TROY:  We'll have to cross that when it comes

7    to that.  Most likely not, but, you know, I will have to

8    see what the others are saying, but I would not be taking

9    this position but for the fact of having full confidence

10   in both parties, knowing that the Court will have before

11   it all aspects of challenging and upholding the existing

12   districts.

13        THE COURT:  All right.  This is a strange posture

14   for the case, Mr. Troy.  I'll have to reflect on it.

15        MR. TROY:  Well, in a sense, Your Honor, but,

16   obviously, it's not quite but somewhat analogous to the

17   Page case where intervenors are fully defending the

18   validity of the third Congressional district.

19        THE COURT:  But that's because the Attorney

20   General's Office is occupied by someone who is taking a

21   different view of the law politically, and the parties

22   have changed, and so the attorney general is hewing to the

23   party line.  That's what's happening in that case.

24        MR. TROY:  I understand, Judge.

25        THE COURT:  And you're not in the Attorney

1   General's Office.  And the governor doesn't have anything

2   to do with the Virginia State Board of Elections as I

3   understand it.

4            MR. TROY:  He does appoint the members of the

5   state board --

6            THE COURT:  Right, but he doesn't have anything

7   to do with their functioning, does he, constitutionally

8   once they're appointed?

9            MR. TROY:  He appoints the members, and they

10  operate pursuant to statute; yes, Your Honor.

11           THE COURT:  So they can make their own decision

12  about whether they're going to defend it wholly apart from

13  the governor and the attorney general; is that right?

14           MR. TROY:  That is correct, Your Honor.

15           THE COURT:  And you are telling me basically

16  today that the board has decided they're not going to

17  defend the map.

18           MR. TROY:  Well, Your Honor, I will say that a

19  decision has been made and communicated to me that if I

20  believe, and I do, that both sides are going to be

21  zealously advocated and presented to the Court, that there

22  is no need for taxpayer money to be spent to the extent it

23  would necessarily have to be spent to present two

24  arguments mirroring each other as to the validity of the

25  districts.

1        THE COURT:  All right.  I understand.  I'm not

2   sure where that leaves us, but I understand your position.

3   All right, Mr. Braden, you want to take the deposition of

4   Mr. Katz; is that correct?

5        MR. BRADEN:  Yes, Your Honor, we do, and I'd like

6   to explain what our rationale is.  I think if we have just

7   a couple minutes, I could lay out a timeline and explain

8   why we think it is vital for Dr. Katz to be deposed.

9        At the beginning of this case, it was expressed

10  by counsel for the defendants that they believed the plan

11  to be constitutional and that they would vigorously and

12  zealously defend that constitutionality.

13       THE COURT:  Yes.

14       MR. BRADEN:  On March 18th, Dr. Katz was

15  identified by the defendants as a testifying witness.

16       THE COURT:  He was actually identified as a

17  testifying witness?

18       MR. BRADEN:  Yes.

19       THE COURT:  All right.

20       MR. BRADEN:  On April 10th, he filed a report,

21  his expert report which was provided to the plaintiffs and

22  the defendant intervenors.  When Dr. Katz was announced to

23  us as the expert witness -- he has a very well-known

24  reputation as to what he does.  He's one of the most

25  prominent political scientists and expert witnesses in the

1  country.  I've used him, I believe the plaintiff's counsel

2  in this case has used him as an expert witness in other

3  voting rights cases.

4         We knew exactly what he would do his report on,

5  and we had instructed our witnesses that they did not need

6  to duplicate his report and they should narrow their

7  report down to areas that would be different in substance

8  from what Dr. Katz would be likely to do.

9         Last month, we had an agreement between all the

10  parties in this case that Dr. Katz would be produced for a

11  deposition on May 20th.  I'll have to tell you, given all

12  the depositions in this case and all the parties, there

13  was a lot of maneuvering around, but it took us quite a

14  while to get a date.  There was agreement among all

15  parties that would be.

16         We received, last Friday at 9:00 p.m., an email

17  cancelling Dr. Katz' appearance on May 20th for the

18  deposition.  We then issued a subpoena for him, I think it

19  was Monday or Tuesday.  I don't remember what day we got

20  it done.  We sent a subpoena to him, and then we received

21  the objections from defendant counsel on three bases.

22         He said that it seeks privileged testimony of

23  information from a consulting expert for another party.  I

24  think that's foolishness, because principally what we want

25  to do is if we don't get him as a live expert, we want him

1    to validate his report so we can submit it as evidence.

2    So I can't imagine how one could argue it's privileged

3    testimony when it's an expert report that's been provided

4    to all the parties, and we're talking about information

5    when he was functioning as an expert testifying witness.

6         The other two points they made, frankly, were

7    valid.  That is we were requesting a deposition more than

8    100 miles from Dr. Katz' home, and we had only given him

9    five business days' notice to come to Washington.  We were

10   attempting to subpoena him on the same day they had agreed

11   to, but in light of their objections to that, we went to

12   California and have issued a subpoena from the Central

13   District of California, U.S. District Court, for a

14   deposition on May 22nd.

15        Frankly, the only thing we want to do is, if the

16   defendant won't permit us to use Dr. Katz as a testifying

17   witness and won't permit him to testify, which is what

18   they're telling us, then we simply want him to validate

19   his report so we can submit it as evidence to this Court

20   and give the opportunity to the plaintiffs to depose him.

21        This report and Dr. Katz has available

22   significant relevant information on which this Court can

23   improve its judgment in its decision-making on this

24   matter.

25             THE COURT:  Have you offered to pay Dr. Katz his

1  fees to testify?

2       MR. BRADEN:  Absolutely.  We'll pay travel and

3  expenses to testify.

4       THE COURT:  I mean not in his deposition but at

5  trial as your expert.

6       MR. BRADEN:  Yes.  The answer to that is yes.

7       THE COURT:  And what reason was given that Dr.

8  Katz can't be used by you now, by the defendants?

9       MR. BRADEN:  Their only response to that is he's

10  now their consulting expert.

11       THE COURT:  Consulting on what?  They're not

12  going to do anything.

13       MR. BRADEN:  That was our question, Your Honor.

14       THE COURT:  Well, I don't really understand the

15  position of the defendants in the case, but have you said

16  all you want to say right now, Mr. Braden?

17       MR. BRADEN:  Yes, I have, Your Honor.

18       THE COURT:  All right.  Who is here for the

19  plaintiff?

20       MR. SPIVA:  Bruce Spiva, Your Honor.

21       THE COURT:  Mr. Spiva, do you have anything to

22  say?

23       MR. SPIVA:  Not much, Your Honor.  I would just

24  note that the intervenors have named two experts even

25  though, as I understand it, I think the standing order

1   limits each party to one expert in a given field, and so

2   what they're really asking for now is three experts, you

3   know.  I guess they could have cross named Dr. Katz to

4   begin with, so we don't see a need for it, but this is

5   really between, I think, the state and the intervenors,

6   Your Honor.

7           THE COURT:  All right.

8           MR. TROY:  Your Honor, this is Tony Troy again.

9   Just a few matters.  One, Mr. Braden neglects to mention

10  that over a week ago, I did sit down orally and informed

11  him of what we were doing with our expert.

12          Secondly, I have heard for the first time now

13  that their expert testimony was structured on what they

14  anticipated that Dr. Katz may or may not say.  You know,

15  I'm sorry that that's the way they structured their

16  testimony, but Dr. Katz was not and is not their expert.

17  And this Court of the district, especially, Your Honor,

18  the case of -- if Your Honor will bear with me one

19  second --

20          UNIDENTIFIED SPEAKER:  N5 Technologies.

21          THE COURT:  Who is this?  Somebody is on the

22  phone?

23          MR. TROY:  This is me, Judge.  N5 Technologies,

24  and it's a decision by Judge Ellis dated January 30th of

25  2014.  In a similar situation, he pointed out that under

1    the rules, 26(b)(4)(D), nontestifying experts are not

2    subject to depositions, and in an instance where the

3    plaintiff -- the defendant has withdrawn a testifying

4    expert and is not presenting them, Judge Ellis ruled, in

5    short, that the plaintiff -- in that case, plaintiff

6    cannot compel at trial the testimony of an expert retained

7    and designated by defendants.

8         Well, we have an expert that we retained and

9    designated but now, for the reasons stated, are not

10   presenting as a testifying expert.  He is a nontestifying

11   expert, and if there's a remedial stage to this, should

12   that ever occur, we will want Dr. Katz available to us.

13        So he was our expert, he is our expert, and under

14   the plain language of the rules cannot be deposed, and as

15   Judge Ellis found, the plaintiff in that case, defendant

16   intervenors in this case, cannot compel his testimony.

17        I'm sorry they tactically structured their

18   expert's testimony on what they anticipated Dr. Katz may

19   or may not be saying, but that's a tactic that they

20   undertook at their own risk.

21        THE COURT:  Mr. Troy, there's more here than

22   meets the eye.  In my judgment, this is a bizarre

23   situation, and it may be that what Dr. Katz said no longer

24   suits what the Board of Elections wants to do in the case

25   given the political situation in the state, but apart from

1    that, this man was designated as a testifying expert, he's

2    submitted a report, and all they want to do is get the

3    report verified now.

4              Now, will you -- does anybody object to the

5    report coming into evidence in lieu of the testimony of

6    Dr. Katz at trial?  Do you, Mr. Troy?

7              MR. TROY:  Your Honor, I think the plaintiffs

8    have more to say --

9              THE COURT:  I didn't ask that question.  I asked

10   you if you had any objection.

11             MR. TROY:  The report would be hearsay, Your

12   Honor.

13             THE COURT:  Do you have any objection to agreeing

14   to let it come in over -- it's obviously hearsay.  That

15   was the reason I asked you if you have any objection.  Do

16   you object to it being entered into evidence?

17             MR. TROY:  We do, Your Honor.  And, Your Honor,

18   let me clarify.  I assure the Court that all we're

19   attempting to do and all we've been told to do is to save

20   taxpayer money, and if we believe, and we do, that Baker

21   Hostetler and Mr. Braden are fully capable of defending

22   the validity, then there's no need to duplicate effort and

23   have the taxpayers pay twice.  That's the end-all and

24   be-all of our position.  It is not political.

25             THE COURT:  Well, there's a problem then with

1  where you've put the other side in the case.  Once they

2  receive a report from your guy, it's perfectly all right

3  for them to rely on it, and they think you're going to

4  testify.  This is different than Judge Ellis's case.  I'm

5  familiar with it.

6         Here's what we're going to do:  I'm going to

7  allow -- this is a what, a motion to quash a subpoena?  Is

8  that what this is?

9         MR. TROY:  In California, yes, sir.

10        THE COURT:  Then you can move to quash it, and I

11 believe that this Court as well as the other Court has the

12 authority on it, to decide it.  What is that rule?

13        MR. TROY:  I forgot the rule, Judge, but you are

14 correct.

15        THE COURT:  You file a motion to quash the

16 subpoena.  You state your reasons, you brief in

17 response -- Mr. Spiva, you are aligned in this situation,

18 I suppose, as an adverse party, so I'll give you the right

19 to file at the same time the intervenor defendants do, and

20 then you can reply, Mr. Troy.  Then we'll decide from

21 there what we do.

22        In the meantime, my strong suggestion to you all

23 is you sit down and sort this out so that the intervenor

24 defendants are not deprived of the testimony of Dr. Katz,

25 and if that simply means having him testify to what he's

1    already testified to in the report, I can't imagine why

2    that's harmful to anybody.  So let's set a schedule.  How

3    quickly can you file your motion to compel, Mr. Troy?

4             MR. TROY:  Your Honor, I'm in Kentucky right now

5    and back on Sunday.  How is Wednesday?

6             THE COURT:  Well, you are running -- Wednesday

7    meaning what day?

8             MR. TROY:  What would that be, the 20th?

9             THE COURT:  I thought you said you were in

10    Kentucky until the end of the week.

11             MR. TROY:  I'm in Kentucky returning on Sunday,

12    yes, sir.

13             THE COURT:  File it on Wednesday, May 20th, by

14    5:00 p.m. eastern daylight time.

15             MR. TROY:  Yes, sir.

16             THE COURT:  When do you want to file your

17    response, Mr. Braden and Mr. Spiva?

18             MR. BRADEN:  This is Mr. Braden.  We can file the

19    next day.

20             THE COURT:  So you're going to file the 21st; is

21    that what you said?

22             MR. BRADEN:  Yes.

23             THE COURT:  If this is resolved in your favor,

24    you're going to have time to take his deposition no matter

25    what the orders say in the case.  You don't need to do

1     it -- what is the discovery cutoff in the case?

2          MR. BRADEN:  The 22nd.  That's the reason why --

3          THE COURT:  If this is resolved in your favor,

4     you're going to have time to deal with it.

5          MR. BRADEN:  Okay.  Then, Your Honor, we'd like

6     to file it on the 22nd.

7          THE COURT:  You file on the 22nd.  And, Mr.

8     Spiva, can you do the same?

9          MR. SPIVA:  Yes, Your Honor.

10          THE COURT:  All right.  You file your reply

11    brief, Mr. Troy, on the 25th, again by five o'clock.

12          MR. TROY:  Yes, sir.

13          THE COURT:  And if I need -- if we need argument,

14    we'll deal with it.  There ought to be a way for you all

15    to agree and work this out, because the fact of the matter

16    is, it looks to me as if the plaintiffs and other parties

17    in the case have the right to rely on a report once filed.

18    We'll have to go from there.  Is Dr. Katz willing to

19    testify if he's paid by the intervenor defendants?  Do you

20    know that, Mr. Braden?

21          MR. BRADEN:  I am relatively -- unless the

22    defendants ask him not to or block his testimony through

23    some contractual arrangement or something, my

24    understanding from Dr. Katz is he's willing to testify,

25    yes.

1          THE COURT:  All right.  I guess you all want the

2     transcript so that you can figure out what you are doing

3     here; is that right?

4          MR. TROY:  Yes.

5          MR. BRADEN:  Yes.

6          THE COURT:  Do you want it expedited given the

7     briefing schedule?

8          UNIDENTIFIED SPEAKER:  Yes, Your Honor if the

9     Court please.

10          THE COURT:  All right.  Done.  Thank you all very

11     much.

12

13                    (End of proceedings.)

14

15

16          I certify that the foregoing is a correct

17     transcript from the record of proceedings in the

18     above-entitled matter.

19

20

21     _____/s/_____              _____

        P. E. Peterson, RPR              Date

22

23

24

25