# Exhibit 2



U.S. Department of Justice

Civil Rights Division

*Office of the Assistant Attorney General*        *Washington, D.C. 20035*

February 16, 1993

Verbena M. Askew, Esq.
City Attorney
2400 Washington Avenue
Newport News, Virginia 23607

Dear Ms. Askew:

    This refers to the change in the method of selection of school board members from appointed to elected, the adoption of an at-large method of election, and the method of staggering terms for the Newport News School District in Virginia, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c. We received your responses to our October 23, 1992, request for additional information on December 16 and 17, 1992, January 4 and February 2 and 5, 1993.

    We have considered carefully the information you have provided, as well as Census data and information received from other interested parties. The Attorney General does not interpose any objection to the change to an elected school board. However, we note that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the change. In addition, as authorized by Section 5, we reserve the right to reexamine this change if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period. See the Procedures for the Administration of Section 5 (28 C.F.R. 51.41 and 51.43).

    We are <u>una</u>ble to reach the same conclusion with regard to the city council's decision to use an at-large method of electing the school board. The voting changes now before us are the product of Chapter 594 (1992) (codified at Va. Code Ann. §§ 22.1-57.1 to 22.1-57.5). Last year, when we granted Section 5 preclearance to the voting changes in this enabling legislation, we informed the state that each local change to an elected school

board, as well as the method of election, would require separate preclearance. See 28 C.F.R. 51.15. Under the terms of Chapter 594, the decision to change to an elected board is made directly by the electorate in a process initiated by the presentation of petitions and completed by approval at a referendum. Decisions regarding the method of electing the school board, however, are left to the local governing body, in this case the city council.

According to the 1990 Census, black persons comprise 33 percent of the city's population and 31 percent of its voting age population. Under the existing appointment system for the school board, the city council, since 1982, has consistently appointed two black persons to serve on the seven-member school board. Under the proposed election system, school board members would be elected using the same at-large system as the city council.

In 1989, we had occasion to review voting patterns in city council elections in the context of the city's Section 5 submission of a change in method of staggering city councilmembers' terms resulting from the proposed direct election of the mayor. In our July 24, 1989, letter interposing an objection to this change, we noted that there was "an apparent pattern of racially polarized voting in city elections" and that "black voters have had only limited success in electing candidates of their choice to office." Our review of recent election returns reveals that this pattern has intensified since 1989, as the minority community largely has been unsuccessful in electing candidates of choice to the city council under the existing at-large system. Indeed, although black voters overwhelmingly supported black candidates for city council, no black candidates were elected in 1988 and 1990, and only one black candidate was successful in 1992.

It was against this backdrop that the city, prior to the referendum vote on an elected school board, made its decision to submit for preclearance an at-large method of election. This decision was reached without the benefit of public hearings, consideration of alternative electoral systems, or input from the minority community. While the city council reassessed its initial decision on December 8, 1992, it did so only during an executive session, which was closed to the public and not recorded.

Despite the lack of opportunity for minority input, we understand that the council heard the views of its sole black member, urging the adoption of a single-member district method of electing the school board as a necessary step to achieving a racially fair system in which minority voters would have an equal opportunity to elect candidates of their choice. Nevertheless, at the close of the meeting the council decided to continue to seek preclearance for the at-large system, without any further consideration of alternative election methods.

- 3 -

Under Section 5 of the Voting Rights Act, the submitting authority has the burden of showing that a submitted change has neither a discriminatory purpose nor a discriminatory effect. See Georgia v. United States, 411 U.S. 526 (1973); see also 28 C.F.R. 51.52. In light of the considerations discussed above, I cannot conclude, as I must under the Voting Rights Act, that your burden has been sustained in this instance. Therefore, on behalf of the Attorney General, I must object to the adoption of an at-large method of electing school board members.

We note that under Section 5 you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed change has neither the purpose nor will have the effect of denying or abridging the right to vote on account of race or color. In addition, you may request that the Attorney General reconsider the objection. However, until the objection is withdrawn or a judgment from the District of Columbia Court is obtained, the at-large method of electing the school board continues to be legally unenforceable. Clark v. Roemer, 111 S. Ct. 2096 (1991); 28 C.F.R. 51.10 and 51.45.

Because the method of staggering terms is directly related to the proposed at-large method of election, the Attorney General will make no determination with regard to this change. See 28 C.F.R. 51.22.

To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action Newport News plans to take concerning this matter. If you have any questions, you should call George Schneider (202-307-3153), an attorney in the Voting Section.

Sincerely,

James P. Turner
Acting Assistant Attorney General
Civil Rights Division