# Exhibit 7

U.S. Department of Justice

Civil Rights Division

Office of the Assistant Attorney General     Washington, D.C. 20530

Perkins Wilson, Esq.
Assistant Attorney General
Supreme Court Building
1101 East Broad Street
Richmond, Virginia 23219

JUL 31 1981

Dear Mr. Wilson:

    This is in reference to the reapportionment of the Virginia House of Delegates by Chapter 5, 1981 Acts of the General Assembly (Special Session), submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended. Your submission was completed on July 2, 1981. In accordance with your request, this submission has been reviewed on an expedited basis.

    Under Section 5, the Commonwealth of Virginia has the burden of proving that its proposed reapportionment does not represent a retrogression in the position of its black residents, and that the new plan was adopted without any racially discriminatory purpose. See <u>Beer v. United States</u>, 425 U.S. 130 (1976). We have carefully reviewed the material you submitted and for the most part find the proposed reapportionment plan to have neither the purpose nor effect of diluting or abridging the voting rights of black citizens.

    However, there is one general area where the proposed plan appears to dilute and fragment black voting strength unnecessarily. According to the 1980 census the southern part of the Commonwealth contains five contiguous rural counties with black population majorities (Brunswick, Greensville, Sussex, Surry and Charles City). The nearby City of Petersburg also has a majority black population of 61.09%. Under the pre-existing apportionment plan four of the five black majority counties were grouped together with New Kent County to make up District 45, which by 1980 census figures was 53.09% black. In the proposed plan each of the five majority black counties is combined with one or more predominently white counties in such a way that there is a black minority in each of the resulting districts (Nos. 26, 27, 35, 41 and 46). We note that one of the resulting districts (No. 27), which combines Nottaway, Dinwiddie and Greensville Counties and Emporia City, connected only by a two mile stretch of the Nottaway River, does not seem to comply with the Commonwealth's standard of compactness.

Testimony prepared for the pending lawsuits indicate that the legislature was aware that dispersing the majority black counties that were in former district 45 would necessarily dilute the voting strength of blacks in this area.

Similarly, the City of Peterburg is combined in the plan with the virtually all white city of Colonial Heights resulting in a district (No. 28) which is 43.66% black. This district was formed notwithstanding the fact that Colonial Heights had historically been associated with Chesterfield County and, in fact, had been combined under the 1971 plan with Chesterfield to form District No. 36 which, with a population of 157,881, could have been continued as a viable three-member district in the new plan. This latter approach was supported by representatives of the Colonial Heights city government. Material submitted to us indicates there are a number of options available that would not have the effect of diluting the voting strength of the black citizens of Petersburg.

Accordingly, after careful consideration of the materials you have submitted, as well as comments and information provided by other interested parties, I am unable to conclude, as I must under the Voting Rights Act, that the submitted plan for the reapportionment of the House of Delegates is free of any racially discriminatory purpose or effect in the described area. For that reason, I must, on behalf of the Attorney General, interpose an objection to Chapter 5 of the 1981 Acts of the General Assembly of Virginia (Special Session) as it affects the district lines in the SouthsidePetersburg area.

Of course, as provided by Section 5 of the Voting Rights Act, you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that this change has neither the purpose nor the effect of denying or abridging the right to vote on account of race, color or membership in a language minority group. In addition, the Procedures for the Administration of Section 5 (Section 51.44, 46 Fed. Reg. 878) permit you to request the Attorney General to reconsider the objection. However, until the objection is withdrawn or the judgment from the District of Columbia Court is obtained, the effect

- 3 -

of the objection by the Attorney General is to make the reapportionment of the Virginia House of Delegates legally unenforceable with respect to the districts in question.

We are aware that there is a severe time problem if the Commonwealth is to hold timely elections for the General Assembly. Please be assured that we stand ready to do all we can to assure that any future review of such limited changes as may be necessary to comply with the requirements of Section 5 is accomplished in the most expeditious way possible. If you have any questions concerning this letter, please feel free to call Carl W. Gabel (202-724-7439), Director of the Section 5 Unit of the Voting Section.

Sincerely,

Wm. Bradford Reynolds
Assistant Attorney General
Civil Rights Division