# Exhibit 9



U.S. Department of Justice

Civil Rights Division

---

Office of the Assistant Attorney General      Washington, D.C. 20035

JUL 16 1991

K. Marshall Cook, Esq.
Deputy Attorney General
101 North Eighth Street
Richmond, Virginia 23219

Dear Mr. Cook:

    This refers to Chapters 11, H.B. No. 3001, and 16, H.B. No. 3012 (1991), which redistrict the Virginia House of Delegates, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c. We received your initial submission on May 17, 1991; supplemental information was received on June 27 and July 1, 8, 11, and 15, 1991.

    We have carefully considered the information you have provided, as well as Census data and information and comments from other interested persons. At the outset, we would note that as it applies to the redistricting process, the Voting Rights Act requires the Attorney General to determine whether the submitting authority has sustained its burden of showing that each of the legislative choices made under a proposed plan is free of racially discriminatory purpose or retrogressive effect and, if so, whether the plan will result in a clear violation of Section 2 of the Act. In the case of a statewide redistricting such as the instant one, this examination requires us not only to review the overall impact of the plan on minority voters, but also to understand the reasons for and the impact of each of the legislative choices that were made in arriving at this particular plan.

    In making these judgments, we apply the legal rules and precedents established by the federal courts and our published administrative guidelines. See, e.g., 28 C.F.R. 51.52 (a), 51.55, 51.56. For example, we cannot preclear those portions of a plan where the legislature has deferred to the interests of incumbents while refusing to accommodate the community of

- 2 -

interest shared by insular minorities. See, e.g., Garza v. County of Los Angeles, 918 F.2d 763, 771 (9th Cir. 1990), cert. denied, 111 S. Ct. 681 (1991); Ketchum v. Byrne, 740 F.2d 1398, 1408-09 (7th Cir. 1984), cert. denied, 471 U.S. 1135 (1985). We endeavor to evaluate these issues in the context of the demographic changes which compelled the particular jurisdiction's need to redistrict (id.). Finally, our entire review is guided by the principle that the Act insures fair election opportunities and does not require that any jurisdiction attempt to guarantee racial or ethnic proportional results.

Turning now to the instant submission, we have examined the 1991 House redistricting choices in light of the element of racially polarized voting that appears to characterize at least some elections in the state. For the most part, our analysis shows that the Virginia House redistricting plan meets Section 5 preclearance requirements. In one area, however, the proposed configuration of district boundary lines appears to have been drawn in such a way as to minimize black voting strength. Specifically, we refer to the considerable concentration of black population in Charles City County where approximately 4000 blacks are submerged in a majority white district. We are aware that the Legislature rejected available alternatives that would have recognized this concentration of voters by drawing them into a district with black voters in the Richmond area that likely would result in an additional district which provides black voters an equal opportunity to participate in the political process and to elect candidates of their choice to office. While we have noted the state's explanation that the submitted districting in this area was designed to protect certain incumbents, and even though incumbency protection is not in and of itself an inappropriate consideration, it may not be accomplished at the expense of minority voting potential. Garza v. County of Los Angeles, 918 F.2d at 771; Ketchum v. Byrne, 740 F.2d at 1408-09.

Therefore, in light of the considerations discussed above, I cannot conclude, as I must under the Voting Rights Act, that the state's burden has been sustained in this instance. Accordingly, on behalf of the Attorney General, I must object to the 1991 redistricting plan for the State House of Delegates, with regard to the manner in which it treats the Charles City County, James City County and Richmond/Henrico County area discussed above.

We note that under Section 5 you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed 1991 House redistricting plan has neither the purpose nor will have the effect of denying or abridging the right to vote on account of

- 3 -

race or color. In addition, you may request that the Attorney General reconsider the objection. However, until the objection is withdrawn or a judgment from the District of Columbia Court is obtained, the 1991 redistricting plan for the House of Representatives continues to be legally unenforceable. Clark v. Roemer, 59 U.S.L.W. 4583 (U.S. June 3, 1991); 28 C.F.R. 51.10 and 51.45.

To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action the State of Virginia plans to take concerning this matter. In this regard the Department stands ready to review quickly any plan the legislature might adopt to remedy this objection. If you have any questions, you should call Sandra S. Coleman (202-307-3718), Deputy Chief for Section 5.

Sincerely,

John R. Dunne
Assistant Attorney General
Civil Rights Division