**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Civil Action No. 3:14-cv-00852-REP-GBL-BMK |

**PLAINTIFFS' OBJECTIONS TO DEFENDANT-INTERVENORS'
PROPOSED TRIAL EXHIBITS**

### I.  INTRODUCTION

The parties have worked cooperatively in an effort to try to stipulate to the authenticity and admissibility of their proposed exhibits, all with the goal of streamlining the presentation of evidence at trial. Although the parties have reached agreement with respect to a large majority of the exhibits identified, a handful remain in dispute. Thus, with this memorandum and pursuant to the Court's pretrial scheduling order, *see* Dkt. 35 ¶ 12(c), Plaintiffs hereby outline their objections to certain trial exhibits proposed by Defendant-Intervenors ("Intervenors").

### II.  BACKGROUND

Intervenors served Plaintiffs with their list of proposed trial exhibits ("Proposed Exhibits") on June 22, 2015, *see* Dkt. 79-1, and later provided copies of the Proposed Exhibits. Several of those Proposed Exhibits—specifically, Proposed Exhibits 13, 17-21, 23-27, 35, 36, 92 and 100—run afoul of the Federal Rules of Evidence, the Federal Rules of Civil Procedure, or both. Plaintiffs respectfully request that this Court exclude those Proposed Exhibits.

LEGAL126685643.1

- 2 -

### III.   ARGUMENT

#### A.   Proposed Exhibit 13 (Outdated Regulation)

Proposed Exhibit 13 is a Department of Justice ("DOJ") regulation titled "Guidance Concerning Redistricting and Retrogression Under Section 5 of the Voting Rights Act, 42 U.S.C. 1973c" and dated January 18, 2001. *See* Ex. A. It should be excluded under Federal Rule of Evidence 403 because it is irrelevant, potentially confusing, and likely to waste time.

The version of the DOJ regulation reflected in Proposed Exhibit 13 (the "2001 Regulation") has been superseded by a new version (the "2011 Regulation"). *See* Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act; Notice, 76 Fed. Reg. 7470-01 (Feb. 9, 2011); *see also* Dkt. 76-1 (Plaintiffs' proposed exhibit list identifying the 2011 Regulation). All parties have stipulated to the admissibility of the 2011 Regulation. The 2011 Regulation was in effect for most of Virginia's 2010-11 redistricting cycle—the only cycle at issue in this case. Thus, not surprisingly, nothing in the record indicates that anybody (including Delegate Chris Jones, the architect of the redistricting plan at issue) relied on the 2001 Regulation in drawing the House of Delegates districts challenged in this case. Of course, Delegate Jones may have relied on the 2001 Regulation during Virginia's 2000-01 redistricting cycle. But that cycle is not at issue here. Nor is the evidence and authority on which Delegate Jones may have relied in 2001.

Accordingly, Proposed Exhibit 13 has no discernible relevance to this case. At best, admitting the outdated regulation would cause "undue delay" and "wast[e] time." Fed. R. Evid. 403. At worst, it might "confus[e] the issues" and muddy the record by introducing two different versions of the same regulation, only one of which has any potential relevance to this case. Proposed Exhibit 13 should therefore be excluded under Rule 403.

> B.     Proposed Exhibits 17-21 (Scholarly Articles)

Proposed Exhibits 17-21 are scholarly articles written by Professor Stephen Ansolabehere, Plaintiffs' expert witness, with coauthors who are not witnesses in this case. *See* Ex. B-F. Although Intervenors are of course free to use these materials to attempt to impeach Professor Ansolabehere, such an effort necessarily must await his testimony and, in any event, these materials should not be admitted as substantive evidence.

"[S]cholarly articles, standing alone, contain inadmissible hearsay and have limited utility under the Federal Rules of Evidence." *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-JWL, 2008 WL 1884125, at *2 (D. Kan. Apr. 25, 2008); *see also Fisher v. United States*, 78 Fed. Cl. 710, 713 (2007) (plaintiff's proposed exhibits, which consisted of academic books and articles, "fall under the category of hearsay"); *infra* at 5 (elements of hearsay). That said, Federal Rule of Evidence 803(18) creates a narrow exclusion from the hearsay rule for "Statements in Learned Treatises, Periodicals, or Pamphlets." Specifically, Rule 803(18) provides that a "statement . . . in a treatise, periodical, or pamphlet" is not hearsay if:

> **(A)** the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and

> **(B)** the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

> *If admitted, the statement may be read into evidence but not received as an exhibit.*

Fed. R. Evid. 803(18) (emphasis added).

Three conclusions flow from the plain language of Rule 803(18). **First**, Intervenors may (potentially) use Professor Ansolabehere's scholarly articles only to cross-examine Professor Ansolabehere. **Second**, in order to use Professor Ansolabehere's scholarly articles for that purpose, Intervenors have to show that each "publication is established as a reliable authority."

- 3 -

*Id*. **Third**, and most importantly for purposes of this motion, even if Intervenors utilize Professor Ansolabehere's scholarly articles on cross-examination, those articles may not be "received as . . . exhibit[s]." *Id*.

Because Professor Ansolabehere's scholarly articles may not be admitted as exhibits in any event, this Court should exclude them. *See Fisher*, 78 Fed. Cl. at 713 ("If plaintiff wishes to introduce at trial relevant statements from those learned treatises, plaintiff may do so [as permitted by Rule 803(18)]. However, the treatises themselves may not be admitted into evidence as exhibits."); *Skye v. Maersk Line Ltd.*, No. 11-21589-CIV, 2012 WL 1252523, at *3 (S.D. Fla. Apr. 13, 2012), *aff'd*, 751 F.3d 1262 (11th Cir. 2014) ("[E]ven when statements in learned treatises are admissible, they may be read into evidence but not received as an exhibit.") (internal quotation marks and citation omitted). Any attempt by Intervenors to introduce the articles through cross-examination at trial is appropriately addressed at that time.

### C. Proposed Exhibits 23 and 24 (DOJ Materials)

***Proposed Exhibit 23*** is a massive, 295-page collection of documents, all of which appear to have been produced by DOJ in response to a Freedom of Information Act request. *See* Ex. G. Generally speaking, the documents in Proposed Exhibit 23 fall into two broad categories:

1. Miscellaneous communications between third parties and DOJ, including letters, emails, and facsimile transmissions, most of which pertain to Virginia's 2010-11 redistricting process.

2. Memoranda summarizing interviews conducted by DOJ employees, all of which seem to pertain to Virginia's 2010-11 redistricting process.

Virtually all of the documents are redacted—in some cases, heavily—and identifying information has been removed from almost all of the documents as well. *See, e.g.*, *id*. at 35-36, 48, 49, 50-51, 54-55, 60-61, 77-79. Thus, with few exceptions, it is impossible to identify the

- 4 -

authors or recipients of most of the miscellaneous communications. Similarly, it is impossible to identify the DOJ interviewers or the interviewees in the interview memoranda.

***Proposed Exhibit 24*** is yet another DOJ interview memorandum in which an unidentified DOJ interviewer summarizes the statements of an unidentified interviewee. *See* Ex. H. To Plaintiffs' knowledge, nothing distinguishes this particular memorandum from the many similar memoranda in Proposed Exhibit 23 except that Intervenors believe the unidentified interviewee in Proposed Exhibit 24 is Senator Rosalyn Dance, who will testify at trial.

Plaintiffs object to Proposed Exhibits 23 and 24 on several grounds.

### 1. The Miscellaneous Communications with DOJ Are Hearsay

As an initial matter, Proposed Exhibit 23's miscellaneous communications with DOJ should be excluded under Federal Rule of Evidence 802 because they are inadmissible hearsay.

Hearsay is (1) a statement by a declarant (2) that is not made while testifying at the current trial or hearing, and (3) that a party offers in evidence to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c)(1)-(2) (defining hearsay); *see also, e.g.*, *Sam's Club, a Div. of Wal-Mart Stores, Inc. v. NLRB.*, 173 F.3d 233, 241 (4th Cir. 1999) ("Out-of-court statements used to support the truth of the matter asserted therein are, by definition, hearsay."). Hearsay is inadmissible unless it falls within a recognized exclusion or exception to the hearsay rule. *See* Fed. R. Evid. 802.

Proposed Exhibit 23's miscellaneous communications are plainly hearsay. They are all out-of-court statements by non-testifying declarants, and the only conceivable purpose for which they could be offered is to establish the truth of the matters asserted therein. But Intervenors cannot identify any exclusion or exception to the hearsay rule that would justify admitting this

undifferentiated mass of out-of-court statements without any foundation or explanation.[1]

Proposed Exhibit 23's miscellaneous communications therefore must be excluded. *See id.*; *see also, e.g.*, *It's My Party, Inc v. Live Nation, Inc.*, No. JFM-09-547 2012 WL 3655470, at *5 (D. Md. Aug. 23, 2012) ("The statements lifted from Geiger's emails are hearsay not within any exception and will therefore be excluded."); *United States v. Levy*, No. 1:07cr265 (JCC), 2008 WL 373646, at *5 (E.D. Va. Feb. 8, 2008) (similar).

### 2. The DOJ Interview Memoranda Are Hearsay

It is equally clear that the DOJ interview memoranda in Proposed Exhibit 23, and the similar interview memorandum in Proposed Exhibit No. 24, are inadmissible hearsay. In fact, all of the DOJ interview memoranda contain *multiple levels* of hearsay: the out-of-court statements by the interviewees *and* the out-of-court statements by the interviewers summarizing the interviewees' statements. *See, e.g.*, *United States v. Jefferson*, No. 1:07cr209, 2009 WL 2447845, at *1 (E.D. Va. Aug. 8, 2009) ("[I]t is pellucidly clear that the last two sentences of the email, which merely restate statements made by Kwemo, are hearsay within hearsay and hence must be excluded under Rules 805 and 802."); 5-805 Weinstein's Federal Evidence § 805.02 (2d ed. 2014) (multiple hearsay, also called "hearsay within hearsay," "occurs in a writing prepared by A that reports a statement made by B").

---

[1] For example, Intervenors cannot rely on the "business records" exception in Federal Rule of Evidence 803(6) because (among other things) they have not offered the testimony or certification of a qualified custodian under Federal Rule of Evidence 902(11) and they have not shown that DOJ kept reliable records of these kinds of documents. *See United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013) ("While properly authenticated e-mails may be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records falling within the ambit"); *Rambus, Inc. v. Infineon Technologies AG*, 348 F. Supp. 2d 698, 701 (E.D. Va. 2004) (Payne, J.) (excluding emails for lack of sufficient custodian certification). Moreover, Intervenors cannot rely on the "public records" exception in Federal Rule of Evidence 803(8) because that exception simply does not apply. None of the documents in Proposed Exhibits 23 and 24 set out the DOJ's "activities," or "a matter observed [by the DOJ] while under a legal duty to report," or "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(i)-(iii).

- 6 -

As a result, the DOJ interview memoranda must be excluded unless Intervenors show that *each level* of hearsay "conforms with an exception" to the hearsay rule. Fed. R. Evid. 805; *see also United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 321 (4th Cir. 1982) ("[B]oth levels [of hearsay] must either be excluded from the definition of hearsay or satisfy some exception to the hearsay rule."). Intervenors have not met and cannot meet that requirement. *See supra* note 1. Thus, the DOJ interview memoranda should be excluded. *See Precision Piping v. E.I. du Pont de Nemours Co.*, 951 F.2d 613, 619 (4th Cir. 1991) (affirming district court's holding that "testimony regarding Emerick's statements about Zicherman's statements amounted to multiple hearsay because it could not be shown that each part of the combined statements came within an exception to the hearsay rule or under one of the definitions of 'nonhearsay'"); *United States v. De Peri*, 778 F.2d 963, 976-77 (3d Cir. 1985) (FBI agent's report containing interview with vendors inadmissible even though it was public report because vendors' out-of-court statements contained in report were hearsay not subject to any exception).[2]

### 3. Proposed Exhibits 23 and 24 Should Be Excluded Under Rule 403

Putting aside the insurmountable hearsay problems described above, Proposed Exhibits 23 and 24 should also be excluded under Federal Rule of Evidence 403.

The central issues in this case are (1) whether race predominated in the drawing of the specific House districts challenged by Plaintiffs, and (2) if so, whether the General Assembly's

---

[2] Intervenors apparently contend that Senator Dance admitted in her deposition that she was the unidentified interviewee in Proposed Exhibit 24, and that she may therefore authenticate that particular interview memorandum at trial. There are two problems with that argument. **First**, Senator Dance did *not* testify that she was the unidentified interviewee in Proposed Exhibit 24. *See* Dep. of Rosalyn Dance at 214:3-6 ("Q: So, in fact, you really can't be certain that this memo reflects a conversation with you at all, can you? A: No."). **Second**, even if Proposed Exhibit 24 does, in fact, memorialize an interview with Senator Dance, at most that means that Senator Dance could testify about what she remembers saying during that interview. She could not testify about the out-of-court statements of the unidentified DOJ interviewer (including the interviewer's out-of-court statements in Proposed Exhibit 24) because those out-of-court statements are inadmissible hearsay not subject to any exclusion or exception.

use of race was narrowly tailored to advance a compelling state interest. *See Page v. Va. St. Bd. of Elections*, No. 3:13cv678, 2015 WL 3604029, at *6 (E.D. Va. June 5, 2015) ("*Page II*"). *But nothing in Proposed Exhibits 23 and 24 sheds any light on those issues.* Again, many of the documents in Proposed Exhibit 23 are communications between DOJ and non-legislators (e.g., activists, concerned citizens, etc.). At most, those communications reveal non-legislators' views of the redistricting process and its outcome. But outsiders' post hoc observations reveal little, if anything, about the General Assembly's motives and methods. Furthermore, whatever slight probative value those outsiders' observations may have is severely undermined by the removal of the authors' names from most of the communications, making it impossible to evaluate the authors' motives, credibility, and insight—if any—into the legislative process.

The DOJ interview memoranda in Proposed Exhibits 23 and 24 suffer from similar problems. Almost everything about those memoranda is a mystery. They do not identify the DOJ interviewers; they do not identify the interviewees; and the summaries themselves are often so heavily redacted that it is difficult or impossible to follow the substance of the narrative. *See, e.g.*, Ex. G at 35-36, 48, 49, 50-51, 54-55, 60-61, 77-79, 111-12. As a result, neither the parties nor this Court can confidently attribute any of the opinions in the interview memoranda to particular individuals, and neither the parties nor this Court can know exactly what those individuals actually said to DOJ.

Under these circumstances, Proposed Exhibits 23 and 24 have little or no probative value. And any slight probative value they may have is easily outweighed by the confusing and misleading nature of the documents and the inevitable delays that would be occasioned by any effort to stuff hundreds of additional pages into the record. Thus, Proposed Exhibits 23 and 24 should be excluded under Rule 403. *See* Fed. R. Evid. 403 (even if relevant, evidence may be

excluded if "its probative value is substantially outweighed by . . .confusing the issues,. . . undue delay, [or] wasting time").[3]

### D. Proposed Exhibit 25 (Newspaper Article)

Proposed Exhibit 25 is an April 28, 2011 newspaper article titled "Senators close to deal on redistricting plan." *See* Ex. I. It appears that Intervenors intend to use it to show that Delegate Jennifer McClellan (in the words of the article) "voted for the [challenged redistricting plan] because it was good for her district."

Proposed Exhibit 25 should be excluded as inadmissible hearsay. "This circuit has consistently held that newspaper articles are inadmissible hearsay to the extent that they are introduced to prove the factual matters asserted therein." *Gantt v. Whitaker*, 57 F. App'x 141, 150 (4th Cir. 2003) (internal quotation marks omitted); *see also, e.g.*, *United States v. ReBrook*, 58 F.3d 961, 968 (4th Cir. 1995) (affirming district court's evidentiary rulings because it "understood the hearsay nature of the newspaper articles" offered as exhibits); *Team Gordon, Inc. v. Fruit of the Loom, Inc.*, No. 3:06-CV-201-RJC-DCK, 2010 WL 419952, at *1 (W.D.N.C. Jan. 29, 2010) ("[N]ewspaper articles, videos, and print-outs of online news stories will generally not be admitted. Many courts have held newspaper articles are inadmissible hearsay when offered for the truth of what they assert."). Nothing counsels a contrary result here.

---

[3] Relatedly, all redacted documents in Proposed Exhibits 23 and 24 should be excluded under Federal Rule of Evidence 106, which embodies a "rule of completeness." *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). This Court cannot fully evaluate the documents in Proposed Exhibits 23 and 24—especially the DOJ interview memoranda—without reviewing the redacted portions of those documents. But Plaintiffs cannot compel the DOJ to produce the redacted portions. Thus, as a matter of basic fairness, all redacted documents in Proposed Exhibits 23 and 24 should be excluded.

Of course, Intervenors remain free to attempt to cross-examine Delegate McClellan with respect to this newspaper article if they wish, but the actual article itself, even then, would not come into evidence. *See* Fed. R. Evid. 803(18).

### E. Proposed Exhibits 26 and 27 (Historical Preclearance Submissions)

Proposed Exhibits 26 and 27 appear to be Virginia's House of Delegates preclearance submissions from 1991 and 2001, respectively. Notably, Intervenors did not produce those exhibits in paper form; instead, for purposes of the parties' exhibit exchange, Intervenors produced electronic copies. *See* Ex. J, K. And for good reason.

None of the documents in Proposed Exhibits 26 and 27 are numbered, and they are contained within a multitude of electronic folders and subfolders. As a result, it is difficult to determine the precise volume of Proposed Exhibits 26 and 27. But there is no doubt that the volume is massive. Proposed Exhibit 26 alone includes 155 megabytes of data and approximately 4,200 pages (or about 2 banker's boxes) of records. Proposed Exhibit 27 is so voluminous that Intervenors had to send it to Plaintiffs in three separate compressed electronic files. The format in which it was produced makes it difficult to evaluate Proposed Exhibit 27's file count and file size. Plaintiffs have, however, determined that Proposed Exhibit 27 includes 47 folders and subfolders, *over 500 unique files*, and more than 200 megabytes of data. Plaintiffs' best guess is that—in printed form—Proposed Exhibit 27 would consist of more than 8,200 pages of documents. Combined, it appears that Proposed Exhibits 26 and 27 constitute more than 14,000 pages.

Plaintiffs do not know if Intervenors plan to submit these enormous exhibits to the Court in electronic form or (even worse) deluge the Court with paper copies. Each copy of these two exhibits would comprise no fewer than 12,000 pages of material—approximately 6 banker boxes. Because the parties are to provide the Clerk with 7 copies of each exhibit (one for each

judge, one for each law clerk, plus a copy for the witness), these two exhibits would require delivery of 42 banker boxes of paper to the Court, containing about 84,000 pages of material.

Proposed Exhibits 26 and 27 should be excluded under Federal Rule of Evidence 403. As a threshold matter, they have little (if any) relevance to this case. Again, the central issues here are (1) whether race predominated in the 2010-11 redistricting process, and (2) if so, whether the General Assembly's use of race was narrowly tailored to advance a compelling state interest. *See Page II*, 2015 WL 3604029, at *6. It bears emphasis that Plaintiffs are challenging the 2010-11 redistricting process—not the redistricting processes in 1991 and 2001. Thus, the preclearance submissions from 1991 and 2001 do not, *en masse*, have any tendency to make any material fact more or less likely. *See* Fed. R. Evid. 401. Moreover, given the volume and disorganization of Proposed Exhibits 26 and 27, admitting them would surely result in cumulative evidence, lengthy delays, and wasted time—the very evils Rule 403 was meant to guard against. *See* Fed. R. Evid. 403 (court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . undue delay, wasting time, or needlessly presenting cumulative evidence"). In short, even if this mountain of material had any marginal relevance to this litigation (which it does not), it would be outweighed by the burden and misleading impact such a filing would have on this Court. Accordingly, Proposed Exhibits 26 and 27 should be excluded.[4]

### F. Proposed Exhibits 35 and 36 (Undisclosed Expert Reports)

Proposed Exhibit 35 appears to be an expert report authored by Gerald R. Webster and submitted at the circuit court level in *Wilkins v. West*, 571 S.E.2d 100 (Va. 2002), a state-court

---

[4] To be clear, the parties plan to submit essential data about the 2001 benchmark plan, such as maps and demographic details of the predecessor districts. That is appropriate. But that is a far cry from flooding the record with thousands of irrelevant and outdated records, as Intervenors apparently seek to do.

lawsuit challenging the compactness and contiguity of certain House districts under Virginia's constitution 13 years ago. *See* Ex. L. Similarly, Proposed Exhibit 36 appears to be an expert report from the same case authored by James Loewen. *See* Ex. M.

Proposed Exhibits 35 and 36 should be excluded for several reasons.

### 1. Intervenors Did Not Disclose Dr. Webster or Dr. Loewen

As an initial matter, Intervenors failed to disclose Dr. Webster or Dr. Loewen as required by the Federal Rules of Civil Procedure and this Court's pretrial scheduling order. As a result, this Court must exclude those experts and their reports. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

The relevant facts are not in dispute: Intervenors were required to disclose the identities of any experts on whom they intended to rely at trial, along with the reports of any such experts, no later than April 10, 2015. *See* Dkt. 35 ¶ 5(b). Intervenors were also required to produce all materials upon which their experts relied, *see* Fed. R. Civ. P. 26(a)(2)(B)(ii), and to make their experts available for deposition, *see id.* 26(b)(4)(A).

But Intervenors met none of those requirements with respect to Dr. Webster and Dr. Loewen. They did not disclose the identities of those experts; they did not provide their reports; they did not produce the materials upon which those experts relied; and they did not make either expert available for deposition. And Intervenors can hardly argue that their failures were justified or inadvertent. After all, Intervenors *did* adequately disclose no fewer than *three* overlapping and duplicative experts—two more than parties are usually entitled to offer in this Court. *See* Pretrial Schedule A § IV(3) ("Only one expert per discipline is permitted, except by order of the Court.").

Nor was that a harmless error. Intervenors' failure to adequately disclose Dr. Webster and Dr. Loewen severely prejudiced Plaintiffs. Among other things, Plaintiffs were unable to factor Dr. Webster's and Dr. Loewen's opinions into Plaintiffs' trial strategy; Plaintiffs were unable to challenge Dr. Webster's and Dr. Loewen's qualifications and methodologies under the Federal Rules of Evidence; Plaintiffs were unable to solicit the views of their expert with respect to Dr. Webster's and Dr. Loewen's opinions; and Plaintiffs were unable to depose Dr. Webster or Dr. Loewen. In short, Plaintiffs were completely deprived of any opportunity to rebut the opinions of Dr. Webster and Dr. Loewen.

That is precisely the sort of unfair surprise the expert-disclosure rules prohibit. As the Fourth Circuit has explained:

> Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case. For this reason, we give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).

*Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (internal quotation marks and citation omitted). Accordingly, this Court should not allow Intervenors to smuggle undisclosed expert opinion into this case on the eve of trial without any excuse. Instead, it should exclude Dr. Webster's and Dr. Loewen's reports for failure to disclose under Rule 37(c)(1). *See Wilkins v. Montgomery*, 751 F.3d 214, 223 (4th Cir. 2014) (affirming exclusion of expert report disclosed "after the agreed-upon expert disclosure date" and "after discovery was closed"); *Carr v. Deeds*, 453 F.3d 593, 604-05 (4th Cir. 2006) (affirming exclusion of expert witness in light of failure to provide timely disclosures required by Rule 26(a)(2)); *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 632 (E.D.N.C. 2008) (excluding expert report not timely disclosed).

Intervenors have told Plaintiffs that they may offer Proposed Exhibits 35 and 36 to show that Delegate Jones, the architect of the disputed redistricting plan, reviewed those expert reports in 2010 and 2011 while drawing the disputed plan. Of course, there is no need to admit Proposed Exhibits 35 and 36 to elicit such testimony. Moreover, nothing in Delegate Jones' deposition indicated that he considered any expert reports while drawing the disputed plan—let alone expert reports from a then-10-year-old case. In any event, it is difficult to understand why such testimony would be relevant to the question at hand: Whether race predominated in the construction of these districts where, as here, Delegate Jones admittedly utilized a mechanical 55% BVAP threshold for all 12 districts.

### 2. The Undisclosed Reports are Inadmissible Hearsay

Apart from Intervenors' unjustified failure to disclose Dr. Webster and Dr. Loewen, their newly unveiled expert reports should also be excluded under Federal Rule of Evidence 802.

It is well established that expert reports are hearsay and therefore not admissible—absent stipulation or other unusual circumstances—even in the cases for which they are prepared. *See, e.g.*, *Page II*, 2015 WL 3604029, at *30 n.42 (noting that an expert report was "admitted into evidence by agreement, notwithstanding that expert reports are hearsay and hence not admissible usually"); *Murphy v. Cambridge Integrated Servs. Grp., Inc.*, No. AW-08-3224, 2010 WL 2998790, at *12 (D. Md. July 27, 2010) ("[I]t is settled law in this jurisdiction that expert reports are inadmissible hearsay which may not be considered on summary judgment."); *N5 Tech. LLC v. Capital One N.A.*, 56 F. Supp. 3d 755, 765 (E.D. Va. 2014) (expert report was inadmissible hearsay); *Ake v. Gen. Motors Corp.*, 942 F. Supp. 869, 877-78 (W.D.N.Y. 1996) (same). The expert reports prepared by Dr. Webster and Dr. Loewen could and should be excluded on that ground alone.

### 3. The Undisclosed Reports Should Be Excluded Under Rule 403

Even if the expert reports of Dr. Webster and Dr. Loewen had been timely disclosed (they were not), and even if those reports fell outside the hearsay rule (they do not), they would still be inadmissible under Federal Rule of Evidence 403.

Both reports are simply irrelevant. As explained in his report, Dr. Webster "evaluate[s] Virginia's 100 state House of Delegates and 40 state Senate districts [under the benchmark plan in effect from 2001 to 2010] in terms of their compliance with the geographic compactness and contiguity criteria" as set forth by the Virginia Constitution. Ex. L at 1-2. Dr. Loewen analyzes similar issues. *See* Ex. M at 6-13. However skillful those analyses, they have no bearing on this case. Plaintiffs do not challenge *all* of the House districts and Senate districts; they challenge *only* the 12 majority-minority House districts. Plaintiffs do not challenge the *benchmark* plan; they challenge the *current* plan. And—at the peril of stating the obvious—Plaintiffs do not challenge the current plan's compliance with compactness and contiguity requirements under the *Virginia Constitution*. No such claim exists in this case and whether the districts comply with state constitutional requirements is utterly irrelevant to the question before this Court. Plaintiffs seek relief exclusively under the Equal Protection Clause of the Fourteenth Amendment to the *United States Constitution*.

Intervenors may argue that these recently unveiled reports are relevant because (1) they tend to show that the House districts at issue here are compact and (2) compactness, in turn, tends to refute claims of racial gerrymandering. There are at least three answers to that argument. *First*, arguments about compactness and other *circumstantial* evidence are largely beside the point in this case because there is overwhelming *direct* evidence that race predominated in the drawing of the Challenged Districts. *Second*, Dr. Webster and Dr. Loewen analyze the benchmark plan—not the current plan. Thus, their reports have limited utility for judging the

- 15 -

compactness of districts under the current plan, which is the only plan at issue. **Third**, to the extent that Intervenors mean to rely on the reports of Dr. Webster and Dr. Loewen solely to bolster their argument that certain House districts are compact, that evidence would be unduly cumulative. For example, Intervenors have represented to this Court that one of their *three* experts in this case, Thomas Hofeller, is "an expert on drawing plans and compactness in comparison to other plans." Dkt. 70, Tr. of Pretrial Conference Call at 9 (June 4, 2015). Intervenors have also represented that Mr. Hofeller will testify about the compactness of House districts under both the benchmark plan and the current plan. *See id*. If that is true, then there is no need for Intervenors to rely on two additional experts—particularly experts who will not testify—to present the same evidence. *See* Fed. R. Evid. 403 (authorizing exclusion of relevant evidence if it would "needlessly present[] cumulative evidence").

In short, Intervenors seek to admit 13-year-old expert reports addressing House districts that no longer exist for the purpose of answering legal questions that are not before this Court. That sort of evidence would not be helpful. To the contrary, it would be irrelevant, confusing, and wasteful—particularly given Intervenors' concerns about trying this case in the time allotted. Thus, if this Court does not exclude Dr. Webster's and Dr. Loewen's reports for the other reasons explained above, it should exclude those reports under Rule 403.

### G. Proposed Exhibit 92 (Undisclosed Expert Maps)

Proposed Exhibit 92 includes maps showing political information regarding Virginia's House districts. *See* Ex. N. From discussions with Intervenors, Plaintiffs understand that these maps are intended to illustrate data that Delegate Jones had available to him in 2010 and 2011 when he drew the challenged redistricting plan. To be clear, *Delegate Jones did not actually review the maps contained in Proposed Exhibit 92*. That is because Intervenors created Proposed Exhibit 92 this month (June of 2015). Intervenors claim that the actual maps Delegate Jones

reviewed in 2010 and 2011 no longer exists in paper or electronic form. Thus, Intervenors asked an unidentified consulting expert to try to reconstruct the maps Delegate Jones purportedly considered four years ago. It is those reconstructions that appear in Proposed Exhibit 92.

There are several problems with Proposed Exhibit 92, each of which independently justifies exclusion. *First*, Intervenors' consulting expert will not testify at the upcoming trial. But he or she is the only person with personal knowledge of how the maps were created; what information was used to create the maps; and how (if at all) he or she confirmed that the maps in Proposed Exhibit 92 fairly approximate the actual maps Delegate Jones reviewed years ago. Because no other witnesses, including Delegate Jones, could provide that necessary foundation, the maps must be excluded.

*Second*, the maps in Proposed Exhibit 92 amount to yet another instance of untimely disclosure of expert evidence. It makes no difference that these maps were generated by an expert Intervenors consider a mere "consulting" expert. If Intervenors planned all along to rely on these made-for-litigation maps at trial, then they should have disclosed those maps and the responsible expert long ago so that Plaintiffs could have examined the maps, deposed the expert, and procured responsive testimony and evidence. Here again, Intervenors' failure to comply with their disclosure duties mandates exclusion under Federal Rule of Civil Procedure 37(c)(1). *See Saudi*, 427 F.3d at 278 (failing to disclose experts and expert work product "unfairly inhibits [a party's] opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case" and thus should be excluded).

*Third*, Intervenors cannot avoid the problems above by arguing that the maps in Proposed Exhibit 92 will be used only to elicit testimony from Delegate Jones, a fact witness. During discovery, Plaintiffs sought all data on which Intervenors relied in drawing the challenged

redistricting plan. *See* Plaintiffs' First Requests for Production of Documents to Intervenor-Defendants Nos. 1, 4, 5, 6, 7, 10. Intervenors did not produce the maps in Proposed Exhibit 92 and claimed that they no longer existed. Allowing this "end run" through the device of "reconstructed" maps would defeat the very purpose of discovery. These maps should be excluded. *See* Fed. R. Civ. P. 37(c)(1).

### H. Proposed Exhibit 100 (Appendix from Supreme Court Opinion)

Finally, Proposed Exhibit 100 appears to be a single appendix ("Appendix C") from the United States Supreme Court's recent decision in *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257 (2015). *See* Ex. O. The exhibit shows the benchmark and enacted maps at issue in that litigation.

Of course, Intervenors do not need to have Appendix C admitted into evidence in order to cite to it; it is part of a court opinion and may be cited accordingly. Court opinions (like statutes) are not evidence and, absent extraordinary circumstances, are not admissible as exhibits. *See Saffold v. McGraw-Edison Co.*, 566 F.2d 621, 623 (8th Cir. 1977). But if this Court determines that Appendix C is admissible, then it should admit the *entire Alabama* opinion—not only Appendix C—as an exhibit in order to provide the necessary context for the Appendix. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.").

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs object to and respectfully request that this Court exclude Intervenors' Proposed Exhibits 13, 17-21, 23-27, 35, 36, 92 and 100.

- 19 -

DATED: June 25, 2015

By: */s/ Aria C. Branch*
    Aria C. Branch (VSB # 83682)
    Marc Erik Elias (admitted *pro hac vice*)
    Bruce V. Spiva (admitted *pro hac vice*)
    Elisabeth C. Frost (admitted *pro hac vice*)
    John K. Roche (VSB # 68594)
    **PERKINS COIE LLP**
    700 Thirteenth Street, N.W., Suite 600
    Washington, D.C. 20005-3960
    Telephone: 202.434.1627
    Facsimile: 202.654.9106

    Kevin J. Hamilton (admitted *pro hac vice*)
    Abha Khanna (admitted *pro hac vice*)
    Ryan Spear (admitted *pro hac vice*)
    William B. Stafford
        (admitted *pro hac vice*)
    **PERKINS COIE LLP**
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone: 206.359.8000
    Facsimile: 206.359.9000

    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

On June 25, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jennifer Marie Walrath
Katherine Lea McKnight
Baker & Hostetler LLP (DC)
1050 Connecticut Ave NW
Suite 1100
Washington, DC 20036
202-861-1702
Fax: 202-861-1783
jwalrath@bakerlaw.com
kmcknight@bakerlaw.com

Effrem Mark Braden
Baker & Hostetler LLP (DC-NA)
Washington Square
Suite 1100
Washington, DC 20036
202-861-1504
Fax: 202-861-1783
mbraden@bakerlaw.com

Of counsel:

Dale Oldham, Esq.
1119 Susan St.
Columbia, SC 29210
803-772-7729
dloesq@aol.com

*Attorneys for Intervenor-Defendants*

Jeffrey P. Brundage
Daniel Ari Glass
Kathleen Angell Gallagher
Eckert Seamans Cherin & Mellott LLC
1717 Pennsylvania Ave NW, Suite 1200
Washington, D.C. 20006
202-659-6600
Fax:  202-659-6699
jbrundage@eckertseamans.com
dglass@eckertseamans.com
kgallagher@eckertseamans.com

Godfrey T. Pinn, Jr.
Harrell & Chambliss LLP
Eighth and Main Building
707 East Main Street
Suite 1000
Richmond, VA 23219
gpinn@hclawfirm.com

Anthony F. Troy
Eckert Seamans Cherin & Mellott LLC
707 East Main Street
Suite 1450
Richmond, Virginia  23219
804-788-7751
Fax:  804-698-2950
ttroy@eckertseamans.com

*Attorneys for Defendants*

By */s/ Aria C. Branch*
   Aria C. Branch (VSB # 83682)
   **PERKINS COIE LLP**
   700 13th St. N.W., Suite 600
   Washington, D.C. 20005-3960
   Telephone: 202.434.1627
   Facsimile: 202.654.9106
   abranch@perkinscoie.com

   *Attorneys for Plaintiffs*