IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Civil Action No. 3:14-cv-00852-REP-GBL-BMK |

**PLAINTIFFS' REPLY IN SUPPORT OF OBJECTIONS TO
DEFENDANT-INTERVENORS' PROPOSED TRIAL EXHIBITS**

## I.   INTRODUCTION

Plaintiffs and Defendant-Intervenors ("Intervenors") worked cooperatively to agree on almost all of their proposed trial exhibits. In fact, Plaintiffs stipulated to 84 of Intervenors' 100 proposed exhibits. *See* Dkt. 87. Nevertheless, Plaintiffs were forced to object to a handful of Intervenors' proposed exhibits because they violate the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or both. Intervenors take umbrage at those objections. *See* Def.-Ints.' Response to Pls.' Objections to Proposed Trial Exs. at 1 ("Response") (Dkt. 88). But it is hardly unreasonable for Plaintiffs to protect their rights by objecting to a small number of plainly improper exhibits. In any event, while Intervenors call Plaintiffs' objections "counterproductive," *id*. at 2, and even "hypocritical," *id*. at 4, *Intervenors ultimately concede most of Plaintiffs' points*. Thus, Intervenors could have avoided much of this dispute by clarifying their intentions during the meet-and-confer session that preceded Plaintiffs' objections. The rest of Intervenors' brief simply misses the mark. Plaintiffs' objections should be upheld.

## II. ARGUMENT

### A. Intervenors' Concessions

In light of Plaintiffs' objections, Intervenors now agree that many of the Proposed Exhibits at issue here should *not* be introduced as substantive evidence at trial, although Intervenors may seek to use those exhibits for demonstrative or impeachment purposes. Specifically, Intervenors will not try to admit into evidence Proposed Exhibits 17-21, *see* Response at 7; Proposed Exhibit 25, *see id.* at 11; and Proposed Exhibit 100, *see id.* at 17. It also appears that Intervenors agree that Proposed Exhibit 92 should be used, if at all, as a demonstrative exhibit. *See id.* at 15 ("The maps are merely illustrative of data that will be in evidence in agreed exhibits and/or that is publicly available[.]"). Those concessions obviate the need for this Court to rule in advance of trial on Proposed Exhibits 17-21, 25, 92, and 100.

Intervenors seem to believe that there are no differences between substantive evidence and documents used for demonstrative or impeachment purposes. *See id.* at 3, 7 n.3. But there are differences, and they are important. "[L]abeling an exhibit 'demonstrative' signifies that the exhibit is not itself evidence—the exhibit is instead a persuasive, pedagogical tool created and used by a party as part of the adversarial process to persuade the jury." *Baugh ex rel. Baugh v. Cuprum S.A. de C.V.*, 730 F.3d 701, 706 (7th Cir. 2013) (reliance on demonstrative exhibit as substantive evidence was reversible error). Likewise, there are important and well-recognized distinctions between substantive evidence and evidence used solely for impeachment purposes. *See, e.g.*, *Behler v. Hanlon*, 199 F.R.D. 553, 557 (D. Md. 2001) ("[T]he central purpose of . . . impeachment is to diminish the credibility of the witness to be impeached, as opposed to any substantive use of the evidence to prove a matter of consequence to the litigation independent of its impeachment value."). In short, while it might benefit Intervenors to blur the line between evidence and advocacy, the law does not permit that result.

### B.     Intervenors' General Arguments

#### 1.     Rule 403 Applies in Bench Trials

As explained in Plaintiffs' opening brief, many of the contested exhibits should be excluded under Federal Rule of Evidence 403 because they are likely to waste this Court's time, duplicate other evidence, or cause confusion. Because Intervenors cannot deny those points, they argue that Rule 403 does not apply in bench trials. *See* Response at 2. That is wrong. In fact, courts routinely invoke Rule 403 in bench trials.[1] Moreover, this Court should be particularly attuned to the dangers identified in Rule 403. Intervenors plan to present overlapping testimony from no fewer than three expert witnesses. And they have repeatedly threatened to extend this case beyond its allotted days. Under those circumstances, it is even more important than usual to exclude wasteful, burdensome, and duplicative exhibits such as those discussed below.

#### 2.     The Hearsay Rule Applies in Bench Trials

Plaintiffs also explained in their opening brief that some of Intervenors' Proposed Exhibits violate the hearsay rule and should be excluded on that ground. *See* Fed. R. Evid. 802.

Intervenors have only two responses. Neither has merit. ***First***, Intervenors complain that they did not object to some of Plaintiffs' proposed exhibits that (in Intervenors' view) "obviously contain hearsay and lack of foundation." Response at 3. Intervenors do not identify which of Plaintiffs' proposed exhibits "obviously contain hearsay," but the point is irrelevant in any case. Intervenors were free to object to any of Plaintiffs' proposed exhibits. They chose not to do so. That strategic choice has no relevance to the merits of Plaintiffs' legal arguments.

---

[1] *See, e.g.*, *Skydive Suffolk, Inc. v. Stroupe*, 133 F.3d 917 (4th Cir. 1998) (noting that "relevant evidence may be excluded in a bench trial because it is cumulative"); *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("[E]xcluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power[.]"); *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11CV6201 DLC, 2015 WL 685153, at *3 (S.D.N.Y. Feb. 18, 2015) ("[Rule] 403 has a role to play whether the case is to be tried to a jury or to a judge.").

*Second*, Intervenors argue that "the exhibits at issue fall under hearsay exceptions and will be admissible for purposes other than proving the truth of the matter asserted." *Id*. But when the parties met and conferred regarding proposed trial exhibits, Intervenors did not explain which hearsay exceptions applied to the exhibits at issue here. Intervenors also declined to stipulate that Proposed Exhibits 35 and 36—two undisclosed expert reports from the *Wilkins v. West* case, discussed below—would not be offered for the truth of the matter asserted. Thus, this is largely a dispute of Intervenors' own making. They should not be heard to argue that it has "minimal value" when they could have avoided it altogether. *Id*. at 4.

### 3. The Rules of Civil Procedure Apply in Bench Trials

Lastly, Plaintiffs explained in their opening brief that some of Intervenors' Proposed Exhibits should be excluded because they were not produced during discovery as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 37(c)(1).

Remarkably, Intervenors do not argue that they complied with the discovery rules, including the expert-disclosure rules. Instead, they argue that their violations should be excused because "(1) Plaintiffs' expert failed to produce in discovery the political data he used for his racial bloc voting analysis, and (2) Plaintiffs have introduced in their trial exhibits documents that are not Bates stamped and were not provided to [Intervenors] in discovery." *Id*. Here again, Intervenors' argument fails for two reasons.

*First*, both claims are misleading. It is true that Plaintiffs' expert did not reproduce verbatim some of his data. But as Intervenors acknowledge, that data was publicly available and easily accessible to Intervenors because it was taken from Virginia's Division of Legislative Services—*an agency that is part of the General Assembly itself*. *Id*. at 14. Equally important, Intervenors have known since at least March 2015 (when Plaintiffs made their expert

disclosures) that Plaintiffs did not provide redundant courtesy copies of that publicly available information. Intervenors never objected, and the time for raising such objections has passed.

As for the unidentified "documents that are not Bates stamped and were not provided to [Intervenors] in discovery," *id*. at 4, Plaintiffs assume that Intervenors are referring to items that Plaintiffs obtained through public records requests early in this case. Intervenors fail to inform this Court that Intervenors sought those records in discovery, Plaintiffs objected to producing them (because they were equally if not more accessible to Intervenors), and *Intervenors failed to file a motion to compel production of those records*. In other words, Intervenors had notice of the documents of which they complain long ago. They simply chose not to pursue them.

***Second***, Intervenors' argument fails because it is an obvious attempt to divert focus from the issue before the Court. *Plaintiffs* have objected to *Intervenors'* Proposed Exhibits. Intervenors have not objected to any of Plaintiffs' proposed exhibits. *See* Dkt. 87. Intervenors may now regret that decision. But that has nothing to do with the merits of Plaintiffs' objections, and it certainly does not render Intervenors' exhibits admissible under the discovery rules.

### C. Intervenors' Specific Arguments

#### 1. Proposed Exhibit 13 (Outdated Regulation)

Intervenors argue that this Court should admit into evidence an outdated Department of Justice ("DOJ") regulation from 2001 because Delegate Chris Jones allegedly "relied" on demographic data (DOJ Black) that was displayed by a redistricting computer program (Maptitude) when drawing the Challenged Districts in 2011. Response at 4. Respectfully, that is a non sequitur. Proposed Exhibit 13 does not explain the meaning of demographic data displayed in the Maptitude program, nor how Maptitude calculates such data. Indeed, it draws no connection whatsoever between DOJ's practices in 2001 and the inner workings of Maptitude.

Moreover, as explained in Plaintiffs' opening brief, nothing in the record suggests that Delegate Jones (or anyone else) relied on the 2001 Regulation when drawing the Challenged Districts in 2011. Nor is that surprising, because the 2001 Regulation describes how DOJ evaluated redistricting submissions after the *2000* Census. The DOJ's *current* regulation explains how DOJ evaluates submissions based on 2010 Census data—including how DOJ *currently* calculates minority populations. *See* Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act; Notice, 76 Fed. Reg. 7470-01 (Feb. 9, 2011) (the "2011 Regulation"). All parties have stipulated to the authenticity and admissibility of the 2011 Regulation. As a result, admitting the 2001 Regulation would—at best—waste everyone's time.

### 2. Proposed Exhibits 23 and 24 (DOJ Materials)

Proposed Exhibit 23 is a massive, 295-page collection of documents apparently produced to Intervenors by DOJ that consists mainly of (1) miscellaneous communications between third parties and DOJ, including letters and emails, and (2) memoranda summarizing interviews conducted by DOJ employees. Proposed Exhibit 24 is another DOJ interview memorandum. The identities of the interviewers and interviewees have been redacted in *all* interview memoranda.

#### a. Miscellaneous Communications

Intervenors argue that the first category of documents in Proposed Exhibit 23— miscellaneous communications between third parties and DOJ—are not hearsay because they "will not be offered for the truth of any matter asserted but rather to demonstrate that DOJ, in its preclearance investigation, solicits and considers the input of community members as to the question of retrogression." Response at 10. Putting aside the finer points of the hearsay rule, that argument makes little practical sense. For one thing, there is *no* evidence that DOJ considered *these* communications. For another, Intervenors need not dump nearly 300 jumbled pages of unknown provenance into the record to show that DOJ considers information from third parties.

The relevant DOJ regulation, which is cited in Intervenors' brief, makes that very point. *See* 28 C.F.R. § 51.53 ("The Attorney General shall base a determination on a review of material presented by the submitting authority, relevant information provided by individuals or groups, and the results of any investigation conducted by the Department of Justice.").[2]

### b. Redacted Interview Memoranda

Intervenors argue that the heavily redacted interview memoranda in Proposed Exhibits 23 and 24 should be admitted as evidence because (1) they reveal the intent of Virginia legislators who were interviewed by DOJ; (2) legislative intent is relevant because Plaintiffs are required to show that the General Assembly acted with an "invidious discriminatory purpose" to prevail; and (3) the statements attributed to the interviewees in the interview memoranda are not hearsay because they amount to "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan)" under Federal Rule of Evidence 803(3). Response at 7 (internal quotation marks and citation omitted).[3]

Every part of that argument is incorrect. ***First***, Intervenors cannot argue that the DOJ interview memoranda reveal the intent of Virginia's legislators because *there is no way of knowing who the interviewees are*. The interview memoranda in Proposed Exhibits 23 and 24 are

---

[2] According to Intervenors, "Plaintiffs contend in this case that a redistricting plan with majority-minority districts cannot be narrowly tailored based on the views of representatives of those districts or other community members, but rather must depend on the expert opinions of political scientists." Response at 10. That is a straw man. Plaintiffs have *never* argued that Virginia was required to obtain the "expert opinions of political scientists" to comply with the Fourteenth Amendment. Plaintiffs *have* argued that Virginia failed to comply with the law because it did not perform enough analysis to have a "strong basis in evidence" for the race-based redistricting choices that it made. *Ala. Leg. Black Caucus v. Alabama*, 135 S. Ct. 1257, 1274 (2015) (internal quotation marks and citation omitted).

[3] Because Intervenors quote the language of Rule 803(3), Plaintiffs assume that Intervenors meant to rely on that rule. *See* Response at 7-8. Intervenors' brief actually cites Rule 804(3). *See id*. at 7. But that rule applies only when a declarant is unavailable to testify as a witness at trial, and none of the purported declarants are unavailable here.

heavily redacted, and the identities of the interviewers and interviewees are removed. Intervenors simply ignore that inconvenient fact and hope this Court will too.[4]

*Second*, Intervenors did not argue in their pretrial brief that Plaintiffs are required to establish an "invidious discriminatory purpose," and for good reason: That is not the law. Plaintiffs need only show that race predominated in the drawing of the Challenged Districts, and, if so, that the use of race was not narrowly tailored to advance a compelling state interest. *See Page v. Va. St. Bd. of Elections* ("*Page II*"), No. 3:13CV678, 2015 WL 3604029, at \*16 (E.D. Va. June 5, 2015). It makes no difference whether the General Assembly's racial goals were invidious, benign, or even remedial. *See Shaw v. Hunt*, 517 U.S. 899, 904-05 (1996) (explaining that "a racially gerrymandered districting scheme" is "constitutionally suspect" even if "the reason for the racial classification is benign or the purpose remedial").

*Third*, Intervenors cannot rely on Rule 803(3) because Rule 803(3) excepts from the hearsay rule only "statement[s] of the declarant's *then-existing* state of mind[.]" Fed. R. Evid. 803(3) (emphasis added). It does not except "statement[s] of memory or belief to prove the fact remembered or believed[.]" *Id*. Here, all agree that the statements in the interview memoranda were made "weeks" after enactment of the redistricting plan at issue. Response at 7, 9. Thus, even assuming that the unknown interviewees are legislators, and assuming further that they are discussing their legislative motives and intent, their statements are mere *recollections* of their motives and intent and may not be used to prove the truth of those recollections.

In any event, even if Rule 803(3) excused the first level of hearsay in the DOJ interview memoranda (that is, the statements by unknown interviewees), Intervenors would still have to

---

[4] Intervenors continue to insist that Senator Rosalyn Dance admitted at her deposition that she was the unidentified interviewee in Proposed Exhibit 24. *See* Response at 8. Again, that is simply untrue. *See* Dep. of Rosalyn Dance at 214:3-6 ("Q: So, in fact, you really can't be certain that this memo reflects a conversation with you at all, can you? A: No.").

justify the second layer too (that is, the summaries by DOJ employees of the unknown interviewees' statements). Recognizing that point, Intervenors invoke the public-records exception to the hearsay rule under Federal Rule of Evidence 803(8). *See id*. at 8-9. But contrary to Intervenors' arguments, the interview memoranda do not purport to record any "matters observed while under a legal duty to report," nor do they purport to set forth "factual findings." Fed. R. Evid. 803(8)(A)(ii), (iii).

Lastly, even if Intervenors could overcome all of the obstacles above, the DOJ interview memoranda are not trustworthy. *See* Fed. R. Evid. 803(8)(B) (public records are inadmissible hearsay if "opponent . . . show[s] that the source of information or other circumstances indicate a lack of trustworthiness"). The memoranda are not trustworthy for the same reasons they should be excluded under Federal Rules of Evidence 106 and 403: They do not identify the interviewers; they do not identify the interviewees; and the summaries are often so heavily redacted that they are impossible to follow. As a result, neither the parties nor this Court can confidently attribute any of the statements in the memoranda to particular individuals, and neither the parties nor this Court can know exactly what those individuals actually said to DOJ.

### 3. Proposed Exhibits 26 and 27 (Historical Preclearance Submissions)

Intervenors' brief makes clear that they do not seek to introduce the roughly 14,000 pages that comprise Proposed Exhibits 26 and 27 for what they *do* contain. Rather, they offer these exhibits to "prove *a negative*." Response at 11. Thus, although Intervenors claim that this Court need not "spend time rummaging through" these exhibits, *id.*, that is exactly what this Court would have to do if the exhibits were admitted: open and review hundreds of unique electronic files to verify the truth of Intervenors' representations about what they do *not* contain.

The Herculean labor this would entail is not remotely warranted by the probative value of old preclearance submissions. Intervenors argue that the submissions are relevant to the narrow

tailoring analysis. But whether Virginia did or did not do a racially polarized voting analysis for its 1991 and 2001 submissions says nothing about whether it "'ha[d] a strong basis in evidence in support of' its use of race" to draw the Challenged Districts *in 2011*. *Page II*, 2015 WL 3604029, at *16 (internal quotation marks and citation omitted). The 1991 and 2001 submissions involved different districts with different demographics. And Virginia did not, in those redistricting cycles, use an across-the-board numerical threshold to draw majority-minority districts.

### 4. Proposed Exhibits 35 and 36 (Undisclosed Expert Reports)

Intervenors argue that two expert reports submitted in a different case (*Wilkins v. West*) more than 10 years ago are relevant here because Delegate Jones will testify that "he was aware of racially polarized voting in Virginia based on his understanding of the expert evidence presented in, and the findings of, the *Wilkins* case." Response at 12. Intervenors also contend that the reports are not hearsay because they will be offered to show that Delegate Jones was aware of the reports (and their conclusions)—not to prove the truth of the reports' conclusions.

This dispute need not detain this Court long. Intervenors contend that the undisclosed expert reports were among the materials Delegate Jones consulted when drawing the Challenged Districts. *See id*. at 13. But Intervenors did not produce those reports in discovery, even though Plaintiffs sought all such materials. It follows that the undisclosed expert reports must be excluded. *See* Fed. R. Civ. P. 37(c)(1); *see also, e.g.*, *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005). Furthermore, even if Delegate Jones did rely on the undisclosed expert reports while drawing the Challenged Districts, they should still be excluded under Rule 403. The undisclosed reports analyze districts that no longer exist to answer legal questions that are not before this Court (e.g., whether the old districts complied with the compactness requirements of Virginia's constitution). They are, at best, a waste of time.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court uphold their objections to Intervenors' proposed trial exhibits.

DATED: July 2, 2015

By: */s/ Aria C. Branch*
John K. Roche (VSB # 68594)
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
Aria C. Branch (VSB # 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford
     (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

On July 2, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jennifer Marie Walrath
Katherine Lea McKnight
Baker & Hostetler LLP (DC)
1050 Connecticut Ave NW
Suite 1100
Washington, DC 20036
202-861-1702
Fax: 202-861-1783
jwalrath@bakerlaw.com
kmcknight@bakerlaw.com

Effrem Mark Braden
Baker & Hostetler LLP (DC-NA)
Washington Square
Suite 1100
Washington, DC 20036
202-861-1504
Fax: 202-861-1783
mbraden@bakerlaw.com

Of counsel:

Dale Oldham, Esq.
1119 Susan St.
Columbia, SC 29210
803-772-7729
dloesq@aol.com

*Attorneys for Intervenor-Defendants*

Jeffrey P. Brundage
Daniel Ari Glass
Kathleen Angell Gallagher
Eckert Seamans Cherin & Mellott LLC
1717 Pennsylvania Ave NW, Suite 1200
Washington, D.C. 20006
202-659-6600
Fax: 202-659-6699
jbrundage@eckertseamans.com
dglass@eckertseamans.com
kgallagher@eckertseamans.com

Godfrey T. Pinn, Jr.
Harrell & Chambliss LLP
Eighth and Main Building
707 East Main Street
Suite 1000
Richmond, VA 23219
gpinn@hclawfirm.com

Anthony F. Troy
Eckert Seamans Cherin & Mellott LLC
707 East Main Street
Suite 1450
Richmond, Virginia 23219
804-788-7751
Fax: 804-698-2950
ttroy@eckertseamans.com

*Attorneys for Defendants*

By */s/ Aria C. Branch*
   Aria C. Branch (VSB # 83682)
   **PERKINS COIE LLP**
   700 13th St. N.W., Suite 600
   Washington, D.C. 20005-3960
   Telephone: 202.434.1627
   Facsimile: 202.654.9106
   abranch@perkinscoie.com

*Attorneys for Plaintiffs*