IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| Golden Bethune-Hill, *et al.*, <br><br>    Plaintiffs, <br><br>    v. <br><br> Virginia State Board of Elections, *et al.* <br><br>    Defendants. | Civil Action No. 3:14-cv-00852-REP-GBL-BMK |

**Defendant-Intervenors' Statement of Position**
**Regarding the Conduct of Further Proceedings**

The Supreme Court's decision in this case has taken the law of racial gerrymandering into the uncharted territory of permitting a finding of "predominance" where the Supreme Court "to date" has never found it. *Bethune-Hill v. Va. State Bd. of Elections*, 15-680, Slip Op. at 10 (2017). Accordingly, the Supreme Court instructed this Court to undertake a type of "holistic analysis" that neither party anticipated in conducting discovery and trial, including a review of "all of the lines" of the Challenged Districts. *Id.* at 12. While much of this work has been accomplished in this Court's previous detailed opinion, the Supreme Court has signaled that this Court's factual findings—while correct insofar as they go—are not sufficient to resolve this case.

It is incumbent upon Plaintiffs to ascertain how to establish predominance under this new regime, given that "in many cases, perhaps most cases, challengers

will be unable to prove an unconstitutional racial gerrymander without evidence that the enacted plan conflicts with traditional redistricting criteria," *id.* at 10, and given that this Court has already found that no actual conflict exists. Absent such a conflict, the Supreme Court found that Plaintiffs can only prevail if they establish racial predominance through "direct" evidence of legislative purpose or some other "compelling circumstantial evidence." *Id.* at 11. Plaintiffs were under a burden at trial to put on this same type of evidence: "to show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose" that race predominated over neutral factors. *Id.* at 7. But Plaintiffs' evidence was insufficient at trial, and their expert testimony was rejected, leaving them only the 55% BVAP aspiration to meet their demanding burden. For the same reasons Plaintiffs failed to satisfy this Court's standard at trial, they also fail to satisfy the Supreme Court's standard on remand.

However, Defendant-Intervenors intend to vigorously defend the Challenged Districts under the Supreme Court's newly articulated standard. To the extent the Court believes that it needs additional evidence to be satisfied that race does not explain the lines as to which no evidence currently exists, Defendant-Intervenors will provide a refocused, "holistic" evidentiary presentation. For this purpose, Defendant-Intervenors propose that the Court conduct a second discovery period and hold a second evidentiary hearing in October or November 2017, followed by another round of trial briefing.

**Argument**

The racial-gerrymandering inquiry proceeds in two steps. First, the challenger bears the burden of showing that race was the predominant motivating factor in the State's decision of whether to place a substantial number of voters within or without a particular district. Slip Op. at 7. Second, if the challenger proves predominance, the burden shifts to the State to demonstrate that its districting legislation is narrowly tailored to achieve a compelling interest. *Id.* at 13. The Supreme Court's decision addressed both steps, and its analysis on both affects this remand.

A.  **Predominance**

As to the predominance inquiry, the Supreme Court identified two errors in this Court's decision: (1) that this Court required Plaintiffs to establish "an actual conflict between the enacted plan and traditional districting principles," Slip Op. at 7, and (2) that "it considered the legislature's racial motive only to the extent that the challengers identified deviations from traditional redistricting criteria that were attributable to race and not to some other factor," *id.* at 11.[1] As to the first error, the Supreme Court instructed this Court to consider whether Plaintiffs can establish predominance "in the absence of an actual conflict." *Id.* As to the second, the Supreme Court instructed this Court to conduct a "holistic analysis" to "take account of the districtwide context," rather than "divorce any portion of the

---

[1] Defendant-Intervenors expressed to the Supreme Court disagreement with these and other characterizations of this Court's opinion, but there appears to be no further room for dispute on this issue.

3

lines…from the rest of the district." *Id.* at 12. In particular, this Court "*must* consider all of the lines of the district at issue." *Id.* (emphasis added).

     This was not the analysis that either party anticipated in conducting discovery and trial. Plaintiffs focused their evidentiary presentation on the alleged existence of a 55% BVAP floor in all the Challenged Districts, arguing that if the General Assembly "use[d] a target criteria" for BVAP "that is the end of the analysis." Trial Tr. at 840. But the Supreme Court's "holistic analysis" rejects this argument, Slip. Op. 11–12, and two Justices disagreed with the majority opinion on this basis, *see* Opinion of Thomas at 1 ("Appellees…concede that the legislature intentionally drew all 12 districts as majority-black districts….That concession, in my view mandates strict scrutiny as to each district."); Opinion of Alito at 1 ("I would hold that all these districts must satisfy strict scrutiny."). Indeed, if Plaintiffs' theory of the case were now law, then the voting-rights revolution Plaintiffs have requested, as reflected in the *dissent* of Justice Clarence Thomas, would now be the law, and there would have been no remand. *But see* Slip Op. at 13 (remanding). Defendant-Intervenors focused their arguments and presentation on the absence of any departure from traditional districting principles on the basis of race, and provided extensive testimony that efforts to comply with the Voting Rights Act did not "require" the architect of HB5005 "to violate any of the criteria adopted by the state." *E.g.*, Trial Tr. at 308. But the Supreme Court held that "there may be cases where challengers will be able to establish racial predominance in the absence of an actual conflict." Slip Op. at 11.

Therefore, neither party's evidentiary presentation is sufficient to allow this Court to conduct the analysis required by the Supreme Court. Given that this threshold burden falls on Plaintiffs, *see* Slip Op. at 7, the absence of evidence on "all of the lines," *id.* at 12, should defeat their claims *unless* they present additional evidence demonstrating that district lines already found to comport with traditional districting principles were adopted on the basis of "race for its own sake," *id.* at 8. It is a mystery how that burden can be accomplished where Plaintiffs' expert testimony has been rejected as not reliable and where they have failed to present evidence on "all of the lines" of the Challenged Districts.

Nevertheless, Defendant-Intervenors are not passive participants in this litigation and are prepared to present evidence to aid the Court in fulfilling the Supreme Court's instructions. Defendant-Intervenors are prepared to call Delegate Chris Jones to testify about all of the Challenged Districts to clarify the record as to "all of the lines." Whereas his previous testimony focused on those parts of the Challenged Districts raising potential questions as to whether traditional districting principles were applied, this second round of testimony would have a "districtwide" focus, *id.* at 12, emphasizing the "reason[s] for choosing one map over others," *id.* at 10. Additionally, Defendant-Intervenors are currently reaching out to other Delegates who did not previously waive privilege to ascertain whether they will testify about the reasons the configurations of their districts were selected over other potential configurations (to the extent they are able to recall, given the six-year lapse in time from relevant events). Moreover, Defendant-Intervenors' experts

5

are re-examining the Challenged Districts to assess the type of "districtwide" evidence identified in the Supreme Court's opinion, such as "stark splits in the racial composition of populations moved into and out of disparate parts of the district," *id.* at 12, and other potentially relevant indicia showing or refuting predominance. Defendant-Intervenors therefore expect to present both fact and expert testimony in light of the Supreme Court's revised approach and request that this Court allow for additional presentation and concomitant discovery, including through supplemental expert reports.

To be sure, virtually all of the Court's factual findings remain accurate and relevant. Its factual findings as stated in Section III of its opinion outlining the chain of events and its assessment as stated in Section IV.B of its opinion of the expert testimony and statewide evidence were not impacted in any way on appeal. Moreover, the Court's findings in Section IV.C that there was no conflict between race and traditional criteria in the 11 Challenged Districts, remain applicable and are highly pertinent.[2] Indeed, the Supreme Court made clear that, "[a]s a practical matter" it "may be difficult for challengers to find other evidence sufficient to show that race was the overriding factor causing neutral considerations to be cast aside," *id.* at 10, and thus the Court's findings on this critical question remain in effect. Additionally, the Court's findings that politics, rather than race, predominated in particular districts, including HD63, HD80, and HD95, do not need to be revised

---

[2] The Supreme Court affirmed the Court's finding that HD75, the twelfth Challenged District, is not an unconstitutional racial gerrymander, obviating the need for any additional consideration of this district.

6

because the Supreme Court did not revisit its prior decision in *Easley v. Cromartie*, 532 U.S. 234 (2001), which requires a challenger to show that race "rather than politics" predominated. Thus, much of the fact-finding work is already complete.

The deficiency identified by the Supreme Court was not that this Court's factual findings were incorrect, but that they were *insufficient*. This Court only considered potential conflicts with traditional criteria; now it should consider whether predominance may be shown in some *other* way. This Court only considered district lines that appeared irregular; now a "holistic" review of "all of the lines" is required. This remand therefore does not require rejecting this Court's past findings but rather *adding* to them and then reweighing the evidence holistically according to the legal standard articulated by the Supreme Court.

For these reasons, Defendant-Intervenors respond to the Court's questions as follows:

In response to question (a) Defendant-Intervenors state that the Court's factual findings in the Memorandum Opinion remain in effect, but are incomplete;

In response to question (b) Defendant-Intervenors state that the Court's conclusions of law remain partially in effect, but are incomplete and must be informed by additional fact-finding, or else the Court will be duty-bound to rule in Defendant-Intervenors' favor.

In response to question (c) Defendant-Intervenors state that, unless the Court is prepared to rule summarily in Defendant-Intervenors' favor for lack of a

factual record supporting a "holistic" review, additional discovery and evidentiary proceedings are both required.[3]

### B. Strict Scrutiny

As to the strict scrutiny analysis, the Supreme Court affirmed this Court's holding that HD75 is narrowly tailored under Section 5 of the Voting Rights Act, placing emphasis on several factors supporting a 55% BVAP target, including Delegate Jones's discussion with Black Caucus members, his consideration of turnout rates, racially polarized voting in the region, and other factors. Slip Op. at 14–16.

Neither the Supreme Court nor this Court has reviewed any of the remaining 11 Challenged Districts under the strict scrutiny inquiry, so a similar analysis may yet need to be conducted as to other districts, and the Supreme Court's ruling focuses the inquiry for additional fact-finding. In particular, Defendant-Intervenors intend to call Delegate Jones to testify about his discussions of other Challenged Districts with their Delegates and other Black Caucus Members, and Defendant-Intervenors are contacting other Delegates to ascertain whether additional evidence can be taken. Because a functional analysis need not be "memorialized in writing," *id.* at 15, oral accounts of what occurred will be of particular relevance.

Additionally, Defendant-Intervenors state in response to question (d) of this Court's order that the Court would benefit from expert evidence as submitted in the

---

[3] Defendant-Intervenors' response to question (d) is stated in the strict-scrutiny discussion below.

8

Brief of Political Scientists Thomas L. Brunell, Charles S. Bullock III, and Ronald Keith Gaddie As Amici Curiae in Support of Appellees, filed in the Supreme court. This brief presents invaluable information placing racially polarized voting data in context. The brief explains that competing racially polarized voting analyses exist, that there may be difficulties in obtaining all relevant data, and that there is typically a wide margin of error for identifying an "ideal" minority population percentage. These arguments defeat Plaintiffs' view that the Challenged Districts are not narrowly tailored based on small percentage differences between 55% BVAP and the BVAPs Plaintiffs propose as "ideal" for the various districts. Defendant-Intervenors have contacted Professor Brunell, and, assuming no conflict or prior engagement interferes, he would be willing to present an expert report and testify in this case. Additionally or alternatively, Dr. Jonathan Katz and Dr. Trey Hood are willing to provide testimony on the subject of the political scientists' amicus brief.

Finally, Defendant-Intervenors intend to present additional expert evidence on demographics and racially polarized voting, including elections data from the past two decades and evidence of changes in demographic data in the Challenged Districts since 2011. The Supreme Court found that HD57 is "one instance where a 55% BVAP was necessary," Slip Op. at 16, and Defendant-Intervenors believe that the evidence will bear out that decision in the 11 remaining districts.[4]

---

[4] The appointment of a new judge to the panel overseeing this case, ECF No. 133, supplies an additional reason for an evidentiary hearing. "The District Court is best positioned to determine in the first instance both the questions of predominance

## Conclusion

For the foregoing reasons, Defendant-Intervenors propose that the Court conduct an additional round of discovery and a second evidentiary hearing, followed by supplemental opening and responsive briefs. Defendant-Intervenors believe that fact discovery could reasonably be conducted in 45 days, that expert discovery could be conducted in 60 days, and that the case would be ready for an additional evidentiary hearing in October or November of 2017. Defendant-Intervenors believe that their presentation would last approximately a day to a day and a half, and therefore two to three days would be sufficient. The parties should then conduct briefing on their respective legal positions. Nevertheless, if the Court agrees with Defendant-Intervenors that the record is not sufficient to support Plaintiffs' predominance position and Plaintiffs do not request an opportunity for additional evidence, the Court should enter judgment in favor of Defendant-Intervenors.

---

and narrow tailoring," Slip Op. at 13, in part because it can weigh testimony and assess credibility, which Judge Wright Allen has not yet had the opportunity to do.

Dated: April 17, 2017

Respectfully Submitted,

/s/ Katherine L. McKnight
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

Dalton Lamar Oldham, Jr. (*pro hac vice*)
Dalton L Oldham LLC
1119 Susan Street
Columbia, SC 29210
Tel: (803) 237-0886
dloesq@aol.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker William J. Howell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2017, a copy of the foregoing was filed and served on all counsel of record pursuant to the Court's electronic filing procedures using the Court's CM/ECF system.

/s/ Katherine L. McKnight
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com