IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| GOLDEN BETHUNE-HILL, et. al, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | **Civil Action No. 3:14cv852** |
| ) | |
| VIRGINIA STATE BOARD OF ELECTIONS, et.al, ) | |
| ) | |
| Defendants. ) | |

**STATEMENT OF ONEVIRGINIA2021
IN RESPONSE TO THE COURT'S ORDER OF APRIL 21, 2017**

This Statement of OneVirginia2021, Amicus Curiae (hereinafter "Amicus"), is submitted in response to the Court's order dated April 21, 2017 (ECF No. 149), directing the parties to file statements with their positions explaining (1) whether the substantive issue raised in the proposed STATEMENT OF POSITION OF ONEVIRGINIA2021 AS AMICUS CURIAE is presented by the pleadings in this action, and (2) if that issue is not presented by the pleadings, how, if at all, can it be considered in these proceedings on remand.

First, Amicus contends that the substantive issue argued in its Statement of Position, that the constitutionally of redistricting intended to establish or maintain partisan advantage, was in fact raised in the pleadings -- and also in the briefs and evidence -- and more specifically in the Answer of Defendant-Intervenors filed on February 3, 2015 (ECF No. 27). The Fourth Defense delineated in the Answer at p. 12 asserts that "The redistricting plan enacted in 2011 by the Virginia General Assembly is lawful and was drawn in accordance with all requirements of the United States Constitution." The Fifth Defense, also at p.12, states "Defendant-Intervenors reserve the right to designate additional defenses as they may come to light during the course of investigation, discovery or otherwise."

1

Thus, the Defendant-Intervenors opened the door to an inquiry into the legality of the plan under "all requirements of the United States Constitution" in the Answer to the Complaint. Then, in the Defendant-Intervenor's Pre-Trial Brief, filed on June 6, 2015 (ECF No. 72), they invoked as constitutionally permissible employing political gerrymandering as a defense to the Plaintiffs' contention that racial gerrymandering had occurred. The Pre-Trial Brief states that "the Challenged Districts were drawn to meet numerous redistricting criteria" as established by the Virginia General Assembly, including the following:

> **Politics.** The plan sought to achieve specific political goals. The alterations to HD95 and HD92 occurred as part of a plan to draw Democrat Robin Abbott out of her district and into a strong Republican district. The changes on the eastern border to HD75 were drawn to load heavily Republican precincts into the district of Democrat William Barlow, (who subsequently lost to a Republican in the 2011 election by 10 percentage points), and to protect Delegates Tyler's and Dances' Democratic seats in a growing sea of Republican control in Southside. Politics also explain the path of HD80, which was carefully drawn to keep Democratic precincts in the territory of Democrat Matthew James and out of the district of Republican Delegate Jones, who authored the plan. *See Easley v. Cromartie,* 532 U.S. 234, 241 (2001) (rejecting *Shaw* challenge where protection of incumbent seats and other political considerations was not subordinate to race in reapportionment).

Defendant-Intervenors' Pre-Trial Brief, at p. 25 (ECF No. 72). There can be no doubt that the last sentence in the quoted portion of the Pre-Trial Brief raises the question of the constitutionality of redistricting intended to achieve partisan advantage as an issue in this case.[1]

---

[1] The Defendant-Intervenors repeated similar arguments to the Supreme Court, stating:

> In choosing which of HD93's former precincts to include in HD95, Delegate Jones sought to accomplish two political goals. First, he drew the district to include "heavily Democratic precincts" to improve the electoral chances of Republicans in surrounding districts. Second, he gave the district an "eastward 'zig'" and "westward 'zag'" "to avoid including the residence of Delegate Robin Abbott," who represented HD93.

*Bethune-Hill v. Virginia St. Bd. of Elect.,* 15-680, Brief for Appellees at 40 (U.S. Oct. 17, 2016)(internal citations omitted).

2

In citing *Cromartie II*, the Defendant-Intervenors are representing to this Court that they engaged in political gerrymandering – not racial gerrymandering – and that they did so purportedly in a manner consistent with the requirements of the Constitution.  But *Cromartie* provides no cover for the Defendant-Intervenors in this case.  In *Cromartie,* legislators were attempting to preserve the "partisan balance" in the state - i.e., to allocate political power in accordance with their voting strengths. *Hunt v. Cromartie (Cromartie I),* 526 U.S. 541, 549 (1999). Here, the Defendant-Intervenors baldly admit to an outright partisan attack on the opposing party, by "load[ing] heavily Republican precincts into the district of Democrat William Barlow" causing his defeat in the election, and "draw[ing] Democrat Robin Abbott out of her district and into a strong Republican district" in order to force her out of the legislature. Defendant-Intervenors' Pre-Trial Brief, at p. 25 (ECF No. 72). Thus, the Defendant-Intervenors advance the legal position that political gerrymandering depriving some citizens of a meaningful voice in the democratic process serves a legitimate governmental interest and is therefore constitutional. It is hard to imagine this issue being more starkly placed before the Court.

Contrary to the Defendant-Intervenors' assertion, their actions did not amount to *constitutional* political gerrymandering.  Rather, they engaged in unconstitutional, invidious viewpoint discrimination, with a specific intent to suppress the rights of Democratic voters.  The Defendant-Intervenors themselves raised the issue of partisan gerrymandering for political advantage in their pleadings and argument, and then claimed that their actions were in all respects lawful and constitutional.  Thus, the question is squarely before the Court, and this Court is obliged to address whether such unconstitutional misconduct may be accepted or considered by the Court to explain or justify alleged racial discrimination.

Second, even if the Court were to find that the issue was not raised in the pleadings, it was "tried by the parties' express or implied consent" and, therefore, "must be treated in all respects as if raised in the pleadings." Rule 15(b)(2) of the Federal Rules of Civil Procedure. *See, e.g., Plasterers' Local Union No. 96 Pension Plan v. Pepper*. 663 F.3d 210, 215 fn6 (4th Cir. 2011); *Teamsters Joint Council No. 83 of the Va. Pension Fund v. Weidner Realty Assocs.*, 377 Fed. Appx. 339, 343 fn3 (4th Cir. 2010). A keyword search through the trial transcript for "political" and "partisan" brings up numerous hits that begin in opening statements, such as the following: "The target, the evidence will show, was defined not by political performance but explicitly based on race. The evidence will show that race, not politics, was a predominate purpose of the redistricting plan from start to finish." Trial Transcript, July 7, 2015 at 5. *See also* Trial Transcript, July 7, 2015 at 8 ("Intervenors apparently intend to present evidence that they considered political factors in drawing the map, and they may well have done so."). These hits continue throughout the trial. *See, e.g.,* Trial Transcript, July 7, 2015 at 41-42, 129, 156-157; Trial Transcript, July 8, 2015 at 336, 359, 362, 385; Trial Transcript, July 9, 2015 at 565-567, 610-611, 634, 655; Trial Transcript, July 13, 2015 at 722, 784-792, 816-817, 827, 856, 867. A prime defense by the Defendant-Intervenors was, in fact, that their motives were politically and not racially driven. Thus, even if the issue was not presented by the pleadings, it can be considered in these proceedings on remand.

Finally, it is well settled that federal district courts have inherent discretionary power to act *sua sponte* to address an issue of significant magnitude arising in a case before the court, and this power lies even in the absence of any specific, statutory authority applicable to the circumstances. This authority was recently codified in amendments to Fed. R. Civ. P. 56, which

now is recognized as providing a specific grant of power to the federal district courts to consider *sua sponte* motions for summary judgment. Rule 56(f) states:

> (f)  Judgment Independent of the Motion.  After giving notice and a reasonable time to respond, the court may:
>
> (1)  grant summary judgment for a nonmovant;
>
> (2)  grant the motion on grounds not raised by a party; or
>
> (3)  consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

The U.S. Supreme Court also has made clear that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs.,* 500 U.S. 90, 99 (1991). While the Court's role is limited to deciding the case or controversy before it based on the facts the parties present, the parties' failure to argue the best interpretation of the law must not limit the Court's ability to apply the law as the Court understands it. To do otherwise would allow flawed arguments by the parties to improperly shape the precedent that future litigants are bound to live by.

In this case, it is clear that questions of race and politics are inextricably intertwined. If the legislature's use of partisanship conflicts with the First and Fourteenth Amendments, it would amount to a substantial miscarriage of justice for this Court to accept that proffered rationale as a legitimate defense to unconstitutional racial gerrymandering. Moreover, this is an issue of important public policy, and it is undisputed that the Court was on notice of the issue in the prior proceedings. It chose not to consider the issue because "political gerrymandering" was not raised as an issue by the Plaintiffs. It is now clearly raised by Amicus, however, in the fresh start provided by these proceedings on remand. The constitutionality of the Defendant-

5

Intervenors' use of viewpoint discrimination to justify racial discrimination can and should be addressed by this Court.

Amicus understands the Plaintiffs to be concerned that the Court addressing this issue will result in delay. However, the record reflecting the partisan gerrymandering to attain political advantage is complete. No additional evidence is necessary. Thus, the only action item required would be for the Court to hear and consider the legal arguments on this issue. Further, this is a critically important matter. Gerrymandering to achieve political advantage is a not a legitimate state interest. Indeed, it is unconstitutional discrimination on the basis of political viewpoint and should not be allowed as a defense to an otherwise well-grounded claim of racial discrimination in the redistricting process.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Court should grant the Motion of OneVirginia2021 for leave to file its Statement of Position as Amicus Curiae in this case and should further rule that evidence of political gerrymandering or alleged incumbency protection to secure partisan advantage may not be accepted or considered to explain or justify alleged unconstitutional racial discrimination.

Dated: May 1, 2017

Respectfully submitted,

OneVirginia2021: Virginians for Fair Redistricting
By Counsel

   /s/ Wyatt B. Durrette, Jr.
Wyatt B. Durrette, Jr., Esquire VSB #04719
Christine A. Williams, Esquire VSB #47074
Durrette Crump PLC
1111 East Main Street, 16th Floor
Richmond, VA 23219
(804) 775-6900
wdurrette@durrettecrump.com

                                            Gregory E. Lucyk, Esquire VSB #19754
                                            Attorney at Law
                                            300 Seneca Road
                                            Richmond, VA 23219
                                            (804) 920-7031
                                            gglucy@comcast.net

## CERTIFICATE OF SERVICE

      I hereby certify that on this 1st day of May 2017, I will electronically file the foregoing with the Clerk of Court using the Court's CM/ECF system, which will then send a notification of such filing (NEF) to the parties in the case.

                                                     /s/ Wyatt B. Durrette, Jr.