IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

Golden Bethune-Hill, *et al.*,

Plaintiffs,

v.

Virginia State Board of Elections, *et al.*

Defendants.

Civil Action No. 3:14-cv-00852-REP-GBL-BMK

**Defendant-Intervenors' Response Brief Regarding the Conduct of Further Proceedings**

The Supreme Court remanded this case "for further proceedings consistent with [its] opinion." *Bethune-Hill v. Va. State Bd. of Elections*, 15-680, Slip Op. at 17 (2017). These "further proceedings" must address two questions. The first is whether Plaintiffs—having failed to establish a conflict between race and neutral principles—can nevertheless establish predominance "in the absence of an actual conflict." *Id.* at 11. The second is whether Plaintiffs—having failed to show that any specific boundary lines evidence a predominantly racial intent—can nevertheless show predominance under a "holistic analysis" that "*must*" take into account "all of the lines of the district at issue." *Id.* at 12 (emphasis added). The Supreme Court's decision therefore provides a simple framework for proceeding on remand, and that framework makes additional evidence the *sine qua non* of any ruling in Plaintiffs' favor.

Rather than explain how they intend to meet their burden under that framework, Plaintiffs propose an entirely new one with no basis in the Supreme Court's decision, which can be summarized as follows: this Court remains bound to all the factual findings that Plaintiffs believe are helpful to their case, it should revisit all the factual findings that Plaintiffs believe are unhelpful to their case, and it should move as fast as possible to strike down the 11 remaining Challenged Districts, maximizing upheaval in the 2017 elections. That view does not provide an intelligible principle or workable plan for conducting this remand within "the letter and spirit" of the Supreme Court's mandate. *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quotation marks omitted). It is rather an attempt to use the posture of this case as a mulligan to allow Plaintiffs to try again where they failed already and to elude the "extraordinary caution" that courts "must" exercise in evaluating *Shaw* claims. *Miller v. Johnson*, 515 U.S. 900, 916 (1995). The Court should reject this effort and proceed as outlined in Defendant-Intervenors' position statement.

**Argument**

The rules for proceeding on remand are well established. A lower court is "bound to carry the mandate of the upper court into execution" and may "not consider the questions which the mandate laid at rest." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939). Additionally, a lower court is barred by the law-of-the-case doctrine from "litigation of issues decided by the district court but foregone on appeal or otherwise waived." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993); *see also Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007). Beyond those two categories,

"on the remand a lower court is free as to other issues." *Sprague*, 307 U.S. at 168. In assessing the scope of remand, the Court should adhere to "the letter and spirit" of the Supreme Court's mandate. *Bell*, 5 F.3d at 66 (quotation marks omitted).

Defendant-Intervenors' position and proposed schedule of proceedings adheres to those principles. First, the mandate "laid to rest" the question whether a 55% BVAP target criterion can satisfy the predominance test; the issue was "before" the Supreme Court and therefore "directly at issue," and the mandate leaves no doubt that this fact is insufficient.[1] *Sprague*, 307 U.S. at 168, *see* Plaintiffs' Appeal Brief, ECF No. 148-1, at (i) (raising the issue). Second, the mandate did not disturb this Court's finding that no conflict between race and neutral principles existed in the 11 remaining Challenged Districts, and it expressly stated that this finding remains highly relevant and, "as a practical matter," it may be dispositive. Slip Op. at 10. Plaintiffs did not ask the Supreme Court to review the actual-conflict *factual* findings (its question presented was limited to a *legal* challenge to the actual-conflict threshold requirement), so the factual findings on this point are law of the case. *Bell*, 5 F.3d at 66. Third, the mandate did not disturb this Court's other factual findings, including its rejection of Plaintiffs' expert testimony as unreliable, but only required that the Court make *additional* findings as to "all of the lines" of the Challenged Districts. Slip Op. at 12.

---

[1] At a bare minimum, the Supreme Court's mandate "impliedly" found a 55% BVAP floor insufficient. *S. Atl. Ltd. P'ship of Tennessee, LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) ("[T]he court may not alter rulings impliedly made by the appellate court.")

Thus, the correct way to proceed is to take the Court's factual findings as they exist and reweigh the evidence together with the essential *additional* factual presentation as to "all of the lines" of each district. If the Court agrees with Defendant-Intervenors that Plaintiffs' ability to meet their burden depends on their presentation of new evidence, it should enter judgment in favor of Defendant-Intervenors, given Plaintiffs' stated intent not to present further evidence. Alternatively, if the Court believes there may be some basis in the record to find predominance under the test articulated by the Supreme Court, Defendant-Intervenors are prepared to make a refocused presentation of additional evidence as to "all of the lines" of the Challenged Districts.

Plaintiffs' objections to proceeding in this manner are confusing and self-serving.

### A. Plaintiffs' Request for Immediate Invalidation of 11 Lawfully Passed Voting Districts Assumes What They Are Required To Prove

Plaintiffs' principal objection to attempting to meet their burden with evidence is that "the fundamental rights of Virginia voters hang in the balance." Plaintiff's Statement of Position, ECF No. 148, at 10 ("Br."). Yet those same "fundamental rights" were hanging "in the balance" in 2011, 2012, 2013, and all but 9 days of 2014. *See* Complaint, ECF No. 1 (filed Dec. 22, 2014). Their alleged predicament is a result of *their* delay.

And, more importantly, this predicament is only *alleged*: no court has concluded that any of the Challenged Districts are unconstitutional, and it remains *Plaintiffs' burden* to prove this. In fact, the only final determination reached to date,

concerning HD75, rejects Plaintiffs' claim, and there is little reason to believe the result will be different as to the other districts. Plaintiffs' optimism about their prospects on the remaining districts is no reason to jettison the very procedural constraints intended to ensure that their claims are properly vetted.

Moreover, even assuming Plaintiffs may ultimately prevail, expediting this case will not accomplish their objective of resolving this case in time to impact this year's state legislative elections. *See* Br. at 7. As the Virginia State Board of Elections explained in recently concluded state-court litigation over the same districting plan, March 30, 2017 was the latest possible date that new election procedures or districting maps could be implemented for the upcoming primary elections. *See Vesilind v. Va. State Bd. of Elections*, No. CL15003886-00 (Richmond Cty. Cir. filed Sept. 14, 2015), Def.'s Resp. to Mots. to Stay and Certify Interlocutory Appeal at 2 & n.1 (filed March 18, 2016), ECF No. 172-1 at 2. Under Virginia law, the primary elections must be held on June 13, 2017, *see* Va. Code § 24.2-515, and primary candidates must submit declarations of candidacy no later than 75 days earlier, *i.e.*, March 30, 2017, *see* Va. Code § 24.2-522(A). That statutorily mandated 75-day period ensures that the Board of Elections will have the time it needs to carry out the burdensome tasks involved in administering the election, and to comply with all the "complexities of state election laws," *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

Even if district-court resolution in time for this year's elections were somehow possible, a subsequent appeal to the Supreme Court is likely. Additionally,

the state has the right in the first instance to redraw the Challenged Districts if any of them is invalidated, and that too will take time.

Plaintiffs' threshold error is in underestimating how long it takes to litigate a complex voting-rights case and, if successful, to see the matter through to its conclusion. For instance, a final decision after the Supreme Court's remand in *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 2571 (2015), which occurred in March 2015, was not reached for nearly two years, *see Alabama Legislative Black Caucus v. Alabama*, 2017 WL 378674 (M.D. Ala. Jan. 20, 2017), and the proceedings in that case are ongoing as of this time. That timeframe is par for the course. The original *Shaw* challenge was filed in March 1992, and the challenge was not finally adjudicated until June 1996, *see Shaw v. Hunt*, 517 U.S. 899 (1996), and, even then, the challenge to the remedial map drawn by the legislature was not resolved until 2001, *Easley v. Cromartie*, 532 U.S. 234 (2001). Plaintiffs have made serious allegations that "residents of Virginia [are being] forced to live under an unconstitutional districting system," Br. at 7, and serious allegations must be treated seriously, not in the haphazard manner that their request for breakneck speed requires.

**B. Plaintiffs' Recommendation on Factual Findings Lacks an Intelligible Principle**

Plaintiffs' proposal on how the Court should address questions of fact on remand is equally haphazard. Br. 1–4. They assert contradictorily that "the factual findings underlying this Court's determination that race did not predominate" are "subject to reevaluation," Br. at 2–3, except that "*some* of its previous findings"

nevertheless "remain relevant and significant," Br. at 4 (emphasis added), despite that "*[a]ll* of those factual findings were necessarily based on or at least shaped by an incorrect legal framework," Br. at 3 (emphasis added), even though the sole "purpose of…remand is to have the district court revise its *legal* analysis," Br. at 6 (emphasis added). Plaintiffs also make the confusing contentions both that "the existing factual findings…are not necessarily the universe of relevant factual findings on remand," Br. at 3, and that, nevertheless, "the record is and should remain closed," Br. at 4.

A closer reading of Plaintiffs' brief clarifies these otherwise incomprehensible statements: all the factual findings they believe are law of the case are the findings Plaintiffs favor—including all mentions of racial considerations in the Court's memorandum opinion, *see* Br. at 4—and all the factual findings they believe are open for review are those they disfavor—including everything from alleged "*post hoc* justifications" to "credibility determinations" to "the reliability of expert reports," *id.* This heads-I-win-tails-you-lose argument is not an intelligible principle and cannot guide the Court on remand.

However advantageous it may be for their interests, Plaintiffs' position is useless to this Court because it does not explain how the factual inquiries they would like to re-open were impacted by the Supreme Court's decision. Nothing about the Supreme Court's holdings that predominance may exist in the absence of actual conflict and that "all of the lines" of the Challenged Districts must be considered suggests that this Court's *credibility* determinations were incorrect, that

testimony this Court previously credited based on *live* sworn statements by those who drew the Challenged Districts are now "*post hoc* justifications," or that expert methods this Court previously found unreliable are now suddenly reliable. Plaintiffs' position is also based on a flawed understanding of the law-of-the-case doctrine, which posits that only facts "reviewed in and relied upon in an appellate court's decision" are law of the case, Br. at 1 (quotation marks omitted), when, in fact, the doctrine also reaches factual questions that were previously decided and not considered as part of the appeal. *See supra*; *see also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 329 (4th Cir. 2008).

Moreover, Plaintiffs are wrong that "the framework within which those facts were considered was legally erroneous." Br. at 3. The Court made its previous factual findings within an actual-conflict framework that the Supreme Court explicitly validated as relevant and as, "in many cases, perhaps most cases," the *only* basis for finding predominance. Slip Op. at 10. The problem with the Court's previous findings is not that they are wrong, but that they are *incomplete* and improperly foreclosed the possibility of *additional* inquiries. DI's Position Statement, ECF No. 146, at 6–7.

For these reasons, Plaintiffs' contention that no further factual findings are merited is backwards. The *only* way forward in this case is to evaluate new evidence where the record is, contrary to Plaintiffs' unsupported assertions, both "incomplete" and "inadequate." Br. at 6 (quotation marks omitted). As of this time, Plaintiffs' only meaningful evidence is the use of a 55% BVAP target, and that is

plainly insufficient. They have no evidence of an actual conflict between race and traditional criteria—and no basis to revisit whether an actual conflict exists—and they have no additional creditable evidence. They either must present more evidence or accept the inevitable judgment against them.

### C. The Court May and Should Consider Additional Expert Testimony on Topics Raised in the Amicus Brief of Political Scientists

Plaintiffs' opposition to expert testimony on the topics addressed in the Brief of Political Scientists Thomas L. Brunell, Charles S. Bullock III, and Ronald Keith Gaddie misconstrues yet again the remand standard. The issues raised in this brief are neither issues "laid to rest" in the Supreme Court or "decided by the district court but foregone on appeal or otherwise waived." *Sprague*, 307 U.S. at 168; *Bell*, 5 F.3d at 66. The district court is therefore "free" to consider them. *Sprague*, 307 U.S. at 168.

Plaintiffs' opposition to the Court's consideration of these issues proves why further proceedings are needed to address them. They claim that the "premise of the Amicus Brief is false," Br. at 8, but discovery and competing testimony on the "premise" is required to evaluate the information in that brief; the Court cannot simply accept Plaintiffs' there's-nothing-to-see-here representations without taking a closer look. Moreover, while Plaintiffs claim that they are not "demanding that the State precisely guess the exact threshold required" in an ability to elect district, Br. at 8 (quotation and edit marks omitted), their expert testimony *does* contend that the Challenged Districts are not narrowly tailored because of relatively small differences in BVAP as compared with what Plaintiffs believe it should be, Trial Tr.

202–06, and the testimony suffers from many of the deficiencies identified in the political scientists' amicus brief. Additionally, their contention that their narrow-tailoring standard does not conflict with Supreme Court precedent, Br. at 8–9, was rejected by the Supreme Court itself, which found that "[t]he challengers[] … ask too much from state officials charged with the sensitive duty of reapportioning legislative districts." Slip Op. at 15. Plaintiffs cannot seriously contend that they have been right on the strict-scrutiny analysis all along.

In asking the Court simply to ignore an entire line of inquiry based on their cursory representations that it would be fruitless, Plaintiffs ignore several factors indicating that this line of inquiry is likely to be informative.

First, Plaintiffs' argument that the issues addressed in the amicus brief concern only the strict-scrutiny analysis fail to appreciate that the selection of a relatively modest BVAP target of 55% also weighs in the balance of the predominance inquiry, given that the higher the target as compared with local demographics and other relevant information, the greater the likelihood that achievement of that goal predominated over other considerations, and vice versa.

Second, Plaintiffs' suggestion that the Supreme Court's standard on narrow tailoring is not new, Br. at 9, is only half correct: until this case, the Supreme Court had *never* upheld a district on the narrow-tailoring prong, so the standard had never been sufficiently clarified. And even now the analysis has only been conducted as to a single district, so the notion that no further development would be informative on this topic is short-sighted.

Third, Plaintiffs' suggestion that it would be unfair for Defendant-Intervenors to present additional evidence on the narrow-tailoring inquiry ignores that the Supreme Court's decision alters the incentives in defending against a *Shaw* claim by increasing (in general) both the likelihood that a given district will be subject to strict scrutiny and the likelihood that a given district will be found to be narrowly tailored. Indeed, the Supreme Court's decision represented *two* firsts: (1) the first time the Supreme Court had even remanded, much less invalidated a district, where actual conflict was not found and (2) the first time the Supreme Court found a district to be narrowly tailored. Under these circumstances, there is nothing unfair about allowing additional evidence on a subject that was neither foreclosed by the Supreme Court's nor this Court's decisions in this case. *Cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 (1979).

Finally, Plaintiffs suggest there is something nefarious in Defendant-Intervenors' representation at the early stages of the case that they were considering Dr. Thomas Brunell as a witness and their subsequent decision not to call him. Br. at 8 n.8. In fact, this is nothing but happenstance: Dr. Brunell's schedule ended up conflicting with the Court's trial schedule. Defendant-Intervenors have no idea how this has any relevance on the issues the Court is now considering.

### D. The Partisan-Gerrymandering Amicus Brief Has No Relevance to This Case

The amicus brief of OneVirginia2021 is a sideshow, and the Court should not consider it.[2] It is elementary that a federal court "must pass over" arguments raised only by amici that have not been raised by the parties to the case—especially where the parties have "renounced" them. *See, e.g.*, *New Jersey v. New York*, 523 U.S. 767, 781 n.3 (1998). Plaintiffs expressly disclaimed any intent of trying to prove a partisan-gerrymandering claim, *see* June 4, 2015, Hearing Tr., ECF No. 70, at 30–33, and this Court accordingly found that "the Plaintiffs have not raised the issue of political gerrymandering, and so the Court need not consider it further," Memorandum Opinion, ECF No. 108 at 79 n.21. Moreover, the Court expressly made findings that certain districts were drawn for a predominantly partisan purpose and thereby rejected Plaintiffs' racial-gerrymandering claims against those districts. *See, e.g.*, *id.* at 153–54. Plaintiffs did not contest those findings on appeal, so they are law of the case, as is the Court's (correct) reading of *Easley v. Cromartie*, 532 U.S. 234 (2001) (*Cromartie II*). *Bell*, 5 F.3d at 66. OneViriginia2021 has no right either to insert issues into this case that neither party intends to litigate or to challenge findings that now bind the parties.

Additionally, the Court is restricted to claims raised in the pleadings where, as here, a party objects to the admission of evidence on such claims and where formal amendment is not made (and could not be made) to the complaint. *See* Fed.

[2] Defendant-Intervenors consented to the filing of the brief out of collegiality, but, needless to say, disagree with its contents.

R. Civ. P. 15(b). Far from impliedly trying a partisan-gerrymandering claim by consent, the parties have always operated under the assumption that partisan purpose is a defense to a racial-gerrymandering claim. *See, e.g.*, June 4, 2015, Hearing Tr., ECF No. 70, at 30–33; Plfs' Post-Trial Opening Br., ECF No. 105, at 16 (discussing flawed expert testimony purporting to show greater attention to race than partisanship), 25–26 ("The House Criteria give no weight whatsoever to partisan considerations…and not once during the redistricting process did Delegate Jones and his allies emphasize the importance of partisan politics. In fact, they *denied* that partisan politics played a substantial role.").

There is good reason for these procedural constraints. Recasting this as a partisan-gerrymandering case would send it back to square one. For instance, it is not clear whether Plaintiffs have standing to raise OneVirginia2021's arguments, such as a challenge to the alleged injury of former Delegate Robin Abbot, OneVirginia2021 Br., ECF No. 145 at 6, or to the makeup of HD77, HD68, and HD97, where no Plaintiff resides, *id.* at 5. Additionally, OneVirginia2021 cites (at 14) the recently appealed decision *Whitford v. Gill*, 2016 U.S. LEXIS 160811 (W.D. Wis. Nov. 21, 2016), but that case relied on a statistical vote-efficiency framework that would require extensive discovery and expert testimony, at substantial expense to the parties. This case is a prime example of why the rule against allowing amici to spend the parties' money for wide-ranging proceedings and irrelevant inquiries exists.

Even if there were some basis for considering OneVirginia2021's arguments, they conflict with binding case law. In *Cromartie II*, the Supreme Court held that "political explanation[s]" for districting decisions are "legitimate" and therefore the burden falls on a plaintiff to prove that "race, rather than politics," was the state's predominant motive in drawing the lines of districts challenged in a *Shaw* case. 532 U.S. at 242, 257. OneVirginia2021 asks this Court to change that standard to allow a plaintiff to prove that both race and politics are illegitimate considerations, but that is well outside this Court's purview.

Finally, it bears noting that OneVirginia2021 was the sponsor and real party in interest in a separate challenge to the Virginia House 2011 map under the Virginia Constitution, and that challenge was rejected on March 31, 2017, in its entirety, following a complete trial on the matter. In that case OneVirginia2021 attempted to prove that political considerations "predominated" over mandatory constitutional criteria in redistricting. That OneVirgina2021's litigation has been unsuccessful undercuts any basis to suspect that the organization could prove the allegations in its amicus brief, and the Court should reject its attempt to re-litigate its failed attempt in this case by proxy.

**Conclusion**

The Court should implement the schedule proposed in Defendant-Intervenors' position statement. Alternatively, if the Court agrees with Defendant-Intervenors that the record in its current state is facially inadequate to make a

predominance inquiry under the Supreme Court's new legal test, it should enter judgment in Defendant-Intervenors' favor.

Dated: May 1, 2017

Respectfully Submitted,

/s/ Katherine L. McKnight
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker William J. Howell*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May, 2017, a copy of the foregoing was filed and served on all counsel of record pursuant to the Court's electronic filing procedures using the Court's CM/ECF system.

/s/ Katherine L. McKnight
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker William J. Howell*