IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| VIRGINIA STATE BOARD OF ) | Civil Action No. 3:14-cv-852-REP-AWA- |
| ELECTIONS, et al., ) | BMK |
| ) | |
| Defendants, ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**PLAINTIFFS' RESPONSE TO STATEMENTS OF POSITION RE: ONEVIRGINIA2021 AMICUS BRIEF**

Pursuant to this Court's Order of April 21, ECF No. 149, Plaintiffs hereby respond to Defendant-Intervenors' and OneVirginia2021's Statements of Position on the extent to which the issues raised in the Statement of Position of OneVirginia2021 As Amicus Curiae, ECF No. 145 ("OneVirginia2021 Amicus Brief"), should be considered in this Court's proceeding on remand. As set forth below, Plaintiffs have not alleged that the Challenged Districts are partisan gerrymanders. Accordingly, for purposes of resolving the merits of Plaintiffs' claims on remand under the appropriate legal standard, this Court should limit its analysis to Plaintiffs' racial gerrymandering claims. That said, OneVirginia2021's explanation of why the pursuit of partisan advantage is an illegitimate justification for drawing a district may well prove relevant during a remedial phase, should the Court find in Plaintiffs' favor on remand.

After first consenting to the filing of the OneVirginia2021 Amicus Brief, Defendant-Intervenors now vehemently oppose it, dismissing it as a "sideshow" that "has no relevance

to this case." Def.-Intervenors' Response Br., ECF No. 152 at 12. While Plaintiffs agree that they did not raise a claim of partisan gerrymandering in their Complaint, Defendant-Intervenors' submission makes three fundamental misstatements of the law and the record which Plaintiffs are compelled to clarify.

First, Defendant-Intervenors suggest that Plaintiffs "did not contest" this Court's findings "that certain districts were drawn for a predominantly partisan purpose," so those findings "are law of the case." *Id.* Notably, Defendant-Intervenors cite nothing in support of this proposition. And for good reason: nothing could be further from the truth. Plaintiffs challenged each and every one of this Court's findings that race did not predominate. *See, e.g.*, ECF No. 148-1 at 35 (conclusion on partisan considerations in District 63 "reveals the fundamental flaws in the majority's novel predominance test"); *id.* at 48 (majority's conclusion that it was "just as likely" that precincts in District 80 were selected for partisan considerations "is irreconcilable with the record evidence" and with the majority's "own predominance test") (citing Mem. Op., ECF No. 108 at 86 ("Evidence of a racial floor . . . can buttress a plaintiff's argument that race was the primary reason for a deviation where race and politics would otherwise seem equally plausible.")); *id.* at 55-56 (racial demographics better explain population swaps than partisan politics in District 95, and 55% BVAP rule tips the scale in favor of racial predominance).

Moreover, the Supreme Court specifically vacated this Court's conclusions on predominance in 11 districts and remanded for this Court to reconsider whether, under the correct legal standard, race predominated in those districts. *See* Slip Op. at 13 (instructing District Court to determine "the extent to which, under the proper standard, race directed the shape of these 11 districts"). It is nonsensical to contend that determinations that were specifically vacated for reconsideration on remand were somehow also sanctified as "law of the case." Defendant-Intervenors fail to acknowledge that this Court's findings regarding partisan objectives were not even mentioned, let alone "reviewed in and relied upon" by the

2

Supreme Court, and therefore cannot qualify as "law of the case." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1576 (Fed. Cir. 1991).

Second, Defendant-Intervenors contend that "the parties have always operated under the assumption that partisan purpose is a defense to a racial-gerrymandering claim." ECF No. 152 at 13. Plaintiffs, for their part, have never labored under any such "assumption" because it is flatly at odds with the well-settled law of racial gerrymandering. "[T]he fact that racial data were used in complex ways, and for multiple objectives, does not mean that race did not predominate over other considerations." *Bush v. Vera*, 517 U.S. 952, 972 (1996). Rather, race predominates whether it is used "for its own sake" *or* "as a proxy to protect the political fortunes of adjacent incumbents." *Id.* at 972-73; *see also id.* at 968 ("[T]o the extent that race is used as a proxy for political characteristics, a racial stereotype requiring strict scrutiny is in operation."); *id.* at 997 (state may not "use race as a proxy to serve other interests") (Kennedy, J., concurring); *Miller v. Johnson*, 515 U.S. 900, 920 (1995) ("[W]here the state assumes from a group of voters' race that they 'think alike, share the same political interests, and will prefer the same candidates at the polls,' it engages in racial stereotyping at odds with equal protection mandates.") (quoting *Shaw v. Reno*, 509 U.S. 630, 647 (1993)); *N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 222-23 (4th Cir. 2016) ("Using race as a proxy for party may be an effective way to win an election," but intentionally targeting a particular race "because its members vote for a particular party, in a predictable manner" triggers strict scrutiny "even absent any evidence of race-based hatred and despite the obvious political dynamics."); *Clark v. Putnam Cty.*, 293 F.3d 1261, 1271-72 (11th Cir. 2002) ("Incumbency protection achieved by using race as a proxy is evidence of racial gerrymandering" and "indicative of the sort of racial stereotyping that the Supreme Court has condemned as resembling political apartheid."). Contrary to Defendant-Intervenors' suggestion, the legislature's asserted political goals do not justify its race-based means of drawing district lines.

3

Moreover, and equally important, the record shows that the legislature's asserted "partisan purpose" is nothing but a smokescreen. The legislature denied any partisan motive during the redistricting process, *see* Pls.' Ex. 17 at 1, and Delegate Chris Jones disclaimed partisan goals at trial, *see* Tr. 481:19-483:2 (testifying that unseating Democrats or partisan gerrymandering simply "wasn't a goal"). Moreover, Virginia's preclearance submission makes unequivocally clear that "partisan factors were present *but muted* in establishing new districts." Pls.' Ex. 44 at 12 (emphasis added). And the House Criteria, which all agree set forth the criteria used to draw districts, expressly subordinate political considerations to racial considerations. *See* Pls.' Ex. 16. Defendant-Intervenors' attempt to attribute line-drawing decisions to partisan politics is precisely the sort of "post hoc" explanation that the Supreme Court, and other courts, have condemned. *See* Slip Op. at 9 ("The racial predominance inquiry concerns the actual considerations that provided the essential basis for the lines drawn, not *post hoc* justifications the legislature in theory could have used but in reality did not."); *Page v. Va. St. Bd. of Elections*, No. 3:13-cv-678, 2015 WL 3604029, at *14 (E.D. Va. June 5, 2015) ("While Defendants have offered post-hoc political justifications for the 2012 Plan in their briefs, neither the legislative history as a whole, nor the circumstantial evidence, supports that view to the extent they suggest."). Defendant-Intervenors' "assumption that partisan purpose is a defense to a racial-gerrymandering claim," therefore, contradicts both the law of and the record regarding racial predominance.

Third, Defendant-Intervenors suggest that the Supreme Court has broadly blessed all "political explanation[s]" for districting decisions, including partisan gerrymandering, as "legitimate." ECF No. 152 at 14. While Plaintiffs maintain that the Challenged Districts are racial gerrymanders, not partisan gerrymanders, Defendant-Intervenors' blanket assumptions about the "legitimacy" of various districting considerations underscores their

misunderstanding of the law.[1] The Supreme Court has made clear that "partisan gerrymanders . . . are incompatible with democratic principles," *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2658 (2015) (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 292 (2004)), and that "an excessive injection of politics [in districting] is unlawful," *Vieth*, 541 U.S. at 292. The Court's recognition that some political considerations may be "legitimate," *see, e.g.*, *Vera*, 517 U.S. at 964 (recognizing "incumbency protection, at least in the limited form of avoiding contests between incumbent[s]," as a legitimate state interest in defending against a racial gerrymandering claim) (quotation marks and citations omitted), hardly gives a legislature *carte blanche* to engage in partisan gerrymandering.

OneVirginia2021, meanwhile, contends that the issue of partisan gerrymandering has been raised in this litigation, either in the pleadings or by the parties' consent, and that in any event the Court has discretion to independently consider the issue to avoid a "miscarriage of justice." Statement of OneVirginia2021, ECF No. 151 at 5. Plaintiffs disagree that the issue of partisan gerrymandering has been raised by the parties thus far; Plaintiffs have not made a claim of partisan gerrymandering, and the mapdrawer, the redistricting committee, and the Commonwealth of Virginia have disclaimed partisan gerrymandering. The racial gerrymandering standard, moreover, does not require the Court to evaluate the extent to which a separate constitutional violation (partisan gerrymandering) constitutes a "legitimate" defense to the alleged constitutional violation (racial gerrymandering). Rather, it simply requires the Court to determine whether race was the predominant factor in drawing district lines and, if so, whether the legislature's race-based redistricting was narrowly tailored to a compelling interest.[2] While Plaintiffs do not disagree with the substance of

---

[1] Defendant-Intervenors characterize OneVirginia2021's position as "chang[ing] th[e] standard to allow a plaintiff to prove that both race and politics are illegitimate considerations." ECF No. 152 at 14. To be clear, Plaintiffs have never contended that race is an "illegitimate" consideration. Rather, consistent with the well-established precedent on racial gerrymandering, predominantly race-based redistricting that is not narrowly tailored to a compelling interest is unconstitutional.

[2] A mapdrawer's pursuit of partisan advantage, of course, is not a compelling interest justifying the predominant use of race.

OneVirginia2021's Amicus Brief regarding the illegality of partisan gerrymandering, this Court should limit its focus at the merits stage to addressing Plaintiffs' racial gerrymandering claims against the Challenged Districts.

To be sure, it is quite possible that the issues raised in the OneVirginia2021 Amicus Brief will become relevant if and when this Court finds one or more districts to be an unconstitutional racial gerrymander and orders a new remedial plan. Plaintiffs agree that the Virginia Legislature cannot express a "legitimate" interest—on purported behalf of the Commonwealth—in securing partisan advantage for one political party at odds with the political preferences of Virginia voters. That point may well be relevant when drawing districts to remedy the racial gerrymandering at issue in this lawsuit. As a result, the OneVirginia2021 Amicus Brief may be informative during a remedial phase.

In sum, the Court should not consider the OneVirginia2021 Amicus Brief at this juncture and should instead limit its review to the submissions of the parties. The Court could consider, if necessary, whether to accept OneVirginia2021's submission during a remedial phase of this lawsuit.

Dated:  May 8, 2017

Respectfully submitted,

By /s/  Aria C. Branch
   Aria Branch (VSB #1014541)
   Marc Erik Elias (admitted *pro hac vice*)
   Bruce Spiva (admitted *pro hac vice*)
   Perkins Coie LLP
   700 13th St. N.W., Suite 600
   Washington, D.C. 20005-3960
   Phone:  (202) 434-1627
   Fax:  (202) 654-9106
   Email: ABranch@perkinscoie.com
   Email: MElias@perkinscoie.com
   Email: BSpiva@perkinscoie.com

   Kevin J. Hamilton (admitted *pro hac vice*)
   Abha Khanna (admitted *pro hac vice*)
   Ryan Spear (admitted *pro hac vice*)
   William B. Stafford (admitted *pro hac vice*)
   Perkins Coie LLP
   1201 Third Avenue, Ste. 4900
   Seattle, WA 98101-3099
   Phone:  (206) 359-8000
   Fax:  (206) 359-9000
   Email: KHamilton@perkinscoie.com
   Email: AKhanna@perkinscoie.com
   Email: RSpear@perkinscoie.com
   Email: BStafford@perkinscoie.com

   *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 8th day of May, 2017, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

Respectfully submitted,

By /s/ Aria C. Branch
    Aria C. Branch (VSB #1014541)
    Perkins Coie LLP
    700 13th St. N.W., Suite 600
    Washington, D.C. 20005-3960
    Phone: (202) 434-1627
    Fax: (202) 654-9106
    Email: ABranch@perkinscoie.com

*Attorneys for Plaintiffs*