IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| Golden Bethune-Hill, *et al.*,<br><br>      Plaintiffs,<br><br>    v.<br><br>Virginia State Board of Elections, *et al.*,<br><br>      Defendants. | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**Defendant-Intervenors' Brief in Support of Their
<u>Position on the Effect of This Court's Previous Findings of Law and Fact</u>**

      The Supreme Court's opinion in this case addressed and resolved four issues. First, it agreed with this Court in rejecting the contention that the use of a BVAP goal or target amounts to racial predominance in redistricting. *See Bethune-Hill v. Va. State Bd. of Elections*, 15-680, Slip Op. at 12 (2017) ("Slip Op."). Second, it disagreed with this Court's holding that a showing of conflict between race and neutral criteria is always required, holding instead that, although "in many cases, perhaps most cases, challengers will be unable to prove an unconstitutional racial gerrymander without evidence" of an actual conflict, "there may be cases where challengers will be able to establish racial predominance in the absence of an actual conflict." *Id.* at 10–11. Third, it held that a court "should not confine its analysis to the conflicting portions of the lines" of challenged districts, and thus disagreed with this Court's focus on the portions of the Challenged Districts that are arguably

irregular. *Id.* at 11–12. Finally, it affirmed this Court's strict-scrutiny analysis and reached final judgment on HD75, confirming that the district complies with the U.S. Constitution. *Id.* at 13–16.

As described in Defendant-Intervenors' Statement of Position, ECF No. 146 at 3–5, 8, and its Response to Plaintiffs' Statement of Position, ECF No. 152, at 2–3, this framework provides clear guidance as to what issues remain resolved and what further analysis must occur.

First, because the Supreme Court rejected the assertion that Virginia's use of a 55% BVAP target amounted to predominance *per se*, the portions of this Court's prior order addressing this issue remain in force (even if some of the reasoning supporting its holding on this point may no longer be valid).

Second, the Supreme Court's ruling on the "actual conflict" test invalidates the portions of the Court's decision *requiring* an actual-conflict showing, but the Supreme Court's clear directive that often "challengers will be unable to prove an unconstitutional racial gerrymander without evidence" of a conflict, Slip Op. at 10, renders the Court's prior factual findings under that rubric both effective and relevant. Thus, the Court's statewide and district-by-district factual findings remain in force, with the exception of the Court's ultimate conclusions that race did not predominate, which must be revisited.

Third, and similarly, the Supreme Court's directive that the Court "should not confine its analysis to the conflicting portions of the lines" of challenged districts, Slip Op. at 11, invalidates the portions of this Court's decision suggesting

2

that the analysis should be *restricted to* "those aspects of the Challenged District that appear to constitute 'deviations' from neutral criteria," ECF No. 108, Memorandum Opinion ("MO") at 59, in particular, the Court's phrasing of the second step of its three-part predominance test, *see id* at 59–60. However, the Supreme Court did not hold that a Court is *prohibited* from analyzing the portions of lines constituting deviations from neutral criteria; quite the opposite, the Supreme Court stated "it may be difficult" for Plaintiffs to meet their burden without showing such deviations. Slip Op. at 10. The Supreme Court's holding merely affords Plaintiffs the opportunity to *supplement* the Court's prior findings, either with new evidence or by showing the Court portions of the record they believe it previously ignored. The Court then must take that evidence and, with the findings it already made, reweigh it to revisit its ultimate conclusions regarding predominance. As such, the Court's prior statewide and district-by-district findings are not invalidated.

Finally, the Court's findings and analysis regarding strict scrutiny were both addressed and affirmed by the Supreme Court, and they all remain in effect.

Pursuant to the Court's order of May 5, ECF No. 154, Defendant-Intervenors have attached, as Exhibit A, a copy of the Court's prior Memorandum Opinion, highlighting the legal conclusions that remain in effect in pink and the factual

3

findings that remain in effect in yellow.[1] This brief proceeds to explain Exhibit A section-by-section to clarify Defendant-Intervenors' position on each.

Introduction, MO at 1–3. The opening paragraphs of the opinion describe the nature of the case and the procedural posture, including the Court's findings "based on our assessment of the record and…our determinations respecting the credibility of the witnesses." MO at 1. This remains in effect because the Supreme Court did not address, nor is there any basis to dispute, the Court's characterization of the posture and bases for its decision. This section also states the legal standard, which is consistent with the Supreme Court's articulation of the standard. The portions of this section stating the Court's ultimate conclusions on the eleven remaining Challenged Districts, however, are no longer in effect and are not highlighted. Additionally the Court's roadmap of the opinion does not state factual findings or legal conclusions and is not highlighted.

I.   Procedural Background, MO at 3–6. This section describes the overall procedural posture for the case, and few if any of these facts have ever been in dispute, they were either relied on or were not addressed by the Supreme Court, and therefore this section remains in effect. The procedural posture will, of course,

---

[1] Some factual findings, legal analysis and dicta that are not "in effect," do remain useful to the Court and—following reassessment in light of the Supreme Court's decision and appropriate modification—may be included in this Court's opinion on remand. For instance, the Court's observations about the difficulties in redistricting under the Voting Rights Act, *see* MO at 17, are dicta that lack "effect," but they are informative and were not rejected expressly or impliedly by the Supreme Court. Similarly, the Court's discussion of its framework for identifying deviations from traditional principles, *see* MO at 74 et seq., while invalid insofar as it implies an analysis *confined* to deviations from traditional principles, nevertheless contains material informative for a "holistic" framework *including* an analysis of such deviations.

be supplemented by the additional events occurring after the Court's October 2015 decision.

II.     Basic Overview of Racial Gerrymandering Claims, MO at 6–18. This section is comprised of background legal information related to redistricting and is mostly dictum and therefore carries no legal effect. The portion of the section stating the test for a racial-gerrymandering claim, however, pertains to the Court's holdings and, because it is consistent with the standard enunciated by the Supreme Court, is binding and remains in effect. *See* MO at 11–13.

III. Factual Background, MO at 19–31. This section states the general factual background as applicable to the redistricting process in 2011. This information was not challenged in the Supreme Court, much of it was relied on in the Supreme Court, and the section remains in effect in its entirety.

IV.     Analysis, MO at 31 et seq. The Court's analysis section contains legal background, legal analysis, factual findings, and other information. Portions of this section remain in effect, portions are dicta, and portions were superseded in the Supreme Court, as described on a subsection-by-subsection basis below.

The initial paragraphs of this section provide context and background, MO at 31–33, which are dicta, and this section therefore has no legal effect.

IV.A.  The Racial Sorting Framework, MO at 33–58. Subsection A of the Analysis section is an extensive review of claims under *Shaw v. Reno*, *Miller v. Johnson*, and other Supreme Court precedents. The subsection begins with a

restatement of the two steps in a racial-sorting claim, which was confirmed by the Supreme Court and remains in effect.

After additional remarks and observations (which are dicta), the opinion proceeds to address the Plaintiffs' principal contention that a 55% BVAP target amounts to predominance *per se*. After finding that "[t]he Plaintiffs' case…revolve[s] chiefly around the evidence that legislators employed a 55% BVAP floor," the Court rejected the "proposal" that this evidence proved predominance in all 12 districts. MO at 33–35. Because the Supreme Court affirmed this holding, it remains in effect. Nevertheless, the Court's extensive reasoning in support of its holding at times conflicts with the Supreme Court's rejection of an actual-conflict test, as well as with the Supreme Court's reading of precedents such as *Miller* and *Shaw v. Hunt*, and therefore only the Court's ultimate rejection of Plaintiffs' proposed *per se* rule remains in effect.[2] Moreover, the portions of this subsection that restate the predominance standard consistent with the Supreme Court's opinion, *see* MO at 44–45, remain in effect, as does the Court's explicit holding that post hoc rationalization of race-based districting on neutral grounds does not save a district from strict scrutiny, MO at 54–56, which is consistent with the Supreme Court's holding to the same effect, Slip Op. at 9.

IV.A.1.  Predominance Analysis, MO at 58–88. The Court's discussion of the predominance analysis remains only partially in effect. The first two paragraphs of Section IV.A.1 are introductory remarks and background and thus are dicta.

---

[2] Additionally, some of the Court's discussion in this section is dictum.

The Memorandum Opinion then proceeds to outline the Court's prior three-part framework. The first prong involves an analysis of each district's "compliance with traditional, neutral districting criteria," MO at 59, which the Supreme Court endorsed as an appropriate inquiry and even dispositive in "many cases, perhaps most cases." Slip Op. at 10. This prong therefore remains valid and in effect.

The second prong involves an examination of "those aspects of the Challenged District that appear to constitute 'deviations' from neutral criteria." MO at 59–60. Although, for reasons stated above, a review of deviations continues to be a relevant inquiry, the Court's articulation of this prong is incorrect insofar as it suggests a restriction of the analysis to "those aspects…that appear to constitute 'deviations,'" given the Supreme Court's holding that "all of the lines" must be considered. Slip Op. at 12. For this reason, prong two of the Court's test is no longer in effect.

The third prong involves weighing "the totality of the evidence" to determine "whether racial considerations qualitatively subordinated all other non-racial districting criteria." MO at 60. This weighing is consistent with the Supreme Court's articulation of the standard, so long as weighing is not confined to portions of the district exhibiting irregularities, so this prong also remains in effect.

The following subdivisions, labeled "Neutrality," MO at 60–74, "Deviations," MO at 74–83, and "Weighing," MO at 83–101, articulate the three respective prongs in further detail, and Defendant-Intervenors, accordingly, believe that the subdivisions on "Neutrality" and "Weighing" remain effective, but not the

subdivision on "Deviations"[3]—with a few minor exceptions. Those exceptions are certain fact-based findings, such as the rejection in footnote 20 of Plaintiffs' expert's view that population shifts in districts that began at the ideal prove racial gerrymandering—which was not affected on appeal—and its findings as to what arguments have and have not been raised in this case—which also was not affected on appeal. *See* MO 77, 79–80.

<u>Section IV.A.2 Strict Scrutiny MO at 88–101.</u> This section discusses the strict-scrutiny test, which was affirmed by the Supreme Court and thus remains in effect.

<u>Section IV.B. Evidence of General Application To All Districts, MO at 101–107.</u> The Supreme Court reaffirmed that statewide evidence is relevant in racial-gerrymandering claims and provided no reason to revisit the Court's treatment of statewide evidence, so this subsection remains in effect.

<u>Section IV.C District-by-District Analysis, MO at 107–154.</u> For reasons described above, the vast majority of the Court's findings as to each district remain in effect. The Court's error was not in the findings it made but in the considerations it declined to entertain. Thus, the findings remain in effect, but the ultimate conclusions must be revisited in light of any additional evidence, showings, or arguments Plaintiffs provide. Additionally, to the extent the Court believes the

---

[3] However, much of this section may be included in this Court's opinion on remand even though technically it no longer is "in effect." *See supra* pp. 2-3 (detailing Supreme Court's finding that deviations remain relevant on remand) & n.1 (noting that text no longer "in effect" may still be useful to this Court). That is because the flaw identified by the Supreme Court was not any affirmative error in what this prong includes, but its confined focus and what it potentially *excludes*.

record is insufficient to uphold any districts, Defendant-Intervenors are prepared to complete the factual record with a refocused presentation covering "all of the lines" of each Challenged District.

## Conclusion

The Court should implement the schedule proposed in Defendant-Intervenors' position statement. Alternatively, if the Court agrees with Defendant-Intervenors that the record in its current state is facially inadequate to make a predominance determination under the Supreme Court's new legal test, it should enter judgment in Defendant-Intervenors' favor.

Dated: May 16, 2017

Respectfully Submitted,

/s/ Katherine L. McKnight
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker William J. Howell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2017, a copy of the foregoing was filed and served on all counsel of record pursuant to the Court's electronic filing procedures using the Court's CM/ECF system.

/s/ Katherine L. McKnight
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker William J. Howell*