IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, et al, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, et al., <br><br> Defendants, | Civil Action No. 3:14-cv-852-REP-AWA-BMK |

**<u>PLAINTIFFS' ADVISORY TO THE COURT ON PURSUIT OF RACIAL GERRYMANDERING CLAIMS</u>**

In its Order of June 2, 2017, this Court directed Plaintiffs to advise "whether, in perspective of the decision of the Supreme Court of the United States, they intend to continue to pursue their claim as to all eleven (11) of the districts that were 'entrusted to the District Court' on remand, or whether, by virtue of that decision, the Plaintiffs will pursue their claim as to fewer districts and, if so, which districts will remain in litigation." ECF No. 160 ¶ 3 (quoting Slip Opinion, ECF No. 128 ("Slip Op.") at 17). Plaintiffs hereby confirm that they will continue to pursue their claim as to all 11 districts for the reasons briefly described below.

In its Memorandum Opinion of October 22, 2015, ECF No. 108 ("Mem. Op."), a majority of this Panel concluded that Plaintiffs had not met their burden to establish racial predominance in 11 out of 12 districts. Plaintiffs appealed to the Supreme Court, arguing that the majority had erred in its predominance analysis in various respects. *See* Brief for Appellants, ECF No. 148-1; Reply Brief for Appellants, ECF No. 148-2.

The Supreme Court agreed with Plaintiffs that the majority opinion applied an incorrect legal standard on predominance. Specifically, the Court held that the majority's predominance test "is irreconcilable with *Miller* and *Shaw II*," Slip Op. at 9; that the majority's reasoning that a racial purpose must be "apparent from the face of the plan based on the irregular nature of the lines themselves" is "incorrect," *id.*; that "[t]he racial predominance inquiry concerns the actual considerations that provided the essential basis for the lines drawn, not *post hoc* justifications the legislature in theory could have used but in reality did not," *id.*; that race "may still predominate" even where a state could "deploy[]" "numerous and malleable" race-neutral factors "in various combinations and permutations" to "construct a plethora of potential maps that look consistent with traditional, race-neutral principles," *id.* at 9-10; and that the majority erred in considering the legislature's racial motive "only to the extent that the challengers identified deviations from traditional redistricting criteria that were attributable to race and not to some other factor," *id.* at 11.

The Supreme Court further observed that while "[i]n general, legislatures that engage in impermissible race-based redistricting will find it necessary to depart from traditional principles in order to do so," racial gerrymandering plaintiffs may be able to establish racial predominance "in the absence of an actual conflict by presenting direct evidence of the legislature purpose and intent or other compelling circumstantial evidence." *Id.* at 10-11.

Plaintiffs respectfully submit that, under the facts found by the Court to date, the record (both as it stands and as Plaintiffs will further develop), and the legal framework articulated by the Supreme Court, racial predominance is established in each of the 11 remaining Challenged Districts. Indeed, the majority has *already* found that at least 10 of the 11 remaining Challenged Districts, on their face, manifested significant deviations from traditional redistricting criteria.[1]

---

[1] *See, e.g.*, Mem. Op. at 108-09 (District 63's "deviations from neutral redistricting criteria begin with the splitting of Dinwiddie County" and include a 400% increase in county and city splits and an 800% increase in VTD splits); *id.* at 125-27 (redistricting doubled the number of VTD splits in District 69, which is not

2

The only district in which the Memorandum Opinion arguably included no specific findings of "conflict" was District 92. And here, as in the other Challenged Districts, the record provides ample "direct evidence of the legislative purpose and intent," including "the use of an express racial target" as well as "other compelling circumstantial evidence" such as "stark splits in the racial composition of populations moved into and out of disparate parts of the district," all of which was given "insufficient weight" or otherwise "obscure[d]" under the erroneous legal standard applied in the Memorandum Opinion. Slip Op. at 11, 12.[2]

Thus, both the law and the facts (including but not limited to the facts as found by the majority in its Memorandum Opinion) support a finding of predominance in each of the Challenged Districts.

In short, Plaintiffs appealed this Court's conclusion that race did not predominate in 11 districts, and the Supreme Court vacated this Court's conclusion that race did not predominate in 11 districts. Based on the legal standard as reaffirmed by the Supreme Court and the record evidence, Plaintiffs continue to assert that race predominated in the remaining 11 Challenged Districts, and accordingly will continue to pursue their racial gerrymandering challenge in those 11 districts.

---

contiguous by land); *id.* at 130-31 (District 70 includes a "turret" that "appears to deviate from districting norms"); *id.* at 132 (redistricting tripled the number of VTD splits in District 71, which exhibits "facially evident deviations" along District 71's eastern border); *id.* at 137 (District 74's irregular "ax-shape[]" "arouses some suspicion"); *id.* at 140-42 (District 77 is "thrust so far into HD 76 as to nearly sever it in half," is not contiguous by land, and lacks a water crossing); *id.* at 144 (District 80 "makes little rational sense as a geographical unit"); *id.* at 148-49 (examining a "pipe" on the northernmost border of District 89, in addition to other "small deviations"); *id.* at 150 (noting District 90's "two extensions into Virginia Beach and lack of land contiguity"); *id.* at 153 (observing that District 95 is the "least compact district on the map under the Reock metric," and that "[i]f there is any reasonably neutral explanation for the route followed, this Court was not informed").

[2] *See, e.g.*, Mem. Op. at 22 ("[T]he Court finds . . . that the 55% BVAP figure was used in structuring" the Challenged Districts.); Pls.' Ex. 35 at 153 (Delegate Jones' primary goal in redrawing Districts 92 and 95 was to "try to maintain the voting strength for the black voting percentage"); Pls.' Ex. 67 at 11 (boundaries of District 92 divide high-BVAP areas from lower BVAP areas to the north and southeast); Pls.' Ex. 50, tbl. 8 (BVAP of areas moved into District 92 was over 10 percentage points higher than BVAP of areas moved out).

Dated: June 12, 2017

Respectfully submitted,

By /s/ Aria C. Branch
    Aria C. Branch (VSB #1014541)
    Marc Erik Elias (admitted *pro hac vice*)
    Bruce Spiva (admitted *pro hac vice*)
    Perkins Coie LLP
    700 13th St. N.W., Suite 600
    Washington, D.C. 20005-3960
    Phone: (202) 434-1627
    Fax: (202) 654-9106
    Email: ABranch@perkinscoie.com
    Email: MElias@perkinscoie.com
    Email: BSpiva@perkinscoie.com

    Kevin J. Hamilton (admitted *pro hac vice*)
    Abha Khanna (admitted *pro hac vice*)
    Ryan Spear (admitted *pro hac vice*)
    William B. Stafford (admitted *pro hac vice*)
    Perkins Coie LLP
    1201 Third Avenue, Suite. 4900
    Seattle, WA 98101-3099
    Phone: (206) 359-8000
    Fax: (206) 359-9000
    Email: KHamilton@perkinscoie.com
    Email: AKhanna@perkinscoie.com
    Email: RSpear@perkinscoie.com
    Email: BStafford@perkinscoie.com

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 12th day of June, 2017, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

      Respectfully submitted,

By <u>/s/  Aria C. Branch</u>
   Aria C. Branch (VSB #1014541)
   Perkins Coie LLP
   700 13th St. N.W., Suite 600
   Washington, D.C. 20005-3960
   Phone:  (202) 434-1627
   Fax:  (202) 654-9106
   Email: ABranch@perkinscoie.com

*Attorneys for Plaintiffs*