IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS, *et al.*,<br><br>        Defendants,<br><br>    v.<br><br>VIRGINIA HOUSE OF DELEGATES, *et al.*,<br><br>        Intervenor-Defendants. | Civil Action No. 3:14-cv-00852-REP-GBL-BMK |

## **PLAINTIFFS' OPPOSITION TO MOTION FOR CONTINUANCE**

When the Court asked the parties to submit statements of position as to the further proceedings they believed necessary to bring this matter to resolution, Defendant-Intervenors ("Intervenors") could not have been clearer. They asked the Court to allow additional discovery and then "hold a second evidentiary hearing in October or November 2017[.]" Dkt. #146 at 2. On June 2, 2017, over Plaintiffs' objections, the Court adopted the framework Intervenors requested and set an October 2017 trial. Dkt. #160 at 4. A month later, Intervenors abruptly reverse course. They now argue that the schedule they themselves advocated is infeasible and ask the Court to delay trial until "December 2017 or January or February 2018" or some alternative date to be determined in late Fall. Defendant-Intervenors' Memorandum in Support of Their Motion to Amend the Scheduling Order ("Mot.") at 2. Respectfully, the Court should reject this request summarily.

- 1 -

- 2 -

Intervenors fall dramatically short of meeting their burden of establishing good cause for modifying the Court's scheduling order. Intervenors' cursory, four-page memorandum is premised on the fact that the parties will need to conduct discovery before the October bench trial, that both sides identified some current delegates as potential trial witnesses, and that a general election is set for November 2017. But at the time they advocated for the present case schedule, Intervenors specifically requested the opportunity to engage in discovery, Dkt. #146 at 6, specifically informed the Court of their intention to call delegate witnesses, *id.* at 5, and were fully aware of the election date. Respectfully, Intervenors should be held to the schedule they asked the Court to adopt.

For their part, Plaintiffs have consistently sought an *immediate* ruling on the merits on remand. They did not seek additional discovery or a new evidentiary proceeding, but they are able and willing to follow the case schedule the Court adopted, and object strenuously to Intervenors' untimely—and unsupported—request for additional delay.

**A.     Background**

Plaintiffs filed suit in December 2014, challenging certain Virginia house districts as unconstitutional racial gerrymanders. Dkt. #1. The parties moved expeditiously and, in July 2015, less than seven months after Plaintiffs filed suit, the Court held a bench trial. In October 2015, the Court issued an opinion in which it concluded that (a) race did not predominate in 11 of the 12 districts challenged by Plaintiffs and (b) as to District 75, race did predominate, but the State Defendants and Intervenors had met their burden on strict scrutiny. *See generally* Dkt. #108.

Plaintiffs appealed and, on March 1, 2017, the United States Supreme Court reversed the Court's holding that race did not predominate in 11 of the challenged districts. Plaintiffs filed a motion for expedited briefing two days later to seek a prompt ruling on the merits, Dkt. #125,

- 2 -

and also requested that the Supreme Court speed the issuance of the mandate to allow the Court to conduct remand proceedings promptly. The Court denied the motion for expedited briefing because the mandate had not issued. Dkt. #131. After the Supreme Court issued the mandate on March 29, 2017, Plaintiffs filed a second motion (on March 30) asking the Court to set an expedited schedule for further briefing and issue a merits decision on remand as quickly as possible. Dkt. #134.

On April 6, 2017, the Court denied Plaintiffs' motion in part, and ordered the parties to submit statements regarding the status of the case and how they proposed it proceed to resolution. Dkt. #136. The parties briefed these issues over the next month per the schedule set out in the Court's April 6 order.

Plaintiffs argued that the Court should consider the evidentiary record closed, that further discovery and trial was unnecessary, and that protracted proceedings on remand would materially prejudice Plaintiffs and residents of the challenged districts. Dkt. #148 at 6-8. In their April 17, 2017, statement of position, Intervenors argued for more discovery and a new trial to allow them the opportunity to present testimony from expert witnesses, Delegate Jones, and other delegates willing to testify on their behalf. Dkt. #146 at 5-6.

Knowing full well that they intended to call Delegate Jones and other delegates to give testimony, Intervenors represented to the Court that "the case would be ready for an additional evidentiary hearing in October or November of 2017," their evidentiary "presentation would last approximately a day to a day and a half," and the trial could be completed within "two to three days." *Id.* at 10. In a May 1, 2017, submission, Intervenors again urged the Court to "implement the schedule proposed in Defendants-Intervenors' position statement." Dkt. # 152 at 14.

- 3 -

On June 2, 2017, the Court provided for additional discovery and set a three-day trial commencing on October 11, 2017. Dkt. #160 at 4. In short, the Court "implement[ed] the schedule proposed in Defendant-Intervenors' position statement." Dkt. #152 at 14.

A month later, on June 29, 2017, during a telephonic conference, Intervenors' counsel inquired whether Plaintiffs would stipulate to moving the trial until after the November 7, 2017, general election. Counsel explained that some potential delegate witnesses are running for reelection and Intervenors sought to avoid the potential inconvenience by delaying discovery of those delegates (such as depositions) and trial until after the election.[1] After Plaintiffs informed Intervenors that they could not agree to this request, Intervenors filed this motion.

**B.     Argument**

   **1.     Intervenors Must Demonstrate Good Cause for Altering the Scheduling Order, Which Adopted a Trial Date They Requested**

As Intervenors acknowledge, a scheduling order can be modified only upon a showing of "good cause" by the moving party. Mot. at 2 (citing Fed. R. Civ. P. 16(b)(4)). In considering a party's request to change the trial date, it is well-established that trial courts have a "right to control their own dockets to require that cases proceed in an orderly and timely fashion." *Thacker v. Slayton*, 375 F. Supp. 1332, 1336 (E.D. Va. 1974) (citing *United States v. Inman*, 483 F.2d 738, 740 (4th Cir. 1973)). While the management of its docket is committed to the Court's discretion, "the burdensome task of assembling a trial counsels against continuances." *United States v. LaRouche*, 896 F.2d 815, 823 (4th Cir. 1990).

---

[1] Intervenors' counsel did not identify any specific legislators by name nor did they propose a specific trial date during the conference, but suggested that the earliest trial could be held was December 2017 or early 2018.

- 4 -

### 2. Intervenors' Cursory and Conclusory Motion Does Not Meet Their Burden of Establishing Good Cause

Having recognized their burden of establishing good cause, Intervenors nonetheless stand before the Court utterly bereft of support for their motion. Rather, Intervenors simply state that (1) the parties have identified a number of potential trial witnesses; (2) there is a general election in November 2017 and 16 potential delegate witnesses are running for reelection; and (3) in Intervenors' view, there is a lot of discovery that may need doing and their witnesses might find an October trial inconvenient. Mot. at 3. This is patently insufficient.

At the outset, it is worth noting that the Court held an initial trial in this matter less than seven months after Plaintiffs filed suit. There is simply no reason why a *second* trial cannot be held within *eight* months after remand.

In any event, Intervenors fail to identify even a single witness who is unavailable, much less provide the Court with *evidence* (such as an affidavit or declaration) to demonstrate the particularized harms he or she may suffer in the absence of a continuance. Intervenors do not represent that any potential witness is actually *unavailable* to provide trial testimony or sit for a deposition at any point in the months leading up to trial. Intervenors do not describe the anticipated subject of each witness's testimony, let alone explain why it is critical to a fair resolution of this matter. The Court should deny the motion for this reason alone.

Further, Intervenors greatly overstate the potential impact of the 2017 election. Intervenors fail to mention that many of their potential witnesses are running *unopposed* or are not running for reelection at all. By Plaintiffs' count, of the 16 current delegates identified as potential witnesses, six are running unopposed (including Delegate Jones) and one (Delegate Massie) is not running for reelection. Thus, it would appear that the 2017 general election will, at most, affect only *nine* potential witnesses.

- 5 -

Regardless, the mere fact that some delegates are involved in a contested election—a fact well known to Intervenors when they asked for an October/November trial date—hardly establishes good cause. Courts routinely hold that the mere fact that a trial date is inconvenient to a witness's schedule is insufficient to warrant a continuance.[2] Intervenors do not argue or establish that any witness is actually *unavailable* for trial. A party should not be permitted to secure a continuance by claiming, as Intervenors do here in the most general of terms, that one or more witnesses are generally busy for a *four month period of time*. Intervenors have not shown that giving testimony in this matter would pose an "undue hardship" to any delegate witness. Mot. at 3. *Most* witnesses who appear before the Court have jobs, lead busy lives, and may find litigation inconvenient. Plaintiffs also submit that excessive deference to current delegates' electoral calendars is particularly inappropriate given that this lawsuit contends that those legislators are currently the beneficiaries of an unconstitutional racial gerrymander.

Further, even assuming a given witness were unavailable under the current schedule, Intervenors have not shown that they would suffer prejudice as a result. Intervenors have made no showing that these witnesses are critical or are the sole repository of key, nonduplicative testimony. Indeed, Intervenors could not credibly claim so. The Court already held a trial, the parties already identified the key witnesses, and with the exception of Delegate Jones, Intervenors did not to call *any* of the other delegate witnesses on their list. Surely, they would

---

[2] *See, e.g.*, *Pincharming, Inc. v. Dalow Indus., Inc.*, No. AW-98-3901, 2004 WL 5718032, at *1 (D. Md. Dec. 17, 2004) (denying motion for continuance where a party's owner and president were traveling to Italy "immediately before the scheduled trial date" because they would be returning to the United States "a full two days prior to the scheduled trial date"); *Martin, By & Through Mulich v. Intex Recreational Corp.*, No. CIV.A. 91-2200-JWL, 1994 WL 679971, at *1 (D. Kan. Nov. 16, 1994) (denying trial continuance requested because of "the inconvenience of the time of year for certain of the defendant's employees who are expected to be witnesses and the apparent unavailability of its expert witness to appear live at trial" given "the adverse impact of rescheduling a two week trial on other parties whose cases would be affected by doing so, let alone the inconvenience to the plaintiff in delaying the resolution of this case").

have done so if they thought those witnesses' testimony critical to the case and the redistricting process. Delegate Jones was the chief architect of the plan and he already testified at great length about his decisionmaking process in constructing the districts in question. It would certainly raise eyebrows, to say the least, if a cavalcade of other delegates stepped forward to testify to a new litany of facts Delegate Jones supposedly considered in drawing those districts but neglected to mention in his prior testimony. It is thus hard to imagine why the testimony of myriad other current and former delegates would even be a relevant and non-cumulative part of Intervenors' defense, let alone so critical that the case schedule should be altered to allow it.

Finally, to the extent that any of Intervenors' potential trial witnesses have legitimate scheduling concerns, those concerns can be easily redressed through less extreme measures. Plaintiffs will work cooperatively with Intervenors to accommodate witness schedules to the maximum degree possible when setting depositions and scheduling trial testimony. Likewise, assuming a witness had an unnavigable conflict during the entirety of the days set aside for trial, Intervenors could simply submit their testimony by deposition (which would be advisable in any event if Intervenors intend to call 20 witnesses during the course of a three-day trial).

Simply put, navigating scheduling concerns is an ordinary part of litigation. The fact the parties may need to do so here does not establish good cause to alter the case schedule.

**3. The Fact That the Parties Have Indicated Their Intent to Call Witnesses at the Trial Intervenors Requested and Engage in the Discovery Intervenors Requested Is Not a Changed Circumstance Establishing Good Cause**

Intervenors fare no better in arguing that good cause is established by circumstances that have supposedly changed since they advocated for a October/November trial date. Mot. at 1. Intervenors claim that a continuance is warranted because *they* chose to identify 20 fact witnesses and 3 expert witnesses, and because Plaintiffs submitted a witness list (Dkt. #163) identifying potential trial witnesses. *Id.* This argument fails at the threshold.

- 8 -

Intervenors provide no authority finding "good cause" established in similar circumstances. The fact that Plaintiffs will engage in discovery and present evidence at trial is not a changed circumstance, let alone one that warrants a continuance. To be sure, Plaintiffs did not ask to present further evidence, but they lost that argument to Intervenors. Intervenors cannot credibly claim surprise that Plaintiffs intend to present such evidence now, rather than sit by passively while only Intervenors engage in discovery and present evidence at trial.

Nor is there anything unusual about the witness lists the parties submitted that warrants delaying the trial for months. Plaintiffs' list (in main) simply lists the persons who currently or formerly represented the challenged districts. Given the unexpected, last-minute unavailability of Dr. Ansolabehere, Plaintiffs also identified three potential expert witnesses who may serve in his stead. Given that their witness list was due two weeks after the Court issued its scheduling order, Plaintiffs could not feasibly prepare a *final* pretrial witness list, and so identified all witnesses that they "may" call at trial, specifically noting they "will work with opposing counsel to pare down the list of potential witnesses in order to allow for an efficient discovery process and trial." Dkt. #163 at 1-2. After all, the Court has allocated three days for trial and Plaintiffs recognize the necessity of tailoring their evidentiary presentation accordingly.

Intervenors' counsel, by contrast, informed Plaintiffs' counsel that notwithstanding the three days set aside for trial, Intervenors intended to call as many delegate witnesses as possible. Intervenors cannot bootstrap their way to "good cause" by calling more witnesses to testify than they can feasibly put on during the three-day trial they requested—particularly where they deemed it unnecessary to present these witnesses' testimony during the first trial.

As for Intervenors' concerns regarding depositions of potential trial witnesses, Plaintiffs are represented by a number of attorneys—as are Intervenors—and they stand at the ready to conduct whatever appropriate discovery the Court permits and the parties deem necessary.

### 4. Plaintiffs, and Hundreds of Thousands of Other Virginians, Will Be Prejudiced By Further Delay

Finally, contrary to Intervenors' assertions (Mot. at 4), Plaintiffs will unquestionably be prejudiced if the requested continuance is granted.

First, Intervenors' motion is untimely. If Intervenors had a problem with an October trial date, they should not have proposed it in the first instance. At the very least, they should have raised the issue immediately after the Court issued its June 2 scheduling order. Plaintiffs have already expended significant time and resources in reliance on the scheduled October trial date. Per the Court's instruction, Plaintiffs immediately set to work interviewing potential witnesses. This includes the devotion of substantial efforts to identify and retain alternative experts in light of Dr. Ansolabehere's unavailability for an October trial and to have those experts commence their analysis on an expedited basis given the limited time available for discovery. Likewise, Plaintiffs' counsel have already altered and cleared their schedules for the October trial and pretrial preparations and scheduled commitments in other cases accordingly. For example, Plaintiffs' lead trial counsel, Kevin Hamilton, has a multi-week jury trial set to commence in the U.S. District Court for the Western District of Washington on November 6, 2017.

Further, the fact that the 2017 elections are approaching quickly does not abate the urgency of resolving this case promptly. If the Court rules in Plaintiffs' favor, it would be appropriate in to order immediate relief to afford an effective remedy. *See Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 560-61 (E.D. Va. 2016) (plaintiffs and "every voter in the [unconstitutional districts]" have an "interest in having . . . representatives elected in accordance

- 9 -

with the Constitution."). Regardless, there is no time to dawdle in advance of the 2019 elections. The Court will not issue its merits opinion immediately after trial—the Court issued its original opinion roughly three months after the first trial. The remedial process can be time-consuming and cumbersome. In the *Personhuballah* case, which involved one congressional district, the Court adopted a remedial districting plan about six months after issuing its merits opinion. It is critical that the remedial process be completed in ample time before the next election.

And based on their approach to date, there is every reason to believe that Intervenors will seek to draw out this Court's proceedings as long as possible. If the Court finds in Plaintiffs' favor as to the 11 remaining challenged districts, it is almost a surety that Intervenors will appeal that merits determination and seek to stay the implementation of a remedial plan pending appeal. And one need not consult the auguries to foresee that Intervenors' present protestations that ample time remains in advance of the 2019 election will, if the Court finds for Plaintiffs, give way to strenuous objections that it is too late to adopt a remedial plan before that election.

Simply put, every week matters in the face of what Plaintiffs assert to be an ongoing violation of the constitutional rights of hundreds of thousands of Virginians. It is quite possible that a delay by even a few months will endanger the likelihood of Plaintiffs obtaining meaningful relief for the 2019 election. And given that 2019 is the last regularly scheduled election under the current plan, there is a very real risk that justice delayed will be justice denied.

## CONCLUSION

The Court adopted the case schedule Intervenors requested. It should hold them to what they requested. For these reasons, and those set out above, Plaintiffs respectfully ask the Court to deny Intervenors' motion. Plaintiffs further request that the Court rule on the present motion at the earliest possible time, as various deadlines contingent on the existing trial date (such as the July 11 deadline for submitting a discovery plan) are fast approaching.

DATED: July 6, 2017

By: */s/ Aria C. Branch*

Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Aria Branch (VSB # 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July, 2017, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

By */s/ Aria C. Branch*
Aria C. Branch (VSB #83682)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
ABranch@perkinscoie.com

*Attorneys for Plaintiffs*