```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE EASTERN DISTRICT OF VIRGINIA

3                     RICHMOND DIVISION

4

5    ---------------------------------------
                                           :
6    GOLDEN BETHUNE-HILL, et al.,          :
                                           :   Civil Action No.
7    vs.                                   :   3:14CV852
                                           :
8    VIRGINIA STATE BOARD OF ELECTIONS,    :   July 12, 2017
     et al.                                :
9    ---------------------------------------

10

11

12          COMPLETE TRANSCRIPT OF THE CONFERENCE CALL

13        HEARD BEFORE:   THE HONORABLE ROBERT E. PAYNE
                          THE HONORABLE ARENDA L. WRIGHT ALLEN
                          THE HONORABLE BARBARA M. KEENAN

14

15

     APPEARANCES:
16
     Kevin J. Hamilton, Esquire
17   Perkins Coie, LLP
     1201 Third Avenue
18   Suite 4800
     Seattle, Washington  98010
19   Counsel for the plaintiffs

20   Stuart A. Raphael, Esquire
     Office of the Attorney General
21   202 North 9th Street
     Richmond, Virginia  23219
22   Counsel for the defendants

23

24              Peppy Peterson, RPR
                Official Court Reporter
25           United States District Court
```

```
1    APPEARANCES:  (cont'g)

2    E. Mark Braden, Esquire
     Katherine L. McKnight, Esquire
3    Baker & Hostetler, LLP
     1050 Connecticut Avenue, NW
4    Suite 1100
     Washington, D.C.  20036
5    Counsel for intervenor defendants

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2

3          JUDGE PAYNE:  Hello.  Starting with counsel for the

4    plaintiff, please identify yourselves and who you represent,

5    and when you speak, give your name.  The judges don't have to

6    do that because the court reporter knows who they are.

7          MR. HAMILTON:  Good morning, Your Honor.  Kevin

8    Hamilton from the law firm Perkins Coie on behalf of the

9    plaintiffs.

10          MR. RAPHAEL:  Good morning.  Stuart Raphael from the

11    Office of Attorney General of Virginia for the defendants.

12          MS. McKNIGHT:  Good morning, Your Honor.  This is

13    Kate McKnight from BakerHostetler, counsel for defendant

14    intervenors and along with me...

15          MR. BRADEN:  Mark Braden who is also counsel for the

16    defendant intervenors.

17          JUDGE PAYNE:  All right.  We have a motion for

18    amendment of the scheduling order that you all have tendered

19    and a response to it.  There is no reply, and I think we

20    would -- the Court would like to hear from you on the

21    continuance motion which is what the motion to amend is.

22          In that regard, I think it's safe to say that the --

23    we don't really need to hear much about the problems created

24    for the people who are running for reelection, that the real

25    issue is a case management question and why we're having so

1    much in the way of evidence and how we can get that down and

2    still keep a trial date or why we need to move it.  I think

3    that would be the most helpful to us, and then when we have

4    questions, we'll intercede and ask questions.

5         We have your joint discovery plan which was filed

6    last night, but, frankly, it was filed after I left, and I

7    haven't really studied it much.  I'll try to take a look at it.

8    I don't know if the other judges have even had a chance to look

9    at it either, but I appreciate --

10        JUDGE KEENAN:  I looked at it this morning.

11        JUDGE PAYNE:  Okay.  You all want to proceed?  Who is

12    going to argue, Ms. McKnight, Mr. Braden, who?

13        MR. BRADEN:  Mark Braden for the defendant

14    intervenors.  Your Honors, the reason why we are proposing

15    changing the date for the trial, I won't go into, since the

16    Court has asked me not, to the notion of inconvenience.  I

17    would suggest it's more than inconvenience.  It would result in

18    many people not appearing, witnesses who would otherwise appear

19    as witnesses because of the political situation.

20        JUDGE PAYNE:  Whoa, whoa, whoa.  Excuse me one

21    minute.  You have the subpoena power, and they can appear, or

22    they can appear by deposition.  That contention is something

23    that really isn't pushed in your papers, that is that they

24    can't appear.  It's pushed in your papers as inconvenience.

25    Why would it not be possible for you to use the subpoena power

1    and have those people come to a deposition which would be very

2    short and to attend a trial which would be very short?

3         They could be put on, and we could schedule around

4    their -- around the other witnesses so that they wouldn't have

5    to be there very long.  I actually don't understand why you are

6    saying they wouldn't testify.

7         MR. BRADEN:  Your Honor, they are in a position to

8    assert legislative privilege.  I do not believe -- my

9    understanding of Virginia law and the scope of legislative

10   privilege, that we could not ask them specific questions about

11   why they supported a piece of legislation which would, in fact,

12   be the plan.

13        JUDGE PAYNE:  Wait a minute, Mr. Braden.  That

14   doesn't have anything to do -- if they can't testify about that

15   at all, then why -- that's not -- they wouldn't testify about

16   it if they came, they wouldn't -- you wouldn't be deprived of

17   that testimony because they couldn't come.

18        MR. BRADEN:  Your Honor, they can certainly waive

19   legislative privilege, and, to be candid, we shouldn't pretend

20   this doesn't involve politics.  Ten of the 12 who are presently

21   running for reelection are in hotly contested elections.  Not

22   surprisingly, when we reached out to them now, we have found

23   out, do I want to subject myself to a deposition and testimony

24   and cross-examination in the midst of my campaign for

25   reelection?  The answer to that has been generally no, they are

1    not anxious to do that.

2         JUDGE PAYNE:  But the legislative privilege you are

3    talking about does not protect them from giving testimony in

4    this case if they are subpoenaed, does it?

5         MR. BRADEN:  Well, it certainly would prohibit us

6    from asking them the questions about why they voted for the

7    plan and their reasoning behind voting for the plan.

8         JUDGE PAYNE:  But, Mr. Braden, that would be the case

9    whether they were running for reelection or not, would it not?

10        MR. BRADEN:  No, I do not believe.  Postelection, all

11   these individuals postelection, I believe almost without

12   exception with the ones we've spoken to so far, are willing to

13   waive their privilege which is a personal privilege.  So it's

14   their decision as to whether to testify or not.  Prior to the

15   election they are not anxious, not surprisingly, to testify,

16   reluctant to testify, especially when they'll be cross-examined

17   by someone representing the opposing party.

18        So there's a great deal of reluctance prior to the

19   election to come and testify.  Frankly, this Court will get

20   more testimony from these individuals who are the individuals

21   in the best position to describe the particular lines of their

22   district of anyone, period, anyone.  And they will come, most

23   of them I believe, come and testify about that postelection.

24   We're going to have great difficulty getting these people who

25   have the most relevant evidence for this Court about the

1    particular lines of their particular district adjoining the

2    contested district if the trial is moved to as we indicated.

3            Our mistake in our proposal to the Court was using

4    the term October.  We should have said November/December.

5            JUDGE KEENAN:  Mr. Braden, excuse me.  This is Judge

6    Keenan.  I have a question.  When you say that these

7    legislators and candidates and continuing candidates for

8    reelection would not be willing to testify, are you saying that

9    this is a matter of time constraints, or are you saying that

10   they are unwilling to discuss the substance of their

11   decision-making process?

12           MR. BRADEN:  Your Honor, I believe it's actually a

13   combination of both.  We've reached out to the individuals.

14   This is, obviously, a significant difficulty for a person who

15   is, of course, has another job in addition to being members of

16   the legislature.  These are all part-time jobs.

17           In the very midst of the heart of the campaign to

18   pull out this time is a grave inconvenience, but I don't want

19   to indicate that that's the driving factor.  It would be less

20   than candid to say that the reluctance is the notion of the

21   politics of appearing in this timeframe in this.  There will be

22   great reluctance.

23           I'm hoping some will agree -- if the Court doesn't

24   move the date, that some of them will agree, but this Court

25   will have fewer people testifying in this case who have the

1    best information about the lines if the trial goes forward in

2    the present time frame.

3              JUDGE PAYNE:  What do you mean testimony about the

4    lines?  What does that mean?

5              MR. BRADEN:  Well, the Supreme Court has directed

6    that this Court should not -- should not confine its analysis

7    to conflicting portions of the line and it should do a -- they

8    say this a couple time, a holistic analysis, in other words

9    looking at every part of the district and all the surrounding

10   districts.

11             While we would have members to do it, and we've

12   talked specifically to individual members, you sit with the

13   member, you say, you have a district that has an adjoining line

14   with one of the contested districts, why is this line here, and

15   the member can say, well, it's there because there's a river

16   there, it's there because it's a county line, it's there

17   because my father owns a restaurant in that precinct.  That's

18   the type of testimony.

19             We're looking at very specific testimony about lines

20   in greater detail than we gave and presented to the Court in

21   the first hearing because --

22             JUDGE KEENAN:  Mr. Braden, excuse me.  Judge Keenan

23   again.  What would be the reluctance to testify as to the

24   substance of such fairly innocuous factual matters?  It seems

25   to me what you are saying is that the issue of privilege is

1    going to be used to hold the Court hostage regarding the trial

2    date.  It just doesn't have a good ring to it.

3          MR. BRADEN:  I understand, and this is a little

4    different than the normal case, but we shouldn't pretend that

5    this isn't the elephant in the room.  This is politics.  This

6    case is political, and there's no way to avoid that.

7          The starting point, really, in some of the

8    conversations, oh, does this mean I'm going to be

9    cross-examined under oath by lawyers who represent the

10    Democratic party, and the answer to that is, yes, you are, and

11    can you limit what they ask you.  I said, I can maybe limit

12    some of what they ask you, but there's going to be -- you know,

13    we're talking about a deposition, and the rules in depositions

14    provide for substantial, you know, question-answering.  So

15    their concerns are of people who are in the midst of hot

16    campaigns, and these are hot campaigns for most of these

17    people, are concerns.

18          So they have an option available to them of deciding

19    not to do this.  Would I prefer that everyone would say, well,

20    I don't care, I'll just do this?  Yeah, of course I would like

21    that, but the reality is if we go forward with the October

22    trial date, the Court will have fewer witnesses who have

23    knowledge about this than they would get with a November trial

24    date or a September trial date.

25          JUDGE ALLEN:  Mr. Braden, this is Judge Allen.  What

1    specific concerns do they have?  What are they fearing if they

2    do testify for us in the October trial date?  I'm missing it.

3    They're going to testify truthfully and honestly, so why would

4    they be concerned about that?  What examples have you been

5    given to show you that they have valid concerns?

6             MR. BRADEN:  I haven't been given any example, in

7    other words, in the sense, but I have the notion that a

8    candidate --

9             JUDGE ALLEN:  I'm cutting you off, but what I hear

10   you saying is that they're fearful of being cross-examined;

11   correct?

12            MR. BRADEN:  They're fearful of being deposed by

13   someone representing the opposite party in the middle of a

14   political campaign, and I would think that it doesn't -- it

15   isn't necessarily -- it's what are you fearful of,

16   when-did-you-stop-beating-your-wife question type situation.

17            Certainly there are concerns about that.  Are some of

18   them going to do it anyway?  I hope so and I believe so, but

19   we're certainly going to limit the availability of this

20   testimony, and the testimony -- looking at the Supreme Court's

21   opinion, this Court is being directed to get more testimony

22   than was in the past, substantially more.

23            We're talking about not just looking at where there's

24   questions about what the lines look like in the sense that they

25   might conflict in sort of -- we jokingly call it an interocular

1    test, what they look like, but we're asked to look at all the

2    lines.  The only way to get information about all the lines

3    from the best source is to talk to the people who represent

4    those districts.  They know that their father has a restaurant

5    in a particular precinct and that's the reason why that

6    precinct is in the district.

7            Now, you are right.  If that's the only testimony

8    that was elicited and there was no cross-examination, there

9    wouldn't be any reason, but it's really -- I have no difficulty

10   understanding why a political candidate doesn't want to be

11   cross-examined under oath during the middle of their campaign.

12           Leaving aside it takes them out of campaigning, it's

13   two or three days, probably minimum, out of their campaign in a

14   situation that exposes them to a bunch of questions.  I can't

15   really even predict what they would be, frankly, to them.  When

16   they ask me what am I going to be talking about, we're going to

17   be talking about the lines.  Could they ask me these other

18   questions, and the answer I have to give them is they might.

19           JUDGE PAYNE:  Mr. Braden, may I ask you this

20   question?

21           MR. BRADEN:  Yes, Your Honor.

22           JUDGE PAYNE:  Is it your understanding that the

23   question of legislative privilege is one that the person can

24   invoke and this Court has no power to overrule the claim?

25           MR. BRADEN:  The legislative privilege is a right,

1    absolute right of the member.  Could this Court overrule it?  I

2    think you are a federal court, and federal courts can direct

3    them to testify, but I think we've recognized and the federal

4    courts have recognized the right of legislative privilege, and

5    I have never seen -- I don't believe there are circumstances

6    where the Court has the authority to order a member of the

7    legislature to testify as to why they voted for a bill.

8              JUDGE KEENAN:  Excuse me, Mr. Braden.  Judge Keenan

9    again.  Your pleading you just filed with us, your memorandum

10   in support of the motion says at the bottom of page three that

11   this Court already held a claim of privilege is qualified and

12   unlikely to provide full protection.

13             So your position right now seems to be directly

14   contrary where you are suggesting that it is solely the

15   prerogative of the legislator whether to claim privilege, and

16   on page three of your motion, you say it's qualified and

17   unlikely to provide full protection.  So which is it?

18             MR. BRADEN:  Well, it is qualified, and it is

19   unlikely to provide full protection, but part of it is -- the

20   one that it does protect you from, and I don't think this is

21   dutiful or I don't believe the legislation, that when someone

22   asks a specific question of a member why they voted for

23   something on the floor, that's the heart of the privilege.  It

24   has no meaning if they cannot refuse to answer that question.

25   Then we've basically removed it.  Certainly it's qualified.

1    Certainly there are -- we recognize that there are certain

2    activities in the legislature, and we recognize there are

3    limitations on the privilege, there are limitations on the

4    context of illegal activity.

5         JUDGE KEENAN:  You are saying, Mr. Braden then --

6    Judge Keenan again.  So you are saying that they are reluctant

7    or will not answer why they voted for something if they're

8    asked that question before the election; is that what the

9    argument is distilled to here?

10        MR. BRADEN:  I think that distills it too far.  I

11   think actually, in fact, they would be willing to answer that

12   question for sure if we could limit it to that, but, of course,

13   we won't be able to limit it to that, because the plaintiff is

14   going to want to depose them and ask them a whole variety of

15   questions of which I cannot, at this point, tell them what the

16   limitations on that will be, and so --

17        JUDGE PAYNE:  Mr. Braden, that be can remedied, can

18   it not, by either one of the judges or a magistrate judge

19   presiding over the deposition or positing the depositions by

20   written question or actually just an order saying tell us --

21   give us your cross-examination, opposite side, and we'll rule

22   ahead of time whether you can go into it or not by way of a

23   protective order?  That kind of stuff is done all the time in

24   all kinds of litigation.  I don't see that it wouldn't be

25   available here.  Am I wrong about that?

1          MR. BRADEN:  I think those proposals might go a very

2     long way to allay the fears of these members, and I would think

3     that that type of approach might well work, at least with some

4     of the members.  Yes, I do think that approach would relieve a

5     part of the problem.

6          Let me also point out, though, we do believe there's

7     still another -- and I know this doesn't make me popular, but

8     I'll just lay it out.  The lists from the plaintiffs combined

9     with the list from the defendants are 42 witnesses.  There are

10    19 witnesses --

11         JUDGE PAYNE:  Excuse me just a minute, Mr. Braden.

12    Since we did get into the election question, does either Judge

13    Keenan or Judge Allen, do you have questions about that at this

14    juncture?

15         JUDGE KEENAN:  No, thank you.

16         JUDGE ALLEN:  No, Judge Payne.

17         JUDGE PAYNE:  Let's let Mr. Hamilton or whoever is

18    going to argue for the other side on the election topic now

19    that we have gone into it as extensively as we have.  Then

20    we'll deal with the volume-of-witnesses situation.  Mr.

21    Hamilton, are you talking?

22         MR. HAMILTON:  Not yet, but I will be representing

23    the plaintiffs, yes, Your Honor.

24         JUDGE PAYNE:  I mean are you the one who is going to

25    make the argument on behalf of the plaintiffs?  If so, please

1    go ahead.  What do you say about the election question; that

2    is, the apprehension of testifying pending the election?

3              MR. HAMILTON:  Well, I'd say a couple of things.

4    First, I find it interesting the various representations that

5    Mr. Braden has made before the Court, but there is no record

6    before the Court.  We're here just a few months before trial,

7    and there's a motion to move the trial date, and the burden is

8    on the moving party to establish good cause.

9              Establishing good cause does not usually mean

10   eloquence of counsel.  Usually it means providing the Court

11   with a record upon which to evaluate the claim, and many of the

12   questions that are being asked this morning are the very

13   questions that would be answered by that record that, frankly,

14   is absent before the Court this morning.  There's no

15   declaration.  We haven't even identified any, not even one

16   specific witness, one specific delegate who has the fears or

17   who articulates the fears or he's willing to sign a declaration

18   before this Court identifying what it is that they're concerned

19   about or why it is this is inconvenient.

20             The idea that a raft of witnesses is going to say --

21   well, for a whole four-month period we're just -- we have

22   better things to do than appear before this Court or appear in

23   preparation and then for a brief period of time testifying in

24   court, you know, frankly, is dramatically inconsistent with the

25   notion of establishing good cause.  That's the first point I

1    would make.

2           Second, this is inconsistent with the representation

3    and the request made of this Court just one month ago by these

4    very intervenors.  The Court, of course, will recall it was

5    plaintiff's position that the record ought be considered

6    closed, that the Court's, the Supreme Court's standards be

7    applied, the parties be afforded an opportunity to brief those

8    standards as applied to the record already before the Court and

9    then the Court rule.

10          The Court rejected that position and held, no, the

11   parties should have the opportunity to conduct discovery and

12   present a new evidentiary hearing.  We've relied on that, we've

13   moved forward with that and are prepared to present whatever

14   additional testimony becomes necessary during the three-judge

15   trial in October.  So that's point two.

16          Point three I would make, and I think most

17   fundamentally, the map-drawer in this case, and I think this is

18   entirely undisputed, was Delegate Jones.  I mean, he drew this

19   map.  He was the sole map-drawer.  Yes, he had input from some

20   of the other delegates, but he was the guy who took the pen and

21   drew the map, and he could not have been clearer during the

22   trial.  That is record testimony that's before you.

23          He talked at great length, with the guidance of Mr.

24   Braden at trial, about all the lines of the district, and this

25   Court relied on that in its quite extensive and thorough

1   opinion discussing the evidence.

2          I find it remarkable that counsel would now stand up

3   and say there's this whole universe of other people that are

4   best positioned to provide the Court with the most detailed

5   information about specific lines when, A, they didn't draw the

6   map, we know that, and they somehow, you know, were not

7   important enough to be deposed or even called in the first --

8   put that the other way, be called or even deposed in the last

9   go-round.  Now suddenly they're so important the whole trial

10  has to move.

11         So I don't think that this is good cause.  I don't

12  think that the intervenors have carried their burden, and I

13  don't think that these unnamed delegates who have yet to appear

14  before this Court and say anything about legislative privilege,

15  say anything about their reluctance to testify much less the

16  inconvenience, you know, in this period of time, establishes

17  good cause, and all of this is directly inconsistent with what

18  the intervenors asked this Court and what the Court actually

19  gave them.  I think it's remarkable to have parties come in

20  just four weeks later and say, in effect, never mind.

21         JUDGE PAYNE:  All right, thank you, sir.  Mr.

22  Raphael, do you have anything?

23         MR. RAPHAEL:  No, Your Honor.  We take no position on

24  this motion.

25         JUDGE PAYNE:  Do either Judge Allen or Judge Keenan

1   have any questions of Mr. Hamilton?

2              JUDGE ALLEN:  No, thank you.  This is Judge Allen.

3              JUDGE KEENAN:  No, thanks.

4              JUDGE PAYNE:  Mr. Braden, do you have anything else

5   on the election issue?  Then we'll move to the

6   volume-of-witnesses question.

7              MR. BRADEN:  Sure.  I will represent to the Court

8   that we do have a list of witnesses that we've provided to the

9   Court and to the opposing parties, ten of whom are involved in

10  active campaigns.  We can, if the Court desires, provide a list

11  of who we've spoken to, and we will represent to the Court

12  without exception everyone that we've talked to is opposed, has

13  represented to us significant concerns about this.  If the

14  Court wants some written representation to that effect, we

15  will, of course, do that.

16             JUDGE PAYNE:  The next question is the case

17  management question of 40-something witnesses.  This will

18  involve the plaintiff, too, because the plaintiff came to us

19  with the records closed, argument, and now has approximately 20

20  witnesses of its own, and the defendants, intervenor defendants

21  have 21 or 22 witnesses when, in fact, we started the trial or

22  had the trial originally with a small number of witnesses.

23             So your paper says, Mr. Braden, that you have to take

24  four depositions a day between now and whenever discovery

25  cutoff is in order to meet the trial date and that you would

1    need five days to try the case.  I guess my reaction is other

2    than your assertions, I don't know -- I don't understand why it

3    would take all that time.

4            The depositions, if all you're going to do is ask the

5    witness why the line is where it is and why did you vote for

6    the bill and that's the issue that you are raising and that's

7    the issue the other side can cross-examine about, it would take

8    more than a couple hours max to take somebody's deposition, and

9    that would not make it difficult for firms of the size that are

10   involved in this case to take the depositions that need to be

11   taken well before -- if you start now, you're even before the

12   electoral season -- so you don't have to worry about that, and

13   you can move your depositions all up and get them going and get

14   that accomplished.

15           Then the next question is how long would the

16   testimony of these witnesses be at a trial so that we can have

17   some idea of what the length of the trial ought to be.  With

18   those questions, I'll start it off and pass it to you, Mr.

19   Braden, on a case management component of your motion.

20           MR. BRADEN:  Yes, Your Honor, you are absolutely

21   correct.  If we can limit the scope of the depositions to that

22   framework, then I would agree that we could certainly do two a

23   day, or even more potentially, and if we could limit the

24   deposition of the fact witnesses in that, cabin it in that way,

25   and we will -- no matter what the Court decides, we will go

1    forward and put the resources necessary to do this.

2            There are three new expert witnesses from the other

3    side.  Their testimony, I expect, will be -- you know, the

4    depositions of them would probably each go at least a day.  I

5    would think these witnesses could be done relatively quickly on

6    direct.

7            I do not know what the plaintiffs have in mind, but

8    basically what we intend to ask them are, you have this line

9    which abuts this district which is challenged, you know, what

10   was the reason for that line, was race a predominant factor in

11   drawing that line to your knowledge, what do you know about

12   that line, and that would be pretty much it, because Mr.

13   Hamilton is exactly correct that this plan was drawn

14   principally by Delegate Jones, but Delegate Jones can't testify

15   now at this period of six years later, and I'm not even sure he

16   could have done it at the time, is the very specifics -- there

17   are 100 districts in the state.

18           There are many districts, as we know now, that touch

19   these districts.  It's unreasonable to expect he would know

20   about every precinct that flops this way versus that on a

21   particular line.  The delegates who represent those districts,

22   who live in those districts, who live in the precincts and

23   might have gone in and out and whose voters, they can't.  They

24   remember.  They remember why some line is drawn some way.

25           Jones, it's unrealistic to expect him to remember

1    every line everywhere, and the reason why we need these

2    additional factors, we thought the evidentiary presentation was

3    sufficient.  Apparently the Supreme Court did not think it was

4    sufficient, because they repeatedly said you need a holistic

5    analysis.

6            Well, it seems to us a holistic analysis is people

7    talking about the various lines of these districts, and the

8    people best positioned to do this are the people who live in

9    those districts and represent them.  So, absolutely, we can run

10   them in and out very quick on direct, and I think we could --

11   certainly if the Court would help us in limiting the scope of

12   the depositions of these witnesses, we could absolutely get the

13   depositions needed to be done on these witnesses.

14           JUDGE PAYNE:  All right.  But is it your view that

15   you have to have all the witnesses that were listed, or have

16   you all, for example, discussed paring down the witness list on

17   each side or stipulating to various issues, or is that really

18   just beyond the pale at this juncture?

19           MR. BRADEN:  We have not discussed this.  If the

20   trial doesn't get moved, we're going to get pared down, because

21   a lot of these people aren't going to agree to be witnesses.

22           JUDGE PAYNE:  Wait just a minute.  You have the

23   subpoena power of this court, and you can compel them to be

24   here, and if you think it's important enough for them to be

25   here, they'll have to testify.  That's just the way it is.

1    When you are in this position, that's what you have

2 to do, and if you choose not to subpoena them, then that's your

3 problem, but the Court has the power to require them to be

4 here, and we'll use it.  If you say they are essential

5 witnesses, all you have to do is subpoena them, and that's true

6 for both sides.

7    So that argument, in the words of Bear Bryant, that

8 and a nickel will get you a Coke.

9    MR. BRADEN:  I can't remember many nickel Cokes.

10 Your Honor, it is our intention to get every -- every witness

11 that we've listed, we want to call and we intend at this

12 moment -- these are serious people that we intend to call.

13    JUDGE PAYNE:  All right.

14    MR. BRADEN:  We do represent clients, the Speaker of

15 the House, so, you know, I can only subpoena the people that my

16 client will permit me to subpoena, too.  I'm restrained by my

17 representation to the client, just to be candid, but we intend

18 to call these people, and our hope is that we have all 23

19 witnesses we have on our list.

20    We didn't put out any names just to put names out.

21 These are people we believe each have information that would

22 help the Court make the holistic analysis necessary in this

23 case.

24    JUDGE PAYNE:  All right.  Judge Keenan or Judge

25 Allen, do you have any questions at this stage of Mr. Braden?

```
 1              JUDGE ALLEN:  I don't.  This is Judge Allen.

 2              JUDGE KEENAN:  No, I don't.  The only thing that I

 3      would suggest perhaps, Mr. Braden and Mr. Hamilton, you

 4      consider what the Supreme Court meant when it said holistic

 5      analysis, and perhaps it was asking for less granularity rather

 6      than more granularity, and perhaps consider that as a factor in

 7      how you evaluate things here.

 8              MR. BRADEN:  Your Honor, this is Mark Braden.  The

 9      Court specifically said that the district court should not

10      confine its analysis to the conflicting portions of the line,

11      and there was -- so I think that would go, in fact, a different

12      direction.

13              The Court also said it must consider all the lines of

14      the districts at issue, again, a direct quote from the Supreme

15      Court, and that the Court would not accept any post hoc

16      justification.  So all those would seem to me to be saying from

17      the Court asking for more granularity rather than less.

18              JUDGE PAYNE:  Mr. Hamilton, what do you say?  To

19      begin with, you said you didn't need any witnesses, and then

20      you showed up with 20 and three new experts.  That changed the

21      game, according to the defendants' brief, significantly in

22      respect of how one prepares for the trial and how much time is

23      required to conduct the trial.

24              In your papers, you indicate a willingness to pare

25      your list down, but I don't know if you've had an opportunity
```

1    further to reflect upon that or not.  To begin with those

2    thoughts, why are you putting so many witnesses on now when you

3    didn't feel like you needed any earlier, and have you been

4    able, secondly, upon reflection with these briefs that have

5    been filed, to pare the list that you have posed down?

6              MR. HAMILTON:  Thank you, Your Honor, and this is

7    Kevin Hamilton for the plaintiff.  First of all, of course we

8    will pare it down.  I think in the first trial -- I can't

9    remember whether this was in Page or in this case, the Court

10   referred to that process as triage during the trial, Mr.

11   Hamilton, can you exercise triage, and I learned that lesson

12   well over the course of many trials, that in the beginning, of

13   course, you identify all the witnesses that you may call for

14   the purposes of reserving the right to be able to call them.

15             This is, obviously, a highly accelerated litigation,

16   and that first disclosure of witnesses was due just a matter of

17   weeks after the Court set the trial date.  So we identified

18   everybody we thought we might call.  We have no intention of

19   calling the majority of those witnesses, and as we've been

20   going through and interviewing the witnesses, there are some

21   that will drop off.  So, yeah, it's certainly going to be true

22   that we won't call all of them.

23             With respect to the experts, we would have been happy

24   to present just Dr. Ansolabehere, the expert who testified the

25   first time, and rely exclusively on him.  Unfortunately, his

1    wife suffered --

2              JUDGE PAYNE:  He's out because of a family problem;

3    right?

4              MR. HAMILTON:  Correct.  Thank you, Your Honor.  So

5    we've identified three other experts to fill in for that --

6    only, I think, I think this is fair to say, that only two of

7    them will actually be presented at trial, but there are three

8    that are doing work.  Two of them work together, and, you know,

9    we're scrambling as fast as we can to complete those reports.

10             One of the reasons that we had reached out to

11   intervenors and then jointly called chambers last week to try

12   and address the Court with respect to this motion is precisely

13   because the disclosure deadlines for those expert reports are

14   coming up quickly, and so we were hoping to get an expedited

15   ruling on this very motion in advance in light of those

16   deadlines.

17             To answer the Court's question, we, of course, are

18   going to be winnowing that list, and I fully expect Mr. Braden

19   to be winnowing that list as well.

20             JUDGE PAYNE:  He said, though, that he didn't think

21   he was going to winnow his too much.  He's at least going to

22   call all these adjoining people, and you have a lot of people

23   who didn't appear before on your list.  So at this juncture,

24   your plan is not to call all of them, but you don't know who;

25   is that a fair statement?

```
1              MR. HAMILTON:  That's a fair statement.

2              JUDGE PAYNE:  How how about your experts?  How long

3    do you expect their testimony at trial to be?

4              MR. HAMILTON:  Your Honor, at this point, they

5    haven't even completed their initial analysis.  I don't believe

6    it will be, you know, more than it would have been if Dr.

7    Ansolabehere had testified to begin with.

8              JUDGE PAYNE:  All right.  He was about four hours in

9    the original trial, wasn't he, with cross-examination and

10   direct?

11             MR. HAMILTON:  That sounds right, and then that, of

12   course, is premised because both sides agreed to submit into

13   evidence the actual expert reports.  Both sides stipulated, and

14   that made it easy to shortcut, and I think that some of the

15   things the Court did the first time we can do here.

16             Remember, all of the evidence that was presented in

17   the first trial is before this Court.  That is all a matter of

18   record, and it does -- I dare say that neither party should be

19   repeating testimony that's already in the record.

20             Number two, you know, when Mr. Braden says, you know,

21   Delegate Jones is not going to be able to remember the

22   granularity, the specific details about the lines and that's

23   the reason we need -- if you think about the end of that

24   sentence -- somebody who didn't draw the map to talk about why

25   a line went through a particular place?
```

1          Well, that person doesn't have that knowledge,

2    because that person didn't draw the map.  That person might say

3    in his head that's why he was happy that line went there,

4    that's why I wanted that line to go there, but he can't say

5    that's why the line went there because he didn't or she didn't

6    draw that particular line.  So I think some of this evidence is

7    not going to be admissible to begin with simply for lack of

8    personal knowledge.

9          JUDGE PAYNE:  All right.

10          MR. HAMILTON:  Other evidence is going to be

11    cumulative, and I dare say, having appeared before this Court,

12    Your Honor, Judge Payne, on two separate occasions, the Court

13    is not reluctant to point out when evidence becomes cumulative.

14          So I think that the fears here are a little

15    overblown, that the evidence can be collected, depositions,

16    efficiently.  I think it can be presented efficiently either

17    with live testimony at trial or through deposition testimony

18    that's submitted.  Particularly if these witnesses are so busy

19    and so concerned about the impact on their schedule, then we

20    would have no necessary objection in the main to taking the

21    witnesses' testimony and presenting it at trial by deposition

22    if the witness is unavailable.

23          JUDGE PAYNE:  And you could do that by videotape

24    deposition, I assume?  If you would have no objection to doing

25    it by deposition, you would have no objection to videotaping

1    it.

2           MR. HAMILTON:  Right.  As long as we know in advance

3    that their plan is to submit this at trial and to give us a

4    fair opportunity to cross-examine the witness as for trial as

5    opposed to as for a deposition, then, sure, or the witnesses

6    could appear by Skype.  There's lots of technology that could

7    be used to streamline and to lessen the burden on these

8    individuals.

9           JUDGE PAYNE:  Are you willing, Mr. Hamilton, to the

10   process of deposition by written questions as permitted by the

11   rules?

12          MR. HAMILTON:  I would be very reluctant to agree to

13   that, Your Honor.  I don't think that affords the plaintiffs a

14   fair opportunity to cross-examine the witness.  I know it's in

15   the rules.  In 30 years of practicing law, I've never used it

16   once, I've never seen it used once, and I think the reason why

17   it's in a dusty little corner of the rules is because

18   practicing lawyers recognize it's ineffective.  It's an

19   ineffective way of collecting information because it allows

20   everything to go through the filter of the lawyers and it

21   allows the lawyers to prepare the witnesses to answer the

22   questions in a very controlled way.

23          JUDGE PAYNE:  Are you willing to limit your

24   cross-examination to the questions that he says he's going to

25   ask which is why the lines are there and why did you vote for

1 the bill?

2 MR. HAMILTON: Well, that's a difficult question to

3 answer in the abstract. We're certainly willing to limit the

4 questions to relevant questions that go to the issue. I have

5 no interest in sitting with 23 delegates and asking them

6 questions designed somehow -- I read between the lines of Mr.

7 Braden's statement -- to assist their political opponents in

8 the current election season. I don't even know who their

9 opponents are.

10 JUDGE PAYNE: You can find out. That's all right.

11 That's not the issue. Listen, the question I have is this; how

12 about this approach: Suppose we take the deposition of one of

13 the people, and we set the parameters by -- with a judge

14 presiding over the deposition. We set the parameters there and

15 then have the deposition taken in the courthouse without the

16 judge present so that in the event you become rambunctious in

17 your cross-examination contrary to what you usually do, a judge

18 would be here to handle that? Would you be opposed to any of

19 that kind of situation?

20 MR. HAMILTON: No, of course not, Your Honor. That

21 would be fine. I think it would be taxing -- I think it's

22 unnecessary and taxing on the Court. You know, this Court has

23 always been available to the parties by phone, and I would

24 have -- I'm sure -- Mr. Braden and I have appeared across the

25 country in a large number of different litigations. I've never

1    gotten into a personal dispute with Mr. Braden.  I have the

2    utmost respect for him as a lawyer.

3              JUDGE PAYNE:  No, no, I didn't mean by rambunctious

4    your conduct.  I meant you exceeded what you thought was proper

5    bounds of cross.  Okay, you're willing to some supervision.

6              MR. HAMILTON:  But in that event, resort to the Court

7    is always available by phone or by motion.  I think we could --

8    if the Court were willing to make itself available for a brief

9    telephone conference in the unlikely event that we reach

10   loggerheads over the scope of deposition questions, sure, of

11   course we could take advantage of that and that opportunity,

12   but, honestly, I don't see that as an issue.

13             I don't imagine that the parties are going to

14   actually disagree about the scope of where we are going,

15   because it's going to be mainly about -- almost exclusively

16   about what participation did you have in the map, what

17   discussions in your caucus did you have about the map, what

18   discussions did you have about the black voting-age population

19   in these particular districts and the use of a 55 percent

20   benchmark rule in drawing those -- those are the things that

21   we're going to want to talk about.

22             So, you know, if there's a disagreement, I don't

23   think Mr. Braden is going to be so bold as to say, well, no,

24   no, Kevin, you get to ask about this particular precinct

25   because that's what I asked on direct and then why didn't you

```
1    vote for the bill and that's it, and you can't ask about the

2    black voting-age population or the strategy that was discussed

3    in caucus or your private conversations with Mr. Jones about --

4    I mean, you know, he's just not going to do that, because I

5    think even Mr. Braden would recognize all of that goes directly

6    to this.  That said, it's not going to take a lot of time to --

7              JUDGE PAYNE:  All right, I understand.

8              MR. HAMILTON:  Most of these people are not going to

9    have that.

10             JUDGE PAYNE:  Mr. Raphael, do you have anything that

11   you'd like to add to this discussion on case management?

12             MR. RAPHAEL:  No, Your Honor.

13             JUDGE PAYNE:  Either Judge Allen or Judge Keenan have

14   any further questions of Mr. Hamilton or Mr. Braden on the case

15   management component of the motion?

16             JUDGE ALLEN:  Nothing from Judge Allen.

17             JUDGE KEENAN:  Nothing, thank you.

18             JUDGE PAYNE:  All right.  Mr. Braden, one thing, he

19   teed up the key issue, I think, in giving you credit for not

20   doing something when he said you're not going to object to

21   questions about whether, in making your vote and whether in

22   looking at the lines you took into account the 55 percent

23   factor or the BVAP.  Is it correct that you think that that is

24   appropriate cross-examination of your witnesses on the topics

25   that you have outlined that you think they need to testify
```

1    about?

2            MR. BRADEN:  Yes.  To some degree, I do believe it

3    is.  I believe these -- to be candid, Mr. Hamilton is, in fact,

4    correct.  These people's knowledge on these issues, they have

5    the same problem everyone else does with six years later

6    remembering conversations which, of course, they don't remember

7    them really.

8            But what they do know about is the process here

9    involved in getting a bill passed by the House of Delegates.

10   So certainly these individuals, with the exception of Jones and

11   Morgan and maybe one or two other people, didn't have -- with

12   the exception of them, these individuals didn't have any

13   influence in the broader map-drawing, but they most certainly

14   were cognizant of and involved with how their district would

15   look.

16           In reality, certainly I think these are relevant

17   questions.  I think what we're going, of course, to find out is

18   these people know what they said they know.  They know

19   something about their district --

20           JUDGE PAYNE:  Excuse me one minute.  Are you saying

21   these people, as to their districts and their lines, had

22   conversation with Jones about which we haven't heard?

23           MR. BRADEN:  Oh, I think they will, in fact, remember

24   conversations that Jones doesn't remember, sure.

25           JUDGE PAYNE:  So they had interaction on the topic,

1    and it wasn't explored at the earlier trial; is that right?

2         MR. BRADEN:  I believe that to be absolutely, no

3    question.  This was important to them, vital to their careers,

4    and this is six years later, and somebody said, I want to have

5    this precinct in my district, and to Jones it didn't make any

6    difference, and so it -- and to be candid with you, it wouldn't

7    have just been Jones.

8         I think, as we indicated, there was a consultant who

9    we're going to call as a witness this time, John Morgan, who is

10   the technical guy who sat at the machine and did that.  So he

11   has knowledge that Jones doesn't have or doesn't remember.

12        JUDGE PAYNE:  All right.  Okay.  I think everybody

13   had their say.

14        MS. McKNIGHT:  Your Honor, if I might, this is Kate

15   McKnight for defendant intervenors.

16        JUDGE PAYNE:  Yes.

17        MS. McKNIGHT:  We have discussed an issue with

18   plaintiffs' counsel, and they agree it would be useful to get

19   additional clarity from the Court on two points in your

20   June 2nd order.  What would be the best way for us to present

21   those questions to the Court?

22        JUDGE PAYNE:  Well, what are they?

23        MS. McKNIGHT:  Sure.  Very generally it has to do

24   with paragraphs two and seven of the June 2nd order.  In

25   paragraph two -- I'll keep this brief, Your Honor.  In

1    paragraph two, it contemplates a brief identifying portions of

2    the record, but paragraph two does not provide a due date for

3    that brief.  So that's one question.

4          The second question has to do with paragraph seven.

5    It contemplates a full round of briefing on any issues not

6    agreed to in the discovery plan that we filed last night, and

7    we wondered if the Court contemplated something more than just

8    scheduling squabbles for that full -- because it is a full

9    round of briefing.

10         JUDGE PAYNE:  If you have scheduling problems -- or

11   scheduling problems or what you were going to be doing, it

12   looks to me like you're basically in agreement on those things.

13   I don't know that we'll be in agreement with them, but I think

14   seven contemplates more if you have fights over the scope of

15   what you're doing or what you're doing.  Does that help you?

16         MS. McKNIGHT:  A little bit.

17         JUDGE PAYNE:  Two, we'll give you a due date.

18         MS. McKNIGHT:  Only, Your Honor, one follow-up

19   question.  On paragraph seven it refers to paragraph six, and

20   paragraph six, for us, we just scheduled dates.  We did not

21   discuss or identify disagreements about scope in our

22   preparation of the paragraph six plan.

23         JUDGE PAYNE:  The order means what it says.  It

24   refers you back to whatever you were dealing with in paragraph

25   six.  So I gather you have no basic dispute over that based on

```
 1    the plan, but I haven't studied it carefully.  Is that correct
 2    or wrong?
 3              MS. McKNIGHT:  That's correct, Your Honor.  We can
 4    read it on face value.  We were concerned that a full round of
 5    briefing suggested that we were expected to do something more
 6    with paragraph six.
 7              JUDGE PAYNE:  I think not.
 8              MS. McKNIGHT:  Okay, thank you, Your Honor.
 9              JUDGE PAYNE:  All right, Judge Keenan and Judge
10    Allen, do you want to reconvene after a 15-minute break for us
11    to talk a little bit?  Does that suit you all?
12              JUDGE KEENAN:  That's fine.
13              JUDGE PAYNE:  Ms. Hooper will place the call then.
14              JUDGE KEENAN:  Thank you very much everybody.
15              MS. McKNIGHT:  Thank you, Your Honor.
16              JUDGE PAYNE:  Thank you for being available on short
17    notice.  Thank you.
18              MR. HAMILTON:  Thank you, Your Honors.
19
20                        (End of proceedings.)
21
22              I certify that the foregoing is a correct transcript
23    from the record of proceedings in the above-entitled matter.
24
25    _____/s/_____            _____
      P. E. Peterson, RPR            Date
```