**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

GOLDEN BETHUNE-HILL, *et al.*,

        Plaintiffs,

     v.

VIRGINIA STATE BOARD OF ELECTIONS, *et al.*,

        Defendants.

Civil Action No. 3:14-cv-00852-REP-AWA-BMK

**PLAINTIFFS' OBJECTIONS TO DEFENDANT-INTERVENORS'**
**PROPOSED TRIAL EXHIBITS**

## I.      INTRODUCTION

Plaintiffs object to the following Proposed Exhibits on Defendant-Intervenors'

("Intervenors") exhibit list: 13, 23, 24, 27, 35, 36, 102, and 104. As explained below, these

Proposed Exhibits are inadmissible under the applicable federal rules, are proposed in violation

of this Court's scheduling order, or both. Plaintiffs therefore respectfully request that this Court

exclude Proposed Exhibits 13, 23, 24, 27, 35, 36, 102, and 104 from the second trial in this case.

Intervenors filed their list of Proposed Exhibits on Thursday, September 14, 2017. *See*

Dkt. 187-1. Intervenors did not send Plaintiffs copies of any new Proposed Exhibits (that is,

exhibits that were not proposed during the first trial) until Sunday, September 17. Even then,

Intervenors failed to provide copies of *all* their new Proposed Exhibits. The parties have

therefore agreed that Plaintiffs may serve any objections to the new Proposed Exhibits that

Intervenors have not yet disclosed (specifically, Proposed Exhibits 106-111) after Intervenors

disclose them.

## II.    ARGUMENT

### A.    Proposed Exhibit 13 (Outdated Regulation)

Proposed Exhibit 13 is a Department of Justice ("DOJ") regulation titled "Guidance Concerning Redistricting and Retrogression Under Section 5 of the Voting Rights Act, 42 U.S.C. 1973c" and dated January 18, 2001. *See* Dkt. 81-1, Ex. A. It should be excluded under Federal Rules of Evidence 401, 402, and 403 because it is irrelevant, confusing, and likely to waste time.

The version of the DOJ regulation in Proposed Exhibit 13 (the "2001 Regulation") has been superseded by a new version (the "2011 Regulation"). *See* Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act; Notice, 76 Fed. Reg. 7470-01 (Feb. 9, 2011). The 2011 Regulation was admitted as Exhibit 9 at the first trial. The 2011 Regulation was in effect for most of Virginia's 2010-11 redistricting cycle—the only cycle at issue in this case. Nothing in the record indicates that anybody (including Delegate Chris Jones, the architect of the plan at issue) relied on the 2001 Regulation during the 2011 redistricting cycle.

Moreover, to the extent that Intervenors submit this exhibit in support of their long-standing argument based on an alternative method for calculating minority populations, that argument was thoroughly aired during the first trial. This Court held that Intervenors' position was erroneous. *See Bethune-Hill v. Va. St. Bd. of Elections*, 141 F. Supp. 3d 505, 520 (E.D. Va. 2015), *aff'd in part, vacated in part*, 137 S. Ct. 788 (2017). This Court also noted that the issue, which consumed substantial trial time, "generated more heat than light" because "the distinction was not one of great legal significance." *Id*. Ultimately, even Intervenors' counsel agreed. *See id*. (quoting Intervenors' counsel as arguing: "Do I believe the difference between these two numbers is in reality meaningful in actual reality? No, it isn't a significant difference one way or the other, let's be candid."). Thus, delving once again into this esoteric and irrelevant issue would simply waste time in an already tight trial schedule. It should be excluded.

### B.      Proposed Exhibits 23 and 24 (DOJ Materials)

**Proposed Exhibit 23** is a 295-page collection of documents that appear to have been produced by DOJ in response to a Freedom of Information Act request. *See* Dkt. 81-2, Ex. G. Intervenors' exhibit list indicates that Intervenors intend to offer "selected pages" of this huge compendium at trial, Dkt. 187-1, but fails to identify those pages. Plaintiffs are therefore required to object to Proposed Exhibit 23 in its entirety. The documents in Proposed Exhibit 23 fall into two broad categories:

1. Miscellaneous communications between third parties and DOJ, including letters, emails, and facsimile transmissions, most of which pertain to Virginia's 2010-11 redistricting process.

2. Memoranda summarizing interviews conducted by DOJ employees, all of which seem to pertain to Virginia's 2010-11 redistricting process.

Virtually all of the documents are redacted—in some cases, heavily—and identifying information has been removed from almost all of the documents as well. *See, e.g.*, *id.* at 35-36, 48, 49, 50-51, 54-55, 60-61, 77-79. Thus, with few exceptions, it is impossible to identify the authors or recipients of most of the miscellaneous communications. Similarly, it is impossible to identify the DOJ interviewers or the interviewees in the interview memoranda.

**Proposed Exhibit 24** is yet another DOJ interview memorandum in which an unidentified DOJ interviewer summarizes the statements of an unidentified interviewee. *See* Dkt. 81-3, Ex. H. To Plaintiffs' knowledge, nothing distinguishes this specific memorandum from the many similar memoranda in Proposed Exhibit 23 except that Intervenors seem to believe that the unidentified interviewee in Proposed Exhibit 24 is Senator Rosalyn Dance, who will testify at the second trial for Plaintiffs. (Notably, Intervenors could have asked Senator Dance about Proposed Exhibit 24 when she testified during the first trial. They declined to do so, suggesting that even Intervenors question the exhibit's relevance.)

- 3 -

Plaintiffs object to Proposed Exhibits 23 and 24 on several grounds.

### 1.    The Miscellaneous Communications With DOJ Are Hearsay

As an initial matter, Proposed Exhibit 23's miscellaneous communications with DOJ should be excluded under Federal Rule of Evidence 802 because they are inadmissible hearsay.

Hearsay is (1) a statement by a declarant (2) that is not made while testifying at the current trial or hearing, and (3) that a party offers in evidence to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c)(1), (2) (defining hearsay); *see also, e.g.*, *Sam's Club, a Div. of Wal-Mart Stores, Inc. v. NLRB.*, 173 F.3d 233, 241 (4th Cir. 1999) ("Out-of-court statements used to support the truth of the matter asserted therein are, by definition, hearsay."). Hearsay is inadmissible unless it falls within a recognized exclusion or exception to the hearsay rule. *See* Fed. R. Evid. 802.

Proposed Exhibit 23's miscellaneous communications are hearsay. They are out-of-court statements by non-testifying declarants, and the only conceivable purpose for which they could be offered is to establish the truth of the matters asserted therein. But Intervenors cannot identify any exclusion or exception to the hearsay rule that would justify admitting this undifferentiated mass of out-of-court statements without any foundation or explanation.[1] Those communications therefore must be excluded. *See id.*; *see also, e.g.*, *It's My Party, Inc v. Live Nation, Inc.*, No.

---

[1] For example, Intervenors cannot rely on the "business records" exception in Federal Rule of Evidence 803(6) because (among other things) they have not offered the testimony or certification of a qualified custodian under Federal Rule of Evidence 902(11) and they have not shown that DOJ kept reliable records of these kinds of documents. *See United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013) ("While properly authenticated e-mails may be admitted into evidence under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records falling within the ambit"); *Rambus, Inc. v. Infineon Technologies AG*, 348 F. Supp. 2d 698, 701 (E.D. Va. 2004) (Payne, J.) (excluding emails for lack of sufficient custodian certification). Moreover, Intervenors cannot rely on the "public records" exception in Federal Rule of Evidence 803(8) because that exception simply does not apply. None of the documents in Proposed Exhibits 23 and 24 set out the DOJ's "activities," or "a matter observed [by the DOJ] while under a legal duty to report," or "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(i)-(iii).

JFM-09-547 2012 WL 3655470, at *5 (D. Md. Aug. 23, 2012) ("The statements lifted from Geiger's emails are hearsay not within any exception and will therefore be excluded."); *United States v. Levy*, No. 1:07cr265 (JCC), 2008 WL 373646, at *5 (E.D. Va. Feb. 8, 2008) (similar).

### 2.     The DOJ Interview Memoranda Are Hearsay

It is equally clear that the DOJ interview memoranda in Proposed Exhibit 23, and the similar interview memorandum in Proposed Exhibit No. 24, are inadmissible hearsay. In fact, all the DOJ interview memoranda contain *multiple levels* of hearsay, including at least (1) the out-of-court statements by the interviewees *and* (2) the out-of-court statements by the interviewers summarizing the interviewees' statements. *See, e.g.*, *United States v. Jefferson*, No. 1:07cr209, 2009 WL 2447845, at *1 (E.D. Va. Aug. 8, 2009) ("[I]t is pellucidly clear that the last two sentences of the email, which merely restate statements made by Kwemo, are hearsay within hearsay and hence must be excluded under Rules 805 and 802."); 5-805 Weinstein's Federal Evidence § 805.02 (2d ed. 2014) (multiple hearsay, also called "hearsay within hearsay," "occurs in a writing prepared by A that reports a statement made by B").

The interview memoranda must therefore be excluded unless Intervenors show that *each level* of hearsay "conforms with an exception" to the hearsay rule. Fed. R. Evid. 805; *see also United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 321 (4th Cir. 1982) ("[B]oth levels [of hearsay] must either be excluded from the definition of hearsay or satisfy some exception to the hearsay rule."). Intervenors cannot meet that requirement. *See supra* note 1. Thus, the DOJ interview memoranda must be excluded. *See Precision Piping v. E.I. du Pont de Nemours Co.*, 951 F.2d 613, 619 (4th Cir. 1991) (affirming district court's holding that "testimony regarding Emerick's statements about Zicherman's statements amounted to multiple hearsay because it could not be shown that each part of the combined statements came within an exception to the hearsay rule or under one of the definitions of 'nonhearsay'"); *United States v. De Peri*, 778 F.2d

963, 976-77 (3d Cir. 1985) (FBI agent's report containing interview with vendors inadmissible even though it was public report because vendors' out-of-court statements contained in report were hearsay not subject to any exception).

### 3.      Proposed Exhibits 23 and 24 Should Be Excluded Under Rule 403

Aside from the insurmountable hearsay issues identified above, Proposed Exhibits 23 and 24 should also be excluded under Federal Rule of Evidence 403 and this entire time-consuming and pointless exercise avoided.

The central issues in this case are (1) whether race predominated in the drawing of the specific districts challenged by Plaintiffs, and (2) if so, whether the General Assembly's use of race was narrowly tailored to advance a compelling state interest. *But nothing in Proposed Exhibits 23 and 24 sheds any light on those issues.* Again, many of the documents in Proposed Exhibit 23 are communications between DOJ and non-legislators (e.g., activists, concerned citizens, etc.). At most, those communications reveal non-legislators' views of the redistricting process and its outcome. Outsiders' post hoc observations reveal little, if anything, about the General Assembly's motives and methods. Furthermore, whatever slight probative value those views may have is severely undermined by the removal of the authors' names from most of the communications, making it impossible to evaluate the authors' motives, credibility, and insight—if any—into the legislative process.

The DOJ interview memoranda in Proposed Exhibits 23 and 24 suffer from similar flaws. For starters, they are virtually indecipherable. They do not identify the DOJ interviewers; they do not identify the interviewees; and the summaries themselves are often so heavily redacted that it is difficult or impossible to follow the substance of the narrative. *See, e.g.*, Dkt. 81-2, Ex. G at 35-36, 48, 49, 50-51, 54-55, 60-61, 77-79, 111-12. As a result, neither the parties nor this Court

can confidently attribute any of the opinions in the memoranda to particular individuals, and neither the parties nor this Court can know exactly what those individuals actually said to DOJ.

Under these circumstances, Proposed Exhibits 23 and 24 have little or no probative value. And any slight probative value they may have is easily outweighed by the confusing and misleading nature of the documents. Thus, Proposed Exhibits 23 and 24 should be excluded under Rule 403.[2]

### C. Proposed Exhibit 27 (2001 Preclearance Submission)

Proposed Exhibit 27 is Virginia's preclearance submission *from 2001*. It is hard to know the exact volume of Proposed Exhibit 27, but it is certainly huge. In fact, Proposed Exhibit 27 is so voluminous that Intervenors had to send it to Plaintiffs in three separate compressed electronic files. Proposed Exhibit 27 appears to includes 47 folders and subfolders, *over 500 unique files*, and more than 200 megabytes of data. Plaintiffs' best guess is that—in printed form—Proposed Exhibit 27 would consist of more than 8,200 pages of documents, all of it relating to proceedings that occurred a full decade before the redistricting at issue in this litigation.

At the first trial, Plaintiffs did not object to the admission of two pages from Proposed Exhibit 27 and this Court admitted those two pages. *See* Tr. Transcript at 869:13-15 (July 13, 2015). Plaintiffs do not object to the admission of those same two pages at the second trial. The remainder of Proposed Exhibit 27, however, should be excluded under Federal Rules of Evidence 401 and 403 because it has little (if any) relevance to this case.

---

[2] Relatedly, all redacted documents in Proposed Exhibits 23 and 24 should be excluded under Federal Rule of Evidence 106, which embodies a "rule of completeness." *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). This Court cannot fully evaluate the documents in Proposed Exhibits 23 and 24 (especially the DOJ interview memoranda) without reviewing the redacted portions of those documents. But Plaintiffs cannot compel the DOJ to produce the redacted portions.

Again, the central issues here are (1) whether race predominated in the 2010-11 redistricting process, and (2) if so, whether the General Assembly's use of race in the 2010-11 redistrict process was narrowly tailored to advance a compelling state interest. It bears emphasis that Plaintiffs are challenging the *2010-11* redistricting process—not the *2001* redistricting process. Thus, the preclearance submission from 2001 does not make any material fact more or less likely. *See* Fed. R. Evid. 401. Moreover, given the volume and disorganization of Proposed Exhibit 27, admitting it would surely result in cumulative evidence, lengthy delays, and wasted time—the very problems Rule 403 was meant to prevent. It should be excluded.

### D.     Proposed Exhibits 35, 36, and 102 (Undisclosed Expert Reports)

Proposed Exhibits 35, 36, and 102 are similar and should be excluded for similar reasons.

**Proposed Exhibit 35** is an expert report written by Gerald R. Webster and submitted at the circuit court level in *Wilkins v. West*, 571 S.E.2d 100 (Va. 2002), a lawsuit challenging the compactness and contiguity of House and Senate districts under Virginia's constitution more than 13 years ago. *See* Dkt. 81-3, Ex. L. Plaintiffs objected to the admission of this report during the first trial and Intervenors withdrew it. *See* Tr. Transcript at 723:5-7 (July 13, 2015).

**Proposed Exhibit 36** is an expert report from the same long-ago case written by James Loewen. *See id*., Ex. M. Plaintiffs objected to the admission of this report during the first trial and this Court sustained that objection. *See* Tr. Transcript at 387:21 to 389:19 (July 8, 2015).

**Proposed Exhibit 102** consists of two expert reports written by Intervenors' expert Thomas Hofeller: an eight-page report prepared for this case, to which Plaintiffs do *not* object, and a voluminous report prepared for an unrelated state-court case (the "*Vesilind* Report"), to which Plaintiffs *do* object. *See* Ex. A.

Each of these reports from unrelated cases should be excluded.

### 1.   Intervenors Did Not Properly Disclose Dr. Webster and Dr. Loewen or Their Expert Reports from *Wilkins*

Intervenors were required to disclose the identities of any experts on whom they intended to rely at trial, along with the reports of any such experts, no later than August 15, 2017. *See* Dkt. 173 ¶ (6), (7). Intervenors were also required to produce all materials upon which their experts relied, *see id.*; Fed. R. Civ. P. 26(a)(2)(B)(ii), and to make their experts available for deposition, *see id.* 26(b)(4)(A). Intervenors did not comply with those requirements with respect to Dr. Webster and Dr. Loewen or their expert reports from the *Wilkins* case. Thus, Dr. Webster, Dr. Loewen, and their expert reports must be excluded. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

**First,** Intervenors did not identify Dr. Webster or Dr. Loewen as expert witnesses as required by the applicable federal rules and this Court's scheduling order. In fact, Intervenors did not identify Dr. Webster as a witness at all. *See* Dkt. 166 (Intervenors' initial witness list); Dkt. 188 (Intervenors' final witness list).

As for Dr. Loewen, Intervenors have been coy. Their witness lists identify him as a "fact witness," but their descriptions of his testimony suggest that he will offer expert analysis and conclusions. *See* Dkt. 188 ("Dr. Loewen may testify for the purposes of admitting his report under the Federal Rules of Evidence, *identifying relevant conclusions of his report, and explaining how his report was prepared*.") (emphasis added). Plaintiffs have repeatedly sought to clarify the purpose and scope of Dr. Loewen's testimony. But Intervenors have declined to provide any further information on that score, suggesting that they hope to elicit undisclosed expert testimony in the guise of factual testimony.

**Second,** Intervenors did not identify Dr. Webster's and Dr. Loewen's reports as expert reports for purposes of *this* case. At the first trial, Intervenors argued that their failure to disclose Dr. Webster's report as an expert report was immaterial because it was produced in the normal course of discovery. *See* Tr. Transcript at 712:11-15 (July 13, 2015). That argument failed then and it fails now for the same reason: Plaintiffs are entitled to disclosure of expert reports under the rules governing expert disclosures, not the discovery rules that Intervenors prefer.

**Third,** Intervenors did not produce the data that Dr. Webster and Dr. Loewen used to prepare their reports from the *Wilkins* case. That failure is especially striking with respect to Dr. Loewen's data because (a) Plaintiffs served Dr. Loewen with a subpoena duces tecum seeking all such materials long ago; (b) at least until today, when Intervenors' counsel abruptly reversed course, Intervenors' counsel maintained that they represented Dr. Loewen for purposes of this case; and (c) neither Dr. Loewen nor Intervenors' counsel have properly objected to producing Dr. Loewen's underlying data.

**Fourth,** Intervenors did not make Dr. Webster available for deposition.[3]

Intervenors' failure to disclose properly the *Wilkins* reports plainly prejudiced Plaintiffs. Plaintiffs were unable to factor the opinions expressed in those reports into their trial strategy, unable to challenge the data and methods in those reports, and unable to solicit the views of their experts with respect to the conclusions in those reports.

___

[3] Plaintiffs have sought to schedule Dr. Loewen's deposition because he was identified as a fact witness. Due to scheduling difficulties, including Dr. Loewen's vacation schedule, Plaintiffs agreed to defer Dr. Loewen's deposition to September 20, 2017. In the meantime, Plaintiffs could not confer with Dr. Loewen informally because Intervenors' counsel informed Plaintiffs that they represented Dr. Loewen and instructed Plaintiffs not to contact Dr. Loewen on that basis. The same day this brief was filed, Intervenors' counsel informed Plaintiffs, for the first time, that they did *not* represent Dr. Loewen. As a result, Plaintiffs have been unable to ask Dr. Loewen even the most basic questions, including which of the many conclusions in his report (if any) he believes to be relevant to this case.

In short, Plaintiffs lacked a meaningful opportunity to rebut the opinions in the *Wilkins* reports. That is precisely the sort of unfair surprise the expert-disclosure rules prohibit. As the Fourth Circuit has explained:

> Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case. For this reason, we give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).

*Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (internal quotation marks and citation omitted). Accordingly, this Court should not allow Intervenors to smuggle undisclosed experts and undisclosed expert reports into this case on the eve of trial. *See Wilkins v. Montgomery*, 751 F.3d 214, 223 (4th Cir. 2014) (affirming exclusion of expert report disclosed "after the agreed-upon expert disclosure date"); *Carr v. Deeds*, 453 F.3d 593, 604-05 (4th Cir. 2006) (affirming exclusion of expert witness in light of failure to provide timely disclosures required by Rule 26(a)(2)); *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 632 (E.D.N.C. 2008) (excluding expert report not timely disclosed).

## 2. Intervenors Did Not Properly Disclose Dr. Hofeller's Expert Report from *Vesilind*

Intervenors also seek to insert into the record Dr. Hofeller's expert report from the *Vesilind* case, yet another unrelated lawsuit. That is as transparent as it is improper.

Again, Intervenors were required to produce all expert reports (including the reports themselves and all underlying data) no later than August 15, 2017. *See* Dkt. 173 ¶ (6), (7). But Intervenors did *not* produce the *Vesilind* Report on August 15, 2017. They produced nothing but the eight-page report that Dr. Hofeller prepared for this case. Because Dr. Hofeller's report in this case alluded to the *Vesilind* Report, Plaintiffs raised the issue during Dr. Hofeller's deposition on September 12, 2017. Intervenors thereafter produced the *Vesilind* Report for the

first time that day, *after* Dr. Hofeller was deposed. As a result, Plaintiffs had no opportunity to question Dr. Hofeller about the *Vesilind* Report, no opportunity to inquire into the data and methodologies underlying the *Vesilind* Report, and no opportunity to explore the *Vesilind* Report's purported relevance to this case. Thus, admitting the *Vesilind* Report would violate both the letter and the spirit of the federal rules and this Court's scheduling order, reward gamesmanship, and prejudice Plaintiffs. It should be excluded.[4]

### 3.      The Undisclosed Reports Are Inadmissible Hearsay

Intervenors' three newly unveiled expert reports should also be excluded under Federal Rule of Evidence 802. It is well established that expert reports are hearsay and therefore not admissible—absent stipulation or other unusual circumstances—even in the cases for which they are prepared. *See, e.g.*, *Page v. Va. St. Bd. of Elections*, No. 3:13cv678, 2015 WL 3604029, at *30 n.42 (E.D. Va. 2015) (noting that an expert report was "admitted into evidence by agreement, notwithstanding that expert reports are hearsay and hence not admissible usually"); *Murphy v. Cambridge Integrated Servs. Grp., Inc.*, No. AW-08-3224, 2010 WL 2998790, at *12 (D. Md. July 27, 2010) ("[I]t is settled law in this jurisdiction that expert reports are inadmissible hearsay which may not be considered on summary judgment."); *N5 Tech. LLC v. Capital One N.A.*, 56 F. Supp. 3d 755, 765 (E.D. Va. 2014) (expert report was inadmissible hearsay); *Ake v. Gen. Motors Corp.*, 942 F. Supp. 869, 877-78 (W.D.N.Y. 1996) (same). Plaintiffs have not stipulated to (and vehemently object to) the admission of the undisclosed expert reports from Dr. Webster, Dr. Loewen, and Dr. Hofeller. The reports should be excluded on that ground as well.

---

[4] The *Vesilind* Report concerns Dr. Hofeller's expert testimony in state court litigation involving different parties, different lawyers, and different claims arising under Virginia's state constitution. If Dr. Hofeller thought that analysis was probative or even relevant to the issues in this litigation, then he could have replicated that analysis in his opening (or reply) report. He did neither, instead choosing to attach the report to his reply—but even then only after the conclusion of his deposition.

### 4.     The Undisclosed Reports Should Be Excluded Under Rule 403

Even if these three expert reports had been timely disclosed (they were not), and even if they fell outside the hearsay rule (they do not), they would still be inadmissible under Federal Rule of Evidence 403.

All three reports are irrelevant to this case and the legal issues before this Court. Dr. Webster's report from the *Wilkins* case "evaluate[s] Virginia's 100 state House of Delegates and 40 state Senate districts [under the benchmark plan in effect from 2001 to 2010] in terms of their compliance with the geographic compactness and contiguity criteria" as set forth by the Virginia Constitution. Dkt. 81-3, Ex. L at 1-2. Not surprisingly, Dr. Loewen's report from the *Wilkins* case analyzes similar issues. *See id.*, Ex. M at 6-13. Likewise, Dr. Hofeller's *Vesilind* Report evaluates the compactness and contiguity of various districts under the standards set forth in the Virginia Constitution. *See* Ex. A at ¶¶ 2-3, 20, 47-56.

As an initial matter, these reports do not illuminate the decisions or motives of Delegate Jones, the principal mapdrawer. Contrary to Intervenors' arguments, Delegate Jones did *not* rely on Dr. Loewen's report when redrawing the Challenged Districts in 2010 and 2011. *Compare* Dkt. 88 at 14 (Intervenors' counsel arguing that Delegate Jones "relied on the [Webster and Loewen reports] in drawing majority-minority districts in 2011") *with* Ex. B (Transcript of Dep. of Christopher Jones) at 323:19-21 (Aug. 23, 2017) ("Q: Did you actually review [Dr. Loewen's report] during the 2011 redistricting process? A: I did not."). Nor does the record suggest that Delegate Jones relied on Dr. Webster's report when redrawing the Challenged Districts.

Moreover, none of these reports is helpful for evaluating Plaintiffs' claims or Intervenors' defenses because they address different plans, different districts, and different legal issues. Plaintiffs do not challenge *all* the House districts and Senate districts; they challenge *only* the 12 majority-minority House districts. Plaintiffs do not challenge the *benchmark* plan; they challenge

only the *current* plan. And Plaintiffs do not challenge the current plan's compliance with compactness and contiguity requirements under the *Virginia* Constitution. Instead, Plaintiffs contend that the Challenged Districts were racially gerrymandered in violation of the *United States* Constitution. The undisclosed reports of Dr. Webster, Dr. Loewen, and Dr. Hofeller simply do not speak to relevant issues. They should be excluded under Rule 403.

### E.      Proposed Exhibit 104 (Undisclosed Email Message)

Lastly, Intervenors seek to admit an email message from an individual named Stephen Davis, the subject line of which is "Follow up from Caucus Retreat." *See* Ex. C. This email message is mysterious for a variety of reasons. Mr. Davis is not a witness in this case and nothing on the face of the email suggests that any of the witnesses identified by any of the parties could authenticate or lay a foundation for the email. Nor are Plaintiffs aware of any testimony or other evidence suggesting that Mr. Davis communicated with Delegate Jones during the redistricting process or otherwise played any role in crafting the Challenged Districts. Proposed Exhibit 104 should therefore be excluded under Federal Rules of Evidence 401 and 403 and as inadmissible hearsay.

### III.      CONCLUSION

For the foregoing reasons, Plaintiffs object to and respectfully request that this Court exclude Intervenors' Proposed Exhibits 13, 23, 24, 27, 35, 36, 102, and 104.

DATED: September 18, 2017

By: */s/ Aria C. Branch*

Aria C. Branch (VSB # 83682)
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
John K. Roche (VSB # 68594)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone: 202.654.6338
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford
     (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On September 18, 2017, I caused to be served upon counsel of record, at the address

stated below, via the method of service indicated, a true and correct copy of the above Objections

to Defendant-Intervenors' Proposed Trial Exhibits.

VIA ELECTRONIC MAIL

Katherine L. McKnight (VSB No. 81482)
E. Mark Braden (*pro hac vice*)
Richard B. Raile (VSB No. 84340)
Baker & Hostetler LLP
1050 Connecticut Avenue NW, Ste. 1100
Washington, DC 20036
Phone: 202.861.1500
Fax: 202.861.1783
Email: kmcknight@bakerlaw.com
Email: mbraden@bakerlaw.com
Email: rraile@bakerlaw.com

Of counsel:
Dale Oldham, Esq. (*pro hac vice*)
1119 Susan Street
Columbia, SC 29210
Phone: 803.772.7729
Email: dloesq@aol.com

*Attorneys for Defendant-Intervenors*

Matthew R. McGuire (VSB No. 84194)
Trevor S. Cox (VSB No. 78396)
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
Phone: 804.786.7773
Fax: 804.371.0200
Email: mmcguire@oag.state.va.us
Email: tcox@oag.state.va.us

*Attorneys for Defendants*