IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br>  Defendants. | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**PLAINTIFFS' FURTHER OBJECTIONS TO DEFENDANT-INTERVENORS' PROPOSED TRIAL EXHIBITS**

### I.  INTRODUCTION

On September 18, 2017, Plaintiffs filed objections to certain proposed trial exhibits identified on Defendant-Intervenors' ("Intervenors") exhibit list. *See* Dkt. 194. Plaintiffs now file further objections to different exhibits proposed by Intervenors. Specifically, Plaintiffs object to Intervenors' Proposed Exhibits 106 to 111 and Intervenors' Proposed Exhibits 125 to 143.[1]

As explained below, these Proposed Exhibits are inadmissible under the applicable federal rules, are proposed in violation of this Court's scheduling order, or both. Plaintiffs therefore respectfully request that this Court exclude Intervenors' Proposed Exhibits 106 to 111 and Intervenors' Proposed Exhibits 125 to 143 from the second trial in this case.

---

[1] Plaintiffs' further objections are timely. *See* Dkt. 191 (parties agreed that Plaintiffs could object to exhibits 125 to 143 no later than September 22, 2017 because Intervenors did not disclose those exhibits until September 20); Dkt. 195 (parties agreed that Plaintiffs could object to exhibits 106 to 111 no later than September 21 because Intervenors did not provide copies of those new exhibits until September 19).

137027031.1

- 2 -

## II.     ARGUMENT

### A.     Proposed Exhibits 106 and 107 (Undisclosed Websites)

Proposed Exhibit 106 appears to be a printed copy of pages from the official website of Delegate Manoli Loupassi. *See* Ex. A. Proposed Exhibit 107 appears to be a printed copy of pages from the website of the Robin Inn, a restaurant apparently owned by a relative of Delegate Loupassi. *See* Ex. B. Neither exhibit was produced to Plaintiffs in discovery. Both exhibits should be excluded.

**First,** Intervenors have removed Delegate Loupassi from their witness list. *Compare* Dkt. 166 at 2 (Intervenors' June 30, 2017 witness list identifying Delegate Loupassi as a witness) *with* Dkt. 188 (Intervenors' September 14 witness list not identifying Delegate Loupassi as a witness). Delegate Loupassi therefore will not testify at trial. Accordingly, none of Intervenors' witnesses could authenticate Proposed Exhibits 106 and 107—a threshold requirement of admissibility. *See* Fed. R. Evid. 901. Proposed Exhibits 106 and 107 should be excluded for that reason alone. *See, e.g.*, *M-Edge Accessories LLC v. Amazon.com Inc.*, No. MJG-11-3332, 2015 WL 403164, at *7 (D. Md. Jan. 29, 2015) ("Indeed, several courts have held that printouts of third-party websites are inherently non-trustworthy without authentication.") (collecting cases); *Perry v. Lench Mob Records*, No. 2:13-CV-00022-BR, 2014 WL 1631823, at *2 (E.D.N.C. Apr. 23, 2014) (holding that unauthenticated "computer screen printouts from Internet sources" were inadmissible). Relatedly, even if Intervenors could somehow authenticate Proposed Exhibits 106 and 107, none of Intervenors' remaining witnesses could testify about the contents of the exhibits because none of those witnesses have personal knowledge of the contents. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Proposed Exhibits 106 and 107 should be excluded for that reason as well.

**Second,** to the extent that Intervenors intend to rely on Proposed Exhibits 106 and 107 to shore up the factual bases of Delegate Jones's testimony, that is prohibited by the rule against hearsay.[2] Hearsay is (1) a statement by a declarant (2) that is not made while testifying at the current trial or hearing, and (3) that a party offers in evidence to prove the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c)(1), (2). Hearsay is inadmissible unless it falls within a recognized exclusion or exception to the hearsay rule. *See* Fed. R. Evid. 802. No exception or exclusion applies here. Thus, Intervenors may not rely on Proposed Exhibits 106 and 107 to establish any of the facts asserted or suggested in the exhibits, including (for example) facts about Delegate Loupassi's political experience or the location of the Robin Inn. *See*, *e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 676 n.30 (E.D. Va. 2015) (screenshots from website were inadmissible "hearsay statements").

**Third,** to the extent that Intervenors intend to rely on Proposed Exhibit 106 and 107 to show that Delegate Jones considered Delegate Loupassi's personal and political history when redrawing the Challenged Districts, that too is improper. During the 2015 round of discovery, Plaintiffs expressly requested "all documents regarding redistricting criteria, factors, or considerations that were used, considered, or applied in drawing the 2011 Virginia House of Delegates Plan and/or any individual district"; "all documents that allegedly support" Intervenors' affirmative defenses; "all documents related to any potential testimony from any person who you may call, plan to call, or expect to call as a witness at the trial of this case"; and "any documents relating to, referencing, or explaining the political goals of the 2011 Virginia Redistricting." Ex. C. In addition, during the 2017 round of discovery, Plaintiffs expressly

---

[2] At the first trial, Delegate Jones testified that he removed precinct 207 from Challenged District 71 and placed it in Delegate Loupassi's district because precinct 207 encompassed an area adjacent to a ward that Delegate Loupassi had once represented. *See Bethune-Hill v. Va. St. Bd. of Elections*, 141 F. Supp. 3d 505, 563 (E.D. Va. 2015), *aff'd in part, vacated in part*, 137 S. Ct. 788 (2017).

- 3 -

requested "all documents related to the 2011 Virginia Redistricting within the possession, custody, or control of" Intervenors' trial witnesses (including Delegate Chris Jones) and "all documents related to any potential testimony from any person who you may call, plan to call, or expect to call as a witness at the trial of this case." *See* Ex. D. *But Intervenors never produced Proposed Exhibits 106 and 107*. Thus, they may not rely on those exhibits to support their post hoc explanations for Delegate Jones's decisions. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

### B. Proposed Exhibits 108 to 111 (Undisclosed Maps)

Proposed Exhibits 108 to 111 should also be excluded for several reasons.

**Proposed Exhibit 108** appears to be a collection of "screenshots" showing maps as displayed within the Maptitude redistricting software. *See* Ex. E. It was not produced in discovery and its provenance, including its creator and its underlying data, is unknown.

**Proposed Exhibit 109** appears to be a collection of maps showing Virginia's state senate districts. It was not produced in discovery. *See* Ex. F (excerpt of Proposed Exhibit 109).

**Proposed Exhibit 110** purports to be a collection of "[m]aps of split VTDs." Dkt. 187-1 at 2. Like Proposed Exhibit 108, it was not produced in discovery and its provenance, including its creator and its underlying data, is unknown. *See* Ex. G.

Finally, Intervenors describe **Proposed Exhibit 111** as "[m]aps of alternative challenged district boundaries." Dkt. 187-1 at 2; *see also* Ex. H. There is no further explanation, including any explanation of the "alternative . . . boundaries." *Id*. And, like Proposed Exhibits 108 and 110, Intervenors have not disclosed the author, source, or purpose of Proposed Exhibit 111.

There is no basis for admitting these mysterious documents and several reasons to exclude them entirely.

**First,** it appears that some or all these undisclosed maps were created by Intervenors' experts at some point during or after the 2017 round of discovery, likely to rebut some of Plaintiffs' anticipated expert testimony.[3] If that is true, then these maps should have been produced before the depositions of Intervenors' experts, as required by the Federal Rules of Civil Procedure and this Court's scheduling order. *See Carr v. Deeds*, 453 F.3d 593, 604-05 (4th Cir. 2006) (affirming exclusion of expert witness given failure to provide timely disclosures required by Rule 26(a)(2)). If, alternatively, these maps represent documents that Delegate Jones or others relied on during the redistricting process in 2010 and 2011, then they should have been produced in response to Plaintiffs' discovery requests in 2015 and 2017. Because they were not produced at all, they must be excluded. *See* Fed. R. Civ. P. 37(c)(1).

**Second,** it is difficult to imagine how Intervenors could authenticate or lay a foundation for these new maps. Intervenors' expert witnesses cannot authenticate or explain these new maps because Intervenors failed to disclose them in conjunction with Intervenors' expert reports. And Intervenors' fact witnesses (including Delegate Jones) cannot authenticate or explain these new maps because Intervenors' fact witnesses did not create these new maps and they have no personal knowledge of their contents. *See* Fed. R. Evid. 602.

**Third,** these exhibits are simply not relevant. *See* Fed. R. Evid. 401, 402. Proposed Exhibit 109, for example, appears to show Virginia's senate districts. At the peril of stating the obvious, this case is not about Virginia's senate districts. And Proposed Exhibit 111's

---

[3] Intervenors were unable to provide copies of Proposed Exhibits 108 to 111 until September 19, 2017, even though Intervenors identified those exhibits five days earlier. *See* Dkt. 187-1 at 2. Intervenors have not explained their inability to provide copies of the exhibits between September 14 and September 19, suggesting that Intervenors or their experts created those exhibits during that timeframe.

- 5 -

137027031.1

"alternative challenged district boundaries" are meaningless absent some explanation of (1) who created the alternative boundaries; (2) when those boundaries were created; (3) what criteria were used to create the boundaries; and (4) the data used to create the boundaries.

**Fourth,** any probative value these new maps may have is easily outweighed by the delay and confusion they would cause. *See* Fed. R. Evid. 403. Again, these maps are a mystery. Plaintiffs do not know who created the maps. Plaintiffs do not know when the maps were created. Plaintiffs do not know what data and methods were used to create the maps. And Plaintiffs have had no prior opportunity to inquire into the authenticity or accuracy of these maps. Thus, Plaintiffs will have no choice but to explore those issues at trial, likely leading to multiple trials-within-trials. That is neither necessary or justified. This case has been pending since 2014. If these maps are, in fact, essential to Intervenors' case, then they should have been disclosed long ago.

### C. Proposed Exhibits 125 to 142 ("Expert" Exhibits)

Proposed Exhibits 125 to 139 are maps purporting to show "[d]eviations" and water crossings in the benchmark plan and the challenged plan. Proposed Exhibits 140 to 142 appear to be related tables. (Plaintiffs have not attached these exhibits because they are voluminous.) These exhibits are identified as "expert-related exhibits." Dkt. 196 at 1. Accordingly, Plaintiffs expect Intervenors to introduce these exhibits through their experts. That is improper. These exhibits were not disclosed with Intervenors' experts' reports before Intervenors' experts were deposed. Nor were they exhibits at the depositions of Plaintiffs' experts. Intervenors therefore may not use them to solicit expert testimony at trial. As the Fourth Circuit has explained:

> Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case.

137027031.1

- 7 -

*Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005) (internal quotation marks and citation omitted). That reasoning is fully applicable here.

### D.  Proposed Exhibit 143 (Amicus Brief by Undisclosed Experts)

Proposed Exhibit 143 continues a theme in which Intervenors try to smuggle undisclosed experts and expert testimony into this case at the last minute. *See* Dkt. 194 (Plaintiffs' objections to Intervenors' proposed exhibits 35, 36, and a portion of 102). Intervenors' latest attempt should be rejected as well.

Proposed Exhibit 143 is an amicus brief in support of Intervenors that was submitted to the U.S. Supreme Court during the appeal of this case. *See* Ex. I. The brief was authored by political scientists Thomas L. Brunell, Charles S. Bullock, and Ronald Keith Gaddie, who identify themselves as "experts on redistricting." *Id*. at 1. But those purported experts are not expert witnesses in this case and they will not testify in any capacity. They have not been deposed, and they have not produced the data underlying their analysis. Proposed Exhibit 143 should therefore be excluded on multiple grounds.

**First,** none of the parties' witnesses could authenticate the brief and none of the parties' witnesses has any personal knowledge of the contents of the brief. That alone is a sufficient reason to exclude the brief.

**Second,** the brief is authored by self-described "experts" and claims to provide expert analysis pertinent to this case. In other words, it is an expert report. But it is well established that expert reports are hearsay and therefore not admissible (absent stipulation or other unusual circumstances not present here) to prove the truth of the matters asserted therein. *See, e.g.*, *Page v. Va. St. Bd. of Elections*, No. 3:13cv678, 2015 WL 3604029, at *30 n.42 (E.D. Va. 2015) (noting that an expert report was "admitted into evidence by agreement, notwithstanding that expert reports are hearsay and hence not admissible usually"); *Murphy v. Cambridge Integrated*

- 7 -

*Servs. Grp., Inc.*, No. AW-08-3224, 2010 WL 2998790, at *12 (D. Md. July 27, 2010) ("[I]t is settled law in this jurisdiction that expert reports are inadmissible hearsay which may not be considered on summary judgment."). Thus, even if Intervenors could authenticate and lay a foundation for the brief (they cannot), then at most it could be admitted *only* to show that it exists and was filed during the appeal. That, of course, is irrelevant. *See* Fed. R. Evid. 401.

**Third,** any probative value of the professors' amicus brief is vastly outweighed by the unfairness, confusion, and delay that it would cause. The amicus brief does not even aspire to objectivity; instead, it offers a purely one-sided analysis that mischaracterizes Plaintiffs' positions and offers legal analyses well beyond the scope of the professors' expertise. Furthermore, admitting yet another expert report in this case would do nothing but lengthen the trial and cause unnecessary confusion. Intervenors have already produced three expert reports in this case in 2017 alone (not counting the three expert reports they submitted before the first trial) and they will offer expert testimony from the authors of those reports at trial. Of course, Intervenors could have retained professors Brunell, Bullock, and Gaddie as experts in addition to or in lieu of their current experts. They also could have asked professors Brunell, Bullock, and Gaddie to provide expert reports for this case and made professors Brunell, Bullock, and Gaddie available for deposition. Intervenors did none of those things. Under these circumstances, permitting Intervenors to use the professors' amicus brief to sneak in additional undisclosed expert testimony at the eleventh hour would make a mockery of this Court's scheduling order and the Federal Rules of Civil Procedure. Proposed Exhibit 143 should be excluded.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs object to and respectfully request that this Court exclude Intervenors' Proposed Exhibits 106 to 111 and 125 to 143.

- 8 -

137027031.1

DATED: September 21, 2017      By: */s/ Aria C. Branch*
Aria C. Branch (VSB # 83682)
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
John K. Roche (VSB # 68594)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford
    (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*