# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS, et al.,<br><br>    Defendants,<br><br>v.<br><br>VIRGINIA HOUSE OF DELEGATES, et al.<br><br>    Intervenor-Defendants. | Civil Action No. 3:14-cv-852-REP-GBL-BMK |

### PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT-INTERVENORS

**TO:**    DEFENDANT-INTERVENORS

**AND TO:**    Katherine L. McKnight and E. Mark Braden, attorneys for Defendant-Intervenors

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs hereby request that Defendant-Intervenors produce the documents described below at the offices of 700 13th St. NW #600, Washington, DC 20005, on or before July 26, 2017.

136254390.1

## DEFINITIONS AND INSTRUCTIONS

1. Except as specifically defined below, the terms used in these Requests for Production shall be construed and defined in accordance with the Federal Rules of Civil Procedure, wherever applicable. Any terms not defined shall be given their ordinary meaning.

2. The singular includes the plural and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense.

3. "2011 Virginia Redistricting" means any activity relating to the Virginia General Assembly's efforts to draw and adopt Virginia House of Delegates districts in 2010 and 2011.

4. "2011 Virginia House of Delegates Plan" means the redistricting plan passed by the General Assembly in 2011 that proposed new House of Delegates districts for the Commonwealth of Virginia, codified as Va. Code Ann. § 24.2-304.03.

5. "Challenged Districts" means Virginia House of Delegates Districts 63, 69, 70, 71, 74, 75, 77, 80, 89, 90, 92, and 95.

6. "General Assembly" means any current or former member of the Virginia General Assembly, the Virginia House of Delegates, the Senate of Virginia, and their current and former staff members, agents, employees, consultants, experts, and personnel, and including but not limited to employees of the Virginia Division of Legislative Services and their agents, consultants, experts, and personnel.

7. "Virginia House of Delegates" means any current or former member of the Virginia House of Delegates, and their current and former staff members, agents, employees, consultants, experts, and personnel, and including but not limited to employees of the Virginia Division of Legislative Services and their agents, consultants, experts, and personnel.

8. "Section 5 Submission" means the submission Virginia sent to the U.S. Department of Justice, pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, relating to the redistricting of Virginia's House of Delegates districts that occurred in 2011.

9. "Map" includes all drawings of partial or whole maps or of individual districts or portions thereof, as well as associated data and shape files for partial or whole maps or for individual districts or portions thereof and the underlying demographic, political, and geographic data related to the maps.

10. "Meeting" includes any public or private, official or unofficial, transcribed or non-transcribed gathering, conference, or communication of or between two or more individuals.

11. The word "documents" is used in its customary broad sense and includes all written, typed, printed, recorded or graphic statements, emails, communications or other matter, however produced or reproduced, and whether or not now in existence, in your possession, custody or control, including: writings; emails; bulletins; notices; maps; draft maps; Word documents; PDFs; spreadsheets; studies; analyses; tabulations; reports; reviews; agreements; contracts; communications, including intracompany communications, letters or other correspondence; messages; telegrams; telexes; cables; electronically stored information; memoranda; records; notes; reports; summaries; sound recordings or transcripts of personal or telephone conversations; meetings; conferences or interviews; telephone toll records; diaries; desk calendars; appointment books; forecasts; accountants' work papers; drawings; graphs; charts; diagrams; blueprints; tables; indices; pictures; photographs; films; phonograph records; tapes; microfilm; microfiche; charges; ledgers; accounts; cost sheets; financial statements or reports; statistical or analytical records; minutes or records of board of directors, committee or

other meetings or conferences; reports or summaries of investigations; opinions or reports or summaries of investigations; opinions or reports of consultants; appraisals; reports or summaries of negotiations; books; brochures; pamphlets; circulars; trade letters; press releases; newspaper and magazine clippings; stenographic, handwritten or any other notes; notebooks; projections; working papers; checks, front and back; check stubs or receipts; invoice vouchers; tape data sheets or data processing cards and discs or any other written, recorded, transcribed, punched, taped, filed or graphic matter, however produced or reproduced; and any other document, writing or other data compilation of whatever description, including but not limited to any information contained in any computer although not yet printed out or the memory units containing such data from which information can be obtained or translated into reasonable usable form, and all drafts and non-identical copies of the foregoing.

12. The term "electronically stored information" means information stored in or on any electronic medium or device, including computers, network servers, computer hard drives, e-mails, voicemails, CDs, DVDs, tapes, websites, intranet, extranet, databases, Personal Digital Assistants (PDAs), mobile phones, smart phones, flash drives, thumb drives and USB drives, whether portable or not, regardless of the software or application used to generate or store the document, data, information or item.

13. The word "communication" means any transmission or exchange of information between two or more persons orally or in writing and includes, without limitation, any conversation or discussion, whether face-to-face or by means of any telephone, telegraph, telecopies, electronic, or other media, and any exchange of information or words by any electronic or written means.

- 4 -

14. The phrase "related to" shall mean, without limitation, directly or indirectly constituting, evidencing, concerning, regarding, mentioning, discussing, describing, commenting upon, referring to, pertaining to, being connected with or reflecting upon the stated subject matter.

15. "And" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of these requests information that might otherwise be construed as being outside their scope. The use of the words "including" shall be construed to mean "without limitations."

16. "You," "your" or any similar word or phrase includes each individual or entity responding to these discovery requests and, where applicable, each affiliated entity of each such person or entity and all persons acting on its or their behalf.

17. These discovery requests shall be deemed continuing so as to require supplemental responses if you obtain further documents or information after the time your responses are served.

18. File folders with tabs or labels identifying documents responsive to these requests should be produced intact with the documents.

19. Documents attached to each other should not be separated.

20. Documents shall be produced in Tagged Image File Format ("TIFF"), single page, black and white (or in color, if necessary for any given document or its content to be readable), dithered (if appropriate), at 300 x 300 dpi resolution and 8½ x 11 inch page size, except for documents requiring different resolution or page size to make them readable. Each TIFF document shall be produced with an image load file in standard Opticon (*.log) format that reflects the parent / child relationship. In addition, each TIFF document shall also be produced

with a data load file in Concordance delimited format (*.dat), indicating (at a minimum) appropriate unitization of the documents, including beginning and ending production numbers for (a) each document set, and (b) each attachment within each document set. The TIFF images shall also be accompanied by extracted text or, for those files that do not have extracted text upon being processed (such as hard copy documents), optical character recognition ("OCR") text data; such extracted text or OCR text data shall be provided in document level form and named after the TIFF image. Documents that contain redactions shall be OCR'd after the redaction is applied to the image, and the OCR will be produced in place of extracted text at the document level. Notwithstanding the foregoing, the parties may negotiate a separate production format (including native format) for any documents that are not reasonably producible or readable as standard image files, such as audio files or large spreadsheets.

21. For documents produced in TIFF format that originated in electronic form, metadata shall be included with the data load files described above, and shall include (at a minimum) the following information: file name (including extension); original file path; page count; creation date and time; last saved date and time; last modified date and time; author; custodian of the document (that is, the custodian from whom the document was collected or, if collected from a shared drive or server, the name of the shared driver or server); and MD5 hash value. In addition, for email documents, the data load files shall also include the following metadata: sent date; sent time; received date; received time; "to" name(s) and address(es); "from" name and address; "cc" name(s) and address(es); "bcc" name(s) and address(es); subject; names of attachment(s); and attachment(s) count. All images and load files must be named or put in folders in such a manner that all records can be imported without modification of any path or file name information.

22. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for, then:

    a. Produce all such documents as are available to you without undertaking what you contend to be an unreasonable request;

    b. Describe with particularity the efforts made by you or on your behalf to produce such documents, including, without limitation, identification of persons consulted, description of files, records and documents reviewed, and identification of each person who participated in the gathering of such documents, with specification of the amount of time spent and the nature of work done by such person; and

    c. State with particularity the grounds upon which you contend that additional efforts to produce such documents would be unreasonable.

23. With respect to any document withheld from production on a claim of privilege or work product protection, please provide a written privilege log identifying each document individually and containing all information required by Rule 26(b)(5) of the Federal Rules of Civil Procedure.

24. Unless otherwise noted, the date range for all documents should be from January 1, 2010 to the present and should include documents and communications generated after the initiation of this lawsuit.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Produce all maps and draft maps related to the 2011 Virginia Redistricting, including but not limited to all maps, draft maps, and alternative iterations of the Challenged Districts that were prepared, reviewed, or relied upon by Delegate Chris Jones.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:** Produce all voter files, data sets, or other voter information reviewed or relied upon by the Virginia House of Delegates (including, but not limited to, Delegate Chris Jones, his staff, and any redistricting consultants with whom Delegate Jones consulted) during the 2011 Virginia Redistricting.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** For all statewide and state legislative elections held from 2008 to 2013, produce election vote counts at the level of Virginia's 2010 Census Voting Tabulation Districts (not precincts).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:** Produce all documents and communications reviewed or relied upon by Delegate Chris Jones during the 2011 Virginia Redistricting to determine whether any of the Challenged Districts had to be drawn to include a Black Voting Age Population ("BVAP") of 55% or more (or any other level of BVAP) in order to comply with Section 5 of the Voting Rights Act or any other legal requirement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**  Produce all documents showing the address of each residence of each member of the Virginia House of Delegates during the 2011 Virginia Redistricting. For purposes of this Interrogatory, "address" means street number, unit number (if applicable), street name, state, and postal zip code.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:**  Produce all communications related to the 2011 Virginia Redistricting between or among Delegate Chris Jones and any of the witnesses listed in Defendant-Intervenors' Witness List, Section I(2)-(20) (Dkt. 166), including but not limited to communications that occurred after the filing of this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:**  Produce all communications related to the 2011 Virginia Redistricting between or among counsel for Defendant-Intervenors and any of the witnesses listed in Defendant-Intervenors' Witness List, Section I(2)-(20) (Dkt. 166), including but not limited to communications that occurred after the filing of this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:** Produce all documents related to the 2011 Virginia Redistricting within the possession, custody, or control of the witnesses listed in Defendant-Intervenors' Witness List, Section I(2)-(20) (Dkt. 166), including but not limited to communications that occurred after the filing of this lawsuit.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:** Produce all documents related to any potential testimony from any person who you may call, plan to call, or expect to call as a witness at the trial of this case.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:** Produce all documents and communications related to the expert report of Dr. James Loewen prepared in connection with *Wilkins v. West*, 264 Va. 447 (Va. 2002), including but not limited to all documents and communications showing that Delegate Chris Jones reviewed or relied upon that expert report during the 2011 Virginia Redistricting.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:** Produce all documents and communications related to the assertion that "'[Challenged District 95] was crafted carefully to avoid taking [Challenged District 94's] Republican precincts and instead take Democratic-leaning population

left behind by [Challenged District 93] and reach into precincts surrounded by [Challenged District 93] to dilute Democratic voting strength in that area.'" *Bethune-Hill v. Va. St. Bd. of Elections*, 141 F. Supp. 3d 505, 570 (E.D. Va. 2015) (quoting Intervenor-Defendants' Pre-Trial Br. at 18).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:** Produce all documents and communications related to the "potential primary opponent" discussed in the trial testimony of Delegate Chris Jones, *see* Trial Tr. at 326:11-12, and in the district court's October 22, 2015 opinion, *see Bethune-Hill v. Va. St. Bd. of Elections*, 141 F. Supp. 3d 505, 554 (E.D. Va. 2015), including but not limited to all communications between former Delegate Rosalyn Dance and Delegate Chris Jones regarding that "potential primary opponent."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:** Produce all documents and communications related to efforts to comply with Section 2 of the Voting Rights Act during the 2011 Virginia Redistricting, including but not limited to documents and communications related to or supporting the assertion that compliance with Section 2 was "a very important consideration" in decisions about redrawing any of the Challenged Districts. Trial Tr. at 18:19.

**RESPONSE:**

- 11 -

136254390.1

DATED: July 19, 2017

By: */s/ Aria Branch*

Marc Erik Elias (*pro hac vice*)
Bruce V. Spiva (*pro hac vice*)
Aria Branch (VSB No. 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (*pro hac vice*)
Abha Khanna (*pro hac vice*)
Ryan Spear (*pro hac vice*)
William B. Stafford (*pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

- 12 -

136254390.1

## RULE 26(g) CERTIFICATION

I have read the foregoing responses and objections to these requests for production and certify that, to the best of my knowledge, information and belief, formed after a reasonably inquiry, they comply with the requirements of Federal Rule of Civil Procedure 26(g)(1)(B).

DATED this _____ day of _____, 20__.

By: _____

## CERTIFICATE OF SERVICE

On July 19, 2017, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the above discovery requests.

VIA ELECTRONIC MAIL

Katherine L. McKnight (VSB No. 81482)
E. Mark Braden (*pro hac vice*)
Richard B. Raile (VSB No. 84340)
Baker & Hostetler LLP
1050 Connecticut Avenue NW, Ste. 1100
Washington, DC 20036
Phone: (202) 861-1500
Fax: (202) 861-1783
Email: kmcknight@bakerlaw.com
Email: mbraden@bakerlaw.com
Email: rraile@bakerlaw.com

Of counsel:
Dale Oldham, Esq.
1119 Susan Street
Columbia, SC 29210
Phone: 803-772-7729
Email: dloesq@aol.com

*Attorneys for Defendant-Intervenors*

Stuart A. Raphael (VSB No. 30380)
Matthew R. McGuire (VSB No. 84194)
Trevor S. Cox (VSB No. 78396)
Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
Phone: (804) 786-7240
Fax: (804) 371-0200
Email: sraphael@oag.state.va.us
Email: mmcguire@oag.state.va.us
Email: tcox@oag.state.va.us

*Attorneys for Defendants*

**I certify under penalty of perjury that the foregoing is true and correct.**

DATED this 19th day of July, 2017.

                                              */s/ Aria Branch*