IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, <br><br>     Plaintiffs, <br><br>     v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br>     Defendants. <br><br>     v. <br><br> VIRGINIA HOUSE OF DELEGATES, <br><br>     Intervenor-Defendants | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**PLAINTIFFS' OBJECTIONS TO DEFENDANT-INTERVENORS'
DISCOVERY DESIGNATIONS**

### I.  INTRODUCTION

By designating portions of the Deposition of Christopher M. Marston, Defendant-Intervenors ("Intervenors") seek to rely on legal advice to defend against Plaintiffs' claims without revealing the substance of that advice. But using legal advice as a defense without disclosing it is flatly impermissible. The privilege cannot be used both as a sword and a shield. This Court should therefore exclude the disputed portions of Mr. Marston's testimony designated by Intervenors, namely, lines 47:16 to 48:15.[1]

---

[1] Had this issue arisen during the latest round of discovery, the Court could have simply required Intervenors to choose between waiving the privilege and fully disclosing all otherwise-privileged communications from Mr. Marston with respect to the same subject matter. Having waited until the virtual eve of trial to propose these excerpts, however, it is now far too late in the day to allow such a last-minute flood of material.

137050728.1

## II. BACKGROUND

This is the second time that this dispute has come before the Court. Before the first trial, Intervenors served Plaintiffs with rebuttal designations of Mr. Marston's designation. *See* Declaration of Ryan Spear ("Spear Decl."), Ex. A. In those rebuttal designations, Mr. Marston, a consultant hired by the House of Delegates Republican Caucus during the 2010-2011 redistricting cycle, explains that he and other hired consultants relied on the advice of counsel when assessing whether their draft redistricting plans complied with the Voting Rights Act. Specifically, Intervenors designated the following portions of Mr. Marston's testimony:

> Q: How did you determine whether a minority group or minority groups would have a lesser opportunity to elect a candidate of their choice?
>
> A: We didn't have a hard-and-fast rule to determine that. As with many things in the law, it's a bit of a judgment call. I don't recall how many court decisions I read, but I couldn't get the same answer out of all of them as to what I needed to do, *so we did our best and sought legal advice to see if what we were doing appeared to be compliant*.
>
> Q: Did you do -- when I say did "you" do, I mean did you do or direct or interact with one of your consultants who was doing any data analysis to determine whether a proposed plan would cause retrogression?
>
> A: Yes.
>
> Q: Tell me about that.
>
> A: As we were preparing a plan and when we finished a plan, *we would ask our attorneys for their opinion as to whether or not they thought that there was retrogression and, more importantly, whether it could be precleared*.
>
> Q: I guess I'm asking more of a factual question, which is, how did you use the data to determine whether or not there was retrogression?
>
> A: *So we would prepare a list of the 100 districts and then racial composition and consult with our attorneys to see*

> *what they thought about whether or not we could successfully get the plan precleared.*

Spear Decl., Ex. A (emphasis added).

Upon receiving Intervenors' rebuttal designations, Plaintiffs met and conferred with Intervenors. *See id*. ¶ 6. Plaintiffs asked Intervenors to produce the privileged communications described in the above portion of Mr. Marston's testimony or withdraw those designations. Intervenors refused. *See id*. Plaintiffs therefore filed formal objections to Intervenors' rebuttal designations. *See* Dkt. 84. Soon thereafter, *Intervenors agreed to withdraw lines 47:16 to 48:15 of the designations*. *See* Spear Decl. ¶ 8; *id*., Ex. B. As a result, the disputed portions of Mr. Marston's deposition testimony, i.e., lines 47:16 to 48:15, were not admitted at the first trial. *See* Dkt. 86 (Stipulation Regarding Plaintiffs' Objections to Defendant-Intervenors' Deposition Designations of Christopher Marston).

Surprisingly, on September 18, 2017, Intervenors *again* designated lines 47:16 to 48:15 of Mr. Marston's deposition testimony. *See* Spear Decl. ¶¶ 9-11; *id*., Ex. C.[2] Accordingly, Plaintiffs again conferred with Intervenors and again explained their objections to those designations. Even though Intervenors agreed to withdraw lines 47:16 to 48:15 before the first trial, they refused to do so before the upcoming second trial. Intervenors have not explained why their position has changed. *See id*. ¶¶ 12-13. Thus, once again, Plaintiffs are forced to file formal objections to Intervenors' designations of Mr. Marston's deposition testimony to prevent Intervenors from improperly using the attorney-client privilege as a sword and a shield.

---

[2] It appears that Intervenors tried to designate the disputed portions of Mr. Marston's deposition testimony on September 14, 2017, which was the deadline for serving their rebuttal designations. *See* Dkt. 173 ¶ 10(b). But Intervenors inadvertently failed to transmit their rebuttal designations to the other parties on September 14. Thus, Plaintiffs became aware of the disputed designations for the first time on September 18—four days after the deadline for Intervenors to serve their rebuttal designations.

### III.     ARGUMENT

The attorney-client privilege "promote[s] broader public interests in the observance of law and administration of justice" by "encourag[ing] full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Nonetheless, it represents "an obstacle to the investigation of the truth" and is therefore "strictly confined within the narrowest possible limits consistent with the logic of its principle." *N.L.R.B. v. Harvey*, 349 F.2d 900, 907 (4th Cir. 1965) (quotation marks and citation omitted).

Consistent with that limiting principle, courts routinely hold that a party who relies on privileged communications to support a claim or defense necessarily waives the attorney-client privilege and must produce privileged communications related to that claim or defense. *See, e.g.*, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing *or describing* an attorney client communication.") (emphasis added) (cited with approval in *Shaheen v. WellPoint Companies, Inc*., 490 F. App'x 552, 557 (4th Cir. 2012)); *LendingTree, LLC v. Zillow, Inc*., No. 3:10-CV-439-FDW-DCK, 2013 WL 6385297, at *7 (W.D.N.C. Dec. 6, 2013) (ordering disclosure of privileged communications where, as here, party referred to those communications in discovery materials); *Cornett Mgmt. Co., LLC v. Lexington Ins. Co.*, No. CIV.A. 5:04-CV-22, 2007 WL 1140253, at *6 (N.D. W. Va. Apr. 17, 2007) (ordering disclosure where party put privileged communications at issue and communications were "crucial to knowing the prudence of Defendant's actions"); *see also Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) (ordering disclosure where party asserted its position was reasonable based on advice of counsel).

This long-standing rule is rooted in basic fairness. Were it otherwise, then a party could disclose privileged communications that favor its position while withholding unfavorable

communications. *See, e.g.*, *Elat v. Emandopngoubene*, No. PWG-11-2931, 2013 WL 1146205, at *6 (D. Md. Mar. 18, 2013) (rule "prevent[s] a party from asserting advice of counsel only to its benefit, thereby eliminating the risk that a party will attempt to use the advice-of-counsel as both a sword and a shield"). That, in turn, "would pervert [the attorney-client privilege's] essential purpose and transform it into a potential tool for concealment of unconstitutional conduct behind a veil of confidentiality." *Hearn v. Rhay*, 68 F.R.D. 574, 582 (E.D. Wash. 1975) (in civil rights case, ordering disclosure of legal advice on which state actor purportedly relied).

Here, Intervenors seek to admit portions of Mr. Marston's testimony indicating that he and others relied on legal advice to assess the legality of their draft plans. Intervenors have not denied that they intend to rely on Mr. Marston's testimony to defend against Plaintiffs' claims, including Plaintiffs' arguments that race predominated and that Intervenors lacked a "strong basis in evidence" for their use of race. *Bethune-Hill v. Va. St. Bd. of Elections*, 137 S. Ct. 788, 801 (2017). Intervenors have thus taken "affirmative steps" to inject the advice of counsel into this case for their own benefit, thereby waiving the t privilege. *Elat*, 2013 WL 1146205, at *7 (party waives privilege if it takes "affirmative steps to place the privileged communication into issue for [its] own benefit"). Accordingly, this Court should exclude the disputed designations. Alternatively, this Court should order Intervenors to produce the legal advice described in the disputed designations and authorize an immediate deposition of Mr. Marston regarding that advice so that Plaintiffs (and this Court) will not be unfairly prejudiced. *See Small v. Hunt*, 152 F.R.D. 509, 512 (E.D.N.C. 1994) (explaining that "[s]elective use of privileged information by one side may 'garble' the truth"); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 413 (D. Del. 1992) ("Where a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture.").

## IV. CONCLUSION

Intervenors may rely on the attorney-client privilege to shield the legal advice on which Mr. Marston and his clients relied, or they may waive the privilege and rely on that advice to defend this case. *They cannot do both*. Thus, Plaintiffs respectfully request that this Court exclude lines 47:16 to 48:15 of Mr. Marston's deposition transcript.

Dated: September 25, 2017
By: */s/ Aria Branch*
Marc Erik Elias (*pro hac vice*)
Bruce V. Spiva (*pro hac vice*)
Aria Branch (VSB No. 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6338
Facsimile: 202.654.9106
Email: ABranch@perkinscoie.com
Email: MElias@perkinscoie.com
Email: BSpiva@perkinscoie.com

Kevin J. Hamilton (*pro hac vice*)
Abha Khanna (*pro hac vice*)
Ryan Spear (*pro hac vice*)
William B. Stafford (*pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: KHamilton@perkinscoie.com
Email: AKhanna@perkinscoie.com
Email: BStafford@perkinscoie.com
Email: RSpear@perkinscoie.com

*Attorneys for Plaintiffs*

137050728.1

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September, 2017, the foregoing was filed and served on all counsel of record pursuant to the Court's electronic filing procedures using the Court's CM/ECF system.

By: /s/ Aria C. Branch
Aria C. Branch (VSB # 83682)
Marc Erik Elias (admitted pro hac vice)
Bruce V. Spiva (admitted pro hac vice)
Elisabeth C. Frost (admitted pro hac vice)
John K. Roche (VSB # 68594)
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

*Attorneys for Plaintiffs*