**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS, *et al.*,<br><br>    Defendants. | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**PLAINTIFFS' REPLY TO DEFENDANT-INTERVENORS'
OBJECTIONS TO PLAINTIFFS' DISCOVERY DESIGNATIONS**

## I.   INTRODUCTION

Plaintiffs have designated portions of the deposition of Delegate Roslyn Tyler (the delegate who represents House District 75) and portions of the deposition of Christopher Marston (a consultant who helped Intervenors draw the House districts challenged in this case). Defendant-Intervenors ("Intervenors") object to *some* of the Tyler designations and *all* of the Marston designations (collectively, "Plaintiffs' Designations"). *See* Dkt. 202. Intervenors' objections misrepresent the content of Plaintiffs' Designations, mischaracterize Plaintiffs' reasons for offering the testimony, and misstate the governing law. Intervenors' objections to the designations of Mr. Marston's testimony are also strikingly inconsistent. This Court should reject Intervenors' objections and admit Plaintiffs' Designations over those objections.[1]

---

[1] Relatedly, Plaintiffs have objected to Intervenors' counter-designations of Mr. Marston's deposition because (a) those counter-designations describe legal advice that Mr. Marston sought and received during the redistricting process and (b) Intervenors seek to rely on that advice at trial while, at the same time, withholding it as privileged. *See* Dkt. 200. Using the attorney-client privilege as both a sword and a shield in that way is flatly impermissible.

- 2 -

## II. ARGUMENT

### A. Tyler Designations

Both parties have designated portions of Delegate Tyler's deposition. *See* Dkt. 202 at 1 n.1; Dkt. 202-1. Intervenors object to some but not all of Plaintiffs' designations. Specifically, Intervenors object to the following designations: (1) lines 63:24 to 66:16 and 67:2-15; (2) lines 70:16 to 76:17; and (3) lines 81:20 to 82:16 and 84:6-10. Intervenors' arguments are meritless.

#### 1. Lines 63:24 to 66:16 and 67:2-15

Much of this passage was admitted without objection at the first trial. *See* Dkt. 90-2, Ex. B (parties' conformed designations of Tyler deposition). In it, Plaintiffs' counsel shows Delegate Tyler email communications between a House staffer and Delegate Chris Jones, the architect of the Challenged Districts, to inquire into Delegate Tyler's own views and experiences. The email explicitly refers to the "55 percent [Black Voting Age Population] threshold" that Delegate Jones used to structure the Challenged Districts. *See* Dkt. 202-1 at 65:13-21. Both this Court and the U.S. Supreme Court have held that Intervenors used that racial quota to draw the Challenged Districts. *See Bethune-Hill v. Va. St. Bd. of Elections*, 141 F. Supp. 3d 505, 522 (E.D. Va. 2015) ("[T]he 55% BVAP floor was . . . applied across the board to all twelve of the Challenged Districts[.]"), *aff'd in part, vacated in part*, 137 S. Ct. 788, 794 (2017) (Challenged Districts "were drawn with a goal of ensuring that each district would have a black voting-age population (BVAP) of at least 55%"). Intervenors continue to deny that fact. *See, e.g.*, Dkt. 202 at 3. That likely explains much of their resistance to this specific designation.[2]

---

[2] Notably, Intervenors' denial of the 55% BVAP rule in their objections contradicts their admissions, in their pretrial brief, that Delegate Jones *did* use a 55% BVAP rule to draw the Challenged Districts. *See* Dkt. 203 at 3 ("The House had an equally strong basis for maintaining 55% BVAP in all ability-to-elect districts as it did for HD75."); *id*. at 11 (referring to "the House's 55% BVAP goal"); *id*. at 26 (same); *id*. at 29 (same).

In any case, Intervenors assume that Plaintiffs designated this passage to elicit testimony about the email itself, which Delegate Tyler (admittedly) did not receive. *See* Dkt. 202 at 3. If Intervenors had conferred with Plaintiffs on that issue (they did not), then Plaintiffs could have explained that Intervenors' assumption is wrong. Plaintiffs designated this portion of the transcript because it helps show that Delegate Tyler was fully aware of the 55% BVAP rule and its role in the redistricting process. *See* Dkt. 202-1 at 66:13-16 ("Q: Is [Delegate Jones's use of a 55% BVAP threshold] consistent with your understanding during the redistricting process and what you heard during the process? A: Yes."). Of course, Intervenors cannot object to Delegate Tyler testifying about her own understanding and her own recollections. Nor can they deny that her understanding of the 55% BVAP rule is relevant given Delegate Jones's purported reliance on her advice and input. *See, e.g.*, Trial Tr. at 490:10-13 ("JUDGE KEENAN: Do you recall any other delegates who specifically asked for 55 percent? [DELEGATE JONES]: Delegate Tyler, to my knowledge, my recollection, excuse me, and Delegate Spruill."); *id.* at 494:3-6 ("JUDGE PAYNE: Where did the 55 percent figure come from in the first place? How did we ever get that on to the table for discussion? [DELEGATE JONES]: Well, Delegate Tyler, I know, had serious concerns . . . ."). The balance of the designated portion is essential context for understanding Delegate Tyler's testimony about her understanding of the 55% BVAP rule.

Lacking any legal basis to exclude this passage, Intervenors try to re-interpret it to their own liking. Specifically, Intervenors argue that Delegate Tyler's testimony shows that she was *not* aware of the 55% BVAP rule. *See* Dkt. 202 at 3. That is a puzzling claim. This Court has already held that Delegate Jones arrived at the 55% figure based largely on his views of Delegate Tyler's district and his discussions with Delegate Tyler. *See Bethune-Hill*, 141 F. Supp. 3d at 522. Putting that aside, Intervenors mischaracterize Delegate Tyler's testimony, which makes

abundantly clear that she and others *were* aware of the 55% BVAP rule and understood its significance. *See, e.g.*, Dkt. 202-1 at 69:1-11 ("Q: Okay. Is it fair to say . . . that you heard [about the 55% BVAP rule] so much [during the redistricting process] that it seemed to be a matter of common knowledge, at least amongst people who represented the majority-minority districts? A: Probably so. I guess it's correct to say that. *It was common knowledge*. Q: So if you walked up to another delegate and said, I don't know about this 55 percent thing, they would probably know what you were talking about? A: They probably would, yeah.") (emphasis added).[3]

Intervenors identify no valid reason to exclude this passage, including the lines that were admitted at the first trial. Lines 63:24 to 66:16 and 67:2-15 should be admitted.

### 2. Lines 70:16 to 76:17

Much of this passage was also admitted without objection at the first trial. *See* Dkt. 90-2, Ex. B. In it, Plaintiffs' counsel shows Delegate Tyler a transcript of a public hearing to inquire into Delegate Tyler's own views and experiences. Delegate Tyler then testifies as to her own views and experiences. *See* Dkt. 202-1 at 71:12-15 ("Q: And is that consistent with your understanding that there was a predetermined 55 percent BVAP level at least for some districts? A: Right."); *id.* at 73:16-20 ("Q: Is that consistent with your understanding that, in drawing the new map, Delegate Jones adopted a policy under which all the majority-minority districts had to have at least 55 percent BVAP? A: Yes."). Delegate Tyler may testify about her own memories and beliefs, and the balance of the designated testimony is essential context for understanding her testimony. Lines 70:16 to 76:17 should be admitted.

---

[3] It is true, as Intervenors argue, that Delegate Tyler sometimes equated the 55% BVAP rule with 55% Democratic performance because, in her view, "most of the time blacks vote Democratic." Dkt. 202-1 at 62:22-25. But that hardly vindicates Delegate Jones's reliance on Delegate Tyler because using race as a proxy for politics is no less constitutionally suspect. *See Cooper v. Harris*, 137 S. Ct. 1455, 1473 n.7 (2017) ("[T]he sorting of voters on the grounds of their race remains suspect even if race is meant to function as a proxy for other (including political) characteristics.").

- 4 -

### 3. Lines 81:20 to 82:16 and 84:6-10

In this passage, Plaintiffs' counsel shows Delegate Tyler a transcript of a public hearing to inquire (again) into Delegate Tyler's own views and experiences. In that public hearing, Delegate Jones claims that he had a meeting with Delegate Tyler and solicited specific input from her during the redistricting process. In her deposition, Delegate Tyler makes clear that there was no such "meeting." Dkt. 202-1 at 82:11-16. The remainder of the disputed designation is essential for understanding this exchange.

Delegate Tyler is allowed to testify about her own recollections and experiences. And these specific recollections are crucial because they call into question Delegate Jones's credibility *and* Intervenors' claims that Delegate Jones's line-drawing decisions were based on careful, extensive consultations with delegates. *See, e.g.*, Dkt. 203 at 1 (praising Delegate Jones because he "held hearings across the state and met with about 80 of the 100 Delegates to learn about their districts"). Lines 81:20 to 82:16 and 84:6-10 should be admitted.

### B. Marston Designations

As an afterthought, Intervenors object to all designations of Mr. Marston's deposition (including, presumably, Intervenors' own designations) because Mr. Marston is not "named on any witness list" and "has not been deemed unavailable as a witness for the purpose of satisfying any exception to the rule against hearsay." Dkt. 202 at 6. The parties stipulated to admission of portions of Mr. Marston's testimony before the first trial. *See* Dkt. 90-3, Ex. C.

Intervenors' arguments are hard to follow. No rule requires that a deponent be named on a witness list for his or her deposition testimony to be designated and admitted. (After all, one of the main purposes of designating deposition testimony is to ensure that the record includes testimony from witnesses who are not called at trial.) Nor have Intervenors identified any authority holding that a deponent must be deemed "unavailable" for his or her deposition

- 5 -

testimony to be admitted. Moreover, that latter argument proves far too much. If, as Intervenors argue, *Plaintiffs'* designations of the *Marston* deposition must be excluded because Plaintiffs do not plan to call him to testify at trial, then *Intervenors'* designations of the *Tyler* deposition must be excluded on the same ground. Notably, Intervenors have not argued or suggested that their designations of the Tyler deposition should be excluded—suggesting that even they put little stock in this argument.

In any case, the answer to Intervenors' hearsay argument is Federal Rule of Evidence 801(d)(2)(D), under which statements made by a "party's agent or employee" are not hearsay. As noted above, Mr. Marston has served as a consultant for the Intervenors since at least 2010 and likely continues to do so. Thus, his statements are not hearsay and Plaintiffs' designations of the Marston deposition should be admitted.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court reject Intervenors' objections to Plaintiffs' Designations and admit Plaintiffs' Designations at trial.

DATED: September 27, 2017

By: */s/ Aria C. Branch*
Aria C. Branch (VSB # 83682)
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Elisabeth C. Frost (admitted *pro hac vice*)
John K. Roche (VSB # 68594)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

- 7 -

                Kevin J. Hamilton (admitted *pro hac vice*)
                Abha Khanna (admitted *pro hac vice*)
                Ryan Spear (admitted *pro hac vice*)
                William B. Stafford
                      (admitted *pro hac vice*)
                **PERKINS COIE LLP**
                1201 Third Avenue, Suite 4900
                Seattle, WA 98101-3099
                Telephone: 206.359.8000
                Facsimile: 206.359.9000

                *Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of September, 2017, the foregoing was filed and served on all counsel of record pursuant to the Court's electronic filing procedures using the Court's CM/ECF system.

By: <u>/s/ Aria C. Branch</u>
Aria C. Branch (VSB # 83682)
Marc Erik Elias (admitted pro hac vice)
Bruce V. Spiva (admitted pro hac vice)
Elisabeth C. Frost (admitted pro hac vice)
John K. Roche (VSB # 68594)
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

*Attorneys for Plaintiffs*