# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF VIRGINIA

 3                       RICHMOND DIVISION


 4


 5   --------------------------------------
                                          :
 6   GOLDEN BETHUNE-HILL, an              :
     individual, et al.                   :   Civil Action No.
 7                                        :   3:14cv852
                                          :
     vs.                                  :
 8                                        :
     VIRGINIA STATE BOARD OF ELECTIONS,   :   September 29, 2017
 9   et al.                               :
                                          :
10   --------------------------------------


11


12      COMPLETE TRANSCRIPT OF THE FINAL PRETRIAL CONFERENCE

13        BEFORE:   THE HONORABLE ROBERT E. PAYNE

14                  THE HONORABLE BARBARA M. KEENAN


15


16   APPEARANCES:

17   Kevin J. Hamilton, Esquire
     Perkins Coie, LLP
18   1201 Third Avenue
     Suite 4800
19   Seattle, Washington  98101

20   Aria C. Branch, Esquire
     Perkins Coie, LLP
21   700 13th Street NW
     Suite 600
22   Washington, D.C.  20005
     Counsel for the plaintiffs

23

24              Peppy Peterson, RPR
              Official Court Reporter
25          United States District Court
```

```
1    APPEARANCES:  (cont'g)

2    Trevor S. Cox, Esquire
     Office of the Attorney General
3    202 North Ninth Street
     Richmond, Virginia  23219
4    Counsel for the defendants

5

6    Katherine L. McKnight, Esquire
     Baker & Hostetler, LLP
7    1050 Connecticut Avenue NW
     Suite 1100
8    Washington, D.C.  20036

9    E. Mark Braden, Esquire
     Baker & Hostetler, LLP
10   Washington Square
     1050 Connecticut Avenue, NW
11   Washington, D.C.  20036
     Counsel for intervenor defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

JUDGE PAYNE:  This is the final pretrial conference in Golden Bethune-Hill against Virginia State Board of Elections and Virginia House of Delegates, 3:14CV852, and Judge Allen is not here but will review the transcript of these proceedings which I'm sure you'll want yourselves, and Judge Keenan and I will be presiding over it.

Starting over here on the left with Mr. Hamilton, if you would give your name, who you represent so that the record will be clear.

MR. HAMILTON:  It's Kevin Hamilton from the Perkins Coie law firm representing the plaintiffs.  Good morning, Your Honors.

MS. BRANCH:  Aria Branch representing the plaintiffs, also from Perkins Coie.  Good morning.

MR. COX:  Trevor Cox from the Attorney General's Office representing the defendants.

MR. BRADEN:  Mark Braden.  I represent the defendant intervenors.  I'm at Baker Hostetler.

MS. McKNIGHT:  Good morning.  Kate McKnight.  I'm with Baker Hostetler, and we represent defendant intervenors.

JUDGE PAYNE:  Last night, you all gave us a surprise, noted with affection, when you filed --

1                    (Discussion off the record.)

2

3              JUDGE PAYNE:   28 hours is what it looks like for a

4     trial.   Is my math roughly correct?

5              MR. HAMILTON:   It is roughly correct, Your Honor.

6              JUDGE PAYNE:   Well, I don't know how we're going to

7     get this accomplished, but you might as well alert your

8     witnesses that if we go beyond the allotted time -- and Judge

9     Allen may have some problems on the 13th.   We may be able to

10    squeeze some in on the 13th, but if we don't, we're going to

11    have to go into November, well into November before anybody can

12    do it because of previous commitments.

13             Judge Keenan has a full docket, I'm going to be

14    sitting with the Ninth Circuit, and all of October I have a

15    criminal trial that is going take up time as well.   So we're

16    looking at going -- you might as well let your witnesses and

17    clients know that.   We kind of hope that you at least can

18    truncate some of this and see what you think.

19             JUDGE KEENAN:   From my perspective, we're talking

20    about the middle of November.

21             JUDGE PAYNE:   Me, too.   I think Judge Allen is in the

22    same situation.   The Court is in the same basic posture.

23             All right, you have these discovery designations over

24    which you have fights.   The plaintiff objects to Marston's

25    deposition testimony to the extent that it's cited at 47:16 to

1    48:18 of his deposition, and that is docket number 200.   The

2    objection is that, I guess, that they surprised you with this

3    testimony, and I'm confused, because that testimony was offered

4    in the previous hearing, and you all worked it out and, I

5    think, ultimately withdrew it.   So have you, since you filed

6    your papers, resolved this dispute?

7            The defendant says that it's not -- it doesn't

8    make -- they're not relying on privilege -- I mean on the

9    advice of the client -- of the lawyer, and they're not

10   introducing the substance of the advice.   It's just part of the

11   context that says they did seek advice.   Why does the defendant

12   want that testimony in?

13           MS. McKNIGHT:   Your Honor, it's flipped.   Pardon me.

14   Defendant intervenors would like this testimony in, and

15   plaintiffs have objected to it.

16           JUDGE PAYNE:   Why do you want it in?

17           JUDGE KEENAN:   What is the value of it?

18           MS. McKNIGHT:   We believe it provides context to the

19   question about how did defendant intervenors, or how did

20   specifically Chris Marston, in his work with the House

21   Republican Caucus, perform his analysis, how did he gather

22   data, what did he do in order to perform the type of analysis

23   that was required during the map-drawing.

24           JUDGE KEENAN:   But advice of counsel isn't a defense

25   or isn't any kind of a mitigating consideration here, so what

1   evidentiary value does it have?

2        MS. McKNIGHT:  We believe it provides a full picture

3   of a group of people working diligently, including gathering

4   information, seeking advice of counsel to determine that

5   whatever they were doing was proper.

6        JUDGE PAYNE:  Let's fast-forward a little bit to the

7   briefs after the testimony is in and assume that the

8   plaintiff's objection is overruled, all right?  How is that

9   fact, that is that he says, so, we did our best and sought

10  legal advice to see if what we were doing appeared to be

11  compliant, and then he later says, we would ask our attorneys

12  for their opinion as to whether or not they thought that there

13  was retrogression and, more importantly, whether it was

14  pre-cleared, et cetera, and then he refers to consulting the

15  lawyer, how is that going to appear -- how are you going to use

16  that at the end of the case so that I understand -- I think it

17  would help us to understand where it fits in in the overall

18  scheme of the case since advice of counsel is not a defense and

19  not tendered as a defense.

20       MS. McKNIGHT:  I think that this issue comes into

21  play not on the predominance inquiry but on the narrow

22  tailoring inquiry, what was done, did defendant intervenors --

23  what kind of effort did defendant intervenors make to determine

24  what level of black voting-age population would be needed in

25  these districts.  We think that part of that effort that they

1    made was they sought advice of counsel.

2              JUDGE PAYNE:  What's the significance of seeking

3    advice of counsel as to narrow tailoring, I think, is probably

4    then the question that I have.

5              JUDGE KEENAN:  We tried hard, it seems to me, is not

6    really relevant.  It's what's the effect of what you achieved,

7    was that narrowly tailored.  Isn't that what we're looking at

8    here?

9              MS. McKNIGHT:  We are looking at the effect of narrow

10   tailoring, but we believe that, as the Supreme Court has asked

11   us to do, to take a holistic view of what happened, what was

12   the process like, what was done, and we think a necessary part

13   of that process was that they sought legal counsel at some

14   point.  Is this a primary defense; no.  We made that point in

15   our brief.  That's why it's not put at issue.

16             Another point we make in our brief is that the text

17   here does not divulge any attorney-client communication, any

18   privileged attorney-client communication.  So, therefore, there

19   is no waiver.  There can be no waiver.

20             JUDGE KEENAN:  It seems to be content-void, I guess

21   is my point.  They went to counsel, maybe they got good advice,

22   maybe they got bad advice.  Who cares?  You know, of what legal

23   significance is that?

24             MS. McKNIGHT:  I see.  Well, Your Honor, I'd say --

25             JUDGE KEENAN:  Good faith isn't an issue in this

1   case, is it?

2   MS. McKNIGHT:  Well, we believe that if we are asked

3   to take a holistic view of what was done in 2011 to redraw the

4   map, a part of that is that lawyers were consulted at some

5   point, and --

6   JUDGE PAYNE:  What case holds that consulting counsel

7   is part of the analysis to be made in a narrow tailoring

8   analysis?  Is there any case that takes that -- uses that as a

9   factor in determining whether there is or is not narrow

10   tailoring?

11   MS. McKNIGHT:  That's a good question, Your Honor,

12   and I do not know the answer to it.

13   JUDGE PAYNE:  I kind of quickly tried to find

14   something, and I couldn't find it.  All right, Mr. Hamilton.

15   MR. HAMILTON:  Your Honor, I'm not sure I have more

16   to add than what we said in the brief.  There is -- I think the

17   question that the Court has posed is exactly the right

18   question.  The fact that they sought legal advice is irrelevant

19   to the issue.  It's not like the effort -- we took a lot of

20   effort is relevant at all.

21   What matters, especially for narrow tailoring, is are

22   the districts, in fact, narrowly tailored, not did we really

23   try.  Maybe we missed but we really tried hard.  That isn't --

24   that isn't a defense.

25   And the question isn't does it divulge privileged

1    information.  What they're offering the testimony to show is

2    that they consulted a lawyer and relied on legal advice, but

3    they don't want to tell us what the legal advice was.

4                JUDGE PAYNE:  There are plenty of instances where the

5    fact that you consulted the lawyer is a pertinent fact in the

6    analysis without constituting a waiver of the advice so long as

7    you don't use the advice one way or the other, but I just don't

8    see where it has pertinence.  I'll tell you what -- if you have

9    anything else other than what you have to say, either one --

10   Mr. Hamilton, I interrupted you.

11               MR. HAMILTON:  Your Honor, I absolutely agree with

12   you that there are instances in which the fact of seeking legal

13   advice could be a relevant fact.

14               JUDGE PAYNE:  It's not here.

15               MR. HAMILTON:  It's not here, and there's no cases

16   that have been provided by either side to identify that it is

17   relevant.  I just don't think it makes any fact of significance

18   to the litigation more or less likely and, thus, it should be

19   excluded.

20               MS. McKNIGHT:  Your Honor, if I may briefly,

21   plaintiff's only objection is waiver of attorney-client

22   privilege.  You asked for cases earlier.  Every case cited in

23   these briefs, and I believe between the plaintiffs and the

24   defendant intervenors we covered the Fourth Circuit case law

25   and then, in addition to that, other case law that's been cited

1    within the Fourth Circuit.  All of it is clear that relevance

2    isn't part of the analysis of whether attorney-client privilege

3    was waived.

4         So on plaintiff's objection on attorney-client

5    privilege, the focus is, was this an explicit waiver or was it

6    an implied waiver.  On both counts, plaintiffs fail for the

7    reasons I was describing earlier and for the reasons described

8    in our brief.  And those are there was no communication

9    divulged.  Not only that, it has not been put at issue by

10   defendant intervenors.

11        JUDGE PAYNE:  Your position basically is the only

12   objection they made is the waiver because they haven't

13   disclosed the substance of the advice, and since you win on the

14   fact that it's not a waiver, they lose on their objection.

15        MS. McKNIGHT:  Correct, Your Honor.

16        JUDGE KEENAN:  Does that require the Court to hear

17   that testimony, however?  I mean, I don't understand your

18   position on that.  If we find that it's otherwise irrelevant to

19   the inquiry, why do we have to be bound to hear it just because

20   they failed to raise it?  Doesn't it make sense to clean things

21   up a little bit ahead of time?

22        MS. McKNIGHT:  Fair enough.  I see, Your Honor.  And

23   to put this in a bit of context, these are several lines in the

24   deposition testimony of a gentleman who I don't believe was

25   referred to at all in the first trial or in the first trial

1    briefs, to put in context his role.  I don't know how

2    plaintiffs intend to use him.  Defendant intervenor's

3    designations in his testimony were cross designations.  We did

4    not designate from his testimony --

5          JUDGE PAYNE:  Excuse me.  Is he going to testify at

6    trial live?

7          MR. HAMILTON:  No, Your Honor.

8          MS. McKNIGHT:  No, Your Honor.

9          JUDGE PAYNE:  Then if you have their designations,

10    you know how they're going to use them.  I guess the bottom

11    line is, maybe it could come in as some kind of fairness

12    designation in response to something they're doing, but it

13    would have to be shown that what they have posited as testimony

14    that's been designated animates your right to make this a

15    fairness designation.  For example, if they say -- if they have

16    a question and they designated it and it came in and says,

17    well, you didn't talk to a lawyer, did you, this testimony

18    would clearly be relevant to put context to that as a fairness

19    designation.  But unless they have done something that puts it

20    into play, it seems to me that argument doesn't fly.

21          MS. McKNIGHT:  I see, Your Honor.  With respect to

22    that, this was a counter designation.  They have -- what

23    plaintiffs have designated cut off an answer midway.  One way

24    to see this is on page two of defendant intervenor's brief.

25    Plaintiffs posited the question, "How did you determine whether

1    a minority group or minority groups would have a lesser

2    opportunity to elect a candidate of their choice?  Answer:"

3    Mr. Marston began to answer, and then in the last line,

4    plaintiffs have cut off part of his answer.

5         JUDGE PAYNE:  You mean the italicized part of the

6    answer is the only part to which they are objecting; is that

7    what you are saying?

8         MS. McKNIGHT:  That's right.  They're objecting

9    starting at the double asterisks following on to the next page

10   to the end of the asterisks.  So to answer your question have

11   plaintiffs put this at issue, yes, they have.  In designating

12   this question and this partial answer, they have put at issue

13   his complete answer.

14        JUDGE PAYNE:  All right, Mr. Hamilton.

15        MR. HAMILTON:  I mean, we didn't -- there's a

16   disconnect here.  What the Court suggested is it could be

17   relevant if the question was asked, well, you didn't seek

18   advice of counsel, did you, and the answer would clearly be

19   pertinent to that.  That's not the question we asked.

20        JUDGE PAYNE:  I understand.  I was just using that as

21   an instance when, quite clearly, it would be.  That is

22   certainly not an exclusive circumstance in which it would be.

23   She's saying that all you are trying to do is truncate his

24   answer.  What do you care if it's irrelevant that they sought

25   counsel to narrow tailoring?  What do you care that it comes in

1   in order to supply a full answer to the question that you all

2   asked?

3           MR. HAMILTON:  Because in fairness, Your Honor, we've

4   never seen the legal advice that was offered.  Look at the

5   answer.  "So we did our best and sought legal advice to see

6   what we were doing appeared to be compliant."  The implication

7   of what he's saying is that they had the blessing of the

8   lawyer.  How did you -- the question was, "How did you

9   determine whether there was an opportunity to elect?"  Well, we

10  did this secret thing with the lawyers.  The implication is the

11  lawyer said -- they did a polarized voting analysis, they

12  provided us legal advice that we were legally compliant.

13          It may well be that the answer is, you are not

14  legally compliant.  This is crazy.  You can't have a 55 percent

15  flat rule applicable across all of the districts.  That's

16  Alabama.  We've never seen that, because they've never produced

17  it.  They're trying to get the benefit of seeking legal advice

18  without actually producing what the legal advice was.  So

19  that's the problem.  It's not responsive to the question.  It

20  was tacked on by the witness in an effort to --

21          JUDGE PAYNE:  Did you all preserve for resolution at

22  a subsequent time the objections to the form of the question or

23  the responsiveness of the answer, or are you bound with this

24  nonresponsive answer because you didn't preserve that issue for

25  later adjudication?  Ordinarily the objection to form of the

1    question and responsiveness of the answer has to be made at the

2    time the question is asked.

3              MR. HAMILTON:   There was no objection raised by

4    defendant intervenors to the form of the question, and there

5    was no objection to the answer and a motion to strike as

6    nonresponsive.

7              JUDGE PAYNE:   I know that.  I see that.  My question

8    is, did you all agree at the beginning of the deposition to

9    reserve for later adjudication those two points thereby

10   eliminating the need to make the objection contemporaneously?

11             MR. HAMILTON:   We didn't in this deposition or in any

12   other deposition in this matter, and I don't think I've ever

13   agreed to that in any deposition I've taken in 30 years.  Most

14   of the courts before which I've practiced reserve those so that

15   at the time that it is offered, we can raise that objection

16   when presented.

17             JUDGE PAYNE:   The ruling is preserved but the

18   objection still has to be made.  Do you have anything else?

19             JUDGE KEENAN:   No, thank you.

20             MS. McKNIGHT:   Briefly, Your Honor, plaintiffs had an

21   opportunity in 2015 to ask what this advice was and to either

22   get the answer then or draw an assertion of the privilege.

23   They did not ask that question.  At the time they asked these

24   questions, they got these responses.

25             They had the opportunity to draw the objection or

```
 1    draw the answer at that point.  Apparently, plaintiffs were not

 2    interested at the time, but the point is they did not ask the

 3    question at the time, what is the advice that you got.

 4              JUDGE PAYNE:  I think you've presented it.  Why

 5    don't -- we'll caucus, and we'll let you know what our ruling

 6    is.

 7              MS. McKNIGHT:  Thank you, Your Honor.

 8              MR. HAMILTON:  Thank you, Your Honor.

 9              JUDGE PAYNE:  Next thing is docket number -- excuse

10    me.  202, defendant intervenor's objections to plaintiff's

11    discovery designations, Roslyn Tyler, and is this an objection

12    to Marston's testimony, too?

13              MS. McKNIGHT:  Correct, there are two objections by

14    defendants intervenors, two sets.  One is to designations to

15    Delegate Tyler's testimony, and the other is to designations of

16    Christopher Marston's designations.

17              JUDGE PAYNE:  Let me get Tyler's out here and see

18    what you are talking about.  All right, in your coloring scheme

19    here, refresh me.  Your exhibits are -- objections are where?

20              MS. McKNIGHT:  Objections are in pink, and this is

21    Exhibit A to defendant intervenor's -- pardon.  Would you --

22              JUDGE KEENAN:  I'm fine.

23              JUDGE PAYNE:  It's page 63, line 24, all the way

24    to --

25              MS. McKNIGHT:  So the first objection is 63:24 to
```

1    66:16.

2              JUDGE PAYNE:  Yes.  And the testimony to which

3    objection is made is offered by whom for what purpose?

4              MS. McKNIGHT:  So, Your Honor --

5              JUDGE PAYNE:  By the plaintiff.

6              MS. McKNIGHT:  That's right.  Plaintiffs designated

7    in Delegate Tyler's deposition testimony all of the green text,

8    and where there's an objection you'll see the numbers to the

9    left are in green where plaintiffs designated that material.

10             Defendant intervenors counter-designated the yellow

11   text.  Defendant intervenors have an objection where there is

12   pink text.

13             JUDGE PAYNE:  Your objection to, "Mr. Spear:  I'm

14   handing to the court reporter an exhibit she'll mark as

15   Exhibit 9."  And you are objecting to the exhibit as well as

16   the testimony related to it?

17             MS. McKNIGHT:  Correct, and if you will bear with me,

18   I just want to be clear, because I don't want this to get

19   confused in the mix.  Where we are objecting to our

20   counter-designations, those counter-designations are fairness

21   designations related to plaintiff's designations.  So where you

22   you see pink objections, where there's yellow numbers, that's

23   where we're objecting to our fairness designations because we

24   believe that the entire conversation should be withdrawn.

25             But to getting back to your point, Your Honor,

1   Exhibit 9, I am not sure whether plaintiffs are seeking to

2   submit Exhibit 9 as to the -- as an exhibit to this deposition

3   testimony.  We counter-designated this material to highlight

4   the fact that this testimony is related to this Exhibit 9, and

5   Delegate Tyler is not copied on it, never received it, never

6   saw it.  So it lacks any foundation to provide testimony about

7   Exhibit 9.

8          MR. HAMILTON:  Your Honor, the plaintiffs designated

9   this portion of the transcript because it helps to show

10  Delegate Tyler was fully aware of the 55 percent black

11  voting-age population rule and its role in the redistricting

12  process.  So, for example, on page 66 in the middle of this

13  objection, line 13, "Question:  Is delegate Jones' use of

14  55 percent BVAP threshold...is this consistent with your

15  understanding during the redistricting process and what you

16  heard during the process?

17          "Answer:  Yes."

18          Delegate Tyler is testifying about her own

19  understanding and her own recollection.

20          JUDGE PAYNE:  There, she is, but for a page and a

21  half beforehand, she's either guessing or talking about what

22  somebody else meant, it looks to me like.  I think -- don't you

23  have to fold your tents on everything but the "So is it," page

24  66, "So is it fair to read that message as" -- I mean, assuming

25  your theory is correct, the best you could get is 66, line six,

1   through line 16.

2          But the real problem is that you are asking her about

3   something she's never seen before, and what are you doing?  You

4   can only do something like that to refresh her memory, and I

5   don't see that there was any refreshing of the memory called

6   for or done here in this testimony.  So why can you ask a

7   witness about a document they've never seen except to refresh

8   their memory?

9          MR. HAMILTON:  Well, that's one purpose, of course,

10  to refresh recollection.  The other would be to set the context

11  of -- I know you haven't seen this document before, but in this

12  document there's X, Y, Z, do you have an understanding of X, Y,

13  Z.  That's the way the document was being used, to set the

14  context for the ultimate question.

15         It's difficult to understand the question and answer

16  from just reading, because it's -- the part that you identified

17  on page 66, that's a reference to a discussion that's been

18  going on for a page and a half preceding that.  Certainly that

19  part is admissible.

20         Is it your understanding, is this consistent with

21  your understanding, and she says, yes, but in order to

22  understand what that "yes" means -- we're not trying to

23  introduce through Delegate Tyler a document she's never seen.

24  Of course we wouldn't do that, Your Honor.

25         JUDGE PAYNE:  I understand.

1          MR. HAMILTON:  But it's only for the context so that

2     when we ask her what's her own understanding, so that she

3     can -- we can understand that.  We're not -- there's no effort

4     here -- the preceding pages are not an effort to introduce, in

5     a backdoor, convoluted way, either the contents of this or to

6     refresh her recollection, and to the extent we need a limited

7     offer, I would say that the plaintiffs were only offering this

8     for the context of Delegate Tyler's answer so that you can

9     understand what she means when she says yes.  That's the only

10    purpose.

11          JUDGE PAYNE:  Is she going to testify at trial?

12          MR. HAMILTON:  She is not.

13          MS. McKNIGHT:  Your Honor, if I may --

14          JUDGE KEENAN:  Seems to me, though, Mr. Phillips, you

15    needed to ask her the questions for context rather than relying

16    on something she had never seen.

17          MR. HAMILTON:  We could have --

18          JUDGE KEENAN:  Seems like you are trying to bolster

19    what she's saying.  You are calling it context, but it seems

20    like it's really shoring up what she's saying.

21          MR. HAMILTON:  There's two ways to do this in a

22    deposition.  The first way is for the lawyer to testify

23    themselves, and say, I'll represent to you, Delegate Tyler,

24    that there's evidence in the record that says A and B and C,

25    and you end up with a page-long question, is that consistent

1    with your understanding.  I suppose opposing counsel would

2    object to the form of that question.

3            This is another way to do it, to actually put the

4    words in front of her and say, I know you've never seen this

5    before, but this is a document that's been produced in this

6    case, it's, we'll represent to you, an authentic document, are

7    the words in this document consistent with your understanding

8    of what you heard in your personal knowledge.

9            So it's not actually intended to offer substantive

10   evidence any more than if a lawyer asks a long question with a

11   long --

12           JUDGE KEENAN:  It seems to me that it's an

13   evidentiary shortcut, and if they let you do it it's

14   acceptable, and if they don't, you are kind of caught, aren't

15   you?

16           MR. HAMILTON:  Well, of course, there was no

17   objection raised during the course of the deposition to the

18   form of the question.  So that was not preserved at the time.

19   That would have allowed us to rephrase the question or alerted

20   us that they had a problem or an objection to asking the

21   question in this way.

22           JUDGE PAYNE:  The right way to ask the question, it

23   seems to me, is to ask her what she understood about the

24   55 percent issue, let her do it.  She says, I don't remember.

25   You show her the document, does -- look at this document and

1    under -- what is it? -- 613 --

2              MR. HAMILTON:  Refreshing recollection rule.

3              JUDGE PAYNE:  She can say either yes or no, and

4    then -- because you can use any document to refresh a witness's

5    recollection.  Anything else on those --

6              MS. McKNIGHT:  If I may, Your Honor --

7              JUDGE PAYNE:  -- at page 63, line 24, to 66, line 66?

8              THE COURT REPORTER:  Line?

9              JUDGE PAYNE:  66.

10             THE COURT REPORTER:  To line 66?

11             JUDGE PAYNE:  Line 66 -- that would be a long

12   deposition, wouldn't it?  Line 16.

13             MS. McKNIGHT:  Your Honor, the first problem -- even

14   with his meaning page 66, line 13 through 16 and this question,

15   is that consistent, the question is, consistent with what?

16   Consistent with her testimony that lacks any foundation about a

17   document she's never seen?

18             So what if we have a witness at trial who testifies

19   that this document means something different?  Does that then,

20   therefore, shift her -- how it was consistent with Tyler's

21   testimony here?  I mean, this is the problem with using a

22   document like this in this way.  Consistent with what?  Her

23   testimony that lacks any foundation about a document that she's

24   never seen.  So I'd say that, you know, the belief that 66 --

25   designating simply page 66, line 13 through 16 or line six

1  through 16 somehow saves this testimony is wrong.

2          JUDGE PAYNE:  All right.

3          MR. HAMILTON:  If I could just respond to that

4  briefly, that's, of course, answered on page 66, line 13,

5  through 16, "is that consistent?"  It answers consistent with

6  what counsel asked.  The rest of the question is, "with your

7  understanding during the redistricting process and what you

8  heard during the process?"  So it's answered by the very text

9  of the testimony.

10         JUDGE PAYNE:  All right, the next objection is page

11  70, line 16, through page 76, line 17; is that right?

12         MS. McKNIGHT:  Correct, Your Honor.

13         JUDGE PAYNE:  Okay.  And here, there is a discussion

14  about a hearing in the redistricting process.

15         MS. McKNIGHT:  That's right, Your Honor.  Plaintiffs

16  used a transcript from a hearing to elicit testimony from

17  Delegate Tyler.  Now, what bears noting is that other testimony

18  that Delegate Tyler provided we have not objected to because it

19  was based on her own recollection.

20         The text we are objecting to is text where plaintiffs

21  elicited testimony from Tyler based on her review of the

22  transcript, not based on her recollection, about statements

23  made by other delegates, Delegates Dance and Jones.

24         Now, it's worth noting that both delegates, Dance and

25  Jones, are due to testify live at trial.  Plaintiff has also

1   deposed both Delegate Dance and Jones, and they're going to be

2   appearing -- they appeared at the last trial, they're appearing

3   again at this trial.  We're not sure why it's so important to

4   get this testimony in, but, simply put, it's eliciting

5   testimony from Tyler about a transcript from a hearing she

6   doesn't even remember, she doesn't remember attending, and it's

7   not about her own statements.  It's not from her own

8   recollection.  It's about statements made by other delegates

9   and those statements as transcribed in this transcript.

10          MR. HAMILTON:  Your Honor, I'd make two points, and

11  the first one I should have said as to the earlier objection,

12  and I'll say it as to this one.  Both of these passages are

13  already in the record.  Both of these passages were marked and

14  admitted into evidence during the first trial, so I'm not quite

15  sure why we're here on either of these objections.  I think

16  both of them have been waived, and it's sort of irrelevant,

17  because the record already contains this very testimony.  So

18  I'm not sure why we're now arguing over something that's

19  already in the record.

20          Second, again, Delegate Tyler is testifying to her

21  own understanding or her own views and experience.  Question on

22  page 71, line 12, "Is that consistent with your understanding

23  that there was a predetermined 55 percent BVAP level for at

24  least some districts?

25          "Answer:  Right."

```
 1              Page 73, line 16 --

 2              JUDGE PAYNE:  Go and look down at some of the other

 3    testimony.  "So do you think it's likely that she discussed the

 4    55 percent predetermined threshold with Delegate Jones?

 5              "Yes.  I don't know for sure, but from reading this."

 6              I don't know that it came in last time, but it wasn't

 7    worth anything, because she didn't know what she was talking

 8    about.  Maybe now is the time to clean it up, isn't it?  What

 9    part do you really want in, because there's an awful lot of it

10    that is nothing but guessing, it looks to me like.

11              MR. HAMILTON:  Page 71, lines 12 through 15, page 73,

12    lines 16 to 20.  These are the answers where she's testifying

13    as to her understanding, and the rest of it is context.  So,

14    you know, I don't know that the Court actually can strike from

15    the record evidence that's already been admitted, and the

16    record has already gone to the Supreme Court and back.  It's

17    the record before the Court.  And so the evidence is already in

18    here.

19              I think, as the Court suggests, all the rest of it is

20    context.  If the Court wants to rule that it goes to the weight

21    and discount this, I think the Court would be entirely -- that

22    would be an appropriate exercise of the Court's discretion to

23    do, but the evidence where Delegate Tyler testifies as to her

24    own understanding is direct personal knowledge and testimony

25    that's admissible and relevant.
```

```
1                JUDGE PAYNE:  Anything else, Ms. McKnight?

2                MS. McKNIGHT:  Yes, briefly, Your Honor.  This

3    consistent point, the problem is Delegate Tyler may be very

4    well aware of her own opinion or own understanding, but without

5    understanding or knowing or having any foundation for what the

6    document means, how it was prepared, why they said what they

7    said, she is not in a position to testify about whether her own

8    understanding is consistent with something that she has no

9    knowledge of.

10               JUDGE KEENAN:  How do you address Mr. Phillips' point

11   this is already in the record from the first trial?

12               MS. McKNIGHT:  I'd ask where this -- I believe he has

13   it with him.  I'd just like to take a look at the exhibit where

14   this was submitted.

15               MR. HAMILTON:  I don't have -- it's docket number

16   90-2, Exhibit B.  That was the conformed designations of the

17   Tyler deposition as filed in the first trial.  That's the first

18   exhibit.  The second, it's the same docket, 90-2, Exhibit B.

19               MS. McKNIGHT:  The problem with that, Your Honor, is

20   at this stage of the trial, the Court has ordered that the

21   trial record and exhibits are still at issue at this trial.

22   They're live, they're applicable.  I don't believe there's a

23   court order stating that an exhibit to a docket entry is

24   admitted at this trial as an exhibit.  That's my response to

25   Mr. Hamilton's point.
```

1          JUDGE PAYNE:  You mean at this stage of the case on

2     remand.

3          MS. McKNIGHT:  On remand, Your Honor, yes.

4          JUDGE PAYNE:  I think his point was where the Supreme

5     Court has considered it, and they did consider the issue of the

6     55 percent, relied on evidence that was in, can we now say it

7     can't come in.

8          MS. McKNIGHT:  Well, Your Honor, I don't know that

9     there's any evidence that the Court relied on an exhibit to --

10          JUDGE PAYNE:  There isn't.  I didn't mean to say

11     that, and I misspoke if I did.  I'm saying they did address the

12     55 percent issue, so it's evidence that pertains to that issue.

13          MS. McKNIGHT:  You are correct, Your Honor, and there

14     is plenty of testimony that was elicited from Delegate Tyler

15     about her understanding of the 55 percent figure, and that has

16     been designated, and defendant intervenors have not objected to

17     that testimony.

18          JUDGE PAYNE:  Do you have anything else?

19          JUDGE KEENAN:  No.

20          JUDGE PAYNE:  We'll let you know what we're doing

21     with that.  Next one is?

22          MR. HAMILTON:  Next one is page 81, line 20, page 82,

23     line 16, and then page 84, line six to ten.

24          JUDGE PAYNE:  What is she being asked about here?

25          MR. HAMILTON:  In this part, plaintiff's counsel is

1   showing Delegate Tyler a transcript of a public hearing to

2   inquire into Delegate Tyler's own views and experiences.  In

3   the public hearing, Delegate Jones claimed that he had a

4   meeting with Delegate Tyler and solicited specific input from

5   her during the redistricting process.

6           In her deposition, Delegate Tyler makes it clear that

7   there was no such meeting, and the remainder of the designation

8   is simply context for that.  That's the key point in this

9   passage.  It's directly from Delegate Tyler's personal

10  knowledge.

11          JUDGE PAYNE:  Just a minute.  She says there wasn't a

12  meeting.

13          MR. HAMILTON:  Correct.

14          JUDGE PAYNE:  And then the other is -- in 84, the

15  question asks her to interpret a statement that he made.  Why

16  can she give an opinion on that topic?

17          MR. HAMILTON:  She can give an opinion about her

18  understanding of the statement that was made.

19          JUDGE PAYNE:  That isn't what she said.  What does he

20  mean?  "He didn't split the county.

21          "It remains one person's district?

22          "That's right."

23          So it seems to me that she's commenting upon what he

24  meant in that statement, in that document.

25          MR. HAMILTON:  That particular passage -- I'm not

1    sure that that was an objection raised by opposing counsel, but

2    to the extent that it is, that's not what we're offering this

3    exhibit for.

4              JUDGE PAYNE:  All right, that's out.  84, line six

5    through ten, is out, and we're -- all right, Ms. McKnight, page

6    81, line 20, through 82, line 16.

7              MS. McKNIGHT:  Sure, Your Honor, and, again, we have

8    the same problem we did before, but let me address one of Mr.

9    Hamilton's points.  He said they are offering, they need this

10   testimony in, they're offering it in because they need to show

11   there wasn't a meeting, that a meeting did not occur between

12   Delegate Wright and Delegate Jones.

13             JUDGE PAYNE:  And herself.  Delegate Jones, yourself,

14   and Delegate Wright.  The meeting is alleged to be among three

15   people.

16             MS. McKNIGHT:  That's right, Your Honor.  If you turn

17   to page 82, line 17 through the end.

18             JUDGE KEENAN:  You are saying the distinction is

19   between conversation and meeting?

20             MS. McKNIGHT:  No.  I could discuss that, but what

21   I'm focusing on here is that we're not objecting to testimony

22   about the lack of a meeting.  In fact, you'll see it right

23   here.  It's already in.  82, line 17 through 25, is designated

24   by plaintiffs.  We did not object to that testimony, because it

25   directly elicits testimony from Delegate Tyler about her own

1    recollection about what happened.

2           Delegate Jones is going to testify live at trial.

3    Plaintiffs are welcome to put this exhibit in, which, by the

4    way, is an exhibit of a transcript of a hearing that Delegate

5    Tyler did not attend.

6           Plaintiffs are welcome to put that in front of

7    Delegate Jones at trial, and I'll note that Delegate Wright is

8    also scheduled to testify live at trial.  So plaintiffs have a

9    full opportunity to explore this topic not only with live

10   witnesses but with the direct recollection of Delegate Tyler

11   right here, 82, line 17 through the end.

12          So, again, this is the same problem we've seen with

13   other designations where they're eliciting testimony from her

14   on topics to which she lacks any foundation.

15          JUDGE PAYNE:  It looks to me like the difference

16   between the two parts of the testimony is that in the part to

17   which you do not object, she says there wasn't a meeting but

18   there was a conversation, and -- and then reaffirms there

19   wasn't a meeting.  In the part to which you do object, she says

20   there wasn't a meeting, and there's a lot of extrinsic

21   information in there about what the meeting was about if there

22   was a meeting.

23          MS. McKNIGHT:  That's right, Your Honor.

24          JUDGE PAYNE:  So why do you need the objected-to part

25   if you've got the non-objected-to part, Mr. Hamilton?

1          MR. HAMILTON:  Because it doesn't provide the context

2   for what we're talking about, and note that the question that

3   she's objecting to is just simply reading a portion, "Did I

4   read that correctly?"  That's the actual question.

5          He reads a part of the public transcript that

6   describes a supposed meeting that occurred.  It's important for

7   the -- to understand what Delegate Tyler is saying on page 82,

8   line 17.  It's not just denying a meeting, any meeting.  It's

9   denying a specific meeting, the specific meeting described in

10  this transcript.

11         JUDGE PAYNE:  On line 17 at page 82 it says,

12  "Question:  There wasn't a meeting between you and Delegate

13  Wright and Delegate Jones?

14         "No.

15         "Was it more of a conversation?

16         "Answer:  Conversation or something --

17         "Question:  Okay.

18         "Answer:  -- by them saying they met with Tommy, and

19  Tommy said it was fine to put those particular areas.  But it

20  wasn't no meeting."

21         You've got that, it seems to me, un-objected to.

22         MR. HAMILTON:  We certainly do.  Your Honor, this

23  transcript that's being read from on page 81 and page 82 is an

24  exhibit that's been admitted.  It's before the Court.  The

25  transcript is one of those transcripts of the public hearing

1   that we had transcribed and marked as an exhibit, offered into

2   evidence, and admitted into evidence.

3         So I think if we had a live witness at trial and we

4   said, let me direct your attention to Exhibit 12 that's been

5   admitted into evidence, and I'm going to read you a passage of

6   that that relates to a supposed meeting that happened between

7   you and I'm going to ask about that, I believe Your Honors

8   would allow me to do that.

9         Then I would ask the question exactly the way it's

10  asked in this deposition, and there would be no objection

11  because it's an admitted exhibit.  And it's referring to

12  Delegate Tyler, and I would say, did I read it correctly, and

13  hopefully the witness would say correct, and I would say, in

14  reference to this meeting, did it happen, and then we'd have

15  this exchange.

16        I don't think there's anything wrong with that, and I

17  don't think that it's offering -- it doesn't even purport to

18  offer, you know, her to affirm what was happening.  In fact,

19  she's denying any meeting took place.

20        JUDGE PAYNE:  All right.  This raises a more

21  fundamental -- we'll rule on this and let you know -- a more

22  fundamental question, why isn't Tyler testifying?  She's still

23  alive, isn't she?

24        MR. HAMILTON:  I think so, Your Honor.

25        JUDGE PAYNE:  I don't want to invite more testimony,

1    but maybe you can use her as a designated hitter or something.

2    If she's so important, why isn't she testifying so we can see

3    what her mettle is on the witness stand?

4              MR. HAMILTON:  Delegate Tyler is House District 75,

5    it's the one district that's resolved.

6              JUDGE PAYNE:  Yeah.

7              MR. HAMILTON:  We actually don't need to call her for

8    any critical reason other than -- we're using -- it's little

9    bits.  You'll notice this isn't a voluminous deposition

10   transcript we're offering.  It's a small piece of what we're

11   doing.  So the fair answer is --

12             JUDGE PAYNE:  How about the other part of the

13   question, why is this 55 percent getting litigated anyway given

14   the Supreme Court's decision?  I think that's the next

15   question, why are we going beyond what the Supreme Court -- and

16   I think all three judges in the district court basically came

17   to the same conclusion, and the Supreme Court came to the same

18   conclusion.  So the real question is, why are we relitigating

19   any of this?  Maybe we'll get to that later.

20             MR. HAMILTON:  That's an excellent question, Your

21   Honor.

22             MS. McKNIGHT:  That's a great question, Your Honor,

23   and I think, if I may, Mr. Hamilton, in plaintiff's reply brief

24   to our objections, they note intervenor continues to deny that

25   fact, meaning the fact of how the 55 percent BVAP number was

1    issued.  This is on page two.

2              JUDGE PAYNE:  Of the brief?

3              MS. McKNIGHT:  Of the brief.

4              JUDGE PAYNE:  The reply brief.

5              MS. McKNIGHT:  Of the reply brief.  And they cite to

6    a page in our brief that does not deny this fact at all, and,

7    in fact, if you go back to the docket at this stage of the

8    case, meaning on remand, you'll see that when the Court asked

9    the parties to highlight the memorandum opinion from the fall

10   of 2015 about the findings of fact that are still applicable,

11   defendant intervenors and plaintiffs highlighted this section

12   on how the 55 percent figure was used.  We believe that that is

13   a finding of fact that still applies.

14             So to answer your question, defendant intervenors do

15   not know why plaintiffs designated Tyler's deposition for this

16   particular issue.  All of defendant intervenor's designations

17   in her testimony were counter-designations.  We did not

18   directly designate her testimony.

19             JUDGE PAYNE:  Mr. Hamilton, if you all agree that

20   that is a finding of fact that has been made and is effective,

21   it looks to me like we don't need to be taking a bunch of

22   evidence on it at all.  I think what happened is -- when I

23   started reading these designations, it brought to mind the

24   fundamental question why, given what has been said already

25   about what is a finding of fact, that I referred to the same

1    document you cited.  What is your view of that, about why we're

2    doing this?

3           MR. HAMILTON:  Well, I think there may be some value

4    in having the parties confer after this status conference and

5    discuss that very issue, because it was not clear up to this

6    point that -- two things weren't clear; number one, whether we

7    were fighting about whether there was, in fact, a 55 percent

8    rule or not.  If that's no longer an issue, perhaps some of

9    this can be resolved and we can take it off the Court's plate.

10          Second, it's not clear whether the plaintiffs -- I'm

11   sorry, whether the defendant intervenors continue to argue

12   about the way that the black voting-age population, whether

13   it's DOJ black or some other -- it has to do with how folks who

14   also identify as Hispanics are calculated.  It's not clear to

15   me whether they are continuing to argue about that or not.

16          JUDGE PAYNE:  Why don't you confer about that and see

17   what you do and let us know where you stand.  Have a call next

18   week to inform us, and it may help you in tailoring your

19   testimony at trial.

20          JUDGE KEENAN:  Judge Payne, if I may also apologize

21   to Mr. Hamilton for calling you Mr. Phillips, translating your

22   first name into a last name.

23          JUDGE PAYNE:  What did you do?

24          JUDGE KEENAN:  I've been calling him Mr. Phillips.

25          MR. HAMILTON:  That's all right, Your Honor.  I think

1    I understood what you meant.

2              JUDGE KEENAN:  I'm very sorry.

3              JUDGE PAYNE:  I'm going to get my hearing tested.

4    Okay, now, the next thing -- are there any more of her

5    deposition testimony excerpts that we need to focus on?

6              MS. McKNIGHT:  No, Your Honor.

7              JUDGE PAYNE:  So that brings us to the next thing.

8              MS. McKNIGHT:  Your Honor, this is a fairly -- we

9    believe fairly simple objection to designations made in

10   Delegate -- pardon me, Mr. Marston's testimony which is --

11             JUDGE PAYNE:  Where is that?

12             MS. McKNIGHT:  Because it's -- we did not attach it

13   because we objected to the designation, all of the

14   designation --

15             JUDGE PAYNE:  As a whole.

16             MS. McKNIGHT:  -- as a whole.

17             JUDGE PAYNE:  Okay.

18             MS. McKNIGHT:  On the basis that it is inadmissible

19   hearsay, the point being that plaintiffs have not identified

20   Mr. Marston as being unavailable for trial, and we believe that

21   is the only exception to hearsay that they can rely on in

22   admitting his testimony.

23             JUDGE PAYNE:  Just for the record, so it's all in one

24   place, Marston did what in this process?

25             MS. McKNIGHT:  Marston was a consultant in the

1    drawing process.  This is the same gentleman at issue in the

2    objections over the attorney-client privilege.  So he was a

3    consultant to the House Republican Caucus and is also a lawyer

4    and so provided a mix of services for the House Republican

5    Caucus during the redrawing effort.

6             JUDGE PAYNE:  And you just object to all his

7    testimony because it is hearsay?

8             MS. McKNIGHT:  Correct, Your Honor.

9             JUDGE PAYNE:  And he is available for trial?

10            MS. McKNIGHT:  He's not been identified on any --

11            JUDGE PAYNE:  A, is he alive?

12            MS. McKNIGHT:  He's alive.

13            JUDGE PAYNE:  And has anybody subpoenaed him?

14            MS. McKNIGHT:  We have not -- he's not a witness of

15   ours.  We did not subpoena him.

16            JUDGE PAYNE:  Did you talk to him to determine

17   whether he's available, Mr. Hamilton?

18            MR. HAMILTON:  We have not, Your Honor.

19            JUDGE PAYNE:  Why don't you subpoena him if you want

20   him?

21            MR. HAMILTON:  First of all, he is -- this is another

22   one of these categories that I'm not quite sure why we're

23   fighting about this.  This is already in the record.  We've

24   already stipulated the admission portions of Mr. Marston's

25   testimony.  It was admitted.  That's docket 90-3, Exhibit C.

1          JUDGE PAYNE:  Excuse me.  Are you offering any part

2   of his testimony now that was not in the record in the original

3   one at docket number 90-3, Exhibit C?

4          MR. HAMILTON:  I wish I could answer the question,

5   Your Honor, and I can't.  I can compare the two, and I

6   apologize to the Court for not knowing the answer to that.

7          JUDGE PAYNE:  I don't know why you don't know

8   everything.

9          MR. HAMILTON:  Neither does my wife.

10          JUDGE PAYNE:  I wouldn't get that on the record if I

11   were you.

12          MR. HAMILTON:  Mr. Marston was an agent and, in fact,

13   a lawyer for the defendant intervenors, and, thus, he is -- his

14   statements are the admission of a party opponent under Rule

15   801(d)(2)(D).

16          JUDGE KEENAN:  How is he an agent?

17          MR. HAMILTON:  He was representing the intervenor

18   defendants, the House Republican Caucus, for the purpose of

19   drawing maps.  He was operating on their behalf, and he was

20   produced and spoke on their behalf in the deposition.  So I

21   think that makes him an agent.  A lawyer, by definition, is an

22   agent of the client that the lawyer represents, and clients are

23   bound by the statements the lawyers made.

24          JUDGE PAYNE:  Wait just a minute.  I'm lost as to the

25   underlying fact.  I thought he was a consultant to the people

1  who were doing it, not representing the people who were doing

2  it.   In other words, he wasn't their spokesperson in the role

3  that you are, for example, for your client.

4          MR. HAMILTON:   That's right.

5          JUDGE PAYNE:   He was behind the scenes just advising

6  the House Caucus; is that correct or incorrect?

7          MR. HAMILTON:   That's correct.   He was working on

8  their behalf as a consultant.   He's also a lawyer.

9          JUDGE PAYNE:   But there's a lot of law that says

10 consultants aren't agents unless you show they are agents.

11 What is the evidence of record to show that he's an agent in

12 this case?   And we're under 801, your view is (d) what?

13         MR. HAMILTON:   (d)(2)(D).

14         JUDGE PAYNE:   "The statement is offered against an

15 opposing party and:   (D) was made by the party's agent or

16 employee on a matter within the scope of that relationship and

17 while it existed."   Now, it seems to me that if you can show

18 that he was an agent, the mere fact that he was deposed doesn't

19 bring him within that rule because that's not the kind of

20 statement that is referred to in there, whereas if he made a

21 statement, for example, and he was authorized to make it in a

22 public hearing or something like that, and you were offering

23 that statement, it would seem to me that that rule would be

24 more applicable at that point.   Help me with your foundation,

25 if you would.

1          MR. HAMILTON:  Sure, Your Honor.  He was deposed and

2    was deposed specifically about the tasks he performed as an

3    agent.  The question, and this is from the preceding briefing

4    we were just looking at on the objections to the defendant

5    intervenor's discovery designations, the question, "How did you

6    determine whether a minority group or minority groups would

7    have a lesser opportunity to elect a candidate of their

8    choice," and then he explained it, and you'll recall this is

9    where we got into whether this was waiving -- whether this was

10   waiving the attorney-client privilege.

11         So he was describing the work that he had done.  He

12   was being examined on the work that he had done as a consultant

13   for the defendant intervenors.  We think that that falls within

14   the meaning of 801(d)(2)(D) --

15         JUDGE PAYNE:  Have you got a case that applies

16   801(d)(2)(D) in that circumstance?

17         MR. HAMILTON:  I have not, Your Honor.

18         JUDGE PAYNE:  I've never seen it used that way, but

19   there's an awful lot I haven't seen.

20         MR. HAMILTON:  The second point is, he is -- the

21   parties stipulated to the admission, and I'll go back, Your

22   Honor, and provide the Court with an identification of whether

23   all or just part of his designation, but I guess it would be

24   the same point, that if part of this has been admitted already,

25   then it would be our position that defendant intervenors have

1    waived any objection they have on this basis to his testimony.

2            MS. McKNIGHT:  Your Honor, just several points.  I

3    didn't mean to interrupt any questioning.

4            JUDGE PAYNE:  Were you finished?

5            MR. HAMILTON:  I'm finished.  I'm happy to keep

6    going.

7            JUDGE PAYNE:  Are you on the word now instead of the

8    hour?

9            MS. McKNIGHT:  First of all, I really question

10   whether these documents were, quote unquote, admitted.  I

11   think -- I want to be precise with using the word "admitted."

12   I don't believe that these designations were admitted as

13   exhibits at trial, so I want to be clear about that point.

14           JUDGE PAYNE:  You need to go back and look at the

15   procedure that we used.  My recollection is that we followed

16   the same procedure that we usually make, and that is that when

17   an exhibit is tendered, if no objection to it is made, it is

18   admitted.  And that doesn't then require that anybody do

19   anything at trial to effectuate the admission, because that's

20   administratively already been accomplished.

21           I do not know -- also, you need to check and see, in

22   some cases, and I don't know if that happened in this case or

23   not, but in some complex cases, at the end of the trial the

24   ruling is any exhibit that you did not actually use is

25   withdrawn, and so whether it's admitted or not doesn't make any

1    difference.  I don't know that that was done in this case or

2    not.  I rather much believe it was not, but you do need to

3    check those things to see.

4                MS. McKNIGHT:  Thank you, Your Honor, for that

5    guidance.  I appreciate the guidance.  We will go back and

6    check.

7                More importantly, there are two problems with

8    801(d)(2)(D).  The first, the question of agency is not

9    settled.  Defendant intervenors in this case are the Virginia

10   House of Delegates and the Virginia House of Delegates Speaker,

11   William Howell.

12               Christopher Marston testified that he was a

13   consultant to the House Republican Caucus.  So whether he was

14   an agent for the defendant intervenors in this case at any

15   point is not settled.  I make that point, and it has not been

16   fully briefed, but if this is going to turn on agency, that

17   question is not settled.

18               More importantly, Rule 801(d)(2)(D) states at the

19   very end, "and while it existed," meaning the statement must be

20   made by a party's agent or employee on a matter within the

21   scope of the relationship and while it existed.

22               There's no evidence that on the date that Christopher

23   Marston was deposed in this case he was an agent for either the

24   Virginia House of Delegates or for its speaker.  Those are two

25   reasons why 801(d)(2)(D) cannot apply.

1        JUDGE PAYNE:  Anything else, Mr. Hamilton?

2        MR. HAMILTON:  Well, we haven't had -- no.

3        JUDGE PAYNE:  The precise contours of 801(d)(2) are

4   not really addressed on the papers and on the technical basis

5   that you made the objection -- I mean since you made the

6   proffer and you made the objection, and nothing was done in

7   response to it, you win, Ms. McKnight.

8        However, your papers were pretty sparse in the case

9   law area themselves, and neither one of you really confronted

10  the key issues that we're dealing with right now very

11  thoroughly.  Why don't you file us a brief.  Today is Friday.

12  Can you file it on Monday?  You are the proponent, so you go

13  first.  You file the next day, can you, Ms. McKnight?  You have

14  this down pretty well.

15       MS. McKNIGHT:  Yes, Your Honor.

16       JUDGE PAYNE:  And the next day you file your reply.

17  Then we'll consider it.  Do check the previous, what was

18  admitted and what wasn't and so forth.

19       MS. McKNIGHT:  Thank you, Your Honor.

20       JUDGE PAYNE:  Does that take care of the discovery

21  designations?

22       MS. McKNIGHT:  Yes, it does, Your Honor.

23       JUDGE PAYNE:  Are there any other issues that you all

24  need to bring to the floor on exhibits or anything else?

25       MS. McKNIGHT:  One of our questions had to do with

1    exhibits, Your Honor, and we will go back.  With your guidance,

2    it's helpful to go back and look at the record at what exhibits

3    have been admitted into the record and what have not.  I think

4    you've already answered our question on that.

5             JUDGE PAYNE:  I think -- on the places where you say

6    that it was already in the record, that's the deposition

7    referred to in docket 202, page 63, line 24, through 66, line

8    16; page 70, line 16, through 76 at line 17 of the Tyler

9    depositions, you said both of those, they were already in the

10   record, and the same thing occurs with respect to the testimony

11   of Marston, but -- and you made reference to ECF number 90-3

12   with Exhibit C, and you all check that out and inform us of the

13   situation of that.  If you can let us know that the first of

14   the week, we'd appreciate it.  Just file something on it.

15            You did get the message that all the judges want two

16   sets of exhibits on the morning of trial, one for the judge,

17   and you're going to put those little carts up there behind the

18   bench, and the other for the law clerk, and the law clerk will

19   be sitting over to the left side of the courtroom opposite the

20   jury box, and I think that's where -- you can work with them.

21            Here's the other thing:  Just logistically you've

22   been working with Ms. Hancock.  When I left yesterday, and I

23   don't know the answer any further than this, she had a personal

24   emergency with her mother, and I don't know right now who

25   you'll be working with, but somebody from our office will

1    communicate with you next week about whether she will continue

2    to work on the matter or we'll have somebody else work on it.

3              Do you have any logistical problems?  You need to get

4    into the courtroom Friday to do your work-through, and you're

5    going to bring your documents in and so forth.

6              MS. McKNIGHT:  That's right, Your Honor, and we're

7    sorry to hear about her mother.

8              JUDGE PAYNE:  Anything else you all need?

9              JUDGE KEENAN:  I'd like to ask Mr. Hamilton about the

10   plaintiff's experts' reports.  I haven't received them.  Were

11   they filed in Richmond?

12             MR. HAMILTON:  We had a problem, Your Honor.  We had

13   all of the expert reports delivered to Richmond instead of in

14   Alexandria and Norfolk, so I apologize for that.  I thought we

15   had solved that problem already.

16             JUDGE KEENAN:  Not yet.

17             MR. HAMILTON:  I'll make sure that happens today.

18             JUDGE PAYNE:  Will you check with Judge Allen as well

19   and see if she got hers?  I didn't realize --

20             MR. HAMILTON:  I will.

21             JUDGE PAYNE:  Anything else?

22             MR. HAMILTON:  I do, Your Honor, just a couple of

23   administrative questions.  First of all, is the Court

24   anticipating opening statements and/or closing arguments?

25             JUDGE PAYNE:  I don't, frankly, feel like with the

1    briefing and the background that I need them.

2              JUDGE KEENAN:  I think we know a lot more now.  It

3    would depend on Judge Allen.

4              JUDGE PAYNE:  We'll ask Judge Allen, and we will tell

5    you.  I don't see much point in closing arguments that aren't

6    tethered to the record.  Do you agree?

7              JUDGE KEENAN:  I agree.

8              JUDGE PAYNE:  I think it's more helpful.  It refines

9    the argument, and it makes it easier for us to cope with.

10   We'll set a schedule after the trial for post-trial briefing.

11             MR. HAMILTON:  I agree entirely, Your Honor, but I

12   wanted to make sure.

13             JUDGE PAYNE:  And I think we're all going to be worn

14   out by that time anyway.

15             MR. HAMILTON:  I believe the Court had set the trial

16   to start at 10:00 a.m. on Tuesday morning.

17             JUDGE PAYNE:  I think maybe given the trial time that

18   you've got, maybe we ought to start earlier.

19             JUDGE KEENAN:  Sounds good.

20             JUDGE PAYNE:  I think on the first day -- I don't

21   know.

22             JUDGE KEENAN:  I can do any time.

23             JUDGE PAYNE:  Let's start at nine o'clock, and that

24   will give us some extra time, and I'll issue an order that says

25   that so that the court staff will know that.  And the

1    courthouse opens at 8:00, so you can -- but you're going to

2    have most of your things already over there and in place

3    anyway.  There's nothing going on that will keep you an

4    inordinately long time going through the security procedures.

5              You know about getting your forms filled out so you

6    can bring in your computers and lunchrooms and all that stuff.

7    You've been working with Ms. Hancock.

8              MR. HAMILTON:  Yes, Your Honor.  For purposes of

9    arranging to have lunch delivered into the courtroom, which

10   we've been talking with Ms. Hancock about, is it possible to

11   anticipate a regular lunch break at around noon for that --

12             JUDGE PAYNE:  We'll talk about how to do that so you

13   can schedule it, because we'll want our lunch brought in.

14   Probably if we start at 9:00, noon would be a good time for the

15   lunch break.

16             JUDGE KEENAN:  Sure.

17             JUDGE PAYNE:  Let us confer, and also an order will

18   be issued letting the CSOs know that you are following that

19   procedure.

20             MR. HAMILTON:  I'm happy to report that despite

21   appearances, we've actually agreed, I think, on the

22   admissibility of the vast majority of exhibits.  So we would

23   anticipate, I guess, starting plaintiff's case by simply moving

24   admission of all of the exhibits.  Is that an acceptable

25   procedure?

1          JUDGE PAYNE:  Sure, as long as you all are in
2    agreement and there are no objections.
3          MR. HAMILTON:  Would it be helpful to the Court or
4    the law clerks to have all the exhibits delivered on a flash
5    drive to you as well?
6          JUDGE PAYNE:  It would be helpful to a number of
7    people, but I'm not one of them.
8          MR. HAMILTON:  I think the court reporter raised her
9    hand, and I'm happy to provide that.
10          JUDGE PAYNE:  I guarantee the law clerks will, too.
11          MR. HAMILTON:  Should we endeavor --
12          JUDGE PAYNE:  If you could do that, that would be
13    fine.
14          MR. HAMILTON:  In terms of demonstrative exhibits,
15    does the Court anticipate requiring the parties to exchange
16    those in advance of trial?
17          JUDGE PAYNE:  Usually do, yes.  If there are any
18    objections to -- have you got them ready?
19          MR. HAMILTON:  Not at this point, Your Honor,
20    speaking for the plaintiffs.
21          MS. McKNIGHT:  We're in the same boat.
22          MR. HAMILTON:  Would the Court like its own set of
23    demonstrative exhibits?
24          JUDGE PAYNE:  When you are ready and have them
25    finalized, I think it would help to have them.  You did that

1    last time at the trial, and we could follow the -- particularly

2    the districts I found very helpful.  There were a number of

3    things that were helpful, but, yes, that would be helpful.

4            MR. HAMILTON:  At least one of the illustrative

5    exhibits will be a series of maps that will be electronic, so

6    we can put those on paper but it will be shown as electronic.

7            JUDGE PAYNE:  That's fine.  If you can do that, it

8    would be helpful.

9            MR. HAMILTON:  We haven't decided if we're using

10   oversized boards or not.  If we decide we want to use them, do

11   we need special permission to bring those into the courthouse?

12           JUDGE PAYNE:  That, I think, has been taken care of,

13   but I don't know -- I know I -- you raised or somebody raised

14   it.  I talked to Ms. Hancock about it.  Whether she's done it

15   or not, I don't know.  Double-check, and the answer is you can

16   bring in what you need to bring in.  An order -- I think there

17   may already be a letter instruction to the CSOs allowing them.

18           In addition to that, on the morning of trial by

19   eight o'clock, my law clerk will be available, and all you have

20   to do is get hold of him if you've got a problem.

21           MR. HAMILTON:  Thank you, Your Honor.  That's all I

22   have.

23           JUDGE KEENAN:  Thank you.

24           JUDGE PAYNE:  Thank you.

25           MR. COX:  Your Honor, I have one question on behalf

49

1    of defendants.  Commissioner Edgardo Cortes, who is the

2    Commissioner of the Virginia Department of Elections, one of

3    the defendants, is not being offered as a witness, won't be

4    called, but he generally attends the trial in which he's a

5    defendant.

6            He's, understandably, at a busy time right now but

7    would like to make himself available to the Court if the Court

8    would have questions during the course of the trial about the

9    impact that any rulings by the Court might have on the

10   administration of elections.  He was offered for that purpose

11   last time to be present.  I don't think the Court availed

12   itself of that, but he wants to be helpful to the Court if he

13   can be.

14           JUDGE PAYNE:  That would only really come into play

15   in the remedy phase if there's a remedy.  Isn't that what we

16   did the last time?

17           MR. COX:  Yes, Your Honor, but I think he was

18   introduced at the trial last time for that purpose.  I wanted

19   to make sure if he can attend one day or another, that would be

20   okay with the Court if he were not present every day of the

21   trial as he was previously.

22           JUDGE KEENAN:  That's fine.

23           JUDGE PAYNE:  Fine.  All right.  Thank you.

24

25                    (End of proceedings.)

1

2

3        I certify that the foregoing is a correct transcript

4  from the record of proceedings in the above-entitled matter.

5

6

7  _____/s/_____              _____
   P. E. Peterson, RPR              Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25