IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

Golden Bethune-Hill, *et al.*,

Plaintiffs,

v.

Virginia State Board of Elections, *et al.*

Defendants.

Civil Action No. 3:14-cv-00852-REP-AWA-BMK

## Defendant-Intervenors' Motion to Stay Injunction Pending Appeal Under 28 U.S.C. § 1253

Defendant-Intervenors respectfully move this court to stay its injunction pending direct appeal to the Supreme Court under 28 U.S.C. § 1253 from this court's permanent enjoining of the future use of the 2011 Virginia House of Delegates districting plan and ordering the legislature to adopt a substitute plan. *See* ECF. No. 234, at 92–93; ECF. No. 235 ("the Order").

### Argument

A stay is appropriate when there is: (1) "a 'reasonable probability' that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction"; (2) "a fair prospect that a majority of the Court will conclude that the decision below was erroneous"; and, (3) "a demonstration that irreparable harm is likely to result from the denial of a stay." *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers); *accord Hollingsworth v. Perry*, 558

U.S. 183, 190 (2010) (per curiam). Further, "[i]n close cases[,] the Circuit Justice or the Court will balance the equities and weigh the relative harms to the applicant and to the respondent." *Hollingsworth*, 558 U.S. at 190.

There is a "reasonable probability" that four members of the Supreme Court will vote to note probable jurisdiction and a "fair prospect" that at least five will vote to reverse the decision below. *Id.* Additionally, irreparable harm will result from the denial of a stay and the balance of equities weighs in favor of granting a stay. *Id.* Accordingly, this court should stay its injunction pending review in the Supreme Court.

## I.   There Is A "Reasonable Probability" That The Court Will Note Probable Jurisdiction

The Supreme Court has already exercised jurisdiction in this case. *See generally Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788 (2017). Moreover, the Supreme Court has jurisdiction because the Order constitutes a permanent injunction, and federal law authorizes a direct appeal to the Supreme Court. 28 U.S.C. § 1253. The Supreme Court has "no discretion to refuse adjudication of the case on its merits" when an appeal is brought under §1253. *McCutcheon v. FEC*, 134 S. Ct. 1434, 1444 (2014). Thus, there is a reasonable probability that it will note probable jurisdiction.

## II.     A "Fair Prospect" That A Majority of the Supreme Court Will Reverse The Decision Below Is Present

On appeal, Defendant-Intervenors will argue, among other things, that this court erred in finding that a 55% BVAP threshold was not narrowly tailored and erred in finding that Plaintiffs' District-specific evidence supports a finding of racial predominance by a preponderance of the evidence.  There is a fair prospect that a majority of the Supreme Court will reverse these decisions.

### A.     The District Court Committed Plain Legal Error in Finding that a 55% BVAP Threshold Was Not Narrowly Tailored To Achieve The Compelling State Interest of Meeting The § 5 Non-Retrogression Requirement

The court in this case committed plain legal error by determining that a 55% BVAP threshold was not narrowly tailored to achieve compliance with § 5 of the Voting Right's Act's (VRA) non-retrogression requirement. 52 U.S.C. § 10301; *Shaw v. Reno*, 509 U.S. 630, 654 (1993) ("[The] § 5 'nonretrogression' principle" is that "a proposed voting change cannot be precleared if it will lead to 'a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise.'" (quotation omitted)).

"When a State justifies the predominant use of race in redistricting on the basis of the need to comply with the Voting Rights Act, 'the narrow tailoring requirement insists only that the legislature have a strong basis in evidence in support of the (race-based) choice that it has made.'" *Bethune-Hill*, 137 S. Ct. at 801 (quoting *Alabama Legislative Black Caucus v. Alabama*, 135 S. Ct. 1257, 1274 (2015)). The standard is met "when the legislature has '*good reasons* to believe it must use race in order to satisfy the Voting Rights Act.'" *Id.* (quoting *Alabama*, 135 S. Ct. at 1274). On the one

hand, race-based districting is not narrowly tailored under VRA § 5 if it goes "beyond what was reasonably necessary to avoid retrogression," *Shaw v. Reno*, 509 U.S. 630, 655 (1993), or the efforts were "quite far removed" from the VRA. *Miller v. Johnson*, 515 U.S. 900, 926 (1995). On the other hand, "[t]hat standard does not require the State to show that its action was 'actually...necessary' to avoid a statutory violation, so that, but for its use of race, the State would have lost in court." *Id.* (quoting *Alabama*, 135 S. Ct. at 1247). The standard therefore can be met "'even if a court does not find that the actions were necessary for statutory compliance.'" *Id.* (quoting *Alabama*, 135 S. Ct. at 1247).

The House had "good reasons" to believe it needed 12 ability-to-elect districts with a "functional working majority." *Bethune-Hill*, 137 S. Ct. at 799, 801–802.

Furthermore, the legislature in drawing the map is caught between a *Shaw*-rock and a § 5-hard-place. *See* ECF No. 234 at 91 (respecting the difficulty of "the challenge the legislature faced in attempting to comply with both the VRA and the Equal Protection Clause"). This court's opinion makes it legally impossible to thread that needle. According to the majority, if there is no evidence of polarized voting in a § 5 district, under *Shaw*, the remedy is to draw districts with a BVAP below or about 50%. Under § 5 as amended in 2006, though, if there is no evidence that voting is *not* polarized in a § 5 district, then the map-drawer should maintain BVAP levels above a bare majority. *See* ECF No. 231 at 34. This case combined both scenarios: there is neither evidence of nor against polarized voting, so the remedy demanded under § 5, maintaining districts with strong majority BVAP, cannot be squared with this court's

*Shaw* Equal Protection theory requiring § 5 districts to be drawn with apparent retrogressive effect. This result cannot be maintained and there is a "fair prospect" that the Supreme Court will reverse.

**B.    The District Court Erred in Finding that Plaintiffs' district-specific evidence supports a finding of racial predominance by a preponderance of the evidence**

This court was tasked with conducting a "holistic analysis" involving consideration of the "districtwide context" to determine "the legislature's predominant motive for the design of the district as a whole." *Bethune-Hill*, 137 S. Ct. at 800.  This court erred in conducting its predominance analysis by, among other things, ignoring objective evidence of neutral redistricting decisions, treating Census blocks as fungible, and discarding first-hand testimony and contemporaneous evidence of race-neutral decisions in favor of theoretical and post-hoc expert opinions about motive.

This court erred by ignoring evidence of decisions made to support core retention when it found that core retention is a necessary feature of any redistricting and therefore "tells us very little" about why new voters were added to a Challenged District.  ECF No. 234 at 77-78.  Core retention is a neutral principle that may disprove predominance. *See, e.g.*, *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, 835 F. Supp. 2d 563, 590 (N.D. Ill. 2011).  "Traditional, neutral conventions are important to evaluate in a racial gerrymandering claim because they are objective factors that may serve to defeat a claim that a district has been gerrymandered on racial lines." *Bethune–Hill v. Va. State Bd. Of Elections*, 141 F.Supp.3d 505, 534 (E.D. Va. 2015) (quoting *Shaw v. Reno*, 509 U.S. 630, 647 (1993))

(quotations omitted). Plaintiffs' own expert, Dr. Palmer, conceded that core retention, not race or partisanship, was the *best* predictor of why a VTD was placed in a Challenged District. 2 Tr. 448:25–449:15. This court abused its discretion in finding that testimony from Delegate Jones, John Morgan, and Dr. Katz, which was *consistent* with Dr. Palmer's own testimony, was not credible. *See, e.g.*, ECF No. 234 at 29–30 & n.24, and 31–36. *See also*, Defendant-Intervenors' Remand Post-Trial Brief, ECF No. 231 17-18. There is a "fair prospect" that this court is wrong on this point and will be reversed.

This court did not give the proper understanding to Census block geography. It erred in treating Census blocks as fungible instead of fixed in size and location, relying on this error to hold that Census block placement in the districts revealed a predominantly racial motive. ECF No. 234 at 18-30. Plaintiffs' own expert conceded that even a single census block can take a district out of population alignment, 2 Tr. 965:13–24 (Dr. Rodden). This court abused its discretion when it discredited testimony from Mr. Morgan, ECF No. 234 at 31-34, the person responsible for splitting the VTDs and assigning Census blocks to districts, that he had to scan the district boundaries for census blocks that were correctly sized to bring the districts on each side of the split within the highly restrictive +/- 1% range for population deviation, 2 Tr. 601:25–641:1. In doing so, this court discarded clear and specific evidence based on first-hand knowledge that the Census blocks were chosen based on population number and geographic location not racial makeup. *See also*, Defendant-Intervenors' Remand Post-Trial Brief, ECF No. 231 at 11-14.

This court erred in crediting the post hoc, third-party testimony by Plaintiffs' expert, Dr. Rodden, about the motive of the map drawers while wholly discarding the testimony of the map drawers themselves, Delegate Jones and Mr. Morgan, ECF No. 234 at 31-36, and ignoring the contemporaneous support of the Black Caucus when the plan was passed into law, *see, e.g.*, Pl. Ex. 33 at 42-46 & Pl. Ex. 35 at 141-49, 157-59 (statements made on the House of Delegates floor by then Delegates Spruill and Dance lauding the plan); and, DI Exs. 8 & 9 (roll call vote for HB 5005 showing "Yea" votes by then Delegates BaCote, Carr, Dance, Howell, James, Joannou, McClellan, McQuinn, and Spruill).

For at least these reasons, there is a "fair prospect" that the Supreme Court will reverse this decision.  Therefore, the order should be stayed until this court's decision can be reviewed.

## I.    Irreparable Harm Will Result From the District Court's Permanent Injunction

The Order requires the Virginia legislature to enact a remedial plan by October 30, 2018, for the November 5, 2019, House of Delegates Elections. ECF No. 235 at 2. That order will result in irreparable harm to the Defendant-Intervenors.

"*[A]ny time* a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (emphasis added) (Roberts, C.J., in chambers); *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). But the injury is all the more acute when blocking the State's law will "result in voter confusion," *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam),

or disruption the primary election process. *See Wells v. Rockefeller*, 394 U.S. 542, 547 (1969); *Kilgarlin v. Martin*, 386 U.S. 120, 121 (1967) (per curiam); *Klahr v. Williams*, 313 F. Supp. 148, 152 (D. Ariz. 1970), *aff'd sub nom. Ely v. Klahr*, 403 U.S. 108 (1971).

That is precisely what will happen if the Order is not stayed. First, compelling the House to redraw the map to have one in place before next year's elections will result in voter confusion and disruption to the primary process. Candidates, parties, and voters begin their electioneering work well in advance of the actual electoral deadlines of the state. And that is to say nothing of the immense waste of scarce resources that will result from having unnecessarily drawn a remedial map should the Defendant-Intervenors ultimately prevail. *See Ledbetter v. Baldwin*, 479 U.S. 1309, 1310 (1986).

Second and moreover, it will be impossible for the legislature, or anyone, to draw a remedial map that passes this court's muster. This court has left the House of Delegates in a Catch-22 between § 5 and Fourteenth Amendment burdens. *See supra* Part II.A. The Order could leave infinite time to redraw a map, as far away from an election as humanly possible, and it would still cause irreparable injury because the House has no legal way to comply with both the Constitution and federal law per this court's order. Being put to a Hobson's choice or Sophie's choice of legal compliance constitutes irreparable injury in and of itself. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) ("Hobson's Choice" of violating a law or complying with it once to test it constitutes irreparable harm when threat of enforcement is imminent); *Sherfel v. Gassman*, 899 F. Supp. 2d 676, 709 (S.D. Ohio

2012) (finding irreparable harm present to justify permanent and preliminary injunctive relief when plaintiffs were put "in the untenable position of violating either" one law or another), *aff'd sub nom. Sherfel v. Newson*, 768 F.3d 561, 571 (6th Cir. 2014); *Meza v. Bd. of Educ. of the Portales Mun. Sch.*, No. CIV.10-0963-JB/WPL, 2011 WL 1128876, at \*19 (D.N.M. Feb. 25, 2011); *cf. also Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009); *Labnet Inc. v. United States Dep't of Labor*, 197 F. Supp. 3d 1159, 1176 (D. Minn. 2016).

Accordingly, all factors weigh in favor of granting a stay.

## II. The Balance of Equities Weighs in Favor of the Virginia House of Delegates

The balance of the equities tips decidedly in favor of the Defendant-Intervenors.

On the Defendant-Intervenors side of the scale, the Virginia House is being compelled to draw a remedial plan by October 30th while being left with no possible way to comply with both § 5 and the Equal Protection Clause theory advanced by this court. *See supra* Section II.A. Beyond simply being disabled from "effectuating statutes enacted by representatives of its people," *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers), the legislature is put in the position of being unable to fulfil both its duty to draw district lines in accordance with federal and state laws and its obligation to come up with a constitutional remedial map. Leaving the legislature in such a position can only wreak havoc on voter, candidate, incumbent, and party expectations.

On the other side of the scales, the plaintiffs have voted under this plan since 2011 and during the pendency of this suit. A stay would not deprive the plaintiffs of

any remedy to which they ultimately may be entitled; it would just require them to wait until at least one court has had the chance to review the district court's decision before subjecting the Virginia House to a remedy that cannot be undone.

Thus, the balance of equites weighs in favor of granting a stay.

## Conclusion

For the foregoing reasons, a stay pending appeal of this court's decision should be granted.

Dated: July 6, 2017                           Respectfully Submitted,

                                              /s/  *Katherine L. McKnight*
                                              Katherine L. McKnight
                                              Richard B. Raile
                                              E. Mark Braden
                                              BAKER & HOSTETLER LLP
                                              1050 Connecticut Ave NW, Suite 1100
                                              Washington, DC 20036
                                              Tel: (202) 861-1500
                                              Fax: (202) 861-1783
                                              kmcknight@bakerlaw.com
                                              rraile@bakerlaw.com
                                              mbraden@bakerlaw.com

                                              *Counsel for Defendant-Intervenors*
                                              *Virginia House of Delegates and*
                                              *Virginia House of Delegates Speaker*
                                              *M. Kirkland Cox*

11

## Certificate of Service

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States District Court for the Eastern District of Virginia by

using the court's CM/ECF system. Participants in the case who are registered

CM/ECF users will be served by the CM/ECF system.

Dated: July 6, 2018                          /s/  *Katherine L. McKnight*
                                             Katherine L. McKnight