**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

## I. INTRODUCTION

Plaintiffs are the prevailing parties in this action and are entitled to an award of attorneys' fees, expert fees, and costs under 42 U.S.C. § 1988, 52 U.S.C. § 10310(e) (formerly codified as 42 U.S.C. § 19731(e)), Fed. R. Civ. P. 54, and L.R. 54. Plaintiffs, Virginia registered voters, filed this action in 2014, alleging that the 12 majority-black Virginia House of Delegates districts (the "Challenged Districts") drawn during the 2011 redistricting cycle were racial gerrymanders in violation of the Equal Protection Clause of the Fourteenth Amendment. Dkt. No. 1; Am. Compl. ¶¶ 1, 7-18. After holding a bench trial in 2015, this Court issued a divided opinion upholding the redistricting plan. Plaintiffs appealed to the United States Supreme Court, which affirmed the Court's decision regarding one district, but remanded for reconsideration of the question whether the remaining 11 districts were racial gerrymanders. After a second trial, the three-judge panel of this Court found for Plaintiffs, declaring the remaining 11 Challenged Districts unconstitutional. The Court ordered the Virginia General Assembly to enact a remedial plan by no later than October

1

30, 2018. Because the Court awarded Plaintiffs their requested relief, Plaintiffs are the prevailing parties and respectfully request that the Court grant their reasonable attorneys' fees, expert fees, and litigation expenses.

Plaintiffs' counsel dedicated a reasonable amount of time and resources to prevailing in this matter. Counsel litigated efficiently in light of the case's significant complexity and hotly contested nature. They charged rates consistent with the prevailing market rates for similar services by attorneys of comparable skill, experience, expertise, and reputation. And they exercised reasonable billing judgment as recorded in their detailed, accurate, and contemporaneous billing records submitted with this application. Plaintiffs also engaged experts to examine and explain the detailed population and electoral data, and these expert fees were reasonable and necessary to prove Plaintiffs' claims. Plaintiffs incurred other reasonable litigation expenses as well. In total, Plaintiffs seek at least $3,302,915.25 in attorneys' fees and $558,389.96 in litigation expenses.[1]

## II.  BACKGROUND

The federal government conducted its decennial census in 2010. The census revealed that Virginia's population was unevenly distributed among its House of Delegates districts in violation of the one-person, one-vote requirement of the U.S. Constitution and similar provision of the Virginia Constitution. In April 2011, the Virginia legislature adopted and the Governor signed into law a new House of Delegates districting plan (the "2011 Plan"). Under the 2011 Plan, the Virginia legislature employed a 55% Black Voting Age Population ("BVAP") threshold in drawing each of the Challenged Districts. Dkt. No. 234 at 17.

---

[1] Plaintiffs have not included in these amounts fees and costs post-dating May 31, 2018, which consist primarily of those incurred preparing this motion. Plaintiffs will submit a supplemental declaration supporting a claim to those fees with their reply brief. Plaintiffs seek fees and expenses from the State Defendants alone.

On December 22, 2014, Plaintiffs filed their Complaint, alleging that race predominated in the drawing of the Challenged Districts, and that the use of race was not narrowly tailored to serve a compelling government interest, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Dkt. No. 1. The initial three-judge panel was constituted pursuant to 28 U.S.C. § 2284(a). Dkt. No. 133. Shortly after the complaint was filed, the Virginia House of Delegates and its speaker, Delegate William J. Howell (Intervenors) filed a motion to intervene. Dkt. No. 13 at 2.

Following a three-and-a-half-day bench trial in 2015, a majority of the Court found that race was not the predominant factor used in the construction of 11 of the 12 Challenged Districts. In reaching this conclusion, the majority found that Plaintiffs had not shown that the legislature's use of race was in "actual conflict" with traditional, race-neutral districting criteria. With respect to House District 75, the Court found that race had predominated, but that the legislature's use of race was narrowly tailored to achieve the compelling state interest of compliance with the Voting Rights Act of 1965. Judge Keenan filed a separate dissenting opinion.

Plaintiffs appealed this Court's holding to the United States Supreme Court. The Supreme Court affirmed this Court's holding that District 75 satisfied strict scrutiny. However, the Supreme Court disagreed with the majority's predominance analysis in the other 11 Challenged Districts. The Supreme Court remanded the case to this Court for reconsideration of the question of predominance under the proper standard.

On remand, Plaintiffs contended that it was not necessary for the panel to re-open the evidentiary record and hold a second trial in this case; instead Plaintiffs argued that the Court could resolve the case based on merits briefing addressing the existing record from the first trial. Dkt. No. 153. By contrast, Intervenors requested the opportunity to present the Court with an

"additional factual presentation" on remand. Dkt. No. 152. Intervenors' position carried the day, and on June 2, 2017, this Court ordered a second three-day trial in this case, during which "the parties shall present such evidence as they shall be advised so that the Court can comply with the decision, and the remand Order, of the Supreme Court of the United States." Dkt. No. 160. Plaintiffs tried their case during a second three-and-a-half day bench trial that began on October 10, 2017.

On June 26, 2018, the Court issued a Memorandum Opinion in which it held that the remaining 11 Challenged Districts were racial gerrymanders in violation of the Fourteenth Amendment. *See* Dkt. No. 234. Specifically, the Court held that "telling direct and circumstantial evidence" showed that race predominated over traditional districting factors in the construction of the remaining 11 Challenged Districts, and that Intervenors did not satisfy their burden of showing that the legislature's use of race was narrowly tailored to achieve a compelling state interest. *Id*. at 2. The Court's decision relied on the evidence that Plaintiffs developed in discovery, including expert testimony from Plaintiffs' experts, Dr. Stephen Ansolabehere, Dr. Jonathan Rodden, and Dr. Maxwell Palmer, statements by the enacted architect of the 2011 Plan, testimony from fact witnesses, including members of the Black Caucus, departures from traditional redistricting criteria, and election and demographic data.

Having determined that the 2011 Plan failed to pass constitutional muster, the Court gave the General Assembly the first opportunity to create a remedial plan, providing until October 30, 2018 for the General Assembly to "remedy the constitutional violations." Dkt. No. 235. The

4

Court's Order constitutes a "judgment" within the meaning of Federal Rule of Civil Procedure 54, and Plaintiffs timely file this motion seeking their reasonable attorneys' fees and costs.[2]

### III. ARGUMENT

**A.     Plaintiffs Are Prevailing Parties**

Plaintiffs brought this action under 42 U.S.C. § 1983 and are prevailing parties within the meaning of the fee statute, 42 U.S.C. § 1988, "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted); *see also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989); *Bly v. McLeod*, 605 F.2d 134, 137 (4th Cir. 1979) ("It is settled that in order to be a prevailing party one need not win on every issue in the case."). The *Hensley* formulation is "generous," *Hensley*, 461 U.S. at 433., and designed to effectuate Congress' purpose "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id.* at 429 (quoting H.R. Rep. No. 94-1558, at 1 (1976)). One need only "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Association*, 489 U.S. at 792. "And [the Supreme Court] ha[s] repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012).

Under these established standards, Plaintiffs are plainly the prevailing parties in this litigation. They requested a declaratory judgment that the Challenged Districts as constructed in the 2011 Plan contravene the Equal Protection Clause, Dkt. No. 1 at 17, and the Court unequivocally held in its Memorandum Opinion that the 2011 Virginia House of Delegates

---

[2] Rule 54 defines a "judgment" as "any order from which an appeal lies." Fed. R. Civ. P. 54. An order from a three-judge panel is appealable to the Supreme Court. 28 U.S.C. § 1253. Thus, the Court's June 26 Order is a judgment within the meaning of Rule 54.

redistricting plan "violates the Equal Protection Clause." Dkt. No. 234 at 92. Plaintiffs also asked the Court to enjoin enforcement of the Challenged Districts as constructed in the 2011 Plan, including an injunction barring Defendants from conducting any further elections based on the Challenged Districts, Dkt. No. 1 at 17, and the Court "enjoined from conducting any election after this date for the office of Delegate in the Commonwealth's House of Delegates in the Challenged Districts until a new redistricting plan is adopted," Dkt. No. 235 at 1. Finally, Plaintiffs asked the Court to order a valid plan for new House of Delegates Districts, Dkt. No. 1 at 17, and the Court afforded the General Assembly the opportunity to draw a new plan to "remedy the constitutional violations" by October 30, 2018. Dkt. No. 235 at 1-2. Plaintiffs prevailed and are entitled to attorneys' fees.

**B.     Plaintiffs Are Entitled to a Fee Award**

A prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968). "Courts have universally recognized that this 'special circumstances exception is very narrowly limited'" and "[o]nly on rare occasions does a case present such circumstances." *Doe v. Bd. of Educ. of Baltimore Cty.*, 165 F.3d 260, 264 (4th Cir. 1998) (citation omitted).

Federal courts employ the familiar lodestar method to calculate the reasonableness of attorneys' fees under the civil rights fee-shifting statutes. *Hensley*, 461 U.S. at 433; *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984). There is a "'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88-89 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)).

6

Although the lodestar amount is presumed reasonable, the Court may "adjust the fee upward or downward" upon consideration of a 12-factor test, the most crucial factor being the extent of the plaintiff's success. *Hensley*, 461 U.S. at 434; *see also McAfee*, 738 F.3d at 88 n.5 (setting out 12-factor test that governs adjustment to the lodestar amount).[3]

### 1. Counsel for Plaintiffs Spent a Reasonable Number of Hours and Exercised Appropriate Billing Judgment

This Court has discretion to award fees for time "reasonably expended" in this litigation. *Hensley*, 461 U.S. at 435. Plaintiffs seek compensation for 7,866.65 hours of attorney and paralegal time totaling $3,302,915.25. Provided as Appendix A to this motion is a consolidated spreadsheet that describes the specific tasks performed by every timekeeper on a daily basis, the number of hours spent on those tasks, and the fees associated with each entry. Plaintiffs compiled this spreadsheet from contemporaneously created time records. *See* Declaration of Kevin J. Hamilton (July 10, 2018) ("Hamilton Decl.") ¶ 10. This figure is reasonable in light of the complexity and lengthy duration of this case and the results obtained, and also reflects counsel's exercise of appropriate billing judgment to the lodestar amount.

This case, like most redistricting cases, presented complex issues and required a considerable amount of attorney time and expertise. Plaintiffs' claims raised a number of important legal questions related to the power of federal courts, the Voting Rights Act, and racial gerrymandering claims. Cases of this nature require analysis and presentation of a wide array of

---

[3] The twelve factors are 1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *McAfee*, 738 F.3d at 88 n.5.

evidence, including complex expert testimony. Discovery was complicated by Intervenors' invocation of the legislative privilege. The fact-intensive nature of Plaintiffs' claims—implicating twelve separate legislative districts and their bordering districts—required many hours of work by different attorneys to meet the case's schedule. Moreover, the appeal process to the U.S. Supreme Court called for a significant amount of attorney resources. Because this case has spanned well more than three years, various counsel worked on the case at different points. And because Plaintiffs needed to consider the voluminous record from the first trial—and this Court's lengthy original opinion and the Supreme Court's subsequent opinion on appeal—in preparing and presenting their case on remand, preparation for the second trial was considerably more complicated than in the ordinary case. These complex circumstances—coupled with Plaintiffs' significant success—establish the reasonableness of the hours that Plaintiffs' attorneys spent on this case.

The attached Hamilton declaration support this conclusion. The declaration certifies that the hours expended by Plaintiffs' counsel, as set out in Appendix A, were actually expended as described. The declaration attests that all attorneys participating in the case maintained detailed, contemporaneous, and accurate records of time devoted to this matter throughout the entire course of representation. Hamilton Decl. ¶ 11. The declaration further attests that all billing attorneys efficiently discharged their duties in litigating this case, notwithstanding its complexity. *Id.* ¶ 14. All hours submitted were devoted to necessary litigation tasks, including extensive briefing, discovery, work with experts, coordination with counsel and the Court, and preparation for and attendance at numerous hearings, depositions, and two separate trials. Counsel for Plaintiffs have exercised reasonable billing judgment and excluded from their calculations any hours that were arguably "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Moreover, Plaintiffs are not seeking to recover all the fees incurred. Rather, Plaintiffs are limiting their fee petition to the members of Plaintiffs' litigation team who spent significant time working on the matter, as well as document review attorneys whose involvement was necessary given the volume of relevant materials in this matter.[4] Plaintiffs are thus excluding, among other things, the scores of hours spent by other attorneys, paralegals, and other timekeepers who assisted in deposition preparation, conducted supporting legal research, or otherwise assisted in litigating this matter. *Id.* ¶¶ 14-15. Specifically, Plaintiffs are not seeking any fees for time spent by 37 timekeepers over the life of this case. *Id.* ¶ 15. Moreover, although Plaintiffs strove at all times to (and did) efficiently try this complex lawsuit, in computing their lodestar amount, Plaintiffs also carefully exercised billing judgment and made reductions where time arguably could have been more efficiently spent. *Id.* ¶ 14.

Plaintiffs' counsel have written off, in total, $380,948.00 in fees. *Id.* ¶ 15. In other words, Plaintiffs' fee request is a conservative lodestar (with actual recorded time reduced by roughly 11.5%) based on work that was reasonably and necessarily expended. *Id.*

All the time claimed was legally and factually related to the claim as to which Plaintiffs prevailed and should be compensable. Of course, the standard for determining attorney time is "not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (affirming fee award and noting that "although it may be easy, in hindsight, to tout this as an easy case, plaintiffs cannot be faulted for

---

[4] Perkins Coie maintains a department of staff attorneys dedicated solely to document review projects, who bill at the rate of $125 per hour. Hamilton Decl. ¶ 12.

9

their thoroughness under the circumstances"). Here, Plaintiffs cannot be faulted for their thoroughness. Plaintiffs did not bring this case just to protect their own interests, but to address a matter of public importance and vindicate the constitutional rights of countless other Virginia citizens.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 434. Counsel for Plaintiffs in this case diligently defended their clients' interests and ultimately prevailed—the fruit of many hours of culling extensive data, consulting with expert witnesses, filing multiple briefs addressing complex legal issues, and participating in numerous hearings. Plaintiffs should therefore be granted an award for all hours submitted to the Court, which, as detailed in the attached declaration, reflect only that time reasonably expended in pursuing their claims.

### 2. Plaintiffs Seek Reasonable Hourly Rates

Courts award prevailing plaintiffs "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. Congress intended that fees awarded in federal civil-rights cases "be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature." *Id*. at 893 (quoting S. Rep. No. 94-1011, at 6 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5908, 5913). The Fourth Circuit adopted the factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), for determining what constitutes a reasonable rate. *Daly*, 790 F.2d at 1075. Those factors include "the customary fee," "the experience, reputation, and ability of the attorneys," and "awards in similar cases." *Nisby v. Comm'rs. Court of Jefferson Cty.*, 798 F.2d 134, 136 (5th Cir. 1986) (listing *Johnson* factors). An analysis of these factors proves that the attorneys in this case charged a reasonable hourly rate.

Marc Elias exercised ultimate oversight responsibility for the lawyers from Perkins Coie LLP, and argued this case on appeal to the Supreme Court. Hamilton Decl. ¶ 4.[5] A recognized national expert in political and election law, he is the Chair of Perkins Coie's Political Law practice, and he has been involved in redistricting litigation in more than a half-dozen states in the 2010 redistricting cycle alone. *Id.* His typical hourly rate reasonably reflects his specialized knowledge and experience in redistricting matters throughout the country.

Kevin Hamilton, who tried this matter before the Court along with partners Bruce Spiva (in the first trial) and Abha Khanna (in the second trial), likewise has significant election law experience in redistricting litigation, statewide recounts, election contests, and other political law litigation. *Id.* ¶ 4. He has extensive experience litigating civil rights actions in federal and state courts across the country, *id.*, making his typical hourly rate also reasonable.

Perkins Coie partners Bruce Spiva, Abha Khanna, William B. Stafford, and Ryan Spear also contributed to Plaintiffs' success.[6] Mr. Spiva has 25 years of litigation experience, representing clients in complex litigation in such areas as congressional redistricting, civil rights, and First Amendment law. *Id.* ¶ 5. Prior to joining Perkins Coie, Mr. Spiva headed his own firm, Spiva and Hartnett, and was a partner at Jenner & Block. *Id.* Ms. Khanna, Mr. Stafford, and Mr. Spear have significant election law experience in redistricting litigation and other political law litigation. *See id.* ¶¶ 6-8. They each have litigated civil rights actions in federal and state courts across the country. Each of their typical hourly rates is reasonable in this case given their extensive experience litigating voting rights cases.

---

[5] The Hamilton declaration provides further information about the experience of the Perkins Coie timekeepers whose qualifications are summarized in this memorandum.
[6] All of these attorneys, save Mr. Spiva, were promoted to partner during the pendency of this lawsuit, and began work on it prior to their promotions.

Counsel were assisted by additional partners, associates, and paralegals, who also have specialized expertise in redistricting litigation, and whose typical hourly rates are reasonable in this case because they are in line with the prevailing market rate of individuals with their skills and levels of experience. Hamilton Decl. ¶ 9. Collectively, Plaintiffs' counsel have litigated or are currently litigating redistricting cases in Virginia and around the country, including in North Carolina, Florida, Minnesota, Nevada, New York, Ohio, Pennsylvania, Texas, Georgia, Alabama, and Louisiana. Hamilton Decl. ¶¶ 3-9.

Plaintiffs' attorneys' hourly rates are reasonable. Plaintiffs maintain that it was reasonable for them to secure representation from attorneys outside of Richmond with particularized expertise in voting rights litigation. That said, Plaintiffs agree to seek recovery at the "Richmond" rates identified by this Court in *Personhuballah v. Wittman*, No. 3:13-cv-00678, in orders dated March 11, 2015, and March 3, 2017. Hamilton Decl. ¶ 11. To the extent additional timekeepers performed work, Plaintiffs have proposed rates based on the rate for comparable attorneys identified in the *Wittman* court's opinions. *Id.* With respect to work performed in 2017 and 2018, Plaintiffs seek recovery at the same rates, with applicable adjustments reflecting Plaintiffs' counsels' 2017 and 2018 rates. *Id.*

The rates associated with counsel for Plaintiffs are reasonable given the complexity of this litigation, the specialized knowledge required to litigate redistricting cases, the significant experience of the attorneys involved, and the prevailing market rates for attorneys of similar experience at comparable law firms. The Hamilton declaration, along with the data included therein, establishes that the rates sought by Plaintiffs are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum*, 465 U.S. at 895 n.11, and thus Plaintiffs should be awarded fees at their

12

counsels' hourly rates as set out in the Hamilton Declaration. *See* Hamilton Decl. ¶ 16 (table setting out each timekeeper's hourly rate and total hours billed).

### 3. Paralegal Hours

Prevailing parties in civil rights cases can also recover fees for the work of paralegals, including "factual investigation, . . . assistance with depositions, interrogatories and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins ev rel. Agyei*, 491 U.S. 274, 288 n.10 (1989); *Herold v. Hajoca Corp.*, 864 F.2d 317, 322 (4th Cir. 1988) (paralegal time is "to be included in attorney's fees").[7]

As set out in Appendix A, paralegals Rachel Roberts and Patricia Marino spent 199.50 and 887.65 hours on this case, respectively, on tasks such as preparation of exhibits and provision of pretrial and trial support. That time had a legitimate purpose, involved tasks that would otherwise have been done by the attorneys, and is compensable under the attorneys' fee statutes. The hourly rates sought for Ms. Roberts and Ms. Marino are at their usual rates (in Ms. Roberts' case, as that rate is below the Richmond rate previously awarded by the Court in *Wittman*) or at the "Richmond" rate for Ms. Marino previously identified by the *Wittman* court. Hamilton Decl. ¶ 16.

### C. Plaintiffs Should Be Awarded Reasonable Expert Fees and Litigation Expenses

In this voting rights matter, Plaintiffs are not limited to recovery of the usual kinds of costs permissible under 28 U.S.C. § 1920. Rather, 52 U.S.C. § 10310(e) expressly provides for the recovery of "reasonable expert fees, and other reasonable litigation expenses as part of the costs."

---

[7] *See also Roberson v. Brassell*, 29 F. Supp. 2d 346, 353 (S.D. Tex. 1998) (allowing recovery for paralegal's time preparing exhibits, compiling witness notebooks, and conducting research); *Webster Greenthumb Co. v. Fulton Cty.*, 112 F. Supp. 2d 1339, 1367 (N.D. Ga. 2000) (same, as to document production tasks); *Coal. to Preserve Houston v. Interim Bd. of Trs.*, 494 F. Supp. 738 (S.D. Tex. 1980) (awarding fees for the work of a paralegal under the Voting Rights Act).

13

*Id.*; *see also Daly*, 790 F.2d at 1083 (noting that "reasonable attorneys' fees under § 1988 must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation") (internal quotation marks, alterations, and citation omitted).[8]

Here, Plaintiffs brought their case under the Fourteenth Amendment, and thus § 10310(e) entitles them to expert fees. Plaintiffs retained and provided expert testimony from Dr. Stephen Ansolabehere, a Professor of Government at Harvard University; Dr. Jonathan Rodden, a Professor of Political Science at Stanford University; and Dr. Maxwell Palmer, an Assistant Professor of Political Science at Boston University. Hamilton Decl. ¶¶ 18-21. Drs. Ansolabehere's, Rodden's, and Palmer's findings provided additional and important support for Plaintiffs' claims, and were relied upon by this Court in finding constitutional violations in the enacted districts. *See* ECF No. 234 at 18-30, 19 n.14.

Plaintiffs are also entitled to recovery of other reasonable litigation expenses pursuant to Sections 1988(b) and 10310(e). The definition of reasonable litigation expenses is broad, including such items as photocopying charges, fees of process servers, travel and related meal expenses, telephone, postage, computer research, and data hosting and processing fees. *See Jenkins*, 491 U.S. at 285 (noting that the "fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors and others whose labor contributes to the work product for which an attorney bills her client; and it must also take account of other expenses and profit"); *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014) (collecting cases detailing types

---

[8] Plaintiffs separately filed a Bill of Costs with this Court seeking those fees that are permissible under 28 U.S.C. § 1920. Plaintiffs have not duplicated a request for those fees in this motion; the fees sought by Plaintiffs here include only those not already requested in the Bill of Costs. To the extent that the Court does *not* grant the Bill of Costs in full, however, all costs recoverable under 28 U.S.C. § 1920 are *also* recoverable as reasonable litigation expenses under 42 U.S.C. § 1988.

14

of reasonable litigation expenses); *Taylor v. Republic Servs., Inc.*, 2014 WL 325169 at *13 (E.D. Va. Jan. 29, 2014) (allowing compensation for "miscellaneous services, including costs associated with copies, facsimile, postage, Federal Express, messenger service, local travel and parking, telephone usage and legal research"); *D.G. ex rel. Strickland v. Yarbrough*, 2013 WL 1343151, at *8-9 (N.D. Okla. Mar. 31, 2013) (allowing recovery of reasonable expenses incurred in using vendors for electronic document hosting and management to the extent expenses were adequately documented).

Here, Plaintiffs seek recovery of expenses in the total amount of $558,389.96. Attached as Appendix B to this motion is a spreadsheet that provides a detailed and itemized account of all expenses requested by Plaintiffs. *See also* Hamilton Decl. ¶ 22. All the expenses were necessarily and reasonably incurred in the course of providing representation to Plaintiffs, and are recoverable as part of an award of attorneys' fees.

## IV.   CONCLUSION

For the reasons set forth above and supported by the accompanying declaration and exhibits, Plaintiffs respectfully request that this Court approve attorneys' fees in the amount of $3,302,915.25 and reasonable litigation expenses in the amount of $558,389.96.

DATED: July 10, 2018

By: */s/ Aria C. Branch*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Aria Branch (VSB # 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of July, 2018, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

By */s/ Aria C. Branch*
Aria C. Branch (VSB #83682)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
ABranch@perkinscoie.com

*Attorneys for Plaintiffs*