IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GOLDEN BETHUNE-HILL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| VIRGINIA STATE BOARD OF ) | Civil Action No. 3:14-cv-00852-REP-AWA- |
| ELECTIONS, et al., ) | BMK |
| ) | |
| Defendants, ) | |
| and ) | |
| ) | |
| M. KIRKLAND COX, SPEAKER OF THE ) | |
| HOUSE OF DELEGATES, and THE ) | |
| HOUSE OF DELEGATES, ) | |
| ) | |
| Intervenor-Defendants. ) | |

**OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

Plaintiffs seek a genuinely astounding fee award: nearly *four million dollars* for nearly *eight thousand* billed hours. Although this litigation has a long history, plaintiffs' request is far from reasonable. Indeed, this Court need look no further than its recent decisions in *Page v. Virginia State Board of Elections*, 2015 WL 11256614 (E.D. Va. Mar. 11, 2015), and *Personhuballah v. Alcorn*, 239 F. Supp. 3d 929 (E.D. Va. 2017), to spot the problems with plaintiffs' current fee petition. The same attorneys involved in this case were also plaintiffs' counsel in *Page*, and their fee petition here is infected with the same errors that this Court highlighted in those prior decisions. Most notably, plaintiffs have not shown that their requested hourly rates for 2017 and 2018 are reasonable rates in Richmond, Virginia, nor have they demonstrated that (and how) the hours for which they seek compensation were reasonably spent on this case.

These issues are explained in more detail below. But we begin with a threshold point: consideration of this petition is premature.

1.	We recognize that Federal Rules of Civil Procedure Rule 54(d)(2) required plaintiffs to file their fee petition when they did.[1] But that does not mean there is any pressing need to resolve fee issues at this stage of the ongoing litigation.

*First*, intervenor-defendants have filed a notice of appeal to the U.S. Supreme Court. Doc. No. 236. If that appeal is successful, plaintiffs' fee petition would be moot because they would no longer be prevailing parties under 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e). Although defendants believe that possibility is quite remote, see generally Doc. No. 246, it nonetheless weighs in favor of preserving scarce judicial resources and awaiting the end of the appellate process. See *Mich. Bldg. & Constr. Trades Council, AFL-CIO v. Snyder*, No. 11-13520, 2012 WL 1893516, at *2 (E.D. Mich. May 23, 2012) ("[T]he decision whether to award fees, and in what amount, is certain to be affected by the pending appellate litigation. Staying the Fees Motion until after appeals have been exhausted is necessary to avoid piecemeal litigation."); *Karuk Tribe of Cal. v. U.S. Forest Serv.*, No. 04-4275 (SBA), 2006 WL 228943, at *2 (N.D. Cal. Jan. 30, 2006) (listing cases where fee litigation was stayed in light of an appeal). Cf. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 195 (2000) (explaining that "[t]he District Court . . . stayed the time for a petition for attorneys' fees until the time for appeal had expired or, if either party appealed, until the appeal was resolved").

*Second*, this case appears destined for a remedial phase before this Court, see Doc. No. 247 n.3, which is likely to result in additional fee claims by plaintiffs. See *Personhuballah*, 239 F. Supp. 3d at 934 ("Plaintiffs request a final supplemental award . . . corresponding to their

---

[1] Counsel for plaintiffs declined our suggestion to file a joint motion to stay the fee petition pending the resolution of any appeal and the remedial phases of the case.

work performed both during *the remedial phase* of the litigation and the second appeal to the Supreme Court.") (emphasis added). Thus, the most likely consequence of resolving plaintiffs' initial fee petition now will be to ensure that there will be multiple rounds of briefing and decisions about attorney's fees.

Indeed, this Court's experience in *Page* provides a concrete example of how litigation of fee issues taxes the Court's and the parties' resources. Between October 2014 and July 2016, plaintiffs filed four fee petitions (an original and three supplemental petitions). See *Personhuballah*, 239 F. Supp. 3d at 934 (describing the third and fourth supplemental fee petitions); *Page*, 2015 WL 11256614, at *2 (describing the original and initial supplemental fee petitions). Those filings, in turn, spawned numerous responses, replies, a sur-reply, stand-alone declarations, and court orders. See Dkt., *Page*, No. 3:13-cv-00678, ECF Nos. 118, 121, 124, 129-31, 136, 182-86, 195-96, 198, 320-23.

In short, delaying fee litigation until after the merits and remedial phases of this case have ended will best serve the interests of justice and ensure that the parties and the Court have one complete opportunity to address all of the issues related to fees. See, *e.g.*, *Reed v. Health & Human Servs.*, 774 F.2d 1270, 1277 (4th Cir. 1985) ("[A] district court may properly defer ruling [on a petition for attorney's fees] pending ultimate resolution of the merits, hence determination of the prevailing party question."), *rev'd on other grounds sub nom. Lukhard v. Reed*, 481 U.S. 368 (1987). Put simply, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

2. If the Court elects to entertain the fee petition at this time, plaintiffs bear the burden of establishing the reasonableness of their requested hourly rate. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("[D]etermination of the hourly rate will generally be the critical inquiry

3

in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate."); *Page*, 2015 WL 11256614, at *4. "The hourly rate is properly determined by applying the prevailing market rates in the relevant community for the type of work performed." *Page*, 2015 WL 11256614, at *4 (internal quotation marks and citation omitted).

In *Page*, this Court considered at length the appropriate 2013 and 2014 billing rates for many of the attorneys at issue here, including: (1) Marc Elias ($575); (2) Kevin Hamilton ($575); (3) John Roche ($465); (4) Elisabeth Frost ($380-$390); (5) Abha Khanna ($365-$410); and (5) Patricia Marino ($190). *Id.* at *8. In *Personhuballah*, plaintiffs agreed that recovery at those rates was appropriate for those same attorneys in 2015, 239 F. Supp. 3d at 948, reversed in part on other grounds by *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018), and this Court also established the 2015 billing rate for several additional attorneys involved here: (1) Bruce Spiva ($575); (2) William Stafford ($405); Aria Branch ($345); and (4) Ruthzee Louijeune ($320). *Id.* Plaintiffs agree that those same billing rates are appropriate here for 2014, 2015, and 2016. Doc. No. 241-3 ¶ 11.

We agree that the billing rates established in *Page* are appropriate for 2014, 2015, and 2016. But we also contend that those same rates must be used for 2017 and 2018. For those years, plaintiffs attempt to increase their hourly rates based on nothing more than the purported "increase in [p]laintiffs' counsels' rates in 2017 and 2018." Doc. 241-3 ¶ 11. Plaintiffs offered precisely the same rationale in *Page* when arguing for an increase to their 2016 rates, stating that "these 'modest adjustments . . . reflect the reality that attorneys' billing rates generally are adjusted from year-to-year.'" *Personhuballah*, 239 F. Supp. 3d at 951. This Court *expressly rejected* plaintiffs' attempt to inflate their rates "based solely on evidence of extra-jurisdictional

4

rate increases." *Id.* Like in *Page*, "Plaintiffs [here have] not come forward with any evidence 'that the adjustments are reasonable for the Washington D.C. and Seattle markets (where most of Plaintiffs' attorneys are based)—let alone for the relevant Richmond market.'" *Id.* (citation omitted). The same conclusion therefore is warranted here: "Because Plaintiffs have not met their burden of establishing the reasonableness of an increase in rates, [the Court should] use the 2015 rates set out" in *Page*, *id.*, which, again, everyone agrees are appropriate.

Applying the 2015 rates to the hours plaintiffs' billed in 2017 and 2018 results in an initial reduction to the fee award of $238,750.25. Exhibit A to this response lists the billing entries that should be reduced to the Richmond rate and shows the reduced amounts for each time entry.

2. Beyond the question of hourly rates, "[p]laintiffs [also] must demonstrate that the amount of hours sought to be compensated were reasonably expended on the litigation." *Page*, 2015 WL 11256614, at *8 (citation omitted). "[T]he Court must exclude from the lodestar figure all 'hours that are excessive, redundant, or otherwise unnecessary.'" *Id.* (citation omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* (citation omitted). "Extensive use of block billing or vague descriptions of tasks constitute inadequate documentation because these practices do not allow the Court to assess the reasonableness of time spent on specific tasks." *Id.*; accord *id.* at *10 ("It is well established that attorneys must 'describe specifically the tasks performed . . . .'" (citation omitted)). Block billing "is the practice of grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Id.* at *9.

Plaintiffs' billing records fall far short of showing that the 7,866.65 hours they claim to have spent on this case were reasonable or appropriate. See ECF No. 241-3 ¶ 16.

5

a. The records submitted by plaintiffs are vague and replete with block billing. A complete version of plaintiffs' billing records is attached as Exhibit B with highlighting to illustrate each instance of block billing (highlighted in red) and vagueness (highlighted in yellow). At the outset, it bears mention that plaintiffs' block billing is not always obvious. In many instances the description on its face appears to separate a particular person's work in tenth-of-an-hour increments. But in the numerous instances that are highlighted throughout in Exhibit B, plaintiffs combine multiple tasks in a single entry: "Telephone *conferences* [plural in original] regarding lawsuit (1.8)," Ex. B (Row 15) (emphasis added); "Email *and* telephone conference regarding discovery responses," Ex. B (Row 359) (emphasis added); and, ubiquitously, "Prepare for *and* participate in . . . .," Ex. B (Row 17); accord *id.* (approximately 107 additional entries consolidating the two tasks into a single time entry). A few examples are described below to highlight the types of issues that prevent defendants from being able to properly evaluate the fee petition.

*First*, the billing records often conflict about what happened on a particular day. For example, on April 2, 2015, three attorneys participated in a conference. Their respective time entries suggest that the meeting lasted somewhere between "1.9" hours, "1.3" hours, and "1.2" hours. Ex. B (Rows 377-78, 381). Compounding the discrepancy about how long the meeting lasted, two of the attorneys block billed the meeting as "prepare for and conference" and "prepare for conference and confer," so it is unclear how much time they spent at the meeting and how much time was spent in preparation for the meeting. Ex. B (Rows 377, 381).[2]

---

[2] This is not an isolated issue. See, *e.g.*, Ex. B (Rows 395-97, 399-400, 402, 403-08) (showing a meeting about "document review logistics" lasting from various amounts of time between ".5" and "1" hour); *id.* (Rows 545, 550) (similar); *id.* (Rows 686, 688) (similar); *id.* (Rows 928-30) (similar); *id.* (Rows 1310-11) (similar); *id.* (Rows 1441-42) (similar); *id.* (Rows 1528-31) (similar); *id.* (Rows 1851-54) (similar); accord *id.* (Rows 537-38, 540) (inconsistencies between attorneys about how many meetings were had about depositions and how long they

6

Additionally, each attendee remembered the meeting as addressing different topics: "deposition scheduling, expert reports and related issues"; "witness interviews, depositions, and case strategy"; and "depositions and document review issues." Ex. B (Rows 377-78, 381). In short, it is impossible for defendants to determine what happened at that meeting, how long it went on for, and thus whether the time spent by plaintiffs was reasonable.

*Second*, attorneys frequently block billed for major events in the litigation, such as preparing for and taking depositions. *E.g.*, Ex. B (Row 726) ("Prepare for *and* defend S. Ansolabehere deposition (8.0)"); *id.* (Row 859). And while some attorneys properly separated those types of tasks, see *id.* (Rows 721-22) (separately accounting for time attending the deposition and time for preparation), the improper block billing pervades plaintiffs' record and prevents defendants from evaluating whether a reasonable amount of time was spent on key litigation tasks.

*Third*, the billing records are full of vague entries that provide no context for what the person was actually doing in relation to the litigation, why their activities were required, or why the amount of time billed was necessary or appropriate. Some examples include: (1) "Manage discovery" without any explanation, *e.g.*, Ex. B (Row 280); (2) "Review and analyze documents for categorization and assessment," *e.g.*, Ex. B (Row 894), with no context or explanation of what that phrase means; and (3) "Review deposition" with no explanation of whose deposition was reviewed or why it was necessary, *e.g.*, Ex. B (Row 881); accord *id.* (Row 1101) ("Trial

---

lasted); *id.* (Row 552) (reporting an exchange of correspondence that is not reported by other participants).

prep"). Absent appropriate context, it is impossible to know whether the time spent on those matters was reasonable (or even what some of these activities actually were).[3]

      b.      Because plaintiffs have engaged in significant block billing and their records are full of vague time entries, the Court should reduce their fee award in light of the fact that "an accurate determination of the reasonableness of the time expended" is not possible. *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Courts often reduce fee awards "in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." *Id.*; *see also Page*, 2015 WL 11256614, at *10 ("This Court has recently imposed ten and twenty percent reductions in fee awards to account for block billing."). And as in *Page*, "the documentation defect" in this case "is sufficiently pervasive upon close review to warrant a substantial percentage reduction." *Id.* At minimum, defendants believe that the 20% reduction imposed in *Page* for block billing is also warranted here. See *Page*, 2015 WL 11256614, at *10. As Exhibit B shows, the billing records submitted here suffer from significant defects that hinder the defendants from determining whether the fee request is reasonable. Defendants therefore believe a further reduction is warranted in this case given the plethora of vague time entries. As described above and highlighted in Exhibit B, many of the time entries provide no explanation for why a particular task was being performed and no context whatsoever about why it was necessary to the litigation. Although courts are permitted to deny a fee award in its entirety when presented with documentation that "do[es] not permit a fair evaluation of the time expended [or] the nature and

---

[3] It is also apparent that plaintiffs billed exorbitant amounts of time for routine tasks. *E.g.*, Ex. B (Row 1121) ("1.1" hours to "[c]ontact judge's chambers for courtesy copy filing instructions").

need for the service," *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 575 (E.D. Va. 1988) (second alteration in original) (internal quotation marks and citation omitted), defendants believe that the appropriate resolution here is to reduce the award by at least 30% after having corrected the billing rates for 2017 and 2018. Cf. *Guidry*, 442 F. Supp. 2d at 294 (referencing a fee reduction of 35% for support staff and 25% for attorneys).

*       *       *

Plaintiffs seek vastly more fees in this redistricting case than they did in *Page*, which was also a significant redistricting case. And like in *Page*, plaintiffs' documentation is inadequate to support their massive fee request. The chart below shows the minimum reductions defendants believe are warranted in light of plaintiffs' failure to prove the reasonableness of their hourly rates for 2017 and 2018, and in light of the pervasive documentation defects that prevent defendants from fairly evaluating the reasonableness of their numerous fees.

| | |
|---|---|
| Amount requested by Perkins Coie timekeepers | $3,302,915.25 |
| Adjustment based on recalculating 2017 and 2018 billings at Richmond rates (see Ex. A) | -$238,750.25 |
| Subtotal after adjustment to Richmond Rates | **$3,064,165** |
| 30% reduction for block billing and vague descriptions (see Ex. B) | -$919,249.50 |
| **Total fee award after necessary reductions** | **$2,144,915.50** |

Defendants maintain that the Court should not address fees at all at this stage of the ongoing litigation, but if the Court decides to address the issue, Defendants request that payment of any award not be required until the case concludes.

9

Respectfully submitted,

By:     /s/
Matthew R. McGuire, VSB # 84194
Principal Deputy Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7773 – Telephone
(804) 371-0200 – Facsimile
mmcguire@oag.state.va.us

Mark R. Herring      Toby J. Heytens
Attorney General of Virginia      Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2018, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will then send a notification of such filing to the counsel of record in this case

By:   /s/_____
      Matthew R. McGuire