IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |
| Plaintiffs, | |
| v. | |
| VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |
| VIRGINIA HOUSE OF DELEGATES, *et al.* | |
| Intervenor-Defendants | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

-i-

## TABLE OF CONTENTS

                                  **Page**

I. INTRODUCTION ........................................................................................................... 1

    A. It Is Reasonable for Plaintiffs' Counsels' Rates to Increase Between 2014 and 2018 ............................................................................................... 3

    B. The Time Counsel Spent Obtaining a Successful Outcome Was Reasonable ............................................................................................................ 5

        1. The State Defendants' Block Billing Objections Are Meritless .......... 6

        2. The State Defendants' Vagueness Objections Are Meritless ............. 10

    C. Plaintiffs Are Entitled to Their "Fees on Fees" ................................................. 13

    D. The Court Should Not Delay Its Ruling on the Motion for Fees .................... 14

II. CONCLUSION ............................................................................................................. 15

I.  **INTRODUCTION**

In its response to Plaintiffs' Motion for Attorneys' Fees, the State Defendants do not dispute that Plaintiffs are the prevailing parties and thus are entitled to an award of fees and reasonable litigation expenses. Rather, they say that Plaintiffs' fee petition is too large. According to State Defendants, Plaintiffs have submitted a "genuinely astounding" fee petition for "nearly *four million dollars*," warranting a radical departure from the lodestar amount that would slash Plaintiffs' fees by 35% (to $2,144,915.50). Opposition to Plaintiffs' Motion for Attorneys' Fees and Litigation Expenses, Dkt. No. 253 ("Opp.") at 1, 9 (emphasis in original).

The State Defendants' astonishment is difficult to accept at face value. Between the State Defendants (the executive branch) and the Defendant-Intervenors (the House of Delegates), the Commonwealth has spent roughly *five million dollars* defending this case.[1] Indeed, as of last month, the House had spent $4 million defending the case alone. And the State Defendants' attorneys billed $877,000 even though they were not lead counsel in defense of the Challenged Districts, and played a minor role, at best, during the course of the two trials in this matter (failing to examine a single witness or introduce a single exhibit). Plaintiffs, by contrast, seek recovery of $3,302,915.25 in fees (as well reasonable litigation expenses in the amount of $558,389.96).[2]

The claim that Plaintiffs spent "too much" rings hollow given that Plaintiffs seek a total recovery of fees and expenses that is markedly lower than what the Commonwealth itself spent. There are only two explanations. Either Plaintiffs' attorneys billed at a lower average rate than the Commonwealth's attorneys, or Plaintiffs' counsel billed fewer hours.

---

[1] See Press Release, Mark R. Herring, Att'y Gen., *Herring Urges General Assembly to Eliminate Racial Gerrymandering in House of Delegates Districts as Quickly as Possible* (July 19, 2018), https://www.oag.state.va.us/media-center/news-releases/1233-july-19-2018-herring-urges-general-assembly-to-eliminate-racial-gerrymandering-in-house-of-delegates-districts-as-quickly-as-possible (House of Delegates has spent "more than 4 million" and the Office of the Attorney General "approximately $877,000").

[2] State Defendants offer no objections to Plaintiffs' requested litigation expenses. *See generally* Opp. Accordingly, the Court should award Plaintiffs their requested litigation expenses of $558,389.96 in full.

Under either scenario, the Commonwealth has not and cannot show that Plaintiffs' fee petition is unreasonable. Plaintiffs are confident that counsel for the Commonwealth acted as wise stewards of taxpayer dollars and neither billed at unreasonably high rates nor for an unreasonably high number of hours. If it is reasonable for the Commonwealth to spend nearly $5 million losing the case, it is most certainly reasonable for Plaintiffs' counsel to have billed $3.2 million to win it.

That the numbers at issue here are large is not surprising. This has been a massively complex piece of litigation with a lengthy history fought in multiple forums. The case has gone to trial twice. Plaintiffs litigated an appeal to the Supreme Court. The case directly involved twelve separate legislative districts in three different parts of the Commonwealth, each with their own unique history and evidentiary record. The facts and the law were hotly contested. The case involved many battles of the experts. Given the nature and stakes of this case, both Plaintiffs and the Commonwealth necessarily spent significant time and resources litigating it.

Given this backdrop, it is unsurprising that the State Defendants' specific objections to Plaintiffs' fee request fail. They take issue with Plaintiffs' counsels' rates, which amounts to the claim that it is unreasonable for rates to increase at any point between March 2015 (when the *Page* court[3] set the rates the State Defendants ask to be imposed here) and 2018. The State Defendants also say the Court should reduce the bill because of alleged "block billing" and "vague" entries. But these objections collapse upon scrutiny—counsel billed by individual task in six-minute increments, and the time records run for scores of pages precisely because of the detailed narrative provided.

Finally, it is appropriate for the Court to rule on the fee petition now. As the State Defendants acknowledge, Plaintiffs filed their fee application now because they were required to do so under the Civil Rules. *See* Opp. at 2. This is for good reason, as prompt

---

[3] Plaintiffs refer generally to the "*Page*" case when referencing litigation over Virginia's Third Congressional District, although the case caption was ultimately changed to *Personhuballah v. Alcorn*.

resolution of fee petitions allows the Court to assess the reasonableness of the fees requested while the work performed by counsel remains fresh in the Court's mind. To be sure, the case is proceeding to a remedial phase, and Intervenors have appealed. But that did not stop this Court in the *Page* litigation from issuing a ruling on Plaintiffs' fee application submitted while the case went up on appeal (and prior to the remedial phase of the lawsuit). The Court should take the same path here.

### A. It Is Reasonable for Plaintiffs' Counsels' Rates to Increase Between 2014 and 2018

The State Defendants agree that Plaintiffs' rates are reasonable as set out in 2014-2016, but object to Plaintiffs' proposed rates for 2017 and 2018. The rates at issue were set by the *Page* court in March 2015 and reflect *2014* rates that were applied by the Court to 2015 and 2016 time as well. In other words, the State Defendants argue it is unreasonable for hourly rates to increase *at all* between 2014 and 2018.

But the adjustments Plaintiffs seek here simply reflect the reality that attorneys' billing rates generally *are* adjusted from year-to-year, largely reflecting the added value experience brings to the practice of law. Courts regularly recognize that attorneys' rates in fact go up over time. *United States ex rel. Ritchie v. Lockheed Martin Corp.*, No. 04-cv-01937-EWN-MJW, 2007 WL 1795865, at *4 (D. Colo. June 21, 2007) (recognizing "the familiar practice of annual attorney rate increases"); *Randolph v. Sec'y of Health & Human Servs.*, No. 15-146V, 2018 WL 1310477, at *4 (Fed. Cl. Feb. 13, 2018) (granting fee award reflecting "reasonable increase" in rates); *Ryan P. ex rel. Christine P. v. Sch. Dist. of Phila.*, No. 07-2903, 2008 WL 724604, at *5-6 (E.D. Pa. Mar. 18, 2008) (awarding annual rate increases).

Nor are the 2017 and 2018 rates sought by Plaintiffs' counsel unreasonable in this district. This Court frequently looks at "the guidelines adopted in *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10–cv–502, Dkt. No. 263 (E.D. Va. Aug. 24, 2011)." *Coward v. Robinson*, No. 1:10-cv-147 (LMB/MSN), 2017 WL 5195868, at *3 (E.D. Va. Nov. 9, 2017).

These guidelines, set out back in 2011, provided that the following rates are reasonable in this district:

> $130–350/hour for paralegals; $250–425/hour for lawyers with 1–3 years of experience; $350–600/hour for lawyers with 4–7 years of experience; $465–640/hour for lawyers with 8–10 years of experience; $520–770/hour for lawyers with 11–19 years of experience; and $505–820/hour for lawyers with 20+ years of experience.

*Id.* (citing *Vienna Metro LLC*, No. 1:10-cv-502, Dkt. No. 263 at 12).[4] Here, all of the rates requested by Plaintiffs' counsel in 2017 and 2018 fall either below—or comfortably within— these ranges.

| TIMEKEEPER | Years of Legal Experience[5] | *Vienna Metro* Guidelines | Requested 2017 Rate | Requested 2018 Rate |
|---|---|---|---|---|
| Aria Branch | 6 | $350–600/hour (4-7 years of experience) | $410 | $430 |
| Michelle DePass | | $130–350/hour for paralegals | N/A | $235 |
| Marc Elias | 25 | $505–820/hour (20+ years of experience) | $675 | N/A |
| Elisabeth Frost | 11 | $520–770/hour (11–19 years of experience) | $490 | $530 |
| Kevin Hamilton | 33 | $505–820/hour (20+ years of experience) | $675 | $715 |
| Abha Khanna | 11 | $520–770/hour (11–19 years of experience) | $510 | $550 |
| Ruthzee Louijeune | 4 | $350–600/hour (4-7 years of experience) | $420 | N/A |
| Patricia Marino | | $130–350/hour for paralegals | $230 | N/A |
| Rachel Roberts | | $130–350/hour for paralegals | $180 | N/A |

---

[4] While the *Vienna Metro* rates are generally considered by the Alexandria division, they have been applied to work performed by Richmond-based attorneys. *See Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 258 F. Supp. 3d 647, 665-66 n.11 (E.D. Va. 2017); *cf. Evergreen Sports, LLC v. SC Christmas, Inc.*, No. 3:12CV911-HEH, 2013 WL 6834643, at *8 & n.13 (E.D. Va. Dec. 20, 2013) (2013 case finding that counsels' rates were "reasonable and consistent with prevailing rates in the Richmond, Virginia area" where attorneys charged up to $650 per hour).

[5] Information regarding counsels' legal experience is set out in Exhibit A to the Declaration of Kevin J. Hamilton (Dkt. No. 241-3).

| TIMEKEEPER | Years of Legal Experience[5] | *Vienna Metro* Guidelines | Requested 2017 Rate | Requested 2018 Rate |
|---|---|---|---|---|
| John Roche | 14 | $520–770/hour (11–19 years of experience) | $465 | N/A |
| Ryan Spear | 11 | $520–770/hour (11–19 years of experience) | $510 | N/A |
| Bruce Spiva | 26 | $505–820/hour (20+ years of experience) | $675 | N/A |
| William Stafford | 11 | $520–770/hour (11–19 years of experience) | $505 | $545 |

Plaintiffs continue to seek recovery at rates substantially below the actual rates charged, notwithstanding the excellent results they obtained in a hard-fought and complex case that has been litigated before this Court and the United States Supreme Court. Plaintiffs submit that, in these circumstances, it is appropriate to recognize that their counsels' billing rates are higher in 2018 than they were in 2014. Plaintiffs submit that their specific requested increases are reasonable. In all events, the Court should reject the State Defendants' position that it is unreasonable for counsels' hourly rates to go up *at all* over a five-year period.

### B. The Time Counsel Spent Obtaining a Successful Outcome Was Reasonable

The State Defendants summarily ask the Court to reduce Plaintiffs' requested fees by an additional <u>thirty percent</u> or "[a]t minimum" 20%. *See* Opp. at 8-9. While they premise this request on supposed "block billing" or "vague" entries, it is clear that the State Defendants are simply working backwards. Because "Plaintiffs seek vastly more fees in this redistricting case than they did in *Page*," the State Defendants believe the instant fee request is unreasonable. *Id.* at 9. But it is no surprise that the fees in these separate cases are different— not only were there two separate trials in this case (unlike *Page*), but rather than the single district at issue in *Page*, here the parties were litigating twelve individual districts. This case was far more complicated than *Page*.[6]

---

[6] Length of opinion may be an imperfect measure of case complexity, but it is not meaningless that the majority and dissenting opinions in this case was roughly twice as long as the opinions in *Page*. *Compare* Dkt. No. 234, *with Page v. Va. State Bd. of Elections*, No. 3:13-cv-678, Dkt. No. 170 (Memorandum Opinion) (E.D. Va. June 5, 2015).

Given this backdrop, it is unsurprising that State Defendants' specific challenges to Plaintiffs' fees—alleged "block billing" and "vague" entries fail upon close examination.

### 1. The State Defendants' Block Billing Objections Are Meritless

As noted in Plaintiffs' motion, there is a "'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee v. Boczar*, 738 F.3d 81, 88-89 (4th Cir. 2013) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). That said, a court can reduce the lodestar if a fee claimant either does not submit contemporaneous time records (Plaintiffs have) or where those records do not describe the work performed "with reasonable particularity" so that the court can determine whether hours were reasonably expended. *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 675 (E.D. Va. 2015) (quoting *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006)).

Where a party lumps together multiple, discrete tasks into a single lengthy time entry, it can make it difficult for the court to determine whether time spent was reasonably expended. This is true where, for example, every time entry reflects "only the total amount of time for each day . . . , with no breakdown of how that time was spent among often as many as four or five distinct tasks." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012).

Ultimately, however, what matters is not how time entries are formatted but rather whether they are sufficiently clear and detailed to allow the Court to evaluate the reasonableness of the time spent. In assessing a fee petition, courts are "practical and realistic," recognizing that if attorneys "have to document in great detail every quarter hour or half hour of how they spend their time . . . their fee[s] . . . will be higher, and the lawyers will simply waste precious time doing menial clerical tasks." *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006); *see also, e.g., Supler v. FKAACS, Inc.*, No. 5:11-CV-229-FL, 2013 WL 6713120, at *4 (E.D.N.C. Dec. 19, 2013) (refusing to reduce fees for

"block billing": "These four entries, while they combine certain tasks, do not hamper the court's ability to evaluate the work done or reasonableness of time expended").

Here, the State Defendants' objections to particular entries are meritless. Many, indeed, border on the absurd. For example, the State Defendants apparently assert a time entry is block billed if two people met to discuss more than one topic in the same meeting. *See* Opp., Ex. B (Dkt. No. 253-2) at row 2182 ("Conference with R. Spear regarding defendant-intervenor witness list and review of case files/transcripts"). Or consider an entry by Abha Khanna on January 9, 2015, in which Ms. Khanna billed six minutes (.1) and described the entry as "Review order appointing three-judge panel; email with legal team regarding same." *Id.* at row 95. This is scarcely "block billing." It is entirely clear what Ms. Khanna did on this day for six minutes—reviewed an order and spent a brief amount of time emailing other attorneys regarding that order. Whether this entry reflects a reasonable expenditure of time does not turn on whether Ms. Khanna spent four minutes reviewing the order and two minutes writing an email, or vice versa.

Likewise, the State Defendants assert that the following entry from Ms. Khanna on April 6, 2015, totaling 2.1 hours, contains block billing:

> Review emails with opposing counsel regarding deposition scheduling and legislative privilege assertions (0.2); conduct witness interview regarding 2011 redistricting process (0.5); prepare for same (0.3); draft and circulate file memo regarding same (0.9); confer with R. Spear regarding concerns with attorney-client privilege notations on Intervenors' privilege log (0.2).

*Id.* at row 393. To give another example of the nature of the State Defendants' block billing objection, Entry No. 521 is a time entry from Ryan Spear, totaling 7 hours, that is broken down into *eighteen* individual tasks:

> Review and respond to emails with opposing counsel regarding deposition scheduling (.2); confer with opposing counsel regarding same (.5); review opposition to motion to compel (.4); confer and exchange emails regarding potential delegate witness (.6); update litigation team regarding same (.1); review and revise deposition notices and subpoenas for fact witnesses

- 7 -

>   (.6); circulate notices and subpoenas to opposing counsel (.2); coordinate service of notices and subpoenas (.2); review and respond to emails with J. Bickford regarding same and regarding deposition locations (.5); confer with litigation team regarding status and strategy, including motion to compel, expert reports, and discovery (1.1); review and revise supplemental written discovery responses and requests (.5); review and respond to emails with A. Branch regarding same (.2); send supplemental responses and requests to J. Walrath (.2); review report regarding documents from A. Branch (.4); prepare and circulate updated task list for litigation team (.6); prepare and circulate master schedule of depositions and staffing (.5); confer with K. Hamilton regarding same (.1); review and respond to emails with B. Spiva regarding same (.1).

*Id.* at row 521. As to many entries such as this, Plaintiffs are at a loss as to the basis of the objection.

Indeed, even when Plaintiffs' timekeepers broke apart tasks into separate entries altogether, rather than delineating the time spent on different tasks in the same entry as above, the State Defendants still object. Consider this set of entries from Bruce Spiva on March 23, 2015:

1. Review intervenors' and defendants' objections to our discovery (.50);
2. Confer with E. Frost about case strategy (.40);
3. Prepare for same (.50);
4. Telephone conference with team about discovery, case strategy and deposition (1.0).

*Id.* at rows 311-314. The State Defendants claim the entry "prepare for same" is block billing. While it would have been entirely appropriate for Mr. Spiva to have combined those two closely related tasks in a single entry (as discussed below), he broke them apart in this case. The State Defendants thus object to "block billing" regardless of whether Plaintiffs delineated time within a single entry or broke apart different tasks into separate entries.

Stripped to its essence, then, the State Defendants are proffering a definition of "block billing" that is at odds with common sense and common understanding of appropriate billing practices. The State Defendants assert that it is impermissible "block billing" for a

single entry to include closely related and intertwined tasks. For example, they claim it is block billing for a person who is simultaneously drafting a brief and contemporaneously doing legal research to indicate they spent time to "[r]esearch and draft" that brief, *see, e.g.*, Opp., Ex. B at rows 1619, 1621, 1625,[7] or for a timekeeper to indicate that they spent time preparing for and then attending a conference, *id.* at row 2178 (objecting to .6 entry reading "Prepare for and participate in conference call with opposing counsel regarding case schedule").

To the contrary, it is not "block billing" for an attorney to delineate "related tasks" in a single entry, even for entries that "contain a significant period of time." *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1043 (C.D. Cal. 2012). As one court explained:

> [T]he mere fact that an attorney has included more than one task in a single billing entry is not, in itself, evidence of block-billing. When those tasks are intertwined, including a thorough description of the activities performed clarifies, rather than obscures, the record.

*Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009). Thus, courts routinely reject "block billing" challenges of the kind the State Defendants lodge here. *See, e.g., Coty Inc. v. Excell Brands, LLC*, No. 15-CV-7029 (JMF), 2017 WL 4159929, at *2 (S.D.N.Y. Sept. 18, 2017) (collecting cases and rejecting challenge to entries such as a seven-hour entry reading: "preparation for 'joint case management conference statement; conference with [Dan Stormer] re: same; research issues for joint status conference statement'"); *Pierce*, 905 F. Supp. 2d at 1043 (rejecting challenge to entries in which, for example, counsel prepared for multiple depositions, reviewed related documents, and conferred with co-counsel regarding the depositions); *Wise v. Kelly*, 620 F. Supp. 2d 435, 451 (S.D.N.Y. 2008) (noting that it is appropriate for a single entry to address "more than one task related to a single general task" and that it is "unreasonable to expect" that tasks

---

[7] To take this as an example, there is no firm delineation between researching and drafting a brief. Given the availability of online databases, it is typical that an attorney will look up cases to support particular propositions while in the midst of drafting, rather than spending X block of time conducting research and Y block of time on the drafting process.

such as multiple communications on the same day about the same general topic to "be broken down into separate time entries"); *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1216-17 (E.D. Cal. 2009) (refusing to diminish lodestar where "the vast majority of the block-billing identified by defendant involves the grouping of highly related tasks that rarely cover more than a few hours").

The State Defendants do not cite a single case supporting their interpretation of "block billing." The State Defendants cite to *Page*, claiming that case supports their claim that Plaintiffs' counsel block billed here. But *Page* is inapposite. The *Page* court deducted certain amounts from the plaintiffs' fee petition as "block billing" based on the attorneys' failure to delineate the time spent on particular tasks. *See, e.g.*, *Page v. Va. State Bd. of Elections*, No. 3:13-cv-678, Dkt. No. 112-4.[8] Suffice to say, when the *Page* court imposed a 20% reduction on fees as a result, counsel took that direction to heart. The *Page* court cited approvingly the way that "senior associates Manheim and Frost and the two discovery attorneys Blake and Meckling" had completed their time entries—breaking down discrete tasks separately. *Page v. Va. State Bd. of Elections*, No. 3:13-cv-678, 2015 WL 11256614, at *10 (E.D. Va. Mar. 11, 2015). That is *exactly* how the entries in the instant fee petition are billed.

The State Defendants' "block billing" objections are meritless.

### 2. The State Defendants' Vagueness Objections Are Meritless

The entries that State Defendants claim are "vague" are similar. Plaintiffs will not exhaustively review each and every challenged entry, but instead provide examples of why the Court should reject the State Defendants' request that the Court reduce the lodestar.

*First*, the State Defendants' specific objections are not well-founded. Most notably, the State Defendants object to numerous entries of: "Review and analyze documents for

---

[8] For example, on March 17, 2014, an attorney billed 1.3 hours without separately delineating time spent conferencing with a colleague about document production coding, emailing others about discovery issues, drafting discovery responses, reviewing a voicemail regarding an expert report, reviewing the opposing parties' discovery objections, and reviewing an expert report. *See id.* at 52.

categorization and assessment." *See, e.g.*, Opp., Ex. B at row 894. But the purpose of these entries is obvious on their face, and Plaintiffs have further explicitly explained what these entries are about. All entries with this description are for timekeepers who, as explained in the Hamilton Declaration accompanying Plaintiffs' motion, are document review attorneys who were tasked with reviewing materials "produced to Plaintiffs by the Commonwealth of Virginia and Defendant-Intervenors in response to discovery and public records requests." Dkt. No. 241-3 ¶ 12. It is entirely reasonable for a party to review documents that are produced to it in order to determine their materiality to the case, whether when reviewing discovery responses initially or identifying exhibits for trial.

Likewise, the State Defendants object to various entries whose purpose is reasonably apparent in context. For example, the State Defendants object to an entry on May 30, 2015, shortly before the first trial began, in which trial counsel Bruce Spiva reviewed a deposition. Opp., Ex. B at row 881. In context, this is not so vague that it amounts to unrecoverable time. One day before this entry, paralegal Rachel Roberts "[t]ransmit[ted] copies of deposition transcripts to trial team." *Id.* at row 872. And thereafter, in preparation for trial, Mr. Spiva continued to review deposition transcripts. Defendants do not object, for example, to an entry on June 2 in which Mr. Spiva "[r]eview[ed] depositions and documents to prepare for trial." *Id.* at row 910.

*Second*, the same is true for the other supposedly "vague" entries identified by Defendants—the work done is clear in context. For example, Defendants object to entries in July and August 2017 related to the preparation of subpoenas. *See* Opp., Ex. B at rows 2251, 2265, 2270. On July 18, 2017, for example, junior associate Ruthzee Louijeune, billed time to "[p]repare subpoenas." *Id.* at row 2251. Not only is this description clear in and of itself, it becomes crystal clear in light of the fact that just the day before, Ms. Louijeune billed time to "[p]repare subpoenas to serve on Defendant-Intervenors' witnesses and experts." *Id.* at row 2243. As is clear from this and other surrounding entries, the parties were in the midst of

conducting a substantial number of depositions, and Ms. Louijeune was assisting in the preparation of various deposition subpoenas. The fact that Ms. Louijeune did not delineate the specific witnesses whose subpoenas she was preparing on July 18 does not make her work nonrecoverable—a point underscored by the fact that Defendants do *not* challenge many similar entries. *Compare id.* at row 2251 ("prepare subpoenas" alleged to be unreasonably vague), *with id.* at row 2324 ("draft subpoenas" *not* alleged to be unreasonably vague).

*Third*, in some cases, Defendants object to various entries in which counsel indicated they were preparing for trial or to take or defend depositions. *See* Opp. at 7-8 (citing Opp., Ex. B at row 1101) ("trial prep"); *see also id.*, Ex. B at row 1227 ("prepar[ing] for trial"); *id.*, Ex. B at rows 2396, 2402-03, 2418, 2430, 2439-40, 2463, 2466. To be sure, it would be possible for counsel in all instances to belabor specific descriptions of the well-known trial preparation tasks counsel were engaged in at any given time (reviewing relevant documents, preparing outlines, meeting with co-counsel or witnesses, selecting exhibits, and so on). But the Court is well aware of what must be done to prepare for a trial, and it observed the fruits of counsel's labor. The same is true for depositions. It takes no great imagination to understand what an attorney does when preparing for a deposition a day or two before the deposition takes place. Little would be added by counsel denoting specifically that they were reviewing documents related to the witness for X hours, reviewing transcripts for Y hours, drafting a deposition outline for Z hours, and so on.

The Court can review the amount of time counsel spent preparing for depositions and trial from Plaintiffs' billing records, and nothing warrants a downward departure from the lodestar. These entries are not so vague that Plaintiffs should be denied recovery for this time. *Doe v. Rector*, No. 1:15-cv-209, 2016 WL 3480947, at *5 (E.D. Va. June 21, 2016) (rejecting challenge to time entries where concededly "more detail might have been

provided" as the entries identified the general subject matter of the work and thus were "in significant respect adequate").

*Fourth* and finally, the State Defendants assert that some entries "conflict about what happened on a particular day." As an example, the State Defendants cite to April 2, 2015, when three attorneys participated in a conference. But one of the entries reflects that an attorney prepared for a conference and then met other counsel (*see* Opp., Ex. B at row 377), whereas the other two attorneys indicated that they conferred with other counsel for 1.2 and 1.3 hours. *See id.* at rows 378, 381. Respectfully, there are any number of entirely legitimate reasons for a .1 discrepancy. For example, it is far from rare for two attorneys to begin a meeting because another is running marginally late. Or one attorney who wrote a lengthy email may note that he or she did so, whereas if the recipient responded briefly, he or she may not bother to note drafting a 15-second response. Moreover, as Plaintiffs have explained, they exercised billing judgment to write off a substantial amount of time. It is not surprising, then, that on some occasions Plaintiffs have "not reported" time for all participants in a particular activity. *See* Opp. at 6-7 n.2. In any event, the handful of supposed inconsistencies the State Defendants identify do not warrant the 30% reduction in fees they request.

In sum, if the State Defendants' position were correct, counsel would be compelled to spend more time drafting billing narratives than performing legal work, writing entries with the detail of a Dickens novel as they describe each individual email they sent, conversation they had, and discrete task they performed. This is not the law. The 191 pages of billing records Plaintiffs have submitted are thorough, detailed, and provide no basis for diminution of the lodestar.

C.     **Plaintiffs Are Entitled to Their "Fees on Fees"**

A prevailing party is entitled to recover its "'fees on fees'—that is, an award of fees incurred in litigating the question of fees." *See Mercer v. Duke Univ.*, 401 F.3d 199, 202 n.3 (4th Cir. 2005) (citing *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) ("[I]t is

well-settled that the time spent defending entitlement to attorney's fees is properly compensable under § 1988 . . . .")).

Here, Plaintiffs' counsel, after exercising billing discretion, and segregating time spent on other tasks related to the pending appeal, request recovery for a total of 48.9 hours preparing the instant request for fees. *See* Second Declaration of Kevin J. Hamilton. After adjusting for the Richmond rates, Plaintiffs seek to recover an additional $21,274.00 in fees. These fees are reasonable. Preparing the fee petition and separately-filed cost bill required Plaintiffs to (1) gather, organize, and review four years of records; (2) prepare a cost bill with myriad records attached; and (3) prepare a fee petition with accompanying declaration and appendices, which included both briefing and a substantial investment of time to exercise appropriate billing discretion for thousands of time entries. This was a substantial amount of work, Plaintiffs have written off much of it, and Plaintiffs' "fees on fees" as requested are appropriate.

### D. The Court Should Not Delay Its Ruling on the Motion for Fees

Citing entirely to out-of-district authority, the State Defendants suggest that the Court should "delay[] fee litigation until after the merits and remedial phases of this case have ended." Opp. at 3. But the Court need not and should not defer its ruling on Plaintiffs' motion. Ruling on the motion now will allow the Court to decide the motion when the work Plaintiffs performed is fresh in the Court's mind and will not preclude supplemental or amended fee awards as the case proceeds.

The common practice in this Court is to rule promptly on a motion for fees (or costs) rather than deferring a ruling until after an appeal. As the State Defendants acknowledge, that was the course the Court took in the *Page* case, where it awarded Plaintiffs fees while the case was on appeal, and then entered a supplemental fee award after the completion of the remedial phase. *See Personhuballah v. Alcorn*, 239 F. Supp. 3d 929, 934 (E.D. Va. 2017), *vacated and remanded on other grounds by Brat v. Personhuballah*, 883 F.3d 475 (4th Cir.

2018). And that is how the Court has proceeded in other cases as well. *See, e.g., Pfizer Inc. v. Teva Pharm. USA, Inc.*, 820 F. Supp. 2d 751, 755-56 (E.D. Va. 2011) (refusing to delay ruling on motion for fees and rejecting the defendant's argument that it should defer a ruling because it could conceivably prevail on appeal); *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2017 WL 4418424, at *2 (E.D. Va. July 27, 2017) (resolving fee petition notwithstanding pendency of appeal).

Resolving fee motions promptly is not the practice just in this Court. Indeed, "[t]he weight of authority . . . is that the usual course is for the Court to consider attorneys' fees promptly after the merits decision rather than stay the Fee Petition until resolution of the appeal. . . . Moreover, a number of courts have found that a pending appeal, standing alone, is insufficient reason to postpone a fee decision for an indefinite period." *In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*, No. 03-3924, 2007 WL 4287393, at *2 (E.D. Pa. Dec. 4, 2007) (collecting cases); *see also, e.g., BIAX Corp. v. NVIDIA Corp.*, No. 09-cv-01257-PAB-MEH, 2012 WL 1949002, at *1 (D. Colo. May 30, 2012) (denying motion to stay ruling on motion for fees and rejecting a party's assertion that courts "routinely" stay fee awards pending appeal).

With the submission of this reply brief, Plaintiffs' motion for fees is fully briefed. There are no efficiencies to be had in deferring a ruling on a fully briefed motion. Resolving the issue now comports with this Court's prior cases and general practice.

## II. CONCLUSION

For the reasons set forth above and supported by the accompanying declaration and exhibits, Plaintiffs respectfully request that this Court approve attorneys' fees in the amount of $3,302,915.25, fees on fees in the amount of $21,274.00, and reasonable litigation expenses in the amount of $558,389.96.

Dated: August 15, 2018 Respectfully submitted,

By: */s/ Aria C. Branch*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Aria Branch (VSB No. 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 15th day of August, 2018, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

      Respectfully submitted,

By /s/ *Aria C. Branch*
  Aria C. Branch (VSBNo. 83682)
  Perkins Coie LLP
  700 13th St. N.W., Suite 600
  Washington, D.C. 20005-3960
  Phone: (202) 654-6338
  Fax: (202) 654-9106
  Email: ABranch@perkinscoie.com

*Attorneys for Plaintiffs*