IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| GOLDEN BETHUNE-HILL, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| VIRGINIA STATE BOARD OF ELECTIONS, et al., | ) ) ) | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |
| Defendants, | ) ) | |
| and | ) ) | |
| M. KIRKLAND COX, SPEAKER OF THE HOUSE OF DELEGATES, and THE HOUSE OF DELEGATES, | ) ) ) ) | |
| Intervenor-Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY THIS COURT'S JUNE 26, 2018 ORDER AND PROCEED IMMEDIATELY WITH REMEDIAL PHASE**

On June 26, 2018, this Court issued an opinion and order concluding that 11 of Virginia's House of Delegates districts "violate the Equal Protection Clause of the United States Constitution" and enjoining the Commonwealth "from conducting any elections after this date for the office of Delegate . . . in the Challenged Districts until a new redistricting plan is adopted." June 26, 2018 Order at 1 (ECF No. 235). The Court did not begin the process of drawing new, constitutionally compliant districts. Instead, the Court "allow[ed] the Virginia General Assembly until October 30, 2018 to construct a remedial districting plan that rectifies the constitutional deficiencies identified in [its] opinion." June 26, 2018 Op. at 93 (ECF No. 234).

1.  It is now clear that the General Assembly does not intend to avail itself of the opportunity provided by the Court. On June 26, 2018—the same day as this Court's order—the Speaker of the House of Delegates (Speaker) stated that "[i]t would be premature to even consider any action by the General Assembly until the Supreme Court speaks on these districts."[1] Ten days later, on July 6, the Intervenor-Defendants filed a motion asking this Court "to stay its injunction pending direct appeal to the Supreme Court" and arguing that "it will be impossible for the legislature, or anyone, to draw a remedial map that passes this court's muster." Defs.-Intervenors' Mot. to Stay Injunction Pending Appeal Under 28 U.S.C. § 1253 at 1, 8 (ECF No. 237). On July 13, 2018, the minority leader of the House of Delegates asked the Speaker (one of the two Intervenor-Defendants) to convene a special session to begin drawing a map that would remedy the constitutional deficiencies identified in this Court's June 26 Opinion and Order, see Ex. B (Letter from House Minority Leader David J. Toscano to Speaker Kirkland M. Cox), but received no response.

---

[1] Statement of Speaker Kirk Cox on Eastern District Court's decision in *Bethune Hill v. Virginia*, Twitter (June 26, 2018 5:46 PM), https://twitter.com/SpeakerCox/status/1011742403089371136.

On August 8, this Court entered an order directing "the Intervenor-Defendants [to] file a Statement of Position advising the Court whether the redistricting opportunity afforded in paragraph 3 of [that] order will, or will not, be pursued." Aug. 8, 2018 Order, at 1-2 (ECF No. 252). On August 13, the minority leader sent a second letter asking the Speaker to convene a special session, see Ex. C (Letter from House Minority Leader David J. Toscano to Speaker Kirkland M. Cox), but once again received no response. On August 20, the Governor issued a proclamation calling the Virginia General Assembly into special session on August 30 for purposes of redistricting. On August 24—four days later—the Intervenor-Defendants filed the statement of position required by this Court's August 8 order. In that document, the Intervenor-Defendants asserted that "the redistricting opportunity afforded in the Court's order, ECF No. 235, will be pursued," but provided no details other than noting the then-upcoming August 30 special session that had been convened by the Governor rather than the Intervenor-Defendants. Defs.-Intervenors' Statement of Position in Resp. to Court Order ECF No. 252, at 1-2 (ECF No. 255).

The special session of the General Assembly convened as scheduled on August 30. At that session, neither the Speaker nor any member of the majority party proposed a new districting plan. That same day, the House adjourned without setting a date for the body or its relevant committees to reconvene at any point before October 30. There is thus no realistic prospect that the House of Delegates will avail itself of the opportunity set forth in this Court's June 26 Opinion and Order. See Ex. A (Letter from Governor Ralph S. Northam to Speaker Kirkland M. Cox).

2.     The Defendant state elections officials will, of course, exercise utmost efforts to ensure that fair, timely, and orderly elections are held under any remedial plan adopted by this

Court. At the same time, administering elections is a complicated, multi-step process, and every day matters in ensuring that Virginia's 2019 elections are held using districts that remedy the constitutional deficiencies identified in this Court's June 26 Opinion and Order.

For example, the remedial phase in the *Personhuballah* litigation lasted 126 days from this Court's appointment of Special Master on September 3, 2015, through its adoption of a remedial plan for use in the next election on January 7, 2016. See *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552 (E.D. Va. 2016). Even if this Court appointed a special master on October 31, a remedial period of that same duration would result in new districts not being adopted in this case until March 6, 2019. Though still approximately eight months before November 5, 2019, general election date, that date is more than two months *after* prospective candidates are permitted to begin collecting the signatures (January 2, 2019) that are necessary for their name to appear on a primary ballot, see Va. Code Ann. § 24.2-521, and *after* the expiration of the statutory window (February 6 to February 26) during which political parties are required to notify the State Board of Elections that a relevant party committee has adopted a primary as its method of candidate selection, see § 24.2-516; see also *Personhuballah*, 155 F. Supp. 3d at 557 (noting that "[t]he 2016 congressional election cycle" had already "begun" as of January 2, 2016). In short, the 2019 election cycle will begin again on January 2, 2019.

But there is more. Even March 6, 2019, would be: (a) just 22 days before the expiration of the statutory deadline for candidates to submit to party officials the required number of signatures, see Va. Code Ann. § 24.2-522; (b) just 27 days before political parties are required to provide state election officials with the names of candidates who have qualified for the primary ballot, see § 24.2-527; and (c) just 52 days before the deadline for general registrars to make

4

absentee ballots available for the June 2019 primary, see § 24.2-706.[2] And, of course, the remedial task in this case (which involves constitutional deficiencies with 11 House of Delegate districts) is at least as complicated than the remedial task in *Personhuballah* (which involved constitutional violations in just one district for the United States House of Representatives, see 155 F. Supp. 3d at 555), which means that there are inherent practical limits to how much time the Court would be able to shave off an already tight remedial phase.

\*   \*   \*

Virginia has already conducted four rounds of elections using a map that this Court has held violates the Constitution, and every day that passes increases the risk that the fifth and final set of elections before the next round of constitutionally mandated redistricting will be held using the same unconstitutional map. See *Common Cause v. Rucho*, No. 1:16-CV-1026, 2018 WL 4214334, at \*1 (M.D.N.C. Sept. 4, 2018) (per curiam) (declining to enjoin use of an unconstitutional map during the upcoming November 6, 2018, general election in part because "imposing a new schedule for North Carolina's congressional elections would, at this late juncture, unduly interfere with the State's electoral machinery and likely confuse voters and depress turnout"). The Court has already unanimously declined to stay its order pending appeal, see Aug. 30, 2018 Order (ECF No. 256), with Judge Payne specifically noting that "the public interest is served by having the redrawn districts before the Supreme Court of the United States when it considers the merits of the case," *id.* at 3 (Payne, J., concurring). Another week has elapsed, and the Intervenor-Defendants have now filed their Jurisdictional Statement with the

---

[2] In fact, it is unclear under the Court's June 26, 2018 Order whether the Commonwealth would be permitted to conduct a primary election in the challenged districts. See June 26, 2018 Order at 1 ("The Commonwealth of Virginia is hereby enjoined from conducting *any elections* after this date for the office of Delegate . . . in the Challenged Districts until a new redistricting plan is adopted.") (emphasis added).

5

Supreme Court without making any request to have this Court's order stayed pending that putative appeal. The time for delay is passed. The Intervenor-Defendants have made clear through their actions that they do not intend to pursue the opportunity afforded by this Court's June 26 Opinion and Order, the Court should modify paragraph 3 of that Order and proceed immediately with the remedial phase.

                                      Respectfully submitted,

                              By:       /s/
                                        Toby J. Heytens, VSB # 90788
                                        Solicitor General
                                        Office of the Attorney General
                                        202 North Ninth Street
                                        Richmond, Virginia 23219
                                        (804) 786-7773 – Telephone
                                        (804) 371-0200 – Facsimile
                                        SolicitorGeneral@oag.state.va.us

Mark R. Herring                           Matthew R. McGuire, VSB # 84194
Attorney General                         Principal Deputy Solicitor General

Stephen A. Cobb
Deputy Attorney General

6

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 10, 2018, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will then send a notification of such filing to the counsel of record in this case

                      By:  /s/
                             Toby J. Heytens