IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GOLDEN BETHUNE-HILL, et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| VIRGINIA STATE BOARD OF ELECTIONS, et al., | ) Civil Action No. 3:14-cv-00852-REP-AWA-BMK |
| Defendants, | ) |
| and | ) |
| M. KIRKLAND COX, SPEAKER OF THE HOUSE OF DELEGATES, and THE HOUSE OF DELEGATES, | ) |
| Intervenor-Defendants. | ) |

**DEFENDANTS' RESPONSE TO OBJECTIONS TO PROPOSED
CANDIDATES TO SERVE AS SPECIAL MASTER**

Pursuant to this Court's September 14, 2018 order, defendants hereby submit this response to objections to proposed candidates to serve as Special Master. Intervenor-Defendants' objections to Dr. Bernard Grofman and Dr. Nathaniel Persily are unwarranted.

1. Intervenor-Defendants' sole objection to Dr. Grofman appears to be dissatisfaction with the outcome of the congressional election held immediately after this Court's remedial order in the *Personhubullah* litigation. See ECF No. 268 at 1–2. That objection is not well taken. The map under which that election was held was "one of . . . two plans proposed by Dr. Grofman" in his capacity as special master, and it was unanimously adopted by this Court because it "best remedie[d] the constitutional violation" identified in that case. *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 556 (E.D. Va. 2016); see *id.* at 565–66 (Payne, J., concurring in part and dissenting in part) ("I agree that the remedial plan adopted by the majority . . .

1

represents the most appropriate way to remedy the constitutional violation that the majority identified in its opinion on the merits.").

Intervenor-Defendants are correct that "States have a legitimate interest in 'maintaining existing relationships between incumbent congressmen and their constituents and preserving the seniority the members of the State's delegation have achieved in the United States House of Representatives.'" ECF No. 268 at 2 (quoting *White v. Weiser*, 412 U.S. 783, 791 (1973)). For that reason, state legislatures may properly consider such matters, as well as a wide variety of others, when drawing district maps. But the rules—and the priorities—are different when courts are called on to remedy an existing constitutional violation. "Beyond the limited context of avoiding contests between incumbent[s], courts have unanimously agreed that political considerations have no place in a plan formulated by the courts." *Personhuballah*, 155 F. Supp. 3d. at 566–67 (Payne, J., concurring in part and dissenting in part) (internal quotation marks and citation omitted). "Indeed, in an effort to avoid political entanglements, courts have often treated incumbency protection even in this limited context as distinctly subordinate to constitutional and statutory imperatives as well as other, neutral redistricting criteria." *Id.* at 567 (internal quotation marks and citation omitted). Because the remedial map in *Personhubbalah*—which, again, was unanimously adopted by this Court—fully respected those principles, it provides no valid basis for objecting to Dr. Grofman's appointment here.

2. Intervenor-Defendants' objections to Dr. Persily appear to be based solely on work he did as an advisor to the court in a recent case in Pennsylvania. ECF No. 268 at 3. But the task that Dr. Persily was asked to perform in that case was fundamentally different from the task that he would be asked to perform in this one, and Intervenor-Defendants have identified nothing that calls into question Dr. Persily's ability to perform either of them.

In the Pennsylvania case, the state supreme court held that a congressional redistricting plan violated the state constitution because it was an "extreme and durable" partisan gerrymander that "was designed to dilute the votes of those who in prior elections voted for the party not in power." *League of Women Voters of Pennsylvania v. Commonwealth*, 181 A.3d 1083, 1084 (Pa. 2018) (per curiam). Because the underlying violation in that case involved partisan gerrymandering, it was inevitable that an appropriate remedy would have partisan implications. And, equally important, the plan in whose preparation Dr. Persily assisted was ultimately adopted by the court that had found the underlying constitutional violation. See *id.* at 1087.

Here, in contrast, the task of a special master would be fundamentally different. This is a racial gerrymandering case, not a partisan gerrymandering one. Because the underlying constitutional violation at issue is different, the remedial question will inevitably be different too. Dr. Persily has previously been appointed to serve as a special master in a wide variety of contexts, including at least one case where the underlying claims involved racial gerrymandering. See ECF No. 264, Ex. B, at 3–4 (citing, inter alia, *Covington v. North Carolina*, 283 F. Supp.3d 410 (M.D. N.C. 2018), which, like this case, involves racial gerrymandering). Intervenor-Defendants have provided no reason to question Dr. Persily's ability to perform the task of Special Master in this case.

Respectfully submitted,

By: _____/s/_____
Toby J. Heytens, VSB # 90788
Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile

SolicitorGeneral@oag.state.va.us

Mark R. Herring  
Attorney General

Matthew R. McGuire, VSB # 84194  
Principal Deputy Solicitor General

Stephen A. Cobb  
Deputy Attorney General

Michelle S. Kallen  
Deputy Solicitor General

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 28, 2018, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will then send a notification of such filing to the counsel of record in this case

By:  /s/_____
       Toby J. Heytens