IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |
| Plaintiffs, | |
| v. | |
| VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, | |
| Defendants. | |
| VIRGINIA HOUSE OF DELEGATES, *et al.* | |
| Intervenor-Defendants | |

**PLAINTIFFS' RESPONSE TO DEFENDANT-INTERVENORS' OBJECTIONS TO PROPOSED EXPERTS**

## I. INTRODUCTION

Plaintiffs submit this response to Intervenors' opposition to the appointment of Dr. Bernard Grofman or Dr. Nathaniel Persily as Special Master. Intervenors object to the appointment of these two distinguished and experienced academics because, apparently, Intervenors are concerned that these candidates will not make it a special point of emphasis to protect Republican incumbents. That is, Intervenors seek a remedial redistricting plan that will lock in the political consequences of a plan that unconstitutionally packed African-American voters into a relative handful of districts. For the reasons stated below, this objection misapprehends the Court's role in remedying an unconstitutional gerrymander. The Court should appoint Dr. Grofman (or Dr. Persily) as Special Master.

## II. ARGUMENT

### A. Dr. Bernard Grofman

As to Dr. Grofman, Intervenors complain that the remedial plan he drafted and a three-judge panel of this Court adopted in *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552 (E.D. Va. 2016), did not affirmatively seek to protect Randy Forbes when unpacking the unconstitutional racial gerrymander of the Third Congressional District. *See* Defendant-Intervenors' Objections to Proposed Experts ("Opp.") at 1-2. Intervenors believe that the *Personhuballah* remedial map "deprived" the Commonwealth of Mr. Forbes because he ran for reelection and lost. *Id.* Intervenors thus object to Dr. Grofman because past experience shows that his modus operandi is not to protect incumbents but, rather, to remedy racial gerrymanders.

There are multiple problems with this argument. First, it ignores the fact that Dr. Grofman did not impose a remedial map on Virginia by fiat. *The Personhuballah court* considered a host of remedial plans that had been submitted, and *the Court* adopted a plan drafted by Dr. Grofman. As the *Personhuballah* court held, it would be inappropriate for it to put partisan advantage at the forefront and draw a remedial map designed with the objective of achieving defined partisan ends. *Personhuballah*, 155 F. Supp. 3d at 564 ("[W]e have found no case holding that we must maintain a specific political advantage in drawing a new plan, and at some point political concerns must give way when there is a constitutional violation that needs to be remedied."); *id.* at 565 (Payne, J., concurring in part and dissenting in part: agreeing with the rationale "offered to support" the majority's decision adopting Dr. Grofman's remedial plan).

As the *Personhuballah* court recognized, the Court is not a political branch of government. Indeed, many courts facing the unwelcome task of adopting a new redistricting plan have stated in no uncertain terms that partisan considerations will not drive their decision-making. *See, e.g.*, *Wyche v. Madison Parish Police Jury*, 769 F.2d 265, 268 (5th Cir. 1985) ("A court-ordered plan is subject to a more stringent standard than is a legislative

plan. Many factors, such as the protection of incumbents, that are appropriate in the legislative development of an apportionment plan have no place in a plan formulated by the courts.") (internal citation omitted); *Larios v. Cox*, 306 F. Supp. 2d 1214, 1218 (N.D. Ga. 2004) ("[I]n the process of adopting reapportionment plans, the courts are 'forbidden to take into account the purely political considerations that might be appropriate for legislative bodies.'") (quoting *Wyche v. Madison Parish Police Jury*, 635 F.2d 1151, 1160 (5th Cir. 1981)); *Balderas v. Texas*, No. 6:01CV158, 2001 WL 36403750, at *4 (E.D. Tex. Nov. 14, 2001) ("[P]olitical gerrymandering, a purely partisan exercise, is inappropriate for a federal court drawing a congressional redistricting map.").

Indeed, as the *Personhuballah* court found, Dr. Grofman's proposed remedial plan best remedied the unconstitutional racial gerrymander of the Third Congressional District while avoiding unnecessary changes to the enacted plan, "leaving untouched the districts that do not abut the Third, while altering the Third and its abutting districts only as necessary to remedy the *Shaw* violation" and leaving "each incumbent in his or her original district, which minimizes the disruptive impact of the remedial plan." *Id.* at 563. Intervenors' complaint is not that Dr. Grofman targeted Republican incumbents for improper partisan reasons—it is that Dr. Grofman failed to take extraordinary steps to contort the map to protect a Republican incumbent from the natural consequences of unpacking the Third Congressional District. The fact that Dr. Grofman is *not* a partisan is something that speaks in favor of his appointment, not against it.

### B. Dr. Persily

Much of the discussion above applies with equal force to Dr. Persily. As to Dr. Persily, Intervenors complain about a remedial plan drafted by Dr. Persily and adopted by the Pennsylvania Supreme Court in *League of Women Voters v. Commonwealth*, 178 A.3d 737 (Pa. 2018). That case held that the Republican-drawn congressional plan in Pennsylvania was a partisan gerrymander favoring Republicans so egregiously that it violated the

Pennsylvania Constitution. As the Pennsylvania Supreme Court put it in a subsequent remedial order, the Republican-drawn congressional map "clearly, plainly and palpably violates the Pennsylvania Constitution" by instituting an "extreme and durable" partisan gerrymander that "was designed to dilute the votes of those who in prior elections voted for the party not in power in order to give the party in power a lasting electoral advantage." *League of Women Voters of Pennsylvania v. Commonwealth*, 181 A.3d 1083, 1084 (Pa. 2018). The Pennsylvania Supreme Court adopted Dr. Persily's proposed remedial map.

It is perhaps not surprising that Intervenors—representing the Republican-controlled General Assembly—are dissatisfied with a plan undoing an egregious Republican-favoring partisan gerrymander. Nor is it surprising that Dr. Persily's proposed plan resulted in a more favorable plan for Democrats *given that it was remedying an unconstitutional partisan gerrymander*.

Intervenors' claim that Dr. Persily's proposed remedial plan "was widely recognized as an extreme partisan gerrymander"—based on citation to two online articles—falls flat. Like Dr. Grofman, Dr. Persily's proposed plan was adopted by the court that appointed him as special master. It is certainly Intervenors' right to effectively accuse the Pennsylvania Supreme Court of acting in bad faith for partisan reasons. That does not serve as any basis to refuse to appoint Dr. Persily as a special master. Indeed, if the plan proposed by Dr. Persily was "an extreme partisan gerrymander," one would have expected the United States Supreme Court to stay its adoption. It did not. To the contrary, the Supreme Court promptly *denied* a stay application. *Turzai v. League of Women Voters of Pennsylvania*, 138 S. Ct. 1323, 200 L. Ed. 2d 466 (2018).

### III. CONCLUSION

The fact that Intervenors can point to two plans drawn by Dr. Grofman and Dr. Persily where they do not like the consequences of a remedy hardly shows that the Court should not appoint these well-qualified candidates as special master. Remedying

unconstitutional gerrymandering sometimes inures in relatively more or less advantage for Republicans or Democrats. So be it. That outcome here would be a mere—and appropriate—function of Virginia's geographic and partisan distribution. And that would be unsurprising where the General Assembly here unconstitutionally concentrated generally Democratic-leaning African-American voters in a handful of districts.

Dated: September 28, 2018

Respectfully submitted,

By: */s/ Aria C. Branch*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Aria Branch (VSB No. 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 28th day of September, 2018, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

      Respectfully submitted,

      By /s/ *Aria C. Branch*
      Aria C. Branch (VSBNo. 83682)
      Perkins Coie LLP
      700 13th St. N.W., Suite 600
      Washington, D.C. 20005-3960
      Phone: (202) 654-6338
      Fax: (202) 654-9106
      Email: ABranch@perkinscoie.com

      *Attorneys for Plaintiffs*