# Exhibit A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| Golden Bethune-Hill, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Virginia State Board of Elections, *et al.*, <br><br> Defendants. | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

### Declaration of Robert B. Bell

1. My name is Robert B. Bell and I am over the age of 18 and competent to testify.

2. I am a Delegate to the Virginia General Assembly for District 58 and a Member of the General Assembly's Committee on Privileges and Elections.

3. By Court order, on June 26, 2018, the Virginia General Assembly was directed to "provid[e] a redistricting plan to remedy the constitutional violations found in this case" by no later than October 30, 2018. (Dkt. 235) ("June 26 Order"). That same day, this Court issued a Memorandum Opinion in which it itemized line-drawing decisions it ruled improper. (Dkt. 234) ("Memorandum Opinion").

4. On September 18, 2018, I introduced a districting map titled House Bill 7002 ("HB 7002").

5. I oversaw, controlled, and implemented HB7002's creation and have personal knowledge of the line-drawing and criteria used in its creation.

6. There were two overarching purposes behind HB7002.

7. First, I sought to remedy the line-drawing decisions the Court ruled improper as identified in the Memorandum Opinion striking down 11 of the 2011 plan's majority-minority districts.

8. I understand the Court ruled that the legislature did not demonstrate a compelling justification for, and used race predominantly in, structuring the challenged districts. I understand that the Memorandum Opinion identifies lines in the 2011 plan that the Court concluded were thereby impacted.

9. I sought to amend the district lines to address the Court's Memorandum Opinion.

10. Thus, I began with the 2011 map and worked through each district invalidated, line by line, to address the Court's criticisms. Where, for example, the Court ruled that a precinct or political-subdivision split was impermissible, I attempted to "un-split" the precinct or political subdivision.

11. Attached as Exhibit A is a true and correct copy of specific infirmities listed in the Court's Memorandum Opinion. This is an accurate list of the issues I attempted to remedy when I was preparing HB 7002.

12. I counted 115 discrete issues that the Court found to be improper, and succeeded in remedying 93 of these issues.

13. The exceptions included issues that could not be rectified because of conflicts within the Court's opinion, or because a remedy would pair incumbents elected since 2011, or the issue had already been resolved—such as where precincts formerly split had already been made whole.

14. In preparing HB 7002 for proposal on September 18, 2018, I did not consider racial demographics, including black population or black voting age population data. I did not learn of the racial demographics of the districts until after HB 7002 was proposed, and uploaded at the Division of Legislative Services. (This was when the general public also could learn of this data.)

15. Second, I attempted to preserve state policy as reflected in the 2011 plan and reflected in the criteria adopted by the House Privileges and Elections Committee.

16. To that end, as I said above, I began with the 2011 plan as the starting point.

17. I sought to follow the House criteria; in particular, I sought to avoid pairing incumbents, making districts less compact, and non-contiguous districts. I maintained a population deviation of +/- 1% from the ideal.

18. I also attempted to preserve the political composition of competitive districts as reflected in the 2011 plan. To this end, I used political data in an effort to ensure that the political makeup of such districts was not significantly changed from the 2011 plan. The goal was to neither help nor harm either political party. I was present during the 2011 redistricting process and the resulting plan received overwhelming support from both political parties. I

3

believed that maintaining such political neutrality would allow HB 7002 to obtain bi-partisan support should it ever reach the floor for a vote.

19. HB 7002 was drawn with the goals to alter as few districts as possible and to maintain or improve compactness. Only the districts challenged in this lawsuit, or those bordering the challenged districts, were altered. In total, HB 7002 changed 30 districts from the existing map.

20. After learning that one incumbent's address was incorrect in HB 7002 as proposed on September 18, 2018, and having identified minor, non-substantive technical errors, on September 26, 2018, I asked the Committee to prepare an amendment to HB 7002 in order to correct these errors so that the amended Bill could be presented to the Committee.

21. On September 27, 2018, during a special session of the Privileges and Elections Committee convened to address the Court's June 26 Order, the Committee voted to accept my amendments to HB 7002 but took no further action on the Bill.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on November 2, 2018, in Virginia, United States.

*/s/ Ra B Bell*

5