IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| Golden Bethune-Hill, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:14-cv-00852-REP-AWA-BMK |
| | ) |
| Virginia State Board of Elections, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**Defendants' Opposition to Intervenor-Defendants' Renewed Motion
For Stay Pending Appeal and Motion for Order Resetting Virginia House Election Dates**

More than 5 months ago, this Court issued a 93-page decision finding "[o]verwhelming evidence" that Virginia's current House of Delegates districting map "sort[s] voters into districts based on the color of their skin" in a manner "plainly . . . at odds with the guarantees of the Equal Protection Clause." Mem. Op. 92, ECF No. 234. Intervenor-defendants promptly asked this Court to stay its order pending appeal, ECF No. 237, but the Court unanimously denied intervenor-defendants' request, ECF 256. Intervenor-defendants could have appealed this Court's denial of their stay motion to the Supreme Court, either immediately or five days later when they filed their jurisdictional statement. Intervenor-defendants did not do so. Instead, more than three months after this Court denied their previous request for a stay, intervenor-defendants have returned to this Court to ask for the same relief again. But the current request is no more meritorious than the previous one and should be denied as well.

1. Beyond repeating arguments that this Court has already considered in connection with the previous stay motion, the current motion rests its entire request for relief on intervenor-defendants' attempts to characterize the meaning of a single fact. The fact is that the Supreme

1

Court issued an order on November 13, 2018—more than three weeks ago—setting the case for full briefing and argument. And the intervenor-defendants' characterization is that the order "changed the nature of this case and the ongoing remedial proceedings" because—according to them—it means "the Supreme Court has indicated that the appeal presents substantial federal questions." Mem. in Supp. of Renewed Motion for Stay Pending Appeal & Mot. for Order Resetting Virginia House Election Dates (Renewed Stay Motion) at 1, ECF No. 311; see also *id.* at 2 (claiming "that the Supreme Court has now confirmed that the appeal presents substantial federal questions"); *id.* at 11 (asserting that "[t]he first element" of the stay analysis is "now satisfied" because "the Supreme Court has set the case for briefing and argument").

That characterization, however, is simply wrong. As the text of its November 13 order makes clear, the Supreme Court did not say "that the appeal presents substantial federal questions." Renewed Stay Motion 1. Nor did the Court even note probable jurisdiction, as it did when plaintiffs appealed during an earlier phase of this case. See *Bethune Hill v. Virginia State Bd. of Elecs.*, 136 S. Ct. 2406 (2016) ("In this case probable jurisdiction is noted."). Instead, the Court stated that "[f]urther consideration of the question of jurisdiction is POSTPONED to the hearing of the case on the merits." *Virginia House of Delegates v. Bethune-Hill*, No. 18-281, 2018 WL 4257757 (Nov. 13, 2018). The Court then went one step further by specifically directing "the parties . . . to fully brief" a threshold question that intervenor-defendants have studiously attempted to avoid and continue to minimize in their most recent filing: "Whether [intervenor-defendants] have standing to bring this appeal." *Id.* But that question is the critical one—intervenor-defendants have *no* prospect of overturning this Court's liability determination *unless* they first succeed in convincing the Supreme Court that they have standing. See *Lujan v.*

2

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [standing].").[1]

2. In addition to intervenor-defendants' continued inability to satisfy the first stay factor (likelihood of success on the merits), the remaining factors continue to counsel strongly against a stay.[2] This Court has already found—unanimously—that granting a stay would "likely" cause "irreparable injury" to the plaintiffs because "[d]elaying construction of a remedial plan until after the conclusion of Supreme Court review likely would result in the 2019 elections, the last election cycle before the 2020 census, proceeding under the unconstitutional districts." Mem. Op. 2, ECF No. 256; accord *id.* at 3 (Payne, J., concurring) ("I agree with the irreparable injury analysis made by the majority"). For that reason, the Court also found—again, unanimously—that "the public interest favors immediate implementation of our injunction." *Id.*

---

[1] As we have already explained to the Supreme Court, holding that intervenor-defendants lack standing to appeal would neither "require[] the Supreme Court to reverse its precedent" nor "rule on state-law separation-of-powers issues contrary to the Supreme Court's practice of deferring to state-court practice." Renewed Stay Motion 11–12; see State Appellees' Mot. to Dismiss at 9–15, No. 18-281 (U.S. Oct. 9, 2018) (discussing *Sixty-Seventh Minn. State Senate v. Beens*, 406 U.S. 187 (1972), and *Karcher v. May*, 484 U.S. 72 (1987)). In short, "*Beens* predates [the Supreme Court's] entire modern standing jurisprudence—and it shows" and was also "materially different from this case." *Id.* at 13, 15. And far from establishing the "sweeping proposition" that intervenor-defendants ascribe to it, *id.* at 9, *Karcher* actually underscores why intervenor-defendants' lack standing to appeal here. See *Karcher*, 484 U.S. at 81 (emphasizing "that the party-intervenor at each point in the proceedings below was the incumbent legislature, *on behalf of the State, and not the particular legislative body that enacted the [challenged] law*" (emphasis added)). The sole representative of the Commonwealth and its officials in cases like this one is the Attorney General. See Va. Code Ann. § 2.2-507(A).

[2] Intervenor-defendants do not even address the proper factors for a stay pending appeal. Compare Mem. Op. 1, ECF No. 256 (using the ordinary stay factors identified by the Supreme Court in *Hilton v. Braunskill*, 481 U.S. 770 (1987)), with Renewed Mot. 11 (using the test for a stay pending appeal filed in the Supreme Court). Intervenor-defendants offer no explanation for why this Court should apply a different standard to their renewed stay motion than was applied to their initial one. Thus, the Court can deny the renewed stay motion for the simple reason that intervenor-defendants have not even attempted to carry their burden under the applicable standard. See Mem. Op. 1, ECF No. 256 ("The party seeking a stay bears the 'heavy burden' of establishing entitlement to the 'extraordinary relief' of a stay.") (citation omitted).

at 2; accord *id.* at 3 (Payne, J., concurring) ("I . . . share the majority's view of the public interest analysis" and "would add that the public interest is served by having the redrawn districts before the Supreme Court of the United States when it considers the merits of this case.").

Intervenor-defendants insist that there is now an increased risk of irreparable injury in the other direction because the primaries and nominating conventions could occur under the new maps before the Supreme Court finally resolves intervenor-defendants' attempted appeal from this Court's liability ruling. See Renewed Stay Motion 17–19. But no such injury could even theoretically occur unless the Supreme Court reverses this Court's liability determination—a prospect that a majority of this Court has already determined to be unlikely. See Mem. Op. at 2, ECF No. 256. And to the extent the Court determines that intervenor-defendants' concerns about the possibility of irreparable injury are legitimate, there will be ample opportunity to address them in a way that would not create a near-certainty of irreparable injury to the plaintiffs and substantial harm to the public interest in the far more likely event that this Court's liability finding remains undisturbed. See Renewed Stay Motion 19 (noting that federal courts have sometimes "allowed elections to proceed under legislatively enacted maps found to be unlawful or unconstitutional").

3.     Intervenor-defendants' alternative suggestion—that this Court should immediately order a change to Virginia's 2019 election dates, see Renewed Stay Motion 20–30—is premature. Defendants agree that federal courts may, in appropriate cases, modify state election dates when necessary to remedy constitutional violations and vindicate federal rights. That said, because such modifications require departure from procedures that are set forth in state law and form the basis for planning by state and local elections officials, as well as

members of the public, they should not be undertaken lightly or without strong reason. As the entities and officials "who administer Virginia [e]lections," *id.* at 22, defendants do not believe that any such modification is necessary or appropriate at this time, which is why defendants have not made such a request themselves and did not consent to intervenor-defendant's current request. Defendants will, of course, continue to monitor the situation closely and will promptly advise this Court if they believe that modifications are necessary to permit Virginia to hold elections in an orderly and appropriate manner.[3]

\* \* \*

The renewed motion for stay pending appeal and motion for order resetting Virginia House election dates should be denied.

Dated: December 5, 2018

                                            Respectfully submitted,

                                            VIRGINIA STATE BOARD OF ELECTIONS; JAMES B. ALCORN, in his capacity as Chairman of the Virginia State Board of Elections; CLARA BELLE WHEELER, in her capacity as Vice-Chair of the Virginia State Board of Elections; SINGLETON B. MCALLISTER, in her capacity as Secretary of the Virginia State Board of Elections; VIRGINIA DEPARTMENT OF ELECTIONS; and EDGARDO CORTÉS, in his capacity as Commissioner of the Virginia Department of Elections

By:         /s/                   
      Matthew R. McGuire, VSB # 84194
      Principal Deputy Solicitor General
      Office of the Attorney General
      202 North Ninth Street

---

[3] Were the Court inclined to modify the dates for the 2019 election cycle at this time, defendants submit that the Court should issue an order instructing the parties to file briefs about the appropriate dates for a modified election cycle. It is far from clear that the dates proposed by intervenor-defendants would be appropriate. See Renewed Stay Motion 26–27 (acknowledging that dates proposed by intervenor-defendants would shorten voting period for overseas service members).

                                      Richmond, Virginia 23219
                                      (804) 786-7773 – Telephone
                                      (804) 371-0200 – Facsimile
                                      mmcguire@oag.state.va.us

Mark R. Herring
Attorney General of Virginia

Toby J. Heytens, VSB # 90788
Solicitor General
theytens@oag.state.va.us

Stephen A. Cobb
Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2018, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

By: /s/
Matthew R. McGuire