IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

VIRGINIA STATE BOARD OF
ELECTIONS, *et al.*,

Defendants.

v.

VIRGINIA HOUSE OF DELEGATES,

Intervenor-Defendants

Civil Action No. 3:14-cv-00852-REP-AWA-BMK

## PLAINTIFFS' OPPOSITION TO DEFENDANT-INTERVENORS' RENEWED MOTION TO STAY PENDING APPEAL AND MOTION FOR ORDER RESETTING VIRGINIA HOUSE ELECTION DEADLINES

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 2

III.    ARGUMENT .............................................................................................................. 3

    A.    Intervenors Fail to Meet Their Burden of Demonstrating that the Court
        Should Reconsider Its Order Denying the First Stay Motion ........................... 3

    B.    Intervenors Fail to Meet Their Heavy Burden of Establishing that the
        Court Should Grant a Stay ................................................................................. 4

        1.    Intervenors Face a Significant Burden to Establish Their
            Entitlement to the "Extraordinary Relief" They Seek ......................... 4

        2.    Intervenors Still Have Little Likelihood of Success on the
            Merits ................................................................................................... 6

            a.    The Mere Fact that the Supreme Court Will Hear
                Argument on Intervenors' Appeal Does Not Mean They
                Are Entitled to a Stay ............................................................. 6

            b.    Intervenors' Other Arguments Do Not Establish a
                 Likelihood of Success on the Merits ...................................... 9

        3.    Granting a Stay Will Still Cause Irreparable Injury to Plaintiffs
            and Is Still Contrary to the Public Interest ....................................... 11

    C.    The Court Should Deny Intervenors' Alternative Request to Change
        the Commonwealth's 2019 Election Deadlines .............................................. 12

IV.     CONCLUSION ......................................................................................................... 14

## I.    INTRODUCTION

This Court considered and denied Intervenors' motion for a stay pending appeal (the "first stay motion") on August 30, 2018. Rather than moving for reconsideration at the time, Intervenors waited three months to file this "renewed" motion for a stay pending appeal ("Mot.). Intervenors' latest motion is no more meritorious than the motion the Court already rejected.

The law has not changed since the Court denied Intervenors' first stay motion. Nor has the evidentiary record. And for much the same reason that the Court found Intervenors could not demonstrate a likelihood of success on the merits then, Intervenors cannot show the Court abused its discretion by denying the first stay motion now.

Indeed, in the three months that have passed since the Court denied the first stay motion, the reasons for denying a stay pending appeal have only become more compelling. The parties, the Court, and nonparties have invested substantial time and energy engaging in the remedial process. The Special Master is on the cusp of releasing the remedial plan he has prepared at the Court's request and with the assistance of multiple employees at the Division of Legislative Services. Intervenors sat by and let all this work proceed without either filing an application for a stay in the United States Supreme Court or asking the Court to reconsider its August 30 Order.

Nothing warrants granting this thirteenth hour request. The mere fact that the Supreme Court will hear argument on Intervenors' appeal does not mean they are entitled to a stay. There is no "automatic stay" rule in redistricting cases. This is particularly so here, where the Supreme Court has not noted probable jurisdiction but has, instead, indicated that it may dismiss Intervenors' appeal for lack of standing without even reaching the merits.

Finally, the Court should reject Intervenors' alternative request that the Court enter a prophylactic order altering the Commonwealth's 2019 election calendar deadline. The Court has the authority to enter such an order but should not exercise that authority unless necessary.

The mere existence of a pending appeal does not establish such a necessity. If the Commonwealth's political branches believe it prudent to alter existing state laws, they can do so. Or if circumstances change in the future, the Court can revisit whether it is necessary to alter existing election deadlines.

For these reasons, and those set out in Plaintiffs' opposition to Intervenors' first stay motion (Dkt. No. 247), which Plaintiffs incorporate by reference, Plaintiffs submit that the Court should deny Intervenors' "renewed" motion.

## II.     BACKGROUND

The Court is familiar with the prolonged history of this case. Plaintiffs will set out only those background facts most significant to the present motion.

On December 22, 2014, nearly four years ago, residents of the Challenged Districts filed this lawsuit. On June 26, 2018, the Court issued its Memorandum Opinion striking down the eleven Challenged Districts as racial gerrymanders and enjoining the conduct of future elections under the unconstitutional enacted plan.

Thereafter, on July 6, 2018, Intervenors filed their first stay motion. The gravamen of Intervenors' first stay motion was that the Supreme Court was likely to note probable jurisdiction (and thereafter reverse on the merits), and so it would be disruptive and confusing to adopt a remedial plan that would then effectively be vacated by the Supreme Court. *See generally* Dkt. No. 237. Intervenors argued that a stay was warranted so "at least one court [would have] the chance to review the district court's decision." *Id.* at 9-10.

The Court denied the motion on August 30, 2018. *See* Dkt. No. 256. In response, Intervenors did precisely nothing. They neither moved for reconsideration in this Court nor pursued a stay application in the Supreme Court.

Instead, while their appeal remained pending, they participated in the remedial process before the Court. Indeed, in opposing the State Defendants' Motion to Alter Judgment to expedite the remedial schedule, Intervenors represented that the October 30 "redistricting

deadline" was "not a problem" and thus there was no need for the Court to set a more aggressive remedial schedule. Dkt. No. 260 at 10.[1]

After Intervenors reported to the Court that the political branches would be unable to enact a remedial plan, the Court appointed Dr. Bernard Grofman as Special Master. Dkt. No. 276. The next day, on October 19, 2018, the Court issued an order setting an expedited remedial process culminating in a January hearing on the Special Master's proposed remedial plan. *See* Dkt. No. 278.[2] Intervenors did not move for reconsideration or seek an order delaying the primary election. Thereafter, in reliance on the Court's October 19 Order, Plaintiffs, and various nonparties, submitted remedial plans and related comments to the Court.

On November 28, 2018, three months after the Court denied the first stay motion, Intervenors filed the present motion, renewing their previously-rejected motion for a stay.

## III.   ARGUMENT

### A.   Intervenors Fail to Meet Their Burden of Demonstrating that the Court Should Reconsider Its Order Denying the First Stay Motion

Although not styled as such, Intervenors' "renewed" motion for stay is, as a practical matter, little more than an untimely motion for reconsideration of the Court's August 30 Order denying their first stay motion.

Motions for reconsideration are "not lightly granted." *Benedict v. Hankook Tire Co.*, No. 3:17-cv-109, 2018 WL 1655358, at *3 (E.D. Va. Apr. 5, 2018). The Court grants relief only when presented with "substantially different evidence, a subsequent change in the controlling applicable law, or the clearly erroneous nature of an earlier ruling." *Genetic Veterinary Scis., Inc. v. Laboklin GmbH & Co. KG*, No. 2:17cv108, 2018 WL 1626033, at *2 (E.D. Va. Apr. 4, 2018) (citation omitted).

---

[1] This is in stark contrast to their current claim that it is "too close" to the 2019 elections for a remedial plan to be adopted and so the Court should grant a stay. *See* Mot. at 18. Intervenors' shifting positions are telling.

[2] The hearing was originally set for January 3, and subsequently reset for January 10.

Here, Intervenors cannot and do not cite "substantially different evidence," the law remains the same, and the warmed over rehash of the arguments Intervenors offered in support of their first stay motion are no more persuasive in their new iteration.[3]

**B.      Intervenors Fail to Meet Their Heavy Burden of Establishing that the Court Should Grant a Stay**

In denying the first stay motion, the Court has already held that "intervenors have not satisfied their burden" and cannot establish any of the prerequisites for obtaining the extraordinary relief of a stay pending appeal. Dkt. No. 256 at 2. Intervenors have little likelihood of success on the merits, particularly in light of the applicable standard of review. *Id*. Further, "plaintiffs likely would suffer irreparable injury if [the Court] were to issue a stay." *Id.* The "risk that a stay wholly would deprive the plaintiffs of a remedy significantly outweighs the inconvenience and any other detriments that the intervenors may experience" should a stay not be granted. *Id.* Finally, "[f]or the same reasons, the public interest favors immediate implementation of [the Court's] injunction." *Id.*

Every one of these determinations remains true. The Court should yet again deny Intervenors' request for a stay pending appeal.

**1.      Intervenors Face a Significant Burden to Establish Their Entitlement to the "Extraordinary Relief" They Seek**

A stay is an exercise of judicial discretion. *See Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 125 (4th Cir. 1983). The granting of a stay pending appeal is "extraordinary relief," and the party requesting a stay bears a "heavy burden." *Winston-Salem/Forsyth Cty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, Cir. J.); *see also Personhuballah v.*

---

[3] To the extent Intervenors' motion is construed, at least in part, as a request for the Court to modify its existing injunction, the Court does have inherent authority "to modify an injunction in adaptation to changed conditions." *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). That is, a court may grant a request to modify an injunction it has issued "where warranted by a change in the law or the circumstances." *United States v. Snepp*, 897 F.2d 138, 141 (4th Cir. 1990) (citing *Swift & Co.*, 286 U.S. 106). But "[a] court is, nevertheless, 'not at liberty to reverse under the guise of readjusting.'" *Id.* (quoting *Swift & Co.*, 286 U.S. at 119). "Placed in other words, this means for us that modification is only cautiously to be granted; that some change is not enough." *RoadTechs, Inc. v. MJ Highway Tech., Ltd.*, 83 F. Supp. 2d 677, 687 (E.D. Va. 2000) (citation omitted). As explained below, there are no "changed conditions" here.

*Alcorn*, 155 F. Supp. 3d 552, 558 (E.D. Va. 2016) ("[A] stay is considered extraordinary relief for which the moving party bears a heavy burden[.]") (citation and internal quotation marks omitted); *see also Harris v. McCrory*, No. 1:13CV949, 2016 WL 6920368, at *1 (M.D.N.C. Feb. 9, 2016) (same).

In determining whether to grant a stay pending appeal, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

The first two factors of the test outlined above "are the most critical." *Nken*, 556 U.S. at 434; *cf. Johnson v. United States*, No. C-83-186-D, 1984 WL 738, at *2 (M.D.N.C. May 7, 1984) (a stay should be denied unless the moving party can show a strong likelihood of success on appeal, "even if this results in rendering the issues moot"). A party seeking a stay pending appeal "will have greater difficulty in demonstrating a likelihood of success on the merits" than one seeking a preliminary injunction because there is "a reduced probability of error" in a decision of the district court based upon complete factual findings and legal research. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

The moving party, moreover, is required to show something more than "a mere possibility" of success on the merits. *Nken*, 556 U.S. at 434. By the same token, "simply showing some 'possibility of irreparable injury,'" "fails to satisfy the second factor." *Id.* at 434-35 (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)).

Under these well-established standards, even presuming Intervenors could show that the Court should reconsider its order on the first stay motion at all, they could not meet their burden of showing a stay is appropriate.

- 5 -

### 2.     Intervenors Still Have Little Likelihood of Success on the Merits

The Court has already held that Intervenors have failed to show that they are likely to succeed on the merits of their appeal. *See* Dkt. No. 256 at 1-2. Plaintiffs extensively briefed the issue in opposition to the first stay motion, Dkt. No. 247 at 7-12. They will not burden the Court by repeating the same points. Suffice it to say here, Intervenors cannot make a "strong showing" of likelihood of success on the merits where the Court's decision rests on extensive factual findings—derived from 2 trials, 12 expert reports, 17 witnesses, and multiple rounds of briefing over the course of 3 years—subject to clear error review. *See Personhuballah*, 155 F. Supp. 3d at 559; *see also Harris*, 2016 WL 6920368, at *1 (defendants failed to make "strong showing" that they were likely to succeed on merits of appeal of racial gerrymandering challenge, particularly given applicable clear error review).

### a.     The Mere Fact that the Supreme Court Will Hear Argument on Intervenors' Appeal Does Not Mean They Are Entitled to a Stay

Intervenors' latest motion is premised on the notion that the Supreme Court's issuance of an order indicating that it will entertain argument on Intervenors' appeal is a "significant development" that warrants a stay. Mot. at 1. For multiple reasons, this is not so.

First, the whole point of Intervenors' first stay motion was that the Court should stay its Memorandum Opinion until the Supreme Court heard and resolved Intervenors' appeal. The fact that the Supreme Court will indeed hear argument on that appeal is not a "changed" circumstance but rather exactly what Intervenors contemplated months ago and advanced as the basis for the first stay motion.

Second, the fact that the Supreme Court will *hear* argument hardly establishes a likelihood of success on the merits. That is particularly true here because the Supreme Court appears to have serious doubts about whether Intervenors even have standing to appeal. To establish a likelihood of success on the merits of a Supreme Court appeal, a party must show: (1) a "'reasonable probability' that four Justices will consider the issue sufficiently meritorious

to . . . note probable jurisdiction" *and* (2) that a majority of the Court will reverse on the merits. *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (citation omitted).

Here, the Supreme Court has *not* noted probable jurisdiction, as Intervenors claim. Mot. at 11 ("The first element [a reasonable probability of noting probable jurisdiction] is now satisfied: the Supreme Court has set the case for briefing and argument[.]"). To the contrary, the Supreme Court "postponed" the question of jurisdiction and specifically instructed the parties to brief and argue "[w]hether appellants have standing to bring this appeal." Dkt. No. 313. The distinction between the Supreme Court noting "probable" jurisdiction and "postponing" jurisdiction is significant. It means that the Supreme Court doubts whether Intervenors even have standing to appeal. STEPHEN M. SHAPIRO ET AL., SUPREME COURT PRACTICE 369 (10th ed. 2013) ("If the Court itself has any doubts as to its jurisdiction over the appeal . . . its order will provide that further consideration of [the] question of jurisdiction is postponed to the hearing of the case on the merits.") (citation and internal quotation marks omitted).

Indeed, three years prior to the day of its November 13 Order, the Supreme Court issued a near-identical order in *Wittman v. Personhuballah* postponing jurisdiction and ordering the parties to brief whether the appellants-intervenors there "lack[ed] standing" given that that the State Defendants (the same institutional defendants here) had not appealed. *Wittman v. Personhuballah*, 136 S. Ct. 499 (2015). The Supreme Court thereafter held that the appellants-intervenors did, indeed, lack standing and accordingly dismissed the appeal. *See generally Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016).

Thus, not only have Intervenors failed to establish any "reasonable probability" that the Supreme Court will *reverse* on the merits, the only "development" since Intervenors' first stay motion renders it less likely the Supreme Court will even *reach* the merits. The State Defendants have explained in detail why—as a matter of state law—Intervenors are not authorized to speak for the Commonwealth in federal court and thus have no standing to file

- 7 -

an independent appeal on the Commonwealth's behalf. *See generally* Dkt. No. 246. For purposes of the present motion, the Court need not seek to reach a definitive conclusion as to whether or not Intervenors have standing to appeal. That is an issue that will briefed in and conclusively resolved by the Supreme Court. For present purposes, the point is that establishing independent standing to appeal is yet one more hurdle Intervenors must now surmount. Intervenors cannot show that they are likely to establish independent standing to pursue their appeal *and* that they will prevail on the underlying merits.

Intervenors argue that stays in redistricting cases should be granted as a matter of course while the Supreme Court reviews direct appeals. That is, they claim that the mere fact that the Supreme Court sets a case for argument warrants a stay. But as Plaintiffs noted in opposition to the first stay motion, district courts routinely deny motions to stay implementation of court-adopted remedial redistricting plans. *See, e.g.*, *Personhuballah*, 155 F. Supp. 3d at 557-60 (order denying motion to stay order during pendency of Supreme Court review); *see also Harris*, 2016 WL 6920368, at *1; *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336-37 (N.D. Ga. 2004) (same, and collecting cases).

*Personhuballah*, dealing with a congressional district drawn by the same General Assembly at issue here, is highly instructive. There, as here, the losing party (the intervenors) moved the Court to stay its decision. *See Personhuballah*, 155 F. Supp. 3d at 557. As here, intervenors argued that it was simply too late to implement a remedial plan in advance of the next election. The *Personhuballah* court denied the stay motion, noting that "[t]here is no authority to suggest that this type of relief [a stay] is any less extraordinary or the burden any less exacting in the redistricting context." *Id.* at 558-59 (citation omitted). Thereafter, intervenors made a direct application for stay to Circuit Justice Roberts. Circuit Justice Roberts referred the application to the full Supreme Court. At the time, as noted above, the Supreme Court had already set the case for argument, and application was made in an election year

(2016). Nonetheless, the Supreme Court denied the application. *Wittman v. Personhuballah*, 136 S. Ct. 998 (2016).

A similar sequence played out in North Carolina. After a three-judge panel struck down two North Carolina congressional districts as racial gerrymanders in 2016, defendants moved for an emergency stay. The panel denied the motion, concluding that all relevant factors weighed against issuance of a stay. *Harris*, 2016 WL 6920368, at *1-2. Thereafter, the Supreme Court denied the defendants' direct application for a stay. *McCrory v. Harris*, 136 S. Ct. 1001 (2016). It then noted probable jurisdiction and set the case for argument, *McCrory v. Harris*, 136 S. Ct. 2512 (2016), thus creating the possibility that the state might hold an election under an "unnecessary" remedial plan. Still, the state adopted a new map, which was used in the 2016 election while the case remained pending on appeal.

As these recent cases demonstrate, there is nothing unique about redistricting cases. As in other contexts, district courts can implement equitable remedies while a case goes up on appeal.

### b.      Intervenors' Other Arguments Do Not Establish a Likelihood of Success on the Merits

To the extent Intervenors support their "renewed" motion with recycled iterations of other arguments that were "addressed in their initial stay briefing," Mot. at 13, they do not and cannot establish that the Court's order denying the first stay motion was clearly erroneous (or that the underlying Memorandum Opinion was).

Intervenors suggest the Court's predominance findings are clearly erroneous because the Court erred by (supposedly) *only* considering residents moved between districts as opposed to those retained in their current district. Mot. at 15. This is yet another version of Intervenors' claim that "core retention" was the predominant factor behind each Challenged District, which the Court rejected in its Memorandum Opinion, Dkt. No. 234 at 77-78, and which Intervenors advanced unsuccessfully in support of their first stay motion. *See* Dkt. No. 247 at 8 (Plaintiffs' Opposition, explaining why "core retention" argument is meritless). The cases Intervenors cite

to establish a supposed "direct conflict" with the Memorandum Opinion, Mot. at 13, do nothing of the sort, merely representing instances where—unlike here—the factual record established that the mapdrawer did indeed predominantly utilize factors other than race, including core preservation.[4]

Intervenors' contention that there was something revolutionary or improper about the Court's disposition of Challenged Districts that were both (i) subjected to the 55% BVAP floor and (ii) used to siphon BVAP to surrounding Challenged Districts, which the Court referred to as "donor" districts, is likewise misplaced. *See* Mot. at 15. For more than three decades, it has been well-settled that in a racial gerrymandering case "[t]he plaintiff's burden is to show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating the legislature's decision to place a significant number of voters within *or without* a particular district." *Miller v. Johnson*, 515 U.S. 900, 916 (1995) (emphasis added). In determining, based on the record evidence, that race predominated in "donor" districts, the Court simply was following *Miller*. Subjecting a district to a mandatory racial target means the General Assembly drew a significant number of voters *within* the district for racial reasons. Using the district as a "donor" means the General Assembly drew a significant number of voters *without* the district for racial reasons too. That is a paradigmatic instance of racial predominance.

As to narrow tailoring, Intervenors likewise do not offer new legal developments or new evidence. Rather, they simply assert that the Court should have concluded, based on the

---

[4] *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 835 F. Supp. 2d 563, 592 (N.D. Ill. 2011) ("We find, based on all the evidence presented, that in drawing Adopted District 4, race was subordinated to politics, preservation of existing district boundaries and relationships among constituents and their Democratic representatives, and maintenance of Latino communities of interests."); *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 432 (S.D.N.Y.) (rejecting challenge to district in remedial plan in Voting Rights Act litigation as alleged gerrymander where the record showed "that traditional districting principles," "including the desire to preserve the cores of existing districts," were predominant), *aff'd*, 543 U.S. 997, 125 S. Ct. 627 (2004); *Robertson v. Bartels*, 148 F. Supp. 2d 443, 457 (D.N.J. 2001) (rejecting gerrymandering claim where "there is clear evidence, not refuted by actual facts, that in addition to racial criteria," the mapdrawer considered redistricting principles such as "contiguity, compactness, respect for municipal and voting-district boundaries, the avoidance of partisan bias, competitive and responsiveness, and the minimization of voter disruption"), *aff'd*, 534 U.S. 1110 (2002).

record, that the General Assembly had a strong basis in evidence for its predominant use of race in the Challenged Districts. *See* Mot. at 15-17. But the Court already found as a matter of fact that the General Assembly admittedly did no colorable analysis to determine whether use of a 55% BVAP target was justified in any district other than District 75. *See* Dkt. No. 234 at 83-86. Intervenors cannot establish a basis to reconsider the Court's order on the first stay motion by continuing to tell the Court that it is wrong.

### 3. Granting a Stay Will Still Cause Irreparable Injury to Plaintiffs and Is Still Contrary to the Public Interest

As the Court has already determined in denying the first stay motion, the other stay factors also cut against Intervenors. Plaintiffs will suffer irreparable injury if a stay is granted, and a stay is contrary to the public interest.

The Court held unanimously that a balancing of the equities strongly supported denial of the stay, given that next year's elections are the last regularly scheduled elections to be undertaken before the decennial census. "Accordingly, the risk that a stay wholly would deprive the plaintiffs of a remedy significantly outweighs the inconvenience and any other detriments that the intervenors may experience in re-drawing the districts." Dkt. No. 256 at 2; *see also id.* at 3 (Payne, J., concurring) ("I fully agree with the irreparable injury analysis made by the majority, and, on balance, the injury to the plaintiffs if a stay is granted significantly outweighs the injury to the Defendant-Intervenors if the stay is denied" and further finding that the public interest tipped in favoring of denying the stay motion). It is simply beyond dispute that Plaintiffs and other voters will suffer irreparable injury if they are forced to participate in a decade-worth of elections under an unconstitutional redistricting plan. Dkt. No. 247 at 13 (collecting cases holding that voting under unconstitutional plans constitutes irreparable injury).

In response, Intervenors argue exactly what they argued back in July when they first moved for a stay. *Compare* Mot. at 18 (complaining that if the Supreme Court reverses it will cause "confusion, uncertainty, expense, and vote-suppressing chaos"), *with* Dkt. No. 237 at 8

(claiming a stay was necessary to avoid "voter confusion and disruption . . . to say nothing of the immense waste of scarce resources that will result from having unnecessarily drawn a remedial map should the Defendant-Intervenors ultimately prevail"). The Court already considered and rejected these arguments.

The Court should not countenance Intervenors' continued attempts to win by losing slowly enough that they can run out the clock on the 2010 redistricting cycle. As the Court already found, the balance of equities strongly supports denying a stay pending appeal.

### C. The Court Should Deny Intervenors' Alternative Request to Change the Commonwealth's 2019 Election Deadlines

In the alternative, Intervenors ask the Court to change election dates for the House of Delegates elections in 2019. In particular, Intervenors ask the Court to move back the primary election to September 10, 2019, and alter other pre-election deadlines accordingly. At this time, the Court should deny this request as well.

Plaintiffs obviously agree that the Court has equitable authority to alter election deadlines when necessary to effect a remedy to an unconstitutional racial gerrymander. *See* Mot. at 21 (citing Dkt. No. 261 at 4). But equally obviously, the Court does not exercise that authority lightly. Courts do not go out of their way to intrude in state election processes.[5]

As an initial matter, if for no other reason, the Court should deny this alternative request because Intervenors cannot show it is necessary for the *Court* to change the Commonwealth's election calendar. Virginia usually sets its primary elections on the second Tuesday in June as a matter of statute. Va. Code § 24.2-515.[6] If elected officials in the Commonwealth determine it is necessary or wise to alter election deadlines in 2019 in light of ongoing court proceedings, they—not the Court—should do so.

---

[5] This is precisely why Plaintiffs joined the State Defendants' Motion to Alter Judgment to move to commence the remedial phase more expeditiously: to allow for as much time as possible to conduct an orderly remedial process without the need to alter any existing election deadlines. *See* Dkt. No. 261 at 2-4. Intervenors opposed that motion, representing to the Court that there was ample time to conduct remedial proceedings using the October 30 deadline originally set by the Court. Dkt. No. 260 at 10-11.

[6] Various other deadlines, such as the candidate filing deadline, are also set by statute. *See, e.g.*, Va. Code Ann. § 24.2-522(A).

- 12 -

Further, Intervenors' request to move back the primary deadlines is premature. Intervenors suggest that the Court should reset the Commonwealth's entire election calendar *now* because the Supreme Court *might* rule in their favor on appeal. In essence, Intervenors suggest that whenever a court strikes down a districting plan as unconstitutional, it should immediately push back the state's election calendar to accommodate the mere possibility of a reversal on appeal. This is, to put it delicately, not the law.

Intervenors make this request in the *alternative* to their motion for a stay. Necessarily, then, they suggest that even if they cannot show a likelihood of success on the merits and/or some grievous irreparable injury in the absence of a stay, the Court should *still* intrude on the Commonwealth's election process by resetting election deadlines.

By the same token, Intervenors' position is premised on the notion that it is simply up in the air as to whether a remedial map will be necessary in 2019 or not, and so the Court should assume a remedy will *not* be necessary. But the Court has held that the Challenged Districts are unconstitutional and must be remedied. Whether Intervenors like it or not, and whether they agree or not, the Court's opinion rests on numerous factual determinations that are subject to clear error review. The Supreme Court has suggested it has serious doubts about whether Intervenors even have standing to appeal. Once a court has found a violation of the constitutional right to vote, the default is that the constitutional injury must be remedied as promptly as possible. Stays are the exception not the rule. So are changes to state election deadlines to accommodate the remedy. As set out above, it is far from unusual for a remedial plan to be adopted and implemented pending appeal. That happened in Virginia in 2016. It happened in North Carolina that same year. The primary deadlines were not changed based on the mere possibility that the Supreme Court might reverse. Nor should they be.

Simply put, the status quo is that the Challenged Districts are unconstitutional and a remedial plan will be implemented in 2019. If and when some future development warrants revisiting whether the primary election deadline should be moved, the Court can revisit the

issue. The Court has the authority to change the primary election deadline. That does not mean it should exercise that power precipitously.

## IV.    CONCLUSION

The Court has already denied Intervenors' request for a stay pending appeal. For the reasons the Court has already explained, and those set out above, the Court should deny Intervenors' latest effort to delay implementation of a remedy.

Dated: December 5, 2018                            Respectfully submitted,

By: */s/ Aria C. Branch*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Aria Branch (VSB # 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.6338
Facsimile: 202.654.9996

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of December, 2018, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

Respectfully submitted,

By /s/ *Aria C. Branch*
  Aria C. Branch (VSB # 83682)
  Perkins Coie LLP
  700 Thirteenth Street, N.W., Suite 600
  Washington, D.C. 20005-3960
  Telephone: 202.654.6338
  Facsimile: 202.654.9996
  Email: ABranch@perkinscoie.com

  *Attorneys for Plaintiffs*