IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| Golden Bethune-Hill, *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>Virginia State Board of Elections, *et al.*,<br><br>      Defendants. | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**Reply Memorandum in Support of Renewed Motion for Stay Pending Appeal and Motion for Order Resetting Virginia House Election Dates**

Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker M. Kirkland Cox*

**Table of Contents**

Reply Memorandum in Support of Renewed Motion for Stay Pending Appeal and Motion for Order Resetting Virginia House Election Dates ................................................................................... 1

Argument ........................................................................................................ 3

    I.    The Court Should Stay Remedial Proceedings and Its Injunction Pending Appeal ............................................................. 3

        A.    The Supreme Court's Order Setting the Appeal for Briefing and Argument Satisfies the First Stay Factor ................................................................. 3

        B.    There Is at Least a Fair Prospect of Reversal ......................... 4

        C.    The Equitable Factors Weigh in Favor of a Stay ................................................................................... 8

    II.    The Court Should Exercise Its Equitable Powers To Resolve the Inevitable Election-Administration Problems Before Doing So Is Too Costly and Burdensome .................................................................................. 9

Conclusion ................................................................................................... 14

## Reply Memorandum in Support of
## Renewed Motion for Stay Pending Appeal and
## Motion for Order Resetting Virginia House Election Dates

Plaintiffs and Defendants do not address the imminent problem confronting the Commonwealth's voters, political candidates, and other election participants: that the Supreme Court will almost certainly issue its decision on the validity of 11 House of Delegates voting districts *after* candidates have qualified to run—or even after primary elections have occurred. Plaintiffs and Defendants offer no solution to this problem and barely even mention it. Instead, they assure the Court that they will win a complete victory on appeal and that the Court may as well pretend the appeal does not exist.

That argument is unpersuasive, if not irresponsible. The Supreme Court had the opportunity to summarily dispose of the case, either by affirming or dismissing it, and it declined to do so. Without a stay, Defendant-Intervenors will be irreparably harmed if elections proceed under a remedial map that is likely to prove entirely unnecessary. Moreover, Defendant-Intervenors have established at least a fair prospect of success on all 11 districts under review, and, even if the Court does not agree, it is clear that there is a fair prospect of reversal on at least *some*. Yet Plaintiffs and Defendants say nothing of the possibility of a partial affirmance and partial reversal that strikes down some districts and upholds others.

Additionally, as explained in Defendant-Intervenors' opening memorandum, it is Plaintiffs' assertion of irreparable harm that is premature because it is too early to know what that harm is or how to remediate it. But, regardless, Defendant-

1

Intervenors have tried to work with the Commonwealth's executive branches to resolve the competing interests and have proposed a compromise solution to this Court: it should reset election dates to allow the Supreme Court time to issue its decision and state election officials time to administer any appropriate remedial map *after* its ruling. The parties all agree that the Court has power to do this.

Despite this agreement, Plaintiffs and Defendants oppose this proposal. Yet they offer practically no basis for disagreement. Their argument instead is: trust us. Defendants quite literally say only that *they* do not see the need for a change in election dates, and that bare assertion, they erroneously think, settles the matter. Plaintiffs parrot that view and further wax at length about the problems with federal-court intrusion into state elections processes. But the Court has *already* intruded—at Plaintiffs' demand—into the state elections process by invalidating 11 House of Delegates districts, and it follows that the Court should exercise its equitable powers to ensure that this ongoing intrusion imposes the least possible harm.

Indeed, the Court has an obligation to protect the integrity of the federal-court proceedings and of a state elections process it has already altered. The best way to meet these ends is through a stay of its injunction and the ongoing remedial proceedings. But, if the Court disagrees, it should at least reset election dates to allow the remedial process to proceed *after* the Supreme Court rules, not before. In all events, even if this Court disagrees, the Court should at the very least delay the Special Master's issuance of his proposed remedial map to give Defendant-

2

Intervenors time to seek interim relief from the Supreme Court. There is no particular reason that the Special Master must issue his proposed map tomorrow, and a brief stay of its issuance would ensure that the Supreme Court has time to consider whether the remedial proceedings should be stayed before those proceedings are already underway.

## ARGUMENT

I. **The Court Should Stay Remedial Proceedings and Its Injunction Pending Appeal**

    A. **The Supreme Court's Order Setting the Appeal for Briefing and Argument Satisfies the First Stay Factor**

As explained in Defendant-Intervenors' opening memorandum (at 11), the Supreme Court's order setting the appeal for briefing and argument satisfies the first stay factor. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam).[1] Plaintiffs and Defendants respond with a technicality, claiming that the Supreme Court's choice to defer the issue of jurisdiction is materially different from noting probable jurisdiction. Pls. Opp., ECF No. 320, at 7; Defs. Opp., ECF No. 319, at 2–3. But federal courts must always assure themselves of jurisdiction, and, in all events, the relevant distinction is between the Supreme Court's summarily *disposing* of a case and its ordering briefing on the merits. In addition to its power to summarily affirm, the Supreme Court may dismiss an appeal without argument on the ground

---

[1] Defendants believe that the standard applicable in cases appealed to courts of appeals, rather than to the Supreme Court, should apply. *See* Defs. Opp., ECF No. 319, at 3 n.2 (citing *Hilton v. Braunskill*, 481 U.S. 770 (1987)). Their odds of persuading the Supreme Court of this seem quite low.

that "no substantial question was presented." Eugene Gressmen, et al., *Supreme Court Practice* 303 (9th ed. 2007). The Supreme Court is not shy to resolve appeals in this way. *Id.* at 299 ("[T]he Court has continued to dispose of many…appeals summarily."). Thus, if Plaintiffs and Defendants were correct that this case involves no substantial federal questions, the Supreme Court would have had no procedural barrier to dismissing it—as Plaintiffs themselves requested. *See* Mot. to Dismiss or Affirm, *Va. House of Delegates v. Bethune-Hill* (No. 18-281) 4 n.1 (filed Oct. 9, 2018) ("But even assuming Appellants have standing, the absence of a substantial question warrants dismissal. Alternatively, the Panel's well-supported judgment should be summarily affirmed."). Consequently, the Supreme Court's choice to set the case for argument is a significant case development and satisfies the first stay factor.

### B. There Is at Least a Fair Prospect of Reversal

There is also at least "a fair prospect that a majority of the Court will vote to reverse the judgment below." *Hollingsworth*, 558 U.S. at 190. Plaintiffs conflate this element with the first and accuse Defendant-Intervenors of arguing merely that they are entitled to a stay because the Supreme Court has chosen to take the case. Pls. Opp., ECF No. 320, at 8. That is a straw-man position. To be sure, the Supreme Court's decision to take the case does strongly suggest that it thinks there is at least a "fair prospect" of reversal. But Defendant-Intervenors' opening memorandum explained at length (at 11–17), not only that the Supreme Court has taken the case, but also *why* there is at least a fair prospect that the Court will reverse on some or

4

all districts. Defendant-Intervenors are not simply asserting a right to a stay because an appeal has been granted.

Plaintiffs' misapprehension of Defendant-Intervenors' argument steers their discussion of cases where stays were denied (at 8–9) off course. They fail to tie those cases meaningfully to this one. *Wittman v. Personhuballah*, 136 S. Ct. 998 (2016) (Mem.), turned on whether individual congresspersons have standing to defend a district in which they do not reside and that they do not represent, *see Wittman v. Personhuballah*, 136 S. Ct. 1732 (2016), which is not germane here. And *McCrory v. Harris*, 136 S. Ct. 2512 (2016) (Mem.), involved VRA § 2 and new majority-minority districts, *see Cooper v. Harris*, 137 S. Ct. 1455 (2017), whereas this case involves VRA § 5 and the preservation of existing majority-minority districts. And those two cases involved one and two districts, respectively; this one involves 11. That substantially changes the stay analysis. Plaintiffs also ignore the many redistricting cases where stays have been granted in circumstances similar to those presented here. *See, e.g.*, *Miller v. Johnson*, 515 U.S. 900, 910 (1995); *Abbott v. Perez*, 138 S. Ct. 2305, 2319 (2018); *Gill v. Whitford*, 137 S. Ct. 2268 (2017); *Rucho v. Common Cause*, 138 S. Ct. 923 (2018). That stays are occasionally denied says nothing about the merits of *this* application.

Yet Plaintiffs and Defendants say very little about the merits here. Their cursory standing arguments do very little to defend the remarkable position that only Virginia's Attorney General can defend the 2011 plan. Their arguments fail (1) to identify a single case showing that Defendant-Intervenors lack standing, (2) to

5

rebut Defendant-Intervenors' observation that legislatures have been appealing adverse redistricting judgments and injunctions for decades—and have been found to suffer *irreparable harm*—with the Supreme Court's express blessing, and (3) to identify a good reason to expect the Supreme Court will approve the gamesmanship they advocate or render an opinion about the meaning of a Virginia statute, Va. Code § 2.2-507(A), that in no way precludes the House from defending redistricting legislation, which it has done previously with approval from the Virginia Supreme Court. *See Vesilind v. Va. State Bd. of Elections*, 813 S.E.2d 739, 742 (Va. 2018). Defendant-Intervenors are likely to prevail on this, a state-law issue, on which the Supreme Court is likely to defer to the Virginia Supreme Court.

On substance, Plaintiffs (at 9) argue principally that Defendant-Intervenors will not succeed with "recycled" arguments, but they are not "recycled" as far as the Supreme Court is concerned: it has yet to adjudicate any of them. Similarly, Plaintiffs' reliance (at 10) on *Miller v. Johnson*, 515 U.S. 900, 916 (1995), for the proposition that a transfer of minority voting-age persons from a "donor" district to a "recipient" district subjects both to strict scrutiny is self-defeating: *Miller* struck down only *one* district, the recipient; it struck down no donors. *See id.* at 917–18. Likewise, Plaintiffs' observation (at 10 & n.4) that other cases that have weighed core retention against racial considerations had different "factual record[s]" misses the legal point. Courts in those cases made those factual findings because they first found core retention legally relevant. *See, e.g.*, *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, 835 F. Supp. 2d 563, 590 (N.D. Ill. 2011) ("Preserving

6

the core of prior districts and keeping incumbents with their constituents are legitimate redistricting objectives.") The Court's predicate legal holding here excluded overwhelming evidence of high core retention from consideration.

 Perhaps most importantly, Plaintiffs and Defendants say nothing whatsoever about the prospect of a partial reversal. They assume they will go 11 for 11 on appeal. But the analysis must proceed "district-by-district." *Bethune-Hill v. Virginia State Bd. of Elections*, 137 S. Ct. 788, 800 (2017). Plaintiffs and Defendants have no response to Defendant-Intervenors' observation (at 14, 16–17) that the Court's findings are particularly weak as to some districts, such as HD92 and HD63. Indeed, the Justices' oral-argument questions in the first appeal suggested a view that race likely did not predominate in every district. Transcript of Oral Argument at 17–20, *Bethune-Hill v. Va. State Bd. of Elections* (Dec. 5, 2016) (No. 15-680) (asking Plaintiffs' counsel to identify his strong districts and posing remedial problems that might stem from invalidation of only some districts). But Plaintiffs and Defendants have neither a response to Defendant-Intervenors' district-specific arguments nor a proposal for predicting in advance which of the possible thousand outcomes should be remediated at this time. Defendant-Intervenors' arguments on these points stand unrebutted.

 Finally, Plaintiffs (at 1) and Defendants (at 1) cryptically suggest that Defendant-Intervenors may somehow be procedurally restricted from moving for a stay at this time, but the Federal Rules place no deadline on a motion to stay an injunction pending appeal. *See* Fed. R. Civ. P. 62(d). Nor is there anything improper

7

about Defendant-Intervenors' course of action. It made perfect sense to raise their objections to remedial proceedings *before* the parties invested time and effort in those proceedings, which is why they moved promptly for a stay. And it made perfect sense, as a matter of both judicial and standard economy, to raise the arguments about the impact of the Supreme Court's decision to order briefing and argument only *after* the Court took those steps, which is why Defendant-Intervenors did not immediately appeal the denial of their first stay motion. Further, it made perfect sense to attempt to resolve the practical election problems with the Commonwealth's executive actors before resorting to seeking judicial relief, which is why Defendant-Intervenors made that effort before coming to this Court. In fact, Defendant-Intervenors moved this Court *the same day* they learned of the executive actors' final refusal to compromise. None of those decisions prejudiced Plaintiffs or Defendants, and they do not diminish in any way Defendant-Intervenors' right to seek a stay or change in election dates now.

### C. The Equitable Factors Weigh in Favor of a Stay

Plaintiffs and Defendants have surprisingly little to say about the equities of a stay. They entirely ignore Defendant-Intervenors' claim of irreparable harm (Ints. Mem., ECF No. 311, at 17–20), and that claim stands unrebutted. Although they re-assert the alleged harm a stay would impose on Plaintiffs, they fail to answer Defendant-Intervenors' argument (at 19–20) that the harm cannot be redressed at this time because there are too many possible appeal outcomes to know how to redress it. Plaintiffs and Defendants advocate a complete-affirmance-or-bust

8

approach that will leave the Commonwealth's elections process in a state of chaos unless they are vindicated in every respect on appeal. As discussed above, that vindication is certainly not a foregone conclusion.[2] Besides, if Plaintiffs and Defendants were concerned about irreparable harm, that would be a good reason to agree to the compromise Defendant-Intervenors have proposed (discussed below). That Plaintiffs and Defendants are unwilling to allow the Supreme Court time to rule suggests a concern not for irreparable harm but for gamesmanship.

## II. The Court Should Exercise Its Equitable Powers To Address the Inevitable Election-Administration Problems Before it Becomes Costly and Burdensome

As Defendant-Intervenors' opening memorandum explained (at 20–30), to the extent this Court remains concerned that staying the remedial process could irreparably injure Plaintiffs, the Court should issue an order resetting House of Delegates election deadlines in 2019. Plaintiffs and Defendants' oppositions are remarkable. They *agree* that the Court has power to take this action. But they ask the Court to take it only after it is either too late or becomes exceptionally costly to do so—because candidates will already have qualified and primary elections may even have concluded before the Supreme Court rules.

---

[2] Plaintiffs incorrectly assert (at 13) that "the status quo is that the Challenged Districts are unconstitutional." To the contrary, the status quo is "last uncontested status between the parties which preceded the controversy." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (quotations omitted). The 2011 plan is the status quo.

9

What is their basis for advocating this delay? They have none. Defendants brazenly tell the Court to trust them: "defendants do not believe that any such modification is necessary or appropriate at this time" but they "will continue to monitor the situation closely." Defs. Opp. at 5; *see also* Pls. Opp. at 12 (arguing that the Court should defer to what "elected officials in the Commonwealth determine…is necessary."). That is all well and good, but, unless the Court is Defendants' appendage, they owe it and the other parties *reasons* for advocating this ostensibly reckless course of conduct. They offer none. As Defendant-Intervenors explained in their opening memorandum (at 6–10), election efforts are already beginning, candidate qualification must occur by March 28, and the Supreme Court most likely will not have ruled by then. Defendants apparently have no plan for resolving these problems—other than assurances of complete affirmance—and no explanation for why Defendant-Intervenors' approach is not sound.

The lack of explanation is especially odd because, as Defendant-Intervenors explained in their opening memorandum (at 26–28), the Governor and Commissioner of Elections *did* express bases for their opposition to an election-date change to House leadership when they attempted to negotiate a compromise: that (1) the federal Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) imposes 45-day ballot-mailing rule that creates too severe a restriction on the deadlines to allow a workaround next summer and (2) the Department of Elections needs at least 45 days to implement a plan. But, now that Defendant-Intervenors

10

have rebutted those arguments—e.g., by pointing out that UOCAVA does not apply to House of Delegates elections—Defendants have abandoned them. In that context, there is no cause for faith in their unsupported opposition to reworking the elections dates, especially when that has been the approach by which Virginia resolved these problems in prior redistricting years.

Plaintiffs' positions fare no better. Aside from also asking the Court (at 12) simply to listen to Defendants, they contend (at 13) that the request is "premature." But they do not rebut Defendant-Intervenors' observation that the election cycle is beginning *now*. Nor do they suggest that the Supreme Court is likely to resolve the case before candidates qualify. Rather than address the facts, they accuse (at 13) Defendant-Intervenors of advocating a bright-line rule that a change in election dates is necessary "whenever a court strikes down a districting plan as unconstitutional." Nothing could be further from the truth. Defendant-Intervenors argue that the imminent elections cycle, the Supreme Court's decision to hear argument in this case, and the schedule on which the Supreme Court is likely to resolve this case justify action here. Plaintiffs have no meaningful response.

Further, Plaintiffs' argument (at 12) that the Court should not "intrude in state election processes" fails to appreciate that the Court *has already intruded*. Having already invalidating 11 districts, the Court has an obligation to address ongoing problems that arise as the lawful appeal from its injunction proceeds and as election dates rapidly approach. That Plaintiffs are suddenly now opposed to federal-court intervention in the state elections processes is, to say the least, ironic.

11

A similar problem inheres in Plaintiffs' argument that Defendant-Intervenors cannot obtain relief without satisfying the stay factors. As an initial matter, Defendant-Intervenors satisfy those factors as shown above, so the point is academic. Besides, Plaintiffs are wrong that this supposed prerequisite exists. The proposed order is not a means of affording Defendant-Intervenors relief specific to them—to that end, Defendant-Intervenors request a complete stay—but rather of balancing the equities in light of the injunction already entered.[3] Because the Court has already found a basis to impose an injunction, it has the power and the obligation to ensure that its injunction is tailored to minimize harm and maximize benefit.

Resetting deadlines now is a tailored means of balancing the interests of Plaintiffs, Defendant-Intervenors, the federal courts, and the voting public. Indeed, absent an order addressing the 2019 elections, the practical benefit of the Supreme Court's ruling may redound, not to the party that wins the appeal, but to the party that prevails on the stay motion. What's more, Plaintiffs are at a decided disadvantage in that respect because impending election deadlines frequently justify the use of legislatively enacted districts found to be unconstitutional in further elections. *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918

---

[3] The change in circumstances appropriate to amending the injunction are the impending election deadlines and the Supreme Court's choice to set the case for hearing and argument. The Court did not face these issues in June when it issued its injunction.

12

(9th Cir. 2003) (observing that "the Supreme Court has allowed elections to go forward [under an invalid election scheme] even in the face of an undisputed constitutional violation."); *Chisom v. Roemer*, 853 F.2d 1186, 1189 (5th Cir. 1988) (same); *see also Klahr v. Williams*, 313 F. Supp. 148, 152 (D. Ariz. 1970), *aff'd sub nom. Ely v. Klahr*, 403 U.S. 108 (1971); *Kilgarlin v. Martin*, 252 F. Supp. 404, 444 (S.D. Tex. 1966), *aff'd in relevant part sub nom. Kilgarlin v. Hill*, 386 U.S. 120 (1967); *Cardona v. Oakland Unified Sch. Dist., Cal.*, 785 F. Supp. 837, 843 (N.D. Cal. 1992); *In re Pennsylvania Cong. Districts in Reapportionment Cases*, 535 F. Supp. 191, 195 (M.D. Pa. 1982); *Diaz v. Silver*, 932 F. Supp. 462, 469 (E.D.N.Y. 1996); *Dillard v. Crenshaw County*, 640 F. Supp. 1347, 1362 (M.D. Ala. 1986); *Watkins v. Mabus*, 771 F. Supp. 789, 805 (S.D. Miss. 1991); *Ashe v. Bd. of Elections in City of New York*, 1988 WL 68721, at *1 (E.D.N.Y. June 8, 1988). By contrast, as Defendant-Intervenors explained in their opening memorandum (at 18–19), this rule does not run both directions: if the Supreme Court reverses even in part, this Court will have no power to order the Commonwealth to conduct elections under an unnecessary remedial map or one that changes more districts than necessary for strictly remedial purposes.

  Thus, there are benefits to all sides to affording the Supreme Court time to rule, and the proposed order is merely a balancing of the equities to adjust the injunction already in existence. And Defendant-Intervenors are not asking that this weighing be done "precipitously." Pl's Opp., ECF No. 320, at 13. Plaintiffs and Defendants say nothing meaningful of the interests of the public, the interests of

the Supreme Court, or the interests of this Court in having the opportunity to address any remand issues. Defendant-Intervenors have addressed *all* those issues. Instead, Plaintiffs and Defendants argue that their complete victory on appeal is already in the bag and that the Court can ignore the practical problems this unique set of circumstances presents.

Moreover, neither party objects to the dates Defendant-Intervenors propose or provides any reason to believe the proposed schedule is unworkable. Defendants assert (at 5 n.3) that the Court should conduct yet more briefing on this topic, but this round of briefing provided them the opportunity to present their position, and they have identified no problem with the proposed schedule. The schedule tracks the schedules Virginia has used in redistricting years, and there is no reason to believe it is unworkable. If it were, Defendants would have had no trouble identifying problems.

Finally, in all events, even if this Court is not inclined to grant any relief at this time, the Court should at a minimum stay the issuance of the Special Master's map to give Defendant-Intervenors time to seek relief from the Supreme Court. There is simply no reason that this Court's remedial proceedings must begin before the Supreme Court can even decide whether it is appropriate for them to do so in light of its decision to hear this case.

## CONCLUSION

The Court should stay its injunction pending appeal. Alternatively, the Court should order Defendants to implement the election schedule stated above. In all

events, if the Court declines to grant relief, it should delay the Special Master's issuance of his proposed remedial map to give Defendant-Intervenors time to seek relief from the Supreme Court.

Dated: December 6, 2018              Respectfully Submitted,

*/s/ Katherine L. McKnight*
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker M. Kirkland Cox*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2018, a copy of the foregoing was filed and served on all counsel of record pursuant to the Court's electronic filing procedures using the Court's CM/ECF system.

> /s/ Katherine L. McKnight
> Katherine L. McKnight (VSB No. 81482)
> Richard B. Raile (VSB No. 84340)
> E. Mark Braden (*pro hac vice*)
> BAKER & HOSTETLER LLP
> 1050 Connecticut Ave NW, Suite 1100
> Washington, DC 20036
> Tel: (202) 861-1500
> Fax: (202) 861-1783
> kmcknight@bakerlaw.com
> rraile@bakerlaw.com
> mbraden@bakerlaw.com
>
> *Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker M. Kirkland Cox*