# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) Civil Action No. 3:14-cv-852 |
| VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, | )<br>)<br>) |
| Defendants, | )<br>)<br>) |

**BRIEF OF THE VIRGINIA STATE CONFERENCE OF NAACP BRANCHES IN RESPONSE TO THE SPECIAL MASTER'S PROPOSED LEGISLATIVE REDISTRICTING PLAN**

The Virginia State Conference of NAACP Branches ("the Virginia NAACP") respectfully submits this brief addressing the proposed remedial plans submitted to this Court on December 7, 2018 (ECF No. 323) and supplemented on December 10, 2018 (ECF No. 324) by Dr. Bernard Grofman, the Court-appointed Special Master in this case.

The Virginia NAACP believes that each of the illustrative modularized maps submitted to the Court by Dr. Grofman (hereinafter, the "Grofman Plan") offer improvements upon the 2011 Enacted Plan with regard to adherence to traditional redistricting criteria and eliminating the arbitrary 55% BVAP threshold set by the General Assembly in 2011 for districts which elected black representatives—an unjustified threshold which led to the unconstitutional packing of black voters. Nevertheless, it is the position of the Virginia NAACP that the Grofman Plan does not go far enough in remedying the numerous unconstitutional racial gerrymanders identified in the 2011 House of Delegates plan.

As noted in the Virginia NAACP's Brief in Support of its Proposed Remedial Plan (ECF No. 286, hereinafter "NAACP Br. at __"), though race should not be given a predominant role when drawing a remedial redistricting plan, to determine whether an unconstitutional racial gerrymander has been remedied, racial data must be considered. NAACP Br. at 7. Accordingly, the Virginia NAACP drew its proposed remedial plan utilizing an approach that prioritized traditional redistricting criteria (as informed by the Court's identification of the constitutional flaws in the drawing of the challenged districts) and used BVAP and relevant political data as a necessary tool to ensure that its plan in fact remedied the racial gerrymander and the extreme harm caused to thousands of black voters when they were segregated into Delegate districts used for the better part of this decade. *Id*. at 4-7.

Through this approach, the Virginia NAACP devised a plan that in the process of fully remedying this extreme harm resulted in the natural formation of five additional districts where black voters will either likely have the opportunity to elect their candidate of choice, or have their influence over the election outcomes free from artificial diminishment. *Id*. at 6. Specifically, as a consequence of fully unpacking black voters, two legislative districts saw increases in BVAP from the low 20s to the low 40s, thus providing black voters with a real opportunity to elect their candidate of choice in those districts. *Id*. at 6-7. This result helped restore black voters to the position they would have held had they not been unlawfully segregated and packed in the 2011 Enacted Plan. *Id*.

The Grofman Plan, by comparison, only took race into account "after traditional districting criteria ha[d] been satisfied" and only for the purpose of assuring that there was no racial vote dilution in the reconfigured unconstitutional districts. Grofman Plan at 11. The consequence of this limited approach is seen in the resulting distribution of BVAP across the affected districts and those surrounding them and the persistence of the harm of the racial gerrymander. Of note, no matter the modules selected, the Grofman Plan will at best result in a single new opportunity district, District 76, where, through unpacking adjacent unconstitutional districts, BVAP in that district increases from the mid-20s to the low 40s, giving black voters within that single district the opportunity to elect their candidate of choice. *See generally* Grofman Plan at 69-99. Relatedly, and as discussed in more detail *infra*, many of the proposed modules offer only miniscule deviations in BVAP for the unconstitutional districts from the 2011 Enacted Plan and barely miss the arbitrary and unjustified 55% BVAP threshold set by the General Assembly. While the Virginia NAACP does not advocate for any particular threshold BVAP for curing racial gerrymanders (or, for that matter, a set BVAP for establishing the ability to elect a candidate of

choice, NAACP Br. 7-8), the way in which a remedial plan unpacks black voters and the relative increase and decrease of BVAP in the challenged and surrounding districts can and should serve as an indication of whether the remedy is an effective one.

Based on the above and Dr. Grofman's stated approach there is a concern that the Grofman Plan's relative weighting of certain remedial redistricting criteria would cement, rather than correct, the illegal effects of the racial gerrymander in contravention of the federal court's charge to remedy the constitutional violation. *See Brown v. Plata*, 563 U.S. 493, 571 (2011) ("Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of constitutional violation.") (internal citations omitted); *see also Covington v. North Carolina*, 283 F. Supp. 3d 410 at 431 (M.D.N.C. Jan 19, 2018), *aff'd in part, rev'd in part on other grounds*, *North Carolina v. Covington*, 138 S. Ct. 2548 (2018) (affirming that a state redistricting body may not rely on an otherwise legitimate redistricting consideration if doing so would prevent it from completely remedying the identified constitutional violation).

Centrally, the Grofman Plan's strict adherence to what Dr. Grofman terms "narrow tailoring" of a remedial plan—which appears to be, at core, a "minimum change" requirement—is used to justify Dr. Grofman's recommendation of a redistricting remedy that changes as few districts as possible and his dismissal of each of the alternative proposals, including that of the Virginia NAACP, whose plan changed the least number of districts among the proposed remedial plans. Grofman Plan at 6, 119. While the Virginia NAACP agrees that a remedial map drawer should take care not to change more districts than is necessary to remedy the illegality, ensuring the completeness of the remedy should be the map drawer's first priority. Strict adherence to this "minimum change" principle without due consideration of racial data inevitably has the effect of

3

giving undeserved deference to the original racial gerrymander and results in a plan that fails to actually remedy it.

Contrary to what is stated in the Grofman Plan (*id*. at 10), the "guidelines for addressing issues of unconstitutionality via a narrowly tailored remedy" espoused in the majority opinion of *Personhuballah* do not justify this approach. Of note, the *Personhuballah* court in selecting a remedy for a single district racial gerrymander acknowledged the Supreme Court's decision in *Abrams v. Johnson*, 521 U.S. 74, 90 (1997), which held that where a district has been found to be an unconstitutional racial gerrymander, a court drawing a remedial plan does not need to, and in fact should not, defer to the legislature's enacted, unconstitutional districts in crafting the remedial plan. *See Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 563 (E.D. Va. 2016)

The *Abrams* court recognized and approved of the need for wide-scale changes in a remedial plan were "the constitutional violation [] affects a large geographic area of the State [and] any remedy of necessity must affect almost every district," and also rejected an alternative "least-change plan" due to its suspect shape. *Id*. at 86, 89. Finally, and of particular relevance here, the *Abrams* court concluded that the "unconstitutional predominance of race" in the drawing of districts ruled to be racial gerrymanders rendered them "to be improper departure points" for the crafting of a remedial plan, *id*. at 90, and stated that to use the enacted plan "as the basis for a remedy would validate the very maneuvers that were a major cause of the unconstitutional districting." *Id*. at 86.

The Grofman Plan, though clearly an improvement over the 2011 Enacted Plan, erroneously uses that plan as a departure point for, and an overall limit for change in, crafting its narrowly tailored remedy. This constraint limits the effectiveness of the overall remedy and is cited as a basis for dismissing alternative proposals, such as the Virginia NAACP plan, that more

4

fully correct the identified constitutional flaws in the 2011 Enacted Plan. This is most evident in the modules for the Richmond and Norfolk region. The limitation on the number of altered districts, even those directly adjacent to unconstitutional ones, results in only very minor changes to the makeup of the districts at the very center of the Richmond and Norfolk modules, Districts 71 and 89 respectively.

In Richmond, there are only minor deviations in BVAP from the 2011 Enacted Plan and Dr. Grofman's two iterations, with BVAPs of 52%+ remaining in all of the reconfigured unconstitutional districts. *See* Grofman Plan at 69-75. In Richmond 1A, two districts directly adjacent to District 71 (Districts 68 and 73) are left untouched, thereby limiting the ability to remedy the unconstitutional flaws in District 71. In Richmond 1B, there are changes to adjacent District 73, but only as it relates to its border with District 72. The BVAP in District 71, which covers the city center of Richmond, drops down less than a percentage point, from 54.87% in the 2011 Plan to 54.01% in both of Dr. Grofman's iterations. This is a difference of a mere 600 or so people. Such a miniscule change does not go far enough to address the race-based constitutional flaws identified by the Court in its June 26, 2018 Memorandum Opinion (ECF No. 234 (hereinafter "Opinion at __"). Opinion at 38-43.

This limitation is evidenced again in Norfolk's District 89. The Court spent a great deal of time talking about the precise way in which the legislature carved black voters in and out of Norfolk's District 89 to achieve its arbitrary 55% BVAP threshold. Opinion at 66-67. The Grofman Plan, however, keeps the BVAP of District 89 to 54.92% or 54.98% (depending on the module), which is barely under the 55% threshold the Court found arbitrary and unjustified. This again is a difference of mere hundreds of people and does not fundamentally alter the racially-segregating effects of the unconstitutional district. For these reasons, and the reasons offered in

5

support of the Virginia NAACP's proposed remedial plan, the Court should reject Dr. Grofman's proposed plans and request that he more fully address the constitutional problems it identified.

Should the Court decide not to depart from Dr. Grofman's approach, the Virginia NAACP encourages the adoption of the following illustrative modules within each region, because these modules, relative to the others offered, adhere to traditional redistricting criteria, better protect the ability of black voters to elect their candidates of choice, and come closest to restoring black voters to the position they would have been in but for the legislature's unconstitutional actions in 2011: Richmond 1B, Petersburg 2, Peninsula 2, and Norfolk 1B.

Submitted this 14th day of December, 2018.

/s/ David O. Prince
David O. Prince (VA State Bar # 17044)
411 East Franklin Street
Richmond, VA 23219
princelaw@aol.com

Allison Riggs (admitted *pro hac vice* )
Jeff Loperfido (admitted *pro hac vice* )
SOUTHERN COALITION FOR SOCIAL JUSTICE
1415 W. Highway 54, Suite 101
Durham, N.C. 27707
Telephone: (919) 323-3380
Facsimile: (919) 323-3942
Email: allisonriggs@southerncoalition.org
jeffloperfido@scsj.org

*Counsel for the Virginia NAACP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of December, 2018, I have electronically filed the foregoing document with the Clerk of Court using the United States District Court, Eastern District of Virginia, Richmond Division, CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record, including Plaintiffs, Defendants, and Defendant-Intervenors.

/s/ David O. Prince
David. O. Prince, Esquire
VSB # 17044
411 East Franklin Street
Richmond, VA 23219
804-788-4861
princelaw@aol.com