# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

GOLDEN BETHUNE-HILL, *et al.*,

        Plaintiffs,

    v.

VIRGINIA STATE BOARD OF
ELECTIONS, *et al.*,

        Defendants.

    v.

VIRGINIA HOUSE OF DELEGATES,
Intervenor-Defendants,

        Defendants.

Civil Action No. 3:14-cv-00852-REP-AWA-BMK

## PLAINTIFFS' RESPONSE TO SECOND ADDENDUM TO THE REPORT OF THE SPECIAL MASTER

## I.   INTRODUCTION

Pursuant to the Court's order dated December 18, 2018 (Dkt. No. 330), Plaintiffs submit this additional response to the Report of the Special Master (Dkt. No. 323, the "Report").

Plaintiffs previously addressed the Report at length (Dkt. No. 328). The same day Plaintiffs filed their response, Defendants-Intervenors filed a response in which they explained that they had various difficulties reviewing data files associated with the Special Master's proposals and argued that, unless the Court provided them with an opportunity to submit a further response, "Defendants-Intervenors will be denied due process in their ability to assess and object to the Special Master's plans." Dkt. No. 327 at 5-7.

For their part, Plaintiffs did not experience similar difficulties.[1] They downloaded data files from the DLS website the same day that the Special Master filed his Report. Using these data files, they were able to timely analyze the Special Master's various proposals and provide their response. Plaintiffs thus do not believe it necessary to expand on their prior response to the original Report. Instead, Plaintiffs submit the following brief response to the Second Addendum to the Report of the Special Master, dated December 28, 2018 (Dkt. No. 331, the "Second Addendum").

For the reasons previously explained, the Court should adopt one of Plaintiffs' proposed remedial plans or, in the alternative, the following modules proposed by the Special Master: Richmond 1A, Petersburg 2, Peninsula 2, and Norfolk 1A.

## II.   ARGUMENT

### A.   If the Court Does Not Adopt One of Plaintiffs' Proposed Remedial Plans, It Should Adopt Richmond 1A, Petersburg 2, Peninsula 2, and Norfolk 1A

In the Second Addendum, the Special Master briefly responds to Plaintiffs' comments on

---

[1] It would appear that the same is true of the State Defendants and the multiple non-parties who timely submitted substantive analyses of the Special Master's Report.  *See* Dkt. Nos. 325, 326, and 329.

the Report. *See* Second Addendum ¶ 11-11B. In particular, the Special Master addresses Plaintiffs' comments on his two proposed modules in the Richmond area (1A and 1B). The Special Master does not specifically address Plaintiffs' comments on the proposed modules in the three other regions discussed in the Report.

As to Richmond, the Special Master "agrees with Plaintiffs['] characterization" that the "extensive changes" made to non-Challenged Districts 72 and 73 in Richmond 1B are "not required to implement a constitutional map." *Id.* at 9 n.8. The Special Master represents that Richmond 1A remedies the racial gerrymander found in this part of the Commonwealth. *See* Report at 8. As Plaintiffs have explained, the Court can and should make whatever changes to the existing map are needed to implement an effective remedy. But in the unique circumstance where the Special Master has specifically represented that a particular change (Richmond 1B) is "not required to implement a remedy," and is made for an entirely different reason, the Court should not adopt that change. This is particularly so given that the proposed changes to these two non-Challenged Districts are significant, *see* Dkt. No. 328 at 5, and Richmond 1A provides a viable and ready alternative.

With regard to the Petersburg and Peninsula regions, Plaintiffs propose that the Court adopt Petersburg 2 and Peninsula 2. *See* Dkt. No. 328 at 2-6. Briefly stated, Petersburg 2 fully remedies the race-based split of Dinwiddie County, which naturally results in greater adherence to traditional redistricting principles throughout the Petersburg region. In the Peninsula region, meanwhile, Peninsula 2 remedies the racial gerrymander of District 95 and better adheres to traditional redistricting criteria, as compared to Peninsula 1, which elongates non-Challenged District 94 and thereby reduces the district's compactness. As the Special Master notes, there is "substantial agreement" that Peninsula 2 and Petersburg 2 are the best options in these regions.

Second Addendum ¶ 8.[2] The Court should adopt Petersburg 2 and Peninsula 2.

As to the Norfolk region, Plaintiffs urge the Court to adopt Norfolk 1A because (compared to the alternatives) it remedies the racial gerrymander, preserves the opportunity of African American voters to elect candidates of choice, draws a much more compact version of District 77, and splits fewer voting tabulation districts. Dkt. No. 328 at 8. No other party or non-party offers specific argument or explanation why any alternative is better.

## B.   The Special Master's Overall Approach to Creating Modules for the Court's Consideration Is Appropriate

For the reasons they have previously explained, Plaintiffs submit that the Court should adopt either one of Plaintiffs' proposed remedial plans or the above modules rather than any of the Special Master's alternatives. That said, as the Special Master notes (Second Addendum ¶ 11), Plaintiffs do generally believe that his various proposals remedy the racial gerrymander of the Challenged Districts.[3]

As he has explained, the Special Master followed the same approach that he appropriately used in the *Personhuballah v. Alcorn* litigation to remedy Virginia's congressional map. Report at 10. Plaintiffs do disagree with how the Special Master has specifically adapted that approach for the present remedial task by prioritizing changing the fewest overall number of districts. Notably, despite their very different perspectives, all parties and non-parties who submitted briefs—including Intervenors—agree with Plaintiffs. *See* Dkt. No. 326 at 3; Dkt. No. 327 at 21; Dkt. No. 329 at 3-6. In short, changing fewer districts is not always better. The Special Master

---

[2] That multiple groups with different perspectives all agree on these two modules is telling. *See* Second Addendum ¶ 8. These two options are clearly superior. The State Defendants have expressed no preference between modules, finding them all sufficient. *See* Dkt. No. 325. Intervenors have urged the Court to reject all of the modules. *See generally* Dkt. No. 327.

[3] The exception is in Petersburg, where Plaintiffs are concerned that the Special Master's proposed Petersburg 1A and 1B preserve the Dinwiddie split, and the resulting configuration of districts in that part of the Commonwealth. *See* Dkt. No. 328 at 3. While the Special Master may not have used racial considerations to construct these modules, Plaintiffs do not believe they go far enough to remedy the racial gerrymander of Challenged Districts in this region.

thus inappropriately rejected Plaintiffs' proposed remedial plans in large measure based on this consideration.

That said, the fact that the Special Master's modules do not go as far as they *could* does not mean they are *inappropriate* remedies, as Intervenors argue. In attempting to sway the Court not to adopt any of the Special Master's proposed modules, Intervenors grossly mischaracterize the Special Master's methodological approach. The Special Master's Second Addendum carefully and thoroughly explains how Intervenors have misapprehended the Special Master's approach. *See* Second Addendum ¶¶ 12-12I. Specifically, although this was entirely evident from his initial Report, the Special Master has clearly explained that he (1) did not use race as the predominant factor in constructing his remedial plans and (2) appropriately used traditional redistricting criteria to guide him in making necessary changes to effect a remedy.

To the Special Master's discussion, Plaintiffs add one additional point. Stripped to its essence, Intervenors' objection is that the Special Master prioritized traditional redistricting criteria over political considerations in redrawing the map. That is, Intervenors complain that the Special Master "honor[ed] political-subdivision lines" instead of engaging in "incumbency preservation." Dkt. No. 327 at 24. The Special Master admittedly took pains to ensure that no incumbents were paired or drawn out of their districts. *See* Second Addendum ¶ 12H. Intervenors' complaint thus appears to be that the Special Master did not review political data and contort the map to attempt to assure the reelection of incumbents—at least, those incumbents who the Special Master should have gleaned are sufficiently important. Dkt. No. 327 at 23.

Intervenors concede, as they must, that the Challenged Districts and surrounding districts must be changed to effect a remedy of the unconstitutional racial gerrymander. Indeed, sometimes they fault the Special Master for not making sweeping enough changes. *See* Dkt. No.

327 at 19-21. What Intervenors argue, then, is that the Court would abuse its discretion in adopting a remedial plan unless it alters the map as necessary to avoid the political ramifications that flow from following traditional redistricting principles. Even assuming the Court should seek to help politicians select their voters, rather than the other way around, it is ill-equipped to make these kind of finely-tuned political calculations.

More fundamentally, regardless of how Intervenors attempt to characterize their political goals, courts cannot and do not draw remedial plans to achieve particular political ends. *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 563-64 (E.D. Va. 2016) (rejecting claim that "adopting a plan consistent with the General Assembly's policies requires maintaining" the existing political performance of districts); see also *id.* at 566-67 (the "courts have unanimously agreed that political considerations 'have no place in a plan formulated by the courts.'" (Payne, J., dissenting in part and concurring in part) (quoting *Wyche v. Madison Parish Police Jury*, 769 F.2d 265, 268 (5th Cir. 1985). Intervenors thus invite the Court to flout well-established precedent by prioritizing political considerations—in particular, the political fortunes of select incumbents—in adopting a remedy. The Special Master rightly rejected that invitation. This Court should do the same.

### III. CONCLUSION

For the reasons set out above, and in earlier briefing, the Court could adopt either of Plaintiffs' proposed remedial plans or, in the alternative, the Special Master's proposed Richmond 1A, Petersburg 2, Peninsula 2, and Norfolk 1A, and should order implemented a new remedial plan at the earliest possible date.

Dated: January 4, 2019

By: */s/ Aria Branch*
_____

Marc Erik Elias (*pro hac vice*)
Bruce V. Spiva (*pro hac vice*)
Aria Branch (VSB No. 83682)
**PERKINS COIE** LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6338
Facsimile: 202.654.9106
Email: ABranch@perkinscoie.com
Email: MElias@perkinscoie.com
Email: BSpiva@perkinscoie.com

Kevin J. Hamilton (*pro hac vice*)
Abha Khanna (*pro hac vice*)
Ryan Spear (*pro hac vice*)
William B. Stafford (*pro hac vice*)
**PERKINS COIE** LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: KHamilton@perkinscoie.com
Email: AKhanna@perkinscoie.com
Email: BStafford@perkinscoie.com
Email: RSpear@perkinscoie.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of January, 2019, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

By */s/ Aria C. Branch*
Aria C. Branch (VSB #83682)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
ABranch@perkinscoie.com

*Attorneys for Plaintiffs*