IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| Golden Bethune-Hill, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Virginia State Board of Elections, *et al.*, <br><br> Defendants. | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**Defendant-Intervenors' Supplemental Memorandum
Regarding Special Master's Modules**

At the hearing of January 10, the Court posed to counsel for Defendant-Intervenors the question whether Defendant-Intervenors, setting aside their objections to *all* the Special Master's modules, favored certain modules over others. Counsel for Defendant-Intervenors apologize for not being in a position to answer that question, but, after assessing it further, can provide the following answer to aid the Court's consideration of these difficult issues.

As an initial matter, Defendant-Intervenors, of course, object to *all* the Special Master's proposals for reasons stated in their prior briefing and which will not be repeated here. Defendant-Intervenors reiterate their position that there is no clear remedial path for the Court and it should stay its hand pending further guidance from the Supreme Court. Defendant-Intervenors also reiterate and

1

incorporate by reference their various objections stated in the remedial proceedings to date.

However, Defendant-Intervenors, on closer inspection at the Court's prompting, have identified some modules that are somewhat better than others, which are described below. In doing so, Defendant-Intervenors do not waive or forfeit the right to challenge all modules on appeal or otherwise.

**Richmond**. Richmond module 1B is somewhat better than Richmond module 1A because the latter proposal negatively impacts HD72's configuration without concomitant changes to counter that negative impact. As noted in Defendant-Intervenors' prior briefing, ECF No. 337 at 18, both of the Special Master's Richmond modules propose to gouge a new (apparently race-based) mouth out of the northwest corner of HD74, and this requires extending a new section of HD72 in a southeastern direction. *See* ECF No. 323 at 71. This takes a district that has already been the subject of criticism for its unappealing shape and makes it even less appealing. *See id.* Module 1A does not account for this degradation; Module 1B corrects with a more compact version of HD72 and, by necessary consequence, alterations to HD73. *See id.* at 71–76.

To be sure, Module 1B is certainly vulnerable to the criticism that it changes more of HD72 and HD73 than necessary. But, as between a map that does nothing to account for the violence to HD72 and one that does too much, the latter is a modestly preferable option. Defendant-Intervenors respectfully submit that Module 1B is not quite as bad as Module 1A.

**Petersburg**. Petersburg module 1A is somewhat better than Petersburg module 2 because, while both contain race-based lines, the line carried forward in 1A was at least partially justified to achieve a lawful goal in HD75, whereas the race-based lines in module 2 have no possible, or even alleged, justification. As explained in Defendant-Intervenors' prior briefing and at the January 10 hearing, module 2 contains a series of maneuvers that simply must have been intended to avoid drawing the district above 55% BVAP. ECF No. 337 at 12–13. The district contains a strange appendage in a northwestern direction to scoop up predominantly white areas and avoid predominantly black areas in the region that would, under traditional principles, naturally fit into HD63. It also splits the Winfrees Store VTD with stunning racial precision, placing a predominantly black neighborhood on one side of the line and a predominantly white neighborhood included on the other. That VTD was not split either in the enacted or benchmark plans or in HB7002. The predominant racial intent, from a map-drawer who admits to have used race for some amorphous reason, is unmistakable. The Court should avoid this configuration in all events.

True, module 1A is just barely better because it preserves the line the Court criticized in its opinion as "avowedly racial," ECF No. 234 at 49, and also appears to contain new territory drawn on predominantly, though slightly less acutely, racial lines. But, in this lesser-of-two-evils showdown, module 1A is preferable because the Dinwiddie County split was predominantly created to ensure a 55% BVAP in HD75, which the Supreme Court upheld as narrowly tailored, so the line carries

3

subordinate weight as to HD63, and the Court's ruling against HD63 was predicated primarily on districting maneuvers around Hopewell. *Id.* That, of course, does not make the choice correct against HB7002—which involved *no* racial maneuvering—but simply better as against Module 1.

**Peninsula**. On the Virginia Peninsula, module 1 is better than module 2 because module 2 creates a less compact proposal for HD95 and a bizarre configuration of HD93. HD92 is the same in both maps (as is the extremely bizarre proposal for HD91), so the comparison must be made between HD95, HD93, and HD94. Module 1 draws HD95 somewhat more compact than does module 2, and it creates an extremely compact proposal for HD93, whereas module 2 draws a near monstrosity. *Compare* ECF No. 323 at 85 *with id.* at 88. Although module 2 draws a somewhat less regular HD94, the difference is marginal and not enough to overcome for the remarkable disregard for traditional districting principles present in module 2. Both modules are bad; module 2 is better.

**Norfolk**. Norfolk proposal 1C is superior to the two other Norfolk proposals, most obviously because it inflicts the least harm on non-challenged districts. Module 1C changes eight districts total, module 1B changes nine, and module 1C changes 10. The Special Master proposes that *all* of them remedy the violation, and, by his own contention that the plan with the least number of districts changed is superior, module 1C is by definition preferable. Moreover, there is no problem analogous to that imposed under Richmond 1A, where the changes worsen a

neighboring district with no concomitant improvements. Norfolk 1A and 1B contain purely gratuitous alterations that are unnecessary to remedy the violation.

## CONCLUSION

The Court should stay its hand pending resolution of the appeal at the Supreme Court. In the alternative, the Court should adopt Defendant-Intervenors' proposals stated at ECF No. 337 at 26. But if it disagrees with these, it should adopt the modules noted above.

Dated: January 17, 2019

Respectfully Submitted,

*/s/ Katherine L. McKnight*
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker M. Kirkland Cox*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January, 2019, a copy of the foregoing was filed and served on all counsel of record pursuant to the Court's electronic filing procedures using the Court's CM/ECF system.

*/s/ Katherine L. McKnight*
Katherine L. McKnight (VSB No. 81482)
Richard B. Raile (VSB No. 84340)
E. Mark Braden (*pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Ave NW, Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
Fax: (202) 861-1783
kmcknight@bakerlaw.com
rraile@bakerlaw.com
mbraden@bakerlaw.com

*Attorneys for the Virginia House of Delegates and Virginia House of Delegates Speaker M. Kirkland Cox*