IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GOLDEN BETHUNE-HILL, et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| VIRGINIA STATE BOARD OF ELECTIONS, et al., | ) Civil Action No. 3:14-cv-00852-REP-AWA-BMK |
| Defendants, | ) |
| and | ) |
| M. KIRKLAND COX, SPEAKER OF THE HOUSE OF DELEGATES, and THE HOUSE OF DELEGATES, | ) |
| Intervenor-Defendants. | ) |

**OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, AND BILL OF COSTS**

Defendants acknowledge that plaintiffs are prevailing parties who are entitled to recover reasonable fees and costs in connection with this litigation. Defendants dispute only the amounts sought and whether those amounts may properly be recovered from defendants.[1]

Plaintiffs seek to recover from defendants (and ultimately, Virginia taxpayers) approximately $4.8 million in attorneys' fees, costs, and expenses, consisting of "at least $4,084,101.25 in attorneys' fees[,] $489,096.35 in litigation expenses,"[2] and $223,832.06 in

---

[1] Defendants take no position about whether plaintiffs may recover fees or costs against any other person or entity, including the intervenor-defendants Kirkland Cox and the House of Delegates.

[2] Plaintiffs' Memo. In Support of Second Motion for Attorneys' Fees and Litigation Expenses (Dkt. 386) at 3.

1

costs.³ Those amounts should be reduced for three reasons. *First*, because binding Fourth Circuit precedent establishes that defendants are not properly charged for fees and expenses incurred by plaintiffs in litigating against the intervenor-defendants' unsuccessful efforts to unilaterally appeal this case. *Second*, as defendants explained in their opposition to plaintiffs' previous motion for attorneys' fees, plaintiffs have failed to satisfy their burden of establishing the reasonableness of their request for substantial hourly rate increases for the same attorneys during the life cycle of this single case. *Third*, as defendants have previously explained, plaintiffs' time entries contain numerous examples of vagueness and block billing.

    1.      On July 19, 2018, Virginia's Attorney General announced—both publicly and in a filing with this Court—that neither defendants nor the Commonwealth would appeal this Court's liability ruling. Defs.' Opp. to Intervenor-Defs.' Mot. to Stay Inj. Pending Appeal Under 28 U.S.C. § 1253, Dkt. 247 at 1–2.⁴ From that point on, defendants took no steps to challenge plaintiffs' victory or to support intervenor-defendants' attempts to do so. To the contrary, defendants actively resisted those efforts, arguing at each and every stage that no stays should be granted and the appeals should be dismissed "because the Intervenor-Defendants lack standing to appeal." *Id.* at 2.⁵ The Supreme Court agreed with defendants, "dismiss[ing] [intervenor-defendants] appeal for lack of jurisdiction" on the precise ground that defendants had urged from

---

    ³ Plaintiffs' Bill of Costs (Dkt. 388) at 2.

    ⁴ Accord *Herring Urges General Assembly to Eliminate Racial Gerrymandering in House of Delegates Districts as Quickly as Possible* (July 19, 2018), https://www.oag.state.va.us/media-center/news-releases/1233-july-19-2018-herring-urgesgeneral-assembly-to-eliminate-racial-gerrymandering-in-houseof-delegates-districts-as-quickly-as-possible (same).

    ⁵ Accord State Appellees' Mot. to Dismiss, *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019) (No. 18–281) (filed Oct. 9, 2019); State Appellees' Resp. in Opp. to Appellants' Emergency App. For Stay Pending Resolution of Direct Appeal to this Court, *Virginia House of Delegates, supra* (No. 18A629) (filed Dec. 20, 2018); Br. of State Appellees, *Virginia House of Delegates, supra* (No. 18–281) (filed Jan. 28, 2019).

the start. See *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1956 (2019); *id.* at 1951 ("We find unconvincing [intervenor-defendants'] argument that [they] ha[ve] standing, either to represent the State's interests or in [their] own right").

Under the Fourth Circuit's decision in *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018), defendants are not properly chargeable for any fees, expenses, or costs associated with litigating against intervenor-defendants' unsuccessful attempts to appeal this Court's decisions. *Brat* was another voting rights case from Virginia, and the district in question was for the United States House of Representatives.[6] There, as here, the defendants "determined not to appeal, but the Intervening Congressmen did." *Id.* at 477. From that point on, the defendants "not only declined to pursue [an] appeal, but *actively made arguments in support of Plaintiffs' position*," *Personhuballah v. Alcorn*, 239 F. Supp. 3d 929, 945 (E.D. Va. 2017), *vacated and remanded sub nom. Brat*, 883 F.3d 475, arguing that the Supreme Court should "affirm the district court's order on the merits." *Brat*, 883 F.3d at 479. "In a unanimous decision, . . . the Supreme Court determined that none of the Intervening Congressmen had standing and dismissed the appeal." *Id.* (citing *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016)).

After holding that the intervenors could not be held liable for fees and costs under the facts of that case, see *Brat*, 883 F.3d at 479–84, the Fourth Circuit addressed the proper standards for determining which fees and costs were—and which were not—properly charged to the defendants. The Court noted that it had previously held that "'*intervention-related fees and expenses* . . . are not recoverable . . . by a prevailing plaintiff against a losing defendant,'" and it saw "no reason not to apply that holding also to the intervention-related fees incurred *in actually litigating* against the intervenors' positions." *Id.* at 484 (quoting *Rum Creek Coal Sales, Inc. v.*

---

[6] Many of the lawyers who represented the plaintiffs in *Brat* also represent the plaintiffs in this case. See *Brat*, 883 F.3d at 476 (listing counsel).

3

*Caperton*, 31 F.3d 169, 178 (4th Cir. 1994)). Accordingly, the Fourth Circuit "conclud[ed] that the Commonwealth cannot be held liable for attorneys fees and costs incurred by the plaintiffs in litigating against the entry of the Intervening Congressmen *or against the Intervening Congressmen's positions*," and it remanded for this Court to determine the amount of fees and costs for which the defendants were responsible under the appropriate standards. *Id.* (emphasis added).[7]

*Brat* is controlling here. Once the defendants announced that they would not appeal, any "fees and costs incurred by the plaintiff" in connection with that appeal were spent "litigating . . . against" the intervenor-defendants, not defendants. *Brat*, 883 F.3d at 484. "Under the traditional American rule, the plaintiffs must bear those intervention-related fees." *Id.*[8]

Many of plaintiffs' requested fees, expenses, and costs do not specify the stage of the litigation to which they apply.[9] In the absence of plaintiffs' particularized identification of the

---

[7] On remand in *Brat*, plaintiffs did not seek fees from defendants associated with the intervenor-defendants' appeal. See *Personhuballah v. Alcorn*, No 3:13-cv-678, Dkt. 345 (E.D. Va. Mar. 22, 2018) (noting that the defendants paid the fees as awarded in the panel's initial order—which did not assign fees for the appeal—and plaintiffs "advised that they will not seek further attorney's fees from the defendants").

[8] For the same reason, defendants are not responsible for fees, expenses, or costs related to intervenor-defendants' unilateral efforts to appeal this Court's remedial order to the Supreme Court, an effort that defendants again successfully opposed on the ground that intervenor-defendants lacked standing to appeal. See State Appellees' Mot. to Dismiss, *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 2715 (2019) (No. 18-1134) (filed Apr. 1, 2019) (arguing that the intervenor-defendants lacked standing to appeal); *Virginia House of Delegates*, 139 S. Ct. 1945, 1950 n.1 (2019) ("The House's claim to standing to pursue an appeal from the remedial order fares no better than its assertion of standing [to appeal the liability order]."); *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 2715, 2715 (2019) (intervenor-defendants' appeal from remedial order "dismissed for want of jurisdiction").

[9] For example, an April 1, 2019 entry records time to "[r]eview Supreme Court filings" without specifying the Supreme Court matter at issue. Second Fee Motion, Appendix 1, Dkt. 386-1 at 251. In addition, entries on March 11 and March 12, 2019 record time to "[a]nalyze the evolution of Appellants' standing arguments over time" and "draft chart reflecting the same" but do not specify the stage of the litigation to which they relate. *Id.* at 248–49.

4

fees, expenses, and costs attributable only to the remedial phase before this Court, defendants ask this Court to remove fees, expenses, and costs postdating July 19, 2018 (the date defendants announced they would not appeal this Court's liability decision). As reflected in plaintiffs' Appendix A (Dkt. 386-1), that would reduce the requested amount of attorneys' fees by $762,294.[10] As reflected in plaintiffs' Appendix B (Dkt. 386-2), the requested amount of expenses should be reduced by $30,877.35.[11] And according to Exhibit A to plaintiffs' bill of costs (Dkt. 388-1), the requested amount of costs should be reduced by $11,647.40.[12]

2. As in their previous fee petition, plaintiffs' requested hourly rates remain flat from 2014 to 2016 but then abruptly rise in 2017 and continue rising each year thereafter. Plaintiffs and defendants agree that the billing rates established in *Page v. Virginia State Bd. of Elections*, No. 3:13-CV-678, 2015 WL 11256614 (E.D. Va., Mar. 11, 2015), are appropriate for 2014, 2015, and 2016. But for 2017, 2018, and 2019, plaintiffs seek an increase in their hourly rate on "the reality that attorneys' billing rates generally are adjusted from year-to-year." Pls.' Mem. In Supp. Of Second Mot. For Fees, Dkt. 386 (Second Fee Motion) at 15. This Court rejected a similar argument in the *Personhuballah* litigation, see 239 F. Supp. 3d at 951 (rejecting plaintiffs' assertion that their rate increases "reflect the reality that attorneys' billing rates generally are adjusted from year-to-year'"), and there is no reason for a different result here. See Defs.' Opp. to Pls.' Mot. For Fees, Dkt. 253 (First Fee Opposition) at 3–4.

Applying the 2016 rates to the hours plaintiffs billed between January 1, 2017 and July 19, 2018 (the date on which defendants ceased defending this litigation) results in a further

---

[10] Calculated by adding the entries on page 219 (starting with the entry dated July 30, 2018) through the end of page 251.

[11] Calculated by adding the amounts in Rows 341–53, 819–97, 1631–770, and 1828.

[12] Calculated by adding the amounts in Rows 62 and 151–58.

5

reduction to the requested attorneys' fee award of $242,747.75. Exhibit 1 to this document lists the billing entries that should be reduced to the Richmond rate as set forth in *Page* and shows the reduced amounts for each time entry (highlighted in green).

3. Beyond the question of hourly rates, "[p]laintiffs [also] must demonstrate that the amount of hours sought to be compensated were reasonably expended on the litigation." *Page*, 2015 WL 11256614, at *8 (citation omitted). As before, plaintiffs' current fee motion includes numerous examples of vague billing and "block billing" (the "practice of grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task"). *Id.* at *10 (internal quotation marks and citation omitted).

Defendants described these defects in detail in their opposition to plaintiffs' previous fee petition. See First Fee Opposition at 6–8 & accompanying Exhibit B. Plaintiffs' current fee application, however, does not cure any of those problems. To the contrary, it includes precisely the same time entries as plaintiffs' previous fee petition. Compare First Fee Opposition at 6–8 & accompanying Exhibit B, with Exhibit 1 to this document. For example, numerous time entries consolidate "email *and* telephone conference"[13] combine the separate tasks of "prepare for" and "participate,"[14] or group multiple "telephone *conferences*" under a single entry.[15] Still other entries reference "manag[ing] discovery" without providing any context,[16] while others state "[r]eview and analyze documents for categorization and assessment" without providing any

---

[13] Rows 2394, 2431, 2438, 2440, 2441, 2446, 2454, and 2477 (emphasis added).

[14] Rows 2143, 2152, 2180, 2208, 2215, 2221–23, 2228, 2242, 2252, 2253–54, 2268, 2502, 3139, 3156, 3163, 3166, and 3175–76..

[15] Rows 2398, 2440–41, 2463, 2466, 2476–77, 2482, 2491, and 2507–18 (emphasis added).

[16] See, *e.g.*, Appendix A to Plaintiff's Fee Petition (Dkt. 386-1) at 19, 20, 24, 28–32, 34, 36–37, 55, 60, 62, and 80.

context or explanation of what that phrase means.[17] The second entry still reads, in its entirety: "Review case issue".[18]

The entries that are new to plaintiffs' current fee petition replicate the same vagueness and block billing problems. For example, an entry from 7/11/2018 states "[r]eview and revise draft fee petition; conference with B. Stafford regarding same" without specifying the time to each individual task. Second Fee Motion, Appendix 1, Dkt. 386-1 at 219. Similarly, another entry lists "[r]espond to attorney request for information/documents in connection with appeal; review parties trial exhibits and revise/update tracking index for attorney further evaluation;" but does not describe the requested information, nor does it assign a time to the particular tasks. Second Fee Motion, Appendix 1, Dkt. 386-1 at 227.[19] For the reasons discussed in defendants' previous fee opposition, defendants believe that at least the same 20% reduction imposed in *Page* for block billing also is warranted here. See First Fee Opposition at 8–9.

\* \* \*

The chart below shows the reductions in attorneys' fees, expenses, and costs that defendants believe are warranted in light of: (a) the non-recoverability of fees, expenses, and costs for the Supreme Court phase; (b) plaintiffs' failure to establish the reasonableness of their hourly rates for 2017 and 2018; and (c) vague time entries and block billing.

---

[17] *Id.* at 34–39, 44–46, 57–58, 68, 71–72, 78, and 80–81.

[18] *Id.* at 1.

[19] See also *id.* at 251 (April 2, 2019 time entry combining tasks "[f]inalize *and* coordinate filing of motion to dismiss") (emphasis added); *id.* at 242 (January 18, 2019 entry listing tasks "[p]repare for and attend telephone conversation with R. Spear regarding SCOTUS brief" without specifying how much time was spent on each task or which "SCOTUS brief" was at issue); *id.* at 241 (January 16, 2019 entry "[r]esearch related to SCOTUS brief" without specifying the issue researched, how it relates to the matter, or even which Supreme Court brief is at issue); *id.* (January 15, 2019 entry "[a]ssist with filing response to court order and prepare hard copy documents for court" without specifying the amount of time to each task, which court order is at issue, or even which court this pertains to).

| | |
|---|---:|
| Fee amount requested by Perkins Coie timekeepers | $4,084,101.25 |
| Entries after July 19, 2018 | -$762,294 |
| Adjustment based on recalculating 2017 and 2018 billings at Richmond rates (see Ex. 1) | -$242,747.75 |
| Subtotal after adjustment to Richmond Rates | **$3,079,059.50** |
| 20% reduction for block billing and vague descriptions | -$615,811.90 |
| | |
| **Total fee award after appropriate reductions** | **$2,463,247.60** |
| | |
| Expense amount requested | $489,096.35 |
| Expenses after July 19, 2018 | -$30,877.35 |
| | |
| Costs incurred | $223,832.06 |
| Costs after July 19, 2018 | -$11,647.40 |
| | |
| **Total appropriate award of fees, expenses, and costs** | **$3,133,651.26** |

 

Respectfully submitted,

By: _____/s/_____
Michelle S. Kallen, VSB # 93286
Deputy Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
solicitorgeneral@oag.state.va.us

Mark R. Herring
Attorney General of Virginia

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2019, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will then send a notification of such filing to the counsel of record in this case

By: /s/
Michelle S. Kallen