# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

GOLDEN BETHUNE-HILL, *et al.*,

        Plaintiffs,

    v.

VIRGINIA STATE BOARD OF ELECTIONS, *et al.*,

        Defendants,

    v.

VIRGINIA HOUSE OF DELEGATES, *et al.*,

        Intervenor-Defendants.

Civil Action No. 3:14-cv-00852-REP-AWA-BMK

## PLAINTIFFS' REPLY IN SUPPORT OF SECOND MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES

145602371.2

On August 2, 2019, Plaintiffs filed a fee petition and cost bill, seeking recovery of their attorneys' fees, expenses, and costs. In their moving papers, Plaintiffs did not advocate that the Court allocate fees, expenses, or costs to any particular defendant, leaving any allocation to the Court's sound discretion. On September 1, 2019, the State Defendants filed an opposition brief. Defendant-Intervenors have not filed an opposition to Plaintiffs' fee petition and cost bill.

The State Defendants do not dispute that Plaintiffs are the prevailing parties and thus are entitled to an award of fees, reasonable litigation expenses, and costs. Instead, the State Defendants seek a radical departure from the lodestar amount that would slash Plaintiffs' fee request by roughly 40% (from $4,084,101.25 to $2,463,247.60). The State Defendants also ask the Court to deny any award of expenses or costs incurred since July 19, 2018 (a total of $42,524.75). In all, the State Defendants ask the Court to award Plaintiffs $3,133,651.26. Remarkably, the State Defendants argue that Plaintiffs should be awarded roughly *half* of the fees the Commonwealth had already incurred defending this case *more than a year ago*. *See* ECF No. 386 ("Mot.") at 9-10.

Little more need be said to reject the State Defendants' objections. In any event, none of the State Defendants' three specific objections to Plaintiffs' fee request and cost bill has merit. First, the State Defendants claim that Plaintiffs should not recover *any* fees, expenses, or costs incurred after July 19, 2018. But even the State Defendants concede that Plaintiffs' work on the remedial phase of this case after this date is recoverable. So too is time Plaintiffs spent defending against the Commonwealth's appeals in this matter—Plaintiffs' claim is against the Commonwealth, and it is of no moment whether it was the executive branch or legislative branch of the Commonwealth that appealed. Second, the State Defendants argue that it was unreasonable

1

for rates to increase at all over the four-year period between March 2015 (when the *Page* court[1] set the rates the State Defendants ask to be imposed here) and 2019. But Plaintiffs offered specific support for the challenged rates to which the State Defendants offered no argument. Finally, the State Defendants argue for an additional 20% reduction in fees because of alleged "block billing" and "vague" entries. But Plaintiffs' counsel billed individual tasks in six-minute increments, and the time records run for more than 250 pages precisely because of the detailed narrative provided.

As Plaintiffs noted in submitting their first fee petition last year, it is not surprising that the numbers at issue here are large. This was a complex piece of litigation fought for half-a-decade in multiple forums. The case went to trial twice, and three separate appeals to the Supreme Court were filed. It involved legislative districts in three different parts of the Commonwealth, each with its own unique history and evidentiary record. The facts and the law were hotly contested. The case involved no fewer than six experts. Given the nature and stakes of this case, both Plaintiffs and the Commonwealth necessarily spent significant time and resources litigating it.

## A. The Court Should Not Arbitrarily Refuse to Award Fees Incurred by Plaintiffs After July 19, 2018

The State Defendants first argue that the Court cannot impose fees against them that postdate July 19, 2018. This is based on their argument that the Court cannot award fees against the State Defendants for purely "intervention-related" fees, although they take no position as to whether the Court can award fees against the legislative branch intervenors. ECF No. 393 ("Opp.") at 4.

---

[1] References to *Page* and *Personhuballah* both refer to a congressional redistricting litigation, Civil Action No. 3:13cv678, that proceeded before a three-judge panel of this Court.

### 1.    The Court Should Award Fees Related to the Remedial Phase

The State Defendants appear to concede that—even under their view—Plaintiffs *are* entitled to recover "fees, expenses, and costs attributable only to the remedial phase." Opp. at 4-5. They claim, however, that they are unable to tell which entries relate to the remedial phase and which to Intervenors' appeals. *Id.* The State Defendants indicate they would have no objection to the award of remedial phase fees if Plaintiffs provided "particularized identification" of entries related to the remedial phase. *Id.* The State Defendants' objection is thus to the form of Plaintiffs' fee petition rather than the substance of whether remedial phase fees are recoverable.

As an initial matter, the State Defendants' claim that they categorically cannot distinguish between task-by-task entries to determine if they relate to the remedial phase or the appeal rings hollow. The State Defendants can surely tell, for example, that when Ms. Branch spent 1.2 hours on August 27, 2018, to "[p]repare for and attend call regarding remedial map," this work related solely to the remedial phase. *See* ECF No. 393-1 row 2016; *see also, e.g.*, *id.* at row 3306 ("Draft response to special master report"); row 2336 ("Review draft brief on remedial maps (1.5); conference with B. Stafford regarding same (.6)"). By contrast, when Mr. Stafford spent 2.9 hours to "research and draft opposition to stay before Supreme Court" on August 31, 2018, that work plainly related to the appeal. *Id.* row 3262. And when an attorney worked on both the appeal and the remedial phase on the same day, they broke up their time entries to so indicate. For example, on January 2, 2019, Ms. Khanna listed the following entries:

> Review and revise draft supplemental brief on remedy (0.3); email and confer with B. Stafford regarding same (0.2); confer with B. Stafford regarding SCOTUS arguments (0.2); email with printer regarding deadlines for SCOTUS response brief (0.1); review Appellants' opening brief (1.4);

145602371.2

*Id.* row 2635. It is apparent on the face of this entry that Ms. Khanna spent 0.5 hours working on a brief submitted to this Court during the remedial phase and 1.7 hours working on issues related to the appeal.

Plaintiffs' detailed time entries provide ample detail to allow the Court to differentiate between time spent on remedial phase tasks and time spent on appellate work. Thus, even assuming Plaintiffs' fees on appeal were not recoverable (they are), there is no basis to categorically deny fees incurred over the last year of this case. Nonetheless, to make things as clear as possible, Plaintiffs attach as Appendix A to this reply a spreadsheet that lists the specific time entries between July 19, 2018, and the present that relate to the remedial phase and not to appellate work. This information is pulled directly from Appendix A to Plaintiffs' fee petition (ECF No. 386-1) and consists of 300.90 hours of work amounting to $183,530.50 at the requested "Richmond rates." Plaintiffs respectfully submit that they should—at the very least—recover this additional amount.

### 2.    The Commonwealth Cannot Evade Its Obligations to Pay Plaintiffs' Fees By Arguing That One Branch of State Government Protracted the Litigation

The Commonwealth of Virginia violated Plaintiffs' constitutional rights when it adopted racially gerrymandered districts. Plaintiffs sued the Commonwealth employees and state agency responsible for implementing this unconstitutional districting plan. They obtained an injunction preventing the Commonwealth from utilizing its unconstitutional districting plan in future elections and then a court-ordered remedy. Plaintiffs' interest is in recovering the fees and expenses against the Commonwealth to which they are entitled as the prevailing parties.

In their fee petition, Plaintiffs have not expressly requested that the Court award their fees against any particular state entity. The appropriate allocation of fees is a matter committed firmly to the Court's discretion (or to the State Defendants and Defendant-Intervenors by agreement). *See Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 677 (4th Cir. 2015).

145602371.2

The State Defendants concede Plaintiffs are the prevailing party. But they claim that Plaintiffs cannot recover fees against the Commonwealth related to Defendant-Intervenors' appeals to the Supreme Court, because the State Defendants did not join in those appeals. Defendant-Intervenors are (a) a state government employee proceeding in his official capacity and (b) the Virginia House of Delegates. According to the State Defendants, Plaintiffs cannot recover fees because one hand of the Commonwealth declined to appeal while another hand of the Commonwealth pursued multiple appeals. With all due respect, this simply cannot be the law.

As an initial matter, the State Defendants' position before this Court is more than a little inconsistent with their position before the United States Supreme Court, where they argued that they needed authority "to make appeal decisions that reflect 'the limited resources of the Government'—*particularly where, as here, the State is going to have to pay the challenging party's attorney's fees if an appeal fails*." Brief of State Appellees at 43-44, *Va. House of Delegates v. Bethune-Hill et al.*, No. 18-281 (U.S. Jan. 28, 2019) (citation omitted) (emphasis added); *see also id.* at 9 (explaining that the Defendant-Intervenors' appeal created "the likelihood of additional fee petitions by the plaintiffs"). The Court should hold the State Defendants to their prior representations. *Cf. Zinkland v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). ("Judicial estoppel . . . prevent[s] a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court.").

But in any event, the State Defendants' new position is unsupported by law, fact, or commonsense.

The State Defendants rest this new argument entirely on *Brat v. Personhuballah*, 883 F.3d 475, (4th Cir. 2018), but that support is misplaced. *Brat* concerned a fee petition filed in the aftermath of a successful racial gerrymandering challenge to Virginia's third congressional district.

In that case, individuals (Republican congressional representatives) had intervened, and filed an appeal after the Commonwealth declined to do so. The intervenors were *not* Commonwealth employees acting in an official capacity—they were private individuals with a personal interest in the litigation. A three-judge panel of this Court awarded a portion of the plaintiffs' fees against these private individuals.

On appeal, the Fourth Circuit reversed, concluding that the private individuals "were 'blameless' intervenors" because they were "persons not charged with violating the law[] and therefore should not have been assessed attorneys' fees under the fee-shifting statutes in question." *Brat*, 883 F.3d at 481 (citing *Flight Attendants v. Zipes*, 491 U.S. 754, 762 (1989) (emphasizing the "crucial connection between liability for violation of federal law and liability for attorney's fees under federal fee-shifting statutes")). In *Brat*, whereas the plaintiffs had "sought relief against the Commonwealth, the only party from whom they could obtain relief" for passing an unconstitutional law, the intervenors "were not alleged to have carried out the unconstitutional delineation of congressional districts—they were federal representatives who were not charged with any responsibility in the enactment of the state law." *Id.* Rather, the intervenors "were legally unaffiliated with the government of the Commonwealth and therefore incapable of adopting a new redistricting plan" and so "were not responsible for the plaintiffs' fees." *Id.*

In reaching this conclusion, the Fourth Circuit addressed cases relied on by the district court that had authorized the award of fees against intervenors. The Fourth Circuit found these cases "materially distinguishable" because they addressed instances where the intervenors—like the defendants—were state actors. *Id.* at 483-84. In one of these cases, for example, the Third Circuit awarded fees against the New Jersey legislature after it intervened to defend a statute that the New Jersey Attorney General declined to defend. *Id.* (citing *Planned Parenthood of Cent. N.J.*

*v. Att'y Gen. of N.J.*, 297 F.3d 253, 263–65 (3d Cir. 2002)). In this regard, the Fourth Circuit agreed with the point made by Judge Payne in his dissenting opinion as to the imposition of fees against the private intervenors in *Brat*: "[T]he common-sense principle" is "that, where an unconstitutional statute is involved, the 'blameworthy' party under *Zipes* is the state that enacted the statute." *Personhuballah*, 239 F. Supp. 3d at 961 (Payne, J., dissenting).

The blameworthy party here is the Commonwealth. The Commonwealth can scarcely be heard to argue that it is no longer responsible for Plaintiffs' fees because of an internal disagreement in state government as to whether to pursue an appeal that, in fact, led state actors to file an appeal. This is a far cry from *Brat*, where the intervenors were not state actors. Defendant-Intervenors obviously are.

Thinking through the practicalities of a fee award drives the point home. Whether the Court awards fees solely against the State Defendants or allocates some portion of the fee award to Defendant-Intervenors, the *same entity*—the Commonwealth—is paying those fees. The only difference is a matter of the Commonwealth's internal accounting—i.e., whether one part of state government or another is nominally "responsible" for paying fees. *How* Plaintiffs' fees are paid may be an accounting matter of keen interest to the Commonwealth's various officials, but is of no moment to whether those fees are recoverable against the Commonwealth in the first instance.

Finally, the State Defendants' position is unsupported by commonsense and adopting it would lead to absurd results. The path forward for any state sued in a civil rights matter would be clear. As soon as a case is filed, have another state actor intervene. Then, have the original defendant assert that it will no longer defend the law in question, while the intervenor assumes the defense. Through this simple presto chango procedural magic trick, a state sued for violating a plaintiff's civil rights could immunize itself from fee awards. Such a result would be fundamentally

inconsistent with the whole purpose of the civil rights fee-shifting statutes and undermine the very enforcement regime they safeguard. Nothing in *Brat* compels that absurd outcome. To the contrary, *Brat* expressly and repeatedly stated that where a state passes an unconstitutional law, it is the state that bears the blame and the state that is appropriately subject to a fee award.

For these reasons, the Court should reject the Commonwealth's efforts to extricate itself from paying Plaintiffs' fees on appeal, and should award in full the $762,294 in fees sought by Plaintiffs for work performed after July 19, 2018. For the same reasons, the Court should also award in full Plaintiffs' expenses and costs incurred after that date, including $30,877.35 in expenses and $11,647.40 in costs.

**B.      It Is Reasonable for Plaintiffs' Counsels' Rates to Increase Between 2014 and 2019**

The State Defendants next object to Plaintiffs' hourly rates. The State Defendants agree that Plaintiffs' counsels' requested hourly rates are reasonable as set out for 2014-2016. *See* Opp. at 5. They object to Plaintiffs' proposed rates for 2017-2019. *Id.*

For 2015 and 2016 time, Plaintiffs' counsel applied the 2014 rates set by the *Page* court. The proposed rates for 2017-2019, however, reflect an increase in rates. The State Defendants argue that although Plaintiffs' counsels' rates *have* increased since 2014, Plaintiffs' counsel are *not* entitled to any increase at all in their hourly rates from 2014-2019. In essence, they argue that counsels' fees can never increase during the life of a case, no matter how long litigation lasts.

The Court should reject this unreasonable position. As Plaintiffs stated in their Reply in Support of their First Motion for Attorneys' Fees in response to the same argument, courts regularly recognize that attorneys' rates in fact go up over time. *United States ex rel. Ritchie v. Lockheed Martin Corp.*, No. 04-cv01937-EWN-MJW, 2007 WL 1795865, at *4 (D. Colo. June 21, 2007) (recognizing "the familiar practice of annual attorney rate increases"); *Randolph v. Sec'y of Health & Human Servs.*, No. 15-146V, 2018 WL 1310477, at *4 (Fed. Cl. Feb. 13, 2018)

145602371.2

(granting fee award reflecting "reasonable increase" in rates); *Ryan P. ex rel. Christine P. v. Sch. Dist. of Phila.*, No. 07-2903, 2008 WL 724604, at *5-6 (E.D. Pa. Mar. 18, 2008) (awarding annual rate increases). *See* ECF No. 254 at 3. *Some* rate increase between 2014 and 2019 is entirely appropriate.

But the State Defendants' objection goes no further. That is, while the State Defendants argue that Plaintiffs should be held to 2014 rates, they do not actually offer any objection to the specific rates claimed in 2017, 2018, and 2019. *See* Opp. at 5-6. They do not, for example, argue that such rates are unreasonably high in this district. In fact, the rates sought in 2017-2019 are reasonable in this district. In their motion, Plaintiffs justified their rates in 2017-2019 with reference to the guidelines set out in *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10–cv–502, Dkt. No. 263 (E.D. Va. Aug. 24, 2011). *See* Mot. at 16. And Plaintiffs explained that the rates sought by Plaintiffs' counsel fell within the parameters established by those guidelines. *Id.* The State Defendants offer no response. *See* Opp. at 5.

Instead, the State Defendants cite to *Personhuballah*, claiming that case establishes the principle that the Court categorically will not award fee increases over the life of a case. That is not the holding of *Personhuballah*. There, a three-judge panel of this Court concluded that the *Personhuballah* plaintiffs failed to justify a request for fee rate increases because they failed to provide any evidence at all that the rates sought in later years were reasonable in the Richmond market. *Personhuballah,* 239 F. Supp. 3d at 951. Here—unlike in *Personhuballah*—Plaintiffs have cited to the *Vienna Metro* guidelines, which establish the reasonableness of the rates Plaintiffs seeks here for every year in question.

Finally, as Appendix A to Plaintiffs' second fee petition makes clear, while Plaintiffs seek *some* increase in their hourly rates in 2017, 2018, and 2019, they do not seek the *actual* increase

145602371.2

in their rates during this period of time. *See* ECF No. 387 ¶ 11; *see also generally* ECF No. 386-01.[2] Rather, they continue to seek recovery at rates substantially below the actual rates charged, and with increases substantially less than the actual increase in their rates, notwithstanding the excellent results they obtained in a hard-fought and complex case that has been litigated before this Court and the United States Supreme Court. Plaintiffs submit that, in these circumstances, it is appropriate to recognize that their counsels' billing rates are higher in 2019 than they were in 2014. Plaintiffs submit that their specific requested increases are reasonable. In all events, the Court should reject the State Defendants' position that it is unreasonable for counsels' hourly rates to go up *at all* over a five-year period.

**C.      The Time Counsel Spent Obtaining a Successful Outcome Was Reasonable and the Court Should Not Reduce Plaintiffs' Conservative Lodestar Further**

As explained in their opening brief, Plaintiffs seek a conservative lodestar amount. Prior to submitting their fee petition, Plaintiffs' counsel exercised billing judgment and wrote off 1,783.65 timekeeper hours, totaling $787,119.25 in fees. Nonetheless, the State Defendants ask the Court to reduce Plaintiffs' requested fees by at least *another* 20% because of supposed "block billing" and "vague time entries." *See* Opp. at 7. The Court should reject these arguments as well.

Plaintiffs' counsel billed time down to six-minute increments, and distinguished between tasks on a day-by-day, task-by-task entry. In support of their assertion that the Court should apply a flat 20% reduction, the State Defendants attempt to cherry-pick examples of time entries that reasonably group together time spent on interrelated tasks such as "preparing for" and "participating" in a telephone conference. The State Defendants similarly point out time entries that adequately describe the tasks completed and describe them as "vague." Upon close

---

[2] For example, Ms. Khanna's rate increased from $660 per hour to $720 per hour between 2018 and 2019; a $55 increase. Plaintiffs' fee petition requests an increase from Ms. Khanna's 2018 Richmond rate of $550 to $590 in 2019; an increase of only $40.

examination, the State Defendants' specific challenges to Plaintiffs' alleged "block billing" and "vague" time entries fail, and their request for a 20% reduction in Plaintiffs' fees is unwarranted.

### 1.    The State Defendants' Block Billing Objections Are Meritless

There is a "'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee v. Boczar*, 738 F.3d 81, 88-89 (4th Cir. 2013) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). That said, a court can reduce the lodestar if a fee claimant either does not submit contemporaneous time records (Plaintiffs have) or where those records do not describe the work performed "with reasonable particularity" so that the court can determine whether hours were reasonably expended. *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 559 U.S. 542, 675 (E.D. Va. 2015) (quoting *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006)).

Where a party lumps together multiple, discrete tasks into a single lengthy time entry, it can make it difficult for the court to determine whether time spent was reasonably expended. This is true where, for example, every time entry reflects "only the total amount of time for each day . . . , with no breakdown of how that time was spent among often as many as four or five distinct tasks." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012).

Ultimately, however, what matters is not how time entries are formatted but rather whether they are sufficiently clear and detailed to allow the Court to evaluate the reasonableness of the time spent. In assessing a fee petition, courts are "practical and realistic," recognizing that if attorneys "have to document in great detail every quarter hour or half hour of how they spend their time . . . their fee[s] . . . will be higher, and the lawyers will simply waste precious time doing menial clerical tasks." *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006); *see*

*also e.g., Supler v. FKAACS, Inc.*, No. 5:11- CV-229-FL, 2013 WL 6713120, at *4 (E.D.N.C. Dec. 19, 2013) (refusing to reduce fees for "block billing": "These four entries, while they combine certain tasks, do not hamper the court's ability to evaluate the work done or reasonableness of time expended").

Here, the State Defendants' objections to particular entries are meritless, and elevate form far over substance.

> **a.    The Court Should Reject the State Defendants' Objections to the Entries Previously Submitted in Conjunction with Plaintiffs' First Motion for Attorneys' Fees**

First, the State Defendants argue the same alleged defects they identified in the time entries that supported Plaintiffs' First Motion for Attorneys' Fees have not been "cured" in Plaintiffs' Second Motion for Attorneys' Fees. The Court should reject that argument for the same reasons previously explained by Plaintiffs in their Reply in Support of their First Motion for Attorneys' Fees. *See* ECF No. 254 at 7-9. Simply put, none of the time entries identified by the State Defendants constitute "block billing." Indeed, the State Defendants' objections to some of Plaintiffs' time entries border on the absurd. For example, the State Defendants maintain that a time entry is block billed if two people met to discuss more than one topic in the same meeting. *See* ECF No. 393-1, Ex. 1 at row 2791 ("Conference with R. Spear regarding defendant-intervenor witness list and review of case files/transcripts"). Or, consider a time entry by Abha Khanna on April 16, 2017 in which Ms. Khanna billed 42 minutes and described the entry as "Review edits and comments to Position Statement and revise Position Statement in light of same." *Id*. at row 2401. This is hardly block billing. It is entirely clear what Ms. Khanna did on this day for 42 minutes—she reviewed edits and comments to a brief and revised the brief in light of those edits and comments. Whether this entry reflects a reasonable expenditure of time does not turn on whether Ms. Khanna spent 20 minutes reviewing the edits and comments and 22 minutes revising

12

145602371.2

the brief, or vice versa. To give another example of the nature of the State Defendants' objection,

a time entry from Ms. Khanna on July 17, 2017, totaling 5.2 hours, that is broken into *thirteen*

discrete tasks, is an example of block billing according to the State Defendants:

> Confer with B. Stafford regarding stipulations (0.4); review materials in
> preparation for same (0.5); review and revise draft stipulations and cover email
> and email with B. Stafford regarding same (0.6); review emails with legal team
> regarding discovery and depositions (0.4); email and telephone conference with
> M. Palmer regarding expert report and scheduling order (0.4); email and
> telephone conference with J. Rodden regarding expert report, data, and
> scheduling order (0.6); confer with R. Spear regarding discovery requests (0.2);
> review and revise draft discovery requests (0.4); email and confer with R. Spear
> and B. Stafford regarding same (0.3); review A. Branch witness interview
> memos and email with legal team regarding same (0.4); email and confer with
> legal team regarding witness call to M. Elias (0.4); email with experts regarding
> proposed discovery requests (0.3); review Court's pretrial schedule and email
> with legal team regarding motion to amend same (0.3).

*Id.* at row 2454. The State Defendants offer no specific argument as to this entry (or many similar

entries). Plaintiffs are thus left to scratch their heads as to how this detailed task-by-task entry (and

many other entries) could be construed to constitute "block billing." The Court should reject the

State Defendants' unfounded and meritless "block billing" objections.

### b. The State Defendants Objections to Newly-Submitted Entries Also Fail

The State Defendants offer similar objections to many time entries that are new to

Plaintiffs' Second Motion for Attorneys' Fees. These objections fare no better.

Again, the vast majority of the State Defendants' objections to Plaintiffs' new time entries

are based on their erroneous claim that it constitutes block billing for a single entry to include

closely related and intertwined tasks. For example, the State Defendants claim that several time

entries from Bruce Spiva that contain the description "review and comment [on a particular brief]"

are examples of block billing. *See e.g.*, at row 3111 ("Review and comment on revised motion to

dismiss or affirm); row 3115 ("Review and comment on brief in support of Plaintiffs' remedial

plan); row 3118 ("Review and comment on our opposition to intervenors' remedial brief); row 3120 ("Review and comment on brief in opposition to motion to stay;) row 3121 ("Review and comment on our stay opposition brief"); row 3125 ("Review and comment on remedy brief"). Again, it makes little sense for an attorney who is simultaneously reviewing a brief and providing feedback on it to use two separate timers to delineate between time they are reading the brief and time they are drafting revisions to that brief. This work is performed holistically and concurrently and is appropriately billed in a single entry.

Similarly, the State Defendants contend that time entries containing the description "prepare for and participate in [a particular conference call or meeting]" are block billing. *See e.g.*, row 3163 ("Prepare for and attend team strategy meeting"); row 3164 ("Prepare for and participate in conference call with opposing counsel regarding case schedule"); row 3176 ("Prepare for and participate in telephonic status conference with court"). But the tasks of preparing for a meeting and participating in that meeting are closely related and appropriately consolidated. Even more absurd, Defendants object to numerous time entry descriptions that contain the description "research and draft [a particular brief]," despite the fact that the two tasks are virtually inseparable.[3]

It is not "block billing" for an attorney to delineate "related tasks" in a single entry, even for entries that "contain a significant period of time." *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1043 (C.D. Cal. 2012). As one court explained:

> [T]he mere fact that an attorney has included more than one task in a single billing entry is not, in itself, evidence of blockbilling. When those tasks are

---

[3] There is no firm delineation between researching and drafting a brief. Given the availability of online databases, it is typical that an attorney will look up cases to support particular propositions while in the midst of drafting, rather than spending X block of time conducting research and Y block of time on the drafting process.

intertwined, including a thorough description of the activities performed clarifies, rather than obscures, the record.

*Williams v. R.W. Cannon, Inc*., 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009). Thus, courts routinely reject "block billing" challenges of the kind the State Defendants lodge here. *See, e.g*., *Coty Inc. v. Excell Brands, LLC*, No. 15-CV-7029 (JMF), 2017 WL 4159929, at *2 (S.D.N.Y. Sept. 18, 2017) (collecting cases and rejecting challenge to entries such as a seven hour entry reading: "preparation for 'joint case management conference statement; conference with [Dan Stormer] re: same; research issues for joint status conference statement'"); *Pierce*, 905 F. Supp. 2d at 1043 (rejecting challenge to entries in which, for example, counsel prepared for multiple depositions, reviewed related documents, and conferred with co-counsel regarding the depositions); *Wise v. Kelly*, 620 F. Supp. 2d 435, 451 (S.D.N.Y. 2008) (noting that it is appropriate for a single entry to address "more than one task related to a single general task" and that it is "unreasonable to expect" that tasks such as multiple communications on the same day about the same general topic to "be broken down into separate time entries"); *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr*., 646 F. Supp. 2d 1206, 1216-17 (E.D. Cal. 2009) (refusing to diminish lodestar where "the vast majority of the block-billing identified by defendant involves the grouping of highly related tasks that rarely cover more than a few hours").

The parties have now briefed the State Defendants' "block billing" objections on two separate occasions. The State Defendants still have not cited a single case that actually supports their interpretation of "block billing." The State Defendants do cite to *Page*, claiming that case supports their requested 20% "for the reasons discussed" in their opposition to Plaintiffs' first fee motion. *Page* is inapposite. The *Page* court deducted certain amounts from the plaintiffs' fee petition as "block billing" based on the attorneys' failure to delineate the time spent on particular tasks. *See, e.g*., *Page v. Va. State Bd. of Elections*, No. 3:13-cv-678, Dkt. No. 112-4. As review of

the file in *Page* shows, there *were* instances where counsel in *Page* admittedly did block bill.[4] When the *Page* court imposed a 20% reduction on fees as a result, counsel took that direction to heart. Plaintiffs' counsel conformed their time entries here to comply with the instruction from the *Page* court. The State Defendants' "block billing" objections are meritless.

### 2.     The State Defendants' Vagueness Objections Are Meritless

Finally, the Court should reject the State Defendants' "vagueness" objections to Plaintiffs' counsels' time entries. Plaintiffs will not exhaustively review each and every challenged entry, which are generally a re-hashing of some of the arguments Defendants made in their opposition to Plaintiffs' First Motion, but instead provide examples of why the Court should reject the State Defendants' request to reduce Plaintiffs' requested award.

At the outset—and rather ironically—the basis on which the State Defendants determined a given time entry was or was not "vague" is often vague. For instance, the State Defendants assert that the entry "Perform research for SCOTUS brief" is vague but that the time entries "Research related to SCOTUS brief" and "Perform legal research for SCOTUS brief" are *not* vague. *Compare* ECF No. 393-1 at 8 rows 2025-2027. The Court should not reduce entries for "vagueness" based on nothing more than the State Defendants' inconsistent say-so.

In any event, the State Defendants' specific objections are not well-founded. Most notably, the State Defendants object to numerous entries of: "Review and analyze documents for categorization and assessment." *See, e.g.*, Opp. at 6 n.16. The State Defendants raised this argument in their opposition to Plaintiffs' First Motion for Attorneys' Fees. And as Plaintiffs stated

---

[4] *See, e.g., id.* at 9 (entry for 1.3 hours stating "Confer with N. Manheim regarding document production coding issues for certain emails; email with legal team regarding finalizing document production; review and revise draft discovery responses; listen to voicemail from M. McDonald regarding Defendants' expert report; review objections filed to our discovery requests; review Defendants' expert report; email J. Devaney regarding same").

in reply the first time, the purpose of these entries is obvious on their face, and Plaintiffs explained these entries further. *See* ECF No. 254 at 10-11. To repeat: All entries with this description are for timekeepers who, as explained in the Hamilton Declaration accompanying Plaintiffs' motion, are document review attorneys who were tasked with reviewing materials "produced to Plaintiffs by the Commonwealth of Virginia and Defendant-Intervenors in response to discovery and public records requests." ECF No. 387 ¶ 12. It is entirely reasonable for a party to review documents that are produced to it in order to determine their materiality to the case, whether when reviewing discovery responses initially or identifying exhibits for trial.

The same is true for the other supposedly "vague" entries identified by the State Defendants—the work is clear in context. For example, the State Defendants object to the following description of work from January 16, 2019: "Perform research for SCOTUS brief" because the particular Supreme Court brief the attorney was working on is not specified in that particular time entry. Opp. at 7 n. 19. But in the context of the case and other time entries on that date and surrounding dates, it is clear that this time entry related to Appellees' merits brief before the Supreme Court, s*ee* ECF No. 386-1 at 242, which Plaintiffs filed on January 28, 2019. The time entry states a precise description of the attorney's work—she performed legal research on an issue related to Plaintiffs' Supreme Court brief.

That the State Defendants may not have taken the time to review Plaintiffs' time entries in the context of the docket may be understandable. There are thousands of detailed time entries and they are tedious enough to read standing alone. Perhaps they could even be described as "boring." But the detail is essential and the State Defendants' failure to closely review them in context hardly renders them "vague," much less warrants denial of recovery for this time. *Doe v. Rector*, No. 1:15-cv-209, 2016 WL 3480947, at *5 (E.D. Va. June 21, 2016) (rejecting challenge to time entries

where concededly "more detail might have been provided" as the entries identified the general subject matter of the work and thus were "in significant respect adequate").

In sum, the State Defendants ask too much of Plaintiffs' counsel. If the State Defendants' position was correct, counsel would be compelled to spend more time drafting billing narratives than performing legal work, writing entries with particular details about each email they sent and telephone conversation they had. This is not the law. The voluminous 251 pages of billing records Plaintiffs have submitted are thorough, detailed, and provide no basis for diminution of the lodestar.

**D.      Plaintiffs Are Entitled to Their "Fees on Fees"**

A prevailing party is entitled to recover its "'fees on fees'—that is, an award of fees incurred in litigating the question of fees." *See Mercer v. Duke Univ.*, 401 F.3d 199, 202 n.3 (4th Cir. 2005) (citing *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995) ("[I]t is well-settled that the time spent defending entitlement to attorney's fees is properly compensable under § 1988 . . . .")).

Here, Plaintiffs' counsel, after exercising billing discretion, request recovery for a total of 54.80 hours adjusting for the Richmond rates. Plaintiffs seek to recover an additional $32,785 in fees for work in preparing the current fee petition and cost bill and this reply. These time entries are attached as Appendix B to this reply.[5]

These fees are reasonable. Preparing the fee petition and separately-filed cost bill required Plaintiffs to (1) gather, organize, and review more than four years of records; (2) prepare a cost

---

[5] In conjunction with their opening motion, Plaintiffs included some time entries related to the "fees on fees" incurred by Plaintiffs in preparing their August 2018 reply in support of their first fee petition. For the Court's convenience, Plaintiffs have included these earlier fee-related entries on Appendix B to this reply, so the Court can see the total "new" time requested for fees-on-fees since Plaintiffs prepared their original fee petition in mid-2018. In all, this includes 72.70 hours of work and $45,715.50 in requested fees.

bill; and (3) prepare a fee petition with accompanying declaration and appendices, which included both briefing and a substantial investment of time to exercise appropriate billing discretion for thousands of time entries. This was a substantial amount of work, Plaintiffs have written off much of it, and Plaintiffs' "fees on fees" as requested are appropriate.

**E.     Conclusion**

The Commonwealth made Plaintiffs fight long and hard for their victory. It made them endure multiple elections held under an unconstitutional districting plan. And now the bill is due. The Court should grant Plaintiffs' fee award and cost bill in full, and award Plaintiffs original request of $4,084,101.25 in fees, $489,096.35 in expenses, and $223,832.06 in costs, and $32,785 for additional "fees on fees" incurred preparing this fee petition.

DATED: September 5, 2019

By: */s/ Aria C. Branch*

    Marc Erik Elias (admitted *pro hac vice*)
    Bruce V. Spiva (admitted *pro hac vice*)
    Aria Branch (VSB # 83682)
    **PERKINS COIE** LLP
    700 Thirteenth Street, N.W., Suite 600
    Washington, D.C. 20005-3960
    Telephone: 202.434.1627
    Facsimile: 202.654.9106

    Kevin J. Hamilton (admitted *pro hac vice*)
    Abha Khanna (admitted *pro hac vice*)
    Ryan Spear (admitted *pro hac vice*)
    William B. Stafford (admitted *pro hac vice*)
    **PERKINS COIE** LLP
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone: 206.359.8000
    Facsimile: 206.359.9000

    *Attorneys for Plaintiffs*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of September, 2019, I filed the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing to

the counsel of record in this case.

By */s/ Aria C. Branch*
Aria C. Branch (VSB #83682)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
ABranch@perkinscoie.com

*Attorneys for Plaintiffs*

21

145602371.2