IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| GOLDEN BETHUNE-HILL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA STATE BOARD OF | ) | Civil Action No. 3:14-cv-00852-REP-AWA- |
| ELECTIONS, et al., | ) | BMK |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| M. KIRKLAND COX, SPEAKER OF THE | ) | |
| HOUSE OF DELEGATES, and THE | ) | |
| HOUSE OF DELEGATES, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' REVISED SECOND MOTION
FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

Pursuant to this Court's order dated September 25, 2019 (ECF No. 399), defendants

submit this response (and the attached Exhibit 1) to plaintiffs' revised second motion for

attorneys' fees and litigation expenses. See Pls.' Memo. in Supp. of Second Mot. for Attorneys'

Fees and Litigation Expenses (ECF No. 402) (Plaintiffs' Brief).

Defendants acknowledge that plaintiffs are prevailing parties who are entitled to recover

reasonable fees and costs in connection with this litigation. Defendants dispute only the amounts

sought and whether those amounts may properly be recovered from defendants.[1]

---

[1] Defendants take no position about whether plaintiffs may recover fees or costs against
any other person or entity, including intervenor-defendants M. Kirkland Cox and the House of
Delegates.

Plaintiffs seek to recover from defendants more than $4.8 million in attorneys' fees, costs, and expenses, consisting of "at least $4,115,893.75 in attorneys' fees[,] $489,096.35 in litigation expenses," and "$223,832.06 in costs." Plaintiffs' Brief at 2. Those amounts should be reduced for three reasons. *First*, binding Fourth Circuit precedent establishes that defendants are not properly charged for fees and expenses incurred by plaintiffs in litigating against the intervenor-defendants' extrajurisdictional efforts to unilaterally appeal this case to the Supreme Court. *Second*, plaintiffs have failed to satisfy their burden of establishing the reasonableness of their request for substantial hourly rate increases for the same attorneys during the life cycle of this single case. *Third*, plaintiffs' time entries contain numerous examples of vagueness and block billing.

1. On July 19, 2018, Virginia's Attorney General announced—both publicly and in a filing with this Court—that neither defendants nor the Commonwealth would appeal this Court's liability ruling. Defs.' Opp'n to Intervenor-Defs.' Mot. to Stay Inj. Pending Appeal Under 28 U.S.C. § 1253 (ECF No. 246) at 1–2.[2] From that point on, defendants took no steps to challenge plaintiffs' victory or to support intervenor-defendants' attempts to do so. To the contrary, defendants actively resisted those efforts, arguing at each and every stage that no stays should be granted and the appeals should be dismissed "because the Intervenor-Defendants lack standing to appeal." *Id.* at 2.[3] The Supreme Court agreed with defendants, "dismiss[ing] [intervenor-

---

[2] Accord *Herring Urges General Assembly to Eliminate Racial Gerrymandering in House of Delegates Districts as Quickly as Possible* (July 19, 2018), https://www.oag.state.va.us/media-center/news-releases/1233-july-19-2018-herring-urgesgeneral-assembly-to-eliminate-racial-gerrymandering-in-houseof-delegates-districts-as-quickly-as-possible (same).

[3] Accord State Appellees' Mot. to Dismiss, *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019) (No. 18-281) (filed Oct. 9, 2018); State Appellees' Resp. in Opp'n to Appellants' Emergency App. for Stay Pending Resolution of Direct Appeal to this Court, *Virginia House of Delegates, supra* (No. 18A629) (filed Dec. 20, 2018); Br. of State Appellees, *Virginia House of Delegates, supra* (No. 18-281) (filed Jan. 28, 2019).

defendants] appeal for lack of jurisdiction" on the precise ground that defendants had urged from the start. See *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1956 (2019); *id.* at 1951 ("We find unconvincing [intervenor-defendants'] argument that [they] ha[ve] standing, either to represent the State's interests or in [their] own right").

Under the Fourth Circuit's decision in *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018), defendants may not be held liable for any fees, expenses, or costs associated with litigating against intervenor-defendants' unsuccessful attempts to appeal this Court's decisions. *Brat* was another voting rights case from Virginia, and the district in question was for the United States House of Representatives.[4] There, like here, the defendants "determined not to appeal, but the Intervening Congressmen did." *Id.* at 477. From that point on, the defendants "not only declined to pursue [an] appeal, but *actively made arguments in support of Plaintiffs' position*," *Personhuballah v. Alcorn*, 239 F. Supp. 3d 929, 945 (E.D. Va. 2017), *vacated and remanded sub nom. Brat*, 883 F.3d 475, arguing that the Supreme Court should "affirm the district court's order on the merits." *Brat*, 883 F.3d at 479. "In a unanimous decision, . . . the Supreme Court determined that none of the Intervening Congressmen had standing and dismissed the appeal." *Id.* (citing *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016)).

After holding that the intervenors could not be held liable for fees and costs under the facts of that case, see *Brat*, 883 F.3d at 479–84, the Fourth Circuit addressed the proper standards for determining which fees and costs were—and which were not—properly charged to the defendants. The Court noted that it had previously held that "'*intervention-related fees and expenses* . . . are not recoverable . . . by a prevailing plaintiff against a losing defendant,'" and it saw "no reason not to apply that holding also to the intervention-related fees incurred *in actually*

---

[4] Many of the lawyers who represented the plaintiffs in *Brat* also represent the plaintiffs in this case. See *Brat*, 883 F.3d at 476 (listing counsel).

*litigating* against the intervenors' positions." *Id.* at 484 (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 178 (4th Cir. 1994)). Accordingly, the Fourth Circuit "conclude[d] that the Commonwealth cannot be held liable for attorneys fees and costs incurred by the plaintiffs in litigating against the entry of the Intervening Congressmen *or against the Intervening Congressmen's positions*," and it remanded for this Court to determine the amount of fees and costs for which the defendants were responsible under the appropriate standards. *Id.* (emphasis added).[5]

*Brat* is controlling here. Once the defendants announced that they would not appeal, any "fees and costs incurred by the plaintiffs" in connection with that appeal were spent "litigating . . . against" the intervenor-defendants, not defendants. *Brat*, 883 F.3d at 484.[6] Defendants therefore cannot be held liable for any fees and costs related to the second Supreme Court appeal.

Plaintiffs' suggestion that the Court award the entire requested fee against defendants "and leave it to the internal workings of state government" to determine how those fees will be allocated misreads the clear rule adopted in *Brat*. Plaintiffs' Brief at 26. In holding that

---

[5] On remand in *Brat*, plaintiffs did not seek fees from defendants associated with the intervenor-defendants' appeal. See *Personhuballah v. Alcorn*, No 3:13-cv-678, ECF No. 345 (E.D. Va. Mar. 22, 2018) (noting that the defendants paid the fees as awarded in the panel's initial order—which did not assign fees for the appeal—and plaintiffs "advised that they will not seek further attorney's fees from the defendants").

[6] For the same reason, defendants are not responsible for fees, expenses, or costs related to intervenor-defendants' unilateral efforts to appeal this Court's remedial order to the Supreme Court, an effort that defendants again successfully opposed on the ground that intervenor-defendants lacked standing to appeal. See State Appellees' Mot. to Dismiss, *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 2715 (2019) (No. 18-1134) (filed Apr. 1, 2019) (arguing that the intervenor-defendants lacked standing to appeal); *Virginia House of Delegates*, 139 S. Ct. 1945, 1950 n.1 (2019) ("The House's claim to standing to pursue an appeal from the remedial order fares no better than its assertion of standing [to appeal the liability order]."); *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 2715, 2715 (2019) (intervenor-defendants' appeal from remedial order "dismissed for want of jurisdiction").

"intervention-related fees and expenses . . . are not recoverable under 42 U.S.C. § 1988 by a prevailing plaintiff *against a losing defendant*," *Brat*, 883 F.3d at 484 (emphasis added), the court of appeals did not discuss the relationship between the defendant and the intervenors. And contrary to plaintiffs' suggestion, nothing in the court's decision suggests that *intervenor-defendants'* status as public officials somehow makes *defendants* liable for fees that are otherwise barred. See *id.*[7] What is more, fees and expenses cannot be awarded "against the Commonwealth" generally (see Plaintiffs' Brief at 20), because the Commonwealth of Virginia is not a party to this litigation. Any fee award here can be made only against the named defendants (who actively resisted intervenor-defendants' second round of appeals) or against the intervenor-defendants (who initiated and litigated those appeals). See *In re Crescent City Estates, LLC*, 588 F.3d 822, 827 (4th Cir. 2009) (noting that non-parties "are generally outside the ambit of fee-shifting statutes").[8]

---

[7] Again, defendants take no position on whether that status bears on plaintiffs' ability to recover fees from intervenor-defendants.

[8] Plaintiffs' cursory judicial estoppel suggestion (see Plaintiffs' Brief at 20–21) also fails. Plaintiffs do not recite the elements of judicial estoppel, much less attempt to demonstrate they have been met. See *Martineau v. Wier*, 934 F.3d 385, 394, 397 (4th Cir. 2019) (emphasizing that "[w]hether . . . judicial estoppel should be invoked depends on the specific factual context of a case" and requires "consider[ing] all relevant factors" (internal quotation marks, brackets, and citation omitted)). In any event, the requirements for invoking judicial estoppel are not satisfied here. First, defendants' current position is not "clearly inconsistent" with any earlier one. *Id.* at 393. Defendants' argument was that the Supreme Court should dismiss intervenor-defendants' attempted appeal rather than simply proceed to the merits in part *because* "the State [was] going to have to pay the challenging party's attorney's fees if an appeal fails." Br. of State Appellees at 43–44, *Virginia House of Delegates, supra* (No. 18-281) (filed Jan. 28, 2019). But intervenor-defendants' attempted appeal neither failed nor succeeded—instead, it was, as defendants urged, dismissed for lack of jurisdiction. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (noting that, "[w]ithout jurisdiction the court cannot proceed at all in any cause"). Second, the Supreme Court was not "persuaded . . . to adopt" any position defendants previously took about plaintiffs' ability to recover appeal-related fees because the Court's opinion never mentions attorney's fees at all. *Martineau*, 934 F.3d at 393. Third, there is no prospect of "unfair advantage" to defendants or "unfair detriment" to plaintiffs because defendants' position all along was that intervenor-defendants' attempted appeals—which, after all, sought to challenge

In sum, defendants may not properly be charged for fees and expenses incurred in connection with intervenor-defendants' attempted appeals. Plaintiffs' request for fees and expenses should therefore be modified as follows:

(a) The requested fees should be reduced by $567,731.00—the $5,674.50 attributable to intervention-related tasks, plus the $562,056.50 attributable to litigating against intervenor-defendants' failed efforts to appeal to the Supreme Court.[9]

(b) The requested fees should also be reduced by $9,855.06 to account for time plaintiffs spent seeking to recover fees for intervention-related work.[10]

(c) The requested expenses should be reduced by $29,001.41.[11]

(d) The requested costs should be reduced by $11,067.05.[12]

---

judgments obtained by plaintiffs—were both unwarranted and procedurally improper. *Id.* (citation omitted). Finally, plaintiffs have not alleged—much less established—that defendants "*intentionally* misled [any] court to gain unfair advantage." *Id.* (citation omitted).

[9] See Plaintiffs' Brief, Appendix B (ECF No. 402-2) at 6, 223 (reflecting $5,674.50 as "Subtotal for Intervention Related," and $562,056.50 as "Subtotal for Second Appeal" (emphasis omitted)); Plaintiffs' Brief, Appendix C (ECF No. 402-3) at 1 (similar); Decl. of Kevin Hamilton (ECF No. 403) at 5, 7 (describing "Intervention-Related" category of work as referring to "[t]ime spent regarding initial request to intervene by Intervenor-Defendants" and "Second Appeal" category of work as referring to "[t]ime spent on Intervenors' appeal to the United States Supreme Court . . . .").

[10] Plaintiffs' supporting materials do not specify which portions of counsel's work on the fee petitions related to recovery of intervention-related fees. See Plaintiffs' Brief, Appendix B (ECF No. 402-2) at 223–227 (time entries describing work on fee petitions generally); Plaintiffs' Brief, Appendix C (ECF No. 402-3) at 1 (reflecting only one category for all work on "Fee Petitions"); Decl. of Kevin Hamilton (ECF No. 403) at 8 (similar). In the absence of more detailed information, defendants suggest reducing the amount requested for the fee petitions—$71,413.50—by 13.8% (which amounts to $9,855.06). This percentage is derived from the amount of the overall fee request attributable to intervention-related tasks and the second appeal ($567,731.00) as compared to the total fee requested for the entire litigation ($4,115,893.75).

[11] Calculated by adding amounts that post-date July 19, 2018, other than those clearly related to the remedial phase before this Court. See Plaintiffs' Brief, Appendix D (ECF No. 402-4) Rows 341–53, 834–897, 1631–1770, 1828.

2.      Plaintiffs bear the burden of establishing the reasonableness of their requested hourly rates. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate."). "The hourly rate is properly determined by applying the prevailing market rates in the relevant community for the type of work performed." *Page v. Virginia State Bd. of Elections*, No. 3:13-CV-678, 2015 WL 11256614, at *4 (E.D. Va. Mar. 11, 2015) (internal quotation marks and citation omitted).

Plaintiffs' requested hourly rates remain flat from 2014 to 2016 but then abruptly rise in 2017 and continue rising each year thereafter. See Decl. of Kevin Hamilton ¶ 25 (ECF No. 403). Defendants agree that the billing rates established in *Page v. Virginia State Bd. of Elections*, No. 3:13-CV-678, 2015 WL 11256614 (E.D. Va. Mar. 11, 2015), are appropriate for 2014, 2015, and 2016. Accord Plaintiffs' Brief at 14. But defendants do not believe that plaintiffs have satisfied the "burden . . . to establish the reasonableness of" a substantial mid-litigation increase in the same attorneys' hourly rates. *Plyler*, 902 F.2d at 277.

Plaintiffs seek to justify these increases based only on the "reality" that "counsels' billing rates are raised each year." Plaintiffs' Brief at 15. This Court rejected the same argument in the *Personhuballah* litigation, see 239 F. Supp. 3d at 951 (rejecting plaintiffs' assertion that their rate increases "reflect the reality that attorneys' billing rates generally are adjusted from year-to-year'"), and there is no reason for a different result here. As in that case, "Plaintiffs [here have] not come forward with any evidence 'that the adjustments are *reasonable* for the Washington D.C. and Seattle markets (where most of Plaintiffs' attorneys are based)—let alone for the relevant Richmond market.'" *Id.* (citation omitted) (emphasis added). Although plaintiffs cite the

---

[12] Calculated by adding amounts that post-date July 19, 2018, other than those clearly related to the remedial phase before this Court. See Pls.' Bill of Costs, Exhibit A (ECF No. 388-1) Rows 151–58.

fact that their actual billing rates increased during the relevant time period, see Plaintiffs' Brief at 14–15, that fact has no bearing on whether such increases are *reasonable* for the purposes of statutory fee-shifting. See *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (emphasizing that the purpose of the fee-shifting provision in Section 1988 is "to enforce the covered civil rights statutes, not to provide a form of economic relief to improve the financial lot of attorneys"). And even if it did, "evidence of extra-jurisdictional rate increases" is not sufficient to carry plaintiffs' burden as to prevailing rates in Richmond. *Personhuballah v. Alcorn*, 239 F. Supp. 3d at 951.

Nor does plaintiffs' reliance on the *Vienna Metro* matrix (see Plaintiffs' Brief at 15–16) justify the requested rate increases. Although some courts in this district have accepted rates within the *Vienna Metro* ranges as reasonable in certain circumstances, that matrix "comes from a district court opinion" and therefore "is not binding here." *Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 620 (E.D. Va. 2015); see also *Salim v. Dahlberg*, No. 115CV468LMBIDD, 2016 WL 2930943, at *6–7 (E.D. Va. May 18, 2016) (rejecting application of *Vienna Metro* matrix to justify requested rates). As plaintiffs acknowledge, that matrix is "generally considered by [courts in] the Alexandria division," further undermining its applicability in a case subject to Richmond rates. Plaintiffs' Brief at 16 n.8. Finally, even if the matrix did apply here, it offers only wide *ranges* of rates that *may* be reasonable under particular circumstances. See *id.* at 16 (range of $505-820 per hour for lawyers with 20+ years of experience). As the party seeking a fee award, plaintiffs still bear the burden of establishing that rates near the very *top* of those ranges are reasonable. See Decl. of Kevin Hamilton ¶ 25 (ECF No. 403) (requesting rates of $750 per hour in 2019 for three different timekeepers). Because plaintiffs have failed to meet that burden, the Court's decision to decline yearly rate increases in

*Personhuballah* applies equally here. *See* 239 F. Supp. 3d at 951 (applying rates in *Page* "[b]ecause Plaintiffs have not met their burden of establishing the reasonableness of an increase in rates").

Applying the 2016 rates to the hours billed after January 1, 2017 results in a further reduction to the requested attorneys' fee award of $297,032.80. Exhibit 1 to this document identifies the billing entries that should be reduced to the Richmond rate from *Page* and shows the reduced amounts for each time entry (highlighted in green).[13]

3.      Beyond the question of hourly rates, "[p]laintiffs [also] must demonstrate that the amount of hours sought to be compensated were reasonably expended on the litigation." *Page*, 2015 WL 11256614, at *8 (citation omitted). "[T]he Court must exclude from the lodestar figure all 'hours that are excessive, redundant, or otherwise unnecessary.'" *Id.* (citation omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* (citation omitted). "Extensive use of block billing or vague descriptions of tasks constitute inadequate documentation because these practices do not allow the Court to assess the reasonableness of time spent on specific tasks." *Id.*; accord *id.* at *10 ("It is well established that attorneys must 'describe specifically the tasks performed . . . .'" (citation omitted)). Block billing "is the practice of grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Id.* at *9 (internal quotation marks and citation omitted).

---

[13] As noted in Exhibit 1 (at page 278), this figure does not include a reduction for the hours attributable to intervention-related work, given defendants' request that those hours be deducted altogether. See *supra* at 2–6.

Plaintiffs' billing records fall short of showing that the 9,262.15 hours for which plaintiffs seek fees were reasonable or appropriate. See Decl. of Kevin Hamilton ¶ 25 (ECF No. 403).

a.      The records submitted by plaintiffs are vague and replete with block billing. A complete version of plaintiffs' billing records (modeled after plaintiffs' Appendix B, ECF No. 402-2) is attached as Exhibit 1 with highlighting to illustrate each instance of block billing (highlighted in red) and vagueness (highlighted in yellow). At the outset, it bears mention that plaintiffs' block billing is not always obvious. In many instances the description on its face appears to separate a particular person's work in tenth-of-an-hour increments. But in the numerous instances that are highlighted throughout Exhibit 1, plaintiffs combine multiple tasks in a single entry: "Telephone *conferences* [plural in original] regarding lawsuit (1.9)," Ex. 1 (Row 15) (emphasis added);[14] "Email *and* telephone conference regarding discovery responses," Ex. 1 (Row 344) (emphasis added);[15] and, ubiquitously, "Prepare for *and* participate in . . . .," Ex. 1 (Row 17).[16]

Consistent with this Court's order directing the parties to file revised briefs regarding plaintiffs' request for fees and expenses, defendants object to all of the highlighted entries in Exhibit 1 as a "category" of inadequately documented time. ECF No. 399 at 3. Defendants offer the following examples to illustrate how these issues prevent a proper evaluation of whether plaintiffs may recover their requested fee.

[14] See also, *e.g.*, Ex. 1 (Rows 140, 323, 2479, 2640, 2810, 2812) (entries grouping multiple conferences).

[15] See also, *e.g.*, Ex. 1 (Rows 68, 302, 328, 1037, 1944, 2723, 2790, 2806, 2812, 2823, 3474) (entries combining email and conference).

[16] See also, *e.g.*, Ex. 1 (Rows 242, 258, 275, 330, 500, 741, 950, 967, 996, 1001, 1257, 1329, 1571, 1900, 2295, 2643, 2656, 2948, 3110, 3341, 3398, 4043) (entries combining "prepare for" and "participate in" or "attend").

*First*, plaintiffs' billing records often conflict about what happened on a particular day. For example, on April 2, 2015, three attorneys participated in a conference. Their respective time entries suggest that the meeting lasted somewhere between "1.9" hours, "1.3" hours, and "1.2" hours. Ex. 1 (Rows 361, 362, 365). Compounding the discrepancy about how long the meeting lasted, two of the attorneys block billed the meeting as "prepare for and conference with" and "prepare for conference and confer," so it is unclear how much time they spent at the meeting and how much time was spent in preparation for the meeting. Ex. 1 (Rows 361, 365).[17] Additionally, each attendee remembered the meeting as addressing different topics: "deposition scheduling, expert reports and related issues"; "witness interviews, depositions, and case strategy"; and "depositions and document review issues." Ex. 1 (Rows 361, 362, 365). In short, it is impossible to determine what happened at that meeting, how long it went on for, and thus whether the time spent by plaintiffs was reasonable.

*Second*, attorneys frequently block billed for major events in the litigation, such as preparing for and taking or defending depositions. *E.g.*, Ex. 1 (Row 808) ("Prepare for *and* defend S. Ansolabehere deposition (8.0)" (emphasis added)); accord *id.* (Rows 540, 849, 2722, 2942). And while some attorneys properly separated those types of tasks, see *id.* (Rows 805–06) (separately accounting for time attending the deposition and time for preparation), the improper block billing pervades plaintiffs' records and prevents defendants or the Court from evaluating whether a reasonable amount of time was spent on key litigation tasks.

---

[17] This is not an isolated issue. See, *e.g.*, Ex. 1 (Rows 864-75) (showing a meeting about "document review" logistics or procedures lasting various amounts of time between ".5" and "1" hour); *id.* (Rows 750-51) (similar); *id.* (Rows 548, 550) (similar); *id.* (Rows 995-97) (similar); *id.* (Rows 1724-25) (similar); *id.* (Rows 1853-54) (similar); *id.* (Rows 1939-42) (similar); *id.* (Rows 2261-64) (similar); accord *id.* (Rows 442-47) (inconsistencies between attorneys about how many meetings were had about depositions and how long they lasted); *id.* (Row 454) (reporting an exchange of correspondence that is not reported by other participants).

*Third*, the billing records are full of vague entries that provide no context for what the person was actually doing in relation to the litigation, why their activities were required, or why the amount of time billed was necessary or appropriate. Some examples include: (1) "Manage discovery" without any explanation, *e.g.*, Ex. 1 (Rows 272, 354, 553, 861); (2) "Review and analyze documents for categorization and assessment," *e.g.*, Ex. 1 (Rows 878, 881–907, 909–13, 918–26, 929–45), with no context or explanation of what that phrase means; (3) "Review deposition" with no explanation of whose deposition was reviewed or why it was necessary, *e.g.*, Ex. 1 (Row 650); accord *id.* (Row 1452) ("Trial prep"); and (4) "Review case issue[s]" without any further description, see Ex. 1 (Rows 3, 1619). Absent appropriate context, it is impossible to know whether the time spent on those matters was reasonable (or even what some of these activities actually were).[18]

b.      Because plaintiffs' time records include significant block billing and vague descriptions, "an accurate determination of the reasonableness of the time expended" is not possible, and the requested award should be reduced accordingly. *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Courts often reduce fee awards "in one of two ways: (i) by identifying and disallowing specific hours that are not adequately documented, or (ii) by reducing the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." *Id.*; see also *McNeil v. Faneuil, Inc.*, No. 4:15CV81, 2017 WL 9771834, at *8 (E.D. Va. Nov. 8, 2017) ("The traditional remedy for block billing is to reduce the fee by a fixed percentage reduction."), *report and recommendation adopted*, No. 4:15CV81, 2018 WL 1411017 (E.D. Va. Mar. 21, 2018); *Page*,

---

[18] It is also apparent that plaintiffs at times billed excessive amounts of time for routine tasks. *E.g.*, Ex. 1 (Row 1416) ("1.1" hours to "[c]ontact judge's chambers for courtesy copy filing instructions").

2015 WL 11256614, at *10 ("This Court has recently imposed ten and twenty percent reductions in fee awards to account for block billing."). And as in *Page*, "the documentation defect" in this case "is sufficiently pervasive upon close review to warrant a substantial percentage reduction." 2015 WL 11256614, at *10.

At minimum, defendants believe that the 20% reduction imposed in *Page* for block billing is also warranted here. See *Page*, 2015 WL 11256614, at *10. As Exhibit 1 shows, plaintiffs' supporting materials do not include information necessary to establish that the requested fee award is reasonable. Many of the time entries provide no explanation for why a particular task was being performed and no context suggesting why it was necessary to the litigation. Although courts are permitted to deny a fee award in its entirety when presented with documentation that "do[es] not permit a fair evaluation of the time expended or the nature and need for the service," *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 575 (E.D. Va. 1988) (internal quotation marks and citation omitted), defendants suggest that the appropriate resolution here is to reduce the fee award by at least 20%. See *Guidry*, 442 F. Supp. 2d at 294 (referencing fee reduction of 35% for support staff and 25% for attorneys); *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 778 (E.D. Va. 2013) (applying 20% reduction due to inadequately documented time entries).

**DEFENDANTS' PROPOSED CALCULATION**

The chart below summarizes the reductions in attorneys' fees, expenses, and costs that defendants believe are warranted in light of: (a) the non-recoverability of fees, expenses, and costs for the Supreme Court phase; (b) plaintiffs' failure to establish the reasonableness of their hourly rates for 2017 and 2018; and (c) vague time entries and block billing.

13

| | |
|---|---:|
| Fee amount requested | $4,115,893.75 |
| Fees requested for intervention-related work (including intervenor-defendants' appeals) | -$567,731.00 |
| Portion of fee request attributable to seeking recovery of intervention-related fees | -$9,855.06 |
| Adjustment based on recalculating 2017, 2018, and 2019 billings at Richmond rates (see Ex. 1) | -$297,032.80 |
| **Fee subtotal after rate adjustment** | **$3,241,274.89** |
| | |
| 20% reduction for block billing/vague entries | -$648,254.98 |
| **Total fee award after appropriate reductions** | **$2,593,019.91** |
| | |
| Expense amount requested | $489,096.35 |
| Expenses after July 19, 2018 not related to remedial phase | -$29,001.41 |
| Costs requested | $223,832.06 |
| Costs after July 19, 2018 not related to remedial phase | -$11,067.05 |
| **Total appropriate award of fees, expenses, and costs** | **$3,265,879.86** |

## CONCLUSION

Defendants acknowledge that plaintiffs are entitled to a fee award but respectfully request that the Court apply significant reductions to plaintiffs' request for attorney's fees. After making necessary adjustments, defendants suggest that the amount awarded against defendants should be no more than $3,265,879.86 in total for fees, expenses, and costs.

Dated: November 25, 2019           Respectfully submitted,

By:     /s/ Jessica Merry Samuels
Jessica Merry Samuels, VSB # 89537
Assistant Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
solicitorgeneral@oag.state.va.us

Mark R. Herring           Toby J. Heytens
Attorney General           Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2019, a true and accurate copy of this paper was filed electronically with the Court's CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

By:   /s/ Jessica Merry Samuels
   Jessica Merry Samuels