# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GOLDEN BETHUNE-HILL, et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| VIRGINIA STATE BOARD OF ELECTIONS, et al., | ) Case No. 3:14-cv-00852 (REP-AWA- BMK) |
| Defendants, | ) |
| and | ) |
| EILEEN FILLER-CORN, SPEAKER OF THE VIRGINIA HOUSE OF DELEGATES, and VIRGINIA HOUSE OF DELEGATES, | ) |
| Intervenor-Defendants. | ) |

## INTERVENOR-DEFENDANTS' OPPOSITION TO PLAINTIFFS' FEE PETITION

Stuart A. Raphael (VSB No. 30380)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (703) 918-4018
sraphael@HuntonAK.com

Matthew R. McGuire (VSB No. 84194)
Trevor S. Cox (VSB No. 78396)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Telephone: (804) 344-8821
Facsimile: (804) 343-4630
mmcguire@HuntonAK.com
tcox@HuntonAK.com

*Counsel for Eileen Filler-Corn, Speaker of the Virginia House of Delegates, and the Virginia House of Delegates*

February 11, 2020

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

STATEMENT ..................................................................................................................................3

ARGUMENT ...................................................................................................................................4

I. Binding precedent precludes an award of fees or costs against Intervenor-Defendants. ..........................................................................................................................5

    A. The U.S. Supreme Court and the Fourth Circuit have held that attorneys' fees may not be awarded against intervenors unless they act frivolously, unreasonably, or without foundation. ....................................................................5

    B. Plaintiffs do not argue that Intervenor-Defendants' actions were frivolous, unreasonable, or without foundation, and any such argument would be meritless. ...........................................................................................................6

II. Plaintiffs are wrong that *Zipes* and *Brat* are distinguishable on the theory that Intervenor-Defendants are part of "the Commonwealth." .....................................................7

    A. Intervenor-Defendants have never represented the Commonwealth or its citizens in this case. ........................................................................................8

    B. Intervenor-Defendants did not enact or enforce the unconstitutional districting plan and relief could not have been ordered against them. ...................10

III. Intervenor-Defendants agree with Defendants that Plaintiffs are entitled to fees as prevailing parties, but their requested fee award should be reduced. ...............................12

CONCLUSION ..............................................................................................................................13

CERTIFICATE OF SERVICE ......................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bethune-Hill v. Va. State Bd. of Elections*,
   326 F. Supp. 3d 128 (E.D. Va. 2018) ................................................................3, 7

*Brandon v. Guilford Bd. of Elections*,
   921 F.3d 194 (4th Cir. 2019) ..............................................................................6

*Brat v. Personhuballah*,
   883 F.3d 475 (4th Cir. 2018) ..................................................................... *passim*

*Heald v. Granholm*,
   457 F. Supp. 2d 790 (E.D. Mich. 2006)..............................................................6

*I.N.S. v. Chadha*,
   462 U.S. 919 (1983)....................................................................................11, 12

*Indep. Fed'n of Flight Attendants v. Zipes*,
   491 U.S. 754 (1989)........................................................................... *passim*

*Mallory v. Harkness*,
   923 F. Supp. 1546 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997).......8, 9, 10

*Page v. Va. State Bd. of Elections*,
   No. 3:13-CV-678, 2015 WL 11256614 (E.D. Va. Mar. 11, 2015).........................12

*Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*,
   297 F.3d 253 (3d Cir. 2002).................................................................8, 9, 10

*Plyer v. Evatt*,
   902 F.2d 273 (4th Cir. 1990) ..............................................................................12

*Sixty-Seventh Minn. State Senate v. Beens*,
   406 U.S. 187 (1972)............................................................................................10

*Va. House of Delegates v. Bethune-Hill*,
   139 S. Ct. 1945 (2019).............................................................................. *passim*

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989).............................................................................................4

**Constitutional Provisions**

Va. Const. art. III, § 1 .............................................................................................11

Va. Const. art. V, § 6 (a)-(b) .................................................................................................11

Va. Const. art. V, § 11 ...........................................................................................................11

**Statutes**

42 U.S.C. § 1983..................................................................................................................... 4

42 U.S.C. § 1988...................................................................................................................1, 5

52 U.S.C. § 10310(e) ...............................................................................................................1

Va. Code Ann. § 2.2-507(A)....................................................................................................10

# INTRODUCTION

Plaintiffs prevailed in this litigation, and no one disputes that they are entitled to an award of their reasonable attorneys' fees and costs. 42 U.S.C. § 1988; 52 U.S.C. § 10310(e). But that does not mean that Plaintiffs are entitled to recover all of their requested fees, or that they can recover fees from all of the parties to the case. With respect to Intervenor-Defendants, the U.S. Supreme Court—in *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989)—and the Fourth Circuit—in *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018)—have established a "categorical" rule that fees should be awarded "against losing intervenors *only* where the intervenors' action was *frivolous, unreasonable, or without foundation*." *Zipes*, 491 U.S. at 761 (emphasis added); *accord Brat*, 883 F.3d at 484 ("Since no party has suggested that the Intervening Congressmen have acted frivolously, unreasonably, or without foundation, [the Court] conclude[d] that they cannot be held liable for any of the plaintiffs' attorneys fees or costs under 42 U.S.C. § 1988(b) or 52 U.S.C. § 10310(e)."). Because Plaintiffs have not argued here that Intervenor-Defendants acted frivolously, unreasonably, or without foundation, no fees or costs can be awarded against them.[1]

Plaintiffs attempt to avoid the categorical rule in *Zipes* and *Brat* by blurring the critical legal distinctions between Defendants and Intervenor-Defendants. Plaintiffs' argument boils down to this: we are entitled to an award of fees from *the Commonwealth*, and it is irrelevant to

---

[1] It is not necessary for Intervenor-Defendants to take a position on whether Defendants could be ordered to pay the $617,654.52 Plaintiffs claim to have incurred after Defendants stopped defending the unconstitutional districting plan. *See* Dkt. No. 405, at 6. *Brat*, however, appears to establish that those fees and costs must be borne by Plaintiffs. *See Brat*, 883 F.3d at 484 ("The Commonwealth cannot be held liable for attorneys fees and costs incurred by the plaintiffs in litigating against the entry of the Intervening Congressmen or against the Intervening Congressmen's positions. Under the traditional American rule, the plaintiffs must bear those intervention-related fees.").

1

us whether the award is against Defendants or Intervenor-Defendants because they are both part of *the Commonwealth's* government and therefore are "blameworthy." *See* Dkt. No. 402, at 20–25. That argument fails for several reasons.

*First*, "the Commonwealth" is not a party to this case, so Plaintiffs are wrong that it is the "blameworthy party here" for purposes of fee allocation.[2] *See id.* at 23.

*Second*, the mere fact that Intervenor-Defendants are also "state actors" does not make them "*a representative for the State* responsible for enacting or enforcing the challenged statute." *Brat*, 883 F.3d at 484 (emphasis added). Intervenor-Defendants have never argued as a factual matter that they represent the Commonwealth or its citizens, and the U.S. Supreme Court recently held, as a matter of law, that Virginia's Attorney General is the only official in the Commonwealth with that authority. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ("Authority and responsibility for representing the State's interests in civil litigation, Virginia law prescribes, rest exclusively with the State's Attorney General . . . .").

*Lastly*, even if fees could be imposed against intervenors who "enact" or "enforce" an unconstitutional law, Intervenor-Defendants did neither with respect to House Bill 5005. Intervenor-Defendants represent one half of Virginia's bicameral legislature, which plays no part in enforcing a districting plan. Additionally, a single house of a bicameral legislature lacks the authority to enact law. Like the federal Constitution, the Constitution of Virginia requires bicameralism and presentment before a bill is enacted into law. The Intervenor-Defendants

---

[2] Intervenor-Defendants recognize that the Fourth Circuit referred to "the Commonwealth" in *Brat*, but that discussion was not indispensable to the holding and instead was a nomenclature adopted by the Court for ease of reference when comparing the intervening non-state entity (the U.S. congressmen) with the state defendants. *Brat*, 883 F.3d at 476–77 ("[Plaintiffs] named as defendants the Virginia State Board of Elections, some members of the Board in their official capacities, and the Attorney General of Virginia (collectively, 'the Commonwealth' or 'Virginia').").

alone can no more enact a law than could the Governor. So even under the broadest possible reading of *Brat*, Intervenor-Defendants are not "wrongdoers from whom plaintiffs could obtain relief." *Brat*, 883 F.3d at 483.

In sum, a straightforward application of *Zipes* and *Brat* demonstrates that no fees or costs can be awarded against Intervenor-Defendants.

## STATEMENT

This case has been litigated for more than five years, but most of its history is not relevant to the fee issue pending before the Court. The following events, however, are pertinent:

- On December 22, 2014, Plaintiffs filed their complaint alleging that House Bill 5005 created an unconstitutional racial gerrymander. Dkt. No. 1; *accord Bethune-Hill v. Va. State Bd. of Elections*, 326 F. Supp. 3d 128, 137 (E.D. Va. 2018). Plaintiffs named as Defendants the Virginia State Board of Elections and Department of Elections, as well as James B. Alcorn, Kimberly Bowers, Charlie Judd (collectively, the then-members of the Board of Elections), and Edgardo Cortés (the then-Chair of the Department of Elections), in their official capacities. *See generally* Dkt. No. 1.

- On January 23, 2015, Virginia's House of Delegates and its Speaker moved to intervene, and no party objected to that motion. *See generally* Dkt. No. 13. This Court granted the motion. Dkt. No. 26.

- On June 26, 2018, this Court concluded that "plaintiffs have shown . . . that race predominated over traditional districting factors in the construction of the 11 remaining challenged districts" and held that those districts therefore were unconstitutionally drawn. *Bethune-Hill*, 326 F. Supp. 3d at 137, 181.

3

- On July 6, 2018, Intervenor-Defendants noticed an appeal to the U.S. Supreme Court. Dkt. No. 236. But on July 19, 2018, the Attorney General announced that Defendants would not appeal this Court's ruling. *See* Dkt. No. 405, at 2 & n.2.

- On June 17, 2019, the U.S. Supreme Court, in a 5-4 decision, dismissed Intervenor-Defendants' appeal for lack of jurisdiction, concluding that Intervenor-Defendants did not have standing to appeal, either on behalf of the Commonwealth or based on their own particularized interests. *Va. House of Delegates*, 139 S. Ct. 1945.

**ARGUMENT**

Plaintiffs lump the House of Delegates and the Speaker together with the "Commonwealth" and complain that it was "the Commonwealth of Virginia that violated Plaintiffs' constitutional rights." Dkt. No. 402, at 20. But Plaintiffs are simply wrong—"the Commonwealth of Virginia" is not and never has been a party to this case. If Plaintiffs had sued the Commonwealth, the claim would have been dismissed because Virginia is not a "person" amenable to suit under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–66 (1989). It would thus be error to award fees against "the Commonwealth."

There are two entities against whom this Court might conceivably award fees: the actual Defendants—the state agencies and state executive-branch officials that enforce election-related laws in Virginia—and Intervenor-Defendants—one house of Virginia's bicameral legislature and its Speaker. Defendants have ably explained their view of what fees and costs can be awarded against them and took no position on whether fees could properly be awarded against Intervenor-Defendants. *See generally* Dkt. No. 405. No fees or costs can be awarded against Intervenor-Defendants under binding precedent.

4

I.  **Binding precedent precludes an award of fees or costs against Intervenor-Defendants.**

    A.  **The U.S. Supreme Court and the Fourth Circuit have held that attorneys' fees may not be awarded against intervenors unless they act frivolously, unreasonably, or without foundation.**

The U.S. Supreme Court has long held that fees may be imposed against intervenors in a lawsuit "only where the intervenors' action was frivolous, unreasonable, or without foundation." *Zipes*, 591 U.S. at 761.[3] Unless an intervenor has acted in bad faith, it is considered "blameless" and is not subject to fee liability. *See id.* In establishing that "categorical" rule, the Court fully recognized that "the inability generally to recover fees against intervenors [could] create some marginal disincentive" for plaintiffs contemplating litigation. *Id.* at 761–62. But the Court found that "other considerations" nonetheless weighed in favor of a categorical rule. *Id.* Those "other considerations" included that "losing intervenors . . . have not been found to have violated anyone's civil rights," *id.*, and that "[i]ntervention that is in good faith" is intended to "protect[] legal rights," including "constitutional rights," *id.* at 765. Lastly, the Court made clear that the mere fact "that an intervenor can advance the same argument as a defendant does not mean that the two must be treated alike for purposes of fee assessments." *Id.* It thus makes no difference whether a defendant's and an intervenor's positions in a case diverge—all that matters for determining fee liability is whether the intervenor acted frivolously, unreasonably, or without foundation.[4] *See id.* at 766.

---

[3] Although *Zipes* involved a different fee-shifting statute, the Court made clear that its holding applied to 42 U.S.C. § 1988, which uses "similar language." *Zipes*, 491 U.S. at 758 n.2.

[4] Because *Zipes* expressly authorizes an award of attorneys' fees and costs when an intervenor acts in bad faith, the hypothetical bad actors that Plaintiffs fear, *see* Dkt. No. 402, at 24, would not be immune from fee liability if they intervened solely to negate such liability.

In *Brat*, a case strikingly similar to this one, the Fourth Circuit applied *Zipes* to hold that fees could not be awarded against the intervenors. *Brat*, 883 F.3d at 484. In concluding that the intervenors were not liable for fees, the Court stated that "[u]nder the categorical rule announced in *Zipes*, it is apparent that the [intervenors] in this case were 'blameless' intervenors (*i.e.*, persons not charged with violating the law) and therefore should not have been assessed attorneys fees under the fee-shifting statutes in question." *Id.* at 481. Moreover, the court reiterated that it was irrelevant that the intervenors "presented the same arguments as the Commonwealth"—"that fact does not mean that the two must be treated alike for purposes of fee assessments." *Id.* at 481–83 (citation omitted). "[B]ecause no party contend[ed] that the [intervenors'] actions were frivolous, unreasonable, or without foundation," the court concluded that "the [intervenors] should not, under *Zipes*, have been assessed with payment of any of the attorneys fees and costs awarded to the plaintiffs." *Id.* at 482; *see also Brandon v. Guilford Bd. of Elections*, 921 F.3d 194, 201–02 (4th Cir. 2019) (stating that the prevailing plaintiffs "will not be entitled to recover fees attributable to the intervenors' involvement" (citing *Brat*)); *Heald v. Granholm*, 457 F. Supp. 2d 790, 793 (E.D. Mich. 2006) ("*Zipes* is the controlling authority. Under that case, plaintiffs are not entitled to an award of attorney fees from the intervenor because the intervenor entered the case to protect its own legitimate interests and its litigation position was not frivolous, unreasonable, or without foundation.").

    **B.**    **Plaintiffs do not argue that Intervenor-Defendants' actions were frivolous, unreasonable, or without foundation, and any such argument would be meritless.**

Crucially, Plaintiffs do not argue that Intervenor-Defendants acted frivolously, unreasonable, or without foundation. *See* Dkt. No. 402, at 20–25. That omission is unsurprising, because there is simply no basis for finding that Intervenor-Defendants acted in bad faith in this case. Before this Court, Intervenor-Defendants presented a reasonable defense under existing

6

law, which one member of the Court found persuasive. *Bethune-Hill*, 326 F. Supp. 3d at 181, 227 (Payne, J., dissenting). Intervenor-Defendants' merits defense of the previous districting plan thus was not frivolous, unreasonable, or without foundation.

Similarly, there is no basis for concluding that Intervenor-Defendants' appeal to the U.S. Supreme Court was taken frivolously, unreasonably, or without foundation. Until the Supreme Court issued its decision, it was debatable whether Intervenor-Defendants had standing on their own to appeal from an adverse judgment. Although the U.S. Supreme Court found that they lacked standing to appeal, that was far from an obvious outcome, as suggested by the 5–4 split among the Justices. *Va. House of Delegates*, 139 S. Ct. at 1956–59 (Alito, J., dissenting, joined by Roberts, C.J., and Breyer & Kavanaugh, JJ.). Plainly, Intervenor-Defendants did not act in bad faith in seeking to appeal this Court's decision.[5]

A straightforward application of the categorical rule announced in *Zipes* and applied in *Brat* thus precludes an award of fees or costs against Intervenor-Defendants.

## II. Plaintiffs are wrong that *Zipes* and *Brat* are distinguishable on the theory that Intervenor-Defendants are part of "the Commonwealth."

Plaintiffs argue that this case is not controlled by *Zipes* and *Brat* because, unlike the intervenors in those cases, Intervenor-Defendants are part of the same government as Defendants. *See* Dkt. No. 402, at 23. Plaintiffs rely heavily on how *Brat* distinguished two cases, one from the Third Circuit and the other from the Southern District of Florida: "*in both*

---

[5] In its September 25, 2019 Order, the Court instructed Intervenor-Defendants to address "how, if at all, the decision of the Supreme Court of the United States in this matter dismissing the appeal for lack of standing on the part of the Intervenor-Defendant House of Delegates affects whether the Intervenor-Defendant House of Delegates is subject to a fee award." Dkt. No. 399, at 4. As discussed below, the closely divided Supreme Court as well as the Court's explanation of its holding, *see infra* Part II.A, demonstrate that fees cannot be awarded against Intervenor-Defendants consistent with *Zipes* and *Brat*.

7

*cases, the intervening party was a representative of the State responsible for enacting or enforcing the challenged statute*, not an independent third party who could not be charged with liability." *Brat*, 883 F.3d at 484. Even if the Fourth Circuit could expand an intervenor's liability for fees beyond the categorical rule established by the U.S. Supreme Court, Intervenor-Defendants are not "a representative of the State," nor did they "enact[] or enforc[e]" the challenged districting plan. *Id.* Indeed, as the Supreme Court found compelling in rejecting Intervenor-Defendants' "attempt to proceed . . . on behalf of the State" in that court, "[n]owhere in its [intervention] motion did the House suggest it was intervening as agent of the State." *Va. House of Delegates*, 139 S. Ct. at 1953. So even under Plaintiffs' preferred reading of *Brat*, Intervenor-Defendants cannot be "assessed attorneys fees under the fee-shifting statutes in question." *Brat*, 883 F.3d at 481.

### A. Intervenor-Defendants have never represented the Commonwealth or its citizens in this case.

Plaintiffs are wrong that Intervenor-Defendants are no different from the intervenors in *Planned Parenthood of Central New Jersey v. Attorney General of New Jersey*, 297 F.3d 253 (3d Cir. 2002), and *Mallory v. Harkness*, 923 F. Supp. 1546 (S.D. Fla. 1996), *aff'd*, 109 F.3d 771 (11th Cir. 1997) (per curiam), cases where the courts awarded fees against intervenors. Both cases involved intervenors that could actually represent the government under the law of each State.

In *Planned Parenthood of Central New Jersey*, the Third Circuit was asked to decide "whether the New Jersey Legislature is immune from liability for attorneys[] fees" in a case where "the state executive branch officials named as defendants in their official capacities refuse[d] to" defend the challenged statute. 297 F.3d at 264. The Third Circuit held that the legislature was "the functional equivalent of a defendant in the case—without it, there would be

8

no case," *id.* (emphasis added), and so the legislature could be held liable for attorneys' fees, *id.* at 257–58. Likewise, in *Mallory*, "[t]he named Defendants [state bar officials] declined to defend the challenged [Florida] statute and, as a result, the Attorney General of Florida and the National Bar Association intervened." 923 F. Supp. at 1550. The district court concluded that fees could be imposed on the Attorney General because he had intervened "*as a representative of the state*" and "cannot be 'innocent'" when "[t]he state enacted, enforced, and defended the unconstitutional statute." *Id.* at 1553 (emphasis added); *accord Brat*, 883 F.3d at 484 (explaining that *Mallory* "distinguish[ed] *Zipes* in a case where Florida's Attorney General intervened to defend a Florida law . . . where officials of the state bar association *refused to defend it*") (emphasis added).

*Planned Parenthood of Central New Jersey* and *Mallory* are distinguishable for the same reason given by *Brat*: under the applicable state law in those cases, the intervenors were serving as the official representative of the state that enacted and enforced the unconstitutional statute. Here, Defendants—the executive officials in Virginia tasked with enforcing the challenged law—defended the lawsuit through final judgment in this Court.[6] Moreover, Intervenor-Defendants never purported to intervene on behalf of the Commonwealth or it citizens, *Va. House of Delegates*, 139 S. Ct. at 1952–53 ("[A]s a factual matter the House *never indicated* in the District Court that it was appearing" "to represent the State's interests"—"*[n]owhere in its motion* did the House suggest it was intervening as an agent of the State." (emphasis added)), and the U.S. Supreme Court recently made clear that Intervenor-Defendants lack the legal authority

---

[6] The motions practice and appearances at trial demonstrate that Defendants fully participated in litigating this case. A concise summary of Defendants' consistent participation is presented in the Brief of State Appellees, *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019), *available at* https://tinyurl.com/v3rz6be.

9

to represent the Commonwealth under Virginia law. *Id.* at 1951 ("Authority and responsibility for representing the State's interests in civil litigation, Virginia law prescribes, rest exclusively with the State's Attorney General . . . ."); *see also* Va. Code Ann. § 2.2-507(A) ("*All legal service in civil matters for the Commonwealth . . . shall be rendered and performed by the Attorney General . . . .*") (emphasis added).[7]

Instead, Intervenor-Defendants stated that they were intervening to protect *their own unique interests* as the body that initially drew the challenged districts and that would be most directly affected by any decision changing the geographic boundaries of those districts. Dkt. No. 13, at 3–4 (citing *Sixty-Seventh Minn. State Senate v. Beens*, 406 U.S. 187, 194 (1972)). In short, *Planned Parenthood of Central New Jersey* and *Mallory* are not applicable here because this case would have been fully litigated regardless of whether Intervenor-Defendants participated and, unlike the New Jersey Legislature in *Planned Parenthood of Central New Jersey*, Intervenor-Defendants sought to protect their own special interests—not those of the Commonwealth.

### B.  Intervenor-Defendants did not enact or enforce the unconstitutional districting plan and relief could not have been ordered against them.

Relying on *Brat*, Plaintiffs further argue that Intervenor-Defendants are liable for fees because they are the "legislative body that passed the unconstitutional map"—the House of Delegates—"and the Speaker of the House." Dkt. No. 402, at 23. But that fact does not support a fee award even under the broadest possible reading of *Brat*. *Id.* at 22–23 (quoting *Brat*).

---

[7] Indeed, the Supreme Court expressly contrasted Virginia law on this score with New Jersey law, pointing out that there is "no New Jersey statutory provision akin to Virginia's law vesting the Attorney General with exclusive authority to speak for the Commonwealth in civil litigation." *Va. House of Delegates*, 139 S. Ct. at 1952.

10

Intervenor-Defendants—one house of Virginia's bicameral legislature and its Speaker—did not "enact[]" or "enforc[e]" the unconstitutional districting plan such that they could be held liable for a violation of Plaintiffs' constitutional rights. *Brat*, 883 F.3d at 483 ("[S]ection 1988 simply does not create fee liability where merits liability is nonexistent.") (citation omitted). Like the federal Constitution, the Constitution of Virginia requires separation of powers between the legislative, executive, and judicial branches. Va. Const. art. III, § 1. And also like the federal Constitution, the Constitution of Virginia imposes bicameralism and presentment requirements before a bill is "enacted" into law. *Id.* art. IV, § 11 (bicameralism); *id.* art. V, § 6(a)–(b) (presentment). In Virginia, "[n]o law shall be enacted except by bill," and "[n]o bill shall become a law unless, prior to its passage" it has been passed by both the House of Delegates and Senate in the prescribed manner. *Id.* art. IV, § 11. Moreover, "[e]very bill which passes the Senate and House of Delegates, before it becomes law, shall be presented to the Governor," who "may sign the bill," "may veto the bill," or "may recommend one or more specific and severable amendments to a bill." *Id.* art. V, § 6(a)–(b). Until the bicameralism requirement of Article IV, § 11 and the presentment requirement of Article V, § 6(a)–(b) are satisfied, no law has been "enacted."

Bicameralism and presentment requirements are not mere formalities—those requirements "are integral parts of the constitutional design for separation of powers." *I.N.S. v. Chadha*, 462 U.S. 919, 946 (1983). As the U.S. Supreme Court explained, "the Framers were acutely conscious that the bicameral requirement and the [presentment requirement] would serve essential constitutional functions." *Id.* at 951. In fact, these provisions "represent[] the Framers' decision that the legislative power of the [State] government be exercised in accord with a single, finely wrought and exhaustively considered procedure." *Id.*

11

In light of the bicameralism and presentment requirements, it is incorrect to say that Intervenor-Defendants "enacted" House Bill 5005, any more than a single legislator did so. To be sure, the House of Delegates was part of the enactment process, but it did not have the unilateral authority to change the election districts around the Commonwealth. Nor could Intervenor-Defendants "enforce" House Bill 5005. Enforcement was by the Defendants, Executive Branch officials tasked with managing Virginia's elections. So even if Plaintiffs were right that *Brat* expanded *Zipes*'s categorical rule and allowed fees to be imposed whenever an intervenor enacted or enforced an unconstitutional law, Intervenor-Defendants did neither with respect to the districting plan challenged here.

In short, there is no basis for awarding fees against Intervenor-Defendants.

## III. Intervenor-Defendants agree with Defendants that Plaintiffs are entitled to fees as prevailing parties, but their requested fee award should be reduced.

No one disputes that Plaintiffs are prevailing parties in this litigation who are entitled to an award of reasonable attorneys' fees. But as Defendants thoroughly explain in their opposition (and catalog in their exhibits), Plaintiffs' request for approximately $4.83 million in fees and expenses does not satisfy the standards set out by this Court and the Fourth Circuit. *See, e.g.*, *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (requiring Plaintiffs to demonstrate the reasonableness of their requested hourly rates); *Page v. Va. State Bd. of Elections*, No. 3:13-CV-678, 2015 WL 11256614, at *4, 8, 10 (E.D. Va. Mar. 11, 2015) (requiring Plaintiffs to demonstrate that the hours billed in the case were reasonable). Thus, even if it were permissible for fees to be awarded against Intervenor-Defendants, Plaintiffs' award should be substantially reduced for the reasons given by Defendants. *See generally* Dkt. No. 405, at 2, 14.

## CONCLUSION

Binding U.S. Supreme Court and Fourth Circuit precedent controls the issue here. Intervenors cannot be held liable for attorneys' fees and costs unless they have acted frivolously, unreasonably, or without foundation. Because Plaintiffs have made no such argument (nor could they in this case), this Court should not assess fees or costs against Intervenor-Defendants.

Respectfully submitted,

EILEEN FILLER-CORN, SPEAKER OF THE VIRGINIA HOUSE OF DELEGATES, and THE VIRGINIA HOUSE OF DELEGATES


By:   */s/ Matthew R. McGuire*
Matthew R. McGuire (VSB No. 84194)
Trevor S. Cox (VSB No. 78396)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Telephone: (804) 344-8821
Facsimile: (804) 343-4630
mmcguire@HuntonAK.com
tcox@HuntonAK.com

Stuart A. Raphael (VSB No. 30380)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (703) 918-4018
sraphael@HuntonAK.com

*Counsel for Eileen Filler-Corn, Speaker of the Virginia House of Delegates, and the Virginia House of Delegates*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

/s/
Matthew R. McGuire (VSB No. 84194)