IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>VIRGINIA STATE BOARD OF ELECTIONS, *et al.*,<br><br>       Defendants,<br><br>  v.<br><br>VIRGINIA HOUSE OF DELEGATES, *et al.*,<br><br>       Intervenor-Defendants | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**PLAINTIFFS' REPLY IN SUPPORT OF REVISED SECOND MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

## I. INTRODUCTION

All parties agree that Plaintiffs are the prevailing parties and are entitled to an award of fees, reasonable litigation expenses, and costs. There is and can be no dispute that fee awards in civil rights litigation such as this serve important ends. Courts recognize that not only does the availability of fees incentivize litigation to vindicate civil rights, the specter of fee-shifting deters governmental violation of civil rights and puts losing defendants on notice of the need to do better. *See, e.g.*, *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1232 (10th Cir. 2001) ("[A] public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct."); *O'Connor v. Huard*, 117 F.3d 12, 18 (1st Cir. 1997) (fee awards provide an incentive to attorneys to represent civil rights litigants and serve as a deterrent to future violations).

This is the context in which the State Defendants' and the Defendant-Intervenors' oppositions to Plaintiffs' fee petition must be read. The State Defendants seek to avoid paying a portion of the fees that they say are attributable to another branch of state government—Intervenors. Meanwhile, Intervenors—who are now also represented by the Attorney General's Office—claim they cannot be held liable for those fees either. So, they say, although a prevailing plaintiff *is* entitled to recover fees when a state violates his or her civil rights, and the Commonwealth of Virginia *did* enact a law that violated Plaintiffs' constitutional rights, *these* Plaintiffs cannot recover all their fees. Why? Because the House of Delegates dragged this case out through a meritless appeal to the Supreme Court.

The Court should not countenance this attempt by the Commonwealth to extricate itself from paying fees to which Plaintiffs are entitled. A state should not be allowed to inoculate itself from a fee award by swapping in one state actor to defend claims brought against another state

2

actor. A ruling to the contrary would undermine the operation of the attorneys' fee statutes in civil rights litigation, and is not compelled by *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018). The Court should award Plaintiffs their requested fees in full. Whether and how to allocate those fees between the State Defendants and Intervenors is a matter that lies squarely within the Court's discretion.

## II. ARGUMENT

As Plaintiffs have explained, they believe the Court can and should award their requested fees in full against the State Defendants. ECF No. 395 at 4-8; *see also* ECF No. 398. If the Court is inclined to do so, however, the Court has discretion to apportion some of Plaintiffs' fees to Intervenors for the reasons set out below.

**A.  The Legislative Body that Developed and Passed the Unconstitutional Act in Question Is Not A "Blameless" Intervenor: The Court Has Discretion to Award Fees Against Intervenors**

Stripped to its essence, the question presented by Intervenors' opposition is simple. Under *Independent Federation of Flight Attendants v. Zipes* and its progeny, fees cannot be awarded against a "blameless" intervenor. 491 U.S. 754, 761 (1989). Here, Intervenors are the body of state government—the House of Delegates (and its Speaker in his/her official capacity) who developed, drafted, and in the first instance passed the unconstitutional law that violated Plaintiffs' constitutional rights. Are *these* Intervenors "blameless" such that they should not be held accountable for Plaintiffs' fees incurred litigating against Intervenors' attempts to defend their unconstitutional actions? To ask that question is to answer it. A deeper analysis only drives the point home.

*Zipes* held that unless an intervenor has acted unreasonably or frivolously, courts cannot award fees against the intervenor. This makes good sense. The usual intervenor *is* "blameless"; they have intervened to vindicate a personal interest, but they "have not been found to have

3

violated anyone's civil rights." *Id.* at 762. Moreover, holding such intervenors exempt from paying a prevailing plaintiff's fees has no baleful side effects, because in any normal lawsuit where the plaintiff prevails, "there will also be a losing defendant who has committed a legal wrong. That defendant will . . . be liable for all of the fees expended by the plaintiff in litigating the claim against him." *Id.* at 761.

Here, by contrast, Intervenors argue that Plaintiffs cannot recover fees against them even though they clearly violated Plaintiffs' constitutional rights, and even though the State Defendants are simultaneously arguing that they cannot be held responsible for fees they attribute to Intervenors. As support for that unjust result, Intervenors rely wholly on *Brat*. But *Brat* cannot support the weigh Intervenors put on it.

Indeed, Intervenors' reliance on *Brat* poses a threshold problem for them. As Plaintiffs have argued, regardless of whether the State Defendants pay the entire amount or whether that amount is divided between the State Defendants and Intervenors, it is the Commonwealth that enacted the unconstitutional law in question that violated their constitutional rights; it is the Commonwealth that enforced that unconstitutional law in violation of Plaintiffs' constitutional rights; and, ultimately, it is the Commonwealth that will be paying Plaintiffs' fees. *Brat* says as much, which Intervenors attempt to explain away in a footnote. *See* ECF No. 415 ("Opp.") at 2 n.2. The *Brat* court aptly and accurately noted that the claims there had been brought against the "Commonwealth" of Virginia. *Brat*, 883 F.3d at 476-77. That was no mere slip of the judicial pen nor meaningless deployment of "nomenclature," as Intervenors would have it. Opp. at 2 n.2. The *Brat* court could not have been clearer: "The plaintiffs sued the Commonwealth for enacting an unconstitutional law . . . and they sought relief against the Commonwealth, the only party from whom they could obtain relief." *Brat*, 883 F.3d at 481. The State Elections Board and the Attorney

4

General—the defendants in *Brat*—did not personally "enact" the law in question. The *Commonwealth*, through its legislative process, did. Liability lay against the Commonwealth for doing so, and fees follow liability. That is what *Brat* says, and the same is true here.

Likewise, the *Brat* court's explanation of why the intervenors in that case could *not* be liable for fees explains why the House of Delegates *could* be held liable for fees here. The congressmen who intervened in *Brat* "were not alleged to have carried out the unconstitutional delineation of congressional districts—they were federal representatives who were not charged with any responsibility in the enactment of the state law." *Id.* Accordingly, plaintiffs in *Brat* could not have secured the relief they sought from those intervening congressmen because they "were legally unaffiliated with the government of the Commonwealth and therefore incapable of adopting a new redistricting plan, as the plaintiffs requested." *Id.*

Here, by contrast, Intervenors are plainly "affiliated" with the Commonwealth's government and plainly could have adopted a new districting plan. Indeed, after enjoining "the Commonwealth of Virginia" (not the specific State Defendants) from holding further elections under the unconstitutional enacted plan, the Court referred the matter of drawing a remedial map to the General Assembly because the House of Delegates (working with the Senate) is the Commonwealth actor with "primary jurisdiction" for drawing House districts. *See* ECF No. 235 at 1-2 ("The matter of providing a redistricting plan to remedy the constitutional violations found in this case is referred to the Virginia General Assembly for exercise of its primary jurisdiction.").

Intervenors' efforts to distance themselves from responsibility for violating Plaintiffs' constitutional rights only underscore why Plaintiffs' claims in this case lie against the Commonwealth such that fees can be awarded against either the State Defendants or Intervenors. Intervenors correctly note that Virginia has a bicameral legislature, and legislation must be

5

presented to the Governor prior to enactment. Opp. at 11. All this is unassailably true. That is, it *is* true that both the executive and legislative branches of the Commonwealth are complicit in the constitutional violation giving rise to Plaintiffs' fee award. Respectfully, the Commonwealth's argument amounts to little more than "because we are all responsible, none of us are responsible." How that excuses Intervenors for passing an unconstitutional districting plan is decidedly unclear.

This is not the first time that a court has considered this same basic fact pattern. In *Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 263-65 (3d Cir. 2002), the Third Circuit awarded fees against the New Jersey legislature after it intervened to defend a statute that the New Jersey Attorney General declined to defend. Intervenors attempt to distinguish *Casey* on the grounds that Intervenors here were not authorized to act on behalf of the Commonwealth. *Id.* at 9.[1] But this ignores the *Casey* court's rationale: "[W]hen a legislature steps out of its role and intervenes to defend a piece of (its) legislation, which the executive branch is not willing to defend, it becomes the functional equivalent of a defendant in the case and may be liable for attorneys' fees." *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 257-58 (3d Cir. 2002). That is what happened here. The executive branch refused to appeal this case, and Intervenors attempted to take up the cause, defending the law they had passed as if they were the original defendants.

Moreover, the fact that Intervenors did not even have standing to appeal does not, as Intervenors suggest, somehow absolve them of liability for Plaintiffs' fees. *See* Opp. at 9-10. The fact the Intervenors appealed and dragged out this litigation when *they did not even have standing* evinces that Intervenors acted unreasonably within the meaning of *Zipes* and *Brat*. That is a point

---

[1] Intervenors did claim they were acting on the Commonwealth's behalf, although the Supreme Court ultimately held they lacked authorization to do so. *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).

Plaintiffs have made before, contrary to Intervenors' incorrect assertion that "[c]rucially, Plaintiffs do not argue that Intervenor-Defendants acted frivolously, unreasonable [sic], or without foundation." *Compare* Opp. at 6, *with* ECF No. 402 at 25-26 ("If anything, a fee award against Intervenors would be more justified given the fact that Intervenors—the state actor responsible for violating Plaintiffs' constitutional rights—continued to litigate this case even when they plainly lacked authority under state law to do so.").

Intervenors are not blameless. They bear responsibility for Plaintiffs' constitutional injury. And after the State Defendants chose not to appeal, they did not act reasonably and with foundation in protracting this litigation. Their effort to stay the implementation of a remedial plan was rejected. Their effort to litigate on the Commonwealth's behalf was rejected. Their effort to litigate without a cognizable personal injury giving them standing was rejected. The Court has the power, and ample reason to exercise that power if it sees fit to do so, to award some portion of Plaintiffs' fees against Intervenors.

### B. The Court Should Not Reduce Plaintiffs' Fee Request

Finally, Intervenors baldly assert—without any substantive analysis or argument—that the Court should "substantially reduce[]" Plaintiffs' requested fees. Opp. at 12. Their only support is a cross-reference to the State Defendants' opposition brief. For all the same reasons Plaintiffs previously explained in reply to the State Defendants' opposition, the Court should not reduce Plaintiffs' fees further.

### III. CONCLUSION

For all the reasons stated above, the Court has discretion to award fees against Intervenors. It need not and should not accept the State Defendants' and Intervenors' heads-I-win, tails-you-lose efforts to extricate the Commonwealth from its responsibility for paying Plaintiffs' fees.

DATED: March 12, 2020

By: */s/ Aria C. Branch*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Aria Branch (VSB # 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2020, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

By */s/ Aria C. Branch*
Aria C. Branch (VSB #83682)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
ABranch@perkinscoie.com

*Attorneys for Plaintiffs*