IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GOLDEN BETHUNE-HILL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants, <br><br> v. <br><br> VIRGINIA HOUSE OF DELEGATES, *et al.*, <br><br> Intervenor-Defendants | Civil Action No. 3:14-cv-00852-REP-AWA-BMK |

**PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF REVISED SECOND MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

## I. INTRODUCTION

Pursuant to Court order dated March 18, 2020 (ECF No. 419), Plaintiffs submit this supplemental reply in support of their Revised Second Motion for Attorneys' Fees and Litigation Expenses. The State Defendants do not dispute—in their most recent filing or anywhere else—that Plaintiffs are the prevailing parties and thus are entitled to an award of fees, reasonable litigation expenses, and costs. Plaintiffs seek a total combined award of fees, reasonable litigation expenses, and costs of $4,828,822.16. The State Defendants concede that, at the very least, Plaintiffs are entitled to recover $3,265,879.86 in fees, expenses, and costs. Once again, however, the State Defendants seek a radical departure from the lodestar amount, this time asking the Court to slash Plaintiffs' request by roughly 33%.

Plaintiffs address the State Defendants' specific arguments below, but the starting point remains this: Plaintiffs are asking the Court to award in combined fees, expenses, and costs no more than what the State Defendants and Intervenors had *already* spent in fees *more than a year ago*, ECF No. 402 at 9 n.2—*before* the House of Delegates' appeal and before the complex and involved remedial phase. The attorneys representing the Commonwealth's executive and legislative branches were undoubtedly careful stewards of taxpayer dollars and litigated this case efficiently. Accordingly, Plaintiffs' counsel's request for a total fee, expense, and cost award in an amount the Commonwealth had spent over a year ago on its defense is undoubtedly reasonable.

Plaintiffs appreciate that their fee petition involves large numbers. That in no way suggests that Plaintiffs' fee petition is unreasonable. It reflects that Plaintiffs had to fight for *years* to win a case of significant factual and legal complexity defended by skilled counsel. It took Plaintiffs two trials, three Supreme Court appeals, and more than five years of litigation to get to this point. While the case was pending, elections proceeded under the unconstitutional enacted plan. Unsurprisingly, the results of the first (and only) election held under the Court's remedial plan suggest that African-

American voters took advantage of their new-found opportunity to elect candidates of their choice in constitutional districts.[1]

Although Plaintiffs request only a conservative lodestar award, Plaintiffs believe the results they secured in challenging a case of statewide and, indeed, national significance would warrant an upward adjustment to Plaintiffs' lodestar amount. Although the lodestar amount is presumed reasonable, the Court may "adjust the fee upward" upon consideration of a 12-factor test, the most crucial factor being the extent of the plaintiff's success. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *McAfee v. Boczar*, 738 F.3d 81, 88 n.5 (4th Cir. 2013). What is *not* warranted is the sweeping reduction the State Defendants seek.

It is thus unsurprising that none of the State Defendants' three specific objections to Plaintiffs' fee request and cost bill has merit. First, the State Defendants claim that Plaintiffs should not recover any fees, expenses, or costs relating to Plaintiffs' successful defense of the Intervenors' appeals in this matter. But Plaintiffs' claim is against the Commonwealth, their fees and costs will be paid by the Commonwealth, and it is of no moment whether it was the executive branch or legislative branch of the Commonwealth that appealed. Successful civil rights plaintiffs should not be whipsawed between different branches of state government. Second, the State Defendants again argue that Plaintiffs' requested fee increases between 2017-2019 are unreasonable, although they concededly fall within a range that this Court *has* found reasonable using the *Vienna Metro* framework. Finally, the State Defendants argue for at least an additional 20% reduction in fees because of alleged "block billing" and "vague" entries. But Plaintiffs' counsel billed individual

---

[1] Marie Albiges, *New maps were supposed to give Virginia's black voters more power. Tuesday's elections suggested it worked*, The Virginian-Pilot (Nov. 9, 2019, 11:00 AM), https://www.pilotonline.com/government/elections/vp-nw-redistricting-black-vote-20191109-3get2rhmzfc53iofcv2rcaveha-story.html.

tasks in six-minute increments, and the time records submitted with Plaintiffs' motion set out detailed narrative supporting Plaintiffs' fee request.

## II. ARGUMENT

**A. Plaintiffs Are Entitled to Recover Fees, Expenses, and Costs Litigating Against the Commonwealth, Including Those Relating to the Appeals Filed by the House of Delegates and Its Speaker**

The State Defendants take no position on whether the Court can or should award fees against Intervenors, but assert that the State Defendants cannot be held responsible for fees as of the date they ceased actively defending this case on its merits. ECF No. 405 at 2-6. Respectfully, the State Defendants are incorrect.

Defendants rely entirely on a selective reading of *Brat v. Personhuballah*, 883 F.3d 475 (4th Cir. 2018), but misread the case. Indeed, the State Defendants fail to address any of the points raised in Plaintiffs' fee petition as to why *Brat* is distinguishable or any of the other authority cited in the Court's September 25 order.

The State Defendants' argument boils down to their claim that the State Defendants and the Intervenors are different parties, and so the State Defendants cannot be held responsible for intervention-related fees. ECF No. 405 at 3. That is, although the State Defendants are executive branch actors and Intervenors are legislative branch actors, the State Defendants maintain that "the Commonwealth of Virginia is not a party to this litigation." ECF No. 405 at 5.

But Plaintiffs sued the State Defendants in their official capacity only. ECF No. 71 ¶ 20. Intervenors are the House of Delegates and the current Speaker of the House, proceeding in her official capacity only. *See* ECF No. 251.[2] "[S]uits brought against individual officers for injunctive

---

[2] The Current Speaker is Eileen Filler-Corn. ECF No. 418. Prior counsel for Intervenors made clear that the Speaker intervened in this lawsuit in the Speaker's official, rather than individual, capacity. See ECF No. 251.

4

relief are for all practical purposes suits against the State itself." *Hutto v. Finney*, 437 U.S. 678, 700 (1978).

It is thus entirely understandable and appropriate that when the Court found for Plaintiffs on the merits, it issued an order enjoining "the Commonwealth of Virginia"—not the specific State Defendants—from taking certain actions. *See* ECF No. 235 at 1 ("The Commonwealth of Virginia is hereby enjoined from conducting any elections after this date for the office of Delegate in the Commonwealth's House of Delegates in the Challenged Districts until a new redistricting plan is adopted[.]"). Plaintiffs' claim is and always has been presented against the Commonwealth. The procedural rules and principles of sovereign immunity waiver that led Plaintiffs to seek prospective relief against state agents in an official capacity under 42 U.S.C. § 1983 do not alter that reality. Simply put, the "Commonwealth" does not formally need to be named as a party in a lawsuit to recognize that all fees incurred by Plaintiffs litigating against the Commonwealth are recoverable. *Hutto*, 437 U.S. at 699-700 (rejecting argument that "even if attorney's fees may be awarded against a State, they should not be awarded in this case, because" the State was not "expressly named as a defendant" and holding instead that attorneys' fee awards may obtained either from the official in his or her official capacity, from the funds of the agency in question, or from the State directly).

It is for this reason that *Brat* is inapposite. As Plaintiffs explained in their fee petition, *Brat* did not address the issue presented here—whether a state remains liable for fees if one hand of the state stops defending a lawsuit while another hand of the state continues to mount a defense. Rather, *Brat* addressed only whether it was appropriate to award fees against non-state actors who had intervened to protect their own unique interests. *Brat*, 883 F.3d at 481. Having found that it was not appropriate to award fees against congressional representatives who "were not charged

5

with any responsibility in the enactment of the state law," *id.*, the *Brat* court further determined that the district court could not award fees against the state defendants that were incurred by the *Brat* plaintiffs litigating solely against the "innocent" third party intervenors.

That is a far cry from this case. The State Defendants are not individually responsible for paying Plaintiffs' attorneys fees; the Commonwealth of Virginia is. If the Court apportioned some of Plaintiffs' fees to Intervenors, the Speaker would not personally pay Plaintiffs' fees; the Commonwealth would. Either way, the same entity will pay Plaintiffs' fees, regardless of how the Commonwealth disburses the fee award. The Court thus can and should award Plaintiffs' fees against the State Defendants in their entirety, including all "intervention-related" fees and costs identified in Plaintiffs' fee petition. If the Court believes it appropriate to allocate some or all of the fee award more broadly to "the Commonwealth" it could do that as well.

By the same token, the fact that Intervenors are state actors responsible for violating Plaintiffs' constitutional rights also explains why, as set forth in Plaintiffs' fee petition and in Plaintiffs' initial reply brief, the Court has discretion to allocate fees to Intervenors in these circumstances. The Commonwealth is obligated to pay Plaintiffs' fees, and Plaintiffs defer to the Court's sound discretion as to whether to allocate fees against Intervenors in part or award fees against the State Defendants in full.

### B. The State Defendants' Remaining Objections to Plaintiffs' Fee Petition Are Meritless

The State Defendants also challenge the reasonableness of counsel's rates in 2017-2019 and supposed "vague" entries and "block billing."

#### 1. Plaintiffs Seek Reasonable Hourly Rates

The State Defendants do not challenge Plaintiffs' rates for 2014, 2015, and 2016. They argue, however, that counsel should be held to 2016 "Richmond" rates. As explained previously,

6

these "2016" rates are in fact 2014 rates awarded by the *Page/Personhuballah* court. The State Defendants thus effectively argue that Plaintiffs are not entitled to *any* rate increase during the five-year period in which this case has been pending.

Plaintiffs have offered sufficient justification for the rates they seek: They have provided the Court with counsels' biographical information, explained how they calculated the rates requested, and provided authority showing that Plaintiffs seek rates similar to those which the Court has approved in past cases for attorneys of similar experience. Indeed, the State Defendants acknowledge that all rates sought by Plaintiffs fall squarely within the *Vienna Metro* guidelines, and that while the *Vienna Metro* guidelines are more generally utilized by the Alexandria division, courts in this district have indeed, with respect to the work performed by Richmond-based counsel, "accepted rates within the *Vienna Metro* ranges as reasonable in certain circumstances." ECF No. 405 at 8; *see also Brundle ex rel. Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 258 F. Supp. 3d 647, 665-66 n.11 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019). To be sure, that matrix may not be *binding* on the Court, but it is undisputed that (a) Plaintiffs are seeking much lower rates than Plaintiffs' counsel actually charged; (b) with smaller annual rate increases than Plaintiffs' counsel actually had; (c) all resulting rates fall within a range that courts in this district have found reasonable; and (d) this case involved legally and factually complex litigation so significant that it resulted in two Supreme Court decisions and combined attorneys' fees of more than $10,000,000.

The State Defendants offer no explanation for why the *Vienna Metro* matrix should *not* be used here, and no argument for why Plaintiffs' counsels' biographies and/or performance in this case warrants an even more dramatic reduction of the rates actually charged by Plaintiffs' counsel

7

than what Plaintiffs already seek. The Court should award Plaintiffs the requested rate increases in 2017-2019.

### 2. Time Counsel Spent Obtaining a Successful Outcome Was Reasonable and the Court Should Not Reduce Plaintiffs' Conservative Lodestar Further

As explained in their opening brief, Plaintiffs seek a conservative lodestar amount. Prior to submitting their fee petition, Plaintiffs' counsel exercised billing judgment and wrote off 1,783.65 timekeeper hours, totaling $787,119.25 in fees—the equivalent of nearly a full year of work by an attorney billing roughly $441 per hour. Nonetheless, the State Defendants "persist," ECF No. 399 ¶ 8, in attempting to whittle down Plaintiffs' fee award by offering the same kind of "block billing" and "vague time entries" complaints they have offered before.

The Court informed the State Defendants in its September 25 Order that they could not rely on "examples" of these purported issues and would instead have to get specific, offering specific reasons for objections to specific entries or, at the very least, identifying a particular category of fees in which particular challenged entries fell. *See* ECF No. 399 ¶¶ 6-7. The State Defendants did not attempt to offer entry-specific narrative explanations for each of their objections. And rather than identify categories relating to "fees of the same kind," as directed by the Court, ECF No. 399 ¶ 7, the State Defendants responded by identifying two "categories" of their own objections—the "category" of supposed block billing and the "category" of supposed vague entries—and offering examples of each. *See* ECF No. 405 at 10. That is, they have offered precisely the same kind of blunderbuss, by-example objections the Court expressly found insufficient the last time round. The Court should reject these objections accordingly. In any event, the State Defendants' latest version of their objections fares no better.

There is no dispute that Plaintiffs distinguished between tasks on a day-by-day, task-by-task entry. The State Defendants' primary complaint remains that some time entries group together

8

time reasonably spent on interrelated tasks such as "preparing for" and "participating" in a telephone conference. The State Defendants similarly point out time entries that adequately describe the tasks completed and describe them as "vague." Upon examination, the State Defendants' broad challenges to Plaintiffs' alleged "block billing" and "vague" time entries fail, and their request for a 20% reduction in Plaintiffs' fees is unwarranted.

### a. The State Defendants' Block Billing Objections Are Meritless

There is a "'strong presumption' that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88-89 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). That said, a court can reduce the lodestar if a fee claimant either does not submit contemporaneous time records (Plaintiffs have) or where those records do not describe the work performed "with reasonable particularity" so that the court can determine whether hours were reasonably expended. *Am. Bird Conservancy v. U.S. Fish & Wildlife Serv.*, 110 F. Supp. 3d 655, 675 (E.D. Va. 2015) (quoting *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006)).

Where a party lumps together multiple, discrete tasks into a single lengthy time entry, it can make it difficult for the court to determine whether time spent was reasonably expended. This is true where, for example, every time entry reflects "only the total amount of time for each day . . . , with no breakdown of how that time was spent among often as many as four or five distinct tasks." *Project Vote/Voting for Am., Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012).

Ultimately, however, what matters is not how time entries are formatted but rather whether they are sufficiently clear and detailed to allow the Court to evaluate the reasonableness of the time spent. In assessing a fee petition, courts are "practical and realistic," recognizing that if attorneys "have to document in great detail every quarter hour or half hour of how they spend their time . . . their fee[s] . . . will be higher, and the lawyers will simply waste precious time doing

menial clerical tasks." *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006); *see also, e.g.*, *Supler v. FKAACS, Inc.*, No. 5:11- CV-229-FL, 2013 WL 6713120, at *4 (E.D.N.C. Dec. 19, 2013) (refusing to reduce fees for "block billing": "These four entries, while they combine certain tasks, do not hamper the court's ability to evaluate the work done or reasonableness of time expended.").

Because the State Defendants offer no argument about the overwhelming majority of the entries they highlight, Plaintiffs—and more importantly, this Court—are left to guess about the basis of their concern with many entries. *See* ECF No. 399 ¶ 8 (requiring "block billing" objections to "explain why" each identified entry "is deficient"). For example, on May 4, 2015, Amanda Callais submitted an entry reading: "Review Hofeller exhibits and report and begin drafting deposition outline (4.5); Meet with B. Spiva to discuss strategy on Hofeller deposition (.2)." *See* ECF No. 405-1 at row 768. Plaintiffs presume that the State Defendants have highlighted this entry because Ms. Callais reviewed documents related to the expert Thomas Hofeller while she was generating a deposition outline for Dr. Hofeller's deposition, but they cannot be sure because the State Defendants articulated no specific objection to this entry. In any event, these closely related tasks were appropriately billed together where Ms. Callais reviewed Dr. Hofeller's report and exhibits in conjunction with drafting the outline for his deposition. This isn't "block billing;" this is careful preparation of a deposition outline that necessarily requires side-by-side examination of the documents that are to be the subject of examination. How else could the outline be prepared? How else could that work be described?

Even where the State Defendants do offer objections to particular entries, those objections are meritless, and elevate form far over substance.

For example, the State Defendants complain about entries where counsel indicated that they engaged in multiple communications about the same topic, such as occasions where counsel both exchanged email and had a telephone conference about discovery responses, or had more than one telephone conference on a particular topic. *See* ECF No. 405 at 10. But the State Defendants do not offer any explanation for why such entries should be excluded from a fee award. Put simply, what difference would it make if counsel spent .2 sending one email and .3 on a phone conference, or .4 on the conference and .1 on the email? That is, the narrative makes clear what counsel was up to for thirty minutes—here, communicating about a specific aspect of the case.

The State Defendants next complain about time entries that supposedly "conflict." ECF No. 405 at 11. Again, this complaint is baseless. The State Defendants first complain that time entries about the same basic task sometimes reflect different specific times by different timekeepers. ECF No. 405 at 10. But the explanation is simple. For instance, the primary entries the State Defendants highlight involve an instance where three attorneys did work associated with a meeting to discuss various discovery tasks. *See* ECF No. 405 at 11. It is not difficult to understand that these three attorneys were working on different aspects of the issue to be discussed, had different amounts of work necessary to prepare for their role in the meeting, and so spent different amounts that day on the similar tasks they performed. The entries do not conflict. They show that counsel were performing discrete, albeit related, work.

The State Defendants further complain that the three attorneys did not describe the meeting using exactly the same language. *See id.* (meeting described as concerning "deposition scheduling, expert reports and related issues"; "witness interviews, depositions, and case strategy"; and "depositions and document review issues."). With all due respect, it is perfectly clear what the subject matter of this meeting was, particularly when surrounding entries are reviewed: Plaintiffs

11

were in the midst of discovery, and counsel were discussing deposition-related issues, which included discussion of related topics such as expert reports, and development and assessment of the factual record through witness interviews and document review. It is not surprising that counsel with different specific responsibilities and areas of focus may highlight particular aspects of the meeting in their time entry. The State Defendants provide the Court with no authority suggesting that a court must reject time entries unless all counsel sit together while creating time entries to ensure they describe work on which they collaborated in *exactly the same way*.

While the State Defendants have repeatedly lodged sweeping block billing objections, they have never provided the Court with authority suggesting the kinds of entries they highlight provide so little detail that they should be thrown out. For good reason. As Plaintiffs have repeatedly noted, it is not "block billing" for an attorney to delineate "related tasks" in a single entry, even for entries that "contain a significant period of time." *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1043 (C.D. Cal. 2012). As one court explained:

> [T]he mere fact that an attorney has included more than one task in a single billing entry is not, in itself, evidence of block-billing. When those tasks are intertwined, including a thorough description of the activities performed clarifies, rather than obscures, the record.

*Williams v. R.W. Cannon, Inc*., 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009). Thus, courts routinely reject "block billing" challenges of the kind the State Defendants lodge here. *See, e.g*., *Coty Inc. v. Excell Brands, LLC*, No. 15-CV-7029 (JMF), 2017 WL 4159929, at *2 (S.D.N.Y. Sept. 18, 2017) (rejecting challenge to entries in which, for example, counsel prepared for multiple depositions, reviewed related documents, and conferred with co-counsel regarding the depositions); *Pierce*, 905 F. Supp. 2d at 1043 (collecting cases and rejecting challenge to entries such as a seven-hour entry reading: "preparation for 'joint case management conference statement; conference with [Dan Stormer] re: same; research issues for joint status conference statement'");

12

*Wise v. Kelly*, 620 F. Supp. 2d 435, 451 (S.D.N.Y. 2008) (noting that it is appropriate for a single entry to address "more than one task related to a single general task" and that it is "unreasonable to expect" that tasks such as multiple communications on the same day about the same general topic to "be broken down into separate time entries"); *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1216-17 (E.D. Cal. 2009) (refusing to diminish lodestar where "the vast majority of the block-billing identified by defendant involves the grouping of highly related tasks that rarely cover more than a few hours").

The song remains the same. The State Defendants' "block billing" objections are meritless.

### 3. The State Defendants' Vagueness Objections Are Meritless

Finally, the Court should reject the State Defendants' "vagueness" objections.

Again, rather than offer specific objections to each entry they challenge as "vague," or to categories of particular kinds of "vague" entries, as Plaintiffs had understood the Court to require, the State Defendants instead brush aside that requirement and instead offer "examples." ECF No. 405 at 12-13. Because the State Defendants have only offered examples of why they believe particular entries are vague, it is difficult for Plaintiffs to respond further, and the reason why the State Defendants highlighted a particular entry is often not apparent. For example, the State Defendants assert that the following entry from Aria Branch, dated June 11, 2015, is vague: "Draft consent motion and order." *See* ECF No. 405-1 at row 1087. Plaintiffs do not know why the State Defendants believe this entry is so vague that the Court should not award fees related to this work. The same day, other counsel likewise had time entries related to preparation of a consent motion to amend the complaint to add a plaintiff, and the State Defendants did *not* object to these entries as vague. *See* ECF No. 405-1 at rows 1088-1090. Plaintiffs do not know why the State Defendants believe one entry about this consent motion is vague and the others are not. Even if Ms. Branch's entry were vague, it is clarified by the context provided by surrounding entries that same day.

13

Courts routinely recognize that it is necessary to review fee entries as a whole and in context. *See, e.g.*, *Doe v. Rector*, No. 1:15-cv-209, 2016 WL 3480947, at \*5 (E.D. Va. June 21, 2016) (rejecting challenge to time entries where concededly "more detail might have been provided" given that the court could adequately review the entries given its knowledge of the case); *Stuart v. Walker-McGill*, No. 1:11-CV-804, 2016 WL 320154, at \*12 (M.D.N.C. Jan. 25, 2016) ("[T]o a reader familiar with the timeline of the litigation, the entries to which the defendants object are not so incomplete or vague as to preclude recovery."); *Marsh Estate of McZilkey v. Grade S., Inc.*, No. 1:04-23149-HFF, 2009 WL 10678333, at \*6 (D.S.C. May 14, 2009) (rejecting vagueness challenges to entries such as "[c]ommunications regarding insurance law issue" because "brief and concise" entries, "though arguably vague standing alone, become clear when viewed in the context of surrounding billing entries").

The "examples" State Defendants provide, in fact, illustrate why their vagueness argument has no merit. Most notably, the State Defendants yet again object to numerous entries of: "Review and analyze documents for categorization and assessment." *See, e.g.*, ECF No. 405 at 12. Plaintiffs are at a loss. They have twice before explained that all entries with this description are for timekeepers who, as explained in the Hamilton Declaration accompanying Plaintiffs' motion, are document review attorneys who were tasked with reviewing materials "produced to Plaintiffs by the Commonwealth of Virginia and Defendant-Intervenors in response to discovery and public records requests." ECF No. 403 ¶ 20. It is entirely reasonable for a party to review documents that are produced to it in order to determine their materiality to the case, whether when reviewing discovery responses initially or identifying exhibits for trial.

The same is true for the other supposedly "vague" entries identified by the State Defendants—the work is sufficiently clear in context such that Plaintiffs should not be denied

14

recovery of the fees incurred in such work. Related to the document review entries above, the State Defendants object to four entries in which associate Aria Branch indicated that she was "[m]anag[ing] discovery." *See* ECF No. 405 at 12. These entries, from April and May 2015, were from a time period in which the work of the document review attorneys above was being performed. The document review attorneys had no previous familiarity with this matter and thus the work they performed required supervision. Ms. Branch managed this discovery process.

The State Defendants complain of some entries where an attorney indicated that he was reviewing a deposition transcript, *id.*, though not others stating the same thing, *see, e.g.*, ECF No. 405-1 at rows 510, 1347, 1363, 1403, 2714, 2724, 2746, 3224, 3242, 3265. Why the State Defendants contend one entry is vague and the other is not is unclear. Regardless, the entry in question (row 650) is clear enough—it was an entry by Bruce Spiva, trial counsel in the first trial, from a month before the trial. Trial counsel obviously have to review deposition transcripts before trial to prepare an effective direct or cross examination of the witness. It's difficult to understand how such work is not both clear, obvious, and essential.

Finally, the State Defendants object to entries in which Marc Elias indicated that he had reviewed case issues. *See* ECF No. 405-1 at rows 3, 1619. Mr. Elias provided overall strategic oversight of this matter and then argued the appeals to the Supreme Court. Plaintiffs' time entries reflect that Mr. Elias periodically reviewed case status and provided direction as to particular issues. For example, the first of the entries the State Defendants challenge is from October 20, 2014, when Elisabeth Frost reviewed whether this case should be filed as a related case to *Page/Personhuballah*, and then exchanged emails with Mr. Elias and others regarding that question. In context, then, it is apparent that this is the case issue that Mr. Elias reviewed that particular day.

15

In sum, the State Defendants ask too much of Plaintiffs' counsel. Plaintiffs' counsels' entries are not so vague that Plaintiffs should be denied recovery for this time. *Doe*, 2016 WL 3480947, at *5 (rejecting challenge to time entries where concededly "more detail might have been provided" as the entries identified the general subject matter of the work and thus were "in significant respect adequate"). Indeed, if the State Defendants' position was correct, counsel would be compelled to spend more time drafting billing narratives than performing legal work, writing entries with particular details about each email they sent and telephone conversation they had. This is not the law. It is not even close. The hundreds of pages of billing records Plaintiffs have submitted are thorough, detailed, and provide no basis for diminution of the lodestar.

## IV.     CONCLUSION

For the reasons set forth above and supported by the accompanying Hamilton Declaration and exhibits, Plaintiffs respectfully request that this Court approve attorneys' fees in the amount of $4,115,893.75 and reasonable litigation expenses in the amount of $489,096.35. Plaintiffs also ask the Court to grant their pending cost bill (ECF No. 388) in the total amount of $223,832.06.

DATED: March 27, 2020

By: */s/ Aria C. Branch*
Marc Erik Elias (admitted *pro hac vice*)
Bruce V. Spiva (admitted *pro hac vice*)
Aria Branch (VSB # 83682)
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.434.1627
Facsimile: 202.654.9106

16

 Kevin J. Hamilton (admitted *pro hac vice*)
Abha Khanna (admitted *pro hac vice*)
Ryan Spear (admitted *pro hac vice*)
William B. Stafford (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of March, 2020, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

By */s/ Aria C. Branch*
Aria C. Branch (VSB #83682)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6338
Fax: (202) 654-9106
ABranch@perkinscoie.com

*Attorneys for Plaintiffs*